<u>**MEMORANDUM OF LAW**</u>

**I.    INTRODUCTION**

This lawsuit arises out of four separate underlying foreclosure proceedings.  It is undisputed that all the putative class action plaintiffs defaulted on their contractual mortgage obligations, and there is no question that the foreclosure actions were properly initiated.  However, plaintiffs now allege that their mortgage lenders[1], loan servicers[2], and legal counsel's[3] prosecution of the underlying foreclosure actions violated various statutes, including the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.* ("OCSPA").  In addition, plaintiffs assert claims for breach of contract and unjust enrichment.  All of the claims asserted against defendant Reimer, Lorber & Arnovitz Co., L.P.A. ("Reimer Law Firm") are without merit and must be dismissed as a matter of law.

Eugene Kline is the only plaintiff to assert claims against the Reimer Law Firm.  This is Mr. Kline's second flawed attempt to represent a class of debtors in a complaint filed against the Reimer Law Firm, as well as his mortgage lenders and loan servicers.  Plaintiff's first lawsuit, *Eugene Kline, et al. v. HomEq Servicing Corporation*, Case No. 3:07cv-00084 in the United States District Court for the Southern District, Western Division, was dismissed on statute of limitations grounds.

---

[1]Plaintiffs have collectively named as defendants the following mortgage lenders:  Wells Fargo, N.A., WMC Mortgage, Mortgage Electronic Registration Systems, Inc., Heartland Home Finance, Flagstar Bank, FSB, and Chase Home Finance, LLC.

[2]The defendant loan servicers include:  HomEq Servicing Corporation and Countrywide Home Loans Servicing LP.

[3]Defendants Reimer, Lorber & Arnovitz Co., L.PA. and Lerner Sampson & Rothfuss have both been named as defendants.  The Reimer Law Firm did not serve as counsel in the underlying foreclosure actions filed against plaintiffs Jon Jones, Diana Hughes or George and Carol Ross.  Consequently, this defendant will not address any allegations or claims asserted by these plaintiffs in the complaint.

Plaintiffs' new complaint is also without merit and fails to state a claim upon which relief can be granted.

The thrust of the claims asserted against the Reimer Law Firm is twofold.  First, Kline alleges that the law firm "misrepresented" the holder of his mortgage and note when the second  foreclosure action was filed in state court.  Kline's mortgage was sold to defendant Wells Fargo Bank, N.A. ("Wells Fargo") prior to the filing of the underlying foreclosure action.  However, as set forth below, any delay in the filing of a notice of assignment of Kline's mortgage in the foreclosure action simply does not constitute a violation of the FDCPA or create any other viable cause of action.

Kline also alleges that the Reimer Law Firm attempted to collect attorneys' fees and other expenses incurred in connection with the foreclosure action which he characterizes as "either illusory or illegal under federal and/or state law."  (Complaint, ¶¶ 3, 46).  Again, this claim fails to state a valid cause of action under any theory advanced by plaintiff in the complaint.  The undisputed evidence establishes that the Reimer Law Firm did not attempt to collect any attorney's fee in connection with the underlying foreclosure.  The other fees and expenses identified are all recoverable pursuant to the relevant mortgage and loan agreements which Mr. Kline undisputably breached. Moreover, the communications that these alleged illegal fees are based on were between Kline's attorney and the Reimer Law Firm.  However, communications with a debtor's counsel are not actionable under the FDCPA.

II.     FACTS

A.      Kline's Mortgage Obligation.

Plaintiff Eugene Kline owned and resided at 902 Ash Creek Drive, Centerville, Ohio during the relevant time period.  (Complaint, ¶ 6).[4]  In June 2004, Eugene and Constance Kline[5] executed a mortgage with Mortgage Electronic Security Systems ("MERS"), as nominee for WMC Mortgage Corporation[6].  (Complaint, ¶ 27).  The loan was serviced by HomEq Servicing Corporation ("HomEq").  (Complaint, ¶ 29).  The Klines admittedly fell behind on their mortgage payments, and their loan was "put in default."  (Complaint, ¶ 28).  As a result of Kline's default, the Reimer Law Firm was retained by HomEq and MERS, as nominee for WMC Mortgage Company, to commence foreclosure proceedings in August 2005.  (Complaint, ¶¶ 30-31).[7]  Kline was able to procure the funds necessary to reinstate the mortgage loan, and the foreclosure action was subsequently vacated and  dismissed.  (Complaint, ¶ 32).

B.      Kline's First "Class Action" Complaint.

On March 6, 2007, Kline filed the first "Class Action" lawsuit captioned *Eugene Kline, et al. v. HomEq Servicing Corporation*, Case No. 3:07cv-00084 in the United States District Court for the Southern District, Western Division ("Kline I").  In *Kline I*, plaintiff alleged that the Reimer Law Firm

---

[4]The allegations of the complaint are accepted as true for purposes of this motion to dismiss. However, the complaint contains many factual inaccuracies.

[5]Constance Kline is not a party to this action.

[6]A certified copy of Kline's mortgage is attached as Ex. A.  A copy of Kline's note is attached as Ex. B.  A copy of the note is attached to the certified complaint in the Foreclosure Action, Ex. E hereto. Constance Kline did not execute the note.  The note and mortgage are central to plaintiff's claim, and as set forth in Section II. A.2., may be properly considered by this Court.

[7]The Foreclosure Action was brought by MERS, as nominee for WMC Mortgage Company.

and other defendants violated the FDCPA and other statutes in connection with the contractual reinstatement provisions contained in the relevant mortgage and loan agreements.  The Reimer Law Firm filed a motion to dismiss that action asserting that plaintiff failed to state a claim upon which relief could be granted.  The District Court granted the Reimer Law Firm's motion to dismiss the FDCPA claims on statute of limitations grounds, and dismissed the remaining state claims.[8]  No appeal was taken by Mr. Kline.

### C.    Assignment of Mortgage.

After the initial reinstatement, plaintiff's mortgage was sold and assigned to Wells Fargo.  Kline defaulted a second time on his mortgage obligation.  Wells Fargo, as Trustee, was the holder of the note and mortgage at the time of default.[9]  In December 2006, HomEq notified plaintiff that he was behind on his mortgage and that foreclosure proceedings would be commenced if the delinquency was not cured.  (Complaint, ¶ 33).  Although not specifically alleged in the complaint, there is no question that Kline was notified that Wells Fargo was the holder of his mortgage loan.  In fact, Kline received a January 16, 2007 letter[10] from HomEq which specifically provides:

> "This letter is in reference to the above-referenced account (the Account), serviced by HomEq Servicing (HomEq), on behalf of the following current creditor:
>
> Name of current creditor/owner:               Wells Fargo Bank, N.A.
> Time and place of creation of the debt:        06/18/2004

---

[8]See,  Jan. 28, 2008 Entry and Order granting in part motion to dismiss, ECF No. 33 and Nov. 25, 2008 Entry and Order on motion for reconsideration, ECF No. 46.

[9]See, Oct. 5, 2007 reply to memorandum in opposition to plaintiff's motion for summary judgment and affidavit in support of motion for summary judgment, attached as Ex. C and filed in the underlying Foreclosure Action - - *Wells Fargo Bank v. Lease Comm. et al.*, in the Court of Common Pleas, Montgomery County, Ohio, Case No. 2007-CV-02252.

[10]The January 16, 2007 letter is attached to and authenticated in the affidavit in support of motion for summary judgment.  It is also attached hereto as Ex. D.

CENTERVILLE, OH

Merchandise, services or other things of value:      Mortgage/Deed of Trust"

**D.      Second Foreclosure Action.**

On March 16, 2007, the Reimer Law Firm, on behalf of Wells Fargo as Trustee, filed a foreclosure action against Eugene Kline in the Court of Common Pleas, Montgomery County, Ohio, Case No. 2007-CV-02252 ("Foreclosure Action").[11]   (Complaint, ¶¶ 34-35).   An "assignment of mortgage" executed March 26, 2007, assigning plaintiffs' mortgage from defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for WMC Mortgage Company, to Wells Fargo was executed in connection with the second Foreclosure Action.   (Complaint, ¶ 39).   The Klines also had a second mortgage on the property held by MERS, as nominee for WMC Mortgage. (Complaint, ¶ 64).   Defendant Lerner, Sampson & Rothfuss served as counsel with respect to the second mortgage in the second Foreclosure Action.

On April 25, 2007, Kline filed an answer with counterclaim in the second Foreclosure Action.[12]   Kline asserted a number of affirmative defenses, including the statute of frauds, failure to join the real party in interest, and "all matters contained in Case No. 3:07 CV 00084-TMR, Southern District of Ohio in defense against plaintiffs' claim."[13]   Significantly, Kline defended the foreclosure action on the grounds that Wells Fargo was not the "holder and owner" of the note and mortgage.[14]

---

[11]See, certified copy of the complaint in the second Foreclosure Action, attached as Ex. E, and certified copy of docket in the Foreclosure Action, attached as Ex. F.

[12]See, certified copy of answer and counterclaim in Foreclosure Action, attached as Ex. G.

[13]The court dismissed Kline's counterclaim.

[14]See, certified copies of Klines' memorandum in opposition to motion to dismiss, p. 2-4 attached as Ex. H , and Kline's memorandum in opposition to motion for summary judgment, p. 2, attached as Ex. I.

The court granted Wells Fargo's motion for summary judgment on October 23, 2007 rejecting Kline's defense and finding that Wells Fargo was the holder of the mortgage.[15]  That ruling is now *res judicata* with respect to the status of Wells Fargo.

Kline was represented by counsel, Kenneth E. Wegner, in the second Foreclosure Action.  In correspondence dated October 30, 2007 and November 8, 2007, Kline's foreclosure attorney requested a written payoff from the Reimer Law Firm regarding the mortgage.  The Reimer Law Firm responded to the payoff request in correspondence to Kline's attorney dated November 15, 2007.[16]  As set forth in the correspondence, the payoff figure of $176,332.28 did "not include any attorney's fees."  The payoff figure did include $14,821.28 in accrued interest, $3,406.12 in escrow advances and $2,410 in estimated court costs.

## III.  LAW AND ARGUMENT

### A.  Standard of Law.

#### 1.  Civil Rule 12 (b)(6).

When deciding a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's *factual*

---

[15]See, certified copy of Judgment Entry, attached as Ex. J.

[16]See, copies of the October 30, 2007, November 8, 2007 and  November 15, 2007 correspondence, attached as Exs. K, L, M.  Kline fails to attach the October 30 and Nov. 8 correspondence from Mr. Wegner to the complaint, or refer to them at all.  He vaguely references the November 15 correspondence in paras. 129-131 of the complaint. These letters are central to Kline's allegations that the Reimer Firm attempted to collect illusory or illegal fees and expenses. Here, in paras. 129-131, Kline alleges that the Reimer Firm attempted to collect fees and costs which were not owed and "routinely overcharged delinquent borrowers for fees and costs."  The November 15 letter to Kline's attorney  is the means in which the Reimer Firm allegedly demanded the improper charges and the October 30 and November 8 letter were sent directly from Kline's attorney and are thus central to the issue of whether the communications violate the FDCPA as they were communications between two attorneys.  It is apparent that Kline intentionally failed to attach these letters in an effort to avoid dismissal.

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle the plaintiff to the relief sought. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). See also, *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir.1971) (the court is "required to accept only well pleaded facts as true, not the legal conclusions that may be alleged or that may be drawn from the pleaded facts."). Conclusory statements of opinion or law need not be accepted as true. *Mezibov v. Allen,* 411 F. 3d 712 (6th Cir. 2005).

### 2.   **Matters Outside the Pleadings.**

The facts supporting defendant's motion to dismiss were drawn from the face of the complaint, as well as from certain pleadings and court orders from the underlying Foreclosure Action and *Kline I* Litigation. These are:[17]

1)   Mortgage contract and promissory note;

2)   Complaint in *Wells Fargo Bank v. Leasecomm Corp.*, Case No. 2007 CV 02252, Montgomery County Court of Common Pleas ("Foreclosure Action");

3)   Docket in Foreclosure Action;

4)   Answer and counterclaim of Kline in the Foreclosure Action;

5)   Kline's memorandum in opposition to plaintiff's motion for summary judgment and motion to dismiss in Foreclosure Action;

---

[17]The attached are certified copies.

6)   Affidavit in support of motion for summary judgment and attached Jan. 16, 2007 letter in Foreclosure Action;

7)   Plaintiff's reply to defendant's memorandum in opposition to plaintiff's motion for summary judgment and notice of filing original affidavit in Foreclosure Action; and

8)   October 23, 2007 judgment entry in Foreclosure Action.

In addition, several correspondence that are central to plaintiffs' claim have been attached.[18]

These are:

1)   October 30, 2007 correspondence from attorney Wegner;

2)   November 8, 2007 correspondence from attorney Wegner;

3)   November 15, 2007 pay-off letter to attorney Wegner; and

4)   February 7, 2008 letter to attorney Wegner itemizing foreclosure costs.

In deciding a motion to dismiss, a court may consider the pleadings, including the complaint, answer and all attached written exhibits.  See, Fed. Civ. R. 12 (b)(6).  In construing Rule 12 (b)(6), courts "have taken a liberal view of what matters fall within the pleadings for purposes of a rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings."  *Armengau v. Cline*, 7 Fed. Appx 336, 344, 2001 U.S.App.LEXIS 3578 (6th Cir. 2001) (citing *Jackson v. City of Columbus*, 194 F. 3d 737, 745 (6th Cir. 1999); *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F. 2d 429, 431 (7th Cir. 1993).

Moreover, a defendant may introduce pertinent documents under Rule 12(b)(6) if the plaintiff fails to do so because a plaintiff with a legally deficient claim could survive a motion to dismiss by simply failing to attach a dispositive document to the complaint.  See, *Pension Benefit Guar. Corp.*

---

[18]In granting the Reimer Law Firm's motion to dismiss in *Kline I*, the district court considered correspondence to and from Kline without converting it to a 56(F) motion.

*v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Here, it is apparent that Kline has intentionally failed to attach the mortgage contract, promissory note and other documents central to his claim in an effort to avoid dismissal.

Courts have explicitly permitted a defendant in a Rule 12(b)(6) motion to attach documents referenced in the complaint which are central to the plaintiffs' claims, without converting the motion into one under Rule 56.  See, *Weiner v. Klais and Co. Inc.*, 108 F. 3d 86, at 88-89 (6th Cir. 1997). It is also well established that a court may consider matters of public record in deciding a motion to dismiss.  *Colonial Mortgage Bankers Corp. v. Lopez-Stubbe*, 324 F.3d.12 (1st Cir. 2003).  Courts may take judicial notice of court records.   This includes documents from prior state court adjudications.  *Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 60 (1st Cir. 2000).  Further, pursuant to Federal Rule of Evidence 201, this Court is permitted to take judicial notice of the public records and judicial opinions in the state Foreclosure Action and in *Kline I* when ruling on defendant's motion to dismiss.  Fed. R. Evid. 201(b) provides that a court may take judicial notice of facts that are "not subject to reasonable dispute [and are] either (1) generally known within the territorial jurisdictions of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questions."  In fact, this Court may also take judicial notice of the documents, because judicial notice "*** may be taken at any stage of the proceeding." Fed. R. Evid. 201.

### B.    Plaintiff's Claims Arising Under the Fair Debt Collection Practices Act Must Be Dismissed as a Matter of Law.

Congress enacted the FDCPA "in order to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent state actions to protect consumers against debt collection abuses." *Fed. Home Loan Mortgage Corp., et al. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007), citing 15 U.S.C. §1692(e).  Further, "Congress designed the FDCPA to eliminate the reoccurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Id.* at 508.  In determining whether any particular conduct violates the FDCPA, the courts have used an objective test based on the least sophisticated consumer.  See, *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324 (6th Cir. 2006).  Here, Kline is an "extremely sophisticated consumer" and "professional plaintiff."  As the Sixth Circuit has made it clear it will not "counterance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." *Fed. Home Loan Mortgage Corp.*, *supra.* 503 F.3d at 513-514.  In *Fed. Home Loan Mortgage Corp.*, the Sixth Circuit noted that the "least sophisticated consumer standard" has led to a proliferation of litigation, as is the case here:

> "Ironically, it appears **[**23]** that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled.  The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process." **[*514]** Id.  Rather, the inescapable inference is that the judicially developed standards have enabled a class of professional plaintiffs . . .
>
> It is interesting to contemplate the genesis of these suits.  The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase.  His debt remains unpaid and undisputed.  He eventually receives a collection letter requesting payment of the debt which he **[**24]** rightfully owes.  Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!"  and - - rather than

> simply pay what he owes - - repairs to his lawyer's office to vindicate a perceived
> "wrong."  "[T]here comes a point where this Court should not be ignorant as judges
> what we know as men."  *Watts v. State of Ind.*, 338 U.S. 49, 52, 69 S. Ct. 1347,
> 1349, 93 L. Ed. 1801 (1949)."

> *Id.* at 513-514, citing *Jacobson v. Healthcare Fin. Servs., Inc.*, 434 F.Supp.2d 133, 138

(E.D.N.Y. 2006).

This case is a classic example of a sophisticated consumer trying to manipulate and abuse the intended purpose of the FDCPA.  <u>Mr. Kline is no victim here.</u>  He admittedly defaulted on his mortgage obligation twice.  Rather than simply paying what he owed, Kline hired two sets of lawyers who unsuccessfully challenged the foreclosure action and filed two separate lawsuits in federal court. Plaintiff's interests were fully protected by his lawyers, and he simply was not subject to the kinds of abuses which the FDCPA was designed to protect against.

### C.     The Failure to Assign or Record a Mortgage Prior to the Filing of a Foreclosure Action Does Not Violate the FDCPA.

At paragraphs 36-46 of the complaint, Kline generally asserts that the assigning of his mortgage to Wells Fargo was somehow improper. Kline's claim arising out of 15 U.S.C. § 1692(e) must fail.  Section 1692(e) prohibits the use of false, deceptive or misleading representation or means in connection with the collection of any debt.[19]   Any claim by plaintiff that the assignment was false, deceptive or misleading under the FDCPA fails for three reasons.  First, Wells Fargo was the holder of the note and mortgage when plaintiff defaulted.   Second, the filing of a lawsuit without the immediate means of proving a claim is not an FDCPA violation.  Finally, the FDCPA does not impose recording or assignment requirements.

---

[19] Although plaintiffs allege general violations of Sec. 1692(e) and (f), they fail to specify which particular conduct alleged violates the specific provisions of the statute.

### 1.    Wells Fargo Bank Was the Holder of the Note and Mortgage When the Foreclosure Action Was Filed.

Plaintiffs' complaint alleges that Wells Fargo was not the holder of Kline's mortgage and note when the second Foreclosure Action was filed on March 16, 2007.  However, this Court may take judicial notice of the public records that conclusively prove otherwise.  In the Foreclosure Action, a representative of the servicing agent for Wells Fargo attested in an affidavit that Wells Fargo was the holder of the note and mortgage at the time of default and acceleration.  (See, Ex. C).  The affidavit was filed with the Court on October 15, 2007 in the Foreclosure Action.  Indeed, Kline was well aware of the assignment as he received an acceleration letter on January 16, 2007 identifying Wells Fargo as the holder of the note and mortgage.  (See, Ex. D).  The undisputed evidence establishes that the Reimer Law Firm did not "falsely identify" Wells Fargo as the creditor in the underlying Foreclosure Action.  In fact, the Judgment Entry in the Foreclosure Action conclusively held that Wells Fargo was the holder of the mortgage note.

### 2.    The Filing of a Foreclosure Complaint after the Execution or Recording of An Assignment Is Not in Violation of the FDCPA.

The Sixth Circuit has established that filing a lawsuit without the immediate means of proving a debt's "true owner" does not violate §1692(e). See, *Harvey v. Great Seneca Financial Corp.*, 453 F.3d 324, 325 (6th Cir. 2006);  *Martin v. Select Portfolio*, 2008 U.S. Dist. LEXIS 16088 (S.D. Ohio 2008)( holding that the failure to file an assignment before filing a foreclosure complaint does not constitute a FDCPA violation).  In *Harvey*, the plaintiff claimed that the defendants' action in filing a debt collection action against her without the means of proving the existence of the debt, the amount of the debt or that the lender owned the debt violated §1692(e).  The Sixth Circuit, in affirming dismissal, held that "the filing of the lawsuit, without the immediate means of proving the

existence, amount, or true owner of the debt is not deceptive under the act." *Id.* at 331. The court explained that the law firm "did not implicitly represent by filing the complaint for money that they had in hand the means to prove Great Seneca's claims." *Id.* at 333. In other words, a law firm is not required to prove its case before filing a complaint.

The court noted that the attorneys' filing of the lawsuit "did not misrepresent the legal character of the debt owed," and all that is required is that the plaintiff's allegations have or likely have evidentiary support. The court considered another case similar to the one addressed both here and in *Harvey* and reasoned that:

> filing a lawsuit supported by the client's affidavit attesting to the existence and amount of a debt . . . is not a false representation about the character or legal status of a debt, nor is it unfair or unconscionable. A defendant in any lawsuit is entitled to request more information or details about a plaintiff's claim, either through formal pleadings challenging a complaint, or through discovery. *Deere* [the debtor] does not allege that anything in the state court complaint was false, or that the complaint was baseless. She essentially alleges that more of a paper trail should have been in the lawyers' hands or attached to the complaint. The FDCPA imposes no such obligation.

*Harvey*, citing *Deere v. Javitch, Block & Rathbone, LLP*, 413 F.Supp.2d 886, 890 (S.D. Ohio 2006). See *also, Fed. Home Loan Mortg. Corp. v. Lamar*, 2006 U.S. Dist. LEXIS 59249 (N.D. Ohio 2006); *Shivone v. Wash. Mut. Bank*, 2008 U.S. Dist. LEXIS 59211 (E.D.Pa. 2008) (holding that the filing of a complaint in a mortgage foreclosure action on behalf of a lender who is in the process of obtaining an assignment that was not fully documented did not constitute a violation of the FDCPA).

In the present case, the Reimer Law Firm did not falsely represent the ownership of Kline's mortgage, the legal character of the debt, or use any deceptive means to collect the debt under the FDCPA. Wells Fargo filed a motion for summary judgment in the Foreclosure Action which was granted over the written opposition of Kline. The fact that a notice of assignment was executed after

-13-

the filing of the foreclosure complaint is immaterial and cannot serve as a legal basis for plaintiff's FDCPA claim.

###    3.      The FDCPA Does Not Impose Recording or Assignment Requirements.

In *Martin v. Select Portfolio*, 2008 U.S. Dist. LEXIS 16088, *13 (S.D.Ohio 2008) the Southern District of Ohio held that the FDCPA does not impose any requirements with respect to the recording of an assignment or lien.   While O.R.C. §5301 *et seq.* addresses the assignment of mortgages, as a recording statute, it is intended to govern priorities between lenders, not the validity of the lien. *Wead v. Lutz*, 161 Ohio App.3d 580, 586, 2005-Ohio-2921 831 N.E.2d 485, 287 (Ohio App. 2005).  In *Martin*, *supra.* the District Court noted that there was no violation even though the assignment was not recorded until after the plaintiffs requested it.  Thus, the failure to timely assign or even physically transfer the mortgage is neither false or misleading, nor a violation of the FDCPA.

###    4.      Any Claims Arising Out of the Allegedly Improper Assignment Are Time-Barred By the One Year Statute of Limitations in 15 U.S.C. § 1692k(d).

Pursuant to 15 U.S.C. §1692k(d), an FDCPA claim must be brought within one year from "the date on which the violation occurs."  The statute of limitations begins to run when the alleged misrepresentation or violation occurs.  See, *Purnell v. Arrow Financial Serv. LLC*, 2007 U.S. Dist. LEXIS 7630 (E.D.2007), *Calka v. Kucker, Kraus & Bruh, LLP*, 1998 U.S. Dist. LEXIS 11868 (S.D. N.Y.1998) (when the alleged misrepresentation occurred in a prior state court filing, the date of the filing is the date the FDCPA cause of action accrues).

In the present case, Kline alleges that the Reimer Law Firm violated the FDCPA by misrepresenting in the underlying Foreclosure Action that Wells Fargo was the true owner and holder of his mortgage debt. (Complaint ¶¶ 36-40).  The Foreclosure Action was filed on March 16, 2007.

(See, Ex. E).  Here, Kline's claim arising out of the assignment of the mortgage occurred when the Foreclosure Action was filed.  However, this action was not filed until November 10, 2008, more than five months after the one-year limitation period expired.  As such, Kline's claim arising out of the assignment is time barred and must be dismissed.

### 5.    Collateral Estoppel Bars Kline from Re-Litigating the State Court Foreclosure Action.

The doctrine of *res judicata* consists of two related branches which include claim preclusion and issue preclusion.  *City of Canton v. Maynard*, 766 F. 2d 236, 238 (6th Cir. 1985).  Under claim preclusion, an earlier final judgment on the merits precludes a party from raising new claims that were or should have been advanced in the earlier proceeding.  Under the issue preclusion branch of *res judicata* (traditionally termed "collateral estoppel"), a party is precluded from relitigating the issues of fact or law which were necessarily decided in the previous judgment.  *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Gargallo v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 918 F. 2d 658, 661 (6th Cir. 1990).  In the present case, Kline is attempting to re-litigate Wells Fargo's standing to initiate the foreclosure lawsuit.  The issue of Wells Fargo's standing to pursue the Foreclosure Action was litigated and directly determined.

Collateral estoppel prevents a party from relitigating issues of fact or law which were necessarily decided by a previous final judgment.  *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir.1999).  The Sixth Circuit has held that a prior decision shall have a preclusive effect on an issue raised in a later case if four elements are met:

"(1) the precise issue raised in a present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is

sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."

*Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 908 (6th Cir.2001) cert. denied sub nom. *Time Warner Entm't Co. v. Nat'l Satellite Sports, Inc.*, 534 U.S. 1156, 122 S. Ct. 1127, 151 L.Ed. 2d 1019 (2002).  A determination made by a court of competent jurisdiction is conclusive in all subsequent suits even when such suit is based upon a different cause of action.  See, *Logan Farms v. HBH, Inc.,* 282 F.Supp.2d  276 (S.D. Ohio 2003).  Here, the doctrine of collateral estoppel prevents Kline from relitigating the issue of standing since that issue was decided by the court in the Foreclosure Action.

Kline alleges that Wells Fargo did not have standing to initiate the foreclosure proceedings. (Complaint, ¶ 21, iv).  However, Kline defended the Foreclosure Action on the grounds that Wells Fargo was not the "holder and owner" of the mortgage and note.  He asserted a number of affirmative defenses, including failure to join real party interest, failure to join necessary parties and all matters contained in *Kline I* in his state court pleadings.  (See, Ex. G ¶¶ 7, 11, 13).  In his memorandum in opposition to summary judgment in the Foreclosure Action, Kline specifically argued that the Wells Fargo assignment was invalid.  (See, Ex. I at pp. 2-4 ).  The state court granted Wells Fargo's motion for summary judgment on October 23, 2007, rejecting Kline's defense and ruling that Wells Fargo was the first and best lien holder.  (See, Ex. J).  As the first lienholder, Wells Fargo had standing to initiate the lawsuit.

Collateral estoppel clearly applies in this case.  As a party in the underlying Foreclosure Action, Kline raised the issue of the allegedly improper assignment of his mortgage to Wells Fargo. The assignment issue was addressed in Kline's memorandum in opposition to summary judgment, and

there is no question he had a full and fair opportunity to litigate this legal issue.  Moreover, there is

no question that the resolution of the assignment issue was necessary and essential in the underlying

Foreclosure Action as judgment could not have been entered in favor of Wells Fargo without a

judicial determination that the assignment was valid.  Kline challenged the validity of the assignment

of his mortgage in the Foreclosure Action and lost.  As a matter of law, he is now collaterally

estopped from trying to relitigate that issue in this case.  See, *Snype v. First Franklin Corp. et al.*

2008 U.S. Dist.42744 (N.D.Ohio 2008).

6.    **The *Rooker-Feldman* Doctrine Prohibits This Court From Exercising Subject Matter Jurisdiction Over This Case.**

The *Rooker-Feldman* doctrine prohibits this Court from exercising subject matter jurisdiction

over this case.  That doctrine prohibits this Court from reviewing the legal basis for the judgment

rendered in the underlying Foreclosure Action.  See, *Exxon Mobil Corp. v. Saudi Basic Indust.

Corp.*, 544 U.S. 280, 125 S.Ct.1517, 161 L.Ed.2d 454 (2005).  In *Exxon*, the Supreme Court held

that application of the doctrine applies to "cases brought by state court losers complaining of injuries

caused by state court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of these judgments."  *Id.* at 283-284; *Givens v.

Homecoming Financial*, 278 Fed.App.607, *3, 2008 U.S.App.LEXIS 11003 (6th Cir. 2008).  This

is precisely what Kline is doing here.

The *Rooker-Feldman* doctrine was initially articulated in *Rooker v. Fidelity Trust Co.,* 263

U.S. 413, 445 S.Ct.149, 68 L.Ed.362 (1923) and was subsequently reaffirmed in *District of

Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct.1303, 76 L.Ed.2d 206 (1983).  In

sum, the doctrine states that only the United States Supreme Court maintains subject matter

jurisdiction to review state court judgments. Therefore, if identical claims raised in a state court proceeding are raised in the subsequent federal proceeding, the *Rooker-Feldman* doctrine will bar the action. It also precludes district court review of claims "inextricably intertwined" with state court determinations. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2nd Cir. 2002). "Inextricably intertwined" refers to claims where a federal plaintiff had an opportunity to litigate an assertion, theory or claim in a state court proceeding. The fact that plaintiffs raise new claims under federal statutes does not preclude a finding that they are barred by the *Rooker-Feldman* doctrine. *Zipper v. Todd*, 1997 U.S. Dist. LEXIS 4770, *3 (S.D. N.Y.1997).

Recently, in a case similar to the one here, the Sixth Circuit held in *Givens v. Homecoming Financial*, 278 Fed. Appx.607, 2008 U.S. App. LEXIS 11003 (6th Cir. 2008), that the *Rooker-Feldman* doctrine precludes a district court's exercise of subject matter jurisdiction over the plaintiff's FDCPA claim which challenged or sought to reverse an Ohio trial court's foreclosure judgment. In *Givens*, plaintiff alleged that the defendant violated the FDCPA by "failing to provide him a sufficient verification of his debt." *Id*. at *2. The court held that the district court properly dismissed Givens' claim under the *Rooker-Feldman* doctrine (and pursuant to the doctrine of *res judicata*), as the claims were or could have been litigated during the state court proceedings. See also, *Kafele v. Shapiro & Felty, LLP*, 2006 U.S. Dist.LEXIS 13155 (S.D.Ohio 2006) (plaintiff's claims arising from foreclosure actions are barred under the *Rooker-Feldman* doctrine because the claims were inextricably intertwined with the state court's implicit determination that the foreclosure actions were valid and properly brought by MERS); *Snype v. First Franklin Corp. et al.*, 2008 U.S. Dist. LEXIS 42744 (N.D.Ohio 2008).

-18-

In the present case, Kline is essentially asking this Court to reverse the state court judgment granting a judgment in favor of Wells Fargo on its foreclosure claims.  Under the *Rooker-Feldman* doctrine and *Exxon*, *supra.*, this Court lacks subject matter jurisdiction to review the state court decision.

**D.  Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted With Respect to Allegedly Improper Fees and Expenses Arising Out of the Underlying Foreclosure Action.**

        **1.  The Alleged Improper Charges Arise from the Mortgage Contract and Promissory Note.**

Plaintiffs generally allege in the complaint that the defendants have improperly attempted to collect attorneys' fees and other expenses incurred in the underlying Foreclosure Actions.  (Complaint ¶ 3, 129).  According to Kline, the "fees and expenses were either illusory or illegal under federal and/or state law." (Complaint, ¶ 46).  Plaintiffs' claims fundamentally mischaracterize the nature and legal basis relating to the disputed fees and expenses.  The foreclosure related costs were properly allocated to Kline as a direct result of his admitted breach of the mortgage contract and promissory note.

In the present case, Kline entered into a mortgage contract and promissory note which specifically set forth his obligations in the event of default:

    7.     BORROWER'S FAILURE TO PAY AS REQUIRED
        (A)    Late Charges for Overdue Payments
        If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000% of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.
        (B)    Default
        If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)     Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)     No Waiver by Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)     Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, *the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note* to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney fees. (Emphasis added).

(See Note, Ex. B).

14.     Loan Charges

Lender may charge Borrower fees for services performed in connection with borrower's default for the purpose of protecting Lender's interest in the property and the rights under this Security Instrument, including but not limited to, attorney fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the changing of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by applicable law. (See Mortgage, Ex. A).

In *Wilborn v. Bank One Corp.*, 2009-Ohio-306, 2009 Ohio LEXIS 229, the Ohio Supreme Court recently recognized the right of a lender to charge a borrower who defaulted on a loan attorneys' fees, court costs and other expenses as a condition for reinstatement of the loan.  In enforcing the terms of the mortgage agreement, the Ohio Supreme Court specifically recognized the "fundamental right to contract freely with the expectation that the terms of the contract will be enforced."  *Id.* at ¶ 8.  In *Davidson v. Weltman Weinberg & Reiss* 285 F.Supp.2d 1093 (N.D.Ohio 2003), this Court also recognized the validity of contractual obligations contained in a mortgage

contract requiring a debtor in default to reimburse a lender for fees and costs incurred in enforcing the contract.

In response to a request from Kline's attorney, the Reimer Law Firm provided a "pay-off" figure which included an estimated $2,410 in court costs. (See, Ex. M). The pay-off figure expressly did not request the payment of attorney's fees, but the court costs did include judicial reports, service of process fees, and pre-acceleration late charges. The costs passed on to Kline were authorized pursuant to the mortgage contract and promissory note and are not prohibited by law or in violation of the FDCPA.[20]

### a. The Reimer Law Firm did not attempt to collect attorney fees.

As a threshold matter, Kline alleges that the Reimer Law Firm improperly attempted to collect attorney fees from him in the underlying Foreclosure Action. This allegation is demonstrably false. In fact, the "payoff" figure provided to Kline's counsel in a letter dated November 15, 2007, (Ex. M) expressly did not include any attorneys' fees. Kline's allegation in the face of this conclusive letter demonstrates the legal frivolousness of his case.

### b. Judicial reports were necessary to the underlying foreclosure action.

The preliminary and final judicial reports filed in the Foreclosure Action were necessary to ensure that all lienholders had notice of the foreclosure. Any claim by Kline that these judicial reports were improper, illegal or in violation of the FDCPA is without merit. Indeed, a preliminary judicial report, which is a guarantee of title issued by a licensed title insurance agent, is now required to be

---

[20]Even if, *arguendo*, plaintiff is able to establish that the costs at issue were excessive, Kline's remedy pursuant to the mortgage contract is a reduction in the amount charged and a refund. (See, Ex. A at ¶ 14).

filed within fourteen days of the filing of a foreclosure complaint. (See, O.R.C. § 2327.191). In fact, this Court specifically requires that a preliminary judicial report be filed with a foreclosure complaint and that a final judicial report must be filed along with a motion for default judgment. (See, Gen. Order No. 07-03 at ¶¶ 1.2.1 and 2.3).

### c. The service of process fees were authorized by the loan documents.

The Reimer Law Firm appropriately used a private, independent process server to ensure that all parties in the underlying Foreclosure Action were properly served with a summons and complaint. The use of a duly appointed special process server does not constitute a violation of the FDCPA. Ohio Rule of Civil Procedure 4.1(B) specifically authorizes the use of special process servers. The use of traditional service methods often significantly slows down the foreclosure process as it frequently takes months to ensure that all parties are properly served with a summons and complaint. The use of special process servers shortens the foreclosure process which benefits all parties, including debtors like Kline who are liable for less interest during the shortened litigation period.

### d. The law firm did not attempt to collect improper late fees.

Kline's promissory note expressly permits the note holder to charge a late fee if the full amount of any monthly payment is not received on time. (See, promissory note ¶ 7(A), Ex. B). In the present case, Kline admits that he failed to make his required monthly payments, and he was therefore properly charged a late fee pursuant to the promissory note.

The Reimer Law Firm did not attempt to collect any late fee in violation of the FDCPA. Pursuant to a January 16, 2007 letter from HomEq, Kline's loan was accelerated on February 20, 2007. (See, Ex. D). The pay-off figure provided by the Reimer Law Firm included $178.90 in

accrued late fees.   (See, Ex. N).   However, as set forth in a February 7, 2008 letter to Kline's

attorney, the $178.90 in late fees contained in the pay-off statement were all accrued prior to the

acceleration of Kline's loan.[21]

### 2.   Communications from the Reimer Law Firm to  Kline's Attorney Are Outside the Scope of the FDCPA.[22]

During the second Foreclosure Action, Kline's attorney wrote several letters to the Reimer

Law Firm requesting a "payoff figure."  (See, Exs. K and L).  The Reimer Law Firm was required

to communicate with Kline's attorney pursuant to the FDCPA.  15 U.S.C. § 1692b(6).  The Reimer

Law Firm communicated with Attorney Wegner through correspondence regarding reinstatement and

pay off of the loan, as well as pleadings filed in the state Foreclosure Action.  In the first claim for

relief, Kline alleges that the Reimer Law Firm violated the FDCPA by collecting or attempting to

collect various fees incurred in connection with the Foreclosure Action.  However, it is well

recognized that communications with a debtor's counsel are not actionable under the FDCPA.

The FDCPA was enacted to protect consumers from deceptive or harassing actions taken by

debt collectors.  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2nd Cir.2002).  It does not provide

protection for allegedly deceptive statements to a debtor's attorney.  In fact, the FDCPA requires

communication <u>only</u> with the consumer's attorney when the creditor is aware of the attorney's name

---

[21]A copy of the February 7, 2008 letter and attachments are attached as Ex. N.

[22]Further, the FDCPA does not apply to the Reimer Law Firm's litigation activities in the Foreclosure Action.  Many courts have held that litigation activities by lawyers in mortgage foreclosure actions are not within the scope of the activities regulated by the FDCPA.  See, *Beadle v. Haughey*, 2005 U.S. Dist. LEXIS 2473 (D.N.H. 2005); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 924-25 (N.D. Ind. 2004); *Sweet v. Wachovia Bank & Trust Co., N.A.*, 2004 U.S. Dist. LEXIS 29862, *2 (N.D.Tx. 2004) (holding that "the FDCPA does not cover foreclosure as 'debt collection.'"); *Bergs v. Hoover, Bax & Slovacek*, 2003 U.S. Dist. LEXIS 16827, *13 (N.D.Tx. 2003).

and address.  15 U.S.C. § 1692b(6).  A debtor's attorney is not included in the FDCPA's definition of a "consumer" which includes "any natural person obligated or allegedly obligated to pay any debt" and "the consumer's spouse, parent (if the consumer is a minor), guardian, executor or administrator."  15 U.S.C. §§ 1692a(6), 1692(c)(d).  Moreover, the FDCPA contains an express exemption for communications with consumer's attorneys.  15 U.S.C. § 1692(c)(b).

Numerous courts have held that the FDCPA does not apply to communications with the debtor's attorney.  *Guerro v. RJM Acquisitions, LLC*, 499 F. 3d 926 (9th Cir. 2007); *Diesi v. Shapiro*, 330 F. Supp. 2d 1002, 1004 (C.D. Ill. 2004); *Zaborac v. Phillips & Cohen Assocs. Ltd.*, 330 F. Supp. 2d 962, 967 (N.D. Ill. 2004); *Tromba v. MRS Assocs., Inc.*, 323 F. Supp. 2d 424, 428 (E.D. N.Y. 2004).  *Kropelnicki v. Siegel*, 290 F. 3d 118, 127 (2nd Cir. 2002).  In *Guerro*, the court noted that the FDCPA affords protection exclusively to "consumers" and not their attorneys, and also explained that subjecting communications solely between attorneys to the Act would frustrate the long favored judicial policy of favoring settlement negotiations.  *Id.* at 934-40.  In *Kropelnicki*, the Second Circuit explained that "where an attorney is acting as an intermediary between a debt collector and a consumer, we will assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."  *Id.* at 128.  Simply stated, the FDCPA is not "intended as a sword to be brandished by debtors who have retained counsel - the very debtors least in need of the acts protections."  *Guerro, supra.* at 941.

In the present case, Kline was represented by counsel in the underlying Foreclosure Action.[23] The Reimer Law Firm exchanged correspondence with attorney Wegner regarding the amount of

---

[23]At the time of his alleged FDCPA violations, plaintiff was actively litigating *Kline I*.  He was actually represented by two sets of lawyers during the relevant time period.

money needed to pay off Kline's mortgage with Wells Fargo.  The Reimer Law Firm did not communicate directly with Kline regarding any allegedly improper fees or costs, and plaintiff makes no such allegation in the Complaint.  Plaintiff's rights were fully protected by his own lawyer, and his FDCPA claims against the Reimer Law Firm must be dismissed as a matter of law.

> **3.**     **Claims Relating to The Collection of Allegedly Improper Fees Are Time-Barred.**

The underlying foreclosure complaint filed by the Reimer Law Firm specifically demanded judgment for the principal amount of $155,515.98 plus interest and subject to allowable charges within the mortgage and promissory note.  (See, Ex. E, ¶ 6).  The promissory note permits the mortgagee to collect its costs and expenses in enforcing the note to the extent not prohibited by applicable law.  (See, promissory note at ¶ 7(E), Ex. A).  The complaint clearly put Kline on notice of the intent to collect the fees and expenses at issue.  In fact, Kline specifically asserted his seventh affirmative defense objecting to payment of these charges.  (See, Ex. G).

In the present case, any FDCPA claim plaintiff may have with respect to the allegedly improper fees and expenses incurred in the Foreclosure Action are barred by the one year statute of limitations.  The foreclosure complaint was filed in March 2007, more than 17 months before Kline filed this complaint in November 2008.  To the extent there was any direct attempt by the Reimer Law Firm to collect the foreclosure related fees and expenses from Kline, it was limited to the filing of the complaint.  All other communications regarding the foreclosure costs were between the Reimer Law Firm and Kline's attorney and therefore fall outside the FDCPA as set forth above.

### E.  Plaintiff's Claims Under The Ohio Consumer Sales Practices Act Also Fail As A Matter of Law.

#### 1.  The Reimer Law Firm is Not Alleged To Be A "Supplier" Under ORC Section 1345.01(B).

In order to fall under the CSPA, a defendant must be a "supplier" as defined by the Act.  This includes any "person engaged in the business of effecting or soliciting consumer transactions, whether or not he deals directly with the consumer." O.R.C. § 1345.01(B).  There is no allegation in the complaint that defendant the Reimer Law Firm is a "Supplier" under that section.  Hence, no CSPA claim has been stated.

#### 2.  The Ohio CSPA Claims Must Fail As A Matter of Law Because There Are No Independent Facts to Support Them.

Common sense dictates that if plaintiff's FDCPA claims are without merit then any cause of action arising out of the Ohio CSPA must also fail as a matter of law.  In *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 411-12 (6th Cir. 1998), the Sixth Circuit affirmed dismissal of a plaintiff's CSPA claims against an attorney where the factual underpinnings for that claim were no different than the FDCPA claims and those failed as a matter of law.  The court stated that "[t]he dismissal of OCSPA claims against ACB and Connors were proper as well." *Id.*

Even assuming that the Reimer Law Firm is a "Supplier" as defined by the CSPA, Kline's allegations do not state a violation of the Act.  In summary fashion, plaintiffs allege that the Reimer Law Firm's "acts and practices are materially deceptive and misleading and deceived plaintiffs," without any further explanation.  (Complaint, ¶¶ 138-139).  Plaintiffs do not specifically allege that anything they were told by the Reimer Law Firm was false; instead, they simply allege that the Reimer Law Firm somehow violated some unspecified section of the Act in its representation of Wells Fargo

-26-

in the Foreclosure Action.  They allege nothing more than the so-called "improper charges."  The case law demonstrates that the charges are supported by substantial state and federal court case authorities (including from this court).  They are also supported by the express language of the mortgage contract and promissory note.  Plaintiff's CSPA allegations fail to meet the minimum standards of even "notice pleading," and do not state a claim for which relief can be granted.

### 3.   Plaintiff's CSPA Class Action Allegations Must be Dismissed.

O.R.C. § 1345.09(B) makes clear that class actions may only be maintained under the CSPA where the conduct being challenged has previously been declared to violate the CSPA by an Ohio court ruling or the Ohio Attorney General.  In *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 6, 2006-Ohio-2869 (2006), the Ohio Supreme Court held in its syllabus:  "A consumer may qualify for class-action certification under Ohio's CSPA *only if* the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by one of the methods identified in R.C. 1345.09(B)." (Emphasis added).  The "methods" set forth in section 1345.09(B) are as follows:

> (B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of § 1345.05 of the Revised Code before the consumer transaction on which the action is based on, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 [1345.03.1] of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of Section 1345.05 of the Revised Code . . .

In turn, section 1345.05(A)(3) provides that the Ohio Attorney General:

> "shall  . . .  make available for public inspection all rules and all other written statements of policy or interpretations adopted or used by the Attorney General in the discharge of the Attorney General's functions,

> together with all judgments, including supporting opinions, by courts
> of this state that determine the rights of the parties and concerning
> which appellate remedies have been exhausted or lost by the
> expiration of the time for appeal, determining that specific acts or
> practices violate [the act].

Here, plaintiffs do not allege that the Reimer Law Firm's conduct is substantially similar to any

conduct found to violate the OCSPA by any rules adopted by the Ohio Attorney General or under

any final judgments and opinions issued by an Ohio court which have been made available for

inspection by the Ohio Attorney General.   Accordingly, the class action allegations must be dismissed

under *Marrone*, as a matter of law

### F. Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law Because There Is No Allegation That Plaintiff Conferred A Benefit Upon The Reimer Law Firm.

Kline alleges that the Reimer Law Firm was "unjustly enriched" by its conduct.   However,

Ohio requires a plaintiff suing for unjust enrichment to allege that he *directly* conferred a benefit on

the defendant:

> To establish a claim for restitution, therefore, a party must demonstrate "(1) a benefit
> conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the
> benefit; and (3) retention of the benefit by the defendant under circumstances where
> it would be unjust to do so without payment ('unjust enrichment')."

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).  Here, Kline does

not allege that he had a contractual relationship with the Reimer Law Firm; in fact, he concedes that

the Reimer Law Firm worked for Wells Fargo.  (Complaint, ¶ 35).  Kline does not allege that he paid

any money directly to the Reimer Law Firm, nor does he allege that he gave the Reimer Law Firm

any non-monetary benefit for which he deserves compensation.  At best, Kline's allegations amount

to a claim that he paid money to Wells Fargo who in turn paid the Reimer Law Firm.  This chain of

causation is too attenuated to state a claim for unjust enrichment under Ohio law.

-28-

In *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286, 2005-Ohio-4985 (2005), the Ohio Supreme Court held that where no economic transaction took place between the plaintiff and defendant, no unjust enrichment claim was stated. Other Ohio Federal District Courts have dismissed unjust enrichment claims where the plaintiff and defendant were not in privity of contract. See, e.g., *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 U.S. Dist. LEXIS 42871 (N.D.Ohio 2007); *Eisenberg v. Anheuser-Busch, Inc.*, 2006 U.S. Dist. LEXIS 4058 (N.D.Ohio 2006). Here, because Kline explicitly acknowledges in his complaint that he did not retain the Reimer Law Firm, confer any direct benefit on it, or was in privity with it, his claim for unjust enrichment must be dismissed.

### G.   Kline's Breach of Contract Claim Must Be Dismissed Because There Was No Contract Between Plaintiff and The Reimer Law Firm (And None Can Be Alleged).

Finally, plaintiff alleges that the Reimer Law Firm's conduct breached "agreements entered into between plaintiffs and defendants" and thereby caused them harm. (Complaint, ¶ 146). But the only alleged "agreement" is the mortgage and note, and, as discussed above, Kline concedes that the Reimer Law Firm was retained by Wells Fargo.

It is indisputable that the Reimer Law Firm is not a party to any contract at issue in this case. "[T]he court may consider documents introduced by the defendant, even if they were not attached to the initial complaint, so long as they were referenced in the complaint and are central to the plaintiff's claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.* Here, the parties to the mortgage and note were Wells Fargo via assignment and Kline.

Because the complaint does not allege the existence of a contract between Kline and the Reimer Law Firm, and because the contract at issue does not name the Reimer Law Firm as a party, Kline's claim for breach of contract against the Reimer Law Firm must be dismissed.  Indeed, the breach of contract claim is frivolous.

## IV.   CONCLUSION

Plaintiffs' complaint is facially defective.  Its allegations, even if true, do not state a claim for relief under the FDCPA or the CSPA.  Further, the allegations do not sufficiently state a claim for unjust enrichment, and a cursory review of the mortgage contract at issue reveals that the Reimer Law Firm is not a party to the contract allegedly breached.  Accordingly, all of the claims against the Reimer Law Firm should be dismissed, and judgment should be entered in the firm's favor.

Respectfully submitted,

s/Lori E. Brown
**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480)**
GALLAGHER SHARP
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
(216) 241-5310 Office
(216) 241-1608 Telecopier
E-mail:  tbrick@gallaghersharp.com
lbrown@gallaghersharp.com

**ERIK J. WINELAND (0072088)**
**GALLAGHER SHARP**
420 Madison Avenue, Suite 1250
Toledo, Ohio 43604
(419) 241-4863 Office
(419) 241-4866 Telecopier
E-mail:  ewineland@gallaghersharp.com

**Attorneys for Defendant Reimer, Lorber &**
**Arnovitz Co., L.P.A.**

-30-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March  6th  2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<div style="margin-left:50%">

s/Lori E. Brown
_____
TIMOTHY T. BRICK (0040526)
LORI E. BROWN (0071480)
ERIK J. WINELAND (0072088)
GALLAGHER SHARP
**Attorneys Defendant Reimer, Lorber & Arnovitz Co., L.P.A.**

</div>

**APPENDIX**

Exhibit A        Certified Copy of Kline's Mortgage

Exhibit B        Copy of Kline's Note

Exhibit C        Certified Copy of Plaintiff's Reply to Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and Notice of Filing Affidavit in Foreclosure Action

Exhibit D        The January 16, 2007 Letter from HomEq

Exhibit E        Certified Copy of Complaint in Foreclosure Action

Exhibit F        Certified Copy of  Docket in Foreclosure Action

Exhibit G        Certified Copy of Answer and Counterclaim in Foreclosure Action

Exhibit H        Certified Copy of Memorandum in Opposition to Motion to Dismiss Counterclaim

Exhibit I        Certified Copy of Memorandum in Opposition to Plaintiff's Motion for Summary Judgment

Exhibit J        Certified Copy of October 23, 2007 Judgment Entry in Foreclosure Action

Exhibit K        October 30, 2007 Correspondence from attorney Wegner

Exhibit L        November 8, 2007 Correspondence from attorney Wegner

Exhibit M        November 15, 2007 Pay-Off Letter to attorney Wegner

Exhibit N        February 7, 2008 Letter to attorney Wegner Itemizing Foreclosure Costs