# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE KLINE, et al., | : | |
| Plaintiffs, | : | Case No. 3:08cv408 |
| vs. | : | District Judge Walter Herbert Rice |
| MORTGAGE ELECTRONIC SECURITY SYSTEMS, et al., | : | Magistrate Judge Sharon L. Ovington |
| Defendants. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

This matter is before the Court on a motion to dismiss filed by Defendant Lerner, Sampson & Rothfuss ["LS&R"] (Doc. #18), as well as Plaintiffs' memorandum in opposition thereto (Doc. #77), Defendant LS&R's reply memorandum (Doc. #95), and the record as a whole.

## II. PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

On November 10, 2008, five individual Plaintiffs (Eugene Kline[2]; Jon Shayne

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]The Court notes that although Plaintiffs' opposing memorandum twice refers to both "Eugene and Constance Kline" or to "the Klines,," plural, as Plaintiffs (*see* Doc. #77 at 1), Plaintiffs' complaint does not name Constance Kline as a Plaintiff (*see* Doc. #1), and their opposing memorandum also makes repeated references to "Eugene Kline" or "Kline" singularly as the relevant party. (Doc. #77 at 4-5).

Jones; Diana L. Hughes; and George and Carol Ross, presumably husband and wife), on behalf of themselves and "all others similarly situated," filed a putative class action complaint against multiple Defendants, setting forth federal claims under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, *et seq.*; the Truth in Lending Act, 15 U.S.C. § 1666d; and the Class Action Fairness Act, 28 U.S.C. § 1332(d); as well as state law claims under the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*; and for breach of contract and unjust enrichment. (Doc. #1). All Plaintiffs claim to have been owners of property secured by residential mortgages owned, held, serviced or otherwise controlled by Defendants, who allegedly "have engaged in misconduct in connection with the servicing of" those mortgages. (*Id.* at ¶3).

On February 2, 2009, Defendant Lerner, Sampson & Rothfuss, a law firm, became the first of many Defendants to move for dismissal of Plaintiffs' complaint in its entirety. (Doc. #18). In support of its motion, LS&R offers documents from outside the pleadings that it nonetheless contends are appropriate for consideration on this motion to dismiss. (*See id.*, attached Exhs.). LS&R first argues that Plaintiffs Jones, Hughes and the Rosses have failed to state viable FDCPA claims against LS&R because their allegations are premised on proofs of claim filed by LS&R in relation to said Plaintiffs' Chapter 13 bankruptcy actions, as to which the Bankruptcy Code provides the exclusive remedy. (*Id.* at 11-12). In addition, LS&R urges that the one-year statute of limitations applicable to FDCPA claims lapsed prior to the filing of Plaintiffs' complaint as to any action premised on the proofs of claim filed in Hughes's and the Rosses' bankruptcy cases. (*Id.* at 12-13).

Asserting a distinctly different defense as to Plaintiff Kline's FDCPA claim, LS&R urges that such claim is not actionable against LS&R because the letters on which it is based were sent to Kline's counsel, not to Kline individually, and thus are not encompassed by the FDCPA's protections. (*Id.* at 13-15). LS&R further notes that Plaintiffs have directed no Truth in Lending Act allegations against it (*id.* at 15), and argues that Plaintiffs' state law claims under the Ohio Consumer Sales Practices Act and for unjust enrichment and breach of contract are not cognizable as to LS&R. (*Id.* at 15-17). Finally, LS&R urges that as a debt-collection law firm, it is entitled to "absolute immunity" from the Jones's, Hughes's and Rosses' claims premised on unsworn court filings. (*Id.* at 18-19). LS&R thus requests that all named Plaintiffs' claims against it be dismissed in their entirety.

In opposing LS&R's dismissal request, Plaintiffs first assert that Plaintiffs Kline, Hughes and the Rosses all have presented cognizable FDCPA claims based on LS&R's efforts to collect attorneys fees from them, because "contracts for the payment of attorney's fees upon the default of a debt obligation are void and unenforceable" under Ohio law. (Doc. #77 at 1, 2-5). Plaintiffs further urge that federal bankruptcy law does not "preempt" Plaintiffs Jones's, Hughes's and Rosses' FDCPA claims (*id.* at 5-7), and that the statute of limitations likewise does not bar their FDCPA claims, due to LS&R's continued efforts after the filing dates of the bankruptcy proofs of claim to collect the amounts stated in those documents. (*Id.* at 7-10).

Plaintiffs also urge that they have set forth viable state law claims under the Ohio

Consumer Sales Practices Act and for unjust enrichment.³ (*Id.* at 10-13). Finally, Plaintiffs contest LS&R's claim to absolute immunity for its role in filing bankruptcy proofs of claim. (*Id.* at 14). They ask that LS&R's motion to dismiss "be denied in all respects." (*Id.*).

LS&R's reply attempts to counter all points raised in Plaintiffs' opposing memorandum. (Doc. #95). The firm first urges that Ohio law expressly does <u>not</u> prohibit contract provisions requiring defaulting borrowers to pay attorneys fees. (*Id.* at 2-5). Defendant then reiterates its position that the FDCPA does not apply to communications between attorneys. (*Id.* at 5). Clarifying its argument to be not that the Bankruptcy Code <u>preempts</u> the FDCPA, but rather that the bankruptcy court is the proper forum for resolving claims arising from bankruptcy proofs of claim, LS&R again asserts that such bankruptcy filings cannot provide a proper basis for a claim under the FDCPA. (*Id.* at 5-7). LS&R also challenges as contrary to a prior decision of this Court Plaintiffs' effort "to circumvent the FDCPA's one-year limitations period" by relying on continuing collection efforts as making their claims timely. (*Id.* at 7-9).

Additionally, LS&R again argues that the allegations of Plaintiffs' complaint simply do not satisfy the appropriate pleading standard as to their state law claims (*id.* at 10-12), and notes that Plaintiffs do not even attempt to defend the viability of their breach of contract claim as against LS&R. (*Id.* at 12). Finally, LS&R continues to advance its

---

³Significantly, however, their opposing memorandum is silent as to the breach of contract claim. (*See* Doc. #77).

"absolute immunity" argument as to its bankruptcy filings. (*Id.* at 13-14). The firm again urges dismissal of Plaintiffs' entire complaint against LS&R.

## III. APPLICABLE STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, *cert. granted*, ___ U.S. ___, 129 S. Ct. 2430, 2431 (May 26, 2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombley*, 550 U.S. at 555). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

In the end, determining whether a complaint states "a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

## IV. DISCUSSION

### A. FDCPA Claims

The relevant provisions of the FDCPA state as follows, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (2) The false representation of –
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
> * * *
>
> (5) The threat to take any action that cannot legally be taken . . .

15 U.S.C. § 1962e.

Plaintiffs' First Claim for Relief alleges that LS&R is a "debt collector" that, along with other Defendants, has "attempted to collect amounts for attorneys' fees, service of process fees, title fees, preliminary judicial reports, final judicial reports and other costs and fees from [P]laintiffs which were not owed, in violation of § 1962e." (Doc. #1 at ¶¶ 128-29). Continuing, the complaint alleges that the stated Defendants in fact "have collected amounts" for such un-owed fees, and also have "routinely overcharg[ed] delinquent borrowers for fees and costs." (*Id.* at ¶¶ 130-31). The complaint does not elaborate further on the specific nature or source of Defendants' demands for payment.

In conjunction with its motion to dismiss, however, Defendant LS&R has produced copies of the documents that it claims provide the basis for Plaintiffs' claims herein. (*See* Exhs. attached to Doc. #18). Plaintiffs' opposing memorandum seems neither to challenge the assertion that such documents accurately represent the writings underlying Plaintiffs' claims against LS&R, nor to contest the propriety of considering such documents in the context of a motion to dismiss. (*See* Doc. #77). Indeed, the same memorandum implicitly concedes that Plaintiffs' causes of action are premised on LS&R's attempts to collect and/or actually collecting on the amounts reflected in certain documents thus produced. (*See, e.g., id*. at 5, 7).

As Defendant LS&R aptly notes, on a motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim upon which relief may be granted, the reviewing court ordinarily is restricted to matters set forth within the pleadings. *See, e.g., Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Said Defendant's memorandum also accurately captures, however, the recognition by courts in this Circuit of exceptions to that general rule. *See, e.g., id.; Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001); *Brown v. City of Upper Arlington*, Case No. 2:08-CV-849, 2008 WL 4758689, at *5 (S.D. Ohio Oct. 29, 2008) (McCann King, M.J.); *Kline v. HomEq*, Case No. 3:07-CV-084, at 6 (S.D. Ohio Nov. 25, 2008) (Rose, J.). Particularly in light of Plaintiffs' failure to seek to strike or to otherwise object to the documents produced in conjunction with Defendant LS&R's motion to dismiss, the Court concludes that such documents appropriately may be considered with respect to that motion.

1. <u>FDCPA claims based on amounts in bankruptcy proofs of claim</u>

LS&R contends that the alleged debt amounts on which Plaintiffs Jones's, Hughes's and Rosses' FDCPA claims against it are premised are those amounts memorialized in the proof of claim forms that LS&R filed as counsel on behalf of Defendants Wells Fargo and Mortgage Electronic Registration Systems[4] ["MERS"], mortgagees in said Plaintiffs' separate Chapter 13 bankruptcy proceedings. (Doc. #18 at 9-10, 11). Defendant directs this Court to the decision in *In re Rice-Etherly*, 336 B.R. 308 (Bankr. E.D. Mich. 2006), as establishing that bankruptcy proofs of claim cannot provide a basis for maintaining an FDCPA claim.

The Chapter 13 debtor in *Rice-Etherly* initiated an adversary FDCPA claim against a law firm for filing a bankruptcy proof of claim alleged to include attorney fees and other amounts not recoverable under applicable state law. *Id.* at 311-12. The bankruptcy court there granted the law firm's motion to dismiss. *Id.* at 310. Although this case does differ in that Plaintiffs here did not attempt to pursue FDCPA claims within their bankruptcy proceedings, electing instead to file a separate FDCPA complaint in the district court, the rationale articulated in *Rice-Etherly* is no less apt. "The practice of debtors deliberately bypassing the Bankruptcy Code's objection process in favor of alternative litigation would undermine the entire bankruptcy system." *Id.* at 312-13. As such, a debtor should not be permitted to contest the amount of a bankruptcy proof of claim "by recasting it as a

---

[4]Apparently misidentified in the heading of Plaintiffs' complaint as "Mortgage Electronic Security [sic] Systems" (Doc. #1 at 1), but correctly identified within the body of the complaint. (*Id.* at ¶ 14).

claim under the Fair Debt Collection Practices Act." *Id.* at 313.

While no other courts in this Circuit were found to have addressed precisely the same issue, similar rationale articulated by many other courts in many other jurisdictions – including some relied on by the court in *Rice-Etherly* – convince this Court that the FDCPA does not present the proper means for vindicating a debtor's rights as to improper amounts that a creditor sought to assess via a bankruptcy proof of claim filing. Particularly persuasive is the decision in *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC*, No. 98 C 4280, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26, 1999) (finding specifically "that the FDCPA does not apply to proofs of claim filed in bankruptcy proceedings," and dismissing an FDCPA complaint brought in district court on that basis). *See also In re Varona*, 388 B.R. 705, 719 (Bankr. E.D. Va. 2008) ("It appears a majority of courts that have considered whether a proof of claim may be the subject of a FDCPA violation have concluded the FDCPA is not intended to provide a remedy for claims filed in a bankruptcy proceeding"); *In re Gilliland*, 386 B.R. 622, 623-24 (Bankr. N.D. Miss. 2008); *Kaiser v. Braje & Nelson, LLP*, No. 3:04-CV-405, 2006 WL 1285143, at *7 (N.D. Ind. May 5 2006) ("The bankruptcy court is not only an appropriate forum to contest the amount of a proof of claim . . . but also to seek costs for defending claims a debtor believes to be false"); *In re Abramson*, 313 B.R. 195, 198 (Bankr. W.D. Pa. 2004 ) ("We agree with the numerous courts that have concluded that, once a debtor is in bankruptcy court, the debtor's remedies to attack an allegedly inflated proof of claim are limited to those provided for in the Bankruptcy Code"); *In re Cooper*,

253 B.R. 286 (Bankr. N.D. Fla. 2000) (a debtor "can only attack a proof of claim in the bankruptcy court, and only by using the remedies provided in the Bankruptcy Code"); *Gray-Mapp v. Sherman*, No. 98C5423, 1999 WL 1893911, at * 3 (N.D. Ill. Oct. 21, 1999) (as "[n]othing in either the Bankruptcy Code or the FDCPA suggests that a debtor should be permitted to bypass the procedural safeguards in the Code in favor of asserting potentially more lucrative claims under the FDCPA," and "nothing in the FDCPA suggests that it is intended as an overlay to the protections already in place in the bankruptcy proceedings," dismissal is warranted as to an FDCPA claim based on allegedly inflated proofs of claim filed in a bankruptcy case). After assessing the weight of authority and considering the opposing rationale, this Court chooses not to adopt the view of that minority of courts reflecting some disagreement with that conclusion. *See, e.g., Diamante v. Solomon & Solomon, PC,* No. 1:99CV1339, 2001 WL 1217226, at **3-6 (N.D.N.Y. Sept. 18, 2001).

  The four subject Plaintiffs do not deny that the allegedly false representations on which their FDCPA action relies were those introduced via the bankruptcy proofs of claim, but nonetheless attempt to couch their claims as being based on efforts to <u>collect</u> on those filings, as distinguished from being based on the filings themselves. (Doc. #77 at 7). Plaintiffs' parsing to that effect does not change the Court's impression as to the appropriate result, particularly because Plaintiffs' complaint identifies no specific instances of culpable conduct attributable to Defendant LS&R during the course of any collection efforts apart from LS&R's mere act of filing the contested bankruptcy proofs

of claim. (*See* Doc. #1); *see also Iqbal*, 129 S. Ct. at 1949-54.

Moreover, in a strikingly similar prior action brought by the Klines against two of the same Defendants named here, this Court previously rejected the argument that a debtor's payments on contested sums extend the running of the limitations' period beyond the date of the debt collector's objectionable communication. *See Kline v. HomEq*, Case No. 3:07-CV-084, at 6 (S.D. Ohio Nov. 25, 2008) (Rose, J.). In reconsidering and affirming the dismissal of that prior action, Judge Rose noted that "it must be some action of [the Defendant] that gives rise to the cause of action." *Id.* at 6. Aside from the filing the bankruptcy proof of claims – an action that we have found, *supra*, is not amenable to FDCPA challenge – no specific "action" by Defendant LS&R that could give rise to FDCPA liability has identified by Plaintiffs here. Accordingly, Defendant LS&R's motion to dismiss Plaintiffs Jones's, Hughes's and Rosses' FDCPA claims as precluded[5] by the Bankruptcy Code is well taken.

Having so concluded, this Court need not analyze Defendant LS&R's additional arguments that Plaintiffs Hughes's and the Rosses' FDCPA claims based on bankruptcy proofs of claim all filed before May 19, 2007 also would be barred by the applicable one year statute of limitations[6] (*see* Doc. #18 at 12-13), and that LS&R enjoys absolute immunity relative to the bankruptcy proofs of claim filed as to Jones, Hughes and the

---

[5]The assertion in Defendant LS&R's reply that the issue is one of preclusion rather than one of <u>preemption</u> as suggested by Plaintiffs (*see* Doc. #77 at ) also is well taken. (*See* Doc. #95 at 6-7); *see also, e.g., Randolph v. IMBS*, 368 F.3d 726, 730 (7th Cir. 2004) ("One federal statute does not preempt another").

[6]*But see Kline v. HomEq*, *supra* at 6, suggesting that such a statute of limitations defense would have merit.

Rosses. (*Id.* at 18-19). Irrespective of those other defenses, those four Plaintiffs' FDCPA claims against Defendant LS&R stemming from proofs of claim that LS&R filed in Plaintiffs' bankruptcy cases should be dismissed with prejudice.

     2.    <u>FDCPA claims based on correspondence with debtor's counsel</u>

Also well taken is Defendant LS&R's argument that any supposedly false representations contained in correspondence between LS&R and Plaintiff Kline's counsel could not give rise to FDCPA liability because such representations were not conveyed by the debt collector to the individual consumer. (*See* Doc. #18 at 13-15). In a well-reasoned opinion, the United States Court of Appeals for the Ninth Circuit held that the FDCPA does not apply to "communications directed solely to a debtor's attorney." *See Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). Indeed, based on its survey of existing law, that Court stated that "[a]ll but one published federal decision to have given reasoned consideration to the question has determined that communications to a debtor's attorney are not actionable under the Act." *Id.* at 936 (citations omitted).

This Court finds the rationale underlying the *Guerrero* decision to be compelling, particularly the Ninth Circuit's observations that "when 'an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior,'" *id.* at 937 (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127-28 (2$^{\text{d}}$ Cir. 2002)), and that applying the FDCPA's strictures "to communications sent only to a debtor's attorney" would frustrate the purposes of the Act, "particularly in the context of

settlement negotiations," producing "a perverse result that Congress could never have intended." *Id.* at 938-39.

The primary thrust of Plaintiffs' opposing arguments as to this claim – *i.e.*, that Kline has stated a cognizable FDCPA claim because contracts for collection of attorney fees on default are "void and unenforceable" under Ohio law (Doc. #77 at 1-5) (citing *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546 (2009)) – simply offers nothing to counter Defendants' argument that efforts to collect even clearly prohibited fees are not actionable under the FDCPA if collection efforts are directed toward a debtor's attorney rather than to the debtor himself. (*See* Doc. #18 at 13-15; Doc. #95 at 5).

Equally unavailing is Plaintiffs' additional contention that Kline's claim "is not premised . . . on an alleged technical violation of the FDCPA based on improper verbiage in a letter, but is rather based on the repeated collection of fees and expenses which are absolutely prohibited from being passed onto borrowers under applicable law." (Doc. #77 at 5). Despite their opposing memorandum's conclusory reference to recurring collection of prohibited sums, Plaintiffs' complaint once again fails to enumerate "sufficient factual matter" regarding Defendant LS&R's conduct in undertaking to collect purportedly proscribed fees from Plaintiff Kline to show any basis for liability separate and distinct from LS&R's collection-oriented communications to Kline's attorney. (*See* Doc. #1 at ¶¶ 126-132); *see also Iqbal*, 129 S. Ct. at 1949. Again, as would seem evident, "it must be some action of [the Defendant] that gives rise to the cause of action." *Kline v. HomEq*, Case No. 3:07-CV-084 at 6. Plaintiffs' void of factual allegations as to any

discrete improper "action" attributable to Defendant TS&R compels the Court to conclude that Plaintiff Kline's FDCPA claim against TS&R, too, must be dismissed.

### B. Breach of Contract Claims

Defendant LS&R moves to dismiss Plaintiffs' breach of contract claim against LS&R as "utterly meritless," observing that Plaintiffs' complaint nowhere alleges "that any written or unwritten agreements existed at any time" with LS&R, and affirmatively denying that any such agreement exists with any Plaintiff. (Doc. #18 at 17).

Not only does even the most liberal reading of Plaintiffs' asserted Fifth Claim for Relief confirm that Plaintiffs' complaint sets forth no factual basis on which to find that a contractual relationship existed between LS&R and any Plaintiff (*see* Doc. #1 at ¶¶ 145-147), but as LS&R's reply aptly notes (*see* Doc. #95 at 12), Plaintiffs' opposing memorandum wholly omits to mention any purported reason as to why Plaintiffs should be permitted to maintain a breach of contract claim against Defendant LS&R. (*See* Doc. #77). Absent any plausible basis on the face of Plaintiffs' complaint for allowing a breach of contract claim to go forward against Defendant LS&R, the Court finds that dismissal of such claim is warranted as to that Defendant. *See Iqbal*, 129 S. Ct. at 1949.

### C. Remaining Supplemental State Law Claims

Pursuant to the applicable federal jurisdictional statute, "in any civil action of which the district courts have original jurisdiction," such courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §

1367(a). Nevertheless, a district court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Having dismissed Plaintiffs' sole jurisdiction-conferring federal claim against this particular Defendant, this Court would be reluctant to assume supplemental jurisdiction over Plaintiff's remaining Ohio Consumer Sales Practices Act and unjust enrichment claims against LS&R. Choosing to extend discretionary jurisdiction would merely retain one additional Defendant in an action already replete with multiple Defendants possessing differing interests and alleged to have engaged in differing conduct, simply for purposes of resolving two state law claims more appropriately entrusted to Ohio courts better suited to interpret and apply their own state law. Accordingly, this Court should refrain from addressing the merits of those remaining state law claims, instead choosing to dismiss them without prejudice, due to declining to exercise supplemental jurisdiction.

**IT THEREFORE IS RECOMMENDED THAT**:

1. Defendant Lerner, Sampson & Rothfuss's motion to dismiss (Doc. #18) be GRANTED pursuant to Fed. R. Civ. P. 12(b)(6) as to all individual Plaintiffs' claims against said Defendant set forth in their complaint's First and Fifth Claims for Relief <u>only</u>, and that Plaintiffs' corresponding Fair Debt Collection Practices Act and breach of contract claims (Doc. #1 at ¶¶126-132, 145-147) be DISMISSED WITH PREJUDICE as against such Defendant <u>only</u>;

2. Defendant Lerner, Sampson & Rothfuss's motion to dismiss (Doc. #18) be GRANTED pursuant to 28 U.S.C. § 1367(c)(3) as to all Plaintiffs' remaining supplemental state law claims against said Defendant set forth in their complaint's Third and Fourth Claims for Relief, and that Plaintiffs' corresponding Ohio Consumer Sales

Practices Act and unjust enrichment claims (Doc. #1 at ¶¶ 137-140, 141-144) be DISMISSED WITHOUT PREJUDICE as against such Defendant only;

3. The Clerk of Courts enter judgment in favor of Defendant Lerner, Sampson & Rothfuss only and against all Plaintiffs in accordance with the foregoing; and

4. This matter remain pending on the docket of this Court as to all claims against all other Defendants, and proceed in accordance with the established schedule.


July 10, 2009                                    s/Sharon L. Ovington
                                                         Sharon L. Ovington
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten [10] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen [13] days (excluding intervening Saturdays, Sundays and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten [10] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Am,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).