**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

EUGENE KLINE, *et al.*,                          :

                    Plaintiffs,          :          Case No. 3:08cv408

   vs.                                              :          District Judge Walter Herbert Rice

MORTGAGE ELECTRONIC          :          Magistrate Judge Sharon L. Ovington
   SECURITY SYSTEMS, *et al.*,
                               :

                    Defendants.

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

This matter is before the Court on Defendant Mortgage Electronic

Registration Systems, Inc.'s ["MERS"][2] motion to dismiss (Doc. #31) and

memorandum in support thereof (Doc. #33); as well as Plaintiffs' memorandum

in opposition thereto (Doc. #107); Defendant MERS' reply memorandum (Doc.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although the caption of Plaintiffs' complaint incorrectly denominates this Defendant, Defendant is correctly identified in the body of Plaintiff's complaint (*see* Doc. #1 at ¶14) and here.

#94)[3] and notice of supplemental authority (Doc. #120); and the record as a whole.

## II.    PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

On November 10, 2008, five individual Plaintiffs (Eugene Kline; Jon Shayne Jones; Diana L. Hughes; and George and Carol Ross, husband and wife), on behalf of themselves and "all others similarly situated," filed a putative class action complaint against multiple Defendants, setting forth federal claims under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, *et seq.*; the Truth in Lending Act ["TILA"], 15 U.S.C. § 1666d; and the Class Action Fairness Act ["CAFA"], 28 U.S.C. § 1332(d); as well as state law claims under the Ohio Consumer Sales Practices Act ["OCSPA"], Ohio Rev. Code § 1345.01, *et seq.*; and for breach of contract and unjust enrichment.  (Doc. #1).  All Plaintiffs claim to have been owners of property secured by residential mortgages owned, held, serviced or otherwise controlled by Defendants, who allegedly "have engaged in misconduct in connection with the servicing of" those mortgages.  (*Id.* at ¶3).

On March 6, 2009, Defendant MERS became one of many Defendants herein to move for judgment as to all or part of Plaintiffs' complaint.  (Doc. #31;

---

[3]The docket numbers assigned to Plaintiffs' opposing memorandum and Defendant MERS' reply are out of sequence because Plaintiffs' memorandum apparently was stricken for exceeding the page limit set by S.D. Ohio Civ. R. 7.2(a)(3) when first filed (*see* Doc. ##78, 79), and later refiled.  (*See* Doc. ##89, 107).

*see also* Doc. ##18, 30, 35, 67, 72, 74; 132).  Defendant MERS maintains that it became involved in the matters now before this Court as a nominee for three different lenders that had made separate loans to Defendants Kline, Hughes and the Rosses, secured by mortgages on said Defendants' respective properties. That account of Defendant MERS' role is consistent with both the allegations of the complaint (*see* Doc. #1) and certain mortgage documents offered by Defendant MERS in support of its Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  (*See* Doc. #33, attached Exhs.).[4]

According to the complaint, Defendant MERS was the mortgagee, "as nominee for [D]efendant WMC Mortgage" ["WMC"], as to a second mortgage on Plaintiff Kline's property, securing a loan made by WMC.  (Doc. #1 at ¶64; *see also* Doc. #33, Exh. A [Kline mortgage]).  Defendant MERS also was a mortgagee "as nominee" for Defendant Heartland Home Finance, Inc., which loaned Plaintiff Hughes money secured by a mortgage on her home.  (Doc. #1 at ¶108; *see also* Doc. #33, Exh. B).  Finally, Defendant MERS also acted "as a nominee for" Preferred Mortgage Consultants, Inc., a lender whose loan to the Rosses was

---

[4]Although such documents are not part of the pleadings, Defendant MERS urges that they nonetheless are appropriate for consideration on its motion to dismiss.  (*See* Doc. #33 at 3, n.2).

secured by a mortgage on their property.  (*See* Doc. #33, Exh. C).

Noting that Plaintiff Jones has not asserted any claims against MERS (*see* Doc. #33 at 3, n.1), MERS limits its arguments to Plaintiffs Kline's, Hughes' and the Rosses' claims against it.  MERS argues that all four such Plaintiffs' FDCPA claims must fail, because MERS is not subject to liability under the FDCPA, Plaintiffs have not shown that the loans at issue are subject to the FDCPA, and because MERS' actions do not constitute collection of a debt under the FDCPA. MERS also urges that all Plaintiffs' OCSPA claims should be dismissed for failure to allege that Plaintiffs' respective loans involved consumer transactions subject to OCSPA, or facts showing that MERS engaged in unfair, deceptive or unconscionable acts.  (*Id.* at 2, 15-18).  Finally, MERS urges that all Plaintiffs' unjust enrichment and breach of contract claims should be dismissed for failure to show that Plaintiffs conferred a benefit on MERS or that MERS breached their mortgage agreements.  (*Id.* at 2, 18-20).

MERS also argues that because the FDCPA claims set forth against it by Plaintiffs Hughes and the Rosses relate to the propriety of proofs of claim filed by MERS in such Plaintiffs' respective bankruptcy actions, those claims must be pursued through those bankruptcy actions.  (Doc. #33 at 2, 6-7).  Additionally, MERS asserts that those Plaintiffs' FDCPA claims also are barred by the statute of

limitations (*id.* at 2, 8-12), and that their state law claims are preempted by the Bankruptcy Code.  (*Id.* at 2, 7-8).

As to Plaintiff Kline, MERS asserts that he cannot maintain an action under TILA because he has not alleged that his loan constitutes a consumer transaction or that he ever had a credit balance with MERS.  (*Id.* at 2, 13-14).  Defendant MERS thus asks that all of those four Plaintiffs' claims against it be dismissed.

In opposing MERS' dismissal request, Plaintiffs Kline, Hughes and the Rosses contend that the complaint sets forth cognizable claims by alleging that MERS made affirmative misrepresentations regarding ownership and assignment of the title to Plaintiff Kline's mortgage, and that MERS attempted to and <u>did</u> collect attorneys fees and other prohibited fees and expenses from those four Plaintiffs and others.  (Doc. #107 at 2-3).  They urge that federal bankruptcy law neither preempts nor otherwise mandates exclusive bankruptcy court jurisdiction over Plaintiffs Hughes' and Rosses' FDCPA and state law claims.  (*Id.* at 4-11).  They also urge that MERS cannot escape liability based on its own assertions that it is neither a debt collector nor a creditor (*id.* at 11-14), and that the statute of limitations does not bar Hughes' and the Rosses' FDCPA claims, given MERS' continued efforts to collect the amounts stated in the bankruptcy proof of claims.  (*Id.* at 14-17).  Plaintiffs also contend that their complaint

adequately alleges that their loans were for purposes that qualify for OCSPA and TILA protection. (*Id.* at 17-21). They thus ask that MERS' motion to dismiss "be denied in all respects." (*Id.* at 21).

MERS' reply asserts that, despite the board allegations in their opposing memorandum, Plaintiffs Kline, Hughes and the Rosses have identified neither specific facts in their complaint nor legal authority demonstrating that MERS is liable to them. (Doc. #94 at 1-2). MERS reiterates its bankruptcy jurisdiction and preemption arguments (*id.* at 2-6); its inapplicability and/or failure of proof arguments (*id.* at 6-7, 8-13), and its statute of limitations argument. (*Id.* at 7-8). It also urges that Plaintiffs' failure to address MERS' arguments regarding Plaintiffs' breach of contract and unjust enrichment claims is enough to warrant dismissal of those claims. (*Id.* at 13-14). Finally, MERS proffers a later federal district court case in support of its argument that it is not a debt collector for FDCPA purposes. (Doc. #120).

## III.   APPLICABLE STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949, *cert. granted*, ___ U.S. ___, 129 S. Ct. 2430, 2431 (May 26, 2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombley*, 550 U.S. at 555). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

In the end, determining whether a complaint states "a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

## IV.    DISCUSSION

## Consideration of Materials From Outside the Pleadings

Plaintiffs' First Claim for Relief alleges that MERS is a "debt collector" that, along with other Defendants, has "attempted to collect amounts for attorneys' fees, service of process fees, title fees, preliminary judicial reports, final judicial reports and other costs and fees from [P]laintiffs which were not owed, in

violation of § 1962e."  (Doc. #1 at ¶¶ 128-29).  Continuing, the complaint alleges that the named Defendants in fact "have collected amounts" for such un-owed fees, and also have "routinely overcharg[ed] delinquent borrowers for fees and costs."  (*Id.* at ¶¶ 130-31).  The complaint does not elaborate further on the specific nature or source of Defendants' demands for payment.

In conjunction with its motion to dismiss, however, Defendant MERS has produced copies of the documents that it claims provide the basis for Plaintiffs' claims herein.  (*See* Doc. #33, Exhs. D-F).  Plaintiffs' opposing memorandum does not appear to challenge the assertion that such documents accurately represent the writings underlying Plaintiffs' claims against MERS, nor to contest the propriety of considering such documents in the context of a motion to dismiss. (*See* Doc. #107).  Indeed, the same memorandum implicitly concedes that Plaintiffs Hughes' and the Rosses' causes of action are premised at least in part on MERS' attempts to collect and/or actually collecting on the amounts reflected in the documents thus produced.  (*See id.* at 5-6).

A court considering a motion under Fed. R. Civ. P. 12(b)(6) ordinarily is restricted to matters set forth within the pleadings.  *See, e.g., Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).  Courts in this Circuit, however, have recognized exceptions to that general rule.  *See, e.g., id.; Armengau v. Cline*, 7 Fed. Appx. 336, 344 (6th Cir. 2001); *Brown v. City of Upper Arlington*, Case No. 2:08-CV-849, 2008

WL 4758689, at *5 (S.D. Ohio Oct. 29, 2008) (McCann King, M.J.); *Kline v. HomEq*, Case No. 3:07-CV-084, at 6 (S.D. Ohio Nov. 25, 2008) (Rose, J.). Particularly in light of Plaintiffs' failure to seek to strike or to otherwise object to the documents produced in conjunction with Defendant MERS' motion to dismiss, the Court concludes that such documents appropriately may be considered with respect to that motion.

**Analysis of Federal Claims**

    **A.**     **FDCPA Claims of Defendants Kline, Hughes and the Rosses**

Defendant MERS sets forth the following three grounds on which it asserts that dismissal of all four Plaintiffs' FDCPA claims against it is warranted: 1) that MERS is not a "debt collector" subject to liability under the FDCPA; 2) that Plaintiffs have not shown that the loans at issue are subject to the FDCPA; and 3) that MERS' actions as alleged do not constitute collection of a "debt" under the FDCPA. (Doc. #33 at 2, 9-12). The Court will address these arguments in order.

    *MERS Not a "Debt Collector"*

The specific provisions of the FDCPA on which Plaintiffs' First Claim for Relief relies (*see* Doc. #1 at 23-24) state as follows, in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

* * *

       (2) The false representation of –

              (A) the character, amount, or legal status of any debt; or

              (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

* * *

       (5) The threat to take any action that cannot legally be taken . . .

15 U.S.C. § 1692e, and:

       A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

       (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

* * *

15 U.S.C. § 1692f.

    "As a threshold matter, the FDCPA applies only to a debt collector who

engages in practices prohibited by the Act in an attempt to collect a consumer

debt." *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp.2d 1178, 1182 (D. Ariz. 2009) (citing *Mabe v. G.C. Serv. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994)). Under 15 U.S.C. § 1692a(6), a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." "Creditors and their fiduciaries," however, "are not 'debt collectors' subject to the FDCPA." *Mansour*, 418 F. Supp.2d at 1182 (citing 15 U.S.C. §§ 1692a(4), (6)(F)) (footnote omitted).

According to the Fifth Circuit, "<u>mortgagees</u> and <u>their</u> <u>beneficiaries</u>, including mortgage servicing companies, <u>are</u> <u>not</u> <u>debt</u> <u>collectors</u> subject to the FDCPA." *Id.* (emphasis added) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.1985) (finding that neither mortgage servicing company nor pre-default assignee on promissory note was debt collector)). The FDCPA's legislative history also lends support to the notion that mortgagees and their assignees, servicing companies, and trustee fiduciaries are not intended to be included in the definition of "debt collector." *See Perrry*, 756 F.2d at 1208; *Croce v. Trinity Mortgage Assurance* Corp., No. 2:08-CV-01612-KID-PAL, 2009 WL 3172119, at *2 (D. Nev. Sept. 28, 2009) (attached to Doc. #120). Both cite S. Rep. No. 95-382, at 3-4 (1977), U.S. Code Cong. & Admin. News 1977, pp. 1695, 1698 ("[T]he

committee does not intend the definition [of "debt collector"] to cover the

activities of trust departments, escrow companies, or other bona fide fiduciaries;

the collection of debts, such as mortgages and student loans, by persons who

originated such loans; [or] mortgage service companies and others who service

outstanding debts for others, so long as the debts were not in default when taken

for servicing[.]").

Within this Circuit, too, courts have recognized that "the FDCPA appl[ies]

only to debt collectors and not to creditors collecting their own debts or to loan

servicers," even if "the subject loan was never properly assigned or transferred"

and the defendant party is not "in the chain of title at the recorder's office." *See,

e.g., Bridge v. Ocwen Fed. Bank*, – F. Supp.2d –, 2009 WL 2781103, at *4 (N.D. Ohio

2009) (emphasis added).

MERS urges that because it acted solely as a "mortgagee" with respect to

Plaintiffs' loans, it was not a "debt collector," and thus not subject to liability

under the FDCPA.  (Doc. #33 at 9-10).  In support of that position, MERS

advances one segment of what the Sixth Circuit has called the "long and

somewhat convoluted definition of the term 'debt collector'"[5] contained at 15

U.S.C. § 1692a(6) – *i.e.*, that "debt collector" does not include "any officer or

employee of a creditor while, in the name of the creditor, collecting debts of such

---

[5] *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996).

creditor" – as excluding it from "debt collector" liability.  15 U.S.C. § 1692a(6)(A).

(*See* Doc. #33 at 9).  MERS urges that "[t]his exclusion . . . includes mortgagees

and servicers" such as itself.  (*Id.*).

As Plaintiffs' opposing memorandum aptly notes (*see* Doc. #107 at 13),

Defendant MERS has argued within this action that it is <u>not</u> a "creditor" of

Plaintiffs.  The following excerpts taken from  MERS' memorandum in support of

its motion to dismiss are illustrative:

> . . . the allegations in the Complaint show (and Kline's
> mortgage confirms) that MERS was solely his
> mortgagee (as nominee for his lender).  Kline does not
> and cannot allege that MERS extended credit to him . . .

(Doc. #33 at 14), and:

> Any fee collected by MERS from Plaintiffs arising from
> their defaults on their loans was in its role as nominee
> and was solely at the direction of the Plaintiffs' lenders
> and for the lenders' benefit – MERS did not retain any
> such fees.  Thus, the ultimate beneficiaries of any fees
> and costs collected were Plaintiffs' lenders, not MERS.

(*Id.* at 19).

MERS' contentions to that effect, while not evidence or an admission, do

tend to undercut its argument that it is exempted from "debt collector" status by

Section 1692(a)(6)(A).  Alternatively, however, Section 1692a(6)(F) would seem to

offer further insight into the roles intended to be incorporated by the term "debt

collector."  Among those excluded from the definition of "debt collector" under

that subsection is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  Section 1692a(6)(F)(iii).  *See Perry*, 756 F.2d at 1208 ("a debt collector does not include the consumer's creditor, a mortgage servicing company, or an assignee of a debt, so long as the debt was not in default at the time it was assigned") (emphasis added); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (quoting Section 1692a(6)(F)(iii) in finding bank not "debt collector" in enforcing loan agreement entered before consumer's default); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996) (finding that corporation that obtained debts before in default did not fall within definition of debt collector); *Nool v. HomeQ Servicing*, 653 F. Supp.2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry, supra*, in finding that plaintiffs' complaint did not show defendant fell outside Section 1692a(6)(F)'s "debt collector" exemptions).

The allegations of the complaint confirm that MERS obtained its interest in each Plaintiff's subject debt before default – Plaintiff Klein (*see* Doc. #1 at ¶¶27, 33, 39, 64); Plaintiff Hughes (*id.* at ¶¶108-110); and the Rosses.  (*Id.* at ¶¶114-16).  Accordingly, Defendant MERS clearly qualifies for 15 U.S.C. § 1692a(6)(F)(iii)'s exemption for "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns

a debt which was not in default at the time it was obtained by such person."  As

such, Plaintiffs cannot maintain their asserted FDCPA claims against Defendant

MERS, who is not a "debt collector" subject to that Act's provisions.

*Not "Consumer" Transaction/ Not Collection of "Debt"*

Having found that Defendant MERS was not a "debt collector" subject to

FDCPA liability for its actions regarding Plaintiffs Kline's, Hughes's and the

Rosses' mortgages, the Court need not address MERS' remaining arguments for

dismissal for all four Plaintiffs' FDCPA claims against it.

The Court nonetheless will continue to discuss MERS' additional FDCPA

arguments that apply to Defendants Hughes and the Rosses (but <u>not</u> to

Defendant Kline), in order to clarify the law on those points.

**B.**     **FDCPA Claims of Defendants Hughes and the Rosses only**

Defendant MERS offers additional arguments as to Defendants Hughes'

and the Rosses' FDCPA claims, based on their bankruptcy actions.  MERS avers

that the alleged debt amounts on which Plaintiffs Hughes's and Rosses' FDCPA

and other claims against it are premised are those amounts memorialized in the

proof of claim forms filed on MERS' behalf as mortgagee in said Plaintiffs'

separate bankruptcy proceedings.  (*See* Doc. #33 at 6; Exhs. D-F).  MERS suggests

that said Plaintiffs therefore are limited to pursuing their FDCPA claims in the

bankruptcy court only, while their state law claims are preempted by the

Bankruptcy Code.  (*See id*. at 6-8).  Alternatively, Defendant MERS urges that if this Court has jurisdiction over Plaintiffs Hughes's and the Rosses' FDCPA claims, such Plaintiffs' claims nonetheless are barred by the applicable statute of limitations.  (Doc. #33 at 12).  The Court will address these arguments separately.

### Bankruptcy Court as Exclusive Proper Forum

After Defendant MERS filed its motion to dismiss, District Judge Walter H. Rice of this Court held with respect to another Defendant's motion to dismiss in this same action that the Bankruptcy Court is <u>not</u> the exclusive jurisdiction in which parties may pursue FDCPA claims that "arose out of actions that occurred during a bankruptcy proceeding."  *See Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Sept. 21, 2009).  (Doc. #116 at 14).  In accordance with that decision, Defendant MERS' comparable motion to dismiss Plaintiffs Hughes's and the Rosses' FDCPA claims as precluded by the Bankruptcy Code is not well taken here.

### FDCPA Statute of Limitations

The FDCPA statute provides that all claims thereunder must be brought "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Stating that its proof of claim as to Plaintiff Hughes was filed on June 7, 2007 (*see* Doc. #33 at 12, Exh. D at 1), and that its proof of claim as to the Rosses was filed on May 9, 2007 (*see id*., Exh. E at 1), MERS contends that any violations

underlying those Plaintiffs' FDCPA claims occurred more than one year before

the November 10, 2008 filing date of Plaintiffs' complaint here (*see* Doc. #1), and

that such claims therefore must be dismissed as untimely.

In response to MERS' statute of limitations argument, Plaintiffs point to

their complaint's allegations that Defendant MERS "wrongfully demanded" and

recovered prohibited fees "in bankruptcy as part of Hugh[es'] repayment plan"

(Doc. #1 at 21, ¶113), and that the Rosses, too, unwittingly had "agreed to pay"

prohibited fees "to defendants, who continue to seek them outside of

bankruptcy." (*Id.* at 23, ¶125). Plaintiffs thus urge that Defendant MERS'

continued efforts to collect prohibited fees from Hughes and the Rosses brought

its prohibited conduct within the FDCPA's statutory period. (Doc. #107 at 14-16).

Again, we have the benefit of District Judge Rice's ruling on the identical

issue in *Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Sept.

21, 2009) (Doc. #116). There, considering another Defendant's assertion that the

Rosses' FDCPA claim was time barred based on the filing date of the same

bankruptcy proof of claim against them, Judge Rice held as follows:

> Applying *Purnell* [*v. Arrow Fin. Servs.*, 300 F. App'x 297
> (6th Cir. 2008)] to the present litigation, this Court
> concludes that the Rosses' claim under the FDCPA . . .,
> predicated upon the proof of claim filed in their case
> under Chapter 13, must be dismissed as barred by the
> statute of limitations, since the proof of claim was filed
> more than one year before this litigation was initiated.

> However, the Court concludes that the aspect of the
> Rosses' claim under the FDCPA, based upon the
> emphasized allegation in ¶125 of the Plaintiffs'
> Complaint (Doc. #1), is not so-barred, given that the
> Plaintiffs allege that the Defendants . . . <u>continue</u> to seek
> illegal late fees and the like outside of bankruptcy.

(Doc. #116 at 16) (emphasis in original).

Based on the foregoing analysis, the Court concludes that the Rosses'

FDCPA claim against Defendant MERS based on the proofs of claim filed on

MERS' behalf in the Rosses' bankruptcy action must be dismissed for the

<u>additional</u> reason that it is barred by the applicable one-year statute of

limitations. (*See* Doc. #33, Exhs. E, F). Although the Rosses' FDCPA claim might

be timely as to Defendant MERS' efforts "to seek" late fees or other FDCPA-

prohibited fees from the Rosses "outside of bankruptcy" (*see* Doc. #116 at 16,

Doc. #1 at 23, ¶125), those claims nonetheless are subject to dismissal for the

reason set forth at A, *supra*.

Unlike the Rosses, however, Plaintiff Hughes does not appear to premise

her FDCPA claim against Defendant MERS on any action taken "outside of

bankruptcy," but rather on Defendant's "wrongful[ ] demand[ ]" for and

recovery of prohibited fees "in bankruptcy as part of Hugh[es's] repayment plan"

only. (*See* Doc. #1 at 21, ¶ 113). Because the objectionable conduct thus identified

would seem to implicate actions taken solely within Hughes's bankruptcy action

to collect on the proof of claim filed on June 7, 2007 (*see* Doc. 33, Exh. D at 1), and because neither Plaintiffs' complaint nor their opposing memorandum  identifies any specific conduct attributed to Defendant MERS alleged to have occurred within one year prior to November 10, 2008, it appears that Plaintiff Hughes's FDCPA action must be dismissed for the additional reason that it is time barred in its entirety.

### C.    TILA Claims of Defendant Kline only

By definition, the Truth in Lending Act applies only to "consumer" credit transactions in which a "natural person" has been offered or extended credit and "the money, property, or services which are the subject of the transaction are primarily for personal, family or household purposes."  15 U.S.C. § 1602(h).  The applicable statutory and regulatory language explicitly exempts "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes."  15 U.S.C. § 1603(1).  "Whenever a credit balance in excess of $1 is created" with respect to a qualifying consumer credit transaction, 15 U.S.C. § 1666d imposes certain duties on the creditor holding that balance, including a possible obligation to issue a refund.  *See id*.

The only Plaintiff asserting claims under TILA, Plaintiff Kline has premised his TILA cause of action on the provisions of Section 1666d.  (*See* Doc. #1 at ¶¶133-36).  MERS asserts that Kline cannot maintain such an action under

TILA because he has alleged neither that his loan from Defendant MERS constitutes a "consumer" transaction, nor that he ever had a credit balance with MERS. (Doc. #33 at 2, 13-14). MERS cites decisions from three district courts in other Circuits in support of its argument that the omission of allegations about the "consumer" nature of his loan is fatal to Plaintiff's TILA claim against MERS (*see id*. at 13); it cites no case law authority for its position that the absence of a credit balance allegation likewise is fatal. (*See id.* at 13-14).

Plaintiffs counter[6] that, while they have not employed any "magic language" regarding the nature of their debts, their complaint "repeatedly indicates" and "defendants well know . . . that the debts were incurred for loans on [P]laintiffs' homes." (Doc. #107 at 17-18; n.6). As to the "credit balance" issue, Plaintiffs urge that the contention that Defendant MERS has not refunded Plaintiff Kline's overpayment of improperly collected fees suffices to survive a motion to dismiss. (*Id.* at 18).

The Court agrees that Plaintiff Kline's TILA allegations are sufficient to set forth a viable claim at this juncture. As Plaintiffs aptly note, their complaint more than once refers to Plaintiff Kline's loan at issue as involving a "residential mortgage[ ]" or creating a lien on "his home" or "his house." (Doc. #107 at 18

---

[6]Although Plaintiffs state this in the context of an FDCPA argument (*see* Doc. #107 at 17-18), their opposing memorandum also adopts that assertion as equally applicable to Defendant MERS' TILA argument on this point. (*See id*. at 18).

n.6; *see, e.g.*, Doc. #1 at ¶¶3, 45, 67).  Those references expose the speculative and wholly unsupported nature of MERS' allusion to the possibility that Plaintiff Kline's loan could have been for "business, commercial, or agricultural purposes" excepted from TILA protection.  (*See* Doc. #33 at 13).

Similarly, Defendant MERS' argument about the absence of a "credit balance" allegation represents little more than an exercise in semantics.  The complaint clearly alleges that Defendant MERS held sums paid by Plaintiff Kline that were not due; the prospect that Defendant MERS did not reflect those sums as a "credit balance" because it maintained that it <u>was</u> owed those amounts should not be dispositive of Kline's TILA claim at this preliminary phase.  Defendant MERS' motion to dismiss therefore is not well taken as to Plaintiff Kline's TILA claim.

## Analysis of State Law Claims

### A.   Breach of Contract Claims of Defendants Kline, Hughes & the Rosses)

Defendant MERS also moves to dismiss all Plaintiffs' breach of contract claims against it, urging that although the only contractual relationship between individual Plaintiffs and MERS "arises from [Plaintiffs'] mortgages," Plaintiffs "have not identified a single term of their mortgages breached by MERS, nor can they."  (Doc. #33 at 19-20).  Plaintiffs' opposing memorandum relegates their

entire argument in defense of their breach of contract claims to a footnote, urging that MERS' "uncorroborated assertions . . . supply no basis for dismissal." (Doc. #107 at 21 n.7).

The elements of a viable breach of contract claim under Ohio law are the existence of a valid contract between the parties, performance by the plaintiff, a breach by the defendant, and resulting damages. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). Here, even a liberal reading of Plaintiffs' asserted Fifth Claim for Relief cannot construe Plaintiffs' complaint in such a way as to find all of those elements satisfied. (*See* Doc. #1 at 26, ¶¶145-47). In particular, having failed to identify even the nature of any contracts alleged to exist between the individual Plaintiffs and MERS, Plaintiffs' complaint offers nothing to contradict Defendant MERS' suggestion that the Plaintiffs' mortgages constituted their only contractual relationship with MERS, and that the conduct attributed to MERS would not violate those mortgages' terms.

Although Plaintiffs attempt to avert dismissal by suggesting that Defendant MERS cannot escape contract liability based solely on its own "uncorroborated assertions" (Doc. #107 at 21 n.7), Plaintiffs' response to that effect ignores the reality of the pleading burden as recognized in *Iqbal*, 129 S. Ct.

at 1949.  Because this Court need not "credit a complaint's conclusory statements without reference to its factual context," *id.* at 1954, the failure of Plaintiffs' complaint to set forth the facts on which their breach of contract claims against Defendant MERS rest – compounded by the failure of Plaintiffs' opposing memorandum to articulate any plausible basis for allowing such claims to go forward (*see* Doc. #107 at 21) – means that dismissal of such claims is warranted as to that Defendant.  *See id.* at 1949; *see also Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Sept. 21, 2009).  (Doc. #116 at 7-8) (dismissing on the same basis these Plaintiffs' breach of contract claims against another Defendant).

**B.**    **Unjust Enrichment Claims of Defendants Kline, Hughes & the Rosses**

In his decision regarding the prior Report and Recommendations in this case, District Judge Walter H. Rice also addressed these Plaintiffs' unjust enrichment claims asserted against a different Defendant.  *See Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Sept. 21, 2009).  (Doc. #116 at 17).   His findings there again are instructive as to Defendant MERS motion to dismiss Plaintiffs' identical unjust enrichment claim against it (*see* Doc. #33 at 18-19), and therefore are reiterated in large part here.

In *Catlett v. Central Allied Enterprises, Inc.*, No. 08 CO 5, 2009 WL 2859223, at

*2 (Ohio Ct. App. Aug. 31, 2009), the state appellate court restated the elements of

a claim of unjust enrichment under Ohio law, as follows:

> In order to recover under a theory of unjust enrichment, the following elements must be proved: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff.

*Id.* (citing *Hambleton v. R.G. Barry Corp.* 12 Ohio St.3d 179, 183 (1984)).

Defendant MERS argues that Plaintiffs have failed to state claims of unjust

enrichment against it "because they conferred no benefit upon MERS." (*See* Doc.

#33 at 19). Plaintiffs' response to that argument is relegated to the same cursory

footnote purported to address this Defendant's breach of contract argument. (*See*

Doc. #107 at 21 n.7).

Given that lack of substantive response, as well as the omission from

Plaintiff's complaint of any assertion that Plaintiffs conferred some benefit on

Defendant MERS by virtue of having paid the fees and costs alleged (*see* Doc. #1

at ¶¶141-44)[7], Defendant MERS' motion to dismiss should be sustained as it

relates to Plaintiffs' claims of unjust enrichment.

---

[7]Moreover, Defendant MERS effectively refutes any such inference, asserting in its supporting memorandum that "MERS did not retain any such fees" and that "the ultimate beneficiaries of any fees and costs collected were Plaintiffs' lenders, not MERS." (Doc. #33 at 19).

**C.    OCSPA Claims of Defendants Kline, Hughes & the Rosses**

Once again, District Judge Walter H. Rice's prior decision in this matter provides guidance as to the appropriate disposition of Plaintiffs' OCSPA claims. *See Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Sept. 21, 2009). (Doc. #116 at 17-19). There, Judge Rice declined to dismiss Plaintiffs' OCSPA claims on the basis argued by another Defendant, but <u>did</u> dismiss Plaintiffs' class action allegations for violation of that statute. (*See id*. at 18-19).

Similarly, the Court also concludes that Plaintiffs' class action allegations brought under the OCSPA should be dismissed as against Defendant MERS, but that Plaintiffs' individual OCSPA claims remain viable at this juncture. The primary argument for dismissal advanced by Defendant MERS – that Plaintiffs failed to allege that any improper conduct occurred in connection with a "consumer transaction" (*see* Doc. #33 at 15-16) – already has been rejected at C, *supra*, in the context of analyzing Plaintiff Kline's TILA claim.

As to Plaintiffs Hughes and the Rosses, the Court already has determined that their only federal claim – under the FDCPA – should be dismissed. A district court "may decline to exercise supplemental jurisdiction" over related state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having dismissed those Plaintiffs' sole jurisdiction-conferring federal claim against this particular Defendant, this Court

would be reluctant to assume supplemental jurisdiction over Hughes's and the Rosses' remaining Ohio Consumer Sales Practices Act claims against MERS. Choosing to extend discretionary jurisdiction would merely retain three additional Plaintiffs with a single claim against Defendant MERS in an action already replete with multiple parties possessing differing interests and alleged to have engaged in differing conduct, simply for purposes of resolving a state law claim more appropriately entrusted to Ohio courts better suited to interpret and apply their own state law.

Accordingly, Plaintiffs Hughes's and the Rosses' OCSPA claim should be dismissed without prejudice, due to declining to exercise supplemental jurisdiction.

IT THEREFORE IS **RECOMMENDED** THAT:

1. Defendant Mortgage Electronic Registration Systems, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. #31) be GRANTED IN PART, as to Plaintiffs Eugene Kline's, Diana L. Hughes's, and George and Carol Ross's claims against said Defendant set forth in their complaint's First, Fourth and Fifth Claims for Relief, as well as any class action allegations related to their Third Claim for Relief, and that said Plaintiffs' corresponding Fair Debt Collection Practices Act, unjust enrichment, breach of contract and class action claims (Doc. #1 at ¶¶126-132, 141-147) be DISMISSED WITH PREJUDICE as against such Defendant <u>only</u>;

2. Defendant Mortgage Electronic Registration Systems, Inc.'s motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. #31) be DENIED IN PART, as to Plaintiffs Eugene Kline's,

Diana L. Hughes's, and George and Carol Ross's <u>individual</u> claims against said Defendant set forth in their complaint's Third Claim for Relief (Doc. #1 at ¶¶137-140); and as to Plaintiff Eugene Kline's claims set forth in that complaint's Second Claim for Relief (Doc. #1 at ¶¶133-136);

3. Plaintiffs Diana L. Hughes's and George and Carol Ross's <u>individual</u> claims under the Ohio Consumer Sales Practices Act set forth in their complaint's Third Claim for Relief (Doc. #1 at ¶¶137-140) nonetheless be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3) as against Defendant Mortgage Electronic Registration Systems, Inc. <u>only</u>;

3. The Clerk of Courts enter judgment in favor of Defendant Mortgage Electronic Registration Systems, Inc. <u>only</u> and against Plaintiffs Eugene Kline, Diana L. Hughes, and George and Carol Ross in accordance with the foregoing; and

4. This matter remain pending on the docket of this Court as to all remaining claims against Defendant Mortgage Electronic Registration Systems, Inc. and all other remaining Defendants, and proceed in accordance with the established schedule.

February 8, 2010        <u>s/Sharon L. Ovington</u>
Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).