IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


EUGENE KLINE, et al.,                        :

      Plaintiffs,                           :
                                                 Case No. 3:08cv408
    vs.                                       :
                                   JUDGE WALTER HERBERT RICE
MORTGAGE ELECTRONIC SECURITY     :
SYSTEMS, et al.,                             :

      Defendants.                          :

---

DECISION AND ENTRY OVERRULING PLAINTIFFS' OBJECTIONS
(DOC. #126) TO REPORT AND RECOMMENDATIONS OF THE UNITED
STATES MAGISTRATE JUDGE (DOC. #125); REPORT AND
RECOMMENDATIONS ADOPTED, AS SUPPLEMENTED HEREIN BY THE
COURT'S REASONING AND CITATIONS TO AUTHORITY; MOTION TO
DISMISS FILED BY DEFENDANT REIMER, LORBER AND ARNOVITZ
CO., L.P.A. (DOC. #35), SUSTAINED

---

In this putative class action, the Plaintiffs set forth claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq.; and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.01 et seq.; as well as for breach of contract and unjust enrichment under the common law of Ohio. See Doc. #1 at ¶ 2. In their Complaint, the Plaintiffs have named eleven Defendants, including Defendant Reimer, Lorber and Arnovitz Co., L.P.A. ("RL&A"). RL&A has filed a motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

requesting that this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. See Doc. #35. This Court referred that motion to United States Magistrate Judge Sharon Ovington for a Report and Recommendations. Judge Ovington has submitted such a judicial filing, recommending that this Court sustain RL&A's motion. See Doc. #125. The Plaintiffs have submitted Objections (Doc. #126) thereto, upon which the Court now rules. The Court begins by setting forth the standard by which it reviews Judge Ovington's Report and Recommendations (Doc. #125), as well as a brief summary of the procedural standards which must be applied whenever a court rules on a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal for failure to state a claim upon which relief can be granted.

Under 28 U.S.C. § 636(b)(1)(A), a District Court may refer to a Magistrate Judge "any pretrial matter pending before the court," with certain listed exceptions. Motions to dismiss are among the listed exceptions. Section 636(b)(1)(B) authorizes District Courts to refer "any motion excepted from subparagraph (A)" to a Magistrate Judge for "proposed findings of fact and recommendations." When a District Court refers a matter to a Magistrate Judge under § 636(b)(1)(B), it must conduct a de novo review of that judicial officer's recommendations. See United States v. Raddatz, 447 U.S. 667, 673-74 (1980); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001).

In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is also reviewed de novo. Jackson v.

City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). When deciding whether to dismiss a claim under Rule 12(b)(6), "[t]he court must construe the complaint in a light most favorable to the plaintiff, and accept all of [the] factual allegations as true." Id. (citation omitted).

Id. at 424. In Swierkiewicz v. Sorema N.A., 532 U.S. 506 (2002), the Supreme Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 212. Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168-169 (1993). "The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed. 1990).

Id. at 512-13. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at —. The Supreme Court recently expounded upon Twombly in Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937 (2009), writing:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled

to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 1949-50.

In their Complaint, the Plaintiffs allege that, in or about June, 2004, Plaintiff Eugene Kline ("Kline") entered into a loan transaction with WMC Mortgage

- 4 -

("WMC") and that Kline quickly fell behind in his loan payments, which caused his loan to be put in default.[1]  Doc. #1 at ¶¶ 27-28.  As a result, RL&A commenced a foreclosure proceeding against Kline, which it subsequently dismissed after the loan had been reinstated.  Id. at ¶¶30-32.  On March 16, 2007, RL&A filed another foreclosure proceeding against Kline, after he had again fallen into default.  In that action, Defendant Wells Fargo Bank, N.A., as Trustee ("Wells Fargo"), was named as the plaintiff.  Id. at ¶¶ 34-35.  Plaintiffs allege that, although the complaint filed in that foreclosure action alleged that Wells Fargo was the owner and holder of the promissory note on Kline's mortgage, the mortgage was not assigned to Wells Fargo until March 26, 2007, ten days after the foreclosure proceedings had been initiated.  Id. at ¶ 36 and ¶ 39.  According to Plaintiffs, RL&A knew that the papers initially filed in the foreclosure action falsely represented that the mortgage had been assigned to Wells Fargo, knowing the representation was false.  Id. at ¶ 38.  During those foreclosure proceedings, Kline decided to sell his home and to pay off his loans.  Id. at ¶ 45.  Plaintiffs contend that RL&A charged Kline for many fees which were either illusory or illegal under federal and/or state law.  Id. at ¶ 46.  Those fees include service of process fees, fees for judicial reports and late fees.  Id. at ¶¶ 47-63.  Plaintiffs contend that the foregoing actions by RL&A violated provisions of the FDCPA,[2] constituted

---

[1]Although Plaintiffs' counsel occasionally spells Kline's name "Klein" (see e.g., Doc. #1 at ¶¶ 33, 34, 36 and 41), this Court uses the spelling of that Plaintiff's name which appears in the caption of the Plaintiffs' Complaint (Doc. #1), as well as on the mortgage he gave to secure that loan.  Kline is the only Plaintiff who has asserted a claim against RL&A.

[2]In particular, Plaintiffs contend that RL&A violated 15 U.S.C. §§ 1692e and 1692f.

deceptive and misleading practices in violation of the OCSPA, unjustly enriched RL&A, and breached a contract between the parties, although that contract is not identified anywhere in the Plaintiffs' Complaint. A claim under the Truth in Lending Act has not been set forth against RL&A.

In its Motion to Dismiss (Doc. #35), RL&A raised a number of grounds for dismissal of all four of those claims which have been asserted against it. In her Report and Recommendations (Doc. #125), Judge Ovington has recommended that this Court dismiss Kline's claims against RL&A under the FDCPA and for breach of contract, with prejudice, and that it decline to continue to exercise supplemental jurisdiction over Kline's claims under the OCSPA and for unjust enrichment against that law firm. In particular, that judicial officer concluded that RL&A had not violated the FDCPA by initiating the foreclosure proceedings against Kline, before the mortgage was transferred to Wells Fargo. See Doc. #125 at 9-11. That judicial officer also concluded that Kline's claim under the FDCPA, predicated upon the allegedly illegal collection of fees, must be dismissed, because it is based on correspondence between RL&A and his counsel, and that Kline's breach of contract claim must be dismissed for failure to state a claim upon which relief can be granted. Id. at 12-14.

As indicated, Kline has objected to the Report and Recommendations of the Magistrate Judge, focusing exclusively on his claims under the FDCPA. See Doc. #126. Having conducted a de novo review of the Plaintiffs' Complaint (Doc. #1) and the parties' papers, this Court concurs with the Magistrate Judge that Kline has not stated a claim for relief for breach of contract. For instance, Kline has failed to identify the contract he had with RL&A, which the latter

breached. Moreover, since Kline failed to argue that his breach of contract claim should not be dismissed, the Court concludes that he has conceded the issue and will not afford him the opportunity to amend in an effort to state such claims for relief. Accordingly, the Court's dismissal of that claim is with prejudice. The Court now turns to the specific objections raised by Kline. However, before engaging in that analysis, this Court deems it appropriate to address one of the bases for dismissal, which RL&A relied upon, that Judge Ovington found unnecessary to address.

Among numerous other bases for dismissal, RL&A has argued that the Rooker-Feldman doctrine prevents this Court from exercising subject matter jurisdiction over this litigation.[3] See Doc. #35-2 at 17-19. Given that a federal court must assure itself that it possesses subject matter jurisdiction, it is appropriate to address RL&A's argument concerning the Rooker-Feldman doctrine. For reasons which follow, this Court concludes that Rooker-Feldman does not prevent it from exercising subject matter over Kline's claims against RL&A.

In Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court explained the Rooker-Feldman doctrine:

> Rooker [v. Fidelity Trust Co., 263 U.S. 413 (1923)] was a suit commenced in Federal District Court to have a judgment of a state court, adverse to the federal court plaintiffs, "declared null and void." 263 U.S., at 414. In [District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)], parties unsuccessful in the District of Columbia Court of Appeals (the District's highest court) commenced a federal-court action against the very court that had rejected their applications. Holding the federal suits impermissible, we emphasized that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of

---

[3]See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

- 7 -

1789, 1 Stat. 85, and now by 28 U.S.C. § 1257, exclusively in this Court. Federal district courts, we noted, are empowered to exercise original, not appellate, jurisdiction. Plaintiffs in Rooker and Feldman had litigated and lost in state court. Their federal complaints, we observed, essentially invited federal courts of first instance to review and reverse unfavorable state-court judgments. We declared such suits out of bounds, i.e., properly dismissed for want of subject-matter jurisdiction.

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Id. at 283-84. The Sixth Circuit, in Lawrence v. Walsh, 531 F.3d 364 (2008), explained:

> In the wake of Exxon, this circuit has "distinguished between plaintiffs who bring an impermissible attack on a state court judgment—situations in which Rooker-Feldman applies—and plaintiffs who assert independent claims before the district court—situations in which Rooker-Feldman does not apply." Pittman v. Cuyahoga County Dep't of Children and Family Serv., 241 Fed.Appx. 285, 287 (6th Cir. 2007) (citing McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006)).
> In McCormick, we explained that the pertinent inquiry after Exxon is whether the "source of the injury" upon which plaintiff bases his federal claim is the state court judgment:
>> The inquiry then is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim.
>> ….
>> To the extent that Defendants argue that these claims, even though they do not assert injury from the state court judgments, are "inextricably intertwined" with those judgments so as to fall within the reach of Rooker-Feldman, that argument must fail. We first note that it was this exact language that was the source of the pre-Exxon Mobil woes as to the application of Rooker-Feldman. In addition, the

> Supreme Court used the phrase "inextricably intertwined" in Feldman to describe a claim where the plaintiff asserted an injury from the state court judgment itself.... In Exxon, the Supreme Court implicitly repudiated the circuits' post-Feldman use of the phrase "inextricably intertwined" to extend Rooker-Feldman to situations [where] the source of the injury was not the state court judgment. <u>In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by Rooker-Feldman.</u>
> McCormick, 451 F.3d at 394-95 (emphasis added).

Id. at 368-69.

Applying Exxon Mobil, as elaborated upon by the Sixth Circuit, it is readily apparent that Kline's claims against RL&A are not barred by Rooker-Feldman. Those claims are predicated upon on two broad factual assertions, to wit: that the mortgage which was the subject of the foreclosure action initiated by RL&A had not been assigned to Wells Fargo before that litigation was initiated and that RL&A improperly charged Kline fees to pay off the mortgage. The judgment entered in the state court foreclosure action is not the source of the injuries Kline suffered as a result of the RL&A initiating that action before the mortgage had been assigned to Wells Fargo or charging him. Accordingly, the Court rejects RL&A's assertion that the Rooker-Feldman doctrine deprives it of subject matter jurisdiction over the claims Kline has asserted against it.

In recommending that this Court dismiss Kline's claim under the FDCPA, arising out of the initiation of the foreclosure action before the mortgage had been assigned to Wells Fargo, Judge Ovington relied upon Whittiker v. Deutsche Bank Nat. Trust Co., 605 F. Supp.2d 914 (N.D.Ohio 2009). Whittiker, like this lawsuit, was an action under the FDCPA, arising out of a previous foreclosure action.

Therein, the plaintiff alleged, inter alia, that the defendant had violated that statute by initiating the foreclosure action before the financial institution, on whose behalf the foreclosure action had been filed, had been assigned the note and mortgage for the property to be foreclosed. The Whittiker court dismissed the plaintiff's claim under the FDCPA, arising out of the pre-assignment initiation of the foreclosure proceedings, writing that "[t]he filing of a foreclosure action by a plaintiff in the process of obtaining an assignment not yet fully documented is not a deceptive, misleading, or abusive tactic and does not violate the FDCPA." Id. at 931.

According to the Plaintiffs herein, the majority of Ohio courts have held that a financial institution filing a foreclosure action, before a note and mortgage have been assigned to it, demonstrates that the financial institution lacks standing to pursue the foreclosure action, depriving the trial court of subject matter jurisdiction, which cannot be cured by the subsequent assignment of the note and mortgage. Consequently, Plaintiffs suggest that this Court should decline to follow Whittiker, because that court relied upon decisions by Ohio courts which have held that a foreclosure brought on behalf of an entity to which a mortgage had yet to be assigned when the litigation was initiated may nevertheless proceed, as long as the assignment occurs before the entry of final judgment. Although the Whittiker court did cite such decisions, as well as one decision which reached the contrary conclusion (see 605 F. Supp.2d at 929, n.18), those decisions were not central to that court's dismissal of plaintiff's claim under the FDCPA, arising out of the initiation of a foreclosure proceeding before the assignment of the note and mortgage to the plaintiff in that proceeding. Even though this Court does not resolve the question of whether Ohio law permits a foreclosure action to proceed

when it is initiated before the note and mortgage have been assigned to the plaintiff, that question was seemingly resolved by the Ohio Supreme Court in <u>State ex rel. Jones v. Suster</u>, 84 Ohio St.3d 70, 701 N.E.2d 1002 (1998), wherein it wrote:

> Although a court may have subject matter jurisdiction over an action, if a claim is asserted by one who is not the real party in interest, then the party lacks standing to prosecute the action. The lack of standing may be cured by substituting the proper party so that a court otherwise having subject matter jurisdiction may proceed to adjudicate the matter. Civ. R. 17. Unlike lack of subject matter jurisdiction, other affirmative defenses can be waived. <u>Houser v. Ohio Historical Soc.</u> (1980), 62 Ohio St.2d 77, 403 N.E.2d 965. Lack of standing challenges the capacity of a party to bring an action, not the subject matter jurisdiction of the court. <u>State ex rel. Smith v. Smith</u> (1996), 75 Ohio St.3d 418, 420, 662 N.E.2d 366, 369; <u>State ex rel. LTV Steel Co. v. Gwin</u> (1992), 64 Ohio St.3d 245, 251, 594 N.E.2d 616, 621.

<u>Id</u>. at 77, 701 N.E.2d at 1008. Thus, the Ohio Supreme Court has recognized that lack of standing to initiate a lawsuit can be cured by the substitution of the real party in interest for the named plaintiff.[4] There is simply no reason to conclude that the Ohio Supreme Court would reach the opposite result, because the party initiating the lawsuit became the real party in interest, after the case had been filed.

In addition, other federal courts have reached the same result in cases arising under similar facts as those giving rise to <u>Whittiker</u>. For instance, in <u>Byrd v. Law Offices of John D. Clunk Co., LPA</u>, 2010 WL 816932 (S.D.Ohio 2010), Judge Sandra Beckwith entered summary judgment in favor of a lending institution, on whose behalf a foreclosure action had been filed, before the note and mortgage

---

[4]It is not and could not be questioned that the Common Pleas Courts of Ohio have subject matter jurisdiction over foreclosure actions.

had been assigned to it. Additionally, in Shivone v. Washington Mutual Bank, 2008 WL 3154702 (E.D.Pa. 2008), the District Court dismissed the plaintiff's claim predicated upon the allegation that the defendants had named the incorrect assignee of her mortgage and note in a foreclosure proceeding they had initiated against her, writing that "this Court concludes that Defendants' inability to prove ownership at the commencement of the foreclosure action is not in violation of the FDCPA."

In Whittiker and Shivone, the courts both relied upon the decision of the Sixth Circuit in Harvey v. Great Seneca Financial Corporation, 453 F.3d 324 (6th Cir. 2006). Therein, the Sixth Circuit held that the inability to prove present debt ownership at the time a collection lawsuit is filed does not violate the FDCPA. Kline, in contrast, relies upon the decision by the Sixth Circuit in Hartman v. Great Seneca Financial Corp., 569 F.3d 606 (6th Cir. 2009). Therein, the court held that the District Court had improperly dismissed plaintiffs' claims that the defendants had violated the FDCPA, by suing them in state court on an account and attaching a document to the complaint which, although identified as an account, had been created by the creditor's attorney solely for purposes of the state court litigation. Since Harvey is based on a more analogous claim than that set forth in Hartman, this Court deems it appropriate to look to the former decision for guidance.

Accordingly, based upon the foregoing, this Court concurs with Judge Ovington that initiating a foreclosure action before the note and mortgage have been assigned to the financial institution, on behalf of which that action was initiated, does not violate the FDCPA, as long as the assignment occurs before final

judgment is entered. Herein, the Plaintiffs allege that Kline's mortgage and note were assigned to Wells Fargo ten days after the foreclosure action was filed.

The second aspect of Kline's claim against RL&A, under the FDCPA, arises out of communications from that law firm to Kline's counsel, Kenneth Wegner, in the foreclosure proceeding. According to the Plaintiffs, RL&A used those communications to collect fees in the foreclosure proceeding which cannot be obtained under federal or state law. RL&A argued in its Motion to Dismiss (Doc. #35) that this aspect of Kline's claim under the FDCPA must be dismissed, because, inter alia, communications with Kline's attorney do not come within the scope of the FDCPA.

In its Decision of September 21, 2009, this Court agreed with the Magistrate Judge that it must dismiss, for the same reason, Kline's virtually identical claim under the FDCPA against another law firm, Lerner, Sampson and Rothfuss. See Doc. #116 at 8-10. Although Plaintiffs most decidedly do not agree with that Decision, this Court nevertheless will adhere to same. Therefore, the Court concludes that it must dismiss the aspect of Kline's claim under the FDCPA against RL&A, arising out of the collection of allegedly illegal fees.

Accordingly, the Court overrules the Plaintiffs' Objections (Doc. #126) to the Report and Recommendations (Doc. #125) of the Magistrate Judge, as they relate to Kline's claim under the FDCPA, against RL&A. The Court, therefore, sustains that Defendant's Motion to Dismiss (Doc. #35), as it relates to that claim. Also, Kline's breach of contract claim against RL&A is deemed abandoned and is

dismissed with prejudice. In addition, the Court, in the absence of an objection by Kline, will follow the recommendation of the Magistrate Judge and decline to continue to exercise supplemental jurisdiction over his state law claims of unjust enrichment and violations of the OCSPA, which are dismissed without prejudice.[5] Accordingly, the Court adopts the Report and Recommendations, as supplemented herein by this Court's reasoning and citations to authority.

March 22, 2010

                                        /s/ Walter Herbert Rice
                                        WALTER HERBERT RICE, JUDGE
                                        UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.

---

[5] When a court dismisses a plaintiff's only claim over which it has original jurisdiction (i.e., a federal claim), for failure to state a claim upon which relief can be granted, it should decline to continue to exercise supplemental jurisdiction over the plaintiff's state law claims. See e.g., Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1255-56 (6th Cir. 1996) (noting that there is a strong presumption that District Court declines to continue to exercise supplemental jurisdiction over state law claims after it has dismissed federal claims pursuant to a 12(b)(6) motion).