UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x

EUGENE KLINE, et. al.                                    :          Case No. 3:07 CV 00084

            Plaintiffs,                               :

     -- against --                                  :          **MEMORANDUM IN
                                                                    OPPOSITION TO WELLS
MORTGAGE ELECTRONIC REGISTRATION            :          FARGO BANKS MOTION
SYSTEMS, et. al. .                                                  ON THE PLEADINGS
                                                        :          WITH RESPECT TO JON
            Defendants.                               :          SHAYNE JONES**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     :

## PRELIMINARY STATEMENT

Plaintiff Jon Shayne Jones, individually and on behalf of all others similarly situated, submits this memo of law in opposition to the motion for judgment on the pleading filed by Wells Fargo Bank, N.A. ("Wells Fargo").

After filing answers to Mr. Jones' allegations in this action on no less than three occasions, and trying – but failing – to dismiss Mr. Jones' state common-law claims for breach of contract and unjust enrichment in a prior motion, Wells Fargo seeks another bite of the apple by filing its second successive motion for judgment on the pleadings against Jones' claims.

As with its first motion, Wells Fargo does not (and cannot) dispute the essential allegations underlying Mr. Jones' claims: (1) that Wells Fargo fraudulently represented that it had been assigned the Jones' mortgage to the Ohio court entertaining the foreclosure action, when the purported assignment was not executed until a month after the action was filed (Amended Complaint, ¶¶81-84); (2) that the assignment to Wells

Fargo itself was fraudulently executed by a Countrywide employee (the servicer for the assignee) representing herself as a Vice President for Ameriquest (the assignor) (Amended Complaint, ¶¶85-87)[1]; (3) that Wells Fargo assessed numerous fees and expenses against Jones in the foreclosure action which were illegal and/or illusory (Amended Complaint, ¶¶88-101); (4) that Jones incurred out-of-pocket costs and expenses as a result of Wells Fargo's purportedly illegal actions (Amended Complaint, ¶176).

Instead, in its second motion, Wells Fargo relies on a combination of arguments designed to avoid any inquiry into the merits of Mr. Jones' claims, contending that they are barred (i) by the Rooker-Feldman Doctrine; (ii) by *res judicata* and *collateral estoppel*; and (iii) because Jones has failed to plead essential elements of his common-law breach of contract and unjust enrichment claims.

As shown below, however, Wells Fargo's arguments against Jones' claims – many of which have been unsuccessfully raised by other defendants in this action – do not withstand scrutiny.

## ARGUMENT

### POINT I
### MR. JONES' CLAIMS ARE
### NOT BARRED BY THE ROOKER-FELDMAN DOCTRINE

Wells Fargo asserts that the claim that it fraudulently procured the foreclosure judgment against Mr. Jones and charged improper fees and expenses constitutes a collateral attack on the state proceeding which is barred by the *Rooker-Feldman* doctrine. (Wells Fargo Brief, p. 12-13)

---

[1] Moreover, as the Amended Complaint further alleges, the defendants in the foreclosure and bankruptcy actions involving Mr. Jones never accurately disclosed the purported holders of Mr. Jones mortgage loan, and are liable on that basis as well.  (Amended Complaint, ¶¶173-73)

However, this identical argument was previously made by defendant Reimer Lorber and Arnovitz ("Reimer") against the similar claims raised by plaintiff Eugene Kline in this action, and rejected by this Court.  (Reimer Decision, Docket #150)   Like Mr. Jones' claims, Mr. Kline alleged that Reimer fraudulently represented the owner of his mortgage in the foreclosure complaint filed against him, and charged illegal fees and expenses.  In rejecting Reimer's claim that *Rooker-Feldman* barred the assertion of Mr. Kline's claims in federal court, this Court said the following:

> [I]t is readily apparent that Kline's claims against [Reimer] are not barred by Rooker-Feldman.  Those claims are predicated upon two broad factual assertions: that the mortgage which was the subject of the foreclosure action initiated by [Reimer] had not been assigned to Wells Fargo before that litigation was initiated and that [Reimer] improperly charged Kline fees to pay off the mortgage.  The judgment entered in the state foreclosure action is not the source of the injuries Kline suffered as a result of [Reimer] initiating that action before the mortgage had been assigned to Wells Fargo or charging him.  Accordingly, the Court rejects [Reimer's] assertion that the Rooker-Feldman doctrine deprives it of subject matter jurisdiction over the claims Kline has asserted against it.

(Reimer Dec., Docket #150, p. 9)

This court's rejection of Reimer's *Rooker-Feldman* argument against Eugene Kline is dispositive of Wells Fargo's similar claim here.  As does Kline, Mr. Jones does not seek to undo the state court judgment, but rather merely seeks damages arising from Wells Fargo's allegedly improper conduct.  Moreover, Wells Fargo's claim that this Court's rejection of Reimer's *Rooker-Feldman* argument against Mr. Kline is somehow distinguishable from this case because there was no "final judgment" against Kline is absolutely false.  In fact, Reimer and Wells Fargo did obtain a judgment against Mr. Kline. (See Judgment Entry annexed hereto as Exh. A)

3

Federal courts in Ohio have regularly allowed actions to proceed in federal court where the basis from the claim arises from alleged fraudulent conduct in a state court. For instance, in <u>Todd v. Weltman, Weinberg & Reis Co.</u>, 434 F.3d 432, 437 (6th Cir. 2006), the Sixth Circuit found that the *Rooker Feldman* doctrine did not prevent the court from entertaining a claim based on the defendant's filing a false affidavit in a state court garnishment proceeding.  In <u>McCormick v. Braverman</u>, 451 F.3d 382, 392, 393 (6th Cir. 2006), the Sixth Circuit held that *Rooker Feldman* does not deprive a federal court of jurisdiction over claims against a receiver alleging fraud in obtaining an order of receivership from state court.  And in <u>Brown v. First Nationwide Mortgage Corp.</u>, 2006 U.S. App. Lexis 28077 (6th Cir. 2006), the court found that the application of *Rooker Feldman* against claims that the parties and their counsel "procured [a] state court mortgage decree by fraud" was improper, because "the source of the injury asserted... is the defendant's conduct, not the state court judgment."  2006 U.S. App. Lexis 28077, at *12.

Thus, as the Sixth Circuit recently reaffirmed;

> [T]he Rooker-Feldman doctrines does not prohibit all federal cases that are somehow related to a prior state-court decision.  If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction….

<u>Hamilton v. Herr</u>, 540 F.3d 367, 372 (6th Cir. 2008)

Here, as in each of the above cases, plaintiff does not seek to undo the judgment of foreclosure, but rather recover damages resulting from the illegal procurement of the foreclosure judgment by Wells Fargo, and the assessment of allegedly improper fees and expenses.  Under these circumstances, *Rooker Feldman* does not apply.

## POINT II

### MR. JONES' CLAIMS ARE NOT BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

Wells Fargo also argues that Mr. Jones' claims in this action are barred by the doctrines of collateral estoppel and res judicata.  According to Wells Fargo, Mr. Jones had an obligation to raise the allegations of Wells Fargo's allegedly improper conduct as a claim or defense in the Ohio foreclosure action, and having failed to do so, is precluded from doing so here.  Moreover, Wells Fargo argues that, since the Ohio state court purportedly required evidence showing the damages incurred by Wells Fargo in Mr. Jones' foreclosure action before the court entered judgment, the allegations raised by Mr. Jones were "actually litigated" in the state proceeding, and cannot be litigated again here. Again, however, neither of Wells Fargo's claims withstands scrutiny.

A. **The Court Has Previously Rejected The Application of Collateral Estoppel Against Similar Claims In This Case**

First, this court has rejected the identical argument raised by other defendants in this action -- that claims based on improper conduct in the plaintiffs' state foreclosure proceedings are barred because they were (or should have been) raised in the prior proceeding.  Thus, in a prior motion to dismiss, Reimer argued that plaintiff Eugene Kline was precluded from bringing his claims in this action because "the issue of Wells Fargo's standing to bring the foreclosure action [against him] was litigated in state court and thus barred by collateral estoppel."  Kline v. MERS, 2009 U.S. Dist. Lexis 126137, *13 (S.D. Ohio 2009) (also found at Docket #125, p.8)  Despite the fact that – unlike here – Mr. Kline actually raised the late assignment in the prior Ohio state court foreclosure proceeding against him, this Court nevertheless found that he was not precluded from

5

litigating claims relating to that allegation in this subsequent federal action. As Magistrate Ovington found in a Report & Recommendation adopted by Judge Rice:

> Although the precise issue of whether Wells Fargo was a real party in interest and whether its conduct violated the FDCPA was raised as a counterclaim in the foreclosure action, it was dismissed as a judgment not on the merits. Further, the issue of whether [Reimer's] conduct in bringing that action was a violation of the FDCPA was not raised, let alone litigated and decided. Therefore, Plaintiffs' claims as to whether [Reimer] committed a violation of the FDCPA in bringing the foreclosure action before the mortgage and note were formally assigned are not barred by the doctrine of collateral estoppel.

Kline, 2009 U.S. Dist. Lexis 126137, *14, (Docket #125, p. 9).[2]

This case presents an even less meritorious basis for the application of collateral estoppel than the argument this court previously rejected when raised against Mr. Kline. Unlike Mr. Kline's prior state foreclosure case -- where the issues he sought to litigate in federal court had actually been raised – the state foreclosure judgment against Mr. Jones arose after he defaulted, and Mr. Jones raised no defenses (much less counterclaims) against Wells Fargo of any kind. Thus, since the issues raised by Mr. Jones in this action were never even referred to in the prior state action, much less litigated and actually decided, this court's prior denial of Reimer's identical argument prevents Jones from being precluded from bringing his claims herein. Nat'l Satellite Sports, Inc. v. Eliadis, 253 F.3d 900, 908 (6th Cir. 2001) (emphasis added) (collateral estoppel applies only where "the *precise issue* raised in the present case [was] *raised* and *actually litigated* in the prior proceeding", and where the "determination of the issue [was] necessary to the outcome of the prior proceeding").

---

[2] Tellingly, Wells Fargo has never argued that Mr. Kline's claims against it are barred by collateral estoppel or res judicata.

This Court's prior refusal to apply collateral estoppel against plaintiffs claims in this action is amply supported by well-settled law in this and other circuits. With regard to collateral estoppel, the Sixth Circuit has held that:

> Although the requirements for collateral estoppel are enumerated differently in different opinions, this court has recently stated that the doctrine applies only when (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) the issue was actually litigated and decided in the prior action, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a full and fair opportunity to litigate the issue.

Hammer v. INS, 195 F.3d 836, 840 (6th Cir. 1999)

On the issue of whether Wells Fargo fraudulently represented the proper holder of Mr. Jones' mortgage during the state foreclosure proceeding, collateral estoppel cannot be applied for several reasons. First, the issue of Wells Fargo's fraud was never even mentioned by the state court entertaining Mr. Jones' foreclosure action, much less specifically addressed and decided by the court. Goodson v. McDonough Power Equip., Inc., 2 Ohio St. 3d 193, 2 Ohio B. 732, 443 N.E.2d 978, 987 (Ohio 1983) ("Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case"); Hammer v. INS, 195 F.3d 836 (6th Cir. 1999) (collateral estoppel applies only where "the issue was actually litigated *and decided* in the prior action"); Smith v. Encore Credit Corp., 2008 U.S. Dist. Lexis 99413, at *15 (N.D. Ohio 2008) (court rejected argument that plaintiff whose loan had been foreclosed in state action was collaterally estopped from bringing claims in federal court, stating that "defendants have

failed to show that the claims in the Complaint are identical to issues actually litigated *and decided* by the Mahoning County Court in the Foreclosure case")

In the same respect, since the issue of Wells Fargo's alleged improper conduct was not even mentioned by the state foreclosure court, this court cannot possibly conclude that "resolution of the issue was *necessary and essential*" to the state foreclosure judgment as would be required for collateral estoppel to apply.  Dowling v. Select Portfolio Servicing, Inc., 2006 U.S. Dist. Lexis 39340, *24 (S.D. Ohio 2006) (rejecting claim that any inaccuracy in a foreclosure complaint was necessarily decided in a prior foreclosure action, court found that there was no evidence that the issue was actually litigated, and thus "collateral estoppel does not bar litigation of the accuracy of the foreclosure complaint")  Therefore, for each of these reasons, Wells Fargo's motion should be denied.

> ### B. A Party Which Defaulted In A Prior Action Is Not Barred From Subsequently Raising Claims Which Might Have Been Brought Therein Unless The Issue Was The Subject of An "Express Adjudication"

Even if this Court had not already spoken on the preclusion issue, the fact that Mr. Jones defaulted in the prior proceeding adds additional hurdles to the application of issue or claim preclusion.

Thus, while courts interpreting Ohio law have found that "default judgments may have preclusive effect in Ohio as to an issue that was the subject of an 'express adjudication'', an "unanswered complaint and the default judgment based on it do not, by themselves, constitute an express adjudication."  In re Sweeney, 276 B.R. 186, 193 (6th Cir. BAP 2002).   Rather, in order for a plaintiff to be barred from raising a claim in a second proceeding which plaintiff could have raised in a prior proceeding in which he

defaulted, the first court must have made affirmative findings on the issue for which preclusion is sought. In re Sweeney, 276 B.R. at 194.

The Sixth Circuit's Bankruptcy Appellate Panel's decision in In re Sweeney provides an excellent example of the type of findings necessary for collateral estoppel to apply to a default judgment.   In Sweeney, the BAP addressed the question of whether a a prior Ohio state court default judgment established that a home builder had committed fraud against a home buyer, preventing the builder from litigating the issue in his subsequent bankruptcy court proceeding.  At a hearing after the builder's default in the state court proceeding, plaintiff home buyers presented three witnesses to establish the construction deficiencies in their home, as well as evidence that the defendant builder had misled them. 276 B.R. at 188-89.  While the state court did not actually make an express finding of fraud, the court awarded judgment to plaintiff on his claims, including "punitive damages flowing from the matters alleged in count 2 of their complaint, the fraud count." Id. at 189.  The judgment also stated that, "based upon the evidence, the court is satisfied that judgment should be rendered in favor of the plaintiffs."   Id. at 189.

The home builder then filed for bankruptcy under Chapter 13, later converted to Chapter 7.   In opposition to the builder's attempt to have the state court judgment against him discharged in bankruptcy, the plaintiffs in the state court action argued that the state court judgment should be given collateral estoppel effect on the issue of fraud, because "the Ohio courts had already determined that the debtor was guilty of such fraud as would bar the discharge of [his] debt." Id. at 189.  The bankruptcy court agreed, finding that plaintiffs had submitted evidence to the state court on the issue of fraud "from which

it had made findings of fact and conclusions of law sufficiently detailed to support the application of collateral estoppel." Id. at 189.

On appeal, however, the Sixth Circuit BAP reversed the finding that the state court judgment prevented the debtor from litigating the issue of fraud in the bankruptcy court. As the BAP stated:

> Although the Plaintiffs in this case may well have submitted evidence from which the Ohio court *could* have found the kind of fraud that would bar a discharge in bankruptcy, it is apparent that the court made no findings of fact or conclusions of law with respect thereto, not even informal ones.

276 B.R. at 194 (emphasis in original). Since the state judgment "did not specificially find the Debtor guilty of fraud of any element of fraud", the judgment was not an "affirmative finding" on the issue which would prevent it from being litigated in a subsequent action. Id. at 194. The Court concluded:

> We think this is a better result than one which would allow preclusion from reasoning backwards from the damage awards to what "must" have been found in order to justify them. For example, one could reason that the court's award of punitive damages on the fraud count must mean that it actually decided that a fraud was committed. But that same reasoning would find preclusion to be the result of *every* default judgment, and so in every automobile accident case we would reason backwards from an award of damages to the conclusion that the court *must* have decided that the defendant was negligent. Even if a review of the record showed that evidence had been presented from which the court *could* have found negligence, there would be no assurance that it did, for we can never know whether the court awarded damages based on the evidence presented or merely on the defendant's default, as it was entitled to. It would always be free to ignore the evidence, or find it insufficient, and rely on the default instead. Only findings, or something like them, will show whether the court actually litigated the question, and we think that the

> Plaintiffs have not carried their burden of showing such
> findings in this case.

Sweeney, 276 B.R. at 194-95 (emphasis in original). [3]

   Applying the standards set forth in Sweeney and other decisions to the present case, it is clear that the default judgment rendered against Mr. Jones in the Ohio state court action can have no preclusive effect on the issues raised by Jones in this action. The state court made no "affirmative finding" whatsoever on the issues of whether (i) Wells Fargo fraudulently represented that it was the holder of the Jones' note and mortgage at the outset of the state court foreclosure action; (ii) the purported assignment to Wells Fargo was fraudulently executed and/or procured; or (iii) the assignment misrepresented the identity of the actual beneficiary of the mortgage.  In fact, none of these issues was even raised in the state court foreclosure action.  Thus, because it is impossible to conclude that the issue of Wells Fargo's allegedly illegal actions with regard to the assignment of Mr. Jones' mortgage were "actually litigated" in the state foreclosure proceeding[4], Jones cannot be precluded from litigating those issues here.

---

[3] Other cases interpreting Ohio law have similarly found that there must be "an affirmative finding" on the specific issue in a default judgment for a party to be precluded from litigating that issue in a subsequent proceeding.  For instance, in Zaperach v. Beaver, 451 N.E.2d 1249 (Ohio Ct. App. 1982), a husband sought to preclude his former wife from bringing a child support proceeding, arguing that her failure to answer the complaint in their prior divorce action – which alleged that the couple had no children – precluded the issue from being subsequently litigated. Noting that the divorce court had not "made an affirmative finding that no children were born," the court rejected the argument that the wife's failure to answer the divorce complaint precluded the issue of whether the couple had children from being litigated in a subsequent action:

> only if there is an *express adjudication of an issue* by the court in
> the original action, whether by default or trial, can the judgment
> in that action be utilized as establishing a matter between the
> parties. Id. at 1252 (emphasis added)

[4] In fact, in the August 8, 2007 Order attached as Exhibit A to Wells Fargo's brief, the court indicates that it was "grant[ing] judgment on the note" on the basis of Mr. Jones' default in

Ignoring this dispositive point, Wells Fargo contends that "the state court expressly relied upon the evidence submitted" by Wells Fargo, and specifically found that "the fees Jones alleges were improperly asserted" were properly assessed and accurate. (Wells Fargo Brief, p. 10)   However, far from "expressly relying upon the evidence" submitted by Wells Fargo, the pro forma recitation in the Judgment and Decree in Foreclosure never once cites to any exhibit or other document submitted by Wells Fargo, or even mentions the word "evidence."  (See Judgment attached as Exh. C to Wells Fargo Brief)

Nor does the Judgment ever refer to any of the specific costs and expenses challenged by Mr. Jones (allegedly illegal service of process costs, late fees, property inspection fees), much less make any affirmative finding that those costs and expenses were properly assessed.[5]

In short, in the absence of specific findings on the issues relevant to these proceedings, or indeed any reference whatsoever to the purported "evidence" submitted by Wells Fargo, this court cannot possibly grant preclusive effect to any issues purportedly decided in the prior state court default judgment against Mr. Jones. <u>Schulte v. Schulte</u>, 385 B.R. 181, 190 (Bank. S.D. Ohio 2008) ("the preclusive effect of a default judgment is restricted to those instances where the plaintiff has actually submitted to the state court admissible evidence… and the state court, based upon the evidence submitted,

---

answering, demonstrating that it was <u>not</u> deciding Wells Fargo's entitlement to foreclosure on the merits. (Exh. A to Wells Fargo Brief, p. 3)

[5] In fact, the default judgment simply says that Wells Fargo is entitled to "the costs of this action", without specifying, much less calculating, what the proper amount of those costs would be. (Judgment, Exh. C to Wells Fargo Motion to Dismiss, p. 3)

has actually made findings of fact and conclusions of law sufficiently detailed to support the application of the collateral estoppel doctrine")

### C. Collateral Estoppel And Res Judicata Do Not Apply Where There Are Allegations That The Prior Judgment Was Fraudulently Procured

Finally, even if the precise claims alleged by Mr. Jones in this proceeding had been actually litigated and decided in the Ohio state court foreclosure proceeding, Mr. Jones' allegations that the state court judgment may have been procured by fraud would constitute an additional basis for denying preclusive effect to the state judgment. As the Sixth Circuit has stated, "in Ohio, the doctrine of res judicata is that an existing final judgment on the merits, *without fraud or collusion...* is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." Stuhlreyer v. Armco, 12 F.3d 75, 77 (6th Cir. 1993) (emphasis added). Thus, where there are allegations that the prior judgment might have been tainted or otherwise impacted by fraud, *res judicata* does not apply. In re Abdul-Ali Abdur Rahman, 392 F.3d 174, 194 (6th Cir. 2004) ("it has long been true that fraud on the court represents an exception to *res judicata*")

Here, there are credible allegations that – for a variety of reasons -- the circumstances surrounding the assignment of Mr. Jones' mortgage may have been tainted by fraud. For this reason as well, then, *res judicata* and *collateral estoppel* may not apply to the claims at issue.[6]

---

[6] Moreover, courts have also held that res judicata does not apply where the claims in the second action were not discoverable during the pendency of the first action. Stand Energy Corp. v. Ruyan, 2005 Ohio App. Lexis 4375, **8-9 (1st App. Dist. 2005). In the prior state foreclosure action, Mr. Jones had no basis whatsoever to suspect that the assignments may have been fraudulently procured by Wells Fargo, or that Wells Fargo failed to properly disclose the actual holder of his mortgage.

## POINT III

## MR. JONES HAS PLED A VALID BREACH OF CONTRACT CLAIM AGAINST WELLS FARGO

Despite the fact that it has already answered both the original and amended Complaint, Wells Fargo now contends that Mr. Jones has failed to adequately plead a claim for breach of contract, arguing that Jones has failed to identify the contract which was breached by Wells Fargo, or point to any compensable damages.

### 1. The Note And Mortgage At Issue

It is more than a little disingenuous for Wells Fargo to argue that "Jones never identifies which contract Wells Fargo allegedly breached", (Wells Fargo Br. p. 14), when barely two pages later in its brief, it argues that "Jones cannot assert a claim for unjust enrichment where a contract between the parties exists." (Wells Fargo Br. p. 16) Obviously, Wells Fargo cannot have it both ways, and for this reason alone, its motion should be denied. [7]

In any event, the Complaint clearly put Wells Fargo on notice that the contract at issue is Mr. Jones' Note and Mortgage, which was allegedly assigned to Wells Fargo in July 2007. As the Amended Complaint states:

> 81. In its Complaint for Foreclosure, Wells Fargo represented to the Court that it "is the owner and holder" of the promissory note on the Jones' mortgage.

> 82. Wells Fargo also represented in the Complaint that the mortgage was "filed for record on April 29, 2004", and that *"it was subsequently assigned to the plaintiff herein."*

> 83. These allegations were materially false.   In fact, as Wells Fargo, Lerner Sampson and Countrywide knew, *the Mortgage and Note were not assigned*

---

Tellingly, despite the fact that Mr. Jones' original Complaint contained breach of contract allegations against Wells Fargo which were identical to those in the Amended Complaint, Wells Fargo's first motion for judgment on the pleadings against Mr. Jones failed to raise the argument that Jones failed to identify the relevant contract between him and Wells Fargo.

*to Wells Fargo until July 6, 2007*, over a month after the foreclosure action was commenced.

(Amended Complaint, ¶¶81-83 (emphasis added))

Indeed, in its answer to the Amended Complaint filed with this Court on May 28, 2010, Wells Fargo admitted that (i) it represented that it was the "owner and holder" of Mr. Jones' promissory note in the state foreclosure action, and that the Jones' mortgage had been assigned to it before the commencement of the state foreclosure action. (See Wells Fargo's Answer to Plaintiffs' Amended Complaint, Docket # 173, ¶45)  Moreover, in support of this motion, Wells Fargo has annexed a copy of the purported assignment which transferred Mr. Jones' note and mortgage to Wells Fargo.  (See Exhibit B to Wells Fargo's Motion to Dismiss, p. 23) Thus, not only does the Complaint specifically refer to the contract at issue in this case, but Wells Fargo has repeatedly indicated its understanding that the Jones' Note and Mortgage controls the relationship between Mr. Jones on the one hand, and Wells Fargo and the other defendants on the other.[8]

## 2.  Mr. Jones Has Alleged Compensable Damages For Breach of Contract

---

[8] Moreover, even if Wells Fargo was acting as a mere trustee of the beneficiaries of the Note and Mortgage, that would not mean that it could not be held liable for the breach of Jones' mortgage documents.  Under Ohio law, agents may be liable for the breaches of contract of a principal to an agreement if "the principal is only partially disclosed", or "where there is a fictitious or non-existent principal, or the principal is without legal capacity or status." Smith & Associates, 1 Ohio App.3d 118, 120-21 (10th App. Dist. 1981); Olzens v. Lapuh, 2008 Ohio App. Lexis 3624, **15-16 (11th App. Dist. 2008) (same)   Here, as the Amended Complaint specifically alleges in Paragraphs 172-175, it appears as if the identity of the assignee of Jones' mortgage has never been completely and accurately disclosed.  Moreover, there are serious questions as to the "legal capacity and status" of the "Certificate Holders" which apparently now hold Mr. Jones' mortgage.  (Amended Complaint, ¶174) It is unclear what exactly the "Certificate Holder" is, much less whether it has the capacity to act independently of agents like Wells Fargo.

Wells Fargo next contends that Mr. Jones has failed to allege damages necessary to a breach of contract claim, because he purportedly has not yet been compelled to pay any of the allegedly illegal fees and expenses.

However, as alleged in the Amended Complaint, an enforceable judgment of foreclosure allowing Wells Fargo to recover such fees from Jones has been entered by the Court of Common Pleas in Montgomery County, Ohio.  (Amended Complaint, ¶100)  Neither Wells Fargo nor any of the other defendants has sought to vacate or amend that judgment, nor has Wells Fargo sought to dismiss the Ohio foreclosure action against Jones which -- though stayed -- remains pending.  (Amended Complaint, ¶100)

Under these circumstances, the law does not require Jones to wait until Wells Fargo actually attempts to collect the fees, expenses and mortgage payments it sought and which were awarded in the Ohio judgment of foreclosure (if it has not already done so).  Rather, it is well settled that "injunction is a proper remedy against a threatened breach."  United Aircraft Prod. v. Warwick, 79 Ohio App. 165 (1945).  In fact, in Moon v. Hyosung, Inc., 1994 U.S. App. Lexis 27556, *14-15 (6th Cir. 1994), the Sixth Circuit rejected a similar claim that a breach of contract claim was not ripe because plaintiff had not yet suffered damages, finding that the circumstances indicated that plaintiff had a "realistic danger" of suffering damages in the future.

Moreover, even if Mr. Jones claim for breach of contract based on these allegedly illegal fees and expenses were not yet ripe, Jones would still have damages compensable in a breach of contract action.  As the Amended Complaint alleges,

> Jones is entitled to recover his out-of-pocket expenses
> resulting from the breach of the Jones' Note and Mortgage
> including, but not limited to, expenses associated with the
> foreclosure action, fees associated with filing for

> bankruptcy and retaining bankruptcy counsel, and other
> fees and expenses associated with defending against the
> claims brought by defendants.

(Amended Complaint, ¶176)

As Courts interpreting Ohio law have routinely recognized,

> The fundamental basis for a damage award in the event of a
> breach of contract is to compensate the injured party for his
> losses. 30 Ohio Jurisprudence 3d (1981)33, Damages,
> Section 25. ***A person whose contract has been breached
> may collect his out-of-pocket expenditures*** and his
> anticipated loss of profits. *Id.*

<u>Wheeler v. Rubino</u>, 1994 Ohio App. Lexis 2424, at *5 (9th App. Dist. 1994) (emphasis

added).  <u>See also</u>, <u>Cleveland v. Aziz Ibrahim</u>,  2003 U.S. Dist. Lexis 26348, at *14-15

(N.D. Ohio 2003), <u>reversed on other grounds</u>, 121 Fed. Appx. 88 (6th Cir. 2005)

(awarding out of pocket expenses resulting from a breach of contract); <u>Katz v. Miller</u>,

1992 Ohio App. Lexis 2334, at *3 (10th App. Dist. 1992) ("because appellant testified

that he was unable to demonstrate any out-of-pocket losses as a result of being evicted

from the premises, appellant's claim for breach of contract should also be dismissed");

<u>Plough, Inc. v. REI, Inc.</u>, 1993 U.S. App. Lexis 29809, at *19 (6th Cir. 1993) ("A non-

breaching party must prove that direct out-of-pocket expenses are the direct and

proximate result of the other party's breach in order to recover such expenses")

## <u>POINT III</u>

### PLAINTIFFS HAVE PLED A VALID CLAIM FOR UNJUST <u>ENRICHMENT AGAINST WELLS FARGO</u>

Wells Fargo alleges that Mr. Jones has failed to sufficiently allege a claim for

unjust enrichment against it because plaintiff has not adequately alleged that Wells Fargo

received a benefit from its activities in connection with Mr. Jones' loan.   However, this

allegation simply ignores the allegations in the Amended Complaint. Thus, as Mr. Jones alleges:

- ¶88: "Wells Fargo… regularly and improperly inflate[s] costs and fees in order to recover additional amounts from delinquent borrowers."

- ¶94: "Defendants passed on the costs of such process service to Jones, and to numerous other defendants in foreclosure actions";

- ¶95: "Wells Fargo… also charged Jones for late fees after his loan was accelerated.

- ¶97: "Wells Fargo…also charged Jones for multiple property inspections in circumstances where the passing on of the costs of such inspections are also prohibited under relevant and state law and regulations."."

As shown above, plaintiffs' Amended Complaint has specifically identified each of the fees and expenses which the plaintiffs claim were illegally charged by Wells Fargo and the other defendants. While the Amended Complaint has not specifically alleged how each of those fees and expenses were ultimately divided by the various defendants involved in debt collection activities against Mr. Jones, there is no requirement that plaintiff do so at this juncture.

As the Sixth Circuit stated in <u>Michaels Building Co. v. Ameritrust Co., N.A.</u>, 848 F.2d 674, 680 (6th Cir. 1988), the federal pleading rules "do[] not require omniscience" from a plaintiff where – as here – certain facts are under the control of the defendants. In <u>Michaels</u>, plaintiff alleged that it was fraudulently charged an interest rate which was supposed to be at the prime rate, but which was in excess of the rate charged to other preferred customers. In the Complaint, however, plaintiff was unable to identify any customers who were charged a preferred rate, and the district court dismissed their fraud claim on this basis:

> The plaintiffs have failed to meet the specificity
> requirement of Rule 9(b) as to Counts I and V, which
> alleged misrepresentations concerning the 'prime rate' used
> to calculate interest on plaintiffs' loans. ...[T]he plaintiffs
> have been unable to identify any rate, loan or borrower to
> support their claim that they were charged interest based on
> a false or artificial prime rate.

848 F.2d at 677.

On appeal, however, the Sixth Circuit reversed, finding that even the heightened

pleading requirement of Rule 9(b) should be relaxed where the information which was

purportedly lacking in the Complaint was within a defendant's exclusive knowledge:

> [T]he only fact that plaintiffs omit from their complaint are
> the identities of the borrowers who received sub-prime
> loans – information which lies in the hands of the
> defendant.  Courts have held that [Rule 9(b)] may be
> relaxed where information is only within the opposing
> party's knowledge.  Especially in a case in which there has
> been no discovery, courts have been reluctant to dismiss the
> action where the facts underlying the claims are within the
> defendant's control. . .

848 F.2d at 680.

In the present case, the information regarding which of the defendants ultimately

received which of the challenged fees and expenses arising from the debt collection

activities relating to the Jones' mortgage is within the defendants' exclusive knowledge

and control.   As the Sixth Circuit stated in Michaels, even under the heightened pleading

requirements imposed by Rule 9(b):

> It is a principal of basic fairness that a plaintiff should have
> an opportunity to flesh out her claim through evidence
> unturned in discovery.  Rule 9(b) does not require
> omniscience, rather, the Rule requires that the fraud be pled
> with enough particularity to put defendants on notice as to
> the nature of the claim.  Plaintiffs in this case have met that
> requirement.

848 F.2d at 680.

In any event, even if Jones could not show that Wells Fargo received a direct benefit from amounts paid by Mr. Jones, courts entertaining similar claims in Ohio and in this circuit frequently award damages measured by the profits resulting from illegal activity, rather than the losses incurred by the plaintiff. See, e.g., Harris v. Physicians Mutual Ins. Co., 240 F.Supp.2d 715, 718 (N.D. Ohio 2003) ("The plaintiffs do not specifically ask for disgorgement as a remedy for the fifth claim, unjust enrichment, but disgorgement is a cognizable remedy for that claim"); SEC v. Blavin, 760 F.2d 706, 713 (6th Cir. 1985) ("the purpose of disgorgement is to force a defendant to give up the amount by which he was unjustly enriched rather than to compensate the victims of fraud"); United States v. Ford, 2003 U.S. App. Lexis 10432, at *16 (6th Cir. 2006) ("Restitution and disgorgement are part of courts' traditional equitable authority"). This is especially the case in situations like here, in which parties have purportedly engaged in deception in connection with legal proceedings. See, e.g., In the Matter of Walter Watson, 2004 Ohio App. Lexis 6511, at **15 (7th App. Dist. 2004) (finding that bank engaged in "a fraud upon the court for which disgorgement must [] be ordered"); Disciplinary Counsel v. Stranke, 110 Ohio St.3d 247 (Ohio Sup. Ct. 2006) (ordering disgorgement of attorney fee in connection with misconduct in legal proceedings)

## CONCLUSION

Wherefore, plaintiff respectfully requests that Wells Fargo's motion to dismiss be denied in all respects.

August 18, 2010

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiffs*



F07-00665            DEG/jev                                    07

FILED    DEG/jev
COURT OF PLEAS

2007 OCT 23  PM 1:05

GREGORY A. BRUSH
CLERK OF COURTS
MONTGOMERY CO. OHIO
9

**IN THE COURT OF COMMON PLEAS**
**MONTGOMERY COUNTY, OHIO**

| | | |
|---|---|---|
| Wells Fargo Bank, N.A. as Trustee | ) | CASE NO. 2007CV02252 |
| | ) | |
| | ) | JUDGE John W. Kessler |
| Plaintiff | ) | |
| | ) | |
| -vs- | ) | **JUDGMENT ENTRY** |
| | ) | |
| Eugene D. Kline, et al. | ) | |
| | ) | |
| Defendants | ) | |

This Cause came on to be heard upon the Motion for Summary Judgment of the Plaintiff and the Affidavit and Exhibits in support thereof, Defendant Eugene D. Kline's memorandum in opposition to Plaintiff's motion for summary judgment, and Plaintiff's Reply to Defendant Eugene E. Kline's memorandum in opposition and the Court, having found that reasonable minds can come to but one conclusion which is adverse to the Defendant, Eugene D. Kline, heretofore sustained Plaintiff's Motion for Summary Judgment, the same being a final appealable Order.

THIS CAUSE was submitted to the Court and heard upon the Complaint for Foreclosure of the Plaintiff, the Answer of Defendant Eugene D. Kline (Defendant Eugene D. Kline's

1

counterclaim was previously dismissed by the Court on 8/15/07), the Answer of Defendant State of Ohio Bureau of Employment Services, disclaiming interest, the Answer of Defendant Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation, the Answer of Defendant, Treasurer of Montgomery County, and the pleadings.

The Court finds that all necessary parties have been served with summons according to laws and are properly before the Court; that the Defendant, Jane Doe, Unknown Spouse, if any, of Eugene D. Kline is in default of Answer or other pleading and thereby confesses the allegations of the Complaint to be true, and said Defendant is forever barred from asserting any right, title or interest in and to the hereinafter described premises.

The Court finds that there is due the Treasurer of Montgomery County, Ohio, taxes, accrued taxes, assessments and penalties on the premises hereinafter described, as shown on the County Treasurer's tax duplicate, the exact amount being unascertainable at the present time, but which amount will be ascertainable in accordance with Ohio Revised Code Section 323.47; which are a valid and subsisting first lien thereon for that amount so owing.

The Court finds on the evidence adduced that there is due the Plaintiff on the promissory note set forth in the First Count of the Complaint, the sum of $155,515.98, plus interest thereon at the rate of 7.99% per annum from December 1, 2006 and subject to adjustment as set forth in the note, for which sum,

2

judgment is hereby rendered in favor of the Plaintiff against the Defendant, Eugene D. Kline.

The Court further finds that in order to secure the payment of the promissory note aforesaid, the Defendant, Eugene D. Kline, a married man, executed and delivered to Mortgage Electronic Registration Systems a certain mortgage deed as in the Second Count of said Complaint described, thereby conveying to it the following described premises:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

Said premises also known as 902 Ashcreek Drive, Centerville, Ohio

PP# 067 21805 0003

That said mortgage was duly filed with the Recorder of Montgomery County on June 25, 2004, and was by him thereafter recorded Volume 04-073971 of the Mortgage Records of said County, and thereby became and is a valid first mortgage lien upon said premises, subject only to the lien of the Treasurer for taxes; that said mortgage deed was assigned to this Plaintiff on April 6, 2007 in File No. 07-028132; that said conditions in the mortgage deed have been broken, and the same has become absolute and the Plaintiff is entitled to have the equity of redemption and dower of the Defendants, Eugene D. Kline and Jane Doe, Unknown Spouse, if any, of Eugene D. Kline, in and to the said premises foreclosed.

Plaintiff has and will from time to time advance sums for taxes, insurance and property protection. The Plaintiff has the

3

first and best lien the first and best lien for these amounts in addition to the amount set forth above. The Court makes no finding as to the amounts of the advances and continues same until the confirmation of sale.

The Court finds that the Defendant, Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation, claims some right, title, interest or lien upon the premises described herein, as set forth in its pleading filed herein, but that any right, title, interest, claim or lien that they may have is inferior and subsequent to the Lien of the Plaintiff.

The Court, while finding that there is no just reason for delay as to the Plaintiff's claim, makes no finding at this time as to the claim, right, title, interest or lien of the Defendant, Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation, as set forth in its pleading filed herein, except to note that such claim, right, title, interest or lien of the hereinabove Defendant is hereby ordered transferred to the proceed derived from the sale of said premises, after the payment of the costs of the within action, taxes due and payable and the amount hereinabove found due the Plaintiff, and the same is hereby ordered continued until further Order.

It is therefore ORDERED, ADJUDGED, AND DECREED that unless the sums hereinabove found due, together with the costs of this action, be fully paid within three (3) days from the date of the

4

entry of this decree, that equity of redemption and dower of the Defendants, Eugene D. Kline and Jane Doe, Unknown Spouse, if any, of Eugene D. Kline, in and to said premises shall be foreclosed, and said premises sold, and that the Plaintiff may issue an order of sale directed to the Sheriff of Montgomery County, directing him to appraise, advertise in a paper of general circulation within the County, and sell said premises as upon execution and according to law, free and clear of the interest of all parties to this action. There is no just reason for delay.

     RECORD IS HEREBY ORDERED.

_____
John W. Kessler, JUDGE

APPROVED BY:

_____
**REIMER, LORBER & ARNOVITZ CO., L.P.A**
By: Darryl E. Gormley #0067595
Attorney for Plaintiff
P.O. Box 968
Twinsburg, Ohio 44087
(330) 425-4201
Fax (330) 487-0923

_____ SUBMITTED _____
Colette S. Carr #0075097
Attorney for Defendant
Treasurer of Montgomery County

_____ SUBMITTED _____
Kenneth E. Wegner
Attorney for Eugene D. Kline

_____ SUBMITTED _____
Paul M. Nalepka, 0040796
Attorney for Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation,

5