IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| EUGENE KLINE, JON SHAYNE JONES, DIANA L. HUGHES, AND GEORGE AND CAROL ROSS, on Behalf of Themselves and All Others Similarly Situated,<br><br>       Plaintiffs,<br><br>v.<br><br>MORTGAGE ELECTRONICS SECURITY SYSTEMS, ET AL.,<br><br>       Defendants. | Case No. 3:08 cv 0408<br><br>JUDGE WALTER HERBERT RICE<br><br>MAGISTRATE JUDGE SHARON L. OVINGTON |

**REPLY MEMORANDUM IN SUPPORT OF
COUNTRYWIDE HOME LOANS SERVICING, LP'S
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

Barbara Friedman Yaksic (#0014338)
Richard A. Freshwater (#0080762)
McGLINCHEY STAFFORD, PLLC
25550 Chagrin Boulevard, Suite 406
Cleveland, OH 44122-4640
Telephone:  (216) 378-9905
Facsimile:  (216) 378-9910
byaksic@mcglinchey.com
rfreshwater@mcglinchey.com

Thomas M. Hefferon (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
thefferon@goodwinprocter.com

September 17, 2010

In his opposition brief, plaintiff Jon Shayne Jones ("Jones") reiterates several arguments that this Court has already rejected. By doing so, Jones implicitly acknowledges that his Amended Complaint has not corrected the problems that this Court identified when it dismissed his original Complaint.

As defendant Countrywide Home Loan Servicing, LP ("Countrywide") explained in its opening brief, Jones made very few changes in his Amended Complaint. Specifically, none of these changes resolve the four problems this Court identified in Jones' original Complaint, in its March 30, 2010 Order (Dkt. 156) ("Order"), as the basis for granting Countrywide's initial motion for judgment on the pleadings. Nor surprisingly, then, most of what Jones argues is simply a rehash of the same arguments this Court already has rejected. Jones' only new argument – that the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010), changed the requirements of the OCSPA that limit the availability of classwide relief – has been already rejected by at least one other federal court in Ohio. Nothing Jones has said should save his Amended Complaint from dismissal.

**I.      JONES DOES NOT PLEAD FACTS TO SUPPORT HIS OCSPA CLAIM.**

    **A.      Jones' Individual OCSPA Claim Must Be Dismissed Because Countrywide Is Not a "Supplier" as Defined by the OCSPA, and Is Thus Not Subject to the Act.**

As stated in its Motion, Countrywide cannot be a "supplier" under the explicit definition of the Ohio Consumer Sales Protection Act ("OCSPA" or "Act"), and as such, is not liable to him for the claim in his Third Claim for Relief plead under the statute. This is because Countrywide is (1) not a "nonbank mortgage lender" and is (2) exempt from the OCSPA because it is a subsidiary of a national bank.[1]

---

[1]      In his Opposition, Jones first mistakes the financial institution *exemption* under the found at Ohio Rev. Code § 5725.01 (which this Court previously rejected as inapplicable to Countrywide), with the definition of those

2

Jones' first argument (Opp. at 8) is that the status of Ameriquest Mortgage Company (from whom he originally obtained the loan), and not that of Countrywide, determines whether the OCSPA applies here.  Of course, Jones sued Countrywide and not Ameriquest.  In any event, although Countrywide has never disputed that Ameriquest originated his loan,[2] the originator of the loan has no relation to his allegations against *Countrywide* and its status as the mortgage servicer involved in his foreclosure, as it is foreclosure fees that are the focus of Jones' Amended Complaint.[3]  It is not logical that the status of the originator would control Jones' ability to state a claim against the servicer.  Thus, this argument is without merit.

Jones next states that "there is nothing in the definition of "supplier" contained in [Ohio Rev. Code] § 1345.01(C) which excludes the subsidiary of a national bank from its reach." Opp. at 8.  This is wrong – the OCSPA does exclude subsidiaries of a national bank, such as Countrywide.  As Countrywide explained, the OCSPA defines a "supplier" as a "*seller* engaged in the business of effecting or soliciting consumer transactions." Ohio Rev. Code § 1345.01(C) (emphasis added).  The ***very same paragraph of the Act*** defines a "seller" "in a consumer transaction in connection with a residential mortgage, [as] a [i] loan officer, [ii] mortgage broker, or [iii] nonbank mortgage lender." Ohio Rev. Code § 1345.01(C).  Thus, to liable under the OCSPA, Countrywide must be either a:  (1) loan officer, (2) mortgage broker, or (3) nonbank mortgage lender.

---

who are subject to the Act.  Plaintiff's Memorandum in Opposition to the Motion to Dismiss by Countrywide Home Loans Servicing LP (Dkt. 191) (July 20, 2010) ("Opp.") at 7.

[2]     Jones asserts that "the central argument made by Countrywide – [is] that the OCSPA applies only to the lender that originated the mortgage transaction." Opp. at 10.  Not only is this ***not*** Countrywide's central argument, but it has never made such an argument.

[3]     Jones also alleges that "Countrywide does not claim that the 'Certificate Holder' [Wells Fargo Bank, ***National Association***, as noted by Jones in the very same paragraph]….has any relationship whatsoever to a national bank." Opp. at 8.  First, there is no need to identify Wells Fargo Bank, ***N.A.*** as a national bank; its name does that on its own.  Second, as noted above, Jones' allegations against Countrywide Home Loans Servicing, L.P. relate to its servicing activities – nothing more.

3

Jones argues only that Countrywide is a nonbank mortgage lender (Opp. at 8), but it is not a lender at all with respect to his loan. Jones admits his lender was Ameriquest, and Countrywide Home Loans *Servicing, L.P.* is only alleged to have serviced Jones' loan. *See* Amended Complaint, ¶¶ 77, 80 (Jones admits that Countrywide did not originate his loan, but merely acted as servicer). Absent any other allegations, Countrywide cannot be considered a "nonbank mortgage *lender*" and so is not a "supplier" that is subject to the Act.

Even if Countrywide's actions as a mortgage servicer could render it a loan officer, mortgage broker, or nonbank mortgage lender, the OCSPA would not apply. The OCSPA does:

> [*N*]*ot include a bank*, savings bank, savings and loan association, credit union, or credit union service organization organized under the laws of this state, another state, or the United States; *a subsidiary of such a bank*, savings bank, savings and loan association, or credit union . . .

Ohio Rev. Code § 1345.01(H)(2), (J)(2), and (K) (emphasis added). As noted in its Motion, Countrywide is an indirect, wholly-owned subsidiary of Bank of America, National Association ("BANA"), a point that Jones does not dispute. As a "subsidiary of such a bank… organized under the laws of… the United States," Countrywide is not included within the statutory definition of a "seller" and therefore it cannot be considered a "supplier" subject to the Act.

Jones argues instead (Opp. at 10) that this argument is irrelevant because at the time of his foreclosure in 2007 Countrywide was not a subsidiary of a bank. The attempt, however, is unsuccessful, for at that time, Countrywide was a wholly-owned, indirect subsidiary of Countrywide Financial Corporation ("CFC"), an affiliate of a sister bank, Countrywide Bank, FSB, also owned by CFC. CFC was regulated and supervised by the Office of Thrift Supervisor ("OTS"), *see* CFC's 2007 Form 10K at 19, 26 (attached as Exhibit A) and Servicing LP was

4

"***subject to supervision by the OTS.***"[4] Thus, Countrywide Home Loans Servicing, L.P. was not a supplier under the OCSPA because the OCSPA excludes it as an "affiliate [of a bank] that . . . is under common control with such a bank . . . and is subject to examination, supervision, and regulation . . . by . . . the office of thrift supervision [OTS] . . ." Ohio Rev. Code § 1345.01.

Therefore, Jones' OCSPA claim as to Countrywide must fail as a matter of law.

### B. Jones' OCSPA Class Claim Also Fails.

In its March 30, 2010 Order, this Court dismissed Jones' original Complaint without prejudice, ordering him to refile and identify "what rule or decision Countrywide allegedly violated" that would allow for class status under the OCSPA. Order at 7. Rather than cite something new, Jones' Amended Complaint simply restates several cases from his earlier briefing that Countrywide had already distinguished. Amended Complaint, ¶¶ 146-149. Moreover, Jones' reliance on the Supreme Court's *Shady Grove* decision cannot save his class OCSPA claim because he misinterprets the Court's holding.

#### 1. Jones Does Not Identify a Rule or Decision Of Settled Law That Countrywide Allegedly Violated

In its Motion, Countrywide explicitly articulated again why each case Jones identified failed to establish a "rule or decision" that Countrywide violated. In his opposition, Jones ignores Countrywide's arguments on all cases except one– *Foster v. DBS Collection Agency*, 463 F.Supp.2d 783 (S.D. Ohio 2006).[5] But, as Countrywide has already explained, *Foster* cannot support an OSCPA claim for several reasons.

---

[4] *See also* Organizational Hierarchy of Countrywide Financial Corp. as of July 1, 2008 (attached as Exhibit B) demonstrating that Servicing LP (entry 5) and Countrywide Bank, FSB (entry 69) were affiliate corporations under the common control of Countrywide Financial Corp.

[5] Jones merely copies and pastes descriptions of the other cases from his Amended Complaint in his footnote 2. As Countrywide already distinguished those cases (as have numerous other Defendants), and Jones makes no attempt to rebut Countrywide, Countrywide will not rehash why those cases are inapplicable.

First, *Foster* is a federal case and cannot be a "rule or decision" under the OCSPA. Ohio Rev. Code § 1345.09(B) clearly requires that the conduct at issue be determined a violation of the OCSPA by an ***Ohio state court***. *See Marrone v. Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31 (where the Ohio Supreme Court notes that "[p]rior notice may be in the form of 'an act or practice determined by a ***court of this state*** to violate section 1345.02 or 1345.03 of the Revised Code…" quoting Ohio Rev. Code § 1345.09(B); *see also Johnson v. Microsoft Corp.*, 155 Ohio App.3d 626, 2003-Ohio-6916, 802 N.E.2d 712, 720 (Ohio App. 1st Dist. 2003) (same). This alone should end the inquiry.

Second, in *Marrone v. Philip Morris USA, Inc.*, the Ohio Supreme Court held that conduct previously declared to be deceptive or unconscionable must be "substantially similar" to the conduct alleged by the plaintiff that would put the defendant on notice that it would be subject to a class action under the OCSPA. *Marrone*, 850 N.E.2d at 34. In *Marrone*, the plaintiffs sought class certification against Philip Morris for labeling cigarettes as "light" in violation of the OCSPA but relied on two cases involving separate issues. *Id.* at 35 (citing *State ex rel. Celebrezze v. Hi-Lo Oil, Inc.*, Franklin C.P. No. 85-CV-01-518 (*Celebrezze* " involved a defendant that was representing to consumers that it was selling two different grades of gasoline from two different pumps when in fact all the gasoline came from one underground tank."); *Amato v. Gen. Motors Corp.*, 11 Ohio App.3d 124, 463 N.E.2d 625 ("[I]nvolv[ing] an automobile manufacturer that allegedly sold Oldsmobile automobiles that contained engines manufactured by its Chevrolet division.").

The *Marrone* Court held that *Celebrezze* and *Amato* failed to satisfy the "substantially similar" requirement, because the conduct in those cases (involving gas stations and car engines) was not "substantially similar" because it did not involve the same "essential circumstances and

6

conditions" as *Mazzone* (involving light cigarettes). *Marrone*, 850 N.E.2d at 36 (citations omitted) (cases involving different industries could not be "substantially similar"). As such, the *Marrone* court held that class action status under the OCSPA would be improper. *Id*. at 35.

Here, *Foster*, did not involve a mortgage servicer but rather a debt collection agency that failed to register with the Ohio Secretary of State. *Foster*, 463 F.Supp.2d at 788. Despite the obvious differences, Jones asserts that *Foster* is applicable because that case involved debt collection agencies that lacked the capacity to bring suit in their own name, and then sought attorneys' fees when such actions were prohibited by Ohio law. Opp. at 9. Those issues are not relevant here. Even if Countrywide had initiated a suit in its own name before it owned the debt (which Jones does not allege), this Court has already noted in its March 22, 2010 Order that "the Ohio Supreme Court has recognized that lack of standing to initiate a lawsuit can be cured by the substitution of the real party in interest for the named plaintiff. There is simply no reason to conclude that the Ohio Supreme Court would reach the opposite result…."[6] Here, Countrywide is not a debt collector but rather a mortgage servicer operating in the mortgage service industry. Thus *Foster* does not apply.

As Jones has failed to identify a "rule or decision Countrywide allegedly violated," his class action claims under the OCSPA must be dismissed.

        2.      <u>Jones' Reliance on the Supreme Court's Shady Grove Decision is Misplaced.</u>

Jones now argues, for the first time, that the OCSPA's requirement that creates potential classwide liability is preempted by Rule 23's procedural rules on class actions. To support the point, he misstates the holding of the Supreme Court's divided decision in *Shady Grove*

---

[6]    *See also Wallace v. Washington Mut. Bank*, Case No. 1:09-cv-481 (S.D. Ohio May 10, 2010), cited in Countrywide's Motion on p. 10, where the Southern District of Ohio dismissed a claim under the OCSPA for failure to assign a mortgage prior to filing a foreclosure action as the OCSPA would not support such a claim.

*Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431 (2010). *Shady Grove* does not, as Jones contends, mandate this Court disregard the OCSPA because that case does not hold that state statutory limits on a substantive class action must be discarded when a case happens to be in federal court. *See In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010) (Gwin, J.).

*Shady Grove* involved a provision of New York law that precluded all class actions brought only to recovery a penalty (as opposed to actual damages). The lead opinion by Justice Scalia, for a majority at times and a plurality at other times, reversed the lower court's grant of a motion to dismiss.[7] In the "majority" portion of his opinion, Justice Scalia wrote that pursuant to the Rules Enabling Act, the New York statute answered the same question as Rule 23 – when a class could be certified – and thus its additional requirement for certification was improper. Justice Stevens, the fifth vote for that portion of Justice Scalia's opinion disagreed with the expansive holding of the remainder of the opinion, which stated that Rule 23 will always trump a state statute that might otherwise limit class actions. *Shady Grove*, 130 S.Ct. at 1444 (Scalia, J.). This broader portion of the opinion garnered only four votes, and does not represent the majority of the Court.

In his concurring opinion, Justice Stevens agreed with the result but disagreed with Justice Scalia's analysis. Justice Stevens wrote that courts should determine whether the state law requirement at issue is substantive or procedural. *Id.* at 1452 (Stevens, J., concurring). Only if the state requirement is procedural should it be held impermissible to alter the certification requirements of Rule 23. *Id.*

---

[7] Justice Scalia's opinion was joined, at least in part, by Chief Justice Roberts and Justices Thomas, Sotomayor and Stevens but only Chief Justice Roberts and Justice Thomas joined the entirety of his opinion.

This portion of Justice Stevens' opinion controls the inquiry here.[8]

Already, one federal judge in Ohio has applied Justice Stevens' framework to the OCSPA provision at issue and determined that it is substantive and thus not invalidated under *Shady Grove*. *In re Whirlpool,* 2010 U.S. Dist. Lexis 69254, at *6-7. In *In re Whirlpool*, Judge Gwin first held that Justice Stevens' concurrence was the controlling opinion and then explained that because "Ohio R.C. § 1345.09 purports to define Ohio's *substantive* rights and remedies by creating a cause of action for defrauded consumers and declaring the relief available to them" it is a substantive requirement. *Id.* at *6-7 (citations omitted; emphasis added). Judge Gwin explained that the "class action restriction in R.C. § 1345.09 is intimately interwoven with the substantive remedies available under the OCSPA." *Id.* (citing *Shady Grove*, 130 S.Ct. at 1456 (Stevens, J.)). Thus, *Shady Grove* does not prevent this Court from requiring Jones to allege the class action requirements in Ohio law necessary to state an OCSPA claim. The question, then, is whether the OCSPA's limit on class actions is substantive or not. It is substantive and not a mere matter of procedure. The decision of the Ohio legislature to prevent potentially-serious classwide liability unless the defendant had some reasonable advance notice that what it might do was wrong, is a classic case of a substantive judgment – and, under Justice Stevens' controlling opinion, is not preempted by Rule 23.

Since *Shady Grove* does not rewrite the OCSPA, and Jones does not allege a "rule or decision" that Countrywide allegedly violated, the motion to dismiss the OCSPA claim should be

---

[8] As the crucial fifth vote, Justice Stevens' concurrence controls as it is narrower than the plurality portion of Justice Scalia's opinion. "Under the rule announced in *Marks v. United States*, 430 U.S. 188, 193 (1977), '[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Bearden v. Honeywell Intern. Inc.*, 2010 WL 3239285, *10 (M.D. Tenn. Aug. 16, 2010) (In *Shady Grove*, "that means that Justice Stevens' concurrence is the controlling opinion."); *see also Durmishi v. National Cas. Co.*, --- F.Supp.2d ----, 2010 WL 2629996, at *14 (E.D. Mich. June 30, 2010).

9

granted. Countrywide is not aware of any Court that has agreed with Jones' contrary interpretation of the OCSPA.

### II. JONES' BREACH OF CONTRACT CLAIM MUST BE DISMISSED BECAUSE HE FAILED TO ALLEGE THE REQUISITE ELEMENTS OF THE CLAIM.

Jones' opposition rehashes arguments that this Court already rejected in dismissing his breach of contract claim. Jones basically restates the same facts and allegations that this Court previously held as insufficient. Report and Recommendations (Dkt. 136) (Feb. 16, 2010) ("R&R") at 9-11, adopted by Order at 6. The two additional paragraphs that he has added to his Amended Complaint (¶¶ 173, 174) address neither of the Court's concerns with the previous Complaint – his failure to allege that Countrywide actually breached any of the provisions in the mortgage or to show damages resulting from the alleged breach.[9] In fact, Jones does not even explain in his opposition how these additional paragraphs aid him. Jones' breach of contract claim must again be dismissed.

#### A. Absent Allegations of Actual Damages, Jones Cannot State A Claim For Breach of Contract.

Even though this Court already dismissed Jones' Complaint because it did not "set forth the damages which Jones suffered as a result of Countrywide's alleged breach of contract" (Order at 6), Jones just reargues that the allegations in his initial Complaint – and copied into his Amended Complaint – are sufficient to state a claim. The Court has rejected Jones' two claims of damages: (1) that "an enforceable judgment of foreclosure allowing Countrywide to recover such fees from Jones has been entered" (Opp. at 16) and (2) that he is "entitled to recover his out-of-pocket expenses" resulting from the foreclosure and bankruptcy proceedings. *Id.* at 17.

---

[9] Magistrate Ovington noted that Jones failed to allege the existence of a contract with Countrywide because his "loan agreement was with a party other than Defendant Countrywide." R&R at 11, adopted by Order at 6. However, as Countrywide acknowledged in its Opposition to Plaintiffs' Objections to the R&R (at 5 n.3), while Jones did enter into a mortgage contract with Ameriquest Mortgage Company (Compl. ¶ 78), Ameriquest assigned the servicing rights under the contract to Countrywide. *See* Compl. ¶ 81.

10

As to the first, this Court previously rejected Jones' theory (at 16) that Countrywide "might" in the future attempt to collect fees that were awarded in foreclosure but now have been disallowed by the Bankruptcy Court because the worry is purely speculative. *See* R&R at 9-10, adopted by Order at 6; *see also ADR North America, LLC v. Agway, Inc.*, 303 F.3d 653, 660-61 (6th Cir. 2002); *Hughes v. Lanham*, 2004 WL 3015416, at *8 (Ohio Ct. App. Dec. 30, 2004).[10]

Similarly, Jones' attempt to collect damages for "out of pocket expenses" associated with the foreclosure action has likewise been rejected by this Court. *See* R&R at 11, adopted by Order at 6.[11] As this Court held, Jones cannot satisfy the *Twombly* threshold without describing the specific "expenses associated with the foreclosure action" he actually incurred. *Id*. The Amended Complaint fails to shed any additional light about the specific fees Jones seeks; instead Jones simply restates the already-rejected allegations relating to damages. *Compare* Complaint, ¶¶ 145-147 *with* Amended Complaint, ¶¶ 162-176.

Without more, the Court should once again reject Jones' breach of contract claim for failure to allege any damages.[12]

---

[10] Jones alleges (at 16-17) that an injunction is the proper remedy to ensure that Countrywide will not seek to recover the disallowed fees and costs. This is another retread of an argument the Court has already rejected. Jones' assertion that Countrywide will attempt to recover the disallowed fees and costs is based solely on conjecture, especially in light of Countrywide's explicit disavowal of any such intent. *See American Speedy Printing Centers, Inc. v. AM Marketing, Inc.*, 69 Fed. App'x 692, 698 (6th Cir. 2003) ("Damages for future lost profits 'must be subject to a reasonable degree of certainty and cannot be based solely on conjecture or speculation'") (citation omitted). Although not expressly reached by the District Judge, Magistrate Ovington already found this claim speculative. R&R at 11 (citing *Knott v. Revolution Software, Inc.*, 909 N.E.2d 702, 710 (Ohio Ct. App. 2009)).

[11] While Jones pleads for the first time in his Amended Complaint damages for "out of pocket expenses resulting from the breach of the Jones' Note and Mortgage" including his attorneys' fees (Amended Complaint, ¶ 176), this Court previously rejected this argument when Jones introduced them in his Opposition to the Magistrate's Report and Recommendations (at 14-15). *See* R&R at 11, adopted by Order at 6. As the Magistrate noted, Jones cannot satisfy the *Twombly* threshold without describing the specific "expenses associated with the foreclosure action" he actually incurred." *Id.*. And, the Court found that *none* of Jones' allegations set forth damages for his breach of contract claim.

[12] As Countrywide previously noted in its Opposition to Plaintiff's Objections to the R&R (at 9 n.12) the cases cited by Jones (at 17-18) are all inapposite because almost all deal only with awarding out-of-pocket expenses incurred in fulfilling the non-breaching party's contractual obligations. *See*, *e.g., Wheeler v. Rubino*, 1994 WL 232729, at *2 (Ohio Ct. App. June 1, 1994). In fact, the only case cited by Jones that even discusses attorneys' fees,

### B. Jones' Breach of Contract Claim Must Also Be Dismissed Because He Failed to Allege a Breach.

One of the fundamental flaws this Court noticed in Jones' prior Complaint was that Jones had failed to allege "how [Countrywide] breached the contract." Order at 6.; *see also* R&R at 11 ("neither the complaint nor Jones' opposing memorandum identifie[d] any specific contract term(s) that Defendant Countrywide is alleged to have breached."). Jones does not disagree, but instead claims (at 19) that "Countrywide has clearly been put on notice by Mr. Jones [*sic*] prior court filing in this litigation of the specific contractual provisions which plaintiff claims were breached."[13]

Whatever Jones stated in an earlier *brief* is irrelevant to the Court's determination of whether Jones' Amended Complaint states a claim – and it begs the question as to why he did not include these allegations in his *Amended Complaint*. *See Roulhac v. Sw. Reg'l Transit Auth.*, No. 1:07cv408, 2008 WL 920354, at *4 (S.D. Ohio Mar.31, 2008) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss....") (citing *Chambliss v. Coca-Cola Bottling Corp.*, 274 F.Supp. 401, 409 (E.D. Tenn. 1967)); *Orea Energy Group, LLC v. East Tennessee Consultants, Inc.*, 2009 WL 3246853, at *3 (E.D. Tenn. Oct. 6, 2009) (same). In any event, Jones' contention that notice from prior pleadings or discovery can satisfy *Twombly's* pleading requirements is wrong.[14] Rule 8 of the Federal Rules of Civil

---

let alone authorizes them, awarded such fees only with respect to an action for contempt, not for breach of contract. *Cleveland v. Aziz Ibrahim*, 2003 WL 24010954 (N.D. Ohio June 17, 2003).

[13] As Countrywide previously stated in its opening brief, the two new paragraphs Jones added (Amended Complaint ¶¶ 173, 174) add nothing new, but merely allege that Countrywide is liable for breaches by a third party without identifying those breaches. Such allegations are exactly the type of "formulaic recitation of the elements of a cause of action" that cause a complaint to fail to state a claim. *Twombly*, 127 S.Ct. at 1964; *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[14] The single case Jones cites for in support for this proposition is clearly distinguishable. First, the issue in *Carter v. Ford Motor Co.*, 561 F.3d 562 (6th Cir. 2009), is whether at the summary judgment stage, a terminated employee's ambiguous complaint against her employer encompassed her first termination, which plaintiff clearly disavowed in her deposition. Thus, the court's statements about the liberal pleading requirements in the earlier stages of litigation are clearly dicta, at best. In any event, the plaintiff's complaint in *Carter* alluded to the first

Procedure specifically requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." And, despite this Court's specific instructions to allege the contractual provisions that Countrywide allegedly breached, Jones' Amended Complaint does not do so.

Aware of this, Jones now belatedly cites several provisions of his mortgage that he claims Countrywide violated. These provisions are not mentioned in his Amended Complaint, and so cannot save him from dismissal. Regardless, the provisions Jones' sets forth in his brief actually permit Countrywide and its agents to collect fees, costs, late charges, and interest incurred in connection with a default by Jones. *See* Jones' Mortgage ¶ 14 (attached as Exhibit C to Countrywide's Motion for Judgment on the Pleadings of the Amended Complaint) (Dkt. 183-4) (June 1, 2010) ("Lender may charge Borrower fees for services performed in connection with the Borrower's default … including, but not limited to, attorneys' fees property inspection and valuation fees. In regard to other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee"). *See also* Countrywide's Motion to Dismiss at 7 (explaining that the mortgage permitted Countrywide to collect the fees at issue). Absent any factual allegations to the contrary, Countrywide's actions to collect fees were expressly permissible under the mortgage and therefore did not constitute a breach of the contract.

Finally, Jones contends that he need not disclose specific contractual provisions he claims Countrywide has violated, at least until after he conducts some discovery. This argument is likewise flawed because it relies entirely on cases decided before *Twombly* and *Iqbal* clarified

---

termination throughout in the facts and background, but did not specifically allege a cause of action based on the prior termination. Here, Jones fails to reference the specific contractual provisions Countrywide allegedly breached anywhere in the Amended Complaint.

the law that conclusory breach allegations are insufficient to support a plausible contract cause of action. See Opposition at 19-20 (citing *New Hampshire v. Marinemax of Ohio, Inc*., 408 F.Supp.2d 526 (N.D. Ohio 2006) (decided before *Twombly*); *Webb v. Chase Manhattan Mortgage Corp*., 2007 WL 709335 (S.D. Ohio March 5, 2007) (same)). As Countrywide already explained in it Motion to Dismiss (at 5-6), using the new, stricter pleading standards set forth under *Twombly* and *Iqbal*, plaintiffs now must allege in the complaint the specific contractual provision the defendant allegedly breached. *E.g*., *Lee v. Potter*, 2009 WL 2057625, at *7 (S.D. Ohio July 14, 2009); *Prim Capital Corp. v. Pippen*, 2009 WL 2579810, *2 (N.D. Ohio Aug. 19, 2009). He has not done this. Accordingly, Jones' breach of contract claim must be dismissed.

### III. JONES' UNJUST ENRICHMENT CLAIM MUST BE DISMISSED BECAUSE HE STILL DOES NOT ALLEGE THAT HE CONFERRED A BENEFIT ON COUNTRYWIDE.

Jones argues again that he has sufficiently pled an unjust enrichment claim. However, the paragraphs that Jones points to as the basis of his unjust enrichment claim merely state that Countrywide generally inflates costs and fees and "*charged*" these inflated costs and fees to Jones. This Court has already held that mere allegations that Countrywide *charged* inflated fees and costs are insufficient. *See* R&R at 13-14, adopted by Order at 6. Jones was required to amend his complaint to allege that he *paid* these fees and, by paying them, he unjustly conferred a benefit on Countrywide. Jones, however, has not alleged this fact (because it is not true), so there is no allegation that Countrywide was enriched.

In his opposition, Jones contends that Paragraphs 88, 94, 95, 97, and 157 satisfy the deficiencies that led to the dismissal of his first Complaint. However, the first four of the five citations are unchanged from the previous, insufficiently pled Complaint. *Compare* Complaint ¶¶ 89, 95, 96, and 98 with Amended Complaint ¶¶ 88, 94, 95, 97. The only "new" allegation, Paragraph 157, was addressed by Countrywide in its opening brief. This paragraph refers to an

undefined "Pooling and Servicing Agreement," but does not explain (1) what this agreement is, (2) the relationship between his loan and this Agreement, (3) how this Agreement involves his claim of unjust enrichment, or (4) how mention of this Agreement resolves the central failing of his initial unjust enrichment claim – his failure to allege what "benefit Countrywide received as a result of its alleged actions." Order at 6.

As Countrywide explained in its opening brief, Jones still never alleges that he actually *paid* these fees and costs. Regardless of whether Countrywide "charged" inflated costs and fees, Jones' allegations cannot show an unjust enrichment because the disputed item – fees and costs – were never paid by Jones (and, therefore, could not have unjustly enriched Countrywide).[15] *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984).

Had Jones actually paid an illegal fee, he certainly would have alleged as much by now. The Court should again dismiss Jones' claim for unjust enrichment.

## IV. CLAIM PRECLUSION BARS JONES' CLAIMS.

Jones' only response to Countrywide's arguments of claim preclusion is that Countrywide has not established "how it was in privity with the parties to Mr. Jones' foreclosure action." Opp. at 24, n.5.[16] Under Sixth Circuit interpretation of Ohio law, "a mutuality of interest, including an identity of desired result, creates privity between [parties for res judicata purposes]." *ABS Indus., Inc. v. Fifth Third Bank*, 333 Fed. App'x 994, 999 (6th Cir. 2009) (*quoting Brown v. City of Dayton*, 89 Ohio St.3d 245, 730 N.E.2d 958, 962 (2000) ([]'s in original)). It is well settled that "mutuality of interest exists . . . if the person [asserting *res*

---

[15] In light of Jones' failure (and inability) to show that he conferred a benefit upon Countrywide, Jones' justifications for his failure to identify how "each of those fees and expenses were ultimately divided by the various defendants involved in debt collection activities against Mr. Jones," is unnecessary and irrelevant. Opp. at 22.

[16] Jones also incorrectly asserted that Wells Fargo made no such argument in its brief, which Countrywide incorporated. Counsel for Countrywide gave Jones the opportunity to cure this defect when it explained that Wells Fargo filed a separate Motion for Judgment on the Pleadings and gave him an extended time to respond.

*judicata*] would have been bound by it had the result been the opposite." *Id.* The party to the judgment, Wells Fargo, is the trustee on whose behalf Countrywide services the loan. Jones alleges that a mutuality of interest exists between Countrywide and Wells Fargo. *See* Amended Complaint ¶ 80 ("[t]he Jones Loan was serviced by defendant Countrywide Home Loans…"). Servicing a loan is sufficient to establish the privity argument under Ohio law. *ABS Indus.*, 333 Fed. App'x at 999. This conclusion is reinforced by the fact that, had Jones successfully argued that Wells Fargo was not entitled to collect the fees claimed in the foreclosure matter, Countrywide could not attempt to collect those fees in a separate action. Therefore, as Countrywide is in privity with Wells Fargo with respect to the fees as part of the loan servicing, Jones' claims are barred by the doctrine of claim preclusion.

## CONCLUSION

The Court should grant Countrywide's motion to dismiss Jones' Amended Complaint.

Dated:  September 17, 2010

        Respectfully submitted,

        DEFENDANT COUNTRYWIDE HOME
        LOANS SERVICING, LP.

        By its attorneys,

        /s/ Richard A. Freshwater
        Barbara Friedman Yaksic (#0014338)
        Richard A. Freshwater (#0080762)
        McGLINCHEY STAFFORD, PLLC
        25550 Chagrin Boulevard, Suite 406
        Cleveland, OH 44122-4640
        Telephone:  (216) 378-9905
        Facsimile:  (216) 378-9910
        byaksic@mcglinchey.com
        rfreshwater@mcglinchey.com

        Thomas M. Hefferon (*pro hac vice*)
        GOODWIN PROCTER LLP
        901 New York Avenue, N.W.
        Washington, DC  20001
        Telephone:  (202) 346-4000
        Facsimile:  (202) 346-4444
        thefferon@goodwinprocter.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 17, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey M. Silverstein
Jeffrey M. Silverstein and Associates
627 East Edwin Moses Blvd. Suite 2-C
Dayton, OH 45408
Email: jeff@silversteinlaw.com

Kristopher Issac deVyver
Natalie C. Metropulos
Perry A. Napolitano
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
Email: kdevyver@reedsmith.com, nmetropulos@reedsmith.com, pnapolitano@reedsmith.com

Timothy T Brick
Bulkley Building
1501 Euclid Avenue
Cleveland, OH 41115
Email: tbrick@gallaghersharp.com

Erik J Wineland
Gallagher Sharp
420 Madison Ave. Suite 1250
Toledo, OH 43604
Email: ewineland@gallaghersharp.com

Lori E Brown
Gallagher Sharp
Sixth Floor Bulkley Building
1501 Euclid Avenue
Cleveland, OH 44115
Email: lbrown@gallaghersharp.com

John W Becker
222 South Main Street, Suite 400
Akron, OH 44308
Email: jbecker@ralaw.com

Michael R Traven
Roetzel & Andress LPA
155 E Broad Street, Suite 1200
Columbus, OH 43215
Email: mtraven@ralaw.com

Rick D. DeBlasis
Lerner, Sampson & Rothfuss
120 East Fourth Street, 8th Floor
Cincinnati, OH 45202
Email: rdd@lsrlaw.com

Reuel D. Ash
Ulmer & Berne LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Email: rash@ulmer.com

Paul Grobman
555 Fifth Avenue
New York, NY 10017
Email: grobtown@aol.com

Nelson Marlin Reid
Bricker & Eckler
100 S Third Street
Columbus, OH 43215-4291
Email: nreid@bricker.com

Scott A. King
Chad E. Burton
Thompson Hine LLP
P.O. Box 8801
2000 Courthouse Plaza, N.E.
Dayton, Ohio 45401-8801
Email: Scott.King@Thompsonhine.com, Chad.Burton@ThompsonHine.com

                                    /s/ Richard A. Freshwater