**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

EUGENE KLINE, *et al.*,                                   :

                        Plaintiffs,          :          Case No. 3:08cv408

    vs.                                      :          District Judge Walter H. Rice
                                                        Magistrate Judge Sharon L. Ovington

MORTGAGE ELECTRONIC            :
    SECURITY SYSTEMS, *et al.*,
                                             :
                        Defendants.

---

**REPORT AND RECOMMENDATIONS[1]**

---

## I.      INTRODUCTION

        This matter is before the Court on Defendant Mortgage Electronic

Registration Systems, Inc.'s ["MERS"] motion to dismiss in part Plaintiffs'

Amended Complaint (Doc. #174), together with said Defendant's supporting

memorandum (Doc. #175); Plaintiffs' memorandum in opposition thereto (Doc.

#194); Defendant MERS's reply memorandum (Doc. #202); and the record as a

whole.

## II.     PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

---

        [1]Attached hereto is NOTICE to the parties regarding objections to this Report and
Recommendations.

On November 10, 2008, five individual Plaintiffs (Eugene Kline; Jon Shayne Jones; Diana L. Hughes; and George and Carol Ross, husband and wife), on behalf of themselves and "all others similarly situated," filed a putative class action complaint against multiple Defendants, setting forth federal claims under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, *et seq.*; the Truth in Lending Act ["TILA"], 15 U.S.C. § 1666d; and the Class Action Fairness Act ["CAFA"], 28 U.S.C. § 1332(d); as well as state law claims under the Ohio Consumer Sales Practices Act ["OCSPA"], Ohio Rev. Code § 1345.01, *et seq.*; and for breach of contract and unjust enrichment. (Doc. #1). All Plaintiffs claim to have been owners of property secured by residential mortgages owned, held, serviced or otherwise controlled by Defendants, who allegedly "have engaged in misconduct in connection with the servicing of" those mortgages. (*Id.* at ¶3).

Many of the Defendants identified in the original complaint thereafter moved separately for judgment as to some or all of Plaintiffs' claims. (*See, e.g.,* Doc. ###18, 30, 31, 35, 67, 72, 74, 132). Among those filings was an earlier Motion to Dismiss by Defendant MERS. (Doc. #31). The Court granted MERS' prior motion as to Plaintiffs Kline's, Hughes' and the Rosses' claims against MERS under the FDCPA, and thus dismissed those claims. (Doc. #154 at 7, 15). The Court also dismissed without prejudice all of Plaintiff Hughes' individual state

law claims against MERS.  (*Id.* at 11).  As to MERS' request to dismiss Kline's and the Rosses' state law claims for breach of contract and unjust enrichment, as well as for class action status under the OCSPA, however, the Court dismissed those claims without prejudice and granted such parties leave to file an amended complaint in order to "properly plead[ ]" those claims.  (*Id.* at 13-14, 15).

With the indicated leave of Court (*see id.*), on April 14, 2010, Plaintiffs filed their first amended complaint (Doc. #157), in order to add Barclays' Capital Real Estate, Inc. as a new Defendant (*see id.* at ¶10), and also to allow Plaintiffs Kline and the Rosses to "properly plead[ ] their state law claims of breach of contract, unjust enrichment and for class action status under the OCSPA, subject to the strictures of Fed. R. Civ. P. 11."  (Doc. #154 at 15).  On June 1, 2010, Defendant MERS moved for partial dismissal of Plaintiff's amended complaint.  (Doc. #174).

According to the amended complaint, Defendant MERS held a second mortgage on Plaintiff Kline's property "as nominee for [D]efendant WMC Mortgage" ["WMC"], securing a loan made by WMC.  (Doc. #157 at ¶62; *see also* Doc. #33, Exh. A [Kline mortgage]).  Defendant MERS also was the assignee "as nominee" for Defendant Heartland Home Finance, Inc. ["Heartland"] as to a mortgage on Plaintiff Hughes' home.[2]  (Doc. #157 at ¶¶109-10; *see also* Doc. #33,

---

[2]Despite the Court's prior dismissal of all of Plaintiff Hughes' claims against Defendant MERS (*see* Doc. #154 at 7, 11, 15), as well as all Plaintiffs' FDCPA claims against said Defendant

Exh. B).  Finally, Defendant MERS also acted "as the mortgagee" on a mortgage loan made to the Rosses by lender Preferred Mortgage Consultants.  (Doc. #157 at ¶116; *see* Doc. #33, Exh. C).  Based on actions allegedly taken by Defendant MERS in those roles, Plaintiffs again assert that MERS is liable to some or all of them under the FDCPA,[3] TILA, and OCSPA, and for unjust enrichment and breach of contract.  (Doc. #157).

Defendant MERS' new motion to dismiss was filed on June 1, 2010.  (Doc. #174).  Defendant seeks to dismiss the Third, Fourth and Fifth Claims for Relief included in Plaintiffs' amended complaint (*id.* at 1; Doc. #175 at 7-15), or those alleging a class action under the OCSPA, and sounding in unjust enrichment and breach of contract.  (*See* Doc. #157 at ¶¶141-176; Doc. #175 at 7-15).  MERS first argues that despite enumerating multiple previous decisions that supposedly establish that conduct such as that attributed to Defendant MERS is deceptive and/or unconscionable, Plaintiffs still have not satisfied the OCSPA's prior notice requirements for bringing a class action.  (Doc. #175 at 7-11).  Next, MERS contends that Plaintiffs' amended complaint still fails to show that Plaintiffs conferred a benefit upon MERS, which is an essential element of an unjust

_____

(*see id.* at 7, 15) , Plaintiffs "have reasserted th[ose] dismissed claims for the sole purpose of preserving their rights on appeal," and "MERS is not obligated to respond to these claims," per stipulation of the affected parties.  (Doc. #176).

[3]*See* n.2, *supra*.

enrichment claim. (*Id*. at 11-13). Finally, MERS asserts that Plaintiffs' latest allegations also continue to fail to show that MERS breached any contract with any of the Plaintiffs. (*Id*. at 13-15). Defendant MERS thus asks that Plaintiffs' OCSPA class action claims, unjust enrichment claims, and breach of contract claims against it be dismissed with prejudice. (*Id*.).

Plaintiffs respond to MERS' attack on their OCSPA class action claims by first asserting that recent Supreme Court jurisprudence relieves them of the need to satisfy Ohio Rev. Code § 1345.09(B)'s requirements in order to maintain a class action under the OCSPA. (Doc. #194 at 5-7). In addition, they contend that the court decisions identified in their amended complaint do satisfy the OCSPA's stated class action requirements. (*Id.* at 7-10). As to their unjust enrichment claims, Plaintiffs insist that their amended complaint's allegations, made "upon information and belief" that Defendant MERS derived some benefit from its actions, are sufficient to sustain their burden on a motion to dismiss. (*Id.* at 10-15). Finally, Plaintiffs argue that they have pled valid breach of contract claims, given that MERS has recovered and/or may seek to recover improper fees in violation of the terms of Plaintiffs' mortgage contracts. (*Id.* at 15-18). Plaintiffs ask that MERS' motion to dismiss be denied in all respects.

## III. APPLICABLE STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombley*, 550 U.S. at 555).  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Id.* at 1954.  "And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  *Id.*

In the end, determining whether a complaint states "a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (citation omitted).

## IV.     DISCUSSION

## Third Claim For Relief - OCSPA Claims On Behalf Of Putative Class

a.    *Effect of the "Shady Grove" Decision*

Plaintiffs first contend that MERS' argument that Plaintiffs have not satisfied the OCSPA's class action requirements is trumped by the United States Supreme Court's decision in *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, __ U.S. ___, 130 S. Ct. 1431 (2010).  (*See* Doc. #194 at 5-7).  In *Shady Grove*, a plurality of the Court held that Fed. R. Civ. P. 23 preempts a New York statute that would limit class action liability in a manner inconsistent with the federal class action rule.  *See id.*  Plaintiffs urge that as a result of that decision, they are not required to meet the OCSPA's stated class action standards in order to maintain an OCSPA class action in this Court.  Defendant MERS, however, observes that a court in this Circuit has considered the *Shady Grove* decision in the context of Ohio Rev. Code § 1345.09(B) – the very OCSPA provision at issue here – and found that *Shady Grove* does not apply to preempt Section 1345.09(B)'s requirements.  (*See* Doc. #202 at 3-4) (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 08-65000, 2010 WL 2756947 (N.D. Ohio July 12, 2010)).  Defendant therefore asserts that Section 1345.09(B)'s requirements remain viable, and that Plaintiffs' putative class action claim under the OCSPA must be dismissed for failure to comply with those requirements.

Courts within this Circuit attempting to apply the *Shady Grove* decision

apparently have concluded unanimously "that Justice Stevens' concurrence . . . is the controlling opinion by which [they are] bound." *See McKinney v. Bayer Corp.*, ___ F. Supp.2d ___, 2010 WL 3834327, at *10 (N.D. Ohio Sept. 30, 2010) (citing *Whirlpool*, 2010 WL 2756947 at *2 (which states that Justice Stevens was "the crucial fifth vote in *Shady Grove*," and thus applied his approach); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010) ("Justice Stevens's concurrence is the controlling opinion")).[4] Utilizing Justice Stevens' approach, the district court in *Whirlpool* distinguished Ohio Rev. Code § 1345.09(B)'s class action restrictions from those at issue in *Shady Grove*, noting that Section 1345.09(B) "applies only to 'a violation of Chapter 1345 of the [Ohio] Revised Code'" – *i.e.*, causes of action arising under Ohio's own laws – while the New York statute sought to preclude federal district courts from entertaining a class action in <u>any</u> suit seeking particular types of remedies. *Id.*, 2001 WL 2756947, at *2. Because the plaintiffs there had not satisfied Section 1345.09(B)'s requirements that were found to withstand *Shady Grove* scrutiny, the court in *Whirlpool* declined to certify their class action claim under the OCSPA. *Id.*

---

[4]*See also Beal v. Walgreen Co.*, No. 09-5899, 2010 WL 4669905, at *8 n.2 (6th Cir. Nov. 10, 2010) (quoting Justice Stevens' concurring opinion that "federal rules cannot displace a State's definition of its own rights and remedies," in explaining the effect of the *Shady Grove* decision).

Subsequently, another opinion out of the Northern District of Ohio district also determined that Fed. R. Civ. P. 23 does not preempt the OCSPA and that the class action restrictions contained in Section 1345.09(B) remain valid, *Shady Grove* notwithstanding.  *See McKinney*, 2010 WL 3834327, at *12.  That court thus dismissed plaintiff McKinney's class action claim under the OCSPA, for failure to comply with the class action qualifications set forth at Ohio Rev. Code § 1345.09(B).  *Id.*; *see also Bearden*, 2010 WL 3239285, at *10 (reaching the same result re *Shady Grove* as applied to class action provisions of the Tennessee Consumer Protection Act).

This Court finds the reasoning employed by those courts to be convincing, and likewise concludes that the *Shady Grove* decision does <u>not</u> mandate that Fed. R. Civ. P. 23 preempts the OCSPA's class action restrictions set forth at Ohio Rev. Code § 1345.09(B).  To echo the Sixth Circuit in quoting Justice Stevens, "federal rules cannot displace a State's definition of its own rights and remedies."  *Beal*, 2010 WL 4669905, at *8 n.2 (quoting *Shady Grove*, 130 S. Ct. at 1448 (Stevens, J., concurring)).  As a result, the Court must proceed to examine whether Plaintiffs have satisfied Section § 1345.09(B)'s provisions in order to determine whether Plaintiffs' putative class action claim under the OCSPA is viable.

      b.    <u>Compliance With Ohio Rev. Code § 1345.09(B)</u>

In his decision on MERS' prior motion to dismiss, District Judge Walter H. Rice explicitly recognized that in accordance with Section 1345.09(B) of the Ohio Rev. Code,

> a consumer may not maintain a class action for a violation of the OCSPA[ ] unless 'the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by <u>a court of this state</u> to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code.'

*See Kline v. Mortgage Elec. Sec. Sys., Inc.*, Case No. 3:08cv408 (S.D. Ohio Mar. 29, 2010) (emphasis added by the district court). (Doc. #154 at 14). In essence, the constraints imposed by Section 1345.09(B) mean "that a consumer may qualify for class-action status [as to an OCSPA claim] only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable," and the "prior notice" took one of the forms specified in the statute. *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 34 (Ohio 2006). "In general, the OCSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding of the

nature of the transaction at issue." *McKinney*, 2010 WL 3834327, at \*6 (quoting *Whitaker v. M.T. Automotive, Inc.*, 855 N.E.2d 825, 829 (Ohio 2006)).  "Lack of prior notice" that a practice has been deemed deceptive or unconscionable in accordance with Section 1345.09(B) "requires dismissal of class action allegations" brought under the OCSPA.  *St. Clair v. Kroger Co.*, 581 F. Supp.2d 896, 901 (N.D. Ohio 2008) (citing *Bower v. Int'l Bus. Machs., Inc.*, 495 F. Supp. 2d 837, 841 (S.D. Ohio 2007) (Rice, J.)).

While Judge Rice agreed that "Kline and the Rosses ha[d] not alleged that any of the asserted violations of the Ohio statute by MERS also violated [ ] a rule or court decision" in accordance with Section 1345.09(B)'s requirements, he nonetheless "afford[ed] them the opportunity of amending to cure that pleading deficiency."  (Doc. #154 at 14).  In its new motion to dismiss Plaintiffs' amended complaint, Defendant MERS urges that despite be given that second bite at the proverbial apple, Plaintiffs still have not corrected the problems that plagued the class action allegations contained in their original complaint.  (Doc. #175 at 7-11).  Specifically, MERS argues that although Plaintiffs now have amended their complaint to allege that "[n]umerous decisions . . . have found that" conduct such as that attributed to Defendants in this action "violates the OCSPA" (*see* Doc. #157 at ¶145), none of the decisions actually identified by Plaintiffs in fact

supports their position. This Court thus must examine the cited decisions to determine whether they are sufficient to sustain the viability of Plaintiffs' OCSPA class action allegations.

MERS first urges that four federal district court decisions cited by Plaintiffs[5] do not qualify as decisions of "a court of this state" (*i.e.*, Ohio) for purposes of Ohio Rev. Code § 1345.09(B). Although Judge Rice anticipated that argument in his earlier decision, he declined at that time to resolve that question.[6] Defendant MERS, however, aptly notes that state appellate courts of Ohio have interpreted Section 1345.09(B) to require that "<u>an Ohio state court</u> has found the specific practice either unconscionable or deceptive," in order for a class action to be maintainable. *See Johnson v. Microsoft Corp.*, 802 N.E.2d 712, 720 (Ohio Ct. App. 2003) (emphasis added); *see also Volbers-Klarich v. Middletown Mgmt., Inc.*, 929 N.E.2d 434, 502 (Ohio 2010) (quoting *Johnson, supra*). That interpretation seems most consistent with concepts of federalism, whereby courts of the State of

_____

[5]Those decisions are: *Foster v. DBS Collection Agency*, 463 F. Supp.2d 783 (S.D. Ohio 2006); *Delawder v. Platinum Fin. Servs. Corp.*, 443 F. Supp.2d 942 (S.D. Ohio 2005); *Hartman v. Asset Acceptance Corp.*, 467 F. Supp.2d 769 (S.D. Ohio 2004); and *Taylor v. Luper, Sheriff & Niedenthal Co., LPA*, 74 F. Supp.2d 761 (S.D. Ohio 1999). (*See* Doc. #157 at ¶¶ 146-48).

[6](*See* Doc. #154 at 14, n.5) ("The [applicable] portion of § 1345.09(B). . . refers to 'a court of this state.' Kline and the Rosses have cited decisions by federal courts sitting in Ohio to support their assertion that their class claims under the OCSPA should not be dismissed. Whether a federal court sitting in Ohio is 'a court of this state' is an issue which this Court does not address herein.").

Ohio may refuse to defer to the decisions of federal district courts even as to matters of <u>federal</u> law. *See, e.g., State v. Burnett*, 755 N.E.2d 857, 862 (Ohio 2001), *cert. denied*, 535 U.S. 1034 (2002) (holding that "we are not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court"). Such approach also coincides with at least one Ohio Supreme Court decision that pointedly distinguishes between an action brought in the United States District Court for the Southern District of Ohio and a later action brought "in a court of this state" – the very language employed in Ohio Rev. Code § 1345.09(B). *See Wasyk v. Trent*, 191 N.E.2d 58, 59 (Ohio 1963) [Syllabus].

In response to MERS' position re Section 1345.09(B)'s "a court of this state" language, Plaintiffs suggest that the inclusion of federal court decisions among the copies of decisions in the Public Inspection File of the Ohio Attorney General's Office is sufficient to prove that the content of each such decision qualifies as the findings of "a court of this state." (*See* Doc. #194 at 9-10). Not surprisingly, Plaintiffs cite no legal authority for the proposition that the Ohio Attorney General's Office may dictate the intent of the Ohio legislature by virtue of deciding which opinions to add to the Public Inspection File. Moreover, Defendant MERS asserts that the Public Inspection File also "includes cases not

only from Ohio state and federal court[s], but from many other jurisdictions as well, including other state and federal courts." (Doc. #202 at 5 n.2). That assertion undermines the inference that Plaintiffs' advance.

Significantly, among the many Ohio state court decisions reviewed by this Court in attempting to resolve this question, none cited any federal district court decision as establishing that a particular practice had been found to be "unconscionable or deceptive" for purposes of bringing a class action under Ohio Rev. Code § 1345.09(B); all instead relied exclusively on Ohio rules or decisions of Ohio state courts to satisfy Section § 1345.09(B)'s prior notice hurdle. *See, e.g., Volbers-Klarich*, 929 N.E.2d at 502; *Marrone*, 850 N.E.2d at 35-36; *Dunkelman v. Cincinnati Bengals*, 866 N.E.2d 576, 579 (Ohio Ct. App. 2006); *Burdge v. Subvest 4, LLC*, No. C-060354, 2007 WL 949802, at **2-4 (Ohio Ct. App. Mar. 30, 2007); *Burdge v. Kerasotes Showplace Theatres, LLC*, No. CA2006-02-023, 2006 WL 2535762, at **6-7 (Ohio Ct. App. Sept. 5, 2006); *Bodenberg v. Duggan Homes, Inc.*, No. 20311, 2004 WL 2526382, at **3-4 (Ohio Ct. App. Nov. 5, 2004); *White v. Hornbeck*, No. 01CA0057, 2002 WL 1363689, at **1-2 (Ohio Ct. App. June 19, 2002); *Burton v. Elsea, Inc.*, No. 97CA2556, 1999 WL 1285874, at **10-11 (Ohio Ct. App. Dec. 27, 1999). This, too, strongly suggests that those courts do not regard federal district courts sitting in Ohio to be "court[s] of th[e] state" of Ohio.

Based on all of the foregoing, the Court cannot logically conclude that by referring to decisions of "a court of this state," the Ohio legislature intended to allow a federal court sitting in Ohio to define the parameters of "deceptive or unconscionable" practices under Ohio's Consumer Sales Practices Act. Even without examining the content of the federal district court decisions cited in Plaintiffs' amended complaint, then, this Court determines that those decisions were not contemplated by Ohio Rev. Code § 1345.09(B) to be decisions of "a court of this state," as required to put Defendants on notice that their alleged conduct could be subject to a class action. Plaintiffs therefore cannot rely on the federal district court decisions they cite as giving Defendant MERS prior notice in accordance with Section 1345.09(B) that its alleged actions were deceptive or unconscionable.

The inadequacy of Plaintiffs' federal case citations notwithstanding, Plaintiffs also cite three Ohio state court decisions purportedly both found in the Ohio Attorney General's Public Inspection File and establishing that actions such as those attributed to Defendants here previously had been held to violate the OCSPA. (*See* Doc. #157 at ¶¶ 147-48). Neither challenging the status of those cases as decisions "of courts of [Ohio]" nor their presence in the Public Inspection File, Defendant MERS instead invokes *Marrone*, 850 N.E.2d at 33, where the Ohio

-15-

Supreme Court held that a consumer may bring a class action under the OCSPA "only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive." "'Substantial similarity' means a similarity not in every detail, but in essential circumstances or conditions." *Id.* at 36. "Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the [O]CSPA."[7] *Id.* The analysis thus turns to whether the circumstances and conditions existing in the three Ohio cases Plaintiff cites are "substantially similar" to those now before us to have put MERS on notice of the prospect of class action exposure.

- *Gatto v. Frank Nero Auto Lease, Inc.*,[8] No. 74894, 1999 WL 195664, at *3 (Ohio Ct. App. Apr. 8, 1999).

In *Gatto*, Ohio's Eighth District Court of Appeals stated that "[i]t is a deceptive and unconscionable act or practice . . . for a supplier, in the process of collecting or attempting to collect upon a debt arising from a consumer transaction[,] to falsely represent the status of any legal proceeding." The

---

[7]This Court nonetheless is mindful that the emphasis placed on differing "industries" in *Marrone* may reflect in part the Ohio Supreme Court's recognition that the tobacco defendants in that case were part of a unique, "highly regulated" industry in which "deference is particularly appropriate." *See Marrone*, 850 N.E.2d at 37-38.

[8]Erroneously identified in Plaintiff's amended complaint and opposing memorandum as "Ga**ll**o v. Nero Auto Lease." (*See* Doc. #157 at ¶147; Doc. #194 at 9) (emphasis added).

appellees there were an attorney and a law firm representing a company that had leased a car to Plaintiff Gatto, then sued him when he stopped making payments. *Id.* at *1. Based on the evidence, the Court in *Gatto* held "that a jury could find that appellees' actions in procuring a default judgment without proper service on appellant, and then some nine years later, attempting to revive and execute on the invalid judgment, even after appellant informed them that the judgment was satisfied, were a violation of the Ohio Consumer Sales Practices Act." *Id.* at *5.

Plaintiffs aver in their amended complaint that *Gatto* stands for the proposition "that fraudulently procuring a judgment through the use of false representations is a violation of the OCSPA" (Doc. #157 at ¶147), and repeat that broad assertion in their memorandum opposing Defendant MERS' motion to dismiss. (Doc. #194 at 8-9). Distinguishing *Gatto* as involving an automobile lease rather than a residential mortgage or the mortgage lending and loan servicing industry, however, MERS contends that the "essential circumstances and conditions" present there cannot be considered "substantially similar" to those in the instant case. (Doc. #175 at 9-10; Doc. #202 at 6); *see Marrone*, 850 N.E.2d at 36. This Court agrees. An attorney's attempts to collect on a stale, defective and discharged judgment as to an automobile lease cannot be viewed as substantially akin to a mortgage service company's attempts to collect attorney

-17-

fees that cannot properly be imposed in connection with a defaulted residential

mortgage.  The *Gatto* decision thus did not provide "prior notice" to Defendant

MERS that its actions as alleged in Plaintiffs' amended complaint constituted a

deceptive or unconscionable practice under the OCSPA.

● *State v. Livingwell, Inc.*, No. 88-cv-107069 (Ohio Ct. App. 1988).

According to Plaintiffs' amended complaint, this consent judgment from

the Franklin County Court of Common Pleas stands for the proposition that

"notifying a debtor that he will be liable for additional attorneys fees when that is

not the case violates the OCSPA."  (Doc. #157 at ¶149; *see also* Doc. #194 at 8).

Defendant MERS, however, argues that because defendant Livingwell "was a

seller of health spa memberships who was found to have violated the OCSPA by

using a retail installment sales contract with an unenforceable attorneys' fee

provision," the conditions and circumstances underlying that case are inapposite

as to this case involving "a residential mortgage[ and] the alleged improper

collection of fees under a note and mortgage."  (Doc. #175 at 10).

Irrespective of the particular facts giving rise to the *Livingwell* suit,

Defendant MERS also observes that "*Livingwell* was a consent judgment and had

no analysis of any kind that could put a defendant on notice that any specific

conduct was deceptive or unconscionable under the OCSPA."  (*Id.*).  Plaintiffs'

opposing memorandum is silent as to that particular contention (*see* Doc. #194 at

8), although Plaintiffs do acknowledge that *Livingwell* was a consent judgment.

(*See id.; see also* Doc. #157 at ¶149). This Court previously has determined that for

purposes of OCSPA notice, such judgments "are of little, if any, precedential

value." *Smith v. Transworld Sys., Inc.*, No. C-3-96-166, 1997 WL 1774879, at *6

(S.D. Ohio July 31, 1997) (Rice, C.J.).[9] Accordingly, the consent judgment in

*Livingwell* did not give Defendant MERS "prior notice" in accordance with Ohio

Rev. Code § 1345.09(B) that its conduct as alleged in the amended complaint

constituted a deceptive or unconscionable act or practice.

- *Bennett v. Tri-State Collection Serv.*, No. 940002, 1976 WL 38806 (Ohio Ct. Com. Pl. Aug. 24, 1976).

Finally, in *Bennett*, the Cuyahoga County Court of Common Pleas found

that the defendant collection agency "committed a deceptive and unconscionable

act or practice" as defined in the OCSPA by sending a collection letter that,

among other things, "falsely stated that attorneys fees would be added to [an

individual plaintiff's] debt, that the collection agency would turn the claim over

to an attorney within three days of the date of the letter, and that the collection

---

[9]What appears to be an isolated contrary Ohio appellate decision, stating that "even within a consent judgment, 'an act or practice determined by a court' to violate the OCSPA is actionable under [Ohio Rev. Code §] 1345.09(B)," is neither persuasive nor binding on this Court. *See Charvat v. Telelytics, LLC*, No. 05AP-1279, 2006 WL 2574019, at *11 (Ohio Ct. App. Aug. 31, 2006); see also *Subvest 4*, 2007 WL 949802, at *4 (where court "declined to address" consent judgment issue).

agency had advanced court costs and attorneys fees to an attorney." *Id.*, 1976 WL

38806, at *1. The Court also issued the following declaratory judgment:

> it is a deceptive and unconscionable act or practice as
> defined [in the OCSPA] for a supplier engaged in the
> collection of claims of debt arising from consumer
> transactions knowingly to make a misstatement of fact
> that is designed to exaggerate the remedies or power of
> the creditor or collector over the consumer, or the
> consequences to the consumer of non-payment of the
> claim or knowingly to misstate the law or the
> consumer's obligations to the creditor.

*Id.*

Plaintiffs' amended complaint cites the *Bennett* decision as showing "that

'abusive collection practices' such as attempting to [collect] or collecting fees

which are not owed constitute 'unfair or deceptive acts or practices' which violate

the OCSPA." (Doc. #157 at ¶149). Their opposing memorandum asserts that

*Bennett* "put [MERS] on notice that attempting to charge attorneys fees – which

cannot be legally assessed in Ohio – violates the O[CS]PA." (Doc. #194 at 8).

Defendant MERS, however, again counters that *Bennett* is inapposite because it

"did not involve a residential mortgage[ ] or the alleged improper collection of

fees under a note and mortgage." (Doc. #175 at 11).

In this instance, the Court finds Plaintiffs' interpretation of the significance

of the case holding at issue to be more compelling. Although MERS admittedly

is not in exactly the same "industry" as the defendant in *Bennett*, both <u>were</u>

attempting to collect payments on a consumer debt, and both allegedly

"exaggerate[d] the remedies" available to the creditor against the consumer by

attempting to collect prohibited attorneys fees. *See* 1976 WL 38806, at *1.

Additionally, the amended complaint suggests that MERS, like the collection

agency in *Bennett*, may have "knowingly . . . misstate[d] the law or the

consumer's obligations to the creditor." *See id.* The *Bennett* decision makes clear

that such practices are proscribed by the OCSPA.

Despite attempting to distinguish itself from the defendant in *Bennett*

whose business "did not involve a residential mortgage[ ] or the alleged

improper collection of fees under a note and mortgage" (Doc. #175 at 11),

Defendant MERS has not demonstrated that its "industry" is so distinctive that

the "essential circumstances and conditions" surrounding its conduct cannot be

considered "substantially similar" to those of the collection agency in *Bennett*. *See*

*Marrone*, 850 N.E.2d at 36. Irrespective of *Marrone*'s indication that cases

involving industries "very different from the defendant's do not provide

meaningful notice," even *Marrone* acknowledged that "prior notice" cases need

not be similar "in every detail." *Id.* Consistent therewith, other Ohio state courts

have found cases involving comparable conduct to be "substantially similar" for

OCSPA purposes even when the industries involved are far from identical. *See, e.g., Burdge*, 2007 WL 949802, at *4 (case regarding automobile repair shop's failure to register fictitious name sufficient "prior notice" re sandwich shop's "substantially similar" conduct involving unregistered fictitious name).

This Court concludes that the *Bennett* decision's admonition that "it is a deceptive and unconscionable act or practice . . . for a supplier engaged in the collection of claims of debt arising from consumer transactions knowingly to . . . exaggerate the remedies . . . . [or] knowingly to misstate the law or the consumer's obligations to the creditor" gave Defendant MERS adequate prior notice under Ohio Rev. Code § 1345.09(B) regarding the potential OCSPA consequences of its conduct as alleged in the complaint. As a result, Defendant MERS' motion to dismiss the OCSPA class action allegations in Plaintiffs' amended complaint is not well taken, to the extent that those allegations are directed toward conduct of the type deemed deceptive and unconscionable in *Bennett*.

**Fourth Claim For Relief - Unjust Enrichment Claims of Defendants Kline & the Rosses**

In *Catlett v. Central Allied Enters., Inc.*, No. 08 CO 5, 2009 WL 2859223, at *2 (Ohio Ct. App. Aug. 31, 2009), the state appellate court restated the elements of a claim of unjust enrichment under Ohio law, as follows:

> In order to recover under a theory of unjust enrichment, the following elements must be proved: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff.

*Id.* (citing *Hambleton v. R.G. Barry Corp.* 465 N.E.2d 1298, 1302 (1984)).

As in its first motion to dismiss (*see* Doc. ##31, 33), Defendant MERS again asserts that Plaintiffs have failed to state viable unjust enrichment claims against it, as "despite being granted leave to re-plead, Plaintiffs have still failed to show that they conferred a benefit upon MERS." (Doc. #175 at 12). MERS urges that the two additions to Plaintiffs' unjust enrichment claims as now pled against MERS in their amended complaint – *i.e.*, that "[u]pon information and belief, MERS was compensated for the services it provided in connection with the purported debts owed by the Rosses and Kline," and that "even if no benefit was directly conferred to MERS by Kline or Ross, damages . . . can also be measured by the profits resulting from inequitable activity" (Doc. #157 at ¶¶155, 156) – still do not satisfy the requisite "benefit" element of such a claim.

In his prior Order on Defendant MERS' first motion to dismiss, Judge Rice expressly "reject[ed] the Plaintffs' assertion that one can infer that they conferred a benefit on MERS[ ] merely because they allege that [MERS] demanded the

payment of certain fees." (Doc. #154 at 13 n.4). This Court fails to discern how Plaintiffs' amended complaint appreciably improves on that previously rejected assertion. The futile suggestion that damages may be measurable "even if no benefit was directly conferred to MERS by Kline or Ross" (Doc. #157 at ¶156; *see also* Doc. #194 at 14-15) ignores the inescapable reality that damages, measurable or not, cannot be recovered if Plaintiffs cannot establish Defendant MERS' <u>liability</u>. Under established Ohio law, proof that "the plaintiff conferred a benefit upon the defendant" remains an essential element of an unjust enrichment claim. *See Catlett*, 2009 WL 2859223, at *2. The new contention contained in paragraph 156 of Plaintiffs' amended complaint therefore offers nothing to cure the deficiency inherent in the original complaint's unjust enrichment allegations.

Similarly, the amended complaint's allegation "that MERS was compensated for the services it provided in connection with the purported debts owed by the Rosses and Kline" (Doc. #157 at ¶155) still falls short as to the requisite element that it be "the <u>plaintiff</u>" who "conferred a[ny] benefit upon the defendant." *Catlett*, 2009 WL 2859223, at *2 (emphasis added). Although Plaintiffs persuasively defend the sufficiency of allegations made "upon information and belief" (Doc. #194 at 12-14), the legal insufficiency of paragraph 155's allegation arises not from Plaintiffs' lack of definitive evidence, but rather

from the nature of the allegation itself. While there is merit to Plaintiffs' assertion that they should not, at this juncture, be expected to "specifically identify which defendant ultimately received which fee or expense from the plaintiffs" (Doc. #194 at 12), Plaintiffs' mere allegation that Defendant MERS "was compensated for the services it provided" is insufficient to support an inference that MERS' compensation was in any way contingent upon any fees collected from Plaintiffs. (*See* Doc. #157 at ¶155).

　　　"Unjust enrichment involves not only a loss by the plaintiff, but also the defendant must receive a gain." *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 WL 3220192, at *11 (Ohio Ct. App. Dec. 1, 2005). In addition, "it is not sufficient that the defendant gain an enrichment; the enrichment must be unjust." *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *11 (S.D. Ohio Mar. 19, 2008) (Graham, J.) (citing *Chesnut v. Progressive Casualty Ins. Co.*, 850 N.E.2d 751 (Ohio Ct. App. 2006)). Presumably, then, whatever loss a plaintiff experienced must bear a connection to the defendant's gain in order for an unjust enrichment claim to stand. *See Zele Funeral Home v. Buttry*, 645 N.E.2d 792, 794 n. 2 (Ohio Ct. App. 1994) ("As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, <u>with a tie of causation between them</u>.") (emphasis added); *see also Paul*

*Vlack Co., Inc. v. BancOhio Nat'l Bank*, No. 87AP-1121, 1988 WL 84412, at *3 (Ohio

Ct. App. Aug. 11, 1998) (reversing and remanding unjust enrichment judgment

for plaintiff where, despite "substantial testimony concerning the services

performed and materials furnished, plaintiff failed to show that the value of

those services and materials benefitted <u>defendant</u>") (emphasis added).

     Accordingly, in order to survive a motion to dismiss, a complaint not only

must allege that the defendant "knew about a benefit that [it] was not entitled to

receive," but also must "identify the benefit that [the plaintiff] allegedly

conferred on" the defendant. *MMK Group, LLC v. SheShells Co., LLC*, 591 F.

Supp.2d 944, 965 (N.D. Ohio 2008). Although Plaintiffs understandably may not

be able to trace directly to Defendant MERS' hands any improper fees they may

have paid, their amended complaint nonetheless must be capable of being

credibly read to allege that they conferred <u>some</u> benefit on Defendant. Instead,

Plaintiffs' amended complaint leaves open the distinct possibility that any

compensation Defendant MERS received was not impacted by whether improper

fees were or were not collected from Plaintiffs. Plaintiffs' amended complaint

thus still fails to satisfy the "conferred a benefit" element of a prima facie case of

unjust enrichment, and that claim must be dismissed as against Defendant

MERS.

**Fifth Claim For Relief - Breach of Contract Claims of Plaintiffs Kline & the Rosses**

Finally, Defendant MERS moves to dismiss Plaintiffs Kline's and the Rosses' breach of contract claims against it, urging that despite amending their complaint, "nowhere have Plaintiffs added factual allegations that 'set forth their theories'" in accordance with Judge Rice's Order. (Doc. #175 at 13; *see* Doc. #154 at 13). Plaintiffs counter that their amended complaint "identifies the specific provision[s] of both the Ross and the Kline mortgage contracts which were violated by the allegedly improper fees and expenses" purportedly demanded and/or recovered by Defendant MERS. (Doc. #194 at 15-16).

The elements of a viable breach of contract claim under Ohio law are the existence of a valid contract between the parties, performance by the plaintiff, a breach by the defendant, and resulting damages. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). The amended complaint identifies Kline's mortgage agreement with MERS (*see* Doc. #157 at ¶62; *see also* Doc. #33, Exh. A), the Rosses' mortgage agreement with MERS (*see* Doc. #157 at ¶116; *see also* Doc. #33, Exh. C), and a "Note" purportedly "entered into between the Rosses . . . and M[ERS]" (*see* Doc. #157 at ¶126) as the only proffered "contracts" underlying Plaintiffs' breach of contract claims. Based on those

allegations and the differing terms of each party's contract, the Court will address the different Plaintiffs' breach of contract claims separately.

a.    *Plaintiff Eugene Kline*

The parties agree that Plaintiff Kline's relationship with Defendant MERS is governed by the terms of a mortgage agreement entered between them.  (*See* Doc. #157 at ¶62; Doc. #174 at 13-15; Doc. #33, Exh. A).  Consistent with the allegations of Plaintiffs' amended complaint, that mortgage provides that any costs, expenses or attorneys' fees recoverable thereunder will include only "sums . . . not prohibited by applicable law" (*i.e.*, the law of Ohio).  (*See* Doc. #157 at ¶70; Doc. #33, Exh. A at ¶13).  The amended complaint correctly avers that under Ohio law, "attorneys fees incurred by a lender in foreclosure proceedings are not recoverable, even if the mortgage loan documents purportedly allow such fees to be passed on to the debtor."  (Doc. #157 at ¶69); *see Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 401 (Ohio 2009) ("A stipulation in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee, to be fixed by the court, for the services of the plaintiff's attorney in the foreclosure action, should be included in the decree, and paid out of the proceeds arising from the sale of mortgaged property, is against public policy and void.").  Plaintiffs thus allege that Defendant MERS breached the contract provision

-28-

barring "prohibited" fees by "demand[ing] and recover[ing] illegal attorneys fees from Kline."  (Doc. #157 at ¶69).

Here, Defendant MERS' reiteration that any improper fees it collected would have been done solely in its role as "nominee, or agent, for [Plaintiff Kline's] lender," is unavailing.  (Doc. #175 at 14).  The elements that Kline must demonstrate in order to set forth a viable prima facie case for breach of contract – a valid contract, performance by Plaintiff, a breach by Defendant, and resulting damages – all are incorporated in the allegations of Plaintiffs' amended complaint.  While MERS apparently disputes Plaintiffs' contention that improper fees actually were paid, that factual issue is one not appropriate for resolution via a motion to dismiss.  Defendant MERS' motion to dismiss Plaintiff Kline's breach of contract claim for failure to state a claim upon which relief can be granted thus is not well taken.

  *b.* <u>*Plaintiffs George & Carol Ross*</u>

Contrary to what Plaintiffs' amended complaint alleges (*see* Doc. #157 at ¶126), MERS denies that it was "a party to the Rosses' Note," and thus asserts that it "cannot be held liable for allegedly breaching a contract to which it was not a party."  (Doc. #175 at 14).  This is significant, because according to Plaintiffs' amended complaint, the contract provisions that allegedly protect the

Rosses from being subjected to costs, expenses or fees "prohibited by applicable law" were contained in those Plaintiffs' <u>Note</u>, <u>not</u> in their mortgage agreement. (*See* Doc. #157 at ¶126). Indeed, as to the Rosses' mortgage, Plaintiffs' amended complaint expressly avers only that such contract "did not give MERS any right to seek recovery for attorneys fees incurred in bankruptcy" (*see id.* at ¶125), <u>not</u> that their mortgage contract expressly forbade Defendant MERS from recovering or attempting to recover such fees.

It seems axiomatic that in order for a "breach" of contract to have occurred, some affirmative provision of the agreement between the parties must have been violated. Plaintiffs cite no authority for their apparent contention that a breach of contract action will lie for alleged conduct by Defendant MERS as to which the applicable contract was silent. The State of Ohio's prohibition against the fees allegedly sought by Defendant MERS notwithstanding, such unlawful conduct does not a breach of contract action make, in the absence of a contractual violation. Accordingly, Plaintiffs' amended complaint has not set forth a breach of contract claim for which relief may be granted against Defendant MERS based on the terms of the mortgage agreement between it and the Rosses.

Defendant MERS' challenge to the allegation that it was a party to the "Note" with the Rosses (*see* Doc. #157 at ¶126) is more problematic. Even after

*Twombley*, 550 U.S. 554, and *Iqbal*, 129 S. Ct. 1937, this Court is not free to reject

purely factual allegations contained in a complaint.  As a matter of law, if MERS

in fact <u>is</u> bound by the terms of the Rosses' Note as alleged in the amended

complaint, the Rosses appear to have stated a cognizable breach of contract claim

based on MERS' alleged effort to collect prohibited fees from them.  Especially

given that no copy of the subject Note was appended to the amended complaint

or proffered with Defendant's motion, this issue is not one conducive to

resolution on a Fed. R. 12(b)(6) motion.  *See, e.g., Weiner v. Klais & Co.*, 108 F.3d 86,

89 (6th Cir. 1997).  Instead, the question of MERS' status as regards the Rosses'

Note seems more amenable to consideration via a summary judgment motion, as

to which the Court may consider evidence from outside the pleadings. *See* Fed. R.

Civ. P. 56.

   For that reason, Defendant MERS motion will be denied without prejudice

as to the Rosses' breach of contract claim based upon the Note identified in their

amended complaint.

     **IT THEREFORE IS RECOMMENDED THAT**:

1.    Defendant Mortgage Electronic Registration Systems,
Inc.'s motion to dismiss the amended complaint in part
(Doc. #174) be GRANTED IN PART; that Plaintiffs
Eugene Kline's and Plaintiffs George and Carol Ross's
unjust enrichment claims contained in the Amended
Complaint's Fourth Claim for Relief (Doc. #157 at

¶¶151-29) be DISMISSED WITH PREJUDICE in their entirety, as against said Defendant <u>only</u>; and that Plaintiffs George and Carol Ross's breach of contract claim contained in the Amended Complaint's Fifth Claim for Relief (Doc. #157 at ¶162-76) be DISMISSED WITH PREJUDICE to the extent based on their mortgage agreement with said Defendant, as against said Defendant <u>only</u>;

2.  Defendant Mortgage Electronic Registration Systems, Inc.'s motion to dismiss the amended complaint in part (Doc. #174) be DENIED without prejudice in all other respects; and,

3.  This matter remain pending on the docket of this Court as to all remaining claims against Defendant Mortgage Electronic Registration Systems, Inc. and all other remaining Defendants, and proceed in accordance with the established schedule.

December 30, 2010

                     s/ Sharon L. Ovington
                     Sharon L. Ovington
                     United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).