# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE KLINE, *et al.*, | : | |
| Plaintiffs, | : | Case No. 3:08cv408 |
| vs. | : | District Judge Walter H. Rice |
| | | Magistrate Judge Sharon L. Ovington |
| MORTGAGE ELECTRONIC SECURITY SYSTEMS, *et al.*, | : | |
| | : | |
| Defendants. | | |

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

This matter is before the Court on Defendant Wells Fargo Bank, N.A.'s ["Wells Fargo"] motion for judgment on the pleadings (Doc. #180) with respect to Plaintiff Eugene Kline's claims against Wells Fargo included in the First Amended Complaint, along with Wells Fargo's memorandum in support thereof (Doc. #181); Plaintiff Kline's memorandum in opposition thereto (Doc. #193); Defendant Wells Fargo's reply memorandum (Doc. #207); and the record as a whole.

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

## II.    PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

On November 10, 2008, five individual Plaintiffs (Eugene Kline; Jon Shayne Jones; Diana L. Hughes; and George and Carol Ross, husband and wife), on behalf of themselves and "all others similarly situated," filed a putative class action complaint against multiple Defendants, setting forth federal claims under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, *et seq.*; the Truth in Lending Act ["TILA"], 15 U.S.C. § 1666d; and the Class Action Fairness Act ["CAFA"], 28 U.S.C. § 1332(d); as well as state law claims under the Ohio Consumer Sales Practices Act ["OCSPA"], Ohio Rev. Code § 1345.01, *et seq.*; and for breach of contract and unjust enrichment.  (Doc. #1).  All Plaintiffs claim to have been owners of property purchased with loans secured by residential mortgages owned, held, serviced or otherwise controlled by Defendants, who allegedly "have engaged in misconduct in connection with the servicing of" those mortgage loans.  (*Id.* at ¶3).

Many of the Defendants identified in the original complaint thereafter moved separately for judgment as to some or all of Plaintiffs' claims.  (*See, e.g.,* Doc. ##18, 30, 31, 35, 67, 72, 74, 132).  Among those filings was an earlier Motion for Judgment on the Pleadings by Defendant Wells Fargo.  (Doc. #67).  The Court granted Wells Fargo's prior motion as to Plaintiff Jones' claims arising out of his

bankruptcy proceeding and under the OCSPA, but denied that motion in all other respects. (*See* Doc. #155).

On April 14, 2010, with leave of the Court (*see* Doc. #154 at 15), Plaintiffs filed their first amended complaint (Doc. #157), in order to add Barclays' Capital Real Estate, Inc. as a new Defendant (*see id.* at ¶10), and also to allow Plaintiffs Kline and the Rosses to "properly plead[ ] their state law claims of breach of contract, unjust enrichment and for class action status under the OCSPA, subject to the strictures of Fed. R. Civ. P. 11." (Doc. #154 at 15).

According to the amended complaint, Defendant Wells Fargo, acting "as Trustee" with respect to Plaintiff Kline's first mortgage, initiated a foreclosure action against Kline on March 16, 2007. (Doc. #157 at ¶32). Plaintiffs allege, however, that contrary to Wells Fargo's representations re its ownership interest in Kline's mortgage, that mortgage was not formally assigned to Wells Fargo until March 26, 2007, and even then the assignment was not properly executed. (Doc. #157 at ¶¶34-40). Plaintiffs also assert that in connection with that foreclosure action, Defendant Wells Fargo improperly charged Kline "for numerous fees and expenses which were either illusory or illegal under federal and/or state law." (Doc. #157 at 44, 45-61). Based on Defendant's actions as alleged, Plaintiffs assert that Defendant Wells Fargo is liable to Plaintiff Kline

under the TILA and the OCSPA, and for unjust enrichment and breach of contract. (Doc. #157 at 137-171).

On June 1, 2010, Defendant Wells Fargo moved for judgment on the pleadings as to Plaintiff Kline's claims against it in that amended complaint. (Doc. #180). Defendant Wells Fargo seeks judgment in its favor as to Plaintiff's Second, Third, Fourth and Fifth Claims for Relief in the amended complaint (Doc. #181 at 2-3), or those brought under the TILA and OCSPA, and those sounding in unjust enrichment and breach of contract. (*See* Doc. #157 at ¶¶137-171). Wells Fargo first argues that as a "national bank," it is exempt from the OCSPA's provisions. (Doc. #181 at 4-5). Additionally, that Defendant argues that Plaintiff Kline has identified no contract provision that Wells Fargo is alleged to have breached, and that the actual language of Kline's subject note and mortgage agreement in fact confirms the <u>lack</u> of any breach. (*Id.* at 5-9). Next, Wells Fargo contends that Plaintiffs' amended complaint fails to show that Plaintiff Kline conferred any benefit upon Wells Fargo, as required to maintain an unjust enrichment claim, and that the existence of written agreements also negates such a claim. (*Id.* at 9-12). Finally, Wells Fargo asserts that the amended complaint fails to state a valid claim under the TILA because no "credit account" or "credit balance" ever existed between Plaintiff Kline and Wells Fargo. (*Id.* at 12-14).

Defendant Wells Fargo thus asks that judgment be entered in its favor and against Plaintiff Kline as to all of his claims against it. (*Id.* at 14).

Plaintiff Kline responds to Wells Fargo's challenge to his OCSPA claim by arguing that a "national bank" is not exempt from the OCSPA's terms when it commits an unfair or deceptive act or practice while acting in the role of "supplier," as attributed to Wells Fargo in the amended complaint. (Doc. #193 at 6-9). He also argues that he has stated a viable breach of contract claim because the fee-shifting provisions within his contracts allow for such fees only if both reasonable and lawful, which Kline claims the fees assessed by Wells Fargo were not. (*Id.* at 9-12). As to his unjust enrichment claims, Kline urges that by identifying "each of the fees and expenses" alleged to have been "illegally charged by Wells Fargo," he has sustained his pleading burden for purposes of Defendant's motion. (*Id.* at 12-15). Regarding written agreements negating an unjust enrichment claim, Plaintiff Kline responds only that he "is entitled to plead in the alternative at this juncture." (*Id.* at 15). Finally, Plaintiff Kline argues that he has pled a valid TILA claim because the Code of Federal Regulations contains a regulation that covers the conduct alleged as to Defendant Wells Fargo. (*Id.* at 16). Plaintiff thus asks that Wells Fargo's motion for judgment on the pleadings be denied in all respects. (*Id.*).

## III.    APPLICABLE STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applicable to motions under Rule 12(c) "is the same as a review under Rule 12(b)(6)." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6ᵗʰ Cir. 2006), *cert. denied*, 551 U.S. 1104 (2007) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6ᵗʰ Cir. 1998)).

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombley*, 550 U.S. at 555). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "And Rule 8 does not empower [a plaintiff] to plead the

-6-

bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

In the end, determining whether a complaint states "a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

## IV.    DISCUSSION

### Second Claim For Relief - TILA Claim

 "Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through . . . transmittal of funds to the creditor in excess of the total balance due on an account," 15 U.S.C. § 1666d imposes certain duties on the creditor holding that credit balance, including a possible obligation to issue a refund.  *See id*.  Plaintiff Kline premises his TILA cause of action on Section 1666d's provisions, urging that Defendants violated that section by "demanding and collecting more than they were entitled to from [Plaintiff] Kline, and then failing to return Kline's overpayment within six months."  (*See* Doc. #157 at ¶¶137-140).

Wells Fargo asserts that Kline cannot maintain such an action under the TILA because he never had a "credit account" with Wells Fargo, nor can he show that an excess "credit balance" ever existed.  (Doc. #181 at 12-13).  Urging that the

subject TILA provision applies only to "'open end' credit – *i.e.*, credit cards and credit card accounts," Defendant Wells Fargo contends that Section 1666d of the TILA does not cover "'closed end' credit" such as that extended under Plaintiff Kline's mortgage loans. (*Id.*). Plaintiff Kline counters, however, that 12 C.F.R. § 226.21 explicitly addresses "Closed End Credit" transactions such as those at issue here, and thus "completely disposes of the claim that the applicable TILA section does not apply" to Plaintiff Kline's claim. (Doc. #193 at 16).

Significantly, beyond citing to the TILA statute and corresponding regulations, neither party has provided any further guidance regarding the appropriate interpretation of 15 U.S.C. § 1666d in this context. (*See* Doc. ##181, 193, 207). Some case law relevant to this issue does exist, however. *See, e.g.*, *Vincent v. Money Store*, 402 F. Supp.2d 501 (S.D.N.Y. 2005); *Mazzei v. Money Store*, 349 F. Supp.2d 651 (S.D.N.Y. 2004). In *Mazzei*, for example, the plaintiff brought claims under the TILA, Section 1666d and 12 C.F.R. § 226.21 against his mortgage lender based, *inter alia*, on that defendant's alleged "collection of a returned check fee in excess of that permitted by [the] plaintiff's loan documents." 349 F. Supp.2d at 661. The defendants there moved for summary judgment, arguing, like Defendant Wells Fargo here, that "there was never any credit balance in [the] plaintiff's account at any time." *Id.* at 662. Noting that "[d]iscovery on the TILA

claim ha[d] not yet occurred," and that the defendants had "fail[ed] to calculate [the] plaintiff's purported debit balance or [to] provide materials from which this [could] be derived," the district court denied the defendants' summary judgment motion as "premature." *Id.*

Similarly, in *Vincent,* the district court rejected the defendant's motion to dismiss the plaintiffs' TILA claim due to the plaintiffs' purported failure "to allege that there was ever a credit balance in their accounts." 401 F. Supp.2d at 504. Because the complaint "clearly allege[d] that the [defendant's] failure to credit [the] plaintiffs for the excess charges amounted to a violation of 15 U.S.C. § 1666d and 12 C.F.R. § 226.21," the court found "[t]he allegation that there was a credit balance over $1 in their accounts" to be "implicit in [the] plaintiffs' TILA claim." *Id.*

This Court likewise believes that Plaintiff Kline's TILA allegations are sufficient to set forth a viable claim at this juncture. In an earlier Report and Recommendation in this case, the Court opined that another Defendant's argument about the absence of a "credit balance" allegation "represent[ed] little more than an exercise in semantics." (*See* Doc. #133 at 21). That impression is bolstered by the district court's handling of the defendants' motions in *Vincent* and *Mazzei, supra.* Plaintiffs' amended complaint explicitly alleges that

Defendant Wells Fargo held sums paid by Plaintiff Kline that were not due (Doc. #157 at ¶139); Wells Fargo's insistence that those sums never were reflected as a "credit balance" because Wells Fargo believes that it <u>was</u> owed those amounts (*see* Doc. #181 at 13-14; Doc. #207 at 7) should not be dispositive of Kline's TILA claim at this preliminary phase. Defendant Wells Fargo's motion for judgment on the pleadings therefore is not well taken as to Plaintiff Kline's TILA claim.

## Third Claim For Relief - OCSPA Claim

As Defendant Wells Fargo aptly notes (*see* Doc. #181 at 4, Doc. #207 at 1-2),[2] in a prior Order issued in this case, United States District Judge Walter H. Rice "t[ook] judicial notice of the fact that Wells Fargo is a national bank," and further observed that "transactions between [such] financial institutions and their customers [generally] are exempted from the definition of a 'consumer transaction' subject to the [OCSPA]"). (Doc. #155 at 9) (citing *Reagans v. MountainHigh Coachworks, Inc.*, 881 N.E.2d 245, 253 (Ohio 2008)). "[I]n the absence of authority that a national bank, such as Well[s] Fargo, acting as a trustee for securitized mortgages, is not a financial institution for purposes of the OCSPA," the Court declined to accept that proffered argument for allowing Plaintiff Jones to maintain an OCSPA action against Defendant Wells Fargo, and

---

[2](*See also* Doc. #193 at 6) [where Plaintiff Kline acknowledges that prior holding but argues that the Court there "misconstrue[d] the statute"].

thus granted Wells Fargo's motion for judgment in its favor as to that claim.

(Doc. #155 at 10).

Although Plaintiff Kline here reiterates essentially the same arguments

previously advanced by Plaintiff Jones (*see* Doc. #193 at 6-9), he, too, fails to set

forth any compelling "authority" for the proposition that a "national bank" in

Wells Fargo's circumstances "is not a financial institution for purposes of the

OCSPA." (*See* Doc. 155 at 10). Absent such authority, the Court again concludes

that Wells Fargo is exempt from OCSPA liability relative to transactions such as

those undertaken with Plaintiff Kline.

## Fourth Claim For Relief - Unjust Enrichment Claim

In *Catlett v. Central Allied Enters., Inc.*, No. 08 CO 5, 2009 WL 2859223, at *2

(Ohio Ct. App. Aug. 31, 2009), the state appellate court restated the elements of a

claim of unjust enrichment under Ohio law, as follows:

> In order to recover under a theory of unjust enrichment,
> the following elements must be proved: (1) the plaintiff
> conferred a benefit upon the defendant, (2) the
> defendant had knowledge of the benefit, and (3)
> circumstances render it unjust or inequitable to permit
> the defendant to retain the benefit without
> compensating the plaintiff.

*Id.* (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)).

Defendant Wells Fargo first asserts that Plaintiff Kline has failed to state a

viable unjust enrichment claim against it because he has failed to identify any benefit that he conferred on Wells Fargo. (Doc. #181 at 9-10). Kline counters that the amended complaint's identification of specific and allegedly improper fees that Wells Fargo sought to collect and/or collected from Kline is sufficient to support his unjust enrichment claim at this juncture because "the information regarding which of the defendants ultimately received which of the challenged fees and expenses arising from the debt collection activities relating to the Kline mortgage is within the defendants' exclusive knowledge and control." (Doc. #193 at 15).

In a prior Order issued in this case, Judge Rice expressly "reject[ed] the Plaintiffs' assertion that one can infer that they conferred a benefit on [Defendant] MERS merely because they allege that [such Defendant] demanded the payment of certain fees." (Doc. #154 at 13 n.4). Although the amended complaint alleges that Defendant Wells Fargo "demanded and in fact <u>collected</u> numerous improper fees and expenses from" Defendant Kline (Doc. #157 at ¶139) (emphasis added), that complaint still fails to aver which of the allegedly improper fees identified Wells Fargo is purported to have actually "collected" (as opposed to have merely "demanded"), or to aver that Wells Fargo itself <u>retained</u> any of the collected amounts. Under established Ohio law, proof that "the plaintiff conferred a

benefit upon the defendant" would seem to contemplate that Defendant Wells Fargo must actually have <u>received</u> payment of some improper fee from Plaintiff Kline, rather than merely have sought such a fee on behalf of some other entity, in order to have been "unjustly enriched." *See Catlett*, 2009 WL 2859223, at *2.

Plaintiff Kline's additional contention that any information missing from the amended complaint lies "within the defendants' exclusive knowledge and control" (Doc. #193 at 15) misapprehends the nature of the critical information omitted from the complaint. The Court agrees that for purposes of notice pleading, Plaintiff Kline should not be required to identify in his complaint precisely how any fees improperly collected from him were distributed among the various Defendants. (*See id.*). Nevertheless, Plaintiff Kline here still has failed to state which (if any) of the objectionable fees he actually <u>paid</u> – information presumably as accessible to him as to Defendant Wells Fargo.

Moreover, as observed in Wells Fargo's reply (*see* Doc. #207 at 5-6), the very allegations of Plaintiffs' amended complaint suggest that Wells Fargo itself may <u>not</u> have retained any purportedly improper service of process fees, judicial report fees, loan servicing and document fees, or legal fees collected from Plaintiff Kline, but instead merely acted as a conduit for passing such fees along to the other entities that had generated those expenses. (*See* Doc. #157 at ¶¶46-

47, 56, 72, 68-71).  Accordingly, such allegations again fall short of establishing the required "benefit" element of Plaintiff Kline's unjust enrichment claim. "Unjust enrichment involves not only a loss by the plaintiff, but also the defendant must receive a gain."  *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 WL 3220192, at *11 (Ohio Ct. App. Dec. 1, 2005).  In addition, "it is not sufficient that the defendant gain an enrichment; the enrichment must be unjust." *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *11 (S.D. Ohio Mar. 19, 2008) (Graham, J.) (citing *Chesnut v. Progressive Casualty Ins. Co.*, 850 N.E.2d 751 (Ohio Ct. App. 2006)).  Presumably, then, whatever loss a plaintiff experienced must bear a connection to the defendant's gain in order for an unjust enrichment claim to stand.  *See Zele Funeral Home, Inc. v. Buttry*, 645 N.E.2d 792, 794 n. 2 (Ohio Ct. App. 1994) ("As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them.") (emphasis added); *see also Paul Vlack Co., Inc. v. BancOhio Nat'l Bank*, No. 87AP-1121, 1988 WL 84412, at *3 (Ohio Ct. App. Aug. 11, 1998) (reversing and remanding unjust enrichment judgment for plaintiff where, despite "substantial testimony concerning the services performed and materials furnished, plaintiff failed to show that the value of those services and materials benefitted defendant") (emphasis added).

Accordingly, in order to survive a motion for judgment on the pleadings, a complaint not only must allege that the defendant "knew about a benefit that [it] was not entitled to receive," but also must "identify the benefit that [the plaintiff] allegedly conferred on" the defendant. *MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp.2d 944, 965 (N.D. Ohio 2008). Although Plaintiff Kline understandably may not be able to trace directly to Defendant Wells Fargo's hands any improper fees he may have paid, the amended complaint nonetheless must be capable of being credibly read to allege that he conferred <u>some</u> benefit on that Defendant. Instead, Plaintiffs' amended complaint leaves open the distinct possibility that any improper fees paid or unpaid by Plaintiff Kline had absolutely no effect on whatever compensation Defendant Wells Fargo may have received. Plaintiffs' amended complaint thus still fails to satisfy the "conferred a benefit" element of a prima facie case of unjust enrichment, and that claim must be dismissed as against Defendant Wells Fargo.

**Fifth Claim For Relief - Breach of Contract Claim**

Finally, Defendant Wells Fargo moves for judgment as to Plaintiff Kline's breach of contract claim against it, urging both that Kline has not identified any provisions of the written agreements governing their relationship that Wells Fargo allegedly breached, and that it committed no breach. (Doc. #181 at 5-9,

Exhs. A-D). Plaintiff Kline counters that the amended complaint "identifies the specific provision of the Kline mortgage contract which was violated by the assessment of the allegedly improper fees and expenses" sought by Defendant Wells Fargo. (Doc. #193 at 9-12).

The elements of a viable breach of contract claim under Ohio law are the existence of a valid contract between the parties, performance by the plaintiff, a breach by the defendant, and resulting damages. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). The parties apparently agree that Kline's two mortgage agreements and two promissory notes are the "contracts" underlying Plaintiff Kline's breach of contract claim against Wells Fargo. (*See* Doc. #157 at ¶¶32, 34; *see also* Doc. #181, Exhs. A-D).

Consistent with the allegations of Plaintiffs' amended complaint (*see, e.g.*, Doc. #157 at ¶¶163, 171), both of the subject promissory notes provide that "the Note Holder will have the right to be paid back [ ][3] for all of its [ ][4]costs and

---

[3]The first Note only contains the additional words "by me" where these brackets appear. (*See* Doc. #181, Exh. A at ¶7(E)).

[4]The second Note only contains the additional word "reasonable" where these brackets appear. (*See* Doc. #181, Exh. B at ¶4(D)).

expenses [ ]⁵ to the extent not prohibited by applicable law" (*i.e.*, the law of Ohio).

(*See* Doc. #181 at 6, Exh. A at ¶7(E), Exh. B at ¶4(D)) (emphasis added).  The

amended complaint correctly avers that under Ohio law, "attorneys fees incurred

by a lender in foreclosure proceedings are not recoverable, even if the mortgage

loan documents purportedly allow such fees to be passed on to the debtor."

(Doc. #157 at ¶69); *see Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 401 (Ohio 2009)

("A stipulation in a mortgage to the effect that, in case an action should be

brought to foreclose it, a reasonable attorney fee, to be fixed by the court, for the

services of the plaintiff's attorney in the foreclosure action, should be included in

the decree, and paid out of the proceeds arising from the sale of mortgaged

property, is against public policy and void.").  Plaintiff Kline thus alleges that

Defendant Wells Fargo breached the contract provision barring "prohibited" fees

by "demand[ing] and recover[ing] illegal attorneys fees from Kline."  (Doc. #157

at ¶70-71).

If (as such Defendant apparently concedes) Wells Fargo is bound by the

terms of the Kline Notes as alleged in the amended complaint, Plaintiff Kline

appears to have stated a cognizable breach of contract claim based on Defendant

Wells Fargo's alleged effort to collect prohibited fees from him.  Defendant Wells

---

⁵The first Note only contains the additional words "in enforcing this Note" where these brackets appear.  (*See* Doc. #181, Exh. A at ¶7(E)).

Fargo's motion for judgment as to Plaintiff Kline's breach of contract claim thus is not well taken.


**IT THEREFORE IS RECOMMENDED THAT:**

1.  Defendant Wells Fargo Bank, N.A.'s motion for judgment on the pleadings (Doc. #181) be GRANTED IN PART, and that Plaintiff Eugene Kline's OCSPA and unjust enrichment claims contained in the Amended Complaint's Third and Fourth Claims for Relief (Doc. #157 at ¶¶141-161) be DISMISSED WITH PREJUDICE in their entirety, as against said Defendant <u>only</u>;

2.  Defendant Wells Fargo Bank, N.A.'s motion for judgment on the pleadings (Doc. #181) be DENIED without prejudice in all other respects; and,

3.  This matter remain pending on the docket of this Court as to all remaining claims against Defendant Wells Fargo Bank, N.A. and all other remaining Defendants, and proceed in accordance with the established schedule.


February 16, 2011                         <u>   s/ Sharon L. Ovington   </u>
                                                   Sharon L. Ovington
                                          United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).