IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

EUGENE KLINE, *et al.*,          :

        Plaintiffs,     :     Case No. 3:08cv408

vs.     :     District Judge Walter H. Rice
            Magistrate Judge Sharon L. Ovington

MORTGAGE ELECTRONIC     :
  SECURITY SYSTEMS, *et al.*,

            :

        Defendants.

REPORT AND RECOMMENDATIONS[1]

I.  INTRODUCTION

This matter is before the Court on Defendant Barclays Capital Real Estate Inc.'s ["Barclays"] motion to dismiss (Doc. #178) and memorandum in support thereof (Doc. #179); Plaintiffs' memorandum in opposition thereto (Doc. #192); an *amicus curiae* brief filed by the Ohio Attorney General (Doc. #197); Defendant Barclays' reply memorandum (Doc. #206); and the record as a whole.

II.  PROCEDURAL BACKGROUND/THE PARTIES' CLAIMS

On November 10, 2008, five individual Plaintiffs [Eugene Kline; Jon Shayne

---

[1]Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Jones; Diana L. Hughes; and George and Carol Ross, husband and wife], on behalf of themselves and "all others similarly situated," filed a putative class action complaint against multiple Defendants, setting forth federal claims under the Fair Debt Collection Practices Act ["FDCPA"], 15 U.S.C. § 1692, *et seq.*; the Truth in Lending Act ["TILA"], 15 U.S.C. § 1666d; and the Class Action Fairness Act ["CAFA"], 28 U.S.C. § 1332(d); as well as state law claims under the Ohio Consumer Sales Practices Act ["OCSPA"], Ohio Rev. Code § 1345.01, *et seq.*; and for breach of contract and unjust enrichment. (Doc. #1). All Plaintiffs claim to have been owners of property purchased with loans secured by residential mortgages owned, held, serviced or otherwise controlled by Defendants, who allegedly "have engaged in misconduct in connection with the servicing of" those mortgage loans. (*Id.* at ¶3).

Many of the Defendants identified in the original complaint thereafter moved separately for judgment as to some or all of Plaintiffs' claims. (*See, e.g.*, Doc. ##18, 30, 31, 35, 67, 72, 74, 132). Among those motions was Defendant Wachovia Equity Servicing, LLC's ["Wachovia"] motion to dismiss, alleging that its interest in loans serviced by Defendant HomEq Servicing Corporation ["HomEq"] had been sold to Barclays' Capital Real Estate, Inc. ["Barclays"] on November 1, 2006, before HomEq's alleged conduct that is the subject of this

action occurred. (Doc. #30). By order dated February 26, 2010, United States District Judge Walter H. Rice denied without prejudice Defendant Wachovia's motion to dismiss, but granted Plaintiff Kline 30 days to conduct discovery regarding the proper Defendant entity, with permission thereafter to "move to substitute [the appropriate] entity," if deemed necessary. (Doc. #142 at 4-5; *see also* Doc. #148).

On April 14, 2010, with leave of the Court (*see id.*), Plaintiffs filed their First Amended Complaint, adding Barclays as a Defendant in place of Wachovia, and also modifying various Plaintiffs' allegations regarding their state law claims, pursuant to Court order. (*See, e.g.,* Doc. #154 at 15, Doc. #156 at 10). The amended complaint alleges that Defendant Barclays "is a loan servicer which does business under the name HomEq Servicing" ["HomEq"]. (Doc. #157 at ¶10). The complaint also alleges that through HomEq, Barclays improperly sought and collected certain fees from Plaintiff Kline in connection with his defaulted residential mortgage loan, in violation of the TILA and the OCSPA, and constituting breach of contract and unjust enrichment. (*Id.* at ¶¶27, 31, 38-76).

On June 1, 2010, Defendant Barclays moved to dismiss Plaintiffs' amended complaint in its entirety. (Doc. #178). Barclays first argues that as a

mortgage servicer, it is not a "supplier" subject to OCSPA liability. (*Id.* at 4-6). Next, Barclays contends that Plaintiff Kline has not adequately pled an unjust enrichment claim against it. (*Id.* at 6-8). Barclays maintains that it received no benefit from Kline, averring that "the various fees identified in the pleadings ultimately were all delivered to entities other than Barclays." (*Id.* at 7). In addition, Barclays argues that Kline has no valid contract claim against it (*id.* at 8-9), as Kline purportedly "cannot identify any written agreement to which both he and Barclays are signatories," and Barclays also cannot be held liable merely as the agent for an undisclosed principal. (*Id.* at 9). Finally, urging that Kline has failed to state a claim under the TILA, Barclays argues that it is not a "creditor" subject to liability under the terms of that Act. (*Id.* at 10-11).

Responding in opposition to Barclays' motion, Plaintiff Kline first attacks Barclays' argument regarding mortgage servicers' liability under the OCSPA, urging that drawing inferences from a proposed but not enacted Ohio statute is unfounded, and that existing law supports including mortgage servicers within the OCSPA's scope. (Doc. #192 at 6-10). Kline also defends the "[u]pon information and belief" allegations of his unjust enrichment claim as sufficient to support that claim for purposes of a motion to dismiss. (*Id.* at 10-14). Next, Kline suggests that Barclays may be subject to liability for breach of contract because

-4-

the "legal capacity and status" of those holding his mortgages is unclear. (*Id.* at 14-16). Finally, Plaintiff Kline maintains that Barclays also may be subject to TILA liability due to HomEq's alleged role in "conceal[ing] the identity of the actual assignee of [his] mortgages." (*Id.* at 16-17). He asks that Barclays' motion be denied in all respects.

By way of *amicus curiae* brief proffered on August 2, 2010, the Ohio Attorney General also has weighed in regarding the scope of OCSPA liability *vis-a-vis* mortgage suppliers such as Barclays. (*See* Memorandum appended to Doc. #197). Observing that "the crucial issues" as to the OCSPA's applicability are fact-intensive ones (*id.* at 3), the Attorney General first accurately summarizes the amended complaint in this matter as alleging "that Barclays is a servicer that collected what Barclays claims were amounts due from Kline and others in connection with financing for Kline's home and the homes of others." (*Id.* at 4). The Attorney General continues by arguing that Barclays does not fall within any of the exceptions to the OCSPA's definitions of "supplier" or "consumer transaction" (*id.* at 5 -9), and then cites case law alleged to show that OCSPA's coverage encompasses mortgage loan servicers and consumer transactions related to real estate. (*Id.* at 10-16). The Attorney General therefore urges that the allegations of the amended complaint in this action suffice to state a viable claim

against Barclays under the OCSPA.

Barclays filed its rely on August 30, 2010, continuing to maintain that the OCSPA does not apply to mortgage loan servicers. (Doc. #206 at 1-9). Barclays also argues that because Kline's complaint in effect acknowledges that HomEq did not retain fees it collected, the "benefit" element of unjust enrichment is absent, and Plaintiff's alternative "disgorgement" theory also will not support liability. (*Id.* at 9-12). According to Barclays, the case cited by Kline as support for an agent's breach of contract liability is distinguishable from the instant case, and no such liability applies here. (*Id.* at 12-13). Finally, Barclays asserts that it cannot be held liable under TILA as an "assignee." (*Id.* at 13-15).

## III. APPLICABLE STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," so "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombley*, 550 U.S. at 555). "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id.* at 1954. "And Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.*

In the end, determining whether a complaint states "a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted).

## IV. DISCUSSION

### Second Claim For Relief - TILA Claim

"Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through . . . transmittal of funds to the creditor in excess of the total balance due on an account," 15 U.S.C. § 1666d imposes certain duties on the creditor holding that credit balance, including a possible obligation to issue a refund. *See id*. Plaintiff Kline premises his TILA cause of action on Section 1666d's provisions, urging that Defendants violated that section by "demanding and collecting more than they were entitled to from [Plaintiff] Kline, and then failing to return Kline's overpayment within six months." (*See* Doc.

#157 at ¶¶137-140).

As defined by the TILA, the term "creditor" (as used in Section 1666d, *supra*) "refers only to a person who both":

> (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and
>
> (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement . . .

15 U.S.C. § 1602(f) (emphasis added). Based on this definition, Barclays argues that it is not a "creditor" subject to the terms of TILA, because it is not "the original lender which closed [Kline's] loan," and "Kline does not allege (nor can he) that Barclays extends consumer credit." (Doc. #179 at 11).

In response, Kline does not dispute Barclays' contention that it is neither Kline's original lender nor an entity that extends credit, but instead refers to additional TILA terms found at 15 U.S.C. § 1641(d), providing that "any person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to the mortgage that the consumer could assert against the creditor of the mortgage." (Doc. #192 at 16). Kline then argues that because Barclays participated in "conceal[ing] the identity of the actual assignee"

-8-

of his mortgage, his TILA claim should be permitted to go forward.  (*Id.* at 16-17).

The sole additional authority cited by Kline for his position is *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).  There, the Sixth Circuit noted that "in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." *Id.*  In the instant case, however, Kline has not suggested how engaging in discovery might reveal information indicating that Barclays is subject to TILA liability.  As Barclays aptly notes in its reply (*see* Doc. #206 at 16), the TILA provision cited by Kline with respect to assignee liability relates only to TILA violations that are "apparent on the face of the disclosure statement."  *See* 15 U.S.C. § 1641(a).  But according to the amended complaint's allegations, any purported TILA violations attributable to Barclays occurred after Kline's loan was in default (*see* Doc. #157), and therefore could <u>not</u> have appeared on the disclosure statement's face.

As a result, even if Barclays <u>were</u> shown to be an assignee of Kline's mortgage, it would not be subject to liability under 15 U.S.C. § 1641.  As neither 15 U.S.C. § 1641(d) nor the *Michaels Bldg.* decision offers hope for preserving Kline's TILA claim, Barclays' motion to dismiss is well taken as to that claim.

**Third Claim For Relief - OCSPA Claim**

Confronted with another Defendant's argument that it was not a

"supplier" for purposes of OCSPA liability, Judge Rice previously acknowledged in this matter that the OCSPA "imposes liability on suppliers who engage in certain activities" (citing Ohio Rev. Code §§ 1345.02(A), 1345.03(A)), and that "entities engaging in the collection of consumer debts are suppliers" (citing *Celebrezze v. United Research, Inc.*, 482 N.E.2d 1260 (Ohio1984)). (Doc. #116 at 17-18). In addition, Judge Rice previously rejected another Defendant's argument that, as a subsidiary of a national bank, it was exempt from OCSPA liability. (*See* Doc. #156 at 8-9).

Defendant Barclays, too, now comes before this Court asserting that as a mortgage servicer, it is not a "supplier" subject to liability under the OCSPA. (Doc. #179 at 4-6; Doc. #206 at 1-9). Barclays' primary authority for that position is a yet-to-be-enacted Ohio bill, which Barclays advances for the proposition that the bill's proposal "to extend OCSPA to apply expressly to mortgage servicers" demonstrates that mortgage servicers are <u>not</u> covered by the current version of the OCSPA. (*See* Doc. #179 at 5-6; *see also* Doc. #206 at 4-7). Conversely, Kline contends that the proposed bill cited by Barclays does not "even purport[ ] to amend – much less 'expand the scope of' – the OCSPA." (Doc. #192 at 6). Kline further argues that debt collection practices such as those engaged in by HomEq already have been determined to "fall[ ] within the purview of the OCSPA." (*Id.*

-10-

at 9) (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999)).  The Ohio Attorney General has advocated for Plaintiff Kline's interpretation of the current OCSPA, arguing that the OCSPA's exception for transactions involving financial institutions does not apply to Defendants Barclays, and that OCSPA's reach <u>does</u> extend to debt collectors whose services are provided on behalf of the creditor rather than the consumer, even if related to real estate.  (Doc. #197 at 7-9); *see Dowling v. Litton Loan Servicing*, No. 2:05-cv-00098 (S.D. Ohio Dec. 1, 2006) (Marbley, J.).

After thoroughly reviewing the memoranda submitted and authorities cited by the parties in this matter (Doc. ##179, 192, 206), as well as the *amicus curiae* memorandum submitted and authorities cited by the Ohio Attorney General (*see* Doc. #197), this Court is left with the distinct impression that the issue of the OCSPA liability of a mortgage servicer such as Defendant HomEq has yet to be resolved definitively by the courts of Ohio.  As such, the Court is guided by the Ohio Supreme Court's admonition that "Ohio's Consumer Sales Practices Act is a remedial law designed to provide various civil remedies to aggrieved consumers and <u>must be liberally construed</u> . . ."  *State <u>ex rel.</u> <u>Celebrezze</u> v. Hughes*, 569 N.E.2d 1059, 1062 (Ohio 1991) (emphasis added).

Construing the OCSPA's scope liberally and its exceptions narrowly, this

Court concludes that Plaintiff Kline has stated a claim under the OCSPA against Defendant Barclays that is sufficient to survive a motion to dismiss. Barclays motion thus must be denied as to that claim.

**Fourth Claim For Relief - Unjust Enrichment Claim**

In *Catlett v. Central Allied Enters., Inc.*, No. 08 CO 5, 2009 WL 2859223, at *2 (Ohio Ct. App. Aug. 31, 2009), the state appellate court restated the elements of a claim of unjust enrichment under Ohio law, as follows:

> In order to recover under a theory of unjust enrichment, the following elements must be proved: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of the benefit, and (3) circumstances render it unjust or inequitable to permit the defendant to retain the benefit without compensating the plaintiff.

*Id.* (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984)). In accordance with those elements, "[u[njust enrichment involves not only a loss by the plaintiff, but also the defendant must receive a gain." *Hoyt v. Nationwide Mut. Ins. Co.*, No. 04AP-941, 2005 WL 3220192, at *11 (Ohio Ct. App. Dec. 1, 2005). In addition, "it is not sufficient that the defendant gain an enrichment; the enrichment must be unjust." *DavCo Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 WL 755283, at *11 (S.D. Ohio Mar. 19, 2008) (Graham, J.) (citing *Chesnut v. Progressive Casualty Ins. Co.*, 850 N.E.2d 751 (Ohio Ct. App. 2006)).

Presumably, then, whatever loss a plaintiff experienced must bear a connection to the defendant's gain in order for an unjust enrichment claim to stand. *See Zele Funeral Home, Inc. v. Buttry*, 645 N.E.2d 792, 794 n. 2 (Ohio Ct. App. 1994) ("As ordinarily defined, the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them.") (emphasis added); *see also Paul Vlack Co., Inc. v. BancOhio Nat'l Bank*, No. 87AP-1121, 1988 WL 84412, at *3 (Ohio Ct. App. Aug. 11, 1998) (reversing and remanding unjust enrichment judgment for plaintiff where, despite "substantial testimony concerning the services performed and materials furnished, plaintiff failed to show that the value of those services and materials benefitted defendant") (emphasis added). Accordingly, in order to survive a motion for dismiss, a complaint not only must allege that the defendant "knew about a benefit that [it] was not entitled to receive," but also must "identify the benefit that [the plaintiff] allegedly conferred on" the defendant. *MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp.2d 944, 965 (N.D. Ohio 2008).

Defendant Barclays asserts that Plaintiff Kline has failed to state a viable unjust enrichment claim against it because he has failed to identify any benefit that he conferred on Barclays. (Doc. #179 at 6-8). Kline counters that the amended complaint's allegations, made "[u]pon information and belief," that

-13-

Barclays "was the direct recipient of some of the fees and expenses passed on to Kline" or "was compensated for the services it provided in connection with" Kline's purported debts (*see* Doc. #157 at ¶¶159, 160) are sufficient to support his unjust enrichment claim at this juncture, because "the information regarding which of the defendants ultimately received which of the challenged fees and expenses arising from the debt collection activities relating to [the Kline] mortgage is within the defendants' exclusive knowledge and control." (Doc. #192 at 11-12).

In a prior Order issued in this case, Judge Rice expressly "reject[ed] the Plaintiffs' assertion that one can infer that they conferred a benefit on [Defendant] MERS merely because they allege that [such Defendant] demanded the payment of certain fees." (Doc. #154 at 13 n.4). As noted above, the amended complaint now does go farther with its averments as to Barclays/ HomEq, alleging that these Defendants are believed to have been "the direct recipient of some of the fees and expenses" paid by Kline. (Doc. #157 at ¶159). Still, Barclays also correctly observes (*see* Doc. #179 at 7) that, despite that averment, the very allegations of Plaintiffs' amended complaint suggest that HomEq may have acted merely as a conduit for passing certain fees along to other entities that had generated those expenses. (*See, e.g.,* Doc. #157 at ¶¶46-47, 56, 68-72).

In this context, Plaintiff Kline's contention that any information missing from the amended complaint lies "within the defendants' exclusive knowledge and control" (Doc. #192 at 12) has merit. Unlike Plaintiff Jones (*see* Doc. #227), Plaintiff Kline apparently already has paid the fees to which he now objects. (*See* Doc. #157 at ¶¶43-44). Moreover, the complaint directly alleges that Barclays (through HomeEq) "was the direct recipient" of some of those fees. (Doc. #157 at ¶159). Whether or not the evidence ultimately will bear out that allegation is an issue not appropriate for resolution via a motion to dismiss. The Court agrees that for purposes of notice pleading, Plaintiff Kline should not be required to identify in his complaint precisely how any fees improperly collected from him were distributed among the various Defendants. (*See* Doc. #192 at 11, 12).[2] Accordingly, Defendant Barclays' motion to dismiss is not well taken with respect to Plaintiff Kline's unjust enrichment claim.

**Fifth Claim For Relief - Breach of Contract Claim**

Finally, Defendant Barclays moves to dismiss Plaintiff Kline's breach of contract claim against it. (Doc. #179 at 8-9). Barclays observes that the only contention targeting it in the breach of contract count of Plaintiffs' amended

---

[2]The Court is less impressed with Plaintiff Kline's argument that HomEq "was compensated for the services it provided in connection with" Kline's purported debts (*see* Doc. #157 at ¶160), and would not permit him to maintain an unjust enrichment claim on that basis. (*See* Doc. #223 at 24-25; *see also* Doc. #179 at 7-8).

complaint is as follows:

> In failing to accurately disclose the principal to whom [Kline's] debt was purportedly owed, HomEq violated Ohio law, and may be held liable for breaches of the Kline Note and Mortgage by the principal.

(*See* Doc. #157 at ¶170). Urging that Kline has not identified the source of his contractual relationship with HomEq because no such relationship existed between them, Barclays argues that Kline cannot maintain a breach of contract against it based solely upon "what is in effect *respondeat superior* liability in reverse against an agent." (Doc. #179 at 9).

Plaintiff Kline counters that the amended complaint "identifies each of the elements of [ a] breach of contract claim" by identifying his mortgage contracts as well as the specific provisions alleged to have been violated by Defendants' assessment of allegedly improper fees and expenses. (Doc. #192 at 12-14). He urges that Barclays is liable for the breach of those contracts because HomEq, "as the agent of the principal, took several steps to conceal the identity of the actual holder of the Kline mortgages," and "still has not disclosed" that entity's identity. (*Id.* at 15). He then repeats the amended complaint's assertion that "[u]nder Ohio law, agents may be liable for the breaches of contract of a principal to an agreement if the principal is only partially disclosed," fictitious, non-existent, or "without legal capacity or status." (*Id.*, quoting Doc. #157 at ¶172). As support

for that proposition, he cites *James G. Smith & Assocs., Inc. v. Everett*, 439 N.E.2d 932, 935 (Ohio Ct. App. 1981).

The elements of a viable breach of contract claim under Ohio law are the existence of a valid contract between the parties, performance by the plaintiff, a breach by the defendant, and resulting damages. *Pavlovich v. National City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 807 N.E.2d 953, 957 (Ohio Ct. App. 2004)). In neither the amended complaint nor his opposing memorandum does Plaintiff Kline claim that "a valid contract" existed between him and HomEq. (*See* Doc. ##157, 192). As such, even if HomEq's actions breached the terms of Kline's agreement with some other entity, Kline cannot establish the elements of a viable breach of contract claim against Barclays.

The *Smith & Assocs.* decision cited by Plaintiff Kline does not change that result. In that case, the court undertook "to summarize the situations under which the Ohio cases hold that an agent may or may not be held personally liable to the persons with whom [it] deals," including when acting for a "partially disclosed," "undisclosed," or "fictitious or nonexistent" principal. 439 N.E.2d at 935. As interpreted by the only Court found to have cited *Smith & Assocs.*, that case most accurately can be read to stand for the proposition that "[i]n Ohio, an

-17-

agent is liable to a third party <u>when</u> [<u>it</u>] <u>contracts</u> in the name of a nonexistent or fictitious principal <u>or</u> assumes to act as an agent for a principal who has <u>no legal status or existence</u>." *Plain Dealer Publ'g v. Worrell*, 898 N.E.2d 1009, 1013 (Ohio Ct. App. 2008) (emphasis added).

HomEq is not alleged to have "contract[ed]" with Kline on behalf of any principal, but rather to have acted on behalf of an unknown principal with which Kline already had an existing contract. As Barclays aptly notes (*see* Doc. #206 at 12-13), in such circumstances, the concerns articulated in *Smith & Assocs.* about "relying wholly upon the credit and integrity of an unknown party," *see* 439 N.E.2d at 935, simply do not come into play. Moreover, the Court in *Plain Dealer Publ'g* also drew a critical distinction "between a fictitious <u>name</u> and a fictitious or nonexistent <u>principal</u>," and reversed the judgment entered against the agent of an entity using the <u>former</u>. 898 N.E.2d 1014 (emphasis in original).

In this case, Plaintiff Kline does not contend that no holder or assignee of his notes and mortgages <u>existed</u>, only that he does not know the actual identity of that entity or those entities as of the time that foreclosure proceedings against him began. (*See* Doc. #157 at ¶¶32, 34, 37, 170). As such, Kline may not seize upon the *dictum* recited in *Smith & Assocs.* as a basis for pursuing a breach of contract claim against Defendant Barclays, with whom he had no contract.

**IT THEREFORE IS RECOMMENDED THAT**:

1. Defendant Barclays Capital Real Estate Inc.'s motion to dismiss (Doc. #178) be GRANTED IN PART, as to Plaintiff Eugene Kline's claims under the Truth in Lending Act and for breach of contract; and that those claims as set forth in the Second and Fifth Claims for Relief in Plaintiffs' amended complaint (Doc. #157 at ¶¶137-40, 162-76) be DISMISSED WITH PREJUDICE as against said Defendant <u>only</u>;

2. Defendant Barclays Capital Real Estate Inc.'s motion to dismiss (Doc. #178) be DENIED WITHOUT PREJUDICE in all other respects; and,

3. This matter remain pending on the docket of this Court as to all remaining claims against all remaining Defendants, and proceed in accordance with the established schedule.


February 18, 2011                           s/Sharon L. Ovington
                                           Sharon L. Ovington
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981).