UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     x

EUGENE KLINE, et. al.                                                :          Case No. 3:08 CV 408

                Plaintiffs,                    :          **MEMORANDUM IN
SUPPORT OF
PLAINTIFFS'**
    -- against --                                         :          **OPPOSITION TO WELLS
FARGOS' OBJECTIONS**

MORTGAGE ELECTRONIC REGISTRATION          :          **TO THE MAGISTRATE'S
REPORT AND**
SYSTEMS, et. al. .
                            :          **RECOMMENDATION**
             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -     :

## PRELIMINARY STATEMENT

      Plaintiff Eugene Kline, individually and on behalf of all others similarly situated,

by and through their attorney Paul Grobman, submit this memo of law in opposition to

the Defendant Wells Fargo Bank, N.A.'s Objections to the Report and Recommendation

of Magistrate Sharon L. Ovington dated February 16, 2011 ("the R&R") which, *inter

alia,* recommended that the motion to dismiss Kline's Truth In Lending Act ("TILA")

and breach of contract claims be denied.

      For the following reasons, Wells Fargo's objections to the R&R are completely

without merit.

<u>ARGUMENT</u>

**WELLS FARGO'S OBJECTIONS TO
THE R&R's REFUSAL TO DISMISS PLAINTIFF'S
<u>TILA §1666D CLAIM SHOULD BE REJECTED</u>**

In its first argument, Wells Fargo contends for the first time that, for a defendant to be obligated to refund a "credit balance" under 15 U.S.C. §1666d of TILA, it must be the entity that initially made the loan to plaintiff under the Note and Mortgage.

**A. <u>Waiver</u>**

Significantly, Wells Fargo never raised this argument in its motion to the magistrate, but rather made the argument for the first time in its objections to the Magistrate Judge's R&R.  The law is well-settled in this and other circuits that, "absent compelling reasons, [parties are not permitted] to raise at the district court stage new arguments or issues that were not presented to the magistrate." <u>Murr v. U.S.</u>, 200 F.3d 895, 902 n.1 (6th Cir. 2000)  "Hence, [Wells Fargo's] failure to raise this claim before the magistrate constitutes waiver."  <u>Id.</u> at 902 n. 1.  <u>See also</u>, <u>U.S. v. Waters,</u> 158 F.3d 933, 936 (6th Cir. 1998) (citations omitted) ("issues raised for the first time in objections to magistrate judge's report and recommendations are deemed waived");  <u>Rittner v. Williams</u>, 2008 U.S. Dist. Lexis 23415, *9 (N.D. Ohio 2008) (same)

**B.  Interpreting §1666d As Wells Fargo Proposes Would Lead To
<u>Absurd Results</u>**

In any event, even if Wells Fargo had not waived this argument by failing to make it to the Magistrate, it would still lack merit.  Both §1666d of TILA and Section 226.21 of Regulation Z unequivocally require "credit balances" to be refunded.  "A credit balance arises whenever the creditor receives or holds funds in an account in excess of the total balance due from the consumer. . . A balance might result, for example, from the debtor's

paying off a loan in excess of the total balance owed on the account."  (Excerpts from Official Staff Commentary to Regulation Z)

"A statute should be interpreted in a way that avoids absurd results."  <u>U.S. v. Dauray</u>, 215 F.3d 257, 263 (2d Cir. 2000)   Wells Fargo provides absolutely no explanation, nor can it, for why Congress would require that "credit balances" in accounts be refunded only if the current "creditor" was identical to the "creditor" on the face of the original Note and Mortgage (even if that entity did not actually lend the money).   In fact, Congress indicated no such distinction in its "declaration of purpose" for TILA, 15 U.S.C. §1601, broadly stating that "[i]t is the purpose of this subchapter. . . *to protect the consumer against inaccurate and unfair credit billing and credit card practices*."  (emphasis added)

In interpreting a provision of law, "our lodestar must be the statute's fundamental purpose." <u>Silver v. Mohasco</u>, 602 F.2d 1083, 1087 (2d Cir. 1979)   Since the overwhelming majority of mortgage loans are sold by the original lender and securitized, interpreting §1666d as Wells Fargo seeks would not only be illogical, but would leave a gaping hole in Congress's declared purpose of "protect[ing] the consumer against inaccurate and unfair credit billing" practices.[1]

### C.  Other TILA Provisions Also Arguably Subject Wells Fargo To Liability

Moreover, wholly apart from these issues, §1602(f)(2) also includes other language regarding who is a TILA creditor:

---

[1] It would also eviscerate other protections Congress afforded mortgage borrowers, imposing completely arbitrary distinctions between the entity named on the loan documents and the actual mortgage lender in statutes requiring (i) the correction of billing errors, 15 U.S.C. §1666, (ii) disclosures of subsequent interest rate adjustments on a variable rate mortgage, (Regulation Z, Section 226.20(c)), and (iii) disclosures where a consumer later assumes the obligations of the existing debtor on a residential mortgage.  (Regulation Z, Section 226.20(b)),

> Any person who originates 2 or more mortgages referred to
> in subsection (aa) of this section in any 12-month period or
> any person who originates 1 or more such mortgages
> through a mortgage broker shall be considered to be a
> creditor for purposes of this subchapter. (15 U.S.C.
> §1602(f))[2]

Wells Fargo has not even asserted, much less presented evidence demonstrating, that it

did not originate any such high-interest mortgages in any 12-month period, and for this

reason alone, its motion must be denied.  <u>Security Ins. Co. v. Old Dominion Freight</u>, 391

F.3d 77, 83 (2d Cir. 2004) (internal quotations omitted)  ("where the evidentiary matter in

support of the motion does not establish the absence of a genuine issue, summary

judgment must be denied even if no opposing evidentiary matter is presented")

Finally, even if Wells Fargo had conclusively demonstrated, after discovery on

the issue, that it was not a "creditor" under §1602(f) of the statute, Wells Fargo also

simply ignores §1641(d)(1), which renders assignees of certain high-interest loans liable

for TILA violations:

> Any person who purchases or is otherwise assigned a
> mortgage referred to in section 1602(aa) of this title shall
> be subject to all claims and defenses with respect to the
> mortgage that the consumer could assert against the
> creditor of the mortgage….  (15 U.S.C. §1641(d)(1))

Again, either before the magistrate or on this motion, Wells Fargo has not even asserted,

much less presented evidence demonstrating, that the loans at issue were not

encompassed within §1641(d)(1).  To determine whether the loans at issue are

encompassed within this section, plaintiffs would be required to take discovery from

Wells Fargo on their practices with regard to high-interest loans, and how the actual

interest, points and fees charged to the plaintiffs compares to the yield on Treasury

---

[2] Section 1602(aa) relates to certain high-interest mortgage transactions.

securities in the month before plaintiff's loans were consummated. (15 U.S.C. §1602(aa)).

### THE R&R CORRECTLY DECLINED
### TO DISMISS THE BREACH OF CONTRACT
### CLAIM AGAINST WELLS FARGO

In its second objection to the R&R, Wells Fargo claims that the magistrate erroneously failed to grant its motion to dismiss Kline's breach of contract claim because the well-settled Ohio law prohibiting attorney's fee provisions in contracts from being enforced against mortgage borrowers in foreclosure do not apply if the party collecting attorneys fees was a defendant (rather than the plaintiff) in the foreclosure action.

There are several fundamental problems with this theory.   First, Wells Fargo points to no case which has even remotely held that a contractual fee-shifting provision in a mortgage document is enforceable if the party seeking legal fees is not the plaintiff in the foreclosure action.

Second, and more fundamentally, even if Wells Fargo's position did represent Ohio law with regard to the enforceability of fee-shifting provisions in mortgage contracts, Wells Fargo has repeatedly admitted that the same entity owned – and it was the Trustee of – both of the loans at issue which were made to Kline.  (See Objections by Wells Fargo To Magistrate's R&R, p. 1-2, fn 1 ("With regard to the loans of Plaintiff Eugene Kline, Wells Fargo has been sued as the Trustee for the investor pool that ultimately acquired the two Kline loans")  Thus, the lender plaintiff in the Kline foreclosure action and the lender defendant were, admittedly, the same entity.  Plaintiff is aware of no provision of law – and Wells Fargo has failed to cite to any – under which a

party can charge attorney's fees pursuant to a fee-shifting clause resulting from being sued *by itself*.

Finally, even if Wells Fargo's legal position with regard to legal fees were correct, and the facts did not demonstrate that the lending plaintiff and the lending defendant were the same entity, the Amended Complaint contains numerous additional allegations of legal fees and expenses assessed to Kline which were "prohibited by applicable law" and thus in violation of plaintiff's mortgage agreement with Wells Fargo. (See Amended Complaint ¶¶ 45, 46, 50, 51, 53, 54, 56-59, 60, 72-75)

## CONCLUSION

For each of the above reasons, plaintiff respectfully submits that the court should reject Wells Fargo's objections the R&R which declined to dismiss plaintiff's TILA and breach of contract causes of action.

March 15, 2011

/s/ Paul Grobman _
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiffs*