UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

EUGENE KLINE, et. al.                              :

                Plaintiffs,                       :     Case No. 3:08 CV 0408

   -- against --                                      :

MORTGAGE ELECTRONIC REGISTRATION     :
SYSTEMS, et. al. .
                                                        :
                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  :

# PLAINTIFFS' MEMORANDUM IN OPPOSITION TO BARCLAYS CAPITAL REAL ESTATE OBJECTIONS TO THE FEBRUARY 18, 2011 REPORT & RECOMMENDATION

      Plaintiff Eugene Kline ("Kline"), individually and on behalf of all others similarly situated, by and through his attorney Paul Grobman, submits this memorandum of law in opposition to the Objections to the Report & Recommendation ("the R&R") of Magistrate Sharon Ovington dated Feb. 18, 2011 filed by defendant Barclays Capital Real Estate, Inc. ("Barclays").

      In its objections, Barclays contends that the R&R incorrectly failed to dismiss plaintiff Eugene Kline's claims for violation of the Ohio Consumer Sales Practices Act and unjust enrichment against Barclays.  However, none of Barclays' attacks on the R&R have merit.

# ARGUMENT
## POINT I
### THE R&R CORRECTLY FOUND THAT KLINE PLED A VALID CLAIM AGAINST BARCLAYS UNDER THE OCSPA

Barclays/HomEq argues that the R&R was incorrect in failing to dismiss the OCSPA claim against it because mortgage servicers are not covered by the OCSPA. (Barclays/HomEq Mem., p. 4)   As its *sole* support for this proposition, Barclays/HomEq points to a proposed *new* Ohio law – the "Residential Mortgage Servicers Registration Act"(Section 1323.20 to 1323.37) – which would require Mortgage Servicers to register with the Ohio Superintendant of Financial Institutions and impose significant *additional* rules regulating how they operate.  According to HomEq, the proposed statute has not been passed, but has been pending in the Ohio Senate since January 2010.

HomEq contends that the proposed law would, if enacted, expand the scope of OCSPA for the first time to include mortgage servicers.  However, nothing in the proposed bill "expands the scope" of the OCSPA to include entities not already covered by the statute.  Indeed, nothing in the proposed new law (which will be part of a new Chapter *1323* of the Ohio U.C.C.) even purports to amend – much less "expand the scope of" – the OCSPA, which is found in Chapter *1345.*  Obviously, if Ohio elected officials sought to "expand the scope" of Chapter 1345 to include entities like mortgage servicers who were purportedly not covered under the existing OSCPA, they would have done so by proposing amendments to *that statute*.

Barclays/HomEq argues that if OCSPA already extended to mortgage servicers, the pending legislation would be redundant.  There are several fundamental problems with this argument.

2

First, the proposed new law has yet to be passed by the Ohio Senate, and thus the inferences that purportedly can be drawn from the passage of the proposed legislation in the Ohio House are minimal at best.

Second, even if the proposed new law were ultimately enacted, it would supply little insight into what a prior legislature intended when it enacted an entirely different statute (the OCSPA) years before.  As the Ninth Circuit said in Tahoe Regional Planning Agency v. McKay, 769 F.2d 534 (9th Cir. 1985):

> [C]are must be taken to distinguish unsuccessful attempts to amend proposed legislation during the process of enactment from unsuccessful attempts to amend a measure passed in a previous legislative session.  Whatever aid the former may furnish in ascertaining intent, *action on a proposed amendment is not a significant aid to interpretation of an act that was passed years before*.

Id. at 538 (emphasis added) (internal citations omitted)  Thus, even if the proposed new law could be viewed as "attempts to amend previously enacted legislation," – rather than efforts to enact a new law – "these unadopted proposals are entitled to little weight."  Tahoe, 769 F.2d at 538.

Third, even if the proposed new law had been adopted at the same time as the OCSPA, and there was significant overlap between the two statutes, the conclusions that could be drawn about the reach and interpretation of the respective provisions would be limited.  In Connecticut National Bank v. Germain, 503 U.S. 249 (1992), respondent made a similar argument to that made by HomEq here – that there was substantial overlap between the jurisdiction conferred by two federal statutes (28 U.S.C. §158 and 28 U.S.C. §1292), and that if they each covered the same situations, that "would render §158 superfluous." Id. at 252.  According to the respondent, because Congress would not

3

enact two statutes with the same coverage, "by negative implication", one statute must limit the reach of the other.

In rejecting this argument, the Supreme Court stated that "redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." Connecticut National Bank , 503 U.S. at 253.

Finally, even if the proposed statute could be used as a means of interpreting the reach of the OCSPA, the proposal provides substantial support for the proposition that current members of the Ohio House believe that mortgage servicers are encompassed within the OCSPA.  In fact, in stating that violations by mortgage servicers of the proposed new law would also constitute violations of the OCSPA, but failing to amend the OCSPA to explicitly include mortgage servicers, the proposed statute offers compelling proof that the Ohio General Assembly believes that mortgage servicers are already covered by the OCSPA.  Moreover, the proposed statute also explicitly states its requirements "are in addition to any other requirement set forth in federal or *state law regulating the conduct of collection activities*…", (See §1323.36(b) (emphasis added)), again strongly suggesting the Ohio House's conclusion that mortgage servicers are subject to existing laws regulating debt collection activities.

As HomEq admits, the OCSPA applies to "transactions in connection with residential mortgages" between nonbank mortgage lenders like WMC Mortgage (§1345.01(A))  Moreover, under the OCSPA, no "supplier" subject to the statute can commit "an unfair or deceptive act or practice in connection with a consumer

4

transaction", irrespective of whether the unfair or deceptive act or practice "occurs before, during or *after the transaction.*" (§1345.02(A) (emphasis added))

As the Sixth Circuit has found, "the collection of debts associated with consumer transactions … falls within the purview of the OCSPA because such debt collection covers acts that occur before, during, or after the transaction." Schroyer v. Frankel, 197 F.3d 1170, 1177 (6th Cir. 1999) In fact, courts have regularly found that debt collection activity which is virtually identical to that alleged against HomEq and the other defendants here violates the OCSPA. For instance, in Foster v. DBS Collection Agency, 463 F.Supp.2d 783 (S.D. Ohio 2006), the Court found that the defendants violated the FDCPA and the OCSPA by engaging in the following conduct:

- Defendant "commenced and maintained debt collection lawsuits in state court against the class members, even though they did not have the legal capacity to sue." (463 F. Supp.2d at 802, 809)

- Defendant requested attorneys fees "even though such fees are not recoverable under Ohio law" (463 F. Supp.2d at 802, 809)

- defendant filed lawsuits in its own name before there had been a "valid assignment of the debt from the original creditor"; (463 F. Supp.2d at 804, 809)

- Defendant "demanded payment for costs, fees and interest" in the Complaint even though it did not have legal capacity to initiate the action because the debt had not been validly assigned. (463 F. Supp.2d at 805, 809)[1]

---

[1] See also, Delawder v. Platinum Financial (#10002438 in the Ohio Attorney General Public Inspection File ("Ohio PIF") (S.D. Ohio 2006) (finding that party violates the OCSPA by filing a "deceptive lawsuit to collect a debt"); Hartman v. Asset Acceptance, (PIF # 10002329) (S.D. Ohio 2005) (filing affidavit containing false information in state court collection proceeding violates OCSPA); Gallo v. Nero Auto Lease (PIF #10001812), (8th DCA 1999) (obtaining a default judgment against debtor based on improper service of process constitutes a deceptive act in violation of the OCSPA); Taylor v. Luper, (Ohio PIF #10001811) (S.D. Ohio 1999) (denying summary judgment on claim that creditor violated OCSPA by improperly attempting to recover attorneys fees in state court proceeding); State of Ohio v. Livingwell, Inc., 88 CV 107069 (Franklin Co. Ct. of Common Pleas) (Consent Judgment) (notifying a debtor that he will be liable for additional attorneys fees when that is not the case violates the OCSPA); Toni Bennett v. Tri-

As the R&R found, the Ohio Supreme Court has held that "Ohio's Consumer Sales Practices Act is a remedial law designed to provide various civil remedies to aggrieved consumers and <u>must be liberally construed.</u> (R&R, p. 11, <u>citing</u> <u>Celebrezze v. Hughes</u>, 569 N.E.2d 1059, 1062 (Ohio 1991) (emphasis added) Given this, cases holding that the OCSPA does apply to mortgage servicers, <u>Dowling v. Litton Loan Servicing, L.P.</u>, 2006 WL 3498292 (S.D. Ohio 2006), and the position of the Ohio Attorney General as set forth in its *amicus* brief, the magistrate correctly denied Barclay/HomEq's motion to dismiss the OCSPA claim.

<u>**Point II**</u>
<u>**THE R&R CORRECTLY FOUND THAT KLINE PLED A VALID CLAIM FOR UNJUST ENRICHMENT AGAINST HOMEQ**</u>

Barclay/HomEq also alleges that the R&R incorrectly found that Kline alleged a valid claim for unjust enrichment under Ohio law. As the R&R acknowledged, Kline has alleged that:

- "Upon information and belief, Barclays/HomEq was the direct recipient of some of the fees and expenses passed on to Kline by the defendants in this action." (Amended Complaint, ¶159)

The R&R found this allegation adequate at this initial juncture, holding that "for purposes of notice pleading, Plaintiff Kline should not be required to identify in his complaint precisely how any fees improperly collected from him were distributed among the various defendants" because that information "lies within the defendants' exclusive knowledge and control." (R&R, p. 15)

---

<u>State Collection Service, et. al.</u>, Case No. 940002 (Court of Common Pleas 1976) (finding that collection letter which claimed that attorneys fees would be added to debt and that court costs were also owed violated OCSPA)

Barclays says that the R&R was erroneous in reaching this determination, and that the Complaint must be dismissed unless it can specifically allege which of the disputed fees and expenses was ultimately retained by HomEq.

However, courts have regularly rejected the type of pleading Catch-22 posed by Barclays/HomEq: requiring a plaintiff to specifically allege certain facts when those facts are in the exclusive possession of the defendants. As the Sixth Circuit stated in <u>Michaels,</u> 848 F.2d at 680, the federal pleading rules "do[] not require omniscience" from a plaintiff. In <u>Michaels</u>, plaintiff alleged that it was fraudulently charged an interest rate which was supposed to be at the prime rate, but which was in excess of the rate charged to other preferred customers. In the Complaint, however, plaintiff was unable to identify any customers who were charged a preferred rate, and the district court dismissed their fraud claim on this basis:

> The plaintiffs have failed to meet the specificity requirement of Rule 9(b) as to Counts I and V, which alleged misrepresentations concerning the 'prime rate' used to calculate interest on plaintiffs' loans. …[T]he plaintiffs have been unable to identify any rate, loan or borrower to support their claim that they were charged interest based on a false or artificial prime rate.

848 F.2d at 677.

On appeal, however, the Sixth Circuit reversed, finding that even the heightened pleading requirement of Rule 9(b) should be relaxed where the information which was purportedly lacking in the Complaint was within a defendant's exclusive knowledge:

> [T]he only fact that plaintiffs omit from their complaint are the identities of the borrowers who received sub-prime loans – information which lies in the hands of the defendant. Courts have held that [Rule 9(b)] may be relaxed where information is only within the opposing party's knowledge. Especially in a case in which there has

7

>been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control. . .

848 F.2d at 680.

In the present case, the R&R correctly found that the information regarding which of the defendants ultimately received which of the challenged fees and expenses arising from the debt collection activities relating to Mr. Kline's mortgage is within the defendants' exclusive knowledge and control. As courts have routinely found, "the <u>Twombly</u> plausibility standard . . . does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant." <u>Arista Records v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2009); <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 215 (2d Cir. 2008) (holding that pleading "upon information and belief is appropriate when the information is in the opposing party's possession"); <u>Johnson v. Johnson</u>, 385 F.3d 503, 531 n.19 (5th Cir. 2004) ("information and belief pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant"); <u>Trustees v. Elmhurst Lincoln Mercury</u>, 677 F.Supp.2d 1053, 1055 (N.D. Ill. 2010) (defendants cite no "authority for the proposition that allegations made on information and belief are somehow insufficient or impermissible under Rule 8(a)")

As the Sixth Circuit stated in <u>Michaels</u>, even under the heightened pleading requirements imposed by Rule 9(b):

>It is a principal of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience, rather, the Rule requires that the fraud be pled with enough particularity to put defendants on notice as to

8

> the nature of the claim.  Plaintiffs in this case have met that requirement.

848 F.2d at 680.  See also Ferron v. Metareward, Inc., 2010 U.S. Dist. Lexis 26031, *23 (S.D. Ohio 2010) (holding that the federal rule's pleading standards are relaxed where the information lacking from the Complaint is "within the opposing party's knowledge")

## CONCLUSION

Wherefore, plaintiff respectfully requests that Barclays/HomEq's Objections to the Magistrate Ovington's R&R be denied in all respects.

March 16, 2011

    /s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiffs*