IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


EUGENE KLINE, et al.,                          :

        Plaintiffs,                         :

                        Case No. 3:08cv408

        vs.                                :

                        JUDGE WALTER HERBERT RICE

MORTGAGE ELECTRONIC SECURITY           :
SYSTEMS, et al.,                                :

        Defendants.                         :

_____

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION TO ALTER
OR TO AMEND JUDGMENT (DOC. #265), TREATED AS A MOTION
FOR RECONSIDERATION UNDER FED. R. CIV. P. 54(b); PLAINTIFF
EUGENE KLINE'S CLAIMS UNDER THE FDCPA AGAINST
DEFENDANTS LERNER, SAMPSON AND ROTHFUSS AND REIMER,
LORBER AND ARNOVITZ REINSTATED

_____

In this putative class action, a number of individuals, including Plaintiff

Eugene Kline ("Kline"), have set forth claims under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692a, et seq.; the Truth in Lending Act

("TILA"), 15 U.S.C. §§ 1601, et seq.; and the Ohio Consumer Sales Practices Act

("OCSPA"), Ohio Revised Code § 1345.01, et seq.; as well as for breach of

contract and unjust enrichment under the common law of Ohio.  See Doc. #1 at

¶ 2.  In their Complaint, the Plaintiffs have named eleven Defendants, including

Defendants Lerner, Sampson and Rothfuss ("LS&R") and Reimer, Lorber and

Arnovitz (RL&A).  Of particular present importance, Plaintiffs alleged that LS&R and RL&A had violated Kline's rights under the FDCPA, by requesting the payment of attorney's fees from Kline's counsel in his (Kline's) bankruptcy proceedings.

LS&R and RL&A filed motions, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, requesting that this Court dismiss that claim from Plaintiffs' Complaint against them for failure to state a claim upon which relief can be granted.  See Docs. ##18 and 35, respectively.  This Court referred those motions to United States Magistrate Judge Sharon Ovington for Reports and Recommendations.  Judge Ovington submitted such judicial filings, recommending that this Court sustain LS&R's motion (see Doc. #106) and that submitted by RL&A (see Doc. #125).  Plaintiffs filed Objections thereto.  See Docs. #110 and 126, respectively.  In its Decisions of September 21, 2009 (Doc. #116) and March 22, 2010 (Doc. #150), the Court overruled in pertinent part Plaintiffs' Objections, concluding that correspondence from a debt collector/attorney to counsel representing a debtor are not subject to the FDCPA.[1]  Therefore, the Court ruled that LS&R's and RL&A's communications with Kline's attorney, in which LS&R and RL&A had requested that Kline pay the attorney's fees their clients had incurred, did not violate the FDCPA.

Plaintiff sought reconsideration of the Court's Decision of September 21, 2009 (Doc. #106).  See Doc. #123.  In its Decision of September 28, 2010 (Doc. #214), this Court overruled the Plaintiff's motion in part and overruled said motion without prejudice to in part, writing:

---

[1]Attorneys are generally subject to the FDCPA.  Heintz v. Jenkins, 514 U.S. 291, 292 (1995).

Next, Plaintiffs argue that there are a number of Ohio state court decisions, which indicate that Jones' and the Rosses' class action allegations are viable. This Court overrules this branch Plaintiffs' motion, without prejudice to renewal. There is a more fundamental problem with the Court's ruling in that regard. A little more than six months after this Court had entered its Decision (Doc. #116), the United States Supreme Court, in <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, — U.S. —, 130 S.Ct. 1431 (2010), held that whether a class action, based on state law claims, may be certified in federal court is dependent upon Rule 23 of the Federal Rules of Civil Procedure, rather than state law limitations on the availability of class actions. Accordingly, the Court overrules, without prejudice to renewal, this branch of Plaintiffs' Motion for Reconsideration (Doc. #123). If Plaintiffs are to renew this branch of their motion, they must do so within 20 days and focus on the applicability of <u>Shady Grove</u> to this litigation.

Doc. #214 at 4 (footnote omitted).

Plaintiffs renewed their request for reconsideration, which, although mentioning <u>Shady Grove,</u> focused on Plaintiffs' disagreement with the Court over its interpretation of the FDCPA. <u>See</u> Doc. #216. In its Decision of August 30, 2011 (Doc. #262), this Court overruled that motion.

This case is once again before the Court on Plaintiffs' Motion to Alter or to Amend Judgment (Doc. #265). As an initial matter, the Plaintiffs have moved under Rules 59(e) and 60 of the Federal Rules of Civil Procedure. However, since a judgment has not been entered in this litigation, those Rules are inapplicable. Rather, the Court looks to Rule 54(b) of the Federal Rules of Civil Procedure, which provides:[2]

> <u>(b) Judgment on Multiple Claims or Involving Multiple Parties</u>. When an action presents more than one claim for relief--whether as a claim, counterclaim, cross claim, or third-party claim--or when multiple parties are

―――――――――――――――

[2]Since Rules 59(e) and 60 are not controlling, this Court rejects the arguments of LS&R and RL&A that Plaintiff has failed to comply with those provisions of the Federal Rules of Civil Procedure.

involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  <u>Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.</u>

(emphasis added).  <u>See</u> <u>Rodriguez v. Tennessee Laborers Health & Welfare Fund</u>, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (noting that Rule 54(b) authorizes District Courts "to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment").  Since this Court has not adjudicated all of the Government's claims, its request for reconsideration is governed by the above emphasized sentence of Rule 54(b).

In <u>Westside Mothers v. Olszewski</u>, 454 F.3d 532 (6th Cir. 2006), the court discussed the instances in which it is permissible for a court to reconsider one of its earlier decisions.

> The law of the case doctrine precludes reconsideration of a previously decided issue unless one of three "exceptional circumstances" exists: (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.  <u>Hanover Ins. Co.</u> [<u>v. Am. Engineering Co.</u>, 105 F.3d 306, 312 (6th Cir. 1997)].

<u>Id.</u> at 538.  <u>Accord</u> <u>Louisville/Jefferson County Metro Government v. Hotels.com, L.P.</u>, 590 F.3d 381, 389 (6th Cir. 2009); <u>United States v. Haynes</u>, 468 F.3d 422, 426 (6th Cir. 2006).

Herein, the Plaintiffs do not argue that there is new evidence.  They do, however, cite what they believe is a contrary view of the law by controlling authority, to wit: the Consumer Financial Protection Bureau ("Bureau") and the

- 4 -

Federal Trade Commission ("FTC").[3]  In response to a request by the Supreme

Court, on an appeal from the Third Circuit, in <u>Fein, Such, Kahn and Shepard v.</u>

<u>Allen</u>, Case No. 10-1417, <u>cert</u>. <u>denied</u>, 132 S.Ct. 1141 (2012),[4] the Solicitor

General submitted an <u>amicus curiae</u> Brief,[5] setting forth the views of the United

States in a case in which the question presented was whether communications

from debt collectors are categorically excluded from the coverage of the FDCPA.

See <u>Fein, Such, Kahn and Shepard v. Allen</u>, 132 S.Ct. 82 (2011).

     The Solicitor General recommended that the Supreme Court deny the request

for review before that Court, arguing, <u>inter alia</u>, in favor of the interpretation of the

----

[3]Under 15 U.S.C. § 1692*l*(a), the FTC has authority to enforce compliance with the FDCPA, while 15 U.S.C. § 1692*l*(d) authorizes the Bureau to "prescribe rules with respect to the collection of debts by debt collectors."  The Bureau also possesses the authority to issue advisory opinions concerning the FDCPA.  15 U.S.C. § 1692k.

[4]Therein, the plaintiff, who had gone through foreclosure proceedings, brought a putative class action suit against, <u>inter alia</u>, the law firm that had represented her mortgagee.  The plaintiff alleged that the law firm had violated 15 U.S.C. § 1692f(1), which prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," by writing in letters to her counsel indicating that she owed an amount of attorney's fees that was not authorized by the agreement creating the debt, or permitted by law.  Based upon the expansive definition of "communication" in the FDCPA, which includes indirect communications with a debtor, and because that statute did not expressly exclude communications from a creditor's counsel to the attorney representing a debtor from its coverage (<u>see</u> 15 U.S.C. § 1692a(2)), the Third Circuit concluded that such communications were not exempted from the prohibitions set forth in the FDCPA.  <u>Allen ex rel. Martin v. LaSalle Bank, N.A.</u>, 629 F.3d 364 (3rd Cir. 2011), <u>cert</u>. <u>denied</u>, 132 S.Ct. 1141 (2012).

[5]That brief was signed by counsel for the Board and the FTC, as well as by attorneys in the Solicitor General's Office and the Justice Department.  For sake of convenience, the Court refers to the brief as having been filed by the Solicitor General.

FDCPA adopted by the Third Circuit that attorney to attorney communications were not precluded by the statute.  In particular, the Solicitor General, speaking on behalf of the two federal agencies charged with interpreting the FDCPA, stressed the broad interpretation of "communication" set forth in that statute and the absence of a provision in § 1692(f)(1), expressly excluding attorney to attorney communications from the coverage of that statutory subsection.  In addition, the Solicitor General pointed out that, when Congress wanted to exclude communications from an attorney/debt collector to counsel for a debtor, it was capable of doing so.  For instance, under 15 U.S.C. § 1692c(b), a debt collector may not communicate with third parties in connection with the collection of a debt.  An exception is made for communications with an attorney for the either the debtor or the creditor.  In addition, the FDCPA requires that all communications with a debtor represented by counsel be conducted through that attorney.  15 U.S.C. § 1692b(6).

According to Plaintiffs, the amicus curiae brief filed by the Solicitor General qualifies under the oft-stated rule of the Supreme Court that courts should give deference to statutory interpretations by governmental agencies charged with construing those statutes.  See e.g., Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 844 (1984) (establishing that "considerable weight should be accorded an executive department's construction of a statutory scheme it is entrusted to administer").  Plaintiffs argue that the Supreme Court extended the Chevron rule in Chase Bank USA, N.A. v. McCoy, — U.S. —, 131 S.Ct. 871 (2011), to amicus curiae briefs filed by such agencies.  In McCoy, the Supreme Court was called upon to construe Regulation Z, a rule promulgated by the Board of

Governors of the Federal Reserve System ("Board") in accordance with its authority under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.  In particular, that appeal revolved around the question of whether a credit card company was required to give advance notice of an interest rate increase, due to the cardholder's default, when the credit card agreement permitted such an increase.[6]  The Supreme Court permitted the Board to participate in that appeal as an amicus curiae.  A number of years before that case was considered by the Supreme Court, the Board began to promulgate revisions to Regulation Z, which it subsequently adopted.  However, the amended version of that regulatory provision did not apply to that litigation, because the amendment did not become effective until after the events giving rise to that litigation had occurred.  The revised version required credit card companies to give 45 days notice of changes to an interest rate due to a cardholder's default, even if the credit card agreement permitted same.[7]

A divided panel of the Ninth Circuit held that Regulation Z requires a credit card company to give advance notice to a cardholder before raising the interest rate on the credit card due to the cardholder's default, even though the agreement permitted the credit card company to raise rates under those circumstances.  Upon further review, the Supreme Court initially concluded that the pertinent part of Regulation Z, the unrevised version, was unclear as to whether the failure to give

---

[6]Therein, acting in accordance with authority grated to it by the parties' credit card agreement, Chase raised the interest rates on McCoy's credit card, after he had failed to make a minimum payment.

[7]Subsequently, Congress passed legislation, which amended the TILA to confirm the Board's revision of Regulation Z.  See  15 U.S.C. § 1637(i).

notice of an increase of an interest rate under those conditions constituted a violation.  The Supreme Court then noted that the Board had made it clear in the amicus brief it had submitted that it did not believe that Chase had violated Regulation Z by failing to provide advance notice of the rate increase, noting that "we defer to an agency's interpretation of its own regulation, advanced in a legal brief, unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'"  — U.S. at —, 131 S.Ct. at 870 (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997).  Concluding that the position put forward by the Board in its brief was not clearly erroneous or inconsistent with Regulation Z and that "there is no reason to believe that the interpretation advanced by the Board is a 'post hoc rationalization' taken as a litigation position," the McCoy Court held that the Board's interpretation of Regulation Z was not clearly erroneous, even though it may not have been the best interpretation.  Id. at 871.[8]

In response, LS&R and RL&A argue that this Court should overrule the Plaintiffs' motion, because the interpretation of the FDCPA put forward by the Bureau and the FTC in the amicus brief is not worthy of deference.  In particular, RL&A points out that the Bureau and the FTC in the amicus brief were not interpreting a statute.  Thus, the question becomes whether the McCoy Court based its holding on the fact that, in its amicus brief, the Board was proposing an

---

[8]The Supreme Court also held that the revision of Regulation Z, to explicitly require notice before the type of interest rate increase imposed by Chase, did not render the interpretation adopted by the Board in its amicus curiae brief clearly erroneous, even though that revision had been affirmed by Congress, because the actions of the Board and Congress, many years after the adoption of the version of Regulation Z at issue therein, could not alter the meaning of the unrevised version.  Therefore, this Court rejects the position of LS&R that the McCoy Court predicated its conclusion on the fact that Congress had subsequently amended the TILA in that regard.

interpretation of a regulation, rather than a statute, such as the situation at Bar.
Not surprisingly, the <u>McCoy</u> Court did refer to interpretations of regulations by
agencies, since that decision arose out an agency's interpretation of its regulation.
Moreover, there is nothing in that decision limiting its rationale to instances where
an agency interprets its own regulations, and that rationale is equally applicable to
instances where an agency construes a statute which it is charged with enforcing.
It bears emphasis that the decision which established the rule that courts must
defer to agency's interpretations, <u>Chevron</u>, <u>supra</u>, arose out of the agency's
interpretation of the statute it was enforcing, rather than the construction of one of
its regulations.

The only limitations the <u>McCoy</u> Court put on its holding were that the
agency's construction be neither clearly erroneous nor a <u>post hoc</u> rationalization.
Based upon its discussion of the interpretation of the FDCPA proposed by the
Bureau and the FTC in <u>Allen</u>, set forth above (in particular, the FDCPA's broad
definition of communication and the absence of an express exclusion from liability
arising out of attorney to attorney communications under circumstances such as
those giving rise to Klein's claims herein), this Court concludes that said
interpretation was not clearly erroneous.  In addition, since the Bureau and the FTC
were responding to the Supreme Court's invitation to file an <u>amicus</u> brief in a
dispute in which neither was involved, there is no hint that the reasoning set forth
in that brief was a <u>post hoc</u> rationalization, adopted to get an advantage in a
lawsuit.

Based upon the foregoing, the Court sustains Plaintiffs' Motion to Alter or to
Amend Judgment (Doc. #265), treated as a Motion for Reconsideration under Fed.

R. Civ. P. 54(b).  As a consequence, Kline's claims under the FDCPA against LS&R
and RL&A are reinstated.


April 19, 2012

                      WALTER HERBERT RICE, JUDGE
                    UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record.