IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,                    :

        Plaintiffs,

    v.                                             Case No. 3:08cv408
                         :
MORTGAGE ELECTRONIC                      JUDGE WALTER H. RICE
SECURITY SYSTEMS, et al.,
                         :
        Defendants.

---

DECISION AND ENTRY CLARIFYING THE COURT'S DECISION AND
ENTRY OF APRIL 19, 2012 (DOC. #271); PLAINTIFF EUGENE
KLINE'S FDCPA CLAIMS AGAINST DEFENDANT LERNER, SAMPSON
& ROTHFUSS REINSTATED ONLY AS TO SAID PLAINTIFF'S CLAIM
UNDER 15 U.S.C. § 1692f(1);  STATE LAW CLAIMS FOR UNJUST
ENRICHMENT AND VIOLATION OF THE OHIO CONSUMER SALES
PRACTICES ACT OF SAID PLAINTIFF AGAINST SAID DEFENDANT
REINSTATED; DEFENDANT LERNER, SAMPSON & ROTHFUSS'
MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PLAINTIFF
KLINE'S CLAIMS (DOC. #277) OVERRULED; DEFENDANT LERNER,
SAMPSON & ROTHFUSS' MOTION TO STAY DISCOVERY AND TO
EXTEND DEADLINES PENDING A DECISION ON MOTION FOR
JUDGMENT ON THE PLEADINGS (DOC. #278) OVERRULED AS
MOOT.

---

In this putative class action, a number of individuals, including Plaintiff

Eugene Kline ("Kline"), set forth claims against eleven defendants, including

Defendants Lerner, Sampson & Rothfuss ("LS&R"), seeking monetary damages and

injunctive relief based on claims under the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692e, 1692f(1); the Truth in Lending Act ("TILA"), 15

U.S.C. § 1666d; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised

Code § 1345.01; and claims for unjust enrichment and breach of contract under the common law of Ohio. Plaintiffs' claims arise out of alleged misconduct in mortgage servicing, misrepresentation in foreclosure filings, and the charging and collecting of improper and excessive fees from borrowers. The Court's jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

The following motions are pending before the Court pertaining to the claims set forth by Kline against LS&R: 1) LS&R's Motion for Judgment on the Pleadings as to Plaintiff Kline's Claims against it under Federal Rule of Civil Procedure 12(c) (Doc. #277); and 2) LS&R's Motion to Stay Discovery and to Extend Deadlines Pending Decision on Motion for Judgment on the Pleadings (Doc. #278).

For the reasons set forth below, the Court OVERRULES LS&R's Motion for Judgment on the Pleadings and OVERRULES AS MOOT LS&R'S Motion to Stay Discovery. In addition, the Court clarifies that its Decision and Entry of April 19, 2012 (Doc. #271), reinstated only Kline's claims arising under 15 U.S.C. § 1692f(1). Furthermore, the Court reinstates Kline's state law claims of unjust enrichment and for violations of the OCSPA.

## I.  <u>PROCEDURAL HISTORY</u>

Kline and his co-plaintiffs brought this putative class action on November 10, 2008, against eleven defendants, including LS&R. Doc. #1. On February 2, 2009, LS&R filed, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

2

Motion to Dismiss all of Kline's claims against it for failure to state a claim upon which relief can be granted. Doc. #18. The Court referred that and other pending motions filed by other Defendants to United States Magistrate Judge Sharon Ovington for Report and Recommendations. Judge Ovington's Report recommended that LS&R's motion be granted in its entirety (Doc. #106), whereupon Plaintiffs filed Objections to those Recommendations (Doc. #110).

In its Decision and Entry of September 21, 2009, the Court overruled the Plaintiff's Objections to Judge Ovington's Report and Recommendations and dismissed Kline's FDCPA claims against LS&R. Doc. #116. The Court also dismissed, without prejudice, Kline's claims of unjust enrichment and violations of the OCSPA, declining to exercise supplemental jurisdiction over them in the absence of a viable federal claim. *Id*. at 10. In addition, the Court dismissed Kline's breach of contract claim with prejudice, as the Court deemed it abandoned due to Kline's failure to defend it in his response to LS&R's motion. *Id*. at 7-8.

On April 14, 2010, the Plaintiffs filed their First Amended Complaint. Doc. #157. The First Amended Complaint purported to restate all of Kline's dismissed claims against LS&R. This appears to have been a drafting error, however, as Kline and LS&R filed a Stipulation Regarding Amended Complaint shortly thereafter, Doc. #171, in which the parties recognized the Court's previous dismissal of Kline's claims against LS&R, and stipulated that the First Amended Complaint contained no new or amended allegations against LS&R. *Id*. LS&R filed an Amended Answer on May 5, 2010. Doc. #172.

3

Nevertheless, on multiple occasions, Kline moved the Court for reconsideration of its interpretation of the FDCPA and its consequent dismissal of his claims under that statute against LS&R. Docs. #123, #216, and #265. The Court overruled Kline's first two motions. Docs. #214 and #262. Kline's February 2, 2012, motion requesting reconsideration (Doc. #265) was sustained, however, in the Court's Decision and Entry of April 19, 2012 (Doc. #271). In that Decision and Entry, the Court reinstated Kline's FCDPA claims under 15 U.S.C. § 1692f(1) against LS&R and Defendant Reimer, Lorber, & Arnovitz Co., LPA ("RL&A"). Doc. #271.

On June 19, 2012, LS&R filed a Motion for Judgment on the Pleadings as to Plaintiff Kline's Claims against it pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Doc. #277. Kline filed a Response in Opposition to LS&R's motion (Doc. #283), which was followed by LS&R's Reply to Kline's Response (Doc. #288).

In addition, LS&R filed a Motion to Stay Discovery Pending Decision on Motion for Judgment on the Pleadings on June 20, 2012. Doc. #278. Kline filed a Response in Opposition to that motion on July 19, 2012 (Doc. #284) to which LS&R filed its reply on August 16, 2012 (Doc. #289).

## II.   **FACTUAL BACKGROUND**

In their Complaint, Plaintiffs allege that, in or about June, 2004, Kline entered into a $160,000 loan transaction with WMC Mortgage Corporation

4

("WMC"). Doc. #1 ¶ 27. After Kline fell behind on the payments and defaulted on the loan, RL&A commenced foreclosure proceedings against him in August 2005, on behalf of WMC and the loan servicer, HomEq Servicing Corporation ("HomEq"). *Id*. ¶¶ 28-31. The mortgage was later reinstated and the foreclosure proceeding against Kline was subsequently dismissed. *Id*. ¶ 32.

By December of 2006, Kline had again fallen behind on the loan payments, and HomEq notified him that he faced further foreclosure proceedings if he failed to bring the loan current. *Id*. ¶ 33. Another foreclosure action was filed against Kline on March 16, 2007, again with RL&A as counsel, but this time with "Wells Fargo Bank, N.A., as Trustee" ("Wells Fargo") named as the plaintiff. *Id*. ¶¶ 33-34. During the second foreclosure proceedings, Kline decided to sell his home and to pay off the loans it secured. *Id*. ¶ 43.

In addition to the loan alleged to be held by Wells Fargo, Kline's home secured a second mortgage "held by defendant Mortgage Electronic Registrations Systems, as nominee for defendant WMC Mortgage," with HomEq as its loan servicer. *Id*. ¶ 64. LS&R represented Mortgage Electronic Registration Systems, Inc. ("MERS"), and filed an answer on its behalf in the action. Doc. #277-2; Doc. #1 at 66. In November of 2007, having decided to sell his home, Kline contacted LS&R to request a "formal payoff quote" in order to pay off the second mortgage. Doc. #1 ¶ 65. On November 14, 2007, LS&R responded to Kline's request with a figure that included $225 in "Previous Service Costs" and $350 in "Attorney

5

Costs." *Id.* ¶ 66. On November 18, 2007, Kline sold his home and paid off his loans. *Id.* ¶¶ 67-68.

On December 19, 2007, Kline requested in writing "an itemization of the 'Attorney Costs' and 'Previous Service Costs'" mentioned in the payoff quote. *Id.* ¶ 68. LS&R responded to the itemization request in a February 19, 2008, letter. *Id.* ¶ 70. Therein, LS&R stated that the attorney costs were "incurred by my client in the protection of its security/mortgage as provided in paragraph 7 of the mortgage" when it was named as a defendant in Wells Fargo's lawsuit against Kline. Doc #18-5. The letter described the legal work undertaken as follows: "My office reviewed all pleadings and correspondence (including the complaint, answers, motion for summary judgment and opposition), prepared and filed the answer, and attended the telephone pretrial." *Id.*

Kline alleges that attorney fees "incurred by a lender in foreclosure" are illegal under Ohio law, and that LS&R and its clients routinely collect and attempt to collect such illegal fees. Doc. #1 ¶¶ 71-72. In addition, Kline alleges that the $225.00 in "Previous Service Costs" was also not recoverable under the law. *Id.* ¶¶ 73-74. Those costs were described in the February 19, 2008, letter as paid to 3 Arch Trustee Services for "the servicing of the loan and the monitoring of the lawsuit with services that included obtaining local counsel, production of necessary documents and loan information, and billing of invoices." Doc #18-5. Kline alleges that the fees paid to 3 Arch Trustee Services constituted "fees for legal-

6

type services," unrecoverable overhead expenses, and an "impermissible sharing of legal fees" and were therefore improper under the law.  Doc. #1 ¶¶ 74-77.

Plaintiffs contend that the foregoing actions by RL&A violated the FDCPA (*Id*. ¶¶ 126-132), as well as the OCSPA, and give rise to a claim for unjust enrichment under state law (*Id*. ¶¶ 141-161).

## III.    THE APRIL 19, 2012, DECISION AND ENTRY (DOC. #271) SUSTAINING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT

As an initial matter, the Court must clarify two points about its April 19, 2012, Decision and Entry Sustaining Plaintiffs' Motion to Alter or Amend Judgment (Doc #271).

First, although the Decision and Entry referred generally to "Kline's claims under the FDCPA against LS&R and RL&A," (Doc. #271 at 1, 10), the effect of that order was only reinstatement of Kline's FCDPA claims under 15 U.S.C. § 1692f(1) against those defendants.  The Court did not reinstate Kline's claim under 15 U.S.C. § 1692e.  The Court's reasoning, in granting reinstatement of the claim under Section 1692f(1), relied upon the controlling authority of an agency interpretation of the FDCPA put forth in a December 23, 2011, *amicus curiae* brief requested by the United States Supreme Court in *Fein, Such, Kahn and Shepard PC v. Allen*, Case No. 10-1417, *cert. denied*, 132 S.Ct. 1141 (2012).  In the brief submitted by the Solicitor General, the interpretation of 15 U.S.C. § 1692f(1) set forth by the Consumer Financial Protection Bureau and the Federal Trade

Commission allowed for violations arising from communications made from a debt collector to a consumer's attorney. Brief for the United States as Amicus Curiae at *8-9, *Fein*, 132 S. Ct. 1141 (2012), 2011 WL 6780149.[1] Because such communications formed the basis for some of Kline's original claims, this Court reinstated Kline's claims against RL&A and LS&R brought under Section 1692f(1) of FDCPA. Doc. #271. However, the agencies' analysis of the FDCPA in the *amicus* brief and the Third Circuit Court of Appeals opinion it supported were confined to Section 1692f(1). *See* Brief for the United States as Amicus Curiae at *15, *Fein*, 132 S. Ct. 1141 (2012), 2011 WL 6780149 (noting that the Third Circuit "did not announce a rule that governs all provisions of the FDCPA, but instead confined its analysis to Section 1692f(1)"). Accordingly, as controlling law, it could only support the Court's reinstatement of Kline's claim under Section 1692f(1). The authority did not affect nor provide the basis for reinstatement of Kline's dismissed claim under Section 1692e, and that claim was therefore not a subject of the Court's order.

Second, the Decision and Entry inadvertently did not reinstate Kline's state law claims of unjust enrichment and violations of the OCSPA against LS&R. *See* Doc. #1 ¶¶ 137-144 (setting forth Plaintiffs' state law claims). The Court had previously dismissed both state law claims when it originally dismissed Kline's

_____

[1] Under *Chase Bank USA, N.A. v. McCoy*, 131 S. Ct. 871 (2011), an agency's interpretation of its own regulation advanced in an *amicus* brief warrants the traditional deference afforded by *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).

FDCPA claims, declining to exercise supplemental jurisdiction over them in the absence of a viable federal claim. Doc. #116 at 10-11; *see* 28 U.S.C. § 1367(c)(3). Kline's motion requesting reinstatement of his FDCPA claim <u>did</u> request the reinstatement of his state law claims, as well. Doc. #265 at 6.

The Court's original jurisdiction over Kline's federal claim under 15 U.S.C. § 1692f(1) allows for supplemental jurisdiction over his state law claims under 28 U.S.C. § 1367(a). Having reinstated his FDCPA claim under 15 U.S.C. § 1692f(1), the Court reinstates Kline's state law claims of unjust enrichment and violations of the OCSPA.

The Court does not reinstate Kline's breach of contract claim, which it dismissed with prejudice after Kline failed to defend it in his response to LS&R's original motion to dismiss his claims. Doc. #116 at 7-8.

## IV. LS&R'S MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(C)

LS&R has filed a Motion for Judgment on the Pleadings as to Plaintiff Kline's Claims, pursuant to Federal Rule of Civil Procedure 12(c). Doc. #277. Therein, LS&R argues that Kline's claims are not valid under the FDCPA, because 1) they fall under the holding of *Grdn v. Leiken Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), and 2) any fees charged to Kline were specifically authorized by the mortgage agreement and Ohio law. In response, Kline argues that *Grdn* is inapplicable to his claims, and that neither the agreement nor Ohio law permits the fees he was charged. Doc. #283. After an explanation of the standard of review

9

employed for a motion for judgment on the pleadings filed under Rule 12(c), the Court will address LS&R's arguments in turn.

### A.    *Standard of Review*

A party may move for judgment on the pleadings at any time after the pleadings have closed but not so that trial is delayed.  Fed.R.Civ.P. 12(c).  The standard of review for a motion on the pleadings under Rule 12(c) is the same as the standard of review for a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

A complaint need not set down in detail all the particularities of a plaintiff's claim.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  *See also Bell Atlantic*

10

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "[a] formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Iqbal*, 556 US. at 678-79. The factual allegations must show more than a possibility that the defendant acted unlawfully. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). In addition to the facts and allegations stated in the complaint, "matters of public records, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account" when ruling on a motion brought under Rule 12(c). *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

However, if "matters outside the pleadings are presented to and not excluded by the court," Rule 12(d) of the Federal Rules of Civil Procedure mandates that "the motion must be treated as a one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Certain matters, including exhibits attached to the complaint and public records may be examined without converting

the motion to one for summary judgment "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Here, LS&R has attached to its Motion for Judgment on the Pleadings (Doc. #277) the following three exhibits: Exhibit A, a copy of the original complaint filed against Kline in the Court of Common Pleas of Montgomery County, Ohio (Doc. #277-1); Exhibit B, a copy of the answer filed by LS&R in that action on behalf of MERS (Doc. #277-2); and Exhibit C, a copy of the mortgage executed by Kline and his wife on June 16, 2004 (Doc. #277-3). Exhibits A and B form part of the public record and the Court may, therefore, take judicial notice of these documents, without converting LS&R's motion for judgment on the pleadings into a motion for summary judgment under Rule 56.

Likewise, the Court may examine Exhibit C without conversion. The mortgage is referred to in the complaint and is central to Kline's claim under 15 U.S.C. § 1692f(1) that the fees he was charged were not authorized by the mortgage nor by applicable law. Kline's Brief in Opposition to LS&R's motion raises no objection to these exhibits, and, indeed, refers to them repeatedly. Doc. #283 at 2, 3, 12 & 16. The Court may also examine the February 19, 2008. letter from LS&R to Kline that LS&R attached to its original Motion to Dismiss filed on February 2, 2009 (Doc #18-5), as the letter is referenced in the Complaint (Doc #1 ¶ 70) and is central to Kline's claims.

12

**B.** *Kline's FDCPA Claim Under 15 U.S.C. § 1692f(1)*

Congress enacted the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices" in the wake of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a), (e). As stated previously in Part III.A., *supra*, the Court's reinstatement of Kline's claim under the FDCPA arises only under 15 U.S.C. § 1692f(1). That provision states the following:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Only "debts" and "debt collectors" according to the statutory definition are subject to the FDCPA. 15 U.S.C. § 1692a(5), (6). Under the statute, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction," the subject of which is "primarily for personal, family, or household" use." *Id.* § 1692a(5). A loan obligation secured by a home mortgage falls within this definition. *E.g.*, *Reese v. Ellis, Painter, Ratterree & Adams LLP*, 678 F.3d 1211 (11th Cir. 2012) (stating that the FDCPA definition of debt "clearly encompasses payment obligations under [a] promissory note" secured by a mortgage on family home). As of November 15, 2007, Kline owed LS&R's clients $28,858.40 for a loan secured by a second mortgage on his home, and Kline has

13

alleged that this debt is subject to the FDCPA.  Doc. #1 ¶¶ 64-65, ¶ 127.  Kline's

obligation arose from a transaction in which the security interest, the family home,

was entirely for family and household purposes.  The debt was therefore subject to

the FDCPA.

Under the FDCPA, the term "debt collectors" includes "any person who uses

any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the collection of any debts, or who regularly collects

or attempts to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another."  15 U.S.C. § 1692a(6).  It is well-settled that attorneys

engaging routinely in debt collection litigation are subject to the FDCPA.  *Heintz v.*

*Jenkins*, 514 U.S. 291, 299 (1995).  LS&R filed an answer on behalf of MERS in

the foreclosure action on Kline's second mortgage.  Doc #277-2.  LS&R also

responded on behalf of MERS, WMC and HomEq to Kline's payoff inquiries

regarding the debt owed.  Doc. #1 ¶¶ 65-77.  The facts as alleged in the

Complaint are thus sufficient to bring LS&R within the definition of a "debt

collector" under the FDCPA.

The heart of Kline's FDCPA claim under Section 1692f(1), then, concerns

whether LS&R's collection of the debt was 1) expressly authorized by the

agreement that created the debt or 2) permitted by law.  15 U.S.C. § 1692f(1).

The Court will first address LS&R's argument that Kline's claim fails under *Grdn v.*

*Leiken Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), before turning to each

of the aforementioned prongs of Kline's Section 1692f(1) claim.

14

1.    *Kline's FDCPA claim under Section 1692f(1)does not fail under Grdn because its holding only applies to a Section 1692e claim.*

*Grdn v. Leiken Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), concerned two actions by an attorney debt collector giving rise to claims under 15 U.S.C. § 1692e for false, deceptive, or misleading representations.  First, the attorney served the debtor with a purported motion for default judgment along with the complaint.  *Grdn*, 643 F.3d at 171.  Second, an employee of the attorney incorrectly reported the amount owed to the debtor after a telephone inquiry regarding the balance, and then "confirmed" the incorrect amount in writing.  *Id.* The Sixth Circuit held that the debtor stated a valid claim for misrepresentation under 15 U.S.C. § 1692e, and reversed the district court's dismissal for failure to state a claim under Rule 12 (b)(6) of the Federal Rules of Civil Procedure, but only as to the claim that arose from serving of the purported motion for default judgment.  *Id.* at 172.  The Sixth Circuit upheld the dismissal of the claim based on the inaccurate balance statements.  *Id.* at 173.  Those representations were not misleading ones made "in connection with the collection" of the debt, because they "were merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely."  *Id.*  The statements "did not demand any payment or threaten any consequences," and the court found it "decisive" that the attorney only prepared the account statements after the debtor's request.  *Id.*

LS&R points out that it was Kline who initiated contact, seeking a payoff quote, and that the firm merely responded to his request.  Doc. #277 at 8; Doc. 1

15

¶¶ 65-66. Kline also requested an itemization of costs from LS&R, to which the firm responded in writing. Doc. 1 ¶¶ 68-69. LS&R argues that "merely responding to an inquiry from Kline's counsel" qualifies as the type of ministerial response that, under *Grdn*, could not support a Section 1692e FDCPA claim. Doc. #277 at 8.

However, Kline does not have an FDCPA claim under 15 U.S.C. § 1692e. As the Court clarified above, Kline's surviving FDCPA claim arises under 15 U.S.C. § 1692f(1), because the basis for reinstating his claim only pertained to that specific section of the statute. *See supra* Part III. *Grdn*'s analysis was concerned with the possible deceptive or misleading representation contained in a communication from an attorney debt collector, not with the collection itself. *See*, *Grdn*, 643 F.3d at 173 (stating that "[t]he text of § 1692e makes it clear that, to be actionable, a communication need not itself be a collection attempt" but only in connection with one). The holding of *Grdn* is thus inapplicable to Kline's surviving FDCPA claim, which arises under 15 U.S.C. § 1692f(1).

### 2. Were the fees that LS&R collected "expressly authorized" by Kline's mortgage agreement?

Under 15 U.S.C. § 1692f(1), an amount charged to the debtor that is "expressly authorized by the agreement creating the debt" does not violate the FDCPA. Here, the language of the instrument clearly authorizes charging sums to the borrower, including attorney's fees, in order to protect the lender's interest in

16

the event of foreclosure. Paragraph 7 of Kline's second mortgage agreement

states:

> **Protection of Lender's Security.** If Borrower fails to perform the
> covenants and agreements contained in this Mortgage, or if any action
> or proceeding is commenced which materially affects Lender's interest
> in the Property, then Lender, at Lender's option, upon notice to
> Borrower, may make such appearances, disburse such sums, including
> reasonable attorney's fees, and take such action as is necessary to
> protect Lender's interest.
>
> * * * *
>
> Any amounts disbursed by Lender pursuant to this paragraph 7, with
> interest thereon, at the Note rate, shall become additional
> indebtedness of Borrower secured by this Mortgage.

Doc. #277-3 at 3.

This agreement identifies the commencement of "any action or

proceedings... materially affect[ing] Lender's interest in the Property" as a

condition precedent to the lender's authority to accrue expenses to protect its

interest in the property. *Id.* Such expenses include reasonable attorney fees.

Herein, the condition precedent occurred when the state court foreclosure action

was filed. Paragraph 5 of the state court foreclosure complaint specifically

identified LS&R's client, MERS, as having an interest in the property it sought to

foreclose upon. Doc. #277-1. At that point, the language "to take such action as

[was] necessary" authorized MERS to protect its interest in Kline's property by

retaining LS&R to make an appearance and represent it in that action. Doc. #277-

3 at 3.

17

LS&R points to other decisions where the language of the mortgage
agreement expressly authorized fees charged to the debtor, including this Court's
decision in *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880 (S.D. Ohio
2003).[2]  In *Scott,* the plaintiff brought claims under state law and the FDCPA
against the defendant lender, after being charged attorney's fees as part of an
amount owed to reinstate a defaulted loan, as well as several thousand dollars in
attorney's fees during the foreclosure process.  *Id*. at 884.  Like LS&R, the
defendant in *Scott* claimed that the mortgage agreements expressly authorized the
fees and costs charged to the plaintiff.  *Id.* at 890.  The language of the mortgage
agreement in *Scott* and that in the instant case are nearly identical.

As LS&R notes, this Court stated in *Scott* that the "plain language of
paragraph 7 entitles Defendant, as the lender, to incur costs to protect either the
value of the property at issue or its rights thereto" and quoted the following
forceful language from *Majchrowski v. Norwest Mortg., Inc.*, 6 F.Supp.2d 946
(N.D. Ill. 1998):

> When the borrower breaches any covenant in the Security Instrument
> or goes into bankruptcy, this language unequivocally permits the
> lender to take whatever action is necessary to (1) protect the
> mortgaged property's value and (2) the lender's rights in the property.

---

[2] LS&R also cites *Dowling v. Litton Loan Servicing, LP*, No. 2:05-CV-0098, 2007
U.S. Dist. LEXIS 98355 (S.D. Ohio June 4, 2007).  In that case, the Court found
the that mortgage agreement authorized the challenged fees.  After a bench trial,
however, the Court found that the plaintiff failed to meet her burden to prove that
the defendant's actions were improper, and therefore the defendant did not violate
Section 1692f(1).  It is noted that in contrast to a ruling on a motion for judgment
on the pleadings, Judge Marbley's ruling in *Dowling* came after a bench trial with a
fully developed factual record.

> Under these circumstances, the lender has full authority to pay for these actions and then charge them to the borrower. There is no limitation on what the lender may do and pay for except that it must be necessary to protect its rights in or the value of the property. The lender's actions do not, for example, have to be reasonable, economical, or fair to the borrower.

*Scott*, 284 F.Supp.2d at 891 (quoting *Majchrowski*, 6 F.Supp.2d at 966).

LS&R omitted the rest of the Court's analysis of the Paragraph 7 language, however:

> Although numerous courts have acknowledged the broad authority that paragraph 7 grants to the lender to incur costs for the protection of the property and its interests therein, they have further recognized that *those costs may not be charged to the mortgagor unless they were actually incurred for one of those purposes*.

*Scott*, 284 F.Supp.2d at 891 (emphasis added).

The premise of the italicized proposition is that a violation of the FDCPA only occurs if the lender breaches the terms under which it may charge for fees and costs in Paragraph 7. So, for example, attorney fees passed onto the defaulting mortgagor determined to be unreasonable would not be "expressly authorized" by the agreement. Nor would attorney fees not actually incurred be "expressly authorized." Either situation would therefore violate the FDCPA's Section 1692f(1).

This is the gist of Kline's argument in his Brief in Opposition. Doc. #283 at 12-14. Therein, he argues that there is nothing in the record to indicate that he received the notice required in Paragraph 7, that funds were disbursed to the lender's attorney, or that attorney's fees as charged were reasonable. *Id.* Kline

did not allege in his Complaint, however, that he did not receive the notice that Paragraph 7 required. More importantly, whether or not the lender breached the notice provision of the mortgage agreement is irrelevant. Section 1692f(1) focuses solely on whether the *amount* collected "is expressly authorized by the agreement creating the debt or permitted by law," not whether the lender complied with ancillary conditions of the agreement regarding notice.

Thus, the agreement expressly authorized MERS to incur and pass on reasonable attorney fees to Kline. However, LS&R has moved the Court for judgment on the pleadings. To prevail on this motion with regards to the first prong of Section 1692f(1), then, LS&R must show that, based on the pleadings and any matters attached to them, the fees were reasonable as a matter of law. LS&R claims in a footnote that Kline "has not challenged the reasonableness of the $350.00 attorney fee, but even if he had, the attorney fees are reasonable as a matter of law for" the work allegedly performed, citing *Ousley v. Gen. Motors Ret. Program for Salaried Emp.*, 496 F.Supp.2d 845 (S.D. Ohio 2006). Doc. #277 at 11 n.1. However, Kline's FDCPA claim itself challenges the reasonableness of LS&R's attorney fees simply by alleging a violation of 15 U.S.C. § 1692f(1), because the agreement itself only expressly authorized charging <u>reasonable</u> attorney fees. Furthermore, the allegation of having been charged unreasonable fees "invites some degree of inquiry into the facts and circumstances of the case, generally inappropriate at the pleadings stage, although perhaps resolvable on summary judgment after discovery." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 623

20

(6th. Cir. 2002) (reversing dismissed claim brought under the Truth in Lending Act, 15 U.S.C. §§ 1601-15, based upon unreasonable document preparation fees). Such an inquiry was the foundation of this Court's decision in *Ousley*, which awarded reasonable postjudgment attorney fees, authorized by statute, to a plaintiff who brought a successful action to recover pension plan benefits from General Motors. *Ousley*, 496 F.Supp.2d at 848-850. In *Ousley*, the Court made a determination of reasonable attorney fees based on the "lodestar" method for calculating attorney fees, after consulting a record of the administrative proceedings before judgment, affidavits, and the Court's own experience in the local market for legal services. *Id.* The situation here is quite distinct, however, because the Court has been asked to rule that the fees charged and collected in another proceeding in another tribunal were reasonable as a matter of law, simply based on the pleadings before it.

For purposes of a motion under Rule 12(c), then, the Court accepts as true the allegations in the Complaint that Kline was charged $350 in attorneys' fees and $225 in "Previous Service Costs." Doc #1 ¶¶ 66-67. The Court also accepts as true Kline's statement that LS&R sent Kline a letter on February 19, 2008, defending the collection of attorney's fees. Doc #1 ¶ 70. LS&R attached an unauthenticated copy of this letter to its original Motion to Dismiss, filed on

21

February 2, 2009. Doc #18-5.[3] In the letter, LS&R asserted that it "reviewed all pleadings and correspondence (including the complaint, answers, motion for summary judgment and opposition), prepared and filed the Answer, and attended the telephone pretrial" as justification for the attorney fees. *Id.* Kline alleges that these fees were "not owed" and that by collecting them, LS&R violated Section 1692f(1). Doc. # 1 ¶ 130. Based on the foregoing, the Court concludes that there is a dispute between Kline and LS&R as to the reasonableness of the attorney's fees collected.

LS&R points to nothing in the pleadings or their exhibits to counter Kline's assertion that the fees were not owed. LS&R simply asserts that the fees were "reasonable as a matter of law" under *Ousley*. Doc. #277 at 11 n.1. The Court cannot resolve the issue of reasonableness based on the pleadings, the record before it, and the simple fact of the parties' disagreement. This is consistent with the Court's ruling in *Ousley*. There, the Court stated that because such a determination "is a matter which requires properly submitted evidence, and, thus, is more appropriately addressed in a summary judgment motion," it declined to rule that the plaintiffs' "claims [were] futile, as a matter of law, based solely on the language of paragraph 7." *Ousley*, 496 F.Supp.2d at 892. *See also Thomson v. Professional Foreclosure Corp. of Washington*, No. 98-CS-478, 2000 WL 34335866 E.D. Wash. Sept. 25, 2000) (denying defendant's motion for summary

---

[3] The Court will consider the letter for purposes of the pending motion, as it is both referred to in the Complaint and appears in the record of the case. *See supra* Part III.B.1.

judgment on 15 U.S.C. § 1692f(1) claim where note authorized attorney fees but reasonableness of fees could not be determined as a matter of law). Relying only on the pleadings, the Court cannot find that the attorney fees charged to Kline were reasonable as a matter of law. Consequently, the Court cannot conclude that the fees were expressly authorized by the mortgage agreement, and therefore allowable under Section 1692f(1) of the FDCPA.

### 3. Were the fees that LS&R collected from Kline "permitted by law?"

Under the second prong of 15 U.S.C § 1692f(1), the collection of a fee "permitted by law" does not violate the FDCPA. Under Ohio law, "a provision in a mortgage or promissory note that awards attorney fees upon the enforcement of the lender's rights when the borrower defaults, such as a foreclosure action that has proceeded to judgment, is unenforceable." *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 401 (Ohio 2009) (paraphrasing *Miller v. Kyle*, 97 N.E. 372 (Ohio 1911)). For over 120 years this rule has been the law in Ohio. *See Leavens v. Ohio Nat. Bank*, 34 N.E. 1089 (1893). In 2009, the Supreme Court of Ohio confirmed that the rule "has not been repudiated by this court despite the recognition of numerous situations in which contractual stipulations for attorney fees may be enforced." *Wilborn*, 906 N.E. at 401.

The Supreme Court of Ohio recognized one such situation in *Wilborn*, in which it held that a provision requiring a defaulting borrower to pay reasonable attorney fees for reinstatement and termination of foreclosure proceedings did not

23

violate Ohio law. *Id.* at 398. In *Wilborn*, a number of borrowers brought a class action lawsuit against the lenders who had instituted foreclosure actions against them after defaulting on their home mortgages. *Id.* at 399-400. The borrowers attempted reinstatement or modification of their loans and, in the process, paid the lenders amounts that included attorney fees. *Id.* In addition, nearly all of the borrowers' mortgage agreements contained reinstatement provisions allowing for the recovery of the lenders' costs and reasonable attorney fees incurred in the foreclosure actions. *Id.* at 399.

The exception was plaintiff Wilborn, whose debt was a second mortgage for a home-equity loan. *Id.* Unlike the other plaintiffs, her agreement did not contain a reinstatement provision. *Id.* After defaulting, she requested a payoff statement in order to completely pay off her loan. *Id.* That balance, which she paid, included attorney fees incurred by the lender in the foreclosure action. *Id.* In contrast to the other plaintiffs, who were charged attorney fees pursuant to reinstatement provisions in their agreements, the attorney fees charged to Wilborn had "all the indicia of imposing attorney fees in connection with the enforcement of a debt, in contravention of the rule articulated in *Leavens* . . . and *Miller*." *Id.* at 408 (internal citations omitted).

The attorney fees charged to plaintiff Wilborn were based on a provision in her loan agreement making the borrower liable for attorney fees and costs incurred to protect the lender's rights in the event of foreclosure, which the court found "unenforceable under Ohio's long standing rule that attorney fees may not be

24

collected against the debtor in an action to enforce the debt." *Id.* Here, the fees charged to Kline were based on a similar provision contained in Paragraph 7 of his mortgage that allows the lender to charge attorney fees "and take such action as is necessary to protect Lender's interest" in the event of a foreclosure proceeding. Doc. #277-3 at 3; *see* Letter from LS&R to Kline's attorney, Exhibit E to LS&R's Motion to Dismiss Complaint, Doc. #18-5 (stating that the attorney costs "were incurred by my client in the protection of its security/mortgage as provided in paragraph 7 of the mortgage); *see also* Doc. #1 ¶ 70 (alleging receipt of aforementioned letter). As with the attorney fees charged to plaintiff Wilborn, the attorney fees charged to Kline were charged pursuant to a provision in a mortgage agreement that authorized attorneys' fees, and were therefore not permitted under Ohio law. *Wilborn*, 906 N.E.2d at 401.

Furthermore, *Wilborn*'s holding that allows attorney fees only applies only fees charged pursuant to a reinstatement provision. *Id.* at 398. Here, both parties locate the contracted authorization for attorneys' fees charged to Kline in Paragraph 7, not the reinstatement provision. The reinstatement provision of Kline's mortgage agreement is Paragraph 18, titled "Borrower's Right to Reinstate," which would charge "reasonable attorney fees" to a borrower exercising that right. Doc. #277-3 at 3-5. Under *Wilborn*, attorney fees charged to Kline under Paragraph 18 would have been lawful.

LS&R contends that the attorney fee provision of Paragraph 7 is lawful. It first argues that Ohio's prohibition on provisions awarding attorney fees to

25

defaulting borrowers are "limited to collecting the foreclosing plaintiff's attorney fees solely as the result of enforcement of a borrower's default."  Doc. #277 at 12.  Thus, LS&R argues it should fall under the *Wilborn* exception allowing attorney fees because it neither prosecuted the foreclosure action nor sought to enforce a defaulted debt, but only filed a "defensive" answer to the foreclosure complaint in order to protect its client's junior lien on Kline's property. *Id.* at 14. Furthermore, *Wilborn* speaks broadly of fees incurred for "the enforcement of the lender's rights when the borrower defaults," and mentions an action in foreclosure proceedings as an example. *Wilborn*, 906 N.E.2d at 401.  The fact that a lender with a junior interest is named as a "defendant" in a foreclosure action is a procedural convention that does not diminish, but in fact protects, one's rights and status a lender. *See* Ohio R.Civ.P. 19(A) (requiring joinder of person with interest in action).  Allowing the junior lienholder to collect attorney fees while denying them to plaintiff lienholder would limit the rule's application based only on this technical distinction.  In any case, Ohio courts have applied the rule regardless of the priority of the lienholder. *E.g.*, *Sabin v. Ansorge*, No. 99-L-158, 2000 WL 1774141 (Ohio Ct. App. Dec. 1, 2000) (reversing award of attorney fees to counterclaiming defendants with second mortgage on plaintiffs' home).

The rationale for Ohio's rule, as stated by the court in *Wilborn* and quoted in LS&R's brief, is that "the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation." *Wilborn,* 906 N.E.2d at 401 (quoting

26

*Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253 (Ohio 1987)).  Regardless of the priority of the lienholder in the action, the rationale for Ohio's rule still applies.  A fee-shifting provision favoring a junior mortgagee creates a "penalty to the defaulting borrower" identical to one favoring a senior mortgagee.  *Wilborn,* 906 N.E.2d at 401.  Furthermore, the concern that a fee-shifting provision "encourages litigation to establish either a breach of the agreement or a default on the obligation" is essentially an endorsement of the well-established American rule that parties bear the burden of paying their own attorney fees.  *See Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240 (1975) (describing historical evolution and justification for American rule).  It also encourages parties to attempt settlement upon default instead of incurring the expense of litigation and judicial involvement.  The priority of the lienholder denied attorney fees under Ohio's rule is immaterial to the furtherance of either policy.

LS&R also urges the Court to consider the Supreme Court of Ohio's concerns in *Wilborn*, regarding the negotiability of Ohio mortgages on the secondary mortgage market, if a part of the uniform Freddie Mac/Fannie Mae agreement were declared unenforceable. Doc. #277 at 13; *see also Wilborn* at 556.  The Court notes that Paragraph 13 of the mortgage agreement contains a severability clause that contemplates any conflict with local law, stating that "as used herein, 'costs', 'expenses' and 'attorneys' fees' include all sums to the extent not prohibited by applicable law or limited herein." Doc. #277-3 at 4.  Thus, the "uniform" agreement adapts to the laws of the jurisdiction in which the property is

27

located, which may preempt particular terms of the agreement.  *Id.*; *see*, *e.g.*, *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F.Supp.2d 347, 357 (D.N.J. 2006) (applying "mandatory" New Jersey court rule for determining allowable attorney fees when analyzing claim under 15 U.S.C. § 1692f(1) because "any provisions for the award of fees in the note or mortgage are not controlling").  In any case, this Court's ruling conforms to the Supreme Court of Ohio's holding in *Wilborn*, which also disallowed attorney fees incurred in preparation of a payoff of a second mortgage where the agreement to enforce the lender's interest purportedly allowed for such fees.  The exception allowed by *Wilborn*'s holding only applied to attorney fees authorized by a reinstatement provision, and to apply it to the non-reinstatement provision of Kline's agreement would be an unjustifiable stretch of *Wilborn*'s holding.

The Court concludes, based on the controlling law of *Wilborn*, *Miller*, and *Leavens*, that Ohio law does not permit the attorney fees that Kline alleges LS&R charged to him.  LS&R is not, therefore, entitled to judgment on the pleadings with regards to Kline's claim arising under 15 U.S.C § 1692f(1), and LS&R's motion is accordingly overruled.

### 4. Were the 3 Arch Trustee Services expenses "expressly authorized by the agreement" or "permitted by law?"

LS&R's final argument addresses the $225.00 in costs paid to 3 Arch Trustee Services, which it contends were also permissible under the agreement and in accordance with state law and public policy.  Doc. #277 at 15-16.  Kline's

28

complaint alleges that these fees were non-recoverable because they were neither authorized by the agreement nor allowed under Ohio law.  Doc. #1 ¶¶ 74-76. Specifically, Kline alleges that LS&R justified them as expenses for loan servicing, document production, and billing, but that they are in fact nonrecoverable overhead expenses.  *Id.* ¶ 75.  The February 2, 2009, letter from LS&R to Kline's attorney states that "the sum of $225.00 was paid to 3 Arch Trustee Services, Inc., for the servicing of this loan and monitoring of the lawsuit with services that included obtaining local counsel, production of necessary documents and loan information, and billing of invoices."  Doc. #18-5 at 2.  Kline also alleges that the costs paid to 3 Arch Trustee Service constituted an illegal sharing of legal fees.  *Id.* ¶ 77.

The analysis again concerns 15 U.S.C. § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  The costs paid to 3 Arch Trustee Services appear to be expenses incidental to the principal obligation, which Kline alleges that he paid on November 18, 2007. Doc. #1 ¶ 68.  Thus, the issue is whether these expenses were 1) "expressly authorized by the agreement creating the debt" or 2) "permitted by law."  15 U.S.C. § 1692f(1).

Paragraph 7 of Kline's mortgage authorizes the lender to "make such appearances, disburse such sums, including reasonable attorney's fees, and take such action as is necessary to protect Lender's interest" and to pass those

29

disbursed amounts on to the borrower as additional indebtedness. Doc. #277-3 at 3. Based on the breadth of this language, it is difficult to argue with LS&R's contention that this provision encompasses such expenses as monitoring of the lawsuit, obtaining counsel, producing documents pertinent to the loan, and billing. Doc. #277 at 16; Doc. #18-5 at 2. However, it is not as clear that "servicing of the loan" is an expense that falls within those allowed by Paragraph 7, as loan servicing could encompass any activity in connection with a non-defaulted loan as well. Thus, because all allegations must be construed in Kline's favor at this juncture, the Court cannot conclude for purposes of this motion that all the activity was authorized by the agreement.

The expenses charged to Kline must also have been "permitted by law" to not amount to a violation under 15 U.S.C. § 1692f(1). Kline alleges that these expenses constituted improper sharing of legal fees. Doc. #1 ¶ 76. Under Ohio Rule of Professional Conduct 5.4(a), a lawyer must not share legal fees with a nonlawyer, with certain limited exceptions.

An example of improper fee sharing with a nonlawyer resulting in attorney discipline occurred in *Cincinnati Bar Assn. v. Harwood*, 925 N.E.2d 965 (Ohio 2010). In *Harwood*, an Ohio attorney entered into an agreement with two companies that solicited homeowners and promised them legal representation to resolve impending foreclosure. *Id. at* 966. Attorney Harwood received $100 for each answer filed and communicated by letter with the homeowners, but performed almost no individualized legal services on their behalf, and did not

30

respond to summary judgment motions or participate in negotiations with the lenders. *Id.* at 966-67.

Here, Kline alleges that LS&R improperly shared legal fees with 3 Arch Trustee Services. Kline alleges that he was charged $225.00 in "Previous Service Costs" (Doc. #1 ¶ 69) and that LS&R responded to his inquiry about the cost in a letter dated February 19, 2008 (Doc. #1 ¶ 73). Again, the Court will consider this letter because it is referred to in the complaint and because it was attached to a previous motion. Doc. #18-5. In it, LS&R stated that the $225.00 "was paid to 3 Arch Trustee Services" for services that included "monitoring of the lawsuit" and "obtaining local counsel." *Id.* Based on that language, it is unclear whether the lender paid the fee to 3 Arch Trustee Services prior to retaining LS&R or if LS&R itself paid the fee after being retained. It is also unclear what "monitoring of the lawsuit" entails, but it is plausible that it involved legal work. It is also possible that by "obtaining local counsel," 3 Arch Trustee Services operated as a middleman between LS&R and the lender, as the companies did in *Harwood* between borrowers and their attorneys.

Based on the foregoing, the Court cannot conclude, based on the pleadings, that the amount Kline was charged for services performed by 3 Arch Trustee Services was expressly authorized by the agreement, or that it was permitted by law, and as a consequence, that he has failed to state a claim for a violation of the FDCPA. Because of this and the previous conclusion regarding the attorney fees

charged to Kline, the Court will OVERRULE LS&R's Motion for Judgment on the Pleadings as to Plaintiff Kline's Claims.

## V.    LS&R'S MOTION TO STAY DISCOVERY

Finally, LS&R filed a Motion to Stay Discovery and Extend Deadlines Pending Decision on Motion for Judgment on Pleadings.  Doc. #278.  Under Rule 26(c) of the Federal Rules of Civil Procedure, the Court may issue an order protecting a party from the "undue burden or expense" of proceeding with discovery upon a showing of good cause.

The Court need not decide whether LS&R's motion shows the good cause required, because the motion was made pending a decision by the Court on LS&R's Motion for Judgment on the Pleadings.  Doc. #278 at 1.  The Court has overruled that motion with this Decision and Entry.  Therefore, LS&R's Motion to Stay Discovery is moot, and the Court consequently OVERRULES AS MOOT LS&R's Motion to Stay Discovery and to Extend Deadlines Pending Decision on Motion for Judgment on the Pleadings.

## VI.    CONCLUSION

To summarize, the Court clarifies that its Decision and Entry of April 19, 2012 (Doc. #271) only reinstated Kline's claim arising under 15 U.S.C. § 1692f(1).  Given that action, the Court reinstates Kline's state law claims for unjust enrichment and violations of the OCSPA as supplemental to his FDCPA claim.  The Court OVERRULES LS&R's Motion For Judgment on the Pleadings as to

32

Plaintiff Kline's Federal Claims under Federal Rule of Civil Procedure 12(c) (Doc. #277). The Court OVERRULES AS MOOT LS&R's Motion to Stay Discovery and to Extend Deadlines Pending Decision on Motion for Judgment on the Pleadings (Doc. #278).


Date: February 27, 2013                    _____
                                           WALTER H. RICE
                                           UNITED STATES DISTRICT JUDGE