IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,

        Plaintiffs,

    v.

MORTGAGE ELECTRONIC
SECURITY SYSTEMS, et al.,

        Defendants.

      :

      :

      :

Case No. 3:08cv408

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING DEFENDANT LERNER,
SAMPSON & ROTHFUSS' MOTION TO RECONSIDER, OR, IN THE
ALTERNATIVE, TO CERTIFY [A QUESTION OF LAW] TO THE OHIO
SUPREME COURT (DOC. #297)

---

In this putative class action, a number of individuals, including Plaintiff

Eugene Kline ("Kline"), set forth claims against eleven defendants, including

Defendants Lerner, Sampson & Rothfuss ("LS&R"). Plaintiffs sought monetary

damages and injunctive relief based on claims under the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f(1); the Truth in Lending Act

("TILA"), 15 U.S.C. § 1666d; the Ohio Consumer Sales Practices Act ("OCSPA"),

Ohio Revised Code § 1345.01; and claims for unjust enrichment and breach of

contract under the common law of Ohio. Plaintiffs' claims arose out of alleged

misconduct in mortgage servicing, misrepresentation in foreclosure filings, and the

charging and collecting of improper and excessive fees from borrowers. The

Court's jurisdiction is based on federal question jurisdiction under 28 U.S.C. §

1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Pending before the Court is LS&R's Motion to Reconsider, or, in the

Alternative, to Certify [a Question of Law] to Ohio Supreme Court (hereinafter,

"Motion to Reconsider") (Doc. #297), filed in response to the Court's Decision and

Entry of February 27, 2013 (Doc. #294) that overruled LS&R's Motion for

Judgment on the Pleadings (Doc. #277). For the reasons set forth below, LS&R's

Motion to Reconsider is OVERRULED, as is the alternative Motion to Certify a

Question of Law to the Ohio Supreme Court.

## I.   **BACKGROUND**[1]

Plaintiff Eugene Kline ("Kline") and his co-plaintiffs brought this putative

class action on November 10, 2008, against eleven defendants, including LS&R.

Doc. #1. LS&R represented the second mortgagee in a state foreclosure action

filed against Kline after he became delinquent on his primary mortgage. *Id.* at 9,

13-14. Kline's allegations against LS&R claimed that the firm charged him

attorney's fees and other costs that violated Ohio law and the FDCPA. Doc. #1 at

13-16. LS&R and other defendants filed multiple Motions to Dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure, and at first succeeded in disposing

---

[1] The procedural history of this action is extensive. For the sake of brevity, the
Court will summarize only the background relevant to the pending motion. For a
more detailed account, see Section I and Section II of the Court's Decision and
Entry of February 27, 2013 (Doc. #294).

of the plaintiffs' claims.  Doc. #18, #30, #31, #35.  However, after Kline filed

several motions for reconsideration (Doc. #216 and #265), the Court reinstated

Kline's FCDPA claims under 15 U.S.C. § 1692f(1) against LS&R and Defendant

Reimer, Lorber, & Arnovitz Co., LPA ("RL&A").  Doc. #271.  Thereafter, on June

19, 2012, LS&R filed a Motion for Judgment on the Pleadings as to Plaintiff Kline's

Claims, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Doc. #277.

The Court overruled LS&R's Motion for Judgment on the Pleadings on

February 27, 2013.  Doc. #294.  In its Decision and Entry, the Court first clarified

that it did not reinstate Kline's FDCPA claim under 15 U.S.C. § 1692e, only the

claim under 15 U.S.C. § 1692f(1), *id.* at 7, given that the controlling law that

motivated the reinstatement of Kline's FDCPA claim only applied to Section 15

U.S.C. § 1692f(1), and could not, therefore, support the reinstatement of a claim

under another section of the statute.  *Id.* at 7-8.  The Court also clarified that, as a

result of the reinstatement of the Section 1692f(1) FDCPA claim, Kline's

supplemental state law claims of unjust enrichment and violations of the OCSPA

were also reinstated.  *Id.* at 8-9.

The Court then turned to LS&R's arguments.  LS&R first argued that Kline's

claims were not valid under the FDCPA, because they fell under the holding of

*Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011).  However,

*Grden*'s holding concerned a claim under 15 U.S.C. § 1692e, and the Court

therefore determined that the case did not apply to Kline's reinstated FDCPA claim

under 15 U.S.C. § 1692f(1).  Doc. #294 at 15-16.

The remainder of the Court's decision analyzed Kline's claim under 15 U.S.C. § 1692f(1), a two-pronged analysis. Specifically, the Court had to determine whether the undisputed facts demonstrated that LS&R's collection of Kline's debt was 1) expressly authorized by the agreement that created the debt, or 2) permitted by law. The Court determined that the language of the mortgage agreement expressly authorized charging reasonable attorneys' fees. *Id.* at 16-20. However, on the limited evidentiary record before it, the Court could not rule that the attorneys' fees charged to Kline were reasonable as a matter of law, nor that they were actually incurred. *Id.* at 20-23. The Court could not, therefore, determine that Kline's mortgage agreement expressly authorized the attorneys' fees that LS&R collected, and, therefore, that the collection complied with the first prong of Section 1692f(1).

Applying the second prong of Section 1692f(1), the Court also determined that the fees were not permitted by law, based on Ohio case law that forbids the enforcement of a provision in a mortgage or promissory note that awards attorneys' fees upon the borrower's default.[2] *Id.* at 23-28 (applying, *e.g.*, *Wilborn v. Bank One Corp.*, 906 N.E.2d 396, 401 (Ohio 2009)).

---

[2] Because the Court concluded that the attorneys' fees were not permitted by law under the second prong of Section 1692f(1), LS&R could not show that it was entitled to judgment as a matter of law on Kline's FDCPA claim based on the collection of said fees. However, for two reasons, LS&R's failure to prevail did not mean that the Court could enter judgment for Kline as a matter of law. First, it was LS&R, and not Kline, that had moved the Court for judgment on the pleadings, under Rule 12(c) of the Federal Rules of Civil Procedure. Kline was not the movant; he simply opposed LS&R's motion. *See* Doc. #283, Plaintiff's [Response

4

Finally, the Court applied Section 1962f(1)'s two-pronged analysis to the other factual basis for Kline's claim, the fees that LS&R allegedly collected on behalf of a third party for legal-related services. Doc. #294 at 28-32. As with the attorneys' fees, the Court could not determine, based on the pleadings alone, that the third-party fees were either 1) expressly authorized by the agreement or 2) authorized by law. *Id.* at 31. Specific activities for which Kline was charged were arguably outside the language expressly authorized by the agreement. *Id.* at 30. Furthermore, Kline alleged that legal fees were improperly shared, which, if true, would violate Ohio's Rule of Professional Conduct 5.4(a). *Id.* The Court was bound to construe the factual allegations in Kline's favor, and LS&R failed to point to anything in the pleadings to contradict those allegations. *Id.* at 31-32. Thus, the Court could not determine, based on the pleadings alone, that the fees charged to Kline for legal-related services incurred by a third party were either expressly authorized by the agreement or authorized by law. *Id.* As a result, the Court could not grant LS&R judgment as a matter of law, and overruled its motion. *Id.* at 32-33.

On March 27, 2013, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, LS&R filed a Motion to Reconsider. Doc. #297. Therein, LS&R argues that the contract provision authorizing it to collect attorneys' fees from Kline is, in

---

in] Opposition to the Motion to Dismiss. Second, the other prong of Section 1692f(1), concerning the reasonableness of the fees as authorized by the agreement, involved a factual issue that could not be resolved on the materials contained in the pleadings alone.

fact, enforceable under Ohio law, and that the Court should either reverse its previous decision, or certify the issue as a question of law to the Ohio Supreme Court. *Id.* at 4-10. LS&R also argues that *Grden* does apply to a Section 1692f(1) claim, and that there is no FDCPA claim based on the reasonableness of fees charged to a debtor. *Id.* at 10-13.

Plaintiff Eugene Kline filed a Response in Opposition to LS&R's Motion to Reconsider on April 26, 2013. Doc. #300. Kline agrees with the Court's conclusion that *Grden* is inapplicable to his Section 1692f(1) FDCPA claim. *Id.* at 4-5. Kline disagrees with LS&R's interpretations of *Wilborn* and Ohio law, but believes that regardless of whether the fees charged were illegal under state law, LS&R has failed to show that the fees collected were actually incurred or authorized by the agreement. *Id.* at 5-13. Thus, Kline urges the Court to overrule LS&R's Motion to Reconsider. *Id.* at 14.

LS&R filed a Reply in Support of its Motion to Reconsider on May 24, 2013 (Doc. #302), in which it recapitulated the arguments of its Motion to Reconsider. Accordingly, LS&R's Motion to Reconsider has been fully briefed and is ripe for a ruling by the Court.

## II.    **ANALYSIS**

LS&R argues that it was clear error for the Court to conclude that: 1) the fee provision of Kline's mortgage agreement under which the firm collected attorney's fees is not authorized under Ohio law; 2) *Grden v. Leiken Ingber & Winters PC*,

6

643 F.3d 169 (6th Cir. 2011), does not apply to Kline's surviving FDCPA claim

under 15 U.S.C. § 1692f(1); and 3) Kline could bring an FDCPA claim based on

the "reasonableness" of fees he was charged. LS&R requests either

reconsideration of the Court's Decision and Entry of February 27, 2013 (Doc.

#294), in which the Court overruled LS&R's Motion for Judgment on the Pleadings

(Doc. #277), or, in the alternative, certification to the Ohio Supreme Court of the

question of whether the attorneys' fees provision in Kline's mortgage is valid under

Ohio law. After setting forth the applicable standard of review, the Court will

address each of LS&R's arguments.

### A.    Standard of Review under Federal Civil Rule 59(e)

The Federal Rules of Civil Procedure do not formally recognize motions for

reconsideration. However, in the Sixth Circuit, "a motion which asks a court to

vacate and reconsider, or even to reverse its prior holding, may properly be treated

under Rule 59(e) as a motion to alter or amend a judgment." *Smith v. Hudson*,

600 F.2d 60 (1979). Motions for reconsideration are not favored, as they

inevitably conflict with the Federal Rules of Civil Procedure's stated goal of

attaining the "just, speedy, and inexpensive determination of every action and

proceeding." Fed. R. Civ. P. (1). A Rule 59(e) motion "is not an opportunity to re-

argue a case" after a decision adverse to the moving party. *Sault Ste. Marie Tribe*

*of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v.*

*World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Neither may a Rule 59(e)

7

motion "be used to relitigate old matters, or to raise arguments or present evidence

that could have been raised" previously by the movant. *Exxon Shipping Co. v.*

*Baker*, 554 U.S. 471, 486 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 2810.1). A court may grant a motion

brought under Rule 59(e) only in the event of "(1) a clear error of law [the only

relevant consideration herein]; 2) newly discovered evidence; (3) an intervening

change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp.*

*v Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Int'l*

*Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

**B.    The Recognized Exceptions to Ohio's Prohibition on Attorneys' Fees
          Provisions in Mortgage Agreements do not Apply to Kline's Mortgage
          Agreement**

LS&R's first argument asserts that it was "clear error" for the Court to

conclude that the provision allowing the recovery of attorneys' fees in Kline's

mortgage is void under Ohio law, and moves the Court to either reconsider the

issue, or certify it as a novel and unsettled question of law to the Ohio Supreme

Court. Doc. #297 at 4-9. The Court will address each request in turn.

1. *The exception recognized by the Ohio Supreme Court in* Wilborn v.
     Bank One Corp. *applies to a loan reinstatement, not a loan payoff.*

LS&R argues that the Court erred in its understanding of a line of Ohio

Supreme Court cases that have held, as LS&R states, "that certain contract

provisions that provide for fee-shifting from the lender to the borrower are void as

8

against public policy." Doc. #297 at 4; *see*, *e.g.*, *State v. Taylor*, 10 Ohio 378 (Ohio 1841); *Leavens v. Ohio Nat'l Bank*, 34 N.E. 1089 (Ohio 1893); *Miller v. Kyle*, 97 N.E. 372 (Ohio 1911); *Wilborn v. Bank One Corp.*, 906 N.E.2d 396 (Ohio 2009). The decision of the Ohio Supreme Court in *State v. Taylor* is the genesis of the rule. In *Taylor*, the defendant issued a bond to the state in return for $25,000. 10 Ohio 378. The instrument was secured by a mortgage containing a provision requiring the borrower to pay attorneys' fees of up to five percent of the principal borrowed. *Id.* However, after a sale of the mortgaged property, the trial court refused to enforce the provision. *Id.* The Ohio Supreme Court upheld the trial court's decision, stating:

> But is it such a contract as public policy should execute? What may be supposed as the natural result to the community from the execution of this agreement? It would be the condition of future loans, at banks, that the borrower should pay the expenses of collection, and, perhaps, the tax thereon. The brokers in this state would hold a general jubilee; and as their sense of morality and law usually expands with their hopes of gain, in proportion to the borrower's necessity they would find, probably, additional items of costs, as the means of a legalized extortion upon their loans. In our opinion, such agreements are against the public policy of the country, and ought not to be enforced in courts of justice.

*Id.* at 380. To hold otherwise, it appeared to the court, would be to bestow upon creditors the license to append unpredictable sums as "costs" or "fees," in amounts limited by the creditor's greed, to a borrower's legally binding debt.

For much of the rest of the 19th century, Ohio courts applied the holding of *Taylor*. *E.g.*, *Shelton v. Gill*, 11 Ohio 417 (Ohio 1842) (citing *Taylor* and recognizing that an agreement to collect attorneys' fees was "against sound policy,

9

and void," but dissolving injunction issued to halt their collection because debtor's proper remedy was a motion to set aside the judgment); *Martin v. Trustees Bank of St. Clairsville*, 13 Ohio 250, 258 (Ohio 1844) (holding that the trial court erred when attorneys' fees were included in a judgment against debtors enforced by the trustees of a failed bank because, under *Taylor*, "an agreement to pay a percentage as collection fees, in addition to the legal rate of interest, is against public policy, and void").  In a *per curiam* decision of 1893, the Ohio Supreme Court applied the *Taylor* rule, affirming a second lienholder's successful appeal and the reversal of attorney fees that the trial court awarded to the senior lienholder. *Leavens v. Ohio National Bank*, 34 N.E. 1089 (Ohio 1893).  In *Leavens*, a landowner mortgaged his property to Leavens in exchange for a loan of $3,500, plus interest, pursuant to an agreement that awarded "a reasonable sum as an attorney fee" in the event of default.  *Id.*  The landowner later took out a second mortgage with the Ohio National Bank as creditor, but subsequently defaulted on the interest that was due to Leavens, the first lender and senior lienholder.  *Id*. After Leavens brought a foreclosure action against the landowner, the trial court awarded Leavens $100 in attorneys' fees from the proceeds of the property's sale. *Id*.  Ohio National Bank, the second lienholder, appealed the award of attorneys' fees to Leavens, and the court of appeals reversed the award.  *Id*.  The Ohio Supreme Court affirmed the reversal, and stated the following in the syllabus:[3]

---

[3] The syllabus of an Ohio Supreme Court opinion "states the law of the case" with binding, precedential effect.  *Smith v. Klem*, 450 N.E.2d 1171, 1173 (Ohio 1983).

10

> A stipulation in a mortgage to the effect that, in case an action should be brought to foreclose it, a reasonable attorney fee, to be fixed by the court, for the services of the plaintiff's attorney in the foreclosure action, should be included in the decree, and paid out of the proceeds arising from the sale of mortgaged property, is against public policy and void.

*Id.*

As it entered the twentieth century, the Ohio Supreme Court continued to apply the rule of *Taylor* and *Leavens*. *Miller v. Kyle*, 97 N.E. 372 (Ohio 1911). In *Miller*, the defendant's note and mortgage both contained provisions for the payment of attorney fees in the event of default, but the trial court refused to enforce the provision. *Id.* On appeal, the plaintiff argued that the *Taylor* rule had been abrogated by Ohio's negotiable instruments statute, which had been passed nine years earlier. *Id.* at 373. The statute authorized the "costs of collection or an attorney's fee in case payment shall not be made at maturity" of an instrument. *Id.* The Ohio Supreme Court rejected the plaintiff's argument, recognizing instead that the provision was intended to preserve the negotiability of instruments, because, before passage of a uniform law, different jurisdictions had been divided over the issue of whether such a provision destroyed an instrument's negotiability. However, the statute "contain[ed] no language indicative of an intention to change the rule of the common law with respect to the validity of the stipulation." *Id*. The court's holding reaffirmed the *Taylor* rule, stating that "[i]t is the settled law of this state that stipulations incorporated in promissory notes for the payment of

11

attorney fees, if the principal and interest be not paid at maturity, are contrary to public policy and void." *Id.* at 372.

LS&R offers the following characterization of the rule that the foregoing cases stand for: "a foreclosure plaintiff, regardless of the plaintiff's lien priority, may not collect attorney fees for the enforcement of the security interest arising from the obligor's payment default." Doc. #297 at 5. LS&R's formulation entirely omits the contractual context of the rule, shifts the focus from the agreement and its provisions to the legal proceeding to enforce the agreement, and narrows the scope of its application to include only the plaintiff in such an action. LS&R's revision of the rule would allow every creditor with a note or mortgage authorizing attorney fees to collect them, *except* the first creditor to foreclose. If the provision authorizing attorney fees is void under Ohio law because it authorizes the award of attorneys' fees in an action brought to enforce the debt, it is simply not enforceable because it was void *ab initio*. From *Taylor* onwards, the concern has been with the validity of the provision itself, not the process to enforce the agreement or a party's procedural alignment in the action. *E.g.*, *Leavens*, 34 N.E. 1089 (upholding refusal to allow senior lienholder to collect under attorneys' fee provision after appeal by junior lienholder); *Sabin v. Ansorge*, No. 99-L-158, 2000 WL 1774141 (Ohio Ct. App. Dec. 1, 2000) (reversing award of attorney fees to counterclaiming defendants with second mortgage on plaintiffs' home). This is entirely in keeping with the policy concerns that underlie the rule: discouragement of usury and litigation.

The Ohio Supreme Court recently endorsed a broader application of the rule than LS&R contemplates. In 2009, the Ohio Supreme Court reaffirmed that "the syllabus law of *Leavans* and *Miller* has not been repudiated by this court despite the recognition of numerous situations in which contractual stipulations for attorney fees may be enforced." *Wilborn*, 906 N.E. at 401; *e.g.*, *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 514 N.E.2d 702 (Ohio 1987) (upholding the enforceability of a provision in condominium by-laws authorizing the payment of attorney fees in a foreclosure action brought to recover unpaid monthly maintenance assessments); *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E. 2d 253 (Ohio 1987) (reversing the trial court's refusal to enforce a provision awarding attorneys' fees in an agreement for indemnity). LS&R provides citations to *Nottingdale* and *Worth*, but otherwise fails to explain or point to any similarities between Kline's mortgage agreement and *Nottingdale*'s condominium agreement or *Worth*'s agreement of indemnity that would support an application of the particular exceptions recognized in those cases. Doc. #297 at 5-6. *Nottingdale* involved a couple who refused to pay monthly service fees on their condominium as a self-help remedy to protest the association's shoddy maintenance. *Nottingdale*, 514 N.E.2d at 703. In *Worth*, the Supreme Court of Ohio characterized a typical provision to pay attorneys' fees as being "in the sole interest" of the creditor, thereby distinguishing a debt obligation (such as Kline's) from the indemnification clause in the employment agreement before it, in which the appointment of attorneys for one party actually benefited both parties. *Worth*, 513 N.E. 2d at

242-43.  Neither case involved a provision authorizing a creditor's right to collect attorney fees in the course of enforcing a debt obligation, and thus, did not implicate the policy considerations of the rule in question.  *See Nottingdale*, 514 N.E.2d at 705 (distinguishing *Miller* because it involves "a promissory note containing an attorney fees stipulation" from the condominium by-laws signed by the defendants).

LS&R also argues that federal courts have allowed the collection of attorneys' fees under a standard mortgage provision like Kline's, but the two cases it cites address fees collected during a bankruptcy proceeding, and neither case even discusses the Ohio law in question.  Doc. #297 at 6-7 (citing *Webb v. Chase Manhattan Mortg. Corp.,* No. 2:05-cv-0548, 2008 WL 2230696 (S.D. Ohio May 28, 2008) and *Dowling v. Litton Loan Serv.*, No. 2:05-cv-98, 2007 WL 7020413 (June 5, 2007)).  In *Webb*, the plaintiff admitted that she received a refund of the attorney fees charged to her a year before she filed suit.  2008 WL 2230696 at *22.  Given the refund, the court held that she did not have standing to pursue a breach of contract claim.  *Id.*  Even if she had standing, the court noted that the plaintiff could not show that a breach occurred because the defendant "complied with the express terms of [the] mortgage," which included a provision that allowed "reimbursement for bankruptcy attorneys' fees."  *Id.* at *23.  The plaintiff did not challenge the legality of the provision based on Ohio's prohibition on attorney fees in such a contract, nor was there any mention of the prohibition or discussion of

the case law mentioned above.[4]  Similarly, in *Dowling*, Judge Marbley found that the defendant did not violate Section 1692f(1) because the debtor failed to prove that a series of fees and charges in a payoff were improper.  *Dowling v. Litton Loan Servicing, LP,* No. 2:05–CV–0098, 2007 WL 7020413 at *7 (S.D. Ohio June 05, 2007) (ruling after bench trial).  The portion of the debtor's Section 1692f(1) claim that concerned attorneys' fees alleged that she was charged for fees that the lender's attorneys incurred during a bankruptcy proceeding that were neither included in the Chapter 13 plan nor authorized by the loan agreement.  *See Dowling v. Litton Loan Serv.*, No. 2:05-cv-98, 2006 WL 3498292 at *7 (Dec. 1, 2006) (ruling on motion for summary judgment).  The plaintiff challenged the legality of the fees because they were not included in the bankruptcy plan, not because they were prohibited under Ohio law.  *Id.*  LS&R makes no argument connecting *Webb* or *Dowling* to Ohio's prohibition on attorney fees in a mortgage agreement.  Doc. #297 at 6-7.

As the Court mentioned above, *Wilborn v. Bank One Corp.*, 906 N.E.2d 396 (Ohio 2009), is the Ohio Supreme Court's most recent decision recognizing an exception to the prohibition on attorney fees that originated in *Taylor*, *Leavans* and *Miller*.  The *Wilborn* court recognized the validity of a provision authorizing attorney fees as a condition for <u>reinstatement</u> of the defaulted loan and terminating

---

[4] The *Webb* Court's only mention of Ohio law in relation to the plaintiff's claim was a reference to the non-existence of a "tort cause of action for breach of the covenant of good faith that is separate from a breach of contract claim."  2008 WL 2230696 at *16 n.8 (citing *Lakota Local Sch. Dist. Bd. of Educ. v. Brickner*, 671 N.E.2d 578, 583 (Ohio Ct. App. 1996)).

foreclosure proceedings. *Id.* at 398. The court explained how the specific characteristics of reinstatement of a defaulted loan distinguished it from the enforcement of a debt obligation in a foreclosure proceeding:

> Upon a borrower's default, a lender is entitled to initiate foreclosure proceedings, to be paid in full, and to sever its relationship with the defaulting borrower. A defaulting borrower's right to reinstate the mortgage loan arises solely from the terms of the residential-mortgage contract between the parties. Reinstatement occurs only when the defaulting borrower chooses reinstatement and, consequently, chooses in the existing foreclosure proceeding to forgo those statutory protections arising from the foreclosure process. The defaulting borrower's agreement to pay the lender's attorney fees incurred in connection with the foreclosure proceedings is a reasonable exchange for the right to require the lender to reinstate the defaulted mortgage loan and to forbear the lender's legal rights to foreclose, be presently paid in full, and sever the relationship with the defaulting borrower.
>
> Thus, a mortgage-reinstatement provision in a residential-mortgage contract creates no obligation on a defaulting borrower to pay a lender's attorney fees until the borrower exercises his or her choice to reinstate. Thus, the borrower's obligation to pay such fees does not arise solely as a consequence of the lender-initiated foreclosure action. Instead, the obligation arises only upon the defaulting borrower's voluntary exercise of the contractual right to reinstate the mortgage loan, a right gained in exchange for the lender's surrender of the present right to foreclosure. Thus, reinstatement is not the enforcement of a debt obligation, and the public-policy concerns expressed in *Miller* and *Leavans* regarding the imposition of a penalty against a debtor upon default have no relevance.

*Id.* at 402-03.

LS&R argues that the facts here align it with the exception allowing attorney fees charged pursuant to reinstatement because Kline's payoff of his mortgage loan was "optional" and "not required to settle litigation or avoid foreclosure."

16

Doc. #297 at 8.  However, LS&R fails to identify the provision of the mortgage

agreement containing what it characterizes as the "option exercised by Kline after

his lender had incurred expenses recoverable under the mortgage contract."  *Id.*

The failure is understandable, because no such provision exists.  Kline paid off the

loan because the instrument legally obligated him to do so, not because he was

exercising a contractual right described somewhere in the agreement.  Rather, he

was complying with his legal obligation to pay the debt.  That is the crucial

distinction between the reinstatement exception in *Wilborn* and the present

situation that LS&R fails to acknowledge.

For the same reason, the Court determined that Kline's situation is

comparable to that of the single *Wilborn* plaintiff whose agreement *did* violate the

attorney fee prohibition, under the holding of the Ohio Supreme Court.  Therein,

she was charged attorney fees for a payoff of her mortgage based on the following

provision: "Mortgagor shall be liable to Mortgagee for all legal costs, including but

not limited to *reasonable attorney fees* and costs and charges of any sale *in any*

*action to enforce any of its rights hereunder* whether or not such action proceeds

to judgment."  *Wilborn*, 906 N.E.2d at 399.

Similarly, Kline alleges that he was charged attorney fees for his payoff, and

pursuant to the following provision:

> "If Borrower fails to perform the covenants and agreements contained
> in this Mortgage, or *if any action or proceeding is commenced which*
> *materially affects Lender's interest in the Property, then Lender*, at
> Lender's option, upon notice to Borrower, may make such
> appearances, disburse such sums, *including reasonable attorney's*

17

> *fees, and take such action as is necessary to protect Lender's interest.*"

Doc. #277-3 at 3.

For purposes of the prohibition on attorney fees in a debt instrument, this Court determined that the Ohio Supreme court's analysis of the above-quoted provision in *Wilborn* also applies to Kline's mortgage.  Both provisions exist within a mortgage agreement; both provisions authorize the lender to recover attorney fees in "any action" brought to protect its interest in the property; and neither provision addresses a debtor's right to reinstate the defaulted loan.

LS&R places great emphasis on its client's status a junior lienholder, on whose behalf it asserts that it merely filed a "defensive, protective answer," without pursuing Kline by bringing the foreclosure action itself.  Doc. #297 at 8.  LS&R asserts that this distinction extinguishes the policy considerations that underlie the rule because its attorney fees are "simply reimbursement" for "being dragged into litigation through no choice of its own." *Id.*  A debtor's default will naturally prompt a foreclosure proceeding if property secures the debt, and it is therefore unremarkable that such a proceeding would provide the context for a creditor's attempt to enforce a provision for attorneys' fees.  However, whether an action has been brought to enforce the debt or protect the property to secure that debt does not determine the enforceability of such a provision, nor is such a provision enforceable by some creditors, but not others, simply due to their procedural role or alignment in the foreclosure action.  It is inconceivable that any

18

lender with a security interest in Kline's property would have "chosen" not to join the foreclosure action or otherwise not answer after having been joined to protect its interest. *See* Ohio R. Civ. P. 19 (requiring joinder of a party who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . impair or impede his ability to protect that interest"). If anything, the fact that Kline was involved in a foreclosure proceeding provided LS&R's client with an otherwise unavailable degree of leverage when negotiating Kline's payoff of the debt.

LS&R previously raised identical arguments in support of its Motion for Judgment on the Pleadings, and they were fully addressed in the Court's Decision and Entry of February 27, 2013. Doc. #294 at 27-28. The Court declines to repeat its analysis here, but will emphasize the following. LS&R argues that the policy underlying the rule of Ohio law at issue is not served by applying it to the provision in Kline's mortgage that authorizes attorneys' fees. The concern of *Taylor*, *Miller*, and their progeny has been "that 'the stipulation to pay attorney fees operates as a penalty to the defaulting party and encourages litigation to establish either a breach of the agreement or a default on the obligation.'" *Wilborn*, 906 N.E.2d at 401 (quoting *Worth*, 513 N.E.2d at 258). Here, too, the provision to pay LS&R's attorney fees "is in the sole interest of" the creditor, with no reciprocal benefit to Kline akin to reinstatement. *Worth*, 513 N.E.2d at 257. As the *Wilborn* court observed, the debtor is "not voluntarily exercising a contractual right prior to judgment in exchange for the surrender of some other right by the

lender" by paying its attorneys' fees when they are included with a payoff. 906

N.E.2d at 408. Kline paid off a debt that he owed anyway, but with the inclusion

of attorneys' fees that he would not have had to pay, but for his default. This is

precisely the situation that invokes the policy justifications for the rule as stated in

the Ohio Supreme Court's original *Taylor* opinion, which warned that "[i]t would be

the condition of future loans, at banks, that the borrower should pay the expenses

of collection," and that "in proportion to the borrower's necessity they would find,

probably, additional items of costs, as the means of a legalized extortion upon their

loans." 10 Ohio 378, 381. Based on the foregoing, the Court finds no reason to

extend Ohio law, as LS&R requests, by recognizing an additional exception to its

prohibition on attorney fees in mortgage agreements.

  2. *Certification to the Ohio Supreme Court not appropriate because, due
     to* Wilborn, *the long-standing law in question is far from unsettled.*

The Ohio Supreme Court allows the certification of "a question of Ohio law

that may be determinative of [a] proceeding" before a federal court if "there is no

controlling precedent" for the issue under existing Ohio law. Ohio Sup. Ct.

Practice R. 9.01. "Resort to the certification procedure is most appropriate when

the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag

Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v. Schein*, 416

U.S. 386, 390-91 (1974)).

LS&R claims that certification is appropriate because "the Ohio Supreme

Court has not directly addressed the question presented by this case," and its

20

resolution would be determinative of Kline's single remaining claim. Doc. #297 at 10. Kline believes the opposite, arguing that even if the Ohio Supreme Court disagreed with this Court's interpretation of Ohio law after certification, the ruling would not be determinative of Kline's claim, due to LS&R's failure to prevail on the factual issue of the reasonableness of the attorneys' fees that the agreement purportedly authorizes. Doc. #300 at 13-14.

The Court declines to certify the issue to the Ohio Supreme Court for its consideration. That court decided *State v. Taylor*, 10 Ohio 378 (1841), during its 1841 December Term, approximately eight months after the end of President W.H. Harrison's tragically short tenure in office and John Tyler's assumption of the presidency, and several months after Tyler's ignominious expulsion from the Whig party, in September of 1841. The rule of Ohio law in question is not, therefore, new. Nor is the law unsettled. In addition to 170 years of case law explaining the parameters of and exceptions to the rule of law in question, the Court has the benefit of the Ohio Supreme Court's relatively recent 2009 opinion, *Wilborn v. Bank One Corp.*, 906 N.E.2d 396 (Ohio 2009), which clearly controls. In *Wilborn*, the Ohio Supreme Court reaffirmed that "[t]he syllabus law of *Leavans* and *Miller* has not been repudiated by this court," and then applied that law by prohibiting the imposition of "attorney fees in connection with the enforcement of a debt" on the single *Wilborn* plaintiff who, like Kline, was charged attorneys' fees when making a

21

loan payoff.[5]  *Id.* at 408.  "Such a circumstance has all the indicia of imposing

attorney fees in connection with the enforcement of a debt, in contravention of the

rule articulated in *Leavans* and *Miller*."  *Id.* (citing *Leavens*, 34 N.E. 1089 (Ohio

1893) and *Miller v. Kyle*, 97 N.E. 372 (Ohio 1911)).

Furthermore, LS&R has had the opportunity to make the same arguments

twice already, presenting them first in its Motion for Judgment on the Pleadings,

and then re-arguing them in the present motion.  Thus, "to certify the question at

this procedural juncture would allow [yet] another bite at the apple, which is not

the function of the certification process."  *Gascho v. Global Fitness Holdings, LLC*,

918 F.Supp.2d 708, 713 (S.D. Ohio 2013).  In *Gascho*, the court acknowledged

that the issue that the plaintiffs sought to certify was unsettled under Ohio law,

but nevertheless declined certification because, like LS&R, the plaintiffs requested

it in a motion for reconsideration after the court had resolved the issue.  Even

though the "[p]laintiffs were clearly aware that [the] issue was potentially

dispositive," they failed to "suggest certification prior to  . . . resolution of the

issue."  *Id.*  Here, where the issue of law is not unsettled, there is even less reason

---

[5] The main holding of *Wilborn*, as discussed *supra* at pages 15-17, allowed the enforcement of a provision for attorneys' fees only if a debtor is afforded the reciprocal benefit of reinstatement of the defaulted loan.  906 N.E.2d 396.  That holding applied to all of the plaintiffs whose loan agreements authorized reinstatement.  *Id.* at 402-03.  It did not apply to the one plaintiff whose loan agreement did not provide for the option of reinstatement.  *Id.* at 408.  Her situation was "distinguishable from the circumstances of the other borrowers," but comparable to Kline's, because she was forced to make a payoff instead.  *Id.*

for certification. Accordingly, the Court declines to certify an issue to the Ohio Supreme Court.

**C.** **The Sixth Circuit's Decision in *Grden v. Leiken Ingber & Winters PC* does not Apply to Kline's Remaining FDCPA Claim**

LS&R also challenges the Court's conclusion that the Sixth Circuit's holding in *Grden v. Leiken Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011), did not apply to Kline's FDCPA claim under 15 U.S.C. 1692f(1). Only a claim under Section 1692e was before the *Grden* court, but LS&R nevertheless contends that the analysis "is equally applicable to" a claim under Section 1692f(1). Doc. #297 at 10.

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including a false representation of the amount of the debt in question. 15 U.S.C. § 1692e. Thus, the action that constitutes a violation under Section 1692e must be some "representation or means" by the debt collector. *Id.* The *Grden* plaintiff alleged that such representation could take the form of a communication from the debt collector in response to a debtor's inquiry, both by phone and in writing, regarding the amount of debt. *Grden,* 643 F.3d at 172-73. The debt collector responded with inaccurate balance statements, which the debtor considered communications that violated Section 1692e's prohibition on falsely representing the amount of a debt. *Id.* The Sixth Circuit disagreed, however, because any inaccurate representation was "merely a ministerial response to a debtor inquiry, rather than

23

part of a strategy to make payment more likely." *Id.* at 173.  The debt collector's

responses lacked "an animating purpose" to induce payment that the court

considered necessary for a debt collector's communication to qualify as a

representation in connection with the collection of a debt under Section 1692e.

*Id.*

LS&R claims that its "only action was sending correspondence to Kline's

counsel upon his request," and, in accordance with *Grden*, its "responsive

correspondence to Kline's counsel is not what the FDCPA was designed to

prohibit." Doc. #297 at 11-12.  The Court has no quarrel with the foregoing

analogy.  *Grden* would likely foreclose Kline's claim, if it were based on

communications from LS&R -- but it is not.  The Court previously dismissed Kline's

Section 1692e claim based on communications.  Doc. #116 at 10.  Kline's

remaining claim arises under Section 1692f(1), which prohibits "[t]he <u>collection</u> of

any amount . . . unless such amount is expressly authorized by the agreement

creating the debt or permitted by law," a completely distinct basis for a claim from

the "false, deceptive, or misleading <u>representation</u> or means in connection with the

collection of any debt," such as a <u>communication</u>, that is the subject of Section

1692e.  (emphasis added.)  The distinction is obvious, and the Court discussed it

previously. *See* Doc. #294 at 15-16 (stating that *Grden* "was concerned with the

possible deceptive or misleading representation contained in a communication from

an attorney debt collector, not with the collection itself").

24

LS&R appears to be arguing that *Grden* forecloses any possibility of Kline bringing a Section 1692f(1) claim based on the collection of a debt unauthorized by law or the agreement creating it, simply because Kline initiated the communication that led to the eventual collection. However, it is not clear why LS&R believes that the party who initiated the communication is relevant, much less dispositive, if the communication itself is not the basis for the claim. A Section 1692f(1) claim examines the law and the agreement that govern and create the debt, both of which exist, as factual predicates to the claim, well before any communications in connection with collection after default, which give rise to a distinct Section 1692e claim. In *Grden*, when the inaccurate balance statements were the basis for the claim, the "decisive point" for the Sixth Circuit was that the plaintiff, not the defendant, initiated contact, resulting in the communications that gave rise to the claim. *Grden*, 643 F.3d at 173. Although Kline also initiated contact, his claim is not based on LS&R's response. It is based on the collection of the debt pursuant to his mortgage agreement. In contrast, the *Grden* plaintiff did not argue that the debt collected from her was not authorized by either the agreement that created it or controlling law. If she had, the fact that she initiated contact with a creditor who provided "ministerial response[s]" devoid of the "animating purpose" of inducing her to pay would have had little relevance to the Section 1692f(1) inquiry, which focuses on the debt itself and the terms that created it.

LS&R argues further that *Grden*'s Section 1692e holding should extend to a claim under Section 1692f(1) because the "broader statutory language" of the former provision ("in connection with the collection") encompasses "the more limited language" of the latter provision ("to collect or attempt to collect"). Doc. #297 at 12. As a guide to statutory construction, this argument cannot be accepted. It would be wholly inappropriate to haphazardly import a phrase defining the scope of one violation into another provision. This is particularly true because, as discussed, Section 1692e and Section 1692f(1) present completely distinct factual bases for the violations they address (a representation made while collecting a debt versus the actual or attempted collection). LS&R's argument that the holding of *Grden*, which concerns a Section 1692e claim, forecloses Kline's surviving FDCPA claim under Section 1692f(1) is without merit. Accordingly, the Court declines to reconsider the issue of *Grden*'s applicability to Kline's claim.

**D. The Court Could Not, and Cannot, Determine that the Attorneys' Fees LS&R Collected were Reasonable as a Matter of Law**

LS&R also asks the Court to reconsider its conclusion that LS&R was not entitled to judgment on the pleadings, arguing again that the attorneys' fees charged to Kline were reasonable as a matter of law. Doc. #297 at 12-13. LS&R argues that it is entitled to judgment on this issue because "courts have found that there is no FDCPA claim for challenging the 'reasonableness' of fees," citing for support *Bull v. Asset Acceptance, LLC*, 444 F. Supp. 2d 946 (N.D. Ind. 2006) and *Cheng v. Messerli & Kramer, P.A.*, No. 06-3054, 2007 WL 1582714 (D. Minn.

26

May 30, 2007).  In *Bull*, a debtor signed a credit card agreement providing for reasonable attorneys' fees in the event of default, which, according to the creditor, amounted to nearly four thousand dollars.  *Bull*, 444 F.Supp.2d at 946.  The debtor filed suit under the FDCPA, claiming the amount of attorneys' fees sought was "outlandish." *Id.* at 949.  The United States District Court for the Northern District of Illinois dismissed the claim under Federal Civil Rule 12(b)(6), based on Seventh Circuit precedent holding "that merely stating an amount of attorneys' fees in a dunning letter to a debtor does not violate the FDCPA where, as here, the debtor previously agreed to pay attorneys' fees if he defaulted." *Id.* (citing *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562 (7th Cir. 2004) and *Singer v. Pierce & Associates, P.C.*, 383 F.3d 596 (7th Cir. 2004)).  Similarly, the *Cheng* plaintiff was also sued for credit card debt and attorneys' fees pursuant to a cardholder agreement that provided for reasonable attorneys' fees in the event of default, and subsequently brought an FDCPA claim alleging that the fees were "unreasonable as a matter of law." *Cheng*, 2007 WL 1582714 at *2.  Citing *Bull* and *Singer*, the court granted summary judgment to the defendant, stating that "an allegation that the attorneys' fees requested are patently unreasonable is not sufficient to state a claim under the FDCPA." *Id.*

Kline's FDCPA claim, like those *Bull* and *Cheng*, involves an agreement authorizing reasonable attorneys' fees in the event of a debtor's default.  However, LS&R's argument oversimplifies the similarities that *Bull* and *Cheng* bear to Kline's Section 1692f(1) claim.  A claim arises under Section 1692f(1) upon the

27

"collection of any amount" that is either 1) not "expressly authorized by the agreement creating the debt" or 2) not "permitted by law" applicable to the debt. 15 U.S.C. § 1692f(1). The claims asserted in *Bull* and *Cheng* under the FDCPA challenged, in their entirety, the "reasonableness" of the attorneys' fees levied against them, and thus arose solely under the "expressly authorized by the agreement" prong of the statute. In contrast, Kline's claim is not "based solely upon the reasonableness of attorney fees," as LS&R alleges. Doc. #297 at 13. Rather, Kline's claim, as stated in the Amended Complaint, concerns the legality of the fees charged pursuant to the mortgage agreement, thereby invoking the "permitted by law" prong of Section 1692f(1). Doc. #157 at 13-16. Nowhere in the Amended Complaint does Kline mention the reasonableness of the attorneys' fees, focusing instead on the legality of the fees charged pursuant to the mortgage agreement under Ohio law.

The reasonableness inquiry, therefore, arose not from a specific factual allegation made by Kline, but from the burden LS&R bore when it moved the Court for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. LS&R's argument that the Court recognized an FDCPA claim based on the reasonableness of attorneys' fees mischaracterizes the Court's analysis and misunderstands the procedure that LS&R itself set in motion. To prevail on its motion, LS&R had the burden of demonstrating that the pleadings, together with any exhibits or items attached thereto, showed that it was clearly entitled to judgment after analyzing the requirements of each element of Kline's Section

28

1692f(1) FDCPA claim. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (setting forth standard for granting judgment on the pleadings under Federal Civil Rule 12(c)). A Section 1692f(1) claim contains what could be characterized as a factual prong (whether the "amount is expressly authorized by the agreement" and a legal prong (whether the amount is "permitted by law"). 15 U.S.C. § 1692f(1). Thus, LS&R had the burden of demonstrating that that Kline's "well-pleaded material allegations," *Winget*, 510 F.3d at 581, as well as "items appearing in the record of the case, and exhibits attached to the complaint [or other pleadings]," *Barany-Snyder*, 539 F.3d at 332, were factually sufficient to show that the fees it collected were "expressly authorized" by Kline's mortgage agreement, in addition to successfully arguing that the provision was "permitted by law." 15 U.S.C. § 1692f(1).

In *Shapiro v. Riddle & Assoc., P.C.*, 240 F. Supp. 2d 287 (S.D.N.Y. 2003), for example, the trial court granted summary judgment to the defendant on an FDCPA claim arising from an agreement that authorized reasonable attorneys' fees after the defendant submitted "undisputed evidence," including affidavits from attorneys, of the work they actually performed. *Id.* at 289. That showing was sufficient to shift the burden back to the plaintiff to demonstrate that the $98 fee was unreasonable. *Id.* Because the plaintiff offered no "admissible evidence sufficient to raise a genuine issue of fact as to reasonableness" in response, the defendant was entitled to judgment as a matter of law. *Id.*

Here, in moving for judgment on the pleadings, LS&R bore a heavier burden than the *Shapiro* defendant, who was able to submit new evidence and affidavits. Because LS&R moved the Court for judgment on the pleadings, it was confined to "matters of public records, orders, items appearing in the record of the case, and exhibits attached to the complaint [or other pleadings]" to show that it was entitled to judgment as a matter of law. *Barany-Snyder v. Weiner*, 539 F.3d at 332. For LS&R, this was complicated by several factual issues, such as whether the fees charged to Kline were "reasonable," as required by the agreement, and whether they were "actually incurred." *See Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 891 (S.D. Ohio 2003) (analyzing identical language in standard mortgage agreement and agreeing with "numerous courts" that such attorneys' fees must be "actually incurred"). The Court recognized that the parties disputed whether LS&R actually incurred the fees, as well as their reasonableness, according to the terms of the agreement. To overcome its burden, LS&R pointed only to the state court filings in the foreclosure complaint against Kline. Due to the fact-sensitive nature of the inquiry, the Court found LS&R's efforts insufficient to show that it was entitled to judgment on the pleadings alone. *See Scott*, 284 F.Supp.2d at 890-92 (recognizing that the issue of whether the defendant actually "incurred charges to protect the value of Plaintiffs' property or their interest therein" in accordance with an identical mortgage provision "is a matter which requires properly submitted evidence and, thus, is more appropriately addressed in a summary judgment motion"). Thus, the Court did not recognize or "allow" a

generalized "FDCPA claim[] based solely upon the reasonableness of attorney fees," as LS&R argues, when it concluded that LS&R did not meet its burden. Doc. #297 at 13. After considering LS&R's Motion for Judgment on the Pleadings, the Court concluded that the materials in the pleadings, as well as the state court filings of public record, could not by themselves show that the attorneys' fees collected from Kline were actually incurred or expressly authorized by the mortgage agreement. Those issues remain unresolved. Accordingly, LS&R has still failed to demonstrate that it its entitled to judgment as a matter of law on Kline's Section 1692f(1) claim.

## III.    CONCLUSION

Although a Rule 59(e) motion "is not an opportunity to re-argue a case," LS&R's arguments in support of its Motion for Reconsideration only repeat the arguments it previously presented to the Court. *See Chippewa Indians*, 146 F.3d at 374. LS&R has not identified "a clear error of law" that would justify, under Rule 59(e), a reconsideration of the Court's Decision and Entry of February 27, 2013 (Doc. #294) overruling LS&R's Motion for Judgment on the Pleadings (Doc. #277). *Intera Corp.*, 428 F.3d at 620.

Furthermore, the issue of law that LS&R wishes to certify to the Ohio Supreme Court is neither new nor sufficiently unsettled to warrant certification, and, therefore, the Court declines to certify same.

31

Accordingly, the Court OVERRULES LS&R's Motion to Reconsider, or in the Alternative, to Certify to Ohio Supreme Court (Doc. #297).


Date:  September 18, 2013                    _____

                                             WALTER H. RICE
                                             UNITED STATES DISTRICT JUDGE