IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,

      Plaintiffs,

    v.

MORTGAGE ELECTRONIC
SECURITY SYSTEMS, et al.,

      Defendants.

:

:

:

:

Case No. 3:08-cv-408

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART DEFENDANT REIMER, LORBER AND ARNOVITZ CO., LPA'S
MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. #323) AND
DISMISSING WITH PREJUDICE THE CLAIM OF PLAINTIFF EUGENE
KLINE AGAINST SAID DEFENDANT UNDER THE OHIO CONSUMER
SALES PRACTICES ACT, OHIO REV. CODE § 1345.02

---

In this putative class action, a number of individuals, including Plaintiff

Eugene Kline ("Kline"), brought claims against eleven defendants, including the

moving Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A, f.k.a. Reimer,

Lorber and Arnovitz Co., LPA ("Reimer").  Plaintiffs sought monetary damages and

injunctive relief for alleged violations of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692a, *et seq.*; the Truth in Lending Act ("TILA"), 15

U.S.C. §§ 1601, *et seq.*; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio

Revised Code § 1345.02, and Ohio common law claims of unjust enrichment and

breach of contract.  The claims arose out of alleged misconduct in mortgage

servicing, misrepresentation in foreclosure filings, and charging and collecting of

improper and excessive fees.  The Court has jurisdiction over all federal claims

pursuant to 28 U.S.C. § 1331, the federal question statute.  The Court has

supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Pending before the Court is Reimer's Motion for Judgment on the Pleadings

(Doc. #323), which seeks dismissal of Kline's OCSPA and unjust enrichment

claims.  For the reasons set forth below, the Court SUSTAINS Reimer's motion

insofar as it seeks dismissal of Kline's OCSPA claim, but the Court OVERRULES

the motion with regards to Kline's claim for unjust enrichment.

## I.    **RELEVANT PROCEDURAL HISTORY**

Kline and his former co-plaintiffs brought this putative class action on

November 10, 2008, against eleven defendants, including Reimer.  Doc. #1.  On

March 3, 2009, Reimer filed a Motion to Dismiss all of Kline's claims against it for

failure to state a claim upon which relief can be granted under Rule 12(b)(6).  Doc.

#35.  The Court referred that motion to United States Magistrate Judge Sharon

Ovington for a Report and Recommendations, who recommended that Reimer's

motion be granted.  Doc. #125.

In its Decision and Entry of March 22, 2010, the Court adopted Judge

Ovington's Report and Recommendations in their entirety, and dismissed Kline's

FDCPA claims against Reimer.  Doc. #150.  The Court also dismissed without

prejudice Kline's claims of unjust enrichment and violations of the OCSPA,

2

declining to exercise supplemental jurisdiction over them in the absence of a viable federal claim. *Id*. at 14.

On April 14, 2010, the Plaintiffs filed their First Amended Complaint. Doc. #157. The First Amended Complaint purported to restate all of Kline's dismissed claims against Reimer. This appears to have been a drafting error, however, as evidenced by the Stipulation Regarding Amended Complaint filed shortly thereafter by Kline and Reimer. Doc. #161. In that filing, the parties recognized the Court's previous dismissal of Kline's claims against Reimer and stipulated that the First Amended Complaint contained no new or amended allegations against the firm. *Id*.

On multiple occasions thereafter, Kline moved the Court for reconsideration of its dismissal of his claims against Reimer and Defendant Lerner, Sampson and Rothfuss ("LS&R"), another law firm that had represented creditors in foreclosure proceedings against him. Docs. #123, #216, & #265. The Court overruled Kline's first two motions. Docs. #214 & #262. Kline prevailed, however, on his February 2, 2012, motion (Doc. #265), and the Court's Decision and Entry of April 19, 2012, reinstated Kline's FCDPA claims under Section 1692f(1) against Reimer and LS&R. Doc. #271.

On May 29, 2012, Reimer filed a Motion to Dismiss directed at Kline's claims in the Amended Complaint. Doc. #274. The Court overruled Reimer's Motion to Dismiss on February 26, 2013. Doc. #293. In the same entry, the Court reinstated Kline's state law OCSPA and unjust enrichment claims against

3

Reimer, which the Court had inadvertently not addressed when it reinstated Kline's FDCPA claim. *Id.* at 8-9.

On February 21, 2014, Reimer filed a Motion for Judgment on the Pleadings, seeking dismissal of Kline's state law OCSPA and unjust enrichment claims. Doc. #323. Kline filed a Response in Opposition on April 8, 2014. Doc. #330. On April 29, 2014, Reimer filed its Reply Brief. Accordingly, the motion is fully briefed and ripe for the Court's ruling.

## II.   **FACTUAL ALLEGATIONS**

The Amended Complaint alleges that Kline entered into a $160,000 loan transaction with WMC Mortgage Corporation ("WMC") in June of 2004. Doc. #157 ¶ 25. After Kline fell behind on the payments and defaulted on the loan, Reimer commenced foreclosure proceedings against him in August, 2005, on behalf of WMC and the loan servicer, HomEq Servicing Corporation ("HomEq"). *Id*. ¶¶ 26-29. The mortgage was later reinstated and the foreclosure case against Kline was dismissed. *Id*. ¶ 30.

By December of 2006, Kline had again fallen behind on the loan payments, and HomEq notified him that he faced further foreclosure proceedings if he failed to bring the loan current. *Id*. ¶ 31. Another foreclosure action was filed against Kline on March 16, 2007, again with Reimer as counsel, but this time with "Wells Fargo Bank, N.A., as Trustee" ("Wells Fargo") named as the plaintiff. *Id*. ¶¶ 32-33.

4

Kline alleges that although the foreclosure complaint stated that Wells Fargo was the owner and holder of the promissory note and the mortgage, the mortgage was not assigned to Wells Fargo until March 26, 2007, ten days after the filing of the foreclosure action. *Id*. ¶¶ 34, 37. He also alleges that both Wells Fargo and Reimer knew that the papers filed in the foreclosure action falsely represented Wells Fargo as the owner of the note and the creditor to whom Kline owed the debt. *Id*. ¶¶ 34-36. Kline also alleges that an employee of HomEq falsely represented himself as a Vice-President of Mortgage Electronic Registration Systems, Inc. ("MERS") in order to effect the assignment to Wells Fargo. *Id*. ¶¶ 39-44. During these foreclosure proceedings, Kline sold his home and paid off the loans secured by it. *Id*. ¶ 43.

Kline alleges that Reimer charged him a number of fees and expenses to pay off the delinquent loan held by Wells Fargo. *Id*. ¶¶45-61. These fees included $450.00 for "Process Service," $75 for each of the parties served, $100 to serve MERS, a $50 "handling" fee, $803 for a "Preliminary Judicial Report" (of which $335 went towards an "Exam Fee"), $150 for a "Final Judicial Report" (of which $50 went towards an "Exam Fee"), and late fees charged after the acceleration of the loan. *Id* ¶¶ 45-67. According to Kline, Reimer's actions make it liable under the FDCPA, the OCSPA, and a claim for unjust enrichment under state law.

## III.   STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move

for judgment on the pleadings after the pleadings have closed, but not so that trial

is delayed.  The standard of review for ruling a motion on the pleadings brought

under Rule 12(c) is the same as the standard of review for a motion brought under

Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  *Fritz v.*

*Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "For purposes of

a motion for judgment on the pleadings, all well-pleaded material allegations of the

pleadings of the opposing party must be taken as true, and the motion may be

granted only if the moving party is nevertheless clearly entitled to judgment."

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007) (quoting *S.*

*Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th

Cir. 1973)).  In addition to the facts and allegations stated in the complaint,

"matters of public records, orders, items appearing in the record of the case, and

exhibits attached to the complaint may also be taken into account" when ruling on

a motion brought under Rule 12(c).  *Barany-Snyder v. Weiner*, 539 F.3d 327, 332

(6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.2001)).

A complaint need not set down in detail all the particulars of a plaintiff's

claim, as Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short

and plain statement of the claim showing that the pleader is entitled to relief."

However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

6

(2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that "[a] formulaic recitation of the elements of a cause of action" is not enough). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (emphasis in original).

## IV.   ANALYSIS

Reimer's Motion for Judgment on the Pleadings seeks an order dismissing Kline's state law claims against it. The Court will first address Kline's OCSPA claim before turning to the claim for unjust enrichment.

### A.   OCSPA Claim

Reimer makes several arguments to support dismissal of Kline's OCSPA claim. Doc. #323-1. Reimer points out that its client, Wells Fargo, is exempt from the OCSPA, a fact that the Court previously recognized when it dismissed Kline's OCSPA claim against the bank. *Id.* at 5-6. Because the OCSPA requires a "consumer transaction" to state a claim and the statute explicitly exempts transactions with financial institutions, Reimer contends that an attorney representing a financial institution cannot be sued under the statute because no "consumer transaction" existed. *Id.* at 7-9. Reimer also argues that Kline has failed to allege that it is a "supplier" under the statute. *Id.*

7

Kline responds by citing several cases in which courts have recognized viable OCSPA claims against attorneys, such as Reimer, who represent creditors. Doc. #330 at 9.  Furthermore, Kline argues that attorneys or firms who routinely represent creditors in debt collection are considered "suppliers" under the OCSPA. *Id.* at 9-10.

In its Reply Brief, Reimer argues that recent case law from the Sixth Circuit requires the conclusion that attorneys who represent clients in foreclosure actions are not "suppliers" under the OCSPA.  Doc. #332 at 3 (citing *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013) and *Clark v. Lender Processing Servs.*, 562 F. App'x. 460 (6th Cir. 2014)).

The OCSPA prohibits a "supplier" from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction."  Ohio Rev. Code. § 1345.02(A).  A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."  *Id.* § 1345.01(C). However, the statute specifically exempts "an assignee or purchaser" of a residential mortgage from the definition of supplier, and makes it clear that "in a consumer transaction in connection with a residential mortgage, 'seller' means a loan officer, mortgage broker, or nonbank mortgage lender."  *Id.*

The statute further defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal,

8

family, or household, or solicitation to supply any of these things." *Id.*

§ 1345.01(A). Transactions between financial institutions and consumers are

exempted from the OCSPA's definition of "consumer transactions," although

"transactions in connection with residential mortgages between loan officers,

mortgage brokers, or nonbank mortgage lenders and their customers" are covered

by the statute. *Id.*

As Reimer points out, the Court previously recognized that Wells Fargo's

status as a financial institution prevented the bank from participating in what the

OCSPA defines as a "consumer transaction," and accordingly dismissed Kline's

OCSPA claim against the bank. Doc. #155 at 9; Doc. #240 at 2 n.1.

Nevertheless, the survival of Kline's OCSPA claim against Reimer has always

required a legally cognizable basis for recognizing Reimer as a "supplier" of a

"consumer transaction" between itself and Kline, apart from the mere fact that it

represented Wells Fargo in the foreclosure proceedings. As Reimer argues,

however, recent holdings from the Sixth Circuit and the Ohio Supreme Court

appear to place the firm's actions outside the reach of the OCSPA, at least with

regard to its activities involved in foreclosure proceedings.

In *Clark v. Lender Processing Servs.*, 562 F. App'x. 460, 468 (6th Cir.

2014), the Sixth Circuit held that the OCSPA's definition of a "supplier" excludes

both a vendor that "helps initiate and manage foreclosure proceedings on behalf of

a financial institution" and the law firm that institutes foreclosures for the vendor,

leading the court to uphold the dismissal of the plaintiff's OCSPA claims against

9

both defendants.  The *Clark* court relied on *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), in which the Ohio Supreme Court held that a mortgage servicer was not a "supplier" within the meaning of the OCSPA, and the servicing of a residential mortgage loan was not a "consumer transaction" under the statute.  In *Anderson,* the Ohio Supreme Court reasoned that a mortgage servicer:

> does not engage in the business of effecting or soliciting consumer transactions.  The residential mortgage transaction is a transaction that occurs between the financial institution and the borrower.  Mortgage servicers are not part of this transaction.  And simply servicing the mortgage is not causing a consumer transaction to happen.  Similarly, mortgage servicers do not seek to enter into consumer transactions with borrowers.

*Anderson*, 989 N.E.2d at 1003.

The *Clark* court found that this reasoning applied to vendors of foreclosure-related services as well, because such companies "do not seek to provide consumers with services" and "offer their services to lenders."  562 F. App'x at 468.  The absence of any "consumer transaction" covered by the OCSPA is evident: "Consumers would only interact with [the defendant] because its lender-client had hired the company to help initiate and manage a foreclosure.  Managing a process that ends with a consumer losing her home could scarcely be considered a 'service' for the consumer."  *Id.*  The Sixth Circuit also noted that *Anderson's* reasoning applied to the law firm representing the vendor as well.  *Id.*

Here, like the mortgage servicer in *Anderson* and the vendor of foreclosure-related services in *Clark*, the service that Reimer provided was to its client, Wells

10

Fargo, and not to Kline. Under *Clark*, Reimer is not a "supplier" under the OCSPA, at least with regards to foreclosures that it institutes on behalf of its clients. *See also Floyd v. Bank of Am.*, N.A., No. 1:13-cv-2072, 2014 WL 3732591 at *7, (N.D. Ohio July 25, 2014) (applying *Anderson* and *Clark* and dismissing OCSPA claims against a bank and the law firm that represented it in the foreclosure proceedings).

Furthermore, Kline has failed to identify any "consumer transaction" that existed between himself and Reimer that the OCSPA recognizes. Kline's only rebuttal is that Reimer is a "debt collector" that is subject to the OCSPA, with citations to various cases to support that proposition. An example is *Rini v. Javitch, Block & Rathbone, LLC*, No. 1:13-cv-178, 2013 U.S. Dist. LEXIS 80707 (N.D. Ohio June 7, 2013), in which a law firm was sued when attempting to collect an unpaid credit card debt, and the court observed that "courts have used the inclusive language of the OCSPA to consider debt collectors to be suppliers, [and] they have also considered the act of collecting the debt to be a consumer transaction." In the wake of the *Anderson* holding, however, not all instances of debt collection qualify as a "consumer transaction" under the OCSPA, particularly when they concern real estate. *Anderson*, 989 N.E.2d at 1001. As the Sixth Circuit noted in *Clark*, debt collection cases like *Rini* "did not play a role in the *Anderson* court's reasoning," as the Ohio Supreme Court focused on the fact that the transaction in question was between the mortgage servicer and the law firm it

11

retained, not a "consumer transaction" between the law firm and the plaintiff. 562 F. App'x at 468.

Under *Clark* and *Anderson*, Reimer was not a "supplier" of a "consumer transaction" that involved Kline when it represented Wells Fargo in the foreclosure action. Accordingly, Reimer's motion is sustained with regards to Kline's claim against Reimer under the OCSPA, and said claim is dismissed with prejudice.

**B.    Unjust Enrichment Claim**

Reimer also argues for dismissal of Kline's unjust enrichment claim. According to Reimer, Kline fails to allege any facts that might demonstrate that he conferred a benefit on Reimer. Doc. #323-1 at 11. Reimer argues that Kline's allegations of unjust enrichment, which are generically directed at all "Defendants," are simply a "formulaic recitation of the elements of a cause of action" that do not satisfy acceptable pleading standards. *Id.* at 10 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Kline counters that Reimer is incorrect in stating that he has failed to allege that he conferred a benefit on the firm, and cites six paragraphs from the Amended Complaint that allege that Reimer and an associated entity, Nova Title Agency, Inc., received improper fees in specific amounts. Doc. #330 at 3-4. Kline also argues that a viable claim for unjust enrichment does not require direct payment from the plaintiff to the defendant if it can be proven that the defendant was the ultimate recipient of the funds. *Id.* at 6-7. Finally, Kline argues that he provided a

12

number of interrogatory responses that specifically addressed and elaborated on his allegations that Reimer was the beneficiary of improper fees collected in the 2005 foreclosure action against him. *Id.* at 7-8.

In its Reply Brief, Reimer argues that the allegations in the Amended Complaint to which Kline points do not state that it received a benefit. Doc. #332 at 8-9. Furthermore, Reimer argues that Kline's allegation that "a separate and distinct corporate entity," Nova Title Agency Inc., received a benefit cannot be imputed to Reimer. *Id.* Finally, Reimer points out that the interrogatory responses cited by Kline pertain to the 2005 foreclosure lawsuit that is not the subject of the current lawsuit or Kline's unjust enrichment claim. *Id.* at 9-10.

Unjust enrichment occurs "when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party." *Meyer v. Chieffo*, 950 N.E.2d 1027, 1034 (Ohio Ct. App. 2011). The Ohio Supreme Court has described the common law claim of unjust enrichment as comprising the following elements: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298 (Ohio 1984)).

Assuming the allegations of the Amended Complaint to be true, the Court cannot conclude that Kline has failed to state a claim for unjust enrichment under

13

Ohio law.  Reimer correctly observes that the Fourth Claim for Relief, "Unjust

Enrichment Against All Defendants," begins with nothing more than a "formulaic

recitation of the elements of a cause of action" of the type frowned upon by the

Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Furthermore, the rest of the paragraphs

of the Fourth Claim mention MERS, Wells Fargo, and a number of other

Defendants, but not Reimer.  Nevertheless, as Kline points out, the factual

allegations in Paragraphs 54-59 of the Amended Complaint can be read to support

a claim for unjust enrichment.  Those allegations state that Reimer "improperly

passed the costs of a so-called 'Preliminary Judicial Report' to Kline" by having it

conducted by Nova Title Agency, Inc., which was "effectively the same entity" as

Reimer.  They also state that Kline "was charged" various amounts for a

"Preliminary Judicial Report," and a "Final Judicial Report," along with "Exam

Fees."  It can be inferred that Reimer received a benefit from Kline by having

"improperly passed the costs" of these allegedly unnecessary reports to him.  The

applicable standard of review requires that the Court draw any inferences from the

facts of the Amended Complaint in Kline's favor.  *Wallin v. Norman*, 317 F.3d

558, 561 (6th Cir. 2003).

Apart from the inferential case to be made from the language of the

Amended Complaint, the record before the Court contains evidence that Reimer

sought and obtained a monetary benefit from Kline that corresponds to the

allegations in the Amended Complaint.  First, a November 15, 2007, letter on

14

Reimer's letterhead that is addressed to Kline's attorney demands a payoff amount of $176,332.28, which "includes an estimate of court costs." Doc. #274-10 at 2. Kline alleges that he paid this amount on November 18, 2007. Doc. #157 ¶ 66. Second, a February 7, 2008, letter on Reimer's letterhead that is addressed to Kline's attorney contains an itemized list, under the heading "court costs," that corresponds in name and amount to the fees described in the Amended Complaint. Doc. #274-11 at 1. The letter states that the "court costs were actual deposits made by our office." *Id.* Nova Title, Inc., is mentioned nowhere in either letter sent from Reimer to Kline's attorney. Thus, whatever role Nova Title, Inc., played in the allegedly illegal fees and costs appears to predate the receipt of the benefit that forms the basis for Kline's claim of unjust enrichment.[1]

Finally, Reimer correctly argues that Kline's interrogatory responses all concern the 2005 foreclosure, which is not the subject of this action. It is, therefore, irrelevant whether those responses provide further detail that might support a claim of unjust enrichment arising out of the 2005 foreclosure, and it is unclear why Kline brings them up to support a claim arising out of the 2007 foreclosure. The allegations of the Amended Complaint and the record before the Court demonstrate that Kline's viable unjust enrichment claim arises from the fees Reimer collected in the 2007 foreclosure case.

---

[1] The two letters were attached as exhibits to the Motion to Dismiss filed by Reimer on May 29, 2012 (Doc. #274). As such, they are "items appearing in the record of the case" that are appropriate to consider when ruling on a Motion for Judgment on the Pleadings. *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008).

Based on the foregoing, Kline has stated a viable claim for unjust enrichment under Ohio law, and Reimer's Motion for Judgment on the Pleadings must be overruled with respect to said claim.

## V.    CONCLUSION

To summarize, Reimer's Motion for Judgment on the Pleadings (Doc. #323) is SUSTAINED in part and OVERRULED in part.  The motion is SUSTAINED with regards to Kline's claim against Reimer under the Ohio Consumer Sales Practices Act, and said claim is DISMISSED WITH PREJUDICE.  The motion is OVERRULED with respect to Kline's claim against Reimer for unjust enrichment under the common law of Ohio.

To date, Kline's remaining claims against Reimer are: 1) a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1), and 2) a claim under the common law of Ohio for unjust enrichment. *See* Doc. #271 (Decision and Entry of April 19, 2012, reinstating Kline's FDCPA claim) and Doc. #293 (Decision and Entry of February 26, 2013, clarifying that the Court only reinstated Kline's FDCPA claim under 15 U.S.C. § 1692f(1), not the previously dismissed claim under 15 U.S.C. § 1692e).

The aforementioned claims are set forth in the Amended Complaint as class action claims. *See* Doc. #157 at 4-5.  The parties are reminded that the deadline

16

for filing a Motion for Class Certification is November 4, 2014.  *See* Doc. #329

(Order Adopting the Parties' Proposed Stipulated Order of New Trial and Other

Dates).


Date: September 5, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE