IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,                    :

        Plaintiffs,

    v.                                   :     Case No. 3:08-cv-408

MORTGAGE ELECTRONIC                      :     JUDGE WALTER H. RICE
SECURITY SYSTEMS, et al.,

        Defendants.                  :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT LERNER, SAMPSON & ROTHFUSS'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #310); DISMISSING WITH PREJUDICE THE CLAIM OF PLAINTIFF EUGENE KLINE AGAINST SAID DEFENDANT UNDER THE OHIO CONSUMER SALES PRACTICES ACT, OHIO REV. CODE § 1345.02

---

In this putative class action, a number of individuals, including Plaintiff Eugene Kline ("Kline"), brought claims against eleven defendants, including the moving Defendant Lerner, Sampson and Rothfuss ("LSR"). Plaintiffs sought monetary damages and injunctive relief for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.02, and Ohio common law claims of unjust enrichment and breach of contract. The claims arose out of alleged misconduct in mortgage servicing, misrepresentation in foreclosure filings, and charging and collecting of improper and excessive fees. The Court has

jurisdiction over all federal claims pursuant to 28 U.S.C. § 1331, the federal question statute. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Pending before the Court is LSR's Motion for Partial Summary Judgment (Doc. #310), which seeks dismissal of Kline's OCSPA and unjust enrichment claims. For the reasons set forth below, the Court SUSTAINS in part and OVERRULES in part LSR's motion.

## I.   RELEVANT FACTUAL & PROCEDURAL BACKGROUND

On March 16, 2007, a foreclosure action was filed in the Montgomery County, Ohio, Court of Common Pleas, based on Kline's default of the primary mortgage loan that secured his home. Doc #310-2. The complaint named Mortgage Electronic Registration Systems, Inc. ("MERS") "as nominee for WMC Mortgage Corporation" among the defendants, due to a second mortgage on Kline's home. *Id.* LSR filed an answer on behalf of MERS, as nominee for WMC Mortgage Corporation, on May 17, 2007, asserting an interest in the property based on a note for "$28,858.40 together with interest at the rate of 12.875% per year from January 1, 2007, plus court costs, advances, and other charges, as allowed by law." Doc. #310-4. Only the second mortgage and LSR's representation of the junior lienholder are relevant to Kline's claims against LSR and the present motion.

2

On October 30, 2007, Kline's attorney sent a letter to LSR, requesting "a written payoff" for the loan secured by the second mortgage. Doc. #310-5. On November 14, 2007, LSR sent a letter to Kline's attorney stating that the total amount of the payoff was $32,946.43. Doc. #310-6. The letter provided the following breakdown of the payoff amount: $28,858.40 for the "Principal Balance Due," $3,485.03 in interest, $28 for "Recording," $225 for "Previous Service Costs" and $350 for "Attorney Costs." *Id*. The letter demanded payment in the form of a certified check, cashier's check, or money order, made payable to HomeQ Servicing Corporation ("HomeQ"), the servicer of the second mortgage and LSR's client, prior to December 6, 2007. On November 18, 2007, Kline sold his home to pay off the loan. Doc. #157 at 14 (Am. Compl. ¶¶ 67-68).

On December 19, 2007, Kline's attorney wrote to LSR to request an itemization of the "Attorney Costs" and the "Previous Service Costs" listed in the payoff quote. Doc. #310-7. The request also asked for an itemization of the interest charged to Kline and proof that the "Recording" fee had actually been paid.

LSR responded to the request in a letter dated February 19, 2008. Doc. #310-10. Therein, LSR stated that the $350 in attorney fees "were incurred by [its] client in the protection of its security/mortgage as provided in paragraph 7 of the mortgage" when it was named as a defendant in the foreclosure lawsuit. *Id.* The letter described the legal work that LSR had performed: "My office reviewed all pleadings and correspondence (including the complaint, answers, motion for

3

summary judgment and opposition), prepared and filed the answer, and attended the telephone pretrial." *Id.*

The letter also described the $225 in "Previous Service Costs" as an amount paid to 3 Arch Trustee Services, Inc. *Id.* at 2. According to LSR, the $225 was paid "for the servicing of this loan and monitoring of the lawsuit with services that included obtaining local counsel, production of necessary documents and loan information, and billing of invoices." *Id.* LSR also described the interest calculation as "the amount charged per diem ($10.10) for 345 days" and enclosed a copy of the check paid for the recording fee. *Id.*

Kline and his co-Plaintiffs originally filed suit on November 10, 2008. Doc. #1. An Amended Complaint was filed on April 14, 2010. Doc. #157. Therein, Kline alleged that attorney fees "incurred by a lender in foreclosure" are illegal under Ohio law, and that LSR and its clients routinely collect and attempt to collect such illegal fees. Doc. #157 ¶¶ 69-71. In addition, Kline alleged that the $225.00 in "Previous Service Costs" as paid to 3 Arch Trustee Services, Inc., were also improper. *Id.* ¶¶ 72-77. According to Kline, the fees so paid were not allowed under Ohio law because they were "fees for legal-type services which may not be passed on to a delinquent borrower under Ohio law," and unrecoverable overhead expenses, as well as constituting an "impermissible sharing of legal fees." *Id.* ¶¶ 73-75. According to the Amended Complaint, the foregoing allegations demonstrate that RLA violated the FDCPA and the OCSPA, and support a claim against RLA for unjust enrichment under state law.

4

## II.    STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure sets forth the standard and procedures for summary judgment.  Upon motion by either party, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party opposing the motion must "cit[e] to particular parts of materials in the record, including depositions, documents . . . affidavits or declarations . . .  admissions, interrogatory answers," as well as other relevant materials, to demonstrate the existence of a genuine issue of material fact.  Fed. R. Civ. P.  56(c)(1)(A).  Generalized assertions lacking the support of particularized citation required by Rule 56 do not suffice, as a court has no "obligation to 'wade through' the record for specific facts" in support of a party's arguments.  *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108 (6th Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant's burden is to demonstrate "the absence of a genuine issue of material fact as to at least one essential element on each of the Plaintiff's claims."  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

5

Once the moving party has demonstrated that no disputed issue of material fact exists, the burden shifts to the nonmoving party to present evidence of a genuine dispute of a material fact that is resolvable only by a jury. *Celotex*, 477 U.S. at 324. At this stage, it is not sufficient for the nonmoving party to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must "go beyond the pleadings" and present some type of evidentiary material that demonstrates the existence of a genuine dispute. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Conversely, material facts in genuine dispute that "may reasonably be resolved in favor of either party" require denial of summary judgment in order to be properly resolved by a jury. *Anderson*, 477 U.S. at 250.

When ruling on a motion for summary judgment, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A court must avoid "[c]redibility determinations, the weighing of

6

the evidence, and the drawing of legitimate inferences from the facts," as such are "jury functions" that are inappropriate to employ at the summary judgment stage. *Anderson*, 477 U.S. at 255.

### III.   <u>ANALYSIS</u>

LSR argues that Kline's unjust enrichment claim fails because he never conferred a benefit on the firm.  Doc. #310 at 7.  Citing the attached affidavit of its employee, Sara M. Petersmann, LSR argues that the undisputed evidence shows that its client, not Kline, paid for its attorneys' fees.  *Id.* at 7*.*  LSR also argues that it merely performed work at the behest of its client, and its retention of the fees paid by its client was therefore not unjust.  *Id.* at 7-8.  Regarding Kline's claim under the OCSPA, LSR argues that it is not a "supplier" as defined therein, and no "consumer transaction" occurred between itself and Kline.  *Id.* at 8-12.  Because both of those elements are requirements to a bringing a valid claim under the OCSPA, LSR argues that Kline's claim against it should be dismissed.  *Id.*

Kline's Memorandum in Opposition attacks LSR's arguments on several fronts.  First, Kline argues that LSR's evidence in support of the Motion for Partial Summary Judgment is inadmissible because the documents attached to the Petersmann affidavit do not qualify for the business records exception to the prohibition on hearsay, as they were prepared in anticipation of litigation.  Doc. #314 at 4-7.  Kline also points to other deficiencies in LSR's evidence, including the failure to attach the agreements referenced by the affidavit.  *Id.* at 7-9.

7

Second, Kline argues that he has not had the opportunity to depose Petersmann or anyone from LSR, and that LSR had not responded to any of his discovery requests before filing its Motion for Partial Summary Judgment. *Id.* at 9-12. Thus, Kline argues that it would be improper and premature to rule on the motion before he has had adequate opportunity to conduct discovery. *Id.* at 12-15. Finally, Kline argues that his OCSPA claim is viable because courts have often allowed claims to proceed against attorneys acting as debt collectors. *Id.* at 16-17.

Rule 56(d) of the Federal Rules of Civil Procedure states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." A party who invokes the protection of Rule 56(d) must "affirmatively demonstrate[] ... how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir. 1998) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir.1989)). Here, Kline's counsel, Paul S. Grobman, has submitted an affidavit to the Court that invokes Rule 56(d), and seeks additional discovery in lieu of consideration of LSR's motion. Doc. #315. Mr. Grobman identifies the following as issues of fact that are germane to LSR's motion:

8

   (i) the contractual arrangement between [LSR] and the other
      defendants which related to the legal services provided by the firm
      in the foreclosure action against Kline;

   (ii) the contractual arrangement between [LSR], 3 Arch Trustee
      Services and/or any other third-party outsourcer which related to
      the legal services provided by the firm in the foreclosure action
      against Kline;

   (iii) whether [LSR] shared fees or paid a referral fee to any party in
      connection with Lerner Sampson's legal representation of the
      second lender in the Kline foreclosure;

   (iv) whether [LSR] was paid for its services before reimbursement was
      collected from plaintiff;

   (v) whether payment to [LSR] for its legal services was in any [way]
      dependent on payment from plaintiff; and

   (vi) whether [LSR] was aware that the second mortgage holder it was
      representing in the foreclosure suit was the same entity as the
      entity holding the first mortgage.

Doc. #315 at 2-3.

     According to Grobman, he has been unable to obtain discovery responses

from LSR that address these factual issues.  He served a Request for the

Production of Documents, Interrogatories, and a Notice of Deposition on LSR in

October of 2013, copies of which are attached as exhibits to the affidavit.  The

subject matter of these discovery requests addressed the factual issues listed

above.  On November 12, 2013, LSR's attorney requested an extension until the

end of December to respond to the discovery requests.  Doc. #315-5.  Rather than

provide the discovery responses, however, LSR filed its Motion for Partial

Summary Judgment on December 20, 2013.  Doc. #310.

Furthermore, Mr. Grobman points to a number of factual assertions in the affidavit of Sara Petersmann, LSR's employee, that stand uncorroborated by any of the exhibits attached to her affidavit. These include the terms of LSR's agreement with its client in the foreclosure proceedings, the source of the funds LSE received, and assertions about specific amounts that Kline alleges were unauthorized fees. Mr. Grobman protests because he has been unable to depose Ms. Petersmann regarding these assertions, all of which are material to LSR's assertion that it received no benefit that would allow Kline to prevail on his unjust enrichment claim.

Under these circumstances, the Court believes that Kline has made a sufficient showing under Rule 56(d) to delay the consideration of LSR's motion, at least with regards to the unjust enrichment claim. "It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 722 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that Rule 56 requires "adequate time for discovery"). Mr. Grobman's affidavit establishes that he was not afforded any opportunity to conduct discovery before the filing of LSR's motion, much less a full or adequate one. He was, therefore, placed in the position of having to respond to LSR's motion without being able to review any of the discovery that he had requested. Accordingly, the Court overrules LSR's Motion for Partial Summary Judgment with

respect to the unjust enrichment claim, without prejudice to its renewal after Kline has had obtained responses to the discovery requests that he propounded upon LSR prior the filing of its motion.

It is unnecessary, however, to delay a decision on Kline's OCSPA claim, the fate of which is purely a matter of law. The OCSPA prohibits a "supplier" from "commit[ting] an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code. § 1345.02(A). A "supplier" is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." *Id.* § 1345.01(C). The statute further defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." *Id.* § 1345.01(A).

Recent holdings from the Sixth Circuit and the Ohio Supreme Court appear to place LSR's actions outside the reach of the OCSPA, at least with regard to its representation of a mortgage servicer in foreclosure proceedings. In *Clark v. Lender Processing Servs.*, 562 F. App'x. 460, 468 (6th Cir. 2014), the Sixth Circuit held that the OCSPA's definition of a "supplier" excludes both a vendor that "helps initiate and manage foreclosure proceedings on behalf of a financial institution" and the law firm that institutes foreclosures for the vendor, leading the court to uphold the dismissal of the plaintiff's OCSPA claims against both

11

defendants.  The *Clark* court relied on *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), in which the Ohio Supreme Court held that a mortgage servicer was not a "supplier" within the meaning of the OCSPA, and the servicing of a residential mortgage loan was not a "consumer transaction" under the statute.  In *Anderson,* the Ohio Supreme Court reasoned that a mortgage servicer:

> does not engage in the business of effecting or soliciting consumer transactions.  The residential mortgage transaction is a transaction that occurs between the financial institution and the borrower.  Mortgage servicers are not part of this transaction.  And simply servicing the mortgage is not causing a consumer transaction to happen.  Similarly, mortgage servicers do not seek to enter into consumer transactions with borrowers.

*Anderson*, 989 N.E.2d at 1003.

The *Clark* court found that this reasoning applied to vendors of foreclosure-related services as well, because such companies "do not seek to provide consumers with services" and "offer their services to lenders."  562 F. App'x at 468.  The absence of any "consumer transaction" covered by the OCSPA is evident: "Consumers would only interact with [the defendant] because its lender-client had hired the company to help initiate and manage a foreclosure.  Managing a process that ends with a consumer losing her home could scarcely be considered a 'service' for the consumer."  *Id.*  The Sixth Circuit also noted that *Anderson*'s reasoning applied to the law firm representing the vendor as well.  *Id.*

Here, like the mortgage servicer in *Anderson* and the vendor of foreclosure-related services in *Clark*, the service that LSR provided was to its client and not to

12

Kline. LSR's client, a mortgage servicer, is specifically exempt from the reach of

the OCSPA under *Anderson*. In extending that holding to the vendors of

foreclosure-related services and their attorneys, it is unquestionable that *Clark*

would also apply to the attorneys of mortgage servicers. Furthermore, under

*Clark*, LSR is not a "supplier" under the OCSPA, at least with regards to

foreclosures that it institutes on behalf of its clients. *See also Floyd v. Bank of*

*Am.*, N.A., No. 1:13–cv–2072, 2014 WL 3732591 at *7, (N.D. Ohio July 25,

2014) (applying *Anderson* and *Clark* and dismissing OCSPA claims against a bank

and the law firm that represented it in the foreclosure proceedings).

Finally, Kline has failed to identify any "consumer transaction" that existed

between himself and LSR that the OCSPA recognizes. Kline's only rebuttal is that

LSR is a "debt collector" that is subject to the OCSPA, with citations to various

cases to support that proposition. Doc. #314 at 16-17. An example is *Rini v.*

*Javitch, Block & Rathbone, LLC*, No. 1:13-cv-178, 2013 U.S. Dist. LEXIS 80707

(N.D. Ohio June 7, 2013), in which a law firm was sued when attempting to

collect an unpaid credit card debt, and the court observed that "courts have used

the inclusive language of the OCSPA to consider debt collectors to be suppliers,

[and] they have also considered the act of collecting the debt to be a consumer

transaction." In the wake of the *Anderson* holding, however, not all instances of

debt collection may qualify as a "consumer transaction" under the OCSPA,

particularly when they concern real estate. *Anderson*, 989 N.E.2d at 1001. As

the Sixth Circuit noted in *Clark*, debt collection cases like *Rini* "did not play a role

13

in the *Anderson* court's reasoning," as the Ohio Supreme Court focused on the fact that the transaction in question was between the mortgage servicer and the law firm it retained, not a "consumer transaction" between the law firm and the plaintiff. 562 F. App'x at 468.

Under *Clark* and *Anderson*, LSR was not a "supplier" of a "consumer transaction" that involved Kline when it represented its client in the foreclosure action. Accordingly, LSR's motion is sustained with regards Kline's claim against it under the OCSPA, and said claim is dismissed with prejudice.

## IV.  **CONCLUSION**

To summarize, LSR's Motion for Partial Summary Judgment (Doc. #310) is SUSTAINED in part and OVERRULED in part. The motion is SUSTAINED with regards to Kline's claim under the Ohio Consumer Sales Practices Act, and said claim is DISMISSED WITH PREJUDICE. The motion is OVERRULED, without prejudice to renewal, with respect to the claim for unjust enrichment. LSR may renew its motion and move the Court for summary judgment on said claim after Kline has had the opportunity conduct discovery, as set forth above.

To date, Kline's remaining claims against LSR are: 1) a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692f(1), and 2) a claim under the common law of Ohio for unjust enrichment. *See* Doc. #271 (Decision and Entry of April 19, 2012, reinstating Kline's FDCPA claim) and Doc. #294 (Decision and

Entry of February 27, 2013, clarifying that the Court only reinstated Kline's FDCPA claim under 15 U.S.C. § 1692f(1), not the previously dismissed claim under 15 U.S.C. § 1692e).

The aforementioned claims are set forth in the Amended Complaint as class action claims. *See* Doc. #157 at 4-5.  The parties are reminded that the deadline for filing a Motion for Class Certification is November 4, 2014.  *See* Doc. #329 (Order Adopting the Parties' Proposed Stipulated Order of New Trial and Other Dates).

Date: September 8, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE