IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,                    :

        Plaintiffs,

      v.                                    :        Case No. 3:08-cv-408

MORTGAGE ELECTRONIC                                JUDGE WALTER H. RICE
SECURITY SYSTEMS, et al.,
                                          :
        Defendants.

---

DECISION AND ENTRY SUSTAINING PLAINTIFF EUGENE KLINE'S
MOTION TO REMOVE CONFIDENTIALITY PROTECTION FOR CERTAIN
DOCUMENTS (DOC. #339); SUSTAINING IN PART AND
OVERRULING IN PART SAID PLAINTIFF'S MOTION TO COMPEL
DISCLOSURE FROM DEFENDANT MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS (DOC. #345); SUSTAINING IN PART AND
OVERRULING IN PART SAID PLAINTIFF'S MOTION TO COMPEL
DISCLOSURE FROM DEFENDANT WELLS FARGO BANK, N.A. (DOC.
#346); SUSTAINING SAID PLAINTIFF'S MOTION TO COMPEL
DISCLOSURE FROM DEFENDANT BARCLAYS CAPITAL REAL
ESTATE, INC. (DOC. #347); AND OVERRULING AS MOOT
DEFENDANTS' MOTION TO EXTEND TIME FOR RESPONSES TO
DISCOVERY MOTIONS (DOC. #343) AND DEFENDANTS' MOTION
REQUESTING DISCOVERY CONFERENCE (DOC. #355); DEFENDANTS
ARE ORDERED TO PRODUCE, WITHIN TWENTY-ONE (21) DAYS
FROM DATE, RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS

---

In this putative class action, a number of individuals, including Plaintiff

Eugene Kline ("Kline"), set forth claims against eleven defendants, seeking

monetary damages and injunctive relief based on claims under the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, *et seq*; the Truth in

Lending Act ("TILA"), 15 U.S.C. § § 1601, *et seq*; the Ohio Consumer Sales

Practices Act ("OCSPA"), Ohio Revised Code § 1345.01, *et seq*; and for unjust enrichment and breach of contract under the common law of Ohio. Plaintiffs' claims arose out of alleged misconduct in mortgage servicing, misrepresentation in foreclosure filings, and the charging and collecting of improper and excessive fees from borrowers. At this stage of the litigation, Kline is the only remaining Plaintiff. Class certification proceedings are pending. The Court's jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

The following motions are pending before the Court, all filed by Plaintiff Kline: 1) Plaintiff's Motion to Remove Confidentiality Protection for Certain Documents (Doc. #339); 2) Plaintiff's Motion to Compel Disclosure from Defendant Mortgage Electronic Registration Systems ("MERS") (Doc. #345); 3) Plaintiff's Motion to Compel Di sclosure from Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (Doc. #346); and 4) Plaintiff's Motion to Compel Disclosure from Defendant Barclays Capital Real Estate, Inc. ("Barclays") (Doc. #347).

Also pending before the Court are Defendants' Motion to Extend Time for Responses to Discovery Motions (Doc. #343) and Defendants' Motion Requesting Discovery Conference (Doc. #355), which are overruled as moot, due to the Court's rulings herein on Plaintiff's motions.

## I.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

In June, 2004, Kline entered into a $160,000 loan transaction with WMC Mortgage Corporation ("WMC"). Doc. # 157 ¶ 25. After Kline fell behind on the payments and defaulted on the loan, Defendant Reimer, Lorber & Arnovitz ("RL&A") commenced foreclosure proceedings against him in August, 2005, on behalf of WMC and the loan servicer, Defendant HomEq Servicing Corporation ("HomEq"). *Id.* ¶¶ 26–29. After the mortgage was reinstated, WMC and HomEq dismissed the foreclosure proceeding. *Id.* ¶ 30.

By December of 2006, Kline had again fallen behind on the loan payments, and HomEq notified him that he faced further foreclosure proceedings if he failed to bring the loan current. *Id.* ¶ 31. A second foreclosure action was filed against Kline on March 16, 2007, again with RL&A as counsel, but this time with Defendant "Wells Fargo Bank, N.A., as Trustee" ("Wells Fargo"), named as the plaintiff. *Id.* ¶¶ 32–33.

Kline alleges that the foreclosure complaint stated that Wells Fargo was the owner and holder of the promissory note on his mortgage, but the mortgage was not actually assigned to Wells Fargo until March 26, 2007, ten days after the filing of the foreclosure action. *Id.* ¶¶ 34, 37. According to the First Amended Complaint, both Wells Fargo and RL&A knew that the papers initially filed in the foreclosure action falsely represented Wells Fargo as the owner of the note and the creditor to whom Kline owed the debt. *Id.* ¶¶ 34–36. Kline also alleges that an employee of HomEq falsely represented himself as a Vice–President of Defendant

3

Mortgage Electronic Registration Systems, Inc. ("MERS"), in order to effect the assignment of the mortgage loan to Wells Fargo. *Id.* ¶¶ 39–44. During these foreclosure proceedings, Kline decided to sell his home and to pay off the loans it secured. *Id.* ¶ 43.

Kline alleges that a number of fees and expenses were charged in order to pay off the delinquent loan held by Wells Fargo. *Id.* ¶¶ 45–61. The fees included $450.00 for "Process Service," $75 for each of the parties served, $100 to serve MERS, a $50 "handling" fee, $803 for a "Preliminary Judicial Report" (of which $335 went toward an "Exam Fee"), $150 for a "Final Judicial Report" (of which $50 went toward an "Exam Fee"), and late fees charged after the acceleration of the loan. *Id* ¶¶ 45–67. According to the Amended Complaint, Wells Fargo, HomeQ and RL&A personally served process on MERS through inexpensive, legally acceptable methods while passing on inflated costs to a class of borrowers caught in foreclosure, of whom Kline was a representative. *Id.* ¶¶ 19(i), 47.

In addition to the loan alleged to be held by Wells Fargo, Kline's home secured a second mortgage held by MERS, with HomeEq as its loan servicer. *Id*. ¶ 64. Lerner, Sampson & Rothfuss ("LS&R") represented MERS and filed an answer on its behalf in the state foreclosure proceedings. Doc. #277-2; Doc. #1 at 66. In November of 2007, having decided to sell his home, Kline contacted LS&R to request a "formal payoff quote" in order to pay off the second mortgage. Doc. #157 ¶ 63. On November 14, 2007, LS&R responded to Kline's request with a figure that included $225 in "Previous Service Costs" and $350 in "Attorney

4

Costs." *Id*. ¶ 64. On November 18, 2007, Kline alleges that he "was forced to sell his house to pay off the amounts which were demanded by and allegedly owed to defendants [LS&R], MERS, WMC Mortgage and HomEq." *Id*. ¶ 65.

Kline alleges that attorney fees "incurred by a lender in foreclosure" are illegal under Ohio law, and that LS&R and its clients routinely collect and attempt to collect such illegal fees. *Id*. ¶¶ 69-71. In addition, Kline alleges that the $225.00 in "Previous Service Costs" was also not recoverable under the law. *Id*. ¶¶ 72-73. Kline alleges that such fees constituted "fees for legal-type services," unrecoverable overhead expenses, and an "impermissible sharing of legal fees" and were therefore improper under the law. Doc. #1 ¶¶ 75-76.

Kline and his original co-plaintiffs brought this putative class action on November 10, 2008, against eleven defendants, asserting federal claims under TILA and the FDCPA, and state statutory claims under the OSCPA, and common law claims for unjust enrichment and breach of contract. Doc. #1. After several of the claims were dismissed, Plaintiffs filed an Amended Complaint on April 14, 2010. Doc. #157.

After a protracted series of motions and rulings not relevant to the pending motions, the only remaining Plaintiff was Kline, and many of his claims were dismissed as well. Kline's remaining claims against the Defendants at whom the pending discovery motions are directed are as follows: 1) against MERS, Kline has a claim under the TILA, a claim under the OCSPA, and a claim for breach of

contract;[1] 2) against Wells Fargo, Kline has a claim under the TILA and a claim for breach of contract;[2] and 3) against Barclays, Kline has a claim under the OCSPA and a claim for unjust enrichment.[3]

On May 14, 2014, Plaintiff Kline filed Motion to Remove Confidentiality Protection for Certain Documents (Doc. #339). On June 3, 2014, he filed a Motion to Compel Disclosure from MERS (Doc. #345), a Motion to Compel Disclosure from Defendant Wells Fargo (Doc. #346), and a Motion to Compel Disclosure from Defendant Barclays (Doc. #347).[4]

On June 13, 2014, Defendants filed Responses in Opposition. Doc. #348 (Response of Barclays to Motion to Remove Confidentiality Protection for Certain Documents); Doc. #349 (Response of MERS to Motion to Compel Disclosure);

---

[1] On March 29, 2010, the Court sustained in part and overruled in part MERS' Motion to Dismiss, thereby dismissing Kline's claims under the FDCPA, but allowed Kline's claim under the TILA against MERS to proceed. Doc. #154 at 7 & 15. On March 25, 2011, the Court dismissed Kline's claim against MERS for unjust enrichment. Doc. #239 at 8. Kline's claim under the OCSPA was allowed to proceed, as was his breach of contract claim. *Id.* at 3 n.2 & 10 n.5.

[2] On March 28, 2011, the Court dismissed Kline's OCSPA claim and his claims for unjust enrichment and breach of contract against Wells Fargo. Doc. #240 at 2 n.1 & 9. In the same Decision, the Court overruled Wells Fargo's Motion for Judgment on the Pleadings (Doc. #180) with respect to Kline's TILA claim. *Id.* at 8. Kline filed a Motion for Reconsideration (Doc. #244), which the Court granted with respect to the breach of contract claim. Doc. #264.

[3] On March 29, 2011, the Court dismissed Kline's TILA and breach of contract claims against Barclays', based on adopting the Report and Recommendations of the Magistrate Judge. Doc. #241

[4] Kline's attorney actually filed the Memoranda in Support of his motions on May 12, 13, and 14, but without the motions. After the Clerk alerted him to the oversight, Kline filed all of the motions on June 3, 2014.

Doc. #350 (Response of Barclays to Motion to Compel Disclosure); and Doc. #351 (Response of Wells Fargo to Motion to Compel Disclosure).

Kline filed Reply Briefs on June 20, 2014. Doc. #352 (Reply to Response of Wells Fargo); Doc. #353 (Reply to Response of Barclays); Doc. #354 (Reply to Response of MERS).

On July 28, 2014, the Court held a telephone conference to discuss the pending motions. At the conclusion of the conference, the Court requested additional briefing from the parties on the status of discovery and set a schedule for submission of same.

Defendants filed Supplemental Memoranda Opposing the Motions to Compel Disclosure on August 21, 2014. Doc. #363 (Supplemental Memorandum of Barclays); Doc. #364 (Supplemental Memorandum of MERS); Doc. #365 (Supplemental Memorandum of Wells Fargo).

On September 17, 2014, Plaintiff filed a Supplemental Memorandum in Further Support of his Motion to Compel Disclosure from MERS, Barclays, and Wells Fargo. Doc. #369.

Plaintiff's motions seek to compel discovery disclosures Defendants have objected to, as well as attorneys' fees under Fed. R. Civ. P. 37(a)(5)(A). The Court will address each of the motions in turn before turning to the issue of attorneys' fees. Finally, the Court will conclude with a summary of the rulings set forth herein.

II.  **MOTION TO REMOVE CONFIDENTIALITY PROTECTION FOR CERTAIN
     DOCUMENTS (DOC. #339)**

Kline has moved the Court to remove confidentiality protection for certain

documents of Barclays.  The documents in question pertain to the "Payoff Quote

Procedures" created in 2004, 2006, and 2007 by HomEq, the mortgage servicer

that serviced Plaintiff's loan.  As alluded to previously, in 2006, Barclays acquired

HomEq from Wachovia Corporation, but sold it to Ocwen Loan Servicing

("Ocwen") in 2010.  HomEq no longer exists; Ocwen assumed the servicing of its

loans and shut HomEq down in 2010.  Kline  argues that these documents are

outdated policies from a defunct business that do not qualify as protected "trade

secrets" or "proprietary business methods and procedures" under Fed. R. Civ. P.

26(c)(1)(G), as Barclays cannot articulate any harm it would suffer from their

disclosure.  According to Kline, the documents are outdated and stale, going back

ten years; HomEq, the company that created them, is no longer in business;

HomEq produced documents about these payoff procedures in other litigation

without designating them as confidential; the documents are material to issues in

four other pending lawsuits that concern the servicing practices of HomEq from

2001 to 2010; and Barclays' assertion that Ocwen "may" currently use the HomEq

procedures is too speculative to justify their confidential designation.

In response, Barclay's argues that Kline has waived his right to challenge the

confidentiality of the documents by failing to raise the issue within the twenty-day

deadline required by the Confidentiality Order.  Doc. #348.  Barclays also argues

that because Kline's attorney wants to use these documents in other litigation, the proper avenue for that to happen is for the interested parties to file motions for permissive intervention for the limited purpose of discovery in this case. Finally, Barclays argues that the information is properly deemed confidential because, having sold HomEq to Ocwen in 2010, it has a "duty to protect" the information "and certainly cannot decide for Ocwen whether or not to make it public." *Id.* at 9.

A court may issue a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way" under Federal Rule of Civil Procedure 26(c)(1)(G). "While District Courts have the discretion to issue protective orders, that discretion is limited by the careful dictates of Fed. R. Civ. P. 26 and 'is circumscribed by a long-established legal tradition' which values public access to court proceedings." *Proctor & Gamble Co. v. Bankers Trust Co.*, 78 F. 3d 219 (6th Cir. 1996) (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir.1983)).

"[A]n order allowing parties to keep their trade secrets, confidential research, or other commercial information out of the public record may be valid if parties can demonstrate that they understand the concept of confidential information, are acting in good faith in designating parts of the record as such, and the order provides an opportunity for any party or an interested member of the public to challenge the confidentiality designation." *Certain Underwriters at*

9

*Lloyd's v. United States*, No. 2:08–cv–841, 2010 WL 2683142, at *1 (S.D. Ohio July 1, 2010) (citing *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945–46 (7th Cir.1999)).

Here, Barclays has designated certain documents as confidential. Under the terms of the Confidentiality Stipulation and Order, any party may make such a designation because of a belief that the material is commercially sensitive, a trade secret, or proprietary business methods or practices. Nevertheless, this Court has an ongoing obligation to monitor the confidential designations of the parties to made sure that they result from good cause, and do not violate the "'long-established legal tradition' which values public access to court proceedings." *Proctor & Gamble Co.*, 78 F. 3d 219.

"To show good cause, a movant for a protective order must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir.2001) (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C.1987)) (citations omitted). *See also Bds. of Trustees of Ohio Laborers' Fringe Ben. Programs v. A2 Services, LLC,* No. 2:13–cv–476, 2013 WL 5723069, at *2 (S.D. Ohio Oct. 18, 2013) (protection denied where party seeking protective order offered only conclusory statements unsupported by specific evidence of a clearly defined and serious injury caused by discovery sought); *Solar X Eyewear, LLC v. Bowyer*, No. 1:11–cv–763, 2011 WL 3921615, at *2 (N.D.

Ohio Sept. 7, 2011) (merely alleging potential disclosures of trade secrets insufficient).

Barclays has not articulated specific facts that would show that it would suffer any injury from the de-designation of the records in question as confidential. The information pertains to a defunct entity.  Some of it is over ten years old, and, as Kline points out, has been disclosed in other litigation.  Barclays' argument that it "has a duty to protect" the information that was part of the 2010 sale to Ocwen is unpersuasive, because a protective order is generally unavailable to assert the rights of third parties.  *See Bush Dev. Corp. v. Harbor Place Assocs.*, 632 F. Supp. 1359 (E.D. Va. 1986).  Finally, Barclays argues that because Kline's attorney seeks to have the documents de-designated as confidential to use in other litigation, the parties seeking the documents must intervene permissively. However, that argument presupposes that Barclays has made a good cause showing for the confidential designation of the documents in question.  It has not, and therefore that argument is rejected.  Accordingly, the Court sustains Plaintiff's Motion to Remove the Confidentiality of Certain Documents (Doc. #339).

III.   **MOTION TO COMPEL DISCLOSURE FROM MERS (DOC. #345)**

Kline first sought discovery from MERS in August, 2012, when he served a Request for Interrogatory Responses and a Request for Production of Documents on that entity.  Doc. #336-3.  On September 24, 2012, counsel for MERS requested a 30-day extension, which would have made the responses due on

11

October 24, 2012. Doc. #336-5. Only July 8, 2013, eight and a half months after the due date, Kline's counsel advised MERS' counsel that the responses were still outstanding. Doc. #336-6.

On July 30, 2013, an attorney from Treanor, Pope, and Hughes, the firm representing Barclays and Wells Fargo, responded regarding the MERS discovery responses. He informed Kline's counsel that his firm would be representing MERS going forward and promised to "get up to speed very quickly on discovery responses by MERS." He also noted that MERS had not yet received its responses to requests it had served on Kline's counsel. Doc. #336-7.

Kline's counsel served his interrogatory responses to Defendants' counsel on August 25, 2013. Doc. #336-15.

On October 18, 2013, Kline's counsel again wrote again, stating that discovery demands were "long past overdue." Doc. #336-9. MERS' counsel responded on October 25, 2013, providing an estimate of three weeks' response time for the discovery. Doc. #336-9. On December 5, 2013, Kline's counsel again wrote to follow up on the state of the discovery requests. Doc. #336-10.

Counsel for MERS, Barclays, and Wells Fargo responded on December 6, 2013, and provided an update for each defendant. With regards to MERS, the update stated that production was hampered by the need for database searches that required "reserved computer time," and that "rolling production should start within two weeks" and continue into January. Doc. #336-10.

12

On March 7, 2014, counsel for MERS, Barclays, and Wells Fargo sent Kline's counsel a letter setting forth several discovery-related issues concerning each Defendant.  With regards to MERS, the letter stated that the "final production" from MERS had arrived and would be produced by the end of the following week.  Doc. #336-11.

MERS provided answers to interrogatories and the requests for production of documents on March 14, 2014, almost 17 months after the extended due date.  In the responses, MERS provided only responses relative to Ohio mortgages, and refused to provide any information of events occurring after the filing of the Complaint.  MERS also objected to a number of interrogatory requests that sought specific information on its policies and procedures as being overly broad, and invoked its option to produce business records under Fed. R. Civ. P. 33(d).  Accordingly, MERS directed Kline's counsel generally to the "System Rules of Membership" and "System Bulletins," documents that it had contemporaneously provided in discovery.  Doc. #336-2.

On April 10, 2014, Kline's counsel responded, and advised MERS' counsel that its responses were inadequate.  He asserted that MERS had waived any objection by providing the responses months after they were due and that MERS had inappropriately limited the scope of the discovery.  He also objected to MERS providing its business records instead of detailed interrogatory responses.  Doc. #336-12.

On May 11, 2014 counsel for MERS wrote to Kline's counsel, asserting that MERS had provided all documents and interrogatory responses that were relevant to Kline's claims. Doc. #336-13.

On May 13, 2014, Kline's counsel filed a Motion to Compel Disclosure from MERS (Doc. #345), arguing that 1) MERS waived its right to object to Plaintiff's discovery requests because of its untimely responses; 2) MERS improperly imposed geographic and temporal restraints on discovery; and 3) MERS provided wholly inadequate responses and unwarranted objections to Plaintiff's Interrogatories.

Under Fed. R. Civ. P. 37(a), "a party may move for an order compelling disclosure or discovery." "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." *Id.* 37(a)(3)(A). The Court will consider each of Kline's arguments in turn to determine whether MERS should be compelled to disclose any further discovery.

**A.    MERS did not waive its right to object to Plaintiff's discovery requests**

Kline first argues that MERS has waived its right to object because it did not initially respond to his discovery requests within 30 days, as required by Fed. R. Civ. P. 32(b)(2)(A).

In response, MERS claims it has not waived its right to object because the correspondence between the attorneys, which was attached as exhibits to a declaration of Kline's attorney, shows that each side "extended to the other the

14

professional courtesy of more time to respond to discovery motions" than the rules required.  Doc. #349 at 2.  Furthermore, MERS argues, the Court did not issue a final ruling on Defendants' Motion to dismiss until September 18, 2013, and the Court did not approve a Confidentiality Stipulation and Order until February 28, 2014.  Doc. #325.  MERS points out that it responded to Kline's discovery request within 14 days of the entry of that Order.  Based on that history, MERS considers it "disingenuous" and not collegial to argue that it has waived a challenge to the scope and relevancy of Plaintiff's discovery requests.  Doc. #349 at 3.

The Court agrees with MERS on this issue.  Under Fed. R. Civ. P. 33(b)(2), parties may stipulate to extensions to respond to interrogatories, or the Court may order such an extension.  A review of the email correspondence between counsel for Kline and MERS shows that both parties were late with discovery responses in the past and each made accommodations to the other respecting deadlines.  For example, on October 24, 2012, MERS' attorney emailed Kline's attorney, asking for an extension, and stated "I presume this additional time will not be an issue given that Plaintiff's discovery responses are long past due and we have not received any responses or heard from you."  Doc. #336-6 at 2.  Furthermore, there were unusual circumstances with this litigation due to the multiple preliminary motions and rulings, as well as the renewals and reconsiderations of same, that occurred during a protracted period prior to the Court's approval of the parties' Confidentiality Stipulation and Order on February 28, 2014.  As MERS points out, it served discovery responses within two weeks of the Entry of the Confidentiality

Stipulation and Order. Under these circumstances, MERS has not waived its right to object to the scope of Kline's discovery requests.

**B.   MERS' geographic limitations on the scope of discovery are appropriate, but the temporal limitation restricting discovery to the pre-filing period is unfounded**

Second, Kline argues that MERS has inappropriately limited the broad scope of discovery required under Fed. R. Civ. P. 26 in its responses to interrogatory requests, by only providing information regarding loans made in Ohio prior the filing of the Complaint in 2008. Doc. #335 at 9. Kline points out that the class claims, as set forth in the Amended Complaint, fall into "two broad categories:" one with no geographic limitation, and a subclass limited to "property located in Ohio." *Id.* Furthermore, Kline argues, the proposed class definition specifically includes borrowers that have been subject to the alleged actions "since the commencement of this action," making such information relevant. *Id.*

MERS responds by pointing out that the claims in the Amended Complaint "all turn upon" Ohio law, and that there is no basis for recognizing a nationwide class based on those allegations. Doc. #349 at 3. MERS also argues that post-filing discovery is not relevant because the filing date of November 10, 2008, was the "very latest date on which a cause of action could accrue . . . so nothing in MERS' records after that date is relevant to the claims of Plaintiff or anyone similarly situated in Ohio." *Id.* at 3-4.

16

The scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which states

that "[p]arties may obtain discovery regarding any nonprivileged matter that is

relevant to any party's claim or defense" in the action.  However, a party must

show "good cause" for the Court "to order discovery of any matter relevant to the

*subject matter involved in the action*," thereby enlarging the scope of discovery.

*Id.* (emphasis added); *see also* Advisory Committee's Note (2000) to Fed. R. Civ.

P. 26 (explaining that the rationale for limiting scope of discovery to that which is

relevant to any claim or defense, as opposed to the previous standard of discovery

relevant to the subject matter involved in the action, was to "involve the court

more actively in regulating the breadth of sweeping or contentious discovery" and

have "the parties and the court focus on the actual claims and defenses involved in

the action").

Kline correctly points out that the first class action claim in the Amended

Complaint does not contain a "geographic limitation."  However, MERS is correct

when it states that the viable claims at this point in the litigation "all turn upon"

Ohio law.  The purported class claim's allegations that do not pertain to claims that

have been dismissed depend completely upon the viability of Kline's claims.  To

illustrate, the Court will briefly summarize two of the claims.  The Court has held

that that Kline has stated a plausible FDCPA claim by alleging two things.  First, he

alleged that the collection of attorney fees and other fees that accrued while

litigating the foreclosure lawsuits against him were unreasonable, because the

FDCPA prohibits the collection of amounts that are not "expressly authorized by

17

the agreement creating the debt," and the agreement only authorized "reasonable" fees. 15 U.S.C. § 1692f(1). Second, Kline alleged that the collection of the aforementioned fees violated Ohio law, due to its specific prohibition on mortgage or loan instruments that authorize the collection of attorneys' fees, as well as prohibitions on the sharing of attorney fees. These allegations formed the foundation for Kline's viable claim under the FDCPA regarding the collection of a debt that is not "permitted by law." *Id.* In other words, the claim only succeeds if the amounts collected were not authorized by Ohio law. Kline has not demonstrated the relevancy to his claim of loans entered into under the laws of other states. He points only to the class claims alleged in the Amended Complaint that have "no geographic limitation" and argues that "most of the allegations in the Amended Complaint have nothing to do with the state in which the legal fees or expenses were incurred." But Kline cannot rely on allegations in the Amended Complaint that concern Plaintiffs whose claims have been dismissed. As stated, his FDCPA claim depends on Ohio law for its viability. Thus, there is a reasonable basis for limiting the scope of MERS's discovery burden to Ohio loans.

The same reasoning applies to the non-geographically based class claims that allege a violation of Section § 1666d of the TILA. The Court previously held that Kline has stated a viable claim under the TILA against MERS, based on Kline's allegation that MERS failed to refund improperly collected fees. Doc. #154 (adopting recommendation of the Magistrate Judge to overrule MERS' Motion to Dismiss Kline's TILA claim); *see also* Doc. #133 at 19-21 (analysis of the

18

Magistrate Judge). Unlike the FDCPA statute, the TILA statute does not provide a test for determining whether an amount was improperly collected from a debtor. Instead, it requires refund to a consumer's account "[w]henever a credit balance in excess of $1 is created in connection with a consumer credit transaction through . . . transmittal of funds to a creditor in excess of the total balance due on an account . . . or amounts otherwise owed to or held for the benefit of an obligor." 15 U.S.C. § 1666d. Whatever excessive "credit balance" occurred, therefore, is dependent upon that amount being improper or illegally charged. Such determination can only be made by reference to the FDCPA claim, which is subject to the violation of Ohio law described above. This is also illustrated by the class action allegation in the Amended Complaint pertaining to potential class members "who . . . were overcharged by defendants and then denied interest on the refund of such overcharge in violation of § 1692f of the FDCPA or § 1666d of TILA." Doc. #157 at 5. The TILA claim depends on the basis for the impropriety of the charge under the FDCPA, because the TILA provision cited provides no mechanism for making that determination. Without the reference to the FDCPA claim, the scope of the TILA claim would hardly be narrower that the statute itself, resulting in a burdensomely broad scope of discovery. Thus, the geographic restriction of the FDCPA claims to Ohio loans applies also to the TILA claim. Kline's objection to this limitation is, therefore, overruled.

It is not clear, however, on what basis MERS seeks to temporally limit the scope of discovery to information of events occurring before the date this lawsuit

was filed.  The class claim purports to name a class of plaintiffs "who have been subject to any of the above conduct since the commencement of this action, or may be subject to such conduct in the future."  Doc. #157 at 5.  The statute of limitations for the claims of these potential class members was tolled by the filing of this lawsuit.  *American Pipe & Constr . Co. v. Utah*, 414 U.S. 538, 554 (1974); *In re Vertrue Inc. Mktg. & Sales Practices Litigation*, 719 F.3d 474 (6th Cir. 2013).  Information and documents relevant to those claims may have come into existence since the filing of the lawsuit.  Thus, the period after the commencement of this action is a relevant timeframe for discovery.  The Rules of Civil Procedure do not, on their face, limit discovery to the period before an action is filed, and "[t]here is no per se rule barring discovery regarding events which occurred after the date the pending action was filed."  *Southwest Hide Co. v. Goldston*, 127 F.R.D. 481, 483 (N.D. Tex. 1989).  MERS has not demonstrated why discovery should be restricted to exclude documents and information of events occurring only before this action was filed.  The Court, therefore, overrules MERS' request to limit discovery to the time period after the filing of this lawsuit and its objection to Kline's discovery request of that material.

C.    **MERS has not provided responses to Plaintiff's Interrogatories in a manner that would enable Plaintiff "to locate and identify" MERS' business records "as readily as" MERS could, as required by Fed. R. Civ. P. 33(d)**

Kline objects to a number of the Responses to Interrogatories provided by MERS that generally refer to MERS' business records.  Doc. #335 at 12-15.  In the

Interrogatories, Plaintiff asked MERS to describe its system or procedure for communicating with the note holder for which MERS acts as a nominee, or the note holders' attorney, or how it accounts for the assignment or transfer of notes or mortgages; its policy or procedure for the service of legal process in a foreclosure proceeding in which MERS is the nominee of both the plaintiff and a defendant note holder or mortgagee; or its policy for the service of process for one mortgage holder against another, where the same entity was the owner or servicer of both notes at the time of foreclosure. *Id.* MERS responded in part to all of these interrogatories by stating:

> Subject to and without waiving the foregoing objections, pursuant to Federal Rule of Civil Procedure 33(d), MERS states that it will produce the MERS System Rules of Membership and MERS System Bulletins for review by Plaintiffs. To the extent that this information exists, it can be gleaned from a review of those records.

According to Kline, this is an inappropriate response because MERS cannot simply invoke the "business records" provision of Rule 33(d) in such a general manner. He argues that MERS must either provide responses that actually answer its questions or identify the specific documents that provide the answers.

In response, MERS points out that it not only provided Plaintiff with the information in the same manner that it is stored, but it also provided a description of each document, including the number of pages that must be reviewed, in a "descriptive listing" separate from the interrogatory responses that Plaintiff quotes. Doc. #349 at 5-10. According to MERS, the listing shows that "[o]f the documents produced, 29 of them number less than five pages each; 48 have

21

fewer than 50 pages, and the most-hefty is only 237 pages. The longer ones have tables of content directing the reader to specific sections." *Id.* at 8.

Rule 33(d) of the Federal Rules of Civil Procedure states that:

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . .

In *Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504 (W.D. Ky.

2010), an ERISA case, the United States District Court for the Western District of Kentucky ruled that a plan administrator's general references to plan documents and the administrative record were insufficiently specific responses to a plaintiff's interrogatories. The plan administrator argued that it had complied with the plaintiff's request because Rule 33(d) allowed such general responses when the answer to an interrogatory depended on the examination of business records, and "the burden of deriving or ascertaining the answer [would] be substantially the same for either party." *Id.* at 514. The court rejected that argument, and noted that "[i]f both of [Rule 33(d)] preconditions are satisfied, then the responding party may answer [by referring to its business records], but must do so by specifically identifying the records in sufficient detail to permit the requesting party to locate and identify them as easily as the responding party itself could." *Id.* The plan administrator's general references to the 1,300 page administrative record were

22

not sufficient, in light of the specific requests that the plaintiff had made for the factual bases for the administrator's asserted defenses. *Id.* at 515.

The Court finds that MERS' responses are similarly inadequate. First, MERS' stock response to Plaintiff's Interrogatories, in which it states that it "will produce the MERS System Rules of Membership and MERS System Bulletins" and "[t]o the extent that this information exists, it can be gleaned from a review of those records," is as general and canned as that of the plan administrator in *Mullins*. It fails to satisfy MERS' Rule 33(d) obligation to "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."

Second, MERS' suggestion that Kline consult the "descriptive listing" that it provided fails to ameliorate the generality and insufficiency of its stock response. The "descriptive listing" is, in fact, the Confidential Materials designation that it submitted pursuant to the Stipulated Protective Order entered in this case. Although the documents listed have titles, they are vague and somewhat cryptic, such as "Announcement 2008-02 Request," "Commercial Policy Bulletin 2011-2," "MERS Procedures Manual Transitional 072611," or "Reminder Bulletin 2010-1." Such titles communicate nothing substantive about the contents of the documents. Although, as MERS states, some of the documents are a few pages, many of them are hundreds of pages, and there are at least 2,000 pages of documents, if not more. MERS' characterization of this as a "descriptive listing" is misleading, because it does not describe or specify the particular records that might satisfy

23

Plaintiff's request. For these reasons, MERS has not demonstrated that "burden of deriving or ascertaining the answer will be substantially the same for either party," as required under Rule 33(d). Accordingly, the Court sustains Plaintiff's Motion to Compel Disclosure from MERS, insofar as Plaintiff seeks more detailed responses to his Interrogatories, and overrules MERS' objections to same.

### D. MERS' Response to Kline's Request for Production of Documents is Inadequate

Kline also served a Request for Production of Documents ("RPD") on MERS, and his Motion to Compel (Doc. #345) alleges that the responses were inadequate. Addresses Document Request #3 asked for the contractual agreements between MERS and Wells Fargo or any other defendant related to the services MERS provided "for any of plaintiff's mortgage loans" or "the compensation MERS was entitled to receive for such services." Doc. #336-1. In response, MERS objected to the request on the grounds that it has "no time limitation," is "overly broad," and "vague," and "not reasonably calculated to lead to the discovery of admissible evidence," but that MERS would nevertheless produce any non-privileged documents "to the extent any documents exist." *Id.*

Kline cites several cases finding similar responses inadequate, as they provide no means to determine whether the documents in question actually exist. Doc. #335 at 16. He argues that MERS should respond by letting him know whether or not the documents in question exist, producing the relevant non-privileged documents, and, if necessary, supplementing its privilege log.

24

MERS responds by arguing that it merely responded with "superfluous" language, but that the use of such language is not objectionable where a party has otherwise thoroughly complied with a discovery request.  Doc. #349 at 8.

The Court finds MERS' responses inadequate, both to Plaintiff's RPD and his argument in support of the Motion to Compel Disclosure.  It is unclear what, if any, documents MERS has in its possession that are relevant to Plaintiff's request.  In responding to the motion, MERS did not even acknowledge it had responded to this particular RPD with any documents that Plaintiff requested, much less describe any documents that it produced.  Moreover, the RPD does not seek general documents related to MERS' practices and procedures, as was the case with the Interrogatories mentioned above.  It seeks documents specific to Plaintiff Kline and the transactions that MERS made regarding his mortgage.  Furthermore, neither of the Supplemental Briefings filed by MERS or Kline indicates that these documents have yet been produced.  Doc. #364 & Doc. #369.  For these reasons, Kline's motion is sustained, insofar as he seeks an order compelling MERS to produce the documents described in Document Request #3 of Kline's RPD.

IV. **MOTION TO COMPEL DISCOVERY FROM WELLS FARGO (DOC. #346) AND MOTION TO COMPEL DISCOVERY FROM BARCLAYS (DOC. #347)**

As with MERS, Kline argues that Wells Fargo and Barclays have waived any objection to his Interrogatories and RPDs.  He states that he served discovery demands on Wells Fargo in October, 2013, and that he served Barclays in June,

25

2012, but has not yet received a response to his requests. Doc. #346 and Doc. #347.

Defendants' responses are similar to MERS' response, insofar as they recount interactions and negotiations with Plaintiff that occurred subsequent to the serving of the discovery requests, and during the timeline of the drafting and entry of the confidentiality order and a new scheduling order. Wells Fargo also asserts that Plaintiff filed the Motion to Compel in lieu of responding to a letter and telephone conversation that it had had with Plaintiff, during which Plaintiff's counsel had stated that it would shortly let Wells Fargo know his position on several objections to the discovery requests. Doc. #351 at 3. More to the substance of the controversy is Wells Fargo's assertion that it provided Kline with 4,000 pages of documents on February 26, 2014, and that it has also provided supplemental responses in the wake of the filing of the Motion to Compel Disclosure. *Id.* at 2-3.[5]

According to Barclays, it had sold its loan servicing entity, Ocwen, prior to receiving Plaintiff's discovery requests, and the relevant documents were not under its control at that time. It notified Plaintiff "upfront" that discovery would be a

---

[5] It is difficult to reconcile those discovery disclosures with Kline's assertion that he has received nothing from Wells Fargo, which he makes on page 7 of the Memorandum in Support of his Motion to Compel Disclosure from Wells Fargo: "To date, despite repeated requests that it do so, Wells Fargo has not provided any response to either plaintiff's document or interrogatory demands." Doc. #337. Yet, on the same page, and in the next sentence, he states that "Wells Fargo discovery responses were provided months after they were due . . . ."

"protracted endeavor" because of the need to access a "massive database of home mortgages" that was being held by an outside vendor.  Doc. #350 at 2.  It took several months and hundreds of hours for a team to index and organize the archive, which was not concluded until the fall of 2013, at which time the parties were negotiating the Confidentiality Stipulation and Order.  *Id.*  Barclays produced 15,000 pages of documents to Plaintiff on January 17, 2014.[6]  Defendants also argue that Plaintiff's attorney actually has access to the "Ocwen master hard drive" because of his involvement in a class action pending in District Court in the Southern District of New York.  *Id.* at 3.

The Court does not find that either Wells Fargo or Barclays waived their right to object to Plaintiff's requests, even though some of the production and their objections occurred after the 30 day deadline.  First, the parties' attorneys have mutually agreed to extend deadlines in the past.  The parties appear to have been in contact since Kline's initial requests, and there were unique difficulties with the documents to be produced.  A March 7, 2014, letter describes these difficulties, such as a sale of one of the entities that had relevant documents, and what appear to be good faith efforts to comply with Plaintiff's requests.  Doc. #342-12.  In the letter, Defendants' counsel also attempted to propose "compromise solutions," such as answering Interrogatories with conditional answers to deal with the

---

[6] Kline also asserts that he has not received any response from Barclays to his discovery demands, as he did concerning Wells Fargo.  Doc. #341 at 3. Again, this assertion is not reconcilable with the 15,000 documents that Barclays states that it provided months before Kline filed his motion.

immediate lack of access to historical loan servicing data. Defendants' counsel drew the attention of Kline's counsel to the proposals several times, but, in lieu of responding, he filed the Motions to Compel Disclosure. Finally, it appears that Defendants have provided the Responses to Interrogatories and a voluminous number of documents to Plaintiff, mooting the issue of whether they need to be produced. For the foregoing reasons, the Court finds that Barclays' and Wells Fargo have not waived their right to object to Kline's discovery requests. Accordingly, the Court will make the following rulings on the objections they have raised.

### A.     Barclays' Objections to Kline's Discovery Requests

Barclays sets forth the basis for its objections to Kline's Interrogatories in its Supplemental Brief. Doc. #363. As a prelude to the specific objections, Barclays describes the sale of its entire mortgage loan servicing operation to Ocwen Loan Servicing, LLC ("Ocwen") in August, 2010. *Id.* at 2. Ocwen received a digital archive of all the loan histories that Barclays had serviced before the sale. *Id.* Subsequent to the sale, Ocwen terminated all former Barclays employees. *Id.* With regards to the five objections that it has made to Kline's interrogatories, Barclays asserts that it "has been hamstrung by the difficulty in accessing the loan data archives," and that they are "ironically" in the possession of Kline's counsel due to his involvement in a lawsuit in the United States District Court for the Southern District of New York, *Mazzei v. The Money Store, et al.*, Case No. 1:01-

cv-05694-JGK (S.D.N.Y.). *Id.* at 3. Thus, for five of Kline's Interrogatories, Barclays objects by stating that it lacks possession, custody, or control of the historical loan database required to respond.

Kline also filed a Supplemental Brief to respond to Barclays' objections. Doc. #369. Kline argues that Barclays had an obligation to preserve evidence relevant to this litigation when it sold its mortgage servicing business to Ocwen in August, 2010, nearly two years after the filing of this lawsuit. *Id.* at 7. Thus, Kline argues, "its failure to do so constitutes spoliation." *Id.* Furthermore, Kline argues that the database in the *Mazzei* litigation does not cover the information he seeks regarding the servicing activities of HomEq, Barclays' previous loan servicing entity, that is relevant to his claims. *Id.* at 8.

Under Rule 33(b)(4), a party's "grounds for objecting to an interrogatory must be stated with specificity." "A responding party 'must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399 (N.D.Ohio 2011) (quoting *Kafele v. Javitch, Block, Eisen & Rathbone*, No. 03–638, 2005 WL 5095186, *2 n. 8 (S.D.Ohio April 20, 2005)). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id*.

Here, Barclays provided the following objection to five of Kline's interrogatories:

29

> Objection. The historical data necessary to answer this Interrogatory is no longer in the possession, custody, or control of HomEq. However, this information is currently in the possession of Plaintiff's counsel, in conjunction with his prosecution of another case.

This objection is presumably based on Barclays' difficulties accessing the loan database that Ocwen obtained during the sale of Barclays' mortgage servicing business, HomEq. Yet, by its own admission, Barclays was in possession of this database at the commencement of this litigation because it owned HomEq at the time Plaintiffs filed this lawsuit. One and a half years after the Complaint was filed, Barclays sold HomEq, divesting itself of possession of the loan database that it needed to cooperate in discovery. The Court cannot conclude that this is an acceptable reason for objecting to a party's interrogatory on the basis that the interrogatory imposes an undue burden, because the burden was entirely of Barclays' own making. The objection is particularly unfounded because the sale of HomEq took place long after this litigation had already commenced, when Barclays was fully on notice of the claims against it, and presumably aware of what documents and information in its possession might be required to comply with discovery requests. Furthermore, Kline's counsel has described certain differences between the HomEq database and the database in the *Mazzei* litigation that demonstrates that they do not contain the same information. For example, the *Mazzei* database does not contain information on attorneys fees' charged to parties, which is specifically relevant to Kline's claims. Nevertheless, that issue is distinct from the issue of whether Barclays' has grounds for its objections. Under

30

the circumstances described, Barclays' objections to Kline's interrogatories based on its lack of possession, custody, or control of the loan database are unfounded, and, therefore, overruled.

### B.  Wells Fargo's Objections to Kline's Discovery Requests

By its own account, Wells Fargo states that it has "lodged extensive objections to interrogatories and document requests propounded by" Kline.  Doc. #365 at 4.  Wells Fargo's objections are largely based on the capacity in which it has been sued in this case.  According to Wells Fargo, it merely acted as the trustee for a pool of securitized loans that included Kline's loans.  *Id.* at 3-4.  Thus, "as trustee, Wells Fargo represents all the investors who purchased interests in the Trust and who collectively owned the particular Kline loans."  *Id.* at 4.  Wells Fargo asserts that it "was neither the servicer nor the investor with regard to the Kline loans."  *Id.*  Thus, it has objected to many of Kline's discovery requests because the "discovery is directed to and focuses upon the servicing role, not the role of trustee for the pooled Trust."  *Id.*  Wells Fargo believes that "it would be extremely inequitable, burdensome, and unfair to require" it to respond to discovery as if it were Kline's mortgage servicer, when Barclays was the actual servicer of Kline's loans.  *Id.*  Wells Fargo argues that Kline's requests violate the relevancy requirement of Fed. R. Civ. P. 26(b) because he is "seeking servicer-specific discovery from a Defendant that did not act as [a] servicer."  Furthermore, Wells Fargo argues that Kline is, in effect, seeking discovery for claims that he has no

31

standing to pursue, because he is not similarly situated to any potential plaintiff that had loans serviced by Wells Fargo. *Id.* Finally, Wells Fargo argues that the discovery that Kline seeks would not establish the elements of typicality and commonality crucial to his class claims because of its attenuated role as trustee and not servicer. *Id.* at 5-6.

Kline counters that Wells Fargo has failed to provide legal support for its contention that he does not have standing to sue the bank in its capacity as trustee for the securitized loan pool. Doc. #369. Kline also points out that Wells Fargo has failed to support its argument that the discovery would be burdensome with affidavits or other evidence demonstrating the asserted burden. Finally, Kline points out that in his discovery requests, the definition of "Wells Fargo Loans" included "any loan in which Wells Fargo was serving as a holder, owner, servicer, or *Trustee*."

As stated previously, the scope of discovery is defined by Fed. R. Civ. P. 26(b)(1), which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" in the action. Wells Fargo's insistence that it only need provide discovery responses relevant to its role as trustee for the securitized mortgage pool counters the broad language of the rule. If the discovery sought "is relevant to *any* party's claim or defense," it must be produced. Thus, if a particular Interrogatory sought information or a RPD sought a document that was relevant to Kline's claim against Barclays, it would still be incumbent on Wells Fargo to produce it.

On the other hand, it is somewhat disingenuous of Kline to argue that his definition of "Wells Fargo Loans," which includes those loans for which the bank served as a trustee, is sufficient to make every one of his requests relevant. In Interrogatory No. 4, for example, Kline seeks "the number of loans which Wells Fargo serviced but in which it was neither a holder, owner or Trustee." This belies the assertion that all of Kline's requests relate to Wells Fargo's status as a trustee. Furthermore, many of the Interrogatories sweep outside the broad category of relevancy. The Court will sustain Wells Fargo's objections to the following Interrogatories:

Interrogatory No. 3, which seeks information about loans in which the property owner went into bankruptcy. The Plaintiffs in this case whose claims related to their bankruptcies have all been dismissed from this case.

Interrogatory No. 4, which asks for "the number of loans (i) which Wells Fargo serviced in which it was neither a holder, owner or Trustee; and (ii) the number of the loans . . . which went into foreclosure or bankruptcy." As noted above, this Interrogatory specifically excludes from its scope Wells Fargo's status as a trustee, and it does not clearly relate to any of the claims against the actual servicer of Kline's loans.

Interrogatories No. 5, 6, 7, 8, 9, 16, and 17, insofar as they seek information related to loans that went into bankruptcy. The objections are overruled insofar as they seek information related to foreclosures. Because the Plaintiffs whose claims related to bankruptcy have all been dismissed from this

case, such information is not relevant to the claims of the remaining Plaintiff, Kline, which concern fees and costs charged during a foreclosure proceeding.

Interrogatory Nos. 12, 13, 14 and 15 are not relevant to Kline's claims because they all seek information about borrowers or debtors who declared bankruptcy.

Furthermore, the Court will sustain Wells Fargo's objections to the following Request for Production of Documents:

Request No. 8, insofar as it seeks documents related to policies regarding bankruptcies, which are not relevant to Kline's claims.

For the foregoing reasons, Kline's Motion to Compel Disclosure from Wells Fargo is sustained in part and overruled in part. The foregoing objections to Kline's Interrogatories and RPDs are sustained. All other objections are overruled.

## V.    ATTORNEYS' FEES UNDER FED. R. CIV. P. 37(A)(5)(A)

Under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, a party who prevails on a motion to compel is entitled to a grant of attorneys' fees. The Rule states:

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Because Kline has prevailed in whole or in part on each of the Motions to Compel that he has filed, he may filed a Motion for Attorneys' fees under Fed. R.

34

Civ. 37(a)(5)(A), and include a fee application.  The Rule requires that Defendants must be given an opportunity to respond.  Thus, any ruling on the issue of attorneys' fees would be premature at this time, and the Court will not address the issue further until it has briefed by all parties, after the merits of this litigation have been resolved either by trial or by settlement.

## VI.  CONCLUSION

Kline's Motion to Remove Confidentiality Protection for Certain Documents (Doc. #339) is SUSTAINED.

Kline's Motion to Compel Disclosure from Defendant MERS (Doc. #345) is SUSTAINED IN PART AND OVERRULED IN PART.  The motion is sustained with regards to MERS' temporal restriction on the scope of discovery, and MERS is accordingly ordered to comply with Kline's requests for information and documents in the post-filing period.  The motion is overruled with respect to Kline's request for discovery regarding non-Ohio loans and mortgages.  Furthermore, the Court sustains the motion, insofar as Kline seeks more detailed responses to the Interrogatories that MERS responded to by citing Rule 33(d), and overrules MERS' objections to same.  The motion is also sustained with regards to Kline's Request for Production of Documents.  The Court ORDERS MERS to produce, within twenty-one (21) days from date, the documents described in Kline's Document Request #3.

Kline's Motion to Compel Disclosure from Defendant Wells Fargo Bank (Doc. #346) is SUSTAINED IN PART and OVERRULED IN PART, and Wells Fargo's Objections to Kline's discovery requests are SUSTAINED IN PART and OVERRULED IN PART, as set forth above.

Kline's Motion to Compel Disclosure from Defendant Barclays (Doc. #347) is SUSTAINED, and Barclays' Objections to Kline's Interrogatories are OVERRULED, as set forth above.

The Court ORDERS the production of responses and documents to Plaintiff's discovery requests, as set forth above, within twenty-one (21) days from date.

Because Kline has prevailed in whole or in part on each of the foregoing motions, he is entitled to attorneys' fees under Fed. R. Civ. P. (a)(5)(A), and may file a motion under same, <u>after</u> the merits of this litigation are resolved, either by trial or by settlement.

The foregoing rulings moot the following motions: Defendants' Motion to Extend Time for Responses to Discovery Motions (Doc. #343) and Defendants' Motion Requesting Discovery Conference (Doc. #355). Accordingly, said motions are OVERRULED as moot.

The parties are reminded of the following pertinent settings, as set forth in the Amended Preliminary Pretrial Conference Order (Doc. #322-1), which was adopted by the Court's Order of March 28, 2014 (Doc. #329):

The deadline for filing a motion for class certification is Tuesday, November 4, 2014.

The hearing date for class determination issues, if needed, will be Monday,

February 2, 2015.

The trial date is Monday, March 2, 2014.


Date: October 1, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE