IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,

    Plaintiffs,

v.

MORTGAGE ELECTRONIC
SECURITY SYSTEMS, et al.,

    Defendants.

Case No. 3:08-cv-408

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING THE MOTION FOR
RECONSIDERATION OF RECENT DISCOVERY RULING FILED BY
DEFENDANT BARCLAYS CAPITAL REAL ESTATE, INC. (DOC. #380);
SAID DEFENDANT'S OBJECTIONS TO THE INTERROGATORIES OF
PLAINTIFF EUGENE KLINE SUSTAINED

---

In this putative class action, a number of individuals, including Plaintiff Eugene Kline ("Kline"), set forth claims against eleven defendants, seeking monetary damages and injunctive relief based on claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a, *et seq*; the Truth in Lending Act ("TILA"), 15 U.S.C. § § 1601, *et seq*; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.01, *et seq*; and for unjust enrichment and breach of contract under the common law of Ohio. Plaintiffs' claims arose out of allegations of misconduct in mortgage servicing, misrepresentation in foreclosure filings, and the charging and collecting of improper and excessive fees from borrowers. At this stage of the litigation, Kline is the only

remaining Plaintiff. Class certification proceedings are pending. The Court's jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Pending before the Court is the Motion for Reconsideration of Recent Discovery Ruling (Doc. #380), filed by Defendant Barclays Capital Real Estate, Inc. ("Barclays").[1] For the reasons set forth below, the motion is SUSTAINED.

## I. RELEVANT PROCEDURAL BACKGROUND

On June 3, 2014, Kline filed a Motion to Compel Disclosure from Barclays (Doc. #347), seeking an order that Barclays provide responses without objections to Kline's interrogatories and request for production of documents, both of which were served in June, 2012. Kline argued that Barclays had waived its right to object to his discovery requests by not responding to them in a timely fashion. Doc. #341 at 3-4.

In its Response in Opposition (Doc. #350), filed on June 13, 2014, and its Supplemental Filing in Opposition (Doc. #363), filed on August 21, 2014, Barclays

---

[1] The Court notes also that Plaintiff Kline has filed a Supplemental Memorandum (Doc. #386) Supporting his Motion to Compel (Doc. #337) in the form of a letter to the Court, with no indication that same was sent to Opposing Counsel, even though the Court previously ruled on the Motion to Compel on October 1, 2014. Doc. #377. The letter takes issue with the Interrogatory Responses provided by Wells Fargo. Motions to Compel are the appropriate form of requesting action by this Court. Fed. R. Civ. P 7(b)(1) ("A request for a court order must be made by motion"). Letters of anguish, while evoking the Court's empathy, are certainly not sufficient. Since the Court has already ruled on this issue, a Motion for Reconsideration is the appropriate procedure to follow. Accordingly, the October 24, 2014, letter of Plaintiff's counsel (Doc. #386) is stricken from the record.

2

argued that it lacked possession, custody, or control of the historical loan database required to respond to Kline's discovery requests because it had sold its mortgage servicing entity, HomEq, to Ocwen Loan Servicing, LLC ("Ocwen"), in July 2012. Doc. #350. Barclays also stated that it had provided Kline with 15,000 documents in January, 2014, and described its offer to Kline's attorney to stipulate in its discovery responses to answers that, although approximations, would satisfy the numerosity requirement of Kline's class claims until the loan database could be accessed. Doc. #350 at 3 & Ex. B; Doc. #363 at 5. Barclays also lodged specific objections to several of Kline's interrogatories based on relevance, and expressed its belief that the information sought lacked the typicality and commonality with Kline's loans that a class claim would require.

In its Decision and Entry of October 1, 2014, the Court sustained Kline's motion and ordered Barclays to produce its responses within twenty-one days.[2] Doc. #377. The Court overruled Barclays' objections, which were primarily based on its claim that it lacked possession, custody, or control of the historical loan database required to respond to Kline's discovery requests because it had sold its mortgage servicing entity:

> This objection is presumably based on Barclays' difficulties accessing the loan database that Ocwen obtained during the sale of Barclays' mortgage servicing business, HomEq. Yet, by its own admission, Barclays was in possession of this database at the commencement of this litigation because it owned HomEq at the time Plaintiffs filed this

---

[2] The Decision and Entry of October 1, 2014, also addressed Kline's Motions to Compel filed against Mortgage Electronic Registration Systems ("MERS") Doc. #345) and Wells Fargo (Doc. #346).

3

>lawsuit. One and a half years <u>after</u> the Complaint was filed, Barclays sold HomEq, divesting itself of possession of the loan database that it needed to cooperate in discovery. The Court cannot conclude that this is an acceptable reason for objecting to a party's interrogatory on the basis that the interrogatory imposes an undue burden, because the burden was entirely of Barclays' own making. The objection is particularly unfounded because the sale of HomEq took place long after this litigation had already commenced, when Barclays was fully on notice of the claims against it, and presumably aware of what documents and information in its possession might be required to comply with discovery requests.

Doc. #377 at 30.

Barclays filed its Motion for Reconsideration on October 7, 2014. Doc. #380. Therein, Barclays requested that, apart from overruling the objections based on Barclays' argument that it lacked possession, custody, or control of the HomEq historical loan database, the Court make additional rulings on the specific objections it raised to Kline's discovery requests. Doc. #380-1 at 2. Barclays also requested that the Court reconsider allowing only twenty-one days of response time to comply with the Court's Order, as it has retained a vendor to mine the database, but cannot comply with the discovery requests in less than ninety days. *Id.* at 5-6.

Kline filed a Response in Opposition to Barclays' Motion for Reconsideration on October 19, 2014. Doc. #385. Therein, Kline stated that he did not oppose extending the time allowed to comply with the Court's order, but he did oppose the restrictions that Barclays sought to impose on discovery through its objections. *Id.* at 1.

4

Although "[t]he Federal Rules of Civil Procedure do not explicitly address motions for reconsideration of interlocutory orders," the Sixth Circuit has held that a district court has "authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x. 949, 958 (6th Cir. 2004). When considering a motion for reconsideration, a district court may "afford such relief . . . as justice requires." *Id.* (quoting *Citibank N.A. v. FDIC*, 857 F. Supp. 976, 981 (D.D.C.1994)). A court will grant a motion for reconsideration "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D.Ohio 1998)). Here, the Court believes that justice requires it to rule on the individual objections that Barclay posed to Kline's discovery requests, particularly as the rulings may have the effect of easing Barclay's burden when mining the historical database. Accordingly, the Court sustains Barclays' motion, and rules on Barclays' objections as follows.

## II.  ANALYSIS

Under Rule 33(b)(4), a party's "grounds for objecting to an interrogatory must be stated with specificity." "A responding party 'must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'" *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399 (N.D.Ohio 2011) (quoting *Kafele v. Javitch, Block, Eisen &*

5

*Rathbone*, No. 03–638, 2005 WL 5095186, *2 n. 8 (S.D.Ohio April 20, 2005)). "The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Id*. Barclays has grouped its objections into three categories, and the Court will address each in turn.

### A.  Geographic Limitation on Discovery Requests to Ohio Loans

Barclays points out that although several of Kline's requests are expressly limited in scope to Ohio, many are not. Doc. #380-1 at 3. As an example, it cites Interrogatory Number 1, which states:

> Provide: (i) the number of loans serviced by HomEq for each year from 2000 to the present, and (ii) the number of loans serviced by HomEq for Wells Fargo for each year from 2000 to the present; (iii) the number of loans serviced by HomEq in Ohio for each year from 2000 to the present.

Barclays requests "that this Court limit Barclays' discovery responses to mortgage loans made in the State of Ohio," as in subsection (iii) above. Doc. #380-1 at 3.

Kline makes two arguments in response. First, he argues that Barclays' original discovery responses did not object on the grounds that a geographic limitation should be imposed. Doc. #385 at 2. Second, Kline argues that his "breach of contract claim against Barclays includes, among other things, specific allegations that defendants charged Kline and other prospective class members for late fees after acceleration and fees illegally split between attorneys and non-

attorneys in violation of applicable state law and the loan agreements between the parties." *Id.* at 3.

Whether or not Barclays originally presented a geographically-based objection to Kline's discovery requests, Rule 26(b)(1) of the Federal Rules of Civil Procedure still requires that the request be "relevant to any party's claim or defense" in the action. MERS also objected to Kline's discovery requests on the basis that only Ohio-based loans were relevant to his remaining claims, and the Court agreed. Doc. #377 at 17-19. The Court discussed Kline's remaining claims under TILA and the FDCPA, and how each depended upon a violation of Ohio law for their continued viability. *Id.* The Court incorporates that discussion and holding here:

> Kline correctly points out that the first class action claim in the Amended Complaint does not contain a "geographic limitation." However, MERS is correct when it states that the viable claims at this point in the litigation "all turn upon" Ohio law. The purported class claim's allegations that do not pertain to claims that have been dismissed depend completely upon the viability of Kline's claims. To illustrate, the Court will briefly summarize two of the claims. The Court has held that that Kline has stated a plausible FDCPA claim by alleging two things. First, he alleged that the collection of attorney fees and other fees that accrued while litigating the foreclosure lawsuits against him were unreasonable, because the FDCPA prohibits the collection of amounts that are not "expressly authorized by the agreement creating the debt," and the agreement only authorized "reasonable" fees. 15 U.S.C. § 1692f(1). Second, Kline alleged that the collection of the aforementioned fees violated Ohio law, due to its specific prohibition on mortgage or loan instruments that authorize the collection of attorneys' fees, as well as prohibitions on the sharing of attorney fees. These allegations formed the foundation for Kline's viable claim under the FDCPA regarding the collection of a debt that is not "permitted by law." *Id.* In other words, the claim only succeeds if the amounts collected were not authorized by Ohio law. Kline has

7

not demonstrated the relevancy to his claim of loans entered into under the laws of other states. He points only to the class claims alleged in the Amended Complaint that have "no geographic limitation" and argues that "most of the allegations in the Amended Complaint have nothing to do with the state in which the legal fees or expenses were incurred." But Kline cannot rely on allegations in the Amended Complaint that concern Plaintiffs whose claims have been dismissed. As stated, his FDCPA claim depends on Ohio law for its viability. Thus, there is a reasonable basis for limiting the scope of MERS's discovery burden to Ohio loans.

The same reasoning applies to the non-geographically based class claims that allege a violation of Section § 1666d of the TILA. The Court previously held that Kline has stated a viable claim under the TILA against MERS, based on Kline's allegation that MERS failed to refund improperly collected fees. Doc. #154 (adopting recommendation of the Magistrate Judge to overrule MERS' Motion to Dismiss Kline's TILA claim); *see also* Doc. #133 at 19-21 (analysis of the Magistrate Judge). Unlike the FDCPA statute, the TILA statute does not provide a test for determining whether an amount was improperly collected from a debtor. Instead, it requires refund to a consumer's account "[w]henever a credit balance in excess of $1 is created in connection with a consumer credit transaction through . . . transmittal of funds to a creditor in excess of the total balance due on an account . . . or amounts otherwise owed to or held for the benefit of an obligor." 15 U.S.C. § 1666d. Whatever excessive "credit balance" occurred, therefore, is dependent upon that amount being improper or illegally charged. Such determination can only be made by reference to the FDCPA claim, which is subject to the violation of Ohio law described above. This is also illustrated by the class action allegation in the Amended Complaint pertaining to potential class members "who . . . were overcharged by defendants and then denied interest on the refund of such overcharge in violation of § 1692f of the FDCPA or § 1666d of TILA." Doc. #157 at 5. The TILA claim depends on the basis for the impropriety of the charge under the FDCPA, because the TILA provision cited provides no mechanism for making that determination. Without the reference to the FDCPA claim, the scope of the TILA claim would hardly be narrower that the statute itself, resulting in a burdensomely broad scope of discovery. Thus, the geographic restriction of the FDCPA claims to Ohio loans applies also to the TILA claim. Kline's objection to this limitation is, therefore, overruled.

8

Doc. #377 at 17-19.

The only additional argument that Kline now makes is based on his breach of contract claim against Barclays, but that was a common law claim brought under Ohio law and does not, therefore, justify extending discovery to non-Ohio loans. Furthermore, the Court dismissed the breach of contract claim against Barclays on March 29, 2011. Doc. #241. Kline's remaining claims against Barclays are based on Ohio law: a claim under the OCSPA and a common law claim for unjust enrichment.[3] Kline has not pointed to any claim against another defendant that is not based on Ohio law that the Barclays discovery would be relevant to. Barclays' objection, is, therefore, sustained, and its discovery obligations are accordingly limited to Ohio-based loans and mortgages in its database.

---

[3] Although the Court overruled Barclays' Motion to Dismiss Kline's OCSPA claim on March 29, 2011, an intervening change in law causes the Court to doubt the continuing viability of that claim. The Court overruled Barclays' motion to dismiss the OCSPA claim for two reasons. First, it noted that there was "no statutory basis for concluding that the OCSPA is inapplicable to entities servicing mortgages," after construing the OCSPA and proposed amendments thereto. Doc. #241 at 10. Second, the Court adopted the Report and Recommendations of the Magistrate Judge who, after reviewing the applicable case law, was "left with the distinct impression that the issue of the OCSPA liability of a mortgage servicer such as Defendant HomEq ha[d] yet to be resolved definitively by the courts of Ohio." Doc. #229 at 11. In 2013, however, the Ohio Supreme Court held that a mortgage servicer was not a "supplier" within the meaning of the OCSPA, and the servicing of a residential mortgage loan was not a "consumer transaction" under the statute. *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013). The *Anderson* holding appears fatal to Kline's OCSPA claim against Barclays, but Barclays has not yet moved to dismiss the claim.

9

B. **Requests for Information Pertaining to Loans Owned or Guaranteed by Fannie Mae or Freddie Mac**

Several of Kline's discovery requests pertain to loans owned or guaranteed by Fannie Mae or Freddie Mac. For example, Interrogatory Number 2 states:

> Provide: (i) the number of loans serviced by HomEq which were either owned or guaranteed by Fannie Mae and/or Freddie Mac for each year from 2000 to the present, and (ii) the percentage of loans serviced by HomEq which were either owned or guaranteed by Fannie Mae and/or Freddie Mac for each year from 2000 to the present.

Similarly, Interrogatory Number 3 states:

> Provide: (i) the number of loans serviced by HomEq which were written on either Fannie Mae or Freddie Mac form Notes, Mortgages, or Deeds of Trust for each year from 2000 to the present, and (ii) the percentage of loans serviced by HomEq which were written on Fannie Mae or Freddie Mac form Notes, Mortgages, or Deeds of Trust for each year from 2006 to the present.

Barclays objects to these requests "as irrelevant and beyond any possible typicality or commonality with" Kline's loan because it was not serviced or guaranteed by Fannie Mae or Freddie Mac. Doc. #380-1 at 3. Barclays also argues that the request is not amenable to electronic searching because it requires the manual identification of a particular type of loan form in the database. *Id.* at 4.

Kline replies that when served with his discovery requests, Barclays failed to object on the grounds that a manual search would be burdensome, and, furthermore, argues that the requirement of manually reviewing files is not a basis for objecting to a discovery request. Doc. #385 at 3.

However, Kline does not address the relevancy argument, which the Court believes is the substantive factor to consider. Kline provides no explanation for

10

how his discovery request for information pertaining to Freddie Mac or Fannie Mae loans is relevant to his claims against Barclays or any other defendant, since neither entity was the owner or guarantor of his loan. Accordingly, the Court sustains Barclays' objections to Kline's Interrogatories Number Two and Three, seeking information on loans in its database owned or guaranteed by Freddie Mac or Fannie Mae.

### C. Information Already Provided by Other Defendants

Finally, Barclays objects to Interrogatory Number 5, which states:

> For each year from 2000 to the present, provide the number of loans serviced by HomEq for properties located in Ohio which were referred to (i) either Lerner, Sampson or Reimer Lorber for services relating to default, bankruptcy or foreclosure; or (ii) any other law firm, and provide the name of those law firms and the number of matters referred.

Specifically, Barclays objects to Kline's request for information regarding the number of loans it serviced in Ohio that were referred to Defendants Reimer, Lorber and Arnovitz Co., LPA or Lerner, Sampson and Rothfuss (collectively, the "Law Firm Defendants"), or the identification of any other law firms in Ohio who handled such matters for Barclays and the number of matters referred to them. Doc. #380-1 at 4. According to Barclays, the Law Firm Defendants have already responded to the first part of the request, mooting the need for it to respond. With regards to the request for identifying other law firms to which Barclays referred matters and the number of matters, Barclays objects that such matters do not share the relevance, typicality or commonality with Kline's claims, since they did

11

not handle his loans, collection matters, or the fees that are the basis for his claims. *Id.* at 5.

Kline responds by arguing that Barclays has failed to support the argument that "it can somehow truncate its own liability for identical overcharges on loans serviced by it using different law firms," but this does not demonstrate the relevancy of the request to his claims, which only concern the collection activities of the Law Firm Defendants. He does not connect the dots between his claim and those of persons whose loans were subject to collection or fees dealt with by law firms that he did not deal with. Furthermore, Kline does not contest Barclays' assertion that the Law Firm Defendants have already responded to the first part of the request. Accordingly, the Court sustains Barclays' objections to Interrogatory Number 5.

**D.   Extension of the Deadline to Respond to the Court's Discovery Order**

Barclays also asks the Court to reconsider the twenty-one day deadline it ordered for discovery responses in its Decision and Order of October 21, 2012. Barclays states that it now is in possession of the loan database that it previously did not have access to, but the dataset is "challenging and unwieldy," and took a year and much expense to mine for a list of class members in another class action case. Doc. #380-1 at 5. According to Barclays, it has located a different database that it claims would be more amenable to searching, but states that it will take 90 days at a minimum (from the filing of its response on October 7, 2014) for its vendor to perform the search and comply with the discovery order. It states

12

that it will not be able to comply with the order any sooner, and asks for the Court to extend the timeframe until December 31, 2014. *Id.* at 5-6.

Kline does not oppose the extension request. Doc. #385 at 1. This is logical, as he has requested that the Court delay the discovery deadline until sixty days after the parties have complied with the discovery order. Doc. #379 at 4. Because the Court has scheduled a conference call to discuss these scheduling issues, it will reserve ruling on Barclays' request at this time.

### III. **CONCLUSION**

Barclays' Motion for Reconsideration (Doc. #380) is SUSTAINED, and Barclays' specific Objections to Kline's Interrogatories are SUSTAINED, as set forth above.

Based on these rulings, Barclays is not required to produce discovery from its loan database pertaining to non-Ohio loans, or pertaining to loans owned or guaranteed by Fannie Mae or Freddie Mac. Furthermore, Barclays is not required to produce discovery related to loans that its previous mortgage servicing entity, HomEq, referred to a law firm that is not a defendant in this case.

The parties are reminded of the telephone conference scheduled for Monday, October 27, 2014, at 4:30 p.m.

Date: October 27, 2014

WALTER H. RICE
UNITED STATES DISTRICT JUDGE