IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al., :

    Plaintiffs,

v.                          :     Case No. 3:08-cv-408

MORTGAGE ELECTRONIC         JUDGE WALTER H. RICE
SECURITY SYSTEMS, et al.,
                                            :
    Defendants.

---

DECISION AND ENTRY OVERRULING, WITHOUT PREJUDICE TO RENEWAL AFTER THE COURT'S FUTURE CLASS CERTIFICATION RULING, PLAINTIFF EUGENE KLINE'S MOTION TO AMEND THE [AMENDED] COMPLAINT (DOC. #391) AND OVERRULING AS MOOT DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER EXTENDING TIME FOR IDENTIFYING EXPERT WITNESSES (DOC. #398)

---

In this putative class action, a number of individuals, including Plaintiff Eugene Kline ("Plaintiff" or "Kline"), set forth claims against eleven defendants, seeking monetary damages and injunctive relief for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–1692f; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d; and the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.02.  They also alleged Ohio common law claims of unjust enrichment and breach of contract.  Plaintiffs were Ohio homeowners who alleged misconduct in mortgage servicing, misrepresentation in foreclosure filings, and the charging and collecting of improper and excessive fees

during the foreclosure process. At this stage of the litigation, Kline is the only remaining Plaintiff. His motion for class certification must be filed by April 30, 2015. The Court's jurisdiction is based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Pending before the Court is Kline's Motion to Amend the [Amended] Complaint.[1]  Doc. #391. Kline seeks leave to bring a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, and an Ohio common law claim for fraud against Defendants. Doc. #391. For the reasons set forth below, the motion is OVERRULED without prejudice.

## I.     RELEVANT FACTUAL BACKGROUND

The following is a summary of the factual allegations relevant to Kline's remaining claims, as stated in the Amended Complaint. Doc. #157. In June, 2004, Kline entered into a $160,000 loan transaction with WMC Mortgage Corporation ("WMC") that was secured by a mortgage on his home. *Id.* ¶ 25. After Kline fell behind on the payments and defaulted on the loan, Reimer, Arnovitz, Chernek & Jeffrey Co. L.P.A. ("RAC&J") commenced foreclosure proceedings against him in August, 2005, on behalf of WMC and the loan servicer,

---

[1] Also pending before the Court is Defendants' Motion for Reconsideration of Order Extending Time for Identifying Expert Witnesses (Doc. #398). For the reasons explained in Part IV below, said motion is overruled as moot.

2

Defendant HomEq Servicing Corporation ("HomEq")[2]. *Id.* ¶¶ 26–29. After the mortgage was reinstated, WMC and HomEq dismissed the foreclosure proceeding. *Id.* ¶ 30.

By December of 2006, Kline had again fallen behind on the loan payments, and HomEq notified him that he faced further foreclosure proceedings if he failed to bring the loan current. *Id.* ¶ 31. A second foreclosure action was filed against Kline on March 16, 2007, again with RAC&J as counsel, but this time with Defendant "Wells Fargo Bank, N.A., as Trustee" ("Wells Fargo"), named as the plaintiff. *Id.* ¶¶ 32–33.

Although the foreclosure complaint stated that Wells Fargo was the owner and holder of the promissory note on his mortgage, the mortgage was allegedly not assigned to the bank until March 26, 2007, ten days after the filing of the foreclosure action. *Id.* ¶¶ 34, 37. Furthermore, both Wells Fargo and RAC&J allegedly knew that the papers initially filed in the foreclosure action falsely represented Wells Fargo as the owner of the note and the creditor to whom Kline owed the debt. *Id.* ¶¶ 34–36. An employee of HomEq allegedly falsely represented himself as a Vice-President of Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), in order to effect the assignment of the mortgage loan to Wells Fargo. *Id.* ¶¶ 39–44. During these foreclosure

---

[2] Defendant Barclays Capital Real Estate, Inc. ("Barclays") now stands in the shoes of HomEq in this litigation. In 2006, Barclays acquired HomEq from Wachovia Corporation, but sold it to Ocwen Loan Servicing ("Ocwen") in 2010. Ocwen assumed the servicing of HomEq before shutting it down in 2010.

3

proceedings, Kline decided to sell his home to pay off the loans it secured. *Id.* ¶ 43.

A number of fees and expenses were allegedly improperly charged to Kline in order to pay off the delinquent loan. *Id.* ¶¶ 45–61. The fees included $450.00 for "Process Service," $75 for each of the parties served, $100 to serve MERS, a $50 "handling" fee, $803 for a "Preliminary Judicial Report" (of which $335 went toward an "Exam Fee"), $150 for a "Final Judicial Report" (of which $50 went toward an "Exam Fee"), and late fees charged after the acceleration of the loan. *Id* ¶¶ 45–67. Furthermore, Wells Fargo, HomEq and RAC&J allegedly personally served process on MERS through inexpensive, legally acceptable methods while passing on inflated costs to a class of borrowers caught in foreclosure, of whom Kline was a representative. *Id.* ¶¶ 19(i), 47.

In addition to the loan alleged to be held by Wells Fargo, Kline's home secured a second mortgage that was held by MERS and serviced by HomEq. *Id.* ¶ 64. Representing MERS, Defendant Lerner, Sampson & Rothfuss ("LS&R") filed an answer on its behalf in the foreclosure proceedings. Doc. #277-2; Doc. #1 at 66. In November of 2007, Kline contacted LS&R to request a "formal payoff quote" in order to pay off the second mortgage. Doc. #157 ¶ 63. On November 14, 2007, LS&R responded to Kline's request with a figure that included $225 in "Previous Service Costs" and $350 in "Attorney Costs." *Id.* ¶ 64. On November 18, 2007, Kline was allegedly "forced to sell his house to pay off the amounts

4

which were demanded by and allegedly owed to defendants [LS&R], MERS, WMC Mortgage and HomEq." *Id.* ¶ 65.

Kline alleges that attorney fees "incurred by a lender in foreclosure" are illegal under Ohio law; LS&R and its clients routinely collect and attempt to collect such illegal fees; the $225.00 in "Previous Service Costs" was not recoverable under the law; and the fees constituted "fees for legal-type services," unrecoverable overhead expenses, and an "impermissible sharing of legal fees" which were improper under the law. Doc. #1 ¶¶ 69-76.

## II. RELEVANT PROCEDURAL HISTORY

Kline and his former co-plaintiffs filed the original Complaint in this putative class action on November 10, 2008. Doc. #1. After several of the claims were dismissed, Plaintiffs filed an Amended Complaint on April 14, 2010. Doc. #157.

After numerous motions filed by the parties and rulings by the Court, the claims of all Plaintiffs except Kline have been dismissed. Many of his claims have been dismissed as well. At this stage of the litigation, Kline's remaining viable claims are: 1) against MERS, claims under the TILA, the OCSPA, and for breach of contract;[3] 2) against Wells Fargo, claims under the TILA and for breach of

---

[3] On March 29, 2010, the Court sustained in part and overruled in part MERS' Motion to Dismiss, thereby dismissing Kline's claims under the FDCPA, but allowed Kline's claim under the TILA against MERS to proceed. Doc. #154 at 7 & 15. On March 25, 2011, the Court dismissed Kline's claim against MERS for unjust enrichment. Doc. #239 at 8. Kline's claim under the OCSPA was allowed to proceed, as was his breach of contract claim. *Id.* at 3 n.2 & 10 n.5.

5

contract;[4] 3) against Barclays, a claim for unjust enrichment;[5] 4) against RAC&J, claims under 15 U.S.C. § 1692f(1) of the FDCPA and for unjust enrichment;[6] and 5) against LS&R, claims under 15 U.S.C. § 1692f(1) of the FDCPA and for unjust enrichment.[7]

The Court's first Scheduling Order was entered on April 20, 2009. Doc. #68. This was superseded by the Scheduling Order entered on March 19, 2012, which set a deadline of December 21, 2012, to request leave to amend the pleadings. Doc. #270. Both before and after the entry of those orders,

_____

[4] On March 28, 2011, the Court dismissed Kline's OCSPA claim and his claims for unjust enrichment and breach of contract against Wells Fargo. Doc. #240 at 2 n.1 & 9. In the same Decision, the Court overruled Wells Fargo's Motion for Judgment on the Pleadings (Doc. #180) with respect to Kline's TILA claim. *Id.* at 8. Kline filed a Motion for Reconsideration (Doc. #244), which the Court granted with respect to the breach of contract claim. Doc. #264.

[5] On March 29, 2011, the Court dismissed Kline's TILA and breach of contract claims against Barclays. Doc. #241

[6] On March 22, 2010, the Court dismissed Kline's FDCPA and breach of contract claims against RAC&J. Doc. #150. On April 19, 2012, the Court the FDCPA claim. Doc. #271. On February 26, 2013, the Court filed an entry clarifying that it had only reinstated the FDCPA claim under 31 U.S.C. § 1692f(1), any claim under 31 U.S.C. § 1692e remained dismissed, and the state law claims of unjust enrichment and violation of the OCSPA were reinstated. Doc. #293. On September 5, 2014, the Court dismissed Kline's OCSPA claim against RAC&J. Doc. #366.

[7] On September 9, 2009, the Court dismissed Kline's FDCPA and breach of contract claims against LS&R. Doc. #116. On April 19, 2012, the Court reinstated the FDCPA claim. Doc. #271. On February 27, 2013, the Court filed an Entry clarifying that it had only reinstated the FDCPA claim under 31 U.S.C. § 1692f(1), any claim under 31 U.S.C. § 1692e remained dismissed, and the state law claims of unjust enrichment and violation of the OCSPA were reinstated. Doc. #294. On September 8, 2014, the Court dismissed Kline's OCSPA claim against LS&R. Doc. #367.

Defendants filed multiple Motions to Dismiss, Motions for Judgment on the Pleadings, and Motions for Summary Judgment. A third Scheduling Order was entered on September 19, 2013, which stated that the "[c]ut-off date for filing of motions to amend and to add parties" was December 1, 2013. Doc. #307. By that time, the number of parties and claims had been considerably narrowed by the Court's prior rulings.

At a February 6, 2014, phone conference, the parties indicated that Barclays and MERS were having problems responding to Kline's discovery requests. At the request of the Court, the parties submitted a Proposed Revised Scheduling Order on February 18, 2014, with a proposed deadline of August 22, 2014, to file motions to amend. Doc. #322-1.

On February 11, 2014, the Court referred the parties to mediation with Chief U.S. Magistrate Judge Ovington. Doc. #320. To prepare for mediation, Judge Ovington ordered the parties to "submit to [her] and all other parties (without formal filing with the Clerk) a mediation conference statement in letter form." Doc. #327. Four days before the mediation, Kline's attorney submitted a Mediation Statement to Judge Ovington and Defendants,[8] stating that he was "in the process of preparing an amended complaint to add a cause of action under

---

[8] The Order gave the parties the option of submitting an additional statement for the mediator's eyes only. Although Kline's Mediation Statement is addressed only to Judge Ovington, it does not designate that it was for the "Mediator's Eyes Only," as the Order required. Doc. #327 at 2. Thus, the Mediation Statement attached to Kline's motion was apparently the required statement submitted to the mediator and all other parties.

7

[RICO]." Doc. #393-2 at 6. The mediation session was held on March 18, 2014, and was unsuccessful. Doc. #327. On March 28, 2014, in an Order setting forth a new trial date, the Court adopted the dates of the parties' Proposed Revised Scheduling Order. Doc. #329.

On May 14, 2014, Kline filed a Motion to Remove Confidentiality Protection for Certain Documents (Doc. #339). On June 3, 2014, he filed a Motion to Compel Disclosure from MERS (Doc. #345), a Motion to Compel Disclosure from Defendant Wells Fargo (Doc. #346), and a Motion to Compel Disclosure from Defendant Barclays (Doc. #347).[9] On June 13, 2014, Defendants filed Responses in Opposition. Doc. #348, #349, #350, #350. Kline filed Reply Briefs on June 20, 2014. Doc. #352, #353, #354.

On June 27, 2014, Barclays, MERS, and Wells Fargo filed a Request for a Discovery Conference. Doc. #355. In the request, they noted that Kline had filed the Motions to Compel without requesting a preliminary discovery conference with the Court, as is "encouraged" by the Court's Pretrial and Trial Procedures. Doc. #355 at 2 (quoting General Order No. Day 12-01 at 11). They also complained that Plaintiff's discovery demands were "punitive," beyond the scope of evidence relevant to his claims, and calculated to delay the litigation. *Id.* at 3.

Kline filed a Response in Opposition to the Request for a Discovery Conference on June 30, 2014. Doc. #356. Therein, he restated many of the

_____

[9] Kline's attorney actually filed the Memoranda in Support of his motions on May 12, 13, and 14, but without the motions. After the Clerk alerted him to the oversight, Kline filed all of the motions on June 3, 2014.

8

arguments set forth in the Motions to Compel, and stated that the "request for a discovery conference [was] merely another attempt to further delay this action and prevent discovery" by Defendants. *Id.* at 3-4.

The Court held the discovery conference on July 28, 2014.  At that time, the Court requested additional briefing from the parties in order to allow Barclay, MERS, and Wells Fargo the opportunity to reply to Plaintiff's June 30, 2014, Response, and to inform the Court of what discovery had been actually provided and what remained to be provided.  Barclays, MERS, and Wells Fargo filed Supplemental Memoranda on August 21, 2014.  Doc. #363, #364, #365.  Kline filed a Reply Brief on September 17, 2014.  Doc. #371,

By a Decision and Entry filed on October 1, 2014, the Court sustained in part and overruled in part the Motions to Compel.  Doc. #377.  The Court ruled that some of the Interrogatory Responses provided by MERS and Wells Fargo had been inadequate, but sustained some of their objections because a number of the Interrogatories exceeded the scope of discovery relevant to Kline's claims.  The Court ordered Barclays to de-designate certain documents as confidential and overruled its objection to Kline's request for documents that were part of a historical loan database.  The parties were ordered to provide the requested discovery within 21 days.

Barclays filed a Motion for Reconsideration on October 7, 2014, requesting that the Court rule on several of its objections to Kline's Interrogatories and extend the deadline to produce the documents from the historical loan database.  Doc.

9

#387.  The Court sustained Barclays' motion on October 27, 2014, limited the scope of the Interrogatories, and granted an extension of the deadline until December 31, 2014.  The same day, the Court convened a phone conference with the parties to discuss scheduling issues.  The Court requested that they file a new Rule 26(f) Report setting forth their positions on the viability of certain dates, including a deadline for requesting amendments.  *See* Minute Entry of Oct. 27, 2014.

The Rule 26(f) Report was filed on November 10, 2014.  Doc. #388.  Therein, the parties described their disagreement over the deadline to file amendments:

> The previous deadline for motions for leave to amend the pleadings and/or to add additional parties was August 22, 2014.  Plaintiff seeks to extend the deadline for motion to amend the pleadings and/or to add additional parties to March 1, 2015.  Plaintiff's position is that he moved for an extension of the scheduling deadlines well before the August 22, 2014 deadline, and that plaintiff's ability to proceed with discovery to gain the information necessary to determine whether the complaint should and could be amended was hindered by the defendants' delay in providing full and complete document and interrogatory responses, which ultimately forced plaintiff to make four motions to compel in May 2014, each of which were granted in part by this Court on October 1, 2014.  MERS, Wells Fargo and Barclays have only recently served their Supplemental Disclosures in response to the Oct. 1, 2014 Order, and plaintiff has identified several supplemental responses from Barclays and Wells Fargo that it believes are inadequate.  In addition, the parties are still in discussions about whether plaintiff will allow Barclays to stipulate to certain numbers in order to satisfy its obligation to supplement its Interrogatory Responses pursuant to the court's Oct. 1, 2014 Order.  Moreover, plaintiff believes that the right to an extension is further supported by the fact that -- in the case of Wells Fargo, MERS and Barclays – the Court ruled that defendants were not precluded from raising objections to plaintiff's document and interrogatory requests, despite

delays in providing objections and disclosure of 8 months, 20 months and 23 months, respectively.

Defendants oppose any extension of the deadline for filing motions to amend the pleadings and/or to add additional parties, as the deadline has lapsed, and the case is more than six years old. Moreover, Barclays has offered to stipulate that the number of loans requested in the two remaining interrogatories directed to Barclays exceed 100, thereby allowing Plaintiff to file his motion for class certification. Plaintiff, however, has failed to respond to Barclays several offers as to this stipulation. Barclays, Wells Fargo, and MERS further state that, except as offered in the referenced stipulation, these Defendants have provided all of the supplemental discovery directed by the Court, and Plaintiff's present contention that there is still outstanding discovery from these Defendants is frivolous, unfounded in fact, and intended only to further delay this proceeding.

On February 3, 2015, Kline filed the pending motion, seeking leave to plead RICO and common law fraud claims against all Defendants. Doc. #391. Defendants filed Responses in Opposition on February 27, 2015. Doc. #400, #402, #403. Kline filed a Reply Brief on March 18, 2014. Doc. #409, #410, #411.

### III. <u>MOTION TO AMEND THE [AMENDED] COMPLAINT (DOC. #391)</u>

Kline asserts that the proposed RICO and fraud claims arise from "fundamental misrepresentations" Defendants made during the state foreclosure proceedings. Doc. #392 at 2. He asserts that these misrepresentations were "uncovered . . . during discovery," which was delayed because of Defendants, as demonstrated by the Motions to Compel and the Court's subsequent discovery orders. *Id*. at 2-3, 10. He believes that his motion is not unduly delayed because he filed it on February 3, 2015, in order to "comply with the proposed revised

11

discovery deadlines" in the parties' Amended Rule 26(f) Report of November 10, 2014. *Id.* at 10. Kline points to his March 14, 2014, Mediation Statement as evidence that he provided notice to Defendants of his intent to add a RICO claim, and further asserts that allowing the amendment will not prejudice Defendants because no depositions had yet been held by the date he moved the Court for leave to amend. *Id.* at 12-15.

Although Defendants have separately briefed the issue, they make substantially the same arguments in opposition. They recognize undue delay in the six years that have passed since the filing of the Complaint, believing that Kline could have stated RICO and fraud claims from the inception of this case. Doc. #402 at 6-8. Defendants believe that failing to request leave to amend in the year that has passed since the mediation in itself constitutes undue delay. *Id.* at 9; Doc. #400 at 6-7; Doc. #403 at 3-4. They argue that forcing them to defend the new claims at this stage of the litigation would be prejudicial. Doc. #400 at 9; Doc. #402 at 11-12; Doc. #403 at 3-4. Defendants also attack the viability of the proposed claims, arguing that they fail to state a claim upon which relief may be granted, and are therefore futile. Doc. #400 at 9-18; Doc. #402 at 15-19; Doc. #403 at 5-14.

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course," but only within 21 days after service of a responsive pleading. After the 21-day period has passed, a party may only amend a pleading with either "the opposing party's written consent or the

12

court's leave. The court should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). To determine whether to grant a party leave to amend, a court must consider a number of factors:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision. Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 805 (6th Cir. 2005) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir.1989)).

Because of the unusual procedural circumstances of this particular case, the Court believes that the interests of justice described by Rule 15 require it to defer a decision on amendment until the resolution of the class certification issue. The filing of briefs on class certification is imminent. Kline must file a Motion for Class Certification by April 30, 2015. *See* Scheduling Order, Doc. #395 at 3. In the absence of extraordinary circumstances, no extension of this deadline or the deadlines for Response or Reply Memoranda will be considered. The Court's class certification ruling may determine the ultimate feasibility of continuing this litigation; once that ruling is made, Kline may renew the Motion for Leave to Amend. Until then, the motion is overruled without prejudice.

Although the Court defers determination of whether leave to amend will be granted, if sought, it observes that, after preliminary consideration, Kline has one major hurdle to overcome should he decide to do so. He does not convincingly

13

explain his failure to request leave to amend at some earlier time.  As LS&R points out, it is problematic that, in support of his Motion to Amend, Kline points to a *confidential* communication made for the purposes of mediation as evidence that he gave Defendants "notice" of his intent to file new claims, and that he attached the statement as an exhibit to the motion.  Under the Rule 16.3(c) of the Court's Local Civil Rules, "all communications made by any person" during mediation are confidential.  Such communications require consent by all parties and the mediator before disclosure.  S.D. Ohio Civ. R. 16(c)(3)(B).  Putting that issue to the side, the Court interprets this statement as an admission that he believed he had a viable RICO claim by mid-March, 2014.  That was nearly a year before filing the Motion for Leave to Amend on February 3, 2015.  Furthermore, the statement predates the filing of the Motions to Compel by several months.  For that reason, it is unclear how any discovery delays attributable to Defendants that were remedied by rulings on the Motions to Compel could have interfered with his ability to state a RICO claim during that time.  By his own words, he claimed months before filing the Motions to Compel that he was "in the process of preparing an amended complaint to add a cause of action under [RICO]."  Doc. #393-2 at 6.

Finally, Kline's counsel is advised that if a Second Amended Complaint is drafted and presented to the Court for consideration in the future, it must not restate claims that have been dismissed.  The draft attached to the Motion for Leave to Amend appears to be based on the Amended Complaint filed on April 14, 2010, and does not account for the dismissal of many claims.  Restating these

claims creates the impression that they are still viable and works against what must be a common goal of the Court and the parties: to diminish the complexity of this litigation. If the claims were restated because of concern that failure to include them in an amendment would waive the right to appeal their dismissal, Kline is reassured that this is not the case. A plaintiff does not waive the right to appeal the district court's dismissal of a claim with prejudice by filing an amended complaint that does not replead the claim. *Hayward v. Cleveland ClinicFound.*, 759 F.3d 601, 617-18 (6th Cir. 2014) (citing *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir.2012) (en banc)). Thus, if Kline elects to renew the Motion for Leave to Amend, a more carefully drafted Second Amended Complaint must be attached that accurately and precisely reflects both the existing claims and the proposed amendments.

**IV.   CONCLUSION**

For the reasons set forth above, Kline's Motion to Amend the [Amended] Complaint (Doc. #391) is OVERRULED without prejudice to renewal after a future ruling on the issue of class certification.

Defendants' Motion for Reconsideration of Order Extending Time for Identifying Expert Witnesses (Doc. #398) is OVERRULED as moot. The Court granted Plaintiff an extension of the time to provide expert reports from the original deadline of March 1, 2015, until April 1, 2015. Notation Order of Feb. 11, 2015.

Defendants seek a reinstatement of the original deadline, but that date is now past. Their request is, therefore, moot, and the April 1, 2015 deadline stands.

The parties are again reminded that all deadlines pertaining to class certification, as set forth in the Amended Scheduling Order filed on February 5, 2015, are in force. Doc. #395. In the absence of extraordinary circumstances, requests for extension of all deadlines therein will not be granted.

Date: March 27, 2015        _____
                            WALTER H. RICE
                            UNITED STATES DISTRICT JUDGE