IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | CASE NO. 3:08cv408 |
| | ) | |
| Plaintiffs, | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| MORTGAGE ELECTRONIC SECURITY | ) | |
| SYSTEMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMO IN OPPOSITION TO DEFENDANTS' REIMER, LORBER AND LERNER
SAMPSON'S REQUEST FOR SUMMARY JUDGMENT**

Plaintiff Eugene Kline, on behalf of a putative class and by his counsel Paul Grobman, submits this Memorandum in Opposition to the request for summary judgment made by defendants' Reimer, Lorber & Arnovitz ("Reimer Lorber") and Lerner Sampson & Rothfuss ("Lerner Sampson") in this action.

Though the other defendants in this case have acknowledged that the production of additional documents after the defendants' initial depositions makes an extension of the summary judgment deadlines appropriate here, both Reimer Lorber and Lerner Sampson have sought to procure a judgment based on technicalities rather than attempt to work out a reasonable extension. Had Reimer Lorber and Lerner Sampson exercised the common sense and professional courtesy which plaintiffs have routinely extended to

them in this litigation, the parties could have avoided the additional motion practice which is now before the court.

Citing to Federal Rule of Civil Procedure 6(b)(1)(B), both Reimer Lorber and Lerner Sampson assert that plaintiff has "flouted" the federal rules by failing to formally move to extend the deadlines for responding to the summary judgment motions. However, both Reimer Lorber and Lerner Sampson selectively quote from only a portion of Rule 6(b), which states in complete relevant part:

> (b) Extending Time.
>
> (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
> (A) *with or without motion* or notice if the court acts, or ***if a request is made***, ***before the original time or its extension expires; or***
>
> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

(FRCP Rule 6(b)(1)(A) (emphasis added).   Thus, as is evident from the plain words employed in Rule 6, a party seeking an extension of time before a deadline has passed need not make a formal motion, and indeed a court may unilaterally determine -- without notice -- that a deadline should be extended.  As the Supreme Court said in <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871 (1989),

> Rule 6(b) establishes a clear distinction between "requests" and "motions" . . . . Rule 6(b)(1) allows a court ("for cause shown" and "in its discretion") to grant a "request" for an extension of time, whether the request is made "with or without motion or notice," *provided* the request is made before the time for filing expires."

Id. at 896, n.5.

As Reimer Lorber and Lerner Sampson are well aware, the plaintiff in this case made two such requests to the court well before the deadline for responding to their motions for summary judgment.  Thus, in a letter filed with the court on April 10, 2015, plaintiff requested a status conference with the court to address the production of numerous additional documents by the three corporate defendants after their Rule 30(b)(6) depositions were concluded.

> [T]he deposition of Wells Fargo's Rule 30(b)(6) witness took place on February 26, 2015.  On March 17, 2015, Wells Fargo produced 61 pages of additional documents relating to plaintiff Eugene Kline's loans and certain policies and procedures relating to Wells Fargo's role as trustee and custodian of those loans.
> The deposition of Barclays' Rule 30(b)(6) witness took place on February 25, 2015.  On March 26, 2015, Barclays produced 18 pages of additional documents relating to plaintiff Eugene Kline's loans, each of which directly related to the legal fees and expenses charged to Mr. Kline on his loans.
> The deposition of MERS' Rule 30(b)(6) witness took place on February 19, 2015.  On March 26, 2015, MERS produced 1,326 pages of additional documents relating to its policies and procedures for loans on the MERS System, including policies relating to foreclosure.  In addition, in a four-page cover letter, MERS indicated that it was withholding documents on the basis of the attorney-client privilege, the bank examination privilege, and privileges which purported exist under various sections of the Code of Federal Regulations.  Despite repeated requests, MERS has yet to identify these documents, much less provide a Privilege Log as required by the Federal Rules.

See letter dated April 10, 2015 annexed to the Grobman Declaration ("Grob. Decl.) as Exhibit A.  As a result, plaintiff requested an extension of the summary judgment and other deadlines to take limited additional discovery based on these newly-produced documents:

> plaintiff believes that, at a minimum, it has a right to certain additional disclosures from defendants before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order. These include: (i) reopening the Rule 30(b)(6) depositions of Wells Fargo, Barclays and MERS with regard to these newly-produced documents; and (ii) a privilege log from MERS pursuant to Rule 26 of the Federal Rules of Civil Procedure identifying the documents that MERS is withholding on the basis of purported privileges.

Grob. Decl. Exh. A, p. 2.

On May 7, 2015, plaintiff filed a second virtually identical letter with the court making the same request, again well before the May 18, 2015 deadline for filing opposition papers to the motions for summary judgment.[1] (Grob. Decl. Exh. B) Neither Reimer Lorber nor Lerner Sampson ever submitted any response to these requests.

In contrast to the silence from the Reimer Lorber and Lerner Sampson defendants, the attorneys for Barclays, MERS and Wells Fargo recognized that an extension of the existing deadlines was appropriate under these circumstances. Thus, in a letter accompanying their production on March 26, 2015, counsel for the three defendants wrote that they would produce a corporate designee for further deposition with regard to these documents, and further stated:

> I will consent to any reasonable extension of time you may require in order to either oppose any summary judgment motions or support your own class certification motion to the extent such an extension is necessitated by the materials being presented herewith.

(3/26/15 letter, annexed as Exh. C to Grob. Decl.)

On June 10-12, 2015, plaintiff's counsel travelled to Baltimore to take additional depositions of Barclays, MERS and Wells Fargo relating to the newly-produced

---

[1] Counsel for plaintiff also called the court on several occasions to confirm that the court

documents.   Even after these further depositions, the defendants continued to produce additional documents which are highly relevant to the plaintiff's claims against the defendants in this litigation, and which were clearly encompassed within the initial discovery requests served on Barclays, MERS and Wells Fargo in 2012 and 2013.[2]

Like all of the Federal Rules of Civil Procedure, Rule 6 of the Fedeeal Rules "[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." Ahanchian v. Xenon Pictures, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (internal citations and quotations omitted)   Consequently, requests for extensions of time made before the applicable deadline has passed should "normally be granted in the absence of bad faith or prejudice to the adverse party." 4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (3d ed.2004).

"Good cause" is a "non-rigorous standard that has been construed broadly across procedural and statutory contexts." Ahanchian, 624 F.3d at 1258.   Courts have routinely found that a party's failure to provide relevant discovery in a timely manner constitutes sufficient good cause for extending discovery and motions deadlines in a Scheduling Order.   See, e.g., Wisfame  Intl v. FKA Distributing Co.,  2011 U.S. Dist. Lexis 11431, *21-22 (E.D. Mich. 2011)  (good cause to extend discovery deadlines in scheduling order where  plaintiffs have  "been diligent in attempting to secure information from [defendants], which has been resisted for a variety of reasons"); Mesmer v. Rezza, 2011

---

[2] Thus, on June 23, 2015, Wells Fargo produced Custodial Agreements which set forth Wells Fargo's custodial obligations with respect to the Trust which bought plaintiff's loans  from Merrill Lynch. (See Transmittal Email annexed to Grob. Decl. as Exh. D hereto).   On June 25, 2015, Wells Fargo produced documents relating to requests to release the plaintiff's original mortgage documents in connection with the foreclosures on plaintiff's property in 2005 and 2007.  (See Transmittal Email annexed to Grob. Decl. as Exh. E)

U.S. Dist. Lexis 130895, *12 (D. Md. 2011) ("A party's failure to respond to discovery requests or assert timely objections to those requests constitutes good cause for modifying a scheduling order"); Heil v. Belle Starr Saloon & Casino, 2011 U.S. Dist. Lexis 34931, *32-33 (D.S.D. 2011) ("The court finds the defendants' failure to respond or assert timely objections to the discovery requests . . . constitutes sufficient good cause for extending the discovery deadline and the motions deadline."); Baisdan v. CSC-Pa, Inc., 2009 U.S. Dist. Lexis 108786, *4 (S.D. W. Va. 2009) (finding good cause for delay in seeking to amend complaint where "the defendants have refused to produce relevant discovery"); Nosker v. Gill Bros., 2007 U.S. Dist. Lexis 11885, *5-8 (W.D. Mo. 2007) (finding good cause for late filing of amended complaint where plaintiffs "were unable to amend the complaint prior to the established deadline because plaintiffs were forced to file a motion to compel to obtain certain corporate and financial documents from defendants"); Stewart v. Coyne Textile Services, 212 F.R.D. 494, 497 (S.D. W. Va. 2003) (finding good cause for amendment of complaint after deadline in scheduling order, court stated that "this Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses")[3]

No showing of "excusable neglect" or "substantial justification" is necessary for

---

[3] See also St. Augustine High School v. Underwriters at Lloyds, 2010 U.S. Dist Lexis 4441, *10 (D. Md. 2010) (good cause for extending discovery where the defendants "fail[ed] to produce certain relevant documents until after the close of fact discovery"); Johnson v. Wendy's Restaurant, 05-cv-1060 (S.D. Ohio Sept. 22, 2006) (finding good cause to extend discovery deadline where "defendant has been denied a fair opportunity to make full and proper inquiry of plaintiff on deposition" because of "plaintiff's failure to cooperate in the discovery process"); Wasdin v. Cheetah Trans. LLC, 2006 U.S. Dist. Lexis 88728, *6 (M.D. Ga. 2006) (good cause established to extend Scheduling Order deadlines where the defendants "were less than forthcoming at the outset of discovery").

such an extension to be granted, although the belated production of highly relevant documents has routinely been held to satisfy those requirements. See, e.g. Jones v. City of Martinsburg, 2014 U.S. Dist. Lexis 83986, *11 (N.D. W. Va. 2014) (finding that plaintiff's failure to provide expert report within deadline was substantially justified "due to Defendant's delay in providing discovery materials to plaintiff").

Both Riemer and Lerner Sampson argue that the belated production of documents by Barclays, MERS and Wells Fargo -- and the resulting need to take further depositions – is entirely irrelevant to the claims made by plaintiff against the law firms. (Riemer Lorber Mem., p. 5) The newly produced materials demonstrate that this is simply untrue.

Thus, in support of Reimer Lorber's motion for summary judgment, the firm submitted an affidavit from Dennis Reimer, a principal of the firm, which stated that

> The Reimer firm did not seek to collect, nor did it collect attorney's fees from plaintiff Kline with respect to the payoff of the first mortgage on his property. Nor were any of the Reimer firm's attorney's fees passed on to Mr. Kline with respect to the payoff of the first mortgage on his property.

(Affidavit of Dennis Reimer submitted in support of Reimer Motion for Summary Judgment, Dock. #414, Exh. 18, ¶3). However, the new documents produced by the defendants on March 26, 2015 along with the further depositions taken about those document in June indicate that the representation that plaintiff was not ultimately charged for Reimer's attorney's fees is incorrect.

Thus, on March 26, 2015 – well after the completion of the Rule 30(b)(6) depositions of the defendants – Barclays produced new documents which purportedly showed all transactions in plaintiff Kline's loan accounts, including an Escrow Activity

history which directly contradicted a prior Escrow history produced by the defendants in this litigation.  (See Escrow Activity Summary annexed to Grob. Decl. as Exh.  C, page BC 18800)  While the prior Escrow Activity history produced by defendants indicated that Mr. Kline had an Escrow Balance of zero after Payoff, the new history showed that there was in fact a $412.96 Escrow Balance owed to Mr. Kline after Payoff.  (See Grob. Decl. Exh. C, at line 12/3/2007)  Moreover, the new Escrow History also showed two new post-payoff transactions which had never been previously disclosed by the defendants, in which the defendants made two so-called "Fee Adjustments" (one for $158.00 and one for $324.08) to the Escrow Balance owed to Mr. Kline to bring that amount from $412.96 down to zero.  (Id. at line 12/11/2007, 12/24/2007)  The documents also showed that the defendants had added legal fees paid to the Reimer firm to the amounts purportedly owed by Mr. Kline which appeared have been taken out of the Escrow Balance.

At the further deposition of Barclays' Rule 30(b)(6) witness on June 10, 2015, deponent Jacklin Cartmill was asked questions about these newly produced documents. Ms. Cartmill admitted that Reimer Lorber's attorney fees were added to the "Corporate Advance balance"[4] after Mr. Kline had paid off his loan. (See Excerpts from Dep. of Jacklin Cartmill dated June 10, 2015 annexed to Grob. Decl. as Exh. F, pp. 65-66, 81) Ms. Cartmill also testified that, through the "Fee Adjustments", the Corporate Advances were apparently deducted from the balance in Mr. Kline's Escrow Account to bring the balance owed to Mr. Kline after payoff down to zero.  (Exh. F, pp. 80-83)  In addition, Ms. Cartmill testified that (i) she had *never seen* an Escrow Balance owed to a borrower

---

[4] The Corporate Advance balance represents, among other things, amounts paid to law firms for which defendants sought compensation from the borrower.

ever before reduced in this way (Exh. F, pp. 41-42, 50, 59-60, 82); (ii) the first Escrow History produced to plaintiff by the defendants concealed the fact that there was an escrow balance after payoff, and that defendants deducted purported Corporate Advances such as the Reimer attorney's fees from the Escrow Balance[5]; and (iii) that – based on the newly produced documents -- she did not know whether Reimer's representation that it did not collect legal fees from Mr. Kline was accurate. (Exh. F, p. 92)

Finally, Ms. Cartmill admitted that she had no idea whether charging Mr. Kline for these Corporate Advances through "fee adjustments" to his Escrow Balance after payoff were legal:

> Q You don't know whether this is consistent with HomeEq practice, do you?
> A I can tell you I've never seen this before, this escrow situation. But I know that these funds were applied to outstanding balances.
> Q And I'm asking you, you don't know whether this was consistent with home HomeEq practice?
> A I do not know.
> Q You don't know whether it was consistent with the loan documents?
> MR. POPE: Objection. Go ahead.
> A. I do not know.
> Q And you don't know whether it was consistent with the law?
> MR. POPE: Objection. Go ahead.
> A I don't know.

(Grob. Decl. Exh. F, pp. 82-83) As this Court has previously found, it is well-settled that

---

[5] See Exh. F , pp. 74-75 (Q. If the borrower is looking at Exhibit D on page WEG Bates stamp 445, would the borrower have any way of knowing that there was an escrow balance remaining . . . after payoff? A. No.  Q. And would the borrower know that there were two transactions in escrow which took that balance and turned it into zero? A They would not. Q Do you know whether the borrower was apprised, at any point before Exhibit B was produced on March 26th of 2015, that these transactions that we are talking about, which don't exist on Exhibit D WEG445, had been disclosed? . .. A. I -- I don't know how the borrower would know.")

under Ohio law, a borrower may not be charged attorney's fees incurred in a foreclosure action that has proceeded to judgment. <u>Kline v. MERS</u>, 2013 U.S. Dist. Lexis 133765 (S.D. Ohio 2013) Here, the belatedly-produced disclosures provide probative evidence that (i) the Reimer firm did in fact collect attorney's fees which were charged to Mr. Kline in the first and second mortgage foreclosure action brought against him; and (ii) that the defendants concealed these illegal transactions from him until the new documents were belatedly produced after the completion of discovery on March 26, 2015. Thus, there can be no question that the new evidence produced by defendants is highly relevant to plaintiff's claims against the Reimer firm and the summary judgment motion made by the firm.

In the same respect, Lerner Sampson's similar argument that the newly-disclosed materials are irrelevant to plaintiff's claims against Lerner fares no better. Despite the fact that the plaintiffs had demanded all documents relating to plaintiff's loans in document demands served in October 2013, defendants failed to produce any documents relating to Wells Fargo's role as the holder and custodian of the Kline loan documents until March 17, 2015, nearly a month after Wells Fargo's Rule 30(b)(6) deposition had been taken. At the further Rule 30(b)(6) deposition of Wells Fargo taken on June 11, 2015, Wells Fargo's witness stated that MERS did not own or hold either Mr. Klines' first or second mortgages at the time of either the 2005 or 2007 foreclosure actions against plaintiff, which was contrary to the representations made by Lerner Sampson to plaintiff and the court entertaining the 2007 foreclosure action. (See excerpts from Deposition of Patrick Gorrien dated June 11, 2015, Grob. Decl. Exh. G, pp. 91-94).

Moreover, following the second Wells Fargo deposition, defendants produced yet

more documents which should have been produced years earlier – first on June 19, 2015 (see Email attached as Grob. Decl. Exh. I), then on June 23, 2015 (Grob. Decl. Exh. D) and finally on June 25, 2015 (Grob. Decl. Exh. E).   All of these documents were clearly encompassed within the discovery demands served on Wells Fargo in October 2013.

Although plaintiff has not had an opportunity to question defendants as to these new disclosures, these new documents appear to demonstrate that -- contrary to the express representations made by Reimer Lorber and Lerner Sampson in the Kline foreclosures in 2005 and 2007 -- MERS was **not** the owner and holder of the first note and mortgage at the time the 2005 foreclosure was instituted, nor was it the owner or holder of the second mortgage at any time during the 2007 foreclosure.  (Grob. Decl. Exh. E).  Each of these facts are not only relevant – but central – to Mr. Kline's claim that Lerner Sampson and Reimer Lorber had no right to recover attorney's fees and expenses from Mr. Kline in situations in which the purported owners and/or holders of the loan documents had no standing .

## CONCLUSION

For each of these reasons, plaintiff respectfully submits that, pursuant to its written requests to the court made on April 9 and May 7, 2015, the scheduling deadlines be extended to allow plaintiff to respond to the summary judgment motions filed by Reimer Lorber and Lerner Sampson.

/s/ Paul Grobman

Paul Grobman (Pro Hac Vice)

11

555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060

*Counsel for Plaintiff*

Dated: June 29, 2015