# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| EUGENE KLINE, et al. | : |
| Plaintiffs, | : |
| | : Case No.: 3:08-CV-0408-WHR |
| v. | : |
| | : Judge Walter H. Rice |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., et al. | : |
| Defendants. | : |
| ------------------------------------------------------ | : |

## AMICUS BRIEF CORRECTING MISREPRESENTATIONS IN PLAINTIFF'S OPPOSITION TO SUMMARY JUDGMENT

Defendants, Wells Fargo Bank, N.A., Trustee ("Wells Fargo") and Barclays Capital Real Estate Inc. ("Barclays"), and Mortgage Electronic Registrations Systems, Inc. ("MERS"), by their undersigned attorneys, file this Amicus Brief for the purpose of correcting Plaintiff's misrepresentations with respect to discovery contained in his Memo in Opposition to Defendants' Reimer, Lorber and Lerner Sampson's Request for Summary Judgment.[1] (ECF No. 431).

## BACKGROUND

This case has been pending since November of 2008. Over the course of the intervening years, there have been four Scheduling Orders entered by the Court, prescribing deadlines for events such as discovery, motions, amendments to pleadings, and the overall progression of the case toward trial. The most recent Scheduling Order was entered by this Court on February 5,

---

[1] "Reimer, Lorber" refers to Defendant Reimer, Lorber & Arnovitz, and "Lerner Sampson" refers to Defendant Lerner Sampson & Rothfuss.

2015 (ECF No. 395), setting forth extended deadlines for these several events.[2]  In particular, the Scheduling Order currently in effect specifies that discovery was to be concluded by March 1, 2015, and dispositive motions were to be filed by March 27, 2015.

In adherence to the Scheduling Order deadlines, on March 27, 2015, each Defendant filed a Motion for Summary Judgment and supporting Memorandum.  (ECF Nos. 414-419).  According to the court rules, Plaintiff then had 21 days to respond.  The Court, however, entered a 30-day stay of all proceedings on March 31, 2015, so that the parties could engage in a final attempt at mediation and settlement.  (ECF No. 421).  The order of stay expressly provided: "If the parties do not resolve this litigation through the mediation, the 30-day stay will expire on Sunday, April 26, 2015, and the twenty-one day period for filing Response Memoranda will commence the next day, Monday, April 27, 2015."  (ECF No. 421).  As there was no settlement, Plaintiff's responses to the several Motions for Summary Judgment were due on May 18, 2015.[3]

---

[2]  The earlier Scheduling Orders were entered on the following dates: April 20, 2009 (ECF No. 68), March 19, 2012 (ECF No. 270), and September 19, 2013 (ECF No. 307).

[3]  In a letter to Plaintiff's counsel dated May 13, 2015, the undersigned attorneys for Defendants MERS, Barclays, and Wells Fargo provided their understanding of the scheduling dates and deadlines then in effect "based on the number of days Judge Rice allowed in the current Scheduling Order for the pleading described [as extended by the 30-day stay to mediation]." For Plaintiff's Response Memoranda to Defendants' Motions for Summary Judgment, the due date was clearly May 18, 2015. The letter further advised: "We do not agree that Plaintiff needs more time to respond to Defendants' Motions for Summary Judgment based on the supplemental production of documents by MERS, Barclays, and Wells Fargo. The additional production arose from questions you asked during depositions, and they amount to only 61 pages from Wells Fargo regarding its custodial role, and 18 pages from Barclays relating to fees and expenses charged to Mr. Kline. MERS' production was larger, but duplicative of the policies and procedures already produced. The several versions of MERS' policies and procedures that you requested did not substantively changed any provisions relevant to Mr. Kline's claims." A copy of this letter is attached and incorporated herein as **Exhibit 1.** In fact, MERS supplemental production was comprised of the 2014 and 2015 releases of its System Procedures Manual, specifically Release 25.0 (January 27, 2014), Release 25.5.2 (May 19, 2014), Release 25.5 (April 14, 2014), Release 26.0 (July 28, 2014), Release 26.5 (October 13, 2014), Release 27.0 (February 23, 2015), and Release 28.0 (May 18, 2015), each of which is nearly identical to the preceding one, and does not change at all the provisions relating to foreclosure and bankruptcy.

Although the Court had previously admonished Plaintiff's counsel, Paul Grobman, for writing letters to chambers,[4] nevertheless, Mr. Grobman wrote twice more to request "a status conference with regard to certain issues which have arisen as a result of additional documents recently produced by MERS, Barclays and Wells Fargo after the taking of defendants' Rule 30(b)(6) depositions in February." *See* Exhibits A and B to Declaration of Paul Grobman. (ECF No. 432). The letters request but one thing: a status conference. They do not seek an order regarding discovery. They do not request an extension in the response date for summary judgment motions. In fact, the first letter, dated April 10, 2015, says *nothing at all* about the summary judgment motions then awaiting a response. *Id.,* Exhibit A. The second letter, dated May 7, 2015, asserts that plaintiff "has a right to certain additional disclosures from defendants before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order." *Id.,* Exhibit B. However, there is no motion (or other request) before the Court either to compel discovery or to extend the discovery cut-off beyond March 1, 2015. The only relief sought is a status conference which the Court has granted.[5]

---

[4] The Court expressly directed Mr. Grobman's attention to Rule 7.2(c) of the Local Civil and Criminal Rules which provides:

> **Correspondence with the Court.** Letters to the Court are not permitted unless (1) requested by the Court in a specific matter, or (2) advising the Court of the settlement of a pending matter. All other written communications must be by way of formal motion or memorandum submitted in compliance with these Rules. All letters sent to the Court shall be contemporaneously served upon opposing counsel unless otherwise ordered by the Court.

[5] Interestingly, the first of these two letters was never filed, nor is it a part of the record, except insofar as Plaintiff made it an exhibit to the Declaration of Paul Grobman dated June 29, 2015 (ECF No. 432). The second, almost identical, letter was filed on May 7, 2015. (ECF No. 426). Judge Rice thereupon granted the only relief requested and scheduled a status conference for June 22, 2015, later moved to July 16, 2015. Although Plaintiff subsequently responded to the

3

As Plaintiff failed to properly move for more time – disregarding the Court's rules of procedure and admonishment to Mr. Grobman – Plaintiff has missed the opportunity to respond to the Defendants' motions for summary judgment.  Thus, two of the five Defendants, Reimer, Lorber and Lerner Sampson, have asked the Court to enter, at this time, judgments against Plaintiff and, in support thereof, have moved (on grounds of untimeliness) to strike Plaintiff's misnamed Memo in Opposition to Request for Default Judgment on Defendants' Reimer, Lorber and Lerner Sampson's Motions for Summary Judgment  (ECF Nos. 427, 428).[6]

On June 29, 2015, Plaintiff finally filed a Memo in Opposition to Defendants' Reimer, Lorber and Lerner Sampson's Request for Summary Judgment ("Memo in Opposition"). (ECF No. 431).  The Memo in Opposition, accompanied by the Declaration of Paul Grobman (ECF No. 432), is so filled with misrepresentations about discovery that Defendants Wells Fargo, Barclays, and MERS are compelled now to correct the record and, thus, to support Reimer, Lorber's and Lerner Sampson's  motions for summary judgment.

ARGUMENT

*Introduction*

In order to facilitate the orderly management of its docket, a federal court is authorized to issue scheduling orders which define time limitations on the various benchmarks that facilitate the progress and development of a case.  *See* Fed.R.Civ.P. 16.  As set forth above, this Court has previously exercised its authority to issue Scheduling Orders and set appropriate deadlines.  In the Scheduling Order now in effect, the discovery cutoff was established by the Court, *with the*

---

summary judgment pleadings of Reimer, Lorber and Lerner Sampson, he has never, in all this intervening time, sought any other relief from the Court such as a modified Scheduling Order.

[6]  Wells Fargo, Barclays, and MERS did not follow suit, having agreed with Plaintiff to make their corporate designees available on June 10-12, 2015 for supplemental depositions, limited in scope to the small number of additional documents that were requested during, and produced subsequent to, the depositions of Wells Fargo, Barclays, and MERS in February 2015.

*consent of all parties*, as March 1, 2015. Likewise, with the agreement of all parties, the deadline for filing summary judgment motions was established as March 27, 2015. Plaintiff had 21 days thereafter to file his opposition or other responsive pleading. By advising the Court that he would, in good faith, engage in mediation, Plaintiff obtained an *additional* 30 days in which to respond to the summary judgment motions, thus giving him a total of 51 days to complete the task. However, instead of using this time to move his case forward, Plaintiff now contends that MERS, Wells Fargo, and Barclays have somehow stymied the years-long discovery process and precluded him from responding to Reimer, Lorber and Lerner Sampson's motions for summary judgment in a timely manner.[7]

This is nonsense. To justify his inattention to this case, and to explain his failure to comply with the Court's procedural rules and orders, Plaintiff has made the following misrepresentations about discovery that Wells Fargo, Barclays, and MERS must now correct.

*New Document Requests Were Untimely*

In his Memo in Opposition, Plaintiff states that, "Even after these further depositions, the defendants continue to produce additional documents which are highly relevant to the plaintiff's

---

[7] Plaintiff never explains why he waited until the *last two weeks* of the discovery period to schedule the Rule 30(b)(6) depositions of MERS, Reimer, Lorber, Lerner Sampson, Barclays, and Wells Fargo, held respectively on February 19, 2015, February 20, February 24, February 25, and February 26. (The last day for discovery was March 1, 2015.) As early as September 16, 2014, counsel for Defendants wrote to Mr. Grobman asking for deposition dates, to which no response was received until January 23, 2015, after which Mr. Grobman proposed dates in late February for the depositions of Defendants' corporate designees. *See* Defendants' Memorandum in Support of Defendants' Motion for Reconsideration of Order Extending Time for Identifying Expert Witnesses, pp. 4-6 (ECF No. 398-1). Likewise, Plaintiff does not explain under what authority he was entitled, during these depositions, to request *new* documents not previously sought, without giving Defendants the requisite 30 days to respond as allowed under F.R.Civ.P. 34(b)(2)(A). That, as a professional courtesy, some of these new documents were made available to him after the discovery deadline, leading him then to seek even more discovery from Defendants, does not entitle him to more than he timely requested in his Requests for Production of Documents propounded to MERS, Wells Fargo, and Barclays.

claims against the defendants in this litigation, and which were clearly encompassed within the initial discovery requests served on Barclays, MERS and Wells Fargo in 2012 and 2013." Memo in Opposition, p. 5. (ECF No. 431). In fact, every document produced subsequent to the extended Rule 30(b)(6) depositions was requested *for the first time* during the extended depositions of Barclays and Wells Fargo on June 10 and 11, 2015, respectively. This is evident in **Exhibit 2** and **Exhibit 3**, which are Plaintiff's Requests for Production of Documents addressed to Barclays and the supplemental requests made during the deposition of Jacklyn Cartmill, and in **Exhibit 4** and **Exhibit 5**, which are Plaintiff's Request for Production of Documents propounded to Wells Fargo and the supplemental requests made during the deposition of Patrick Gorrien. From these exhibits, it is evident that every document produced subsequent to the extended Rule 30(b)(6) depositions was requested *for the first time* during the extended depositions of Barclays and Wells Fargo on June 10 and 11, 2015, respectively. Plaintiff has misrepresented the status of this discovery to the Court. Moreover, notwithstanding his contrary misrepresentations, Plaintiff never sought any new documents from MERS during its extended deposition on June 12, 2015.[8]

Similarly, Plaintiff contends that Wells Fargo failed to produce "Custodial Agreements which set forth Wells Fargo's custodial obligations with respect to the Trust which bought

---

[8] Among the reasons Plaintiff offers for not timely responding to Defendants' Motions for Summary Judgment is that, after the deposition of MERS' corporate designee on February 19, 2015, "MERS produced 1,326 pages of additional documents …" Memo in Opposition, p. 3 (ECF No. 431). In fact, as identified in Footnote 3, above, these were simply later editions of the same MERS® System Procedures Manual that had already been produced from 2004 through 2013. As Brian Blake testified on June 12, 2015, none of these later editions changed MERS procedures for handling foreclosure and bankruptcies. *See* Brian Blake Deposition, June 12, 2015, pp. 9-10, attached hereto as **Exhibit 6.** These later releases were produced only because Plaintiff demanded them for 2014 and 2015, not because they contained anything new or relevant to Plaintiff's allegations or MERS' defense. To assert that their production, as requested by Plaintiff, somehow prejudiced Plaintiff in the preparation of his case is to blatantly mislead the Court and should not be condoned.

plaintiff's loans from Merrill Lynch." Memo in Opposition, p. 5, FN 2. (ECF No. 431). He asserts at the top of page 5 that these custodial agreements "were clearly encompassed within the initial discovery requests served on Barclays, MERS and Wells Fargo in 2012 and 2013." Id., p. 5. (ECF No. 431). But, nowhere in Plaintiff's discovery is there a request for custodial agreements with third parties, nor do they have anything at all to do with the allegations of the Amended Complaint or the defenses thereto. Wells Fargo was sued expressly as Trustee for the Merrill Lynch Trust which owned the loans at the time of the payoff. The separate and distinct role as Custodian, as contemplated in the Pooling and Servicing Agreement, is neither a part of the Amended Complaint nor referred to in prior discovery.[9]

Furthermore, the warehousing agreement between Wells Fargo and Merrill Lynch, which was produced as a matter of professional courtesy long after the close of discovery, identifies a completely separate and distinct undertaking by Wells Fargo – namely, to warehouse loans for Merrill Lynch on a global basis, only some of which are ever pooled into securitized trusts such as Plaintiffs. The production of the warehousing agreement in response to Plaintiff's untimely request did not cause Plaintiff to miss the response date to Motions for Summary Judgment.

---

[9] Plaintiff expressly sued Wells Fargo in its capacity as Trustee. The Pooling and Servicing Agreement defines the Trustee as, "Wells Fargo Bank, N.A., a national banking association, **not in its individual capacity, but solely in its capacity as trustee for the benefit of the Certificateholders under this Agreement …**" Pooling and Servicing Agreement, p. 46, **Exhibit 7** hereto. [Emphasis added]. Under the Pooling and Servicing Agreement, other entities had different roles such as Merrill Lynch Mortgage Investors, Inc. as Depositor and HomEq Servicing Corporation as Servicer. *Id.,* pp. 26, 44. As the Trust itself has no employees, a Custodian receives the specific loan documents from the Depositor or Servicer. *See* Deposition of Revathi Jose, pp. 39-41. **Exhibit 8** hereto. The role of the Custodian is "to accept original documents or certain documents that are enumerated in [the Pooling and Servicing Agreement] and to hold them on behalf of the trust." The role of the Trustee is "to collect reporting from the servicer on the loans and provide that reporting to the investors and also to remit payments to the investors." *Id.,* pp. 54-55. When, under the Pooling and Servicing Agreement, Wells Fargo acts as both Trustee and Custodian, there are different groups or sets of groups within Wells Fargo handling these different duties. *Id.,* pp. 58-59.

Indeed, the custodial role of Wells Fargo in storing mortgage instruments in a secure place is entirely irrelevant to these proceedings.  To suggest that custodial agreements between Wells Fargo and Merrill Lynch have been wrongfully withheld, or that custodial agreements are needed to respond to Reimer, Lorber and Lerner Sampson's Motions for Summary Judgment, is factually inaccurate.

In like fashion, Plaintiff contends that Wells Fargo did not produce "documents relating to requests to release the plaintiff's original mortgage documents in connection with the foreclosures on plaintiff's property in 2005 and 2007" until June 25, 2015.  Memo in Opposition, p. 5, FN 2.  (ECF No. 431).  What he withholds from the Court is that the *first time* these documents were ever sought was at the deposition of Wells Fargo's designee, Patrick Gorrien, on June 11, 2015.  In other words, as a matter of professional courtesy, Wells Fargo complied with Plaintiff's request in just two weeks, even though the time for requesting new documents had expired months before.  Plaintiff should not be allowed to mislead the Court to justify his plea for more time to respond to the pending Motions for Summary Judgment.

*No Reimer, Lorber Fees Were Ever Collected from Plaintiff*

In his Memo in Opposition, Plaintiff makes the misleading statement that, while the Reimer firm denies that attorney's fees were ever collected from Plaintiff, or passed on to Plaintiff in connection with the payoff of the first mortgage on the property, this is "incorrect" as seen in the "new documents produced by the defendants on March 26, 2015."  Memo in Opposition, p. 7. (ECF No. 431).  But, the "new documents" to which Plaintiff refers show only that the loan servicer, Barclays, elected to allocate toward Reimer Lorber's fees a portion of the past-due interest that was properly collected from Plaintiff.  More precisely, Reimer Lorber's fees were paid from interest to which the lender was entitled.  These attorney's fees were never

8

collected from, or passed on to, Plaintiff, who was charged only the legitimate excess shown on the pay-off quote. Accounting allocations made after the fact have nothing to do with Plaintiff's claims or defenses thereto.

More specifically, the escrow account details provided in this case reveal that the $3,406.12 set forth in the Reimer Lorber payoff quote was collected from Kline and applied to the escrow account deficiency in like amount on December 3, 2007. At that time, the true escrow account balance was zero. For reasons unknown, the individual processor who handled the Kline payoff proceeds continued to use the escrow account for subsequent internal fee and expense adjustments that were wholly within the discretion of the servicer. This situation is highly unusual and, as the corporate designee testified, in her many years of working for Barclays and its predecessors, she has never seen an escrow account utilized for a function that is typically undertaken in a suspense account. *See* Deposition of Jacklyn Cartmill, pp. 41-42, **Exhibit 3**. The fact that this processor inexplicably chose to use the escrow account instead of a suspense account for this purpose after the loans were fully satisfied does not create a positive escrow balance that somehow became due and owing to Plaintiff.

Stated simply, all amounts collected from Plaintiff in accordance with the two payoff quotes he received in November of 2007 were fully authorized by the loan documents and applicable law. When those amounts were subsequently collected from him, the mortgage liens were released and the debt obligations cancelled. The manner in which Barclays chose to direct or apply those funds <u>after</u> the payoff and satisfaction is of no concern to Plaintiff and does not create any cognizable legal claim.

Likewise, at page 8 of the Memo in Opposition, Plaintiff tells the Court that "the new Escrow History" provided on March 26, 2015 shows an escrow balance that, instead of being

9

returned to Plaintiff, appears to have been used to pay Reimer Lorber's legal fees. Memo in Opposition, p. 8 (ECF No. 431). But, the escrow records consistently reveal a negative balance in the escrow account (due to unpaid taxes) that Plaintiff brought current on the pay-off date. After the loan was fully satisfied and the mortgages released, the loan processor continued to use the escrow account to clear unpaid expenses. While the better practice would have been to use a suspense account for these post-closing transactions, the bottom line is that Plaintiff was never charged Reimer, Lorber's attorney's fees or any post-acceleration late fees. Mr. Grobman fully understands this, but overtly tries to mislead the Court into believing that, having only recently learned that Plaintiff's escrow account was used after closing for accounting purposes, he is entitled now to more time to prepare Plaintiff's case. But, for Barclays to have used the escrow account instead of a suspense account to clear open expenses, although an unusual practice, does not create any new legal rights for Plaintiff.

Plaintiff continues this theme when he contends that "the first Escrow History produced to plaintiff by the defendants concealed the fact that there was an escrow balance after payoff, and that defendants deducted purported Corporate Advances such as the Reimer attorney's fees from the Escrow Balance; …" Memo in Opposition, p. 9  (ECF No. 431). Yet, all the escrow records, including those produced initially, reveal how the amounts collected at pay-off were used to satisfy the escrow arrearage. After that, there was no longer an active loan or related escrow account, and the manner in which the processor subsequently used the escrow account to clear unpaid expenses is of no consequence of Plaintiff. Expenses may have been charged to, and paid through, the escrow account created for this loan, but this occurred *after* the loan was fully paid and the mortgage released, and these expenses were never charged to Plaintiff.

On page 10 of his Memo in Opposition, Plaintiff again complains of:

10

> the belatedly-produced disclosures provid[ing] probative evidence that (i) the Reimer firm did in fact collect attorney's fees which were charged to Mr. Kline in the first and second mortgage foreclosure action brought against him; and (ii) that the defendants concealed these illegal transactions from him until the new documents were belatedly produced after the completion of discovery on March 26, 2015. Thus, there can be no question that the new evidence produced by defendants is highly relevant to plaintiff's claims against the Reimer firm and the summary judgment motion made by the firm.

Memo in Opposition, p. 10 (ECF No. 431). But, as Plaintiff knows, no Reimer, Lorber attorney's fees were ever charged to, or collected from, Plaintiff. The pay-off statement provided in discovery more than a year ago reflects that, when the loan was satisfied, past-due interest was among the amounts collected. The interest collected has never been, and cannot be, disputed as an amount that Plaintiff owed under the mortgage loan. That, later, Reimer, Lorber was paid from these funds does not mean Plaintiff was charged an unlawful fee. It means only that Reimer, Lorber was paid from the interest to which the lender was entitled. There was nothing unlawful about this, and the custodial documents – requested *for the first time* at Wells Fargo's deposition on February 26, 2015 and produced a month later – did not conceal anything relevant to Plaintiff's claims, or that would justify his failure to timely respond to Defendants' Motions for Summary Judgment.

*Plaintiff Alone is Responsible for Discovery Delays*

Finally, Plaintiff contends at pages 10-11 of his Memo in Opposition that the documents identified at, and produced following, Patrick Gorrien's deposition on June 11, 2015 "should have been produced years earlier … All of these documents were clearly encompassed within the discovery demands served on Wells Fargo in October 2013." Memo in Opposition, p. 11 (ECF No. 431). But, the referenced custodial records were all requested for the first time during Revathi Jose's deposition on February 26, 2015, just three days before the close of discovery.

11

Indeed, since Wells Fargo initial production of documents nearly 16 months ago now,[10] Plaintiff has known about Wells Fargo's separate and distinct role as custodian. Yet, neither through interrogatories, nor requests for production, nor deposition until February 26, 2015, did Plaintiff seek any information or documentation about Wells Fargo's custodial responsibilities.

Plaintiff tries ignobly to cast upon Defendants the blame for his delays, his failure to pursue timely discovery, his lack of prosecution, and, now, for missing the deadline to respond to the dispositive motions of Reimer, Lorber and Lerner Sampson. But, to blame others for his own failings require Plaintiff to make outright misrepresentations to this Court. The truth of the matter is that:

- Plaintiff never asked for custodial documents until he deposed Wells Fargo's corporate designee *just three days before the close of discovery*.

- Nothing in the custodial documents subsequently produced as a professional courtesy is relevant to either his claims or the defenses of the parties sued.

- None of the subsequent iterations of policies and procedures produced by MERS after the deposition of its corporate designee differ in relevant part from the many earlier versions provided.

- Nothing disclosed in discovery supports Plaintiff's claim that attorney's fees paid to Reimer, Lorber were ever charged to, or collected from, Plaintiff.

---

[10] Wells Fargo's initial production of documents included the Polling and Servicing Agreement that expressly defines the parties' several roles, including the role of Wells Fargo as Trust, and the separate and distinct role of Wells Fargo as Custodian.

- None of the documents requested since the close of discovery, and produced as a matter of professional courtesy by Defendants, reveals an effort to conceal facts not previously known to Plaintiff.

## CONCLUSION

The current extended discovery cutoff of March 1, 2015 was jointly proposed to the Court eight months ago, as was the March 27, 2015 deadline for filing dispositive motions. (ECF No. 388). To this very day, Plaintiff has not sought an amendment to the Scheduling Order with regard to discovery, and has not properly moved for an extension to respond to Defendants' Motions for Summary Judgment.

The reason for complying with deadlines set forth in a scheduling order is obvious. "As this Court has observed, 'adherence to reasonable deadlines is critical to maintaining integrity in court proceedings,' and pretrial scheduling orders are 'the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner.'" *Ying Liu v. Next Step Resources of Ohio, Inc.,* 2013 U.S. Dist. LEXIS 14775 at *5 (S.D. Ohio January 31, 2013)(quoting *Watkins v. New Albany Local School*, 2010 U.S. Dist. LEXIS 35122, 2010 WL 910256 at *3 (S.D. Ohio March 10, 2010)). Where, as here, a party seeks to extend discovery unilaterally by demanding new documents well past the discovery cut-off, and then uses their production as an excuse for having missed an important deadline for responding to dispositive motions, the Scheduling Order must control. As the *Ying Liu* court explained:

> In this case, Next Step made no motion to modify the Court's February 29 order which established the September 30 discovery cut-off.
> …
> Clearly Next Step could have reasonably obtained the discovery requested prior to the established cut-off had it exercised due diligence.

*Id.* at \*6-7.

  Plaintiff should not be allowed to ignore the discovery and motions deadline established by this Court, dates to which Plaintiff himself agreed.  The Court should now enter judgments for Reimer, Lorber and Lerner Sampson because their Motions for Summary Judgment (1) have gone unanswered, and (2) show that Reimer, Lorber and Lerner Sampson are entitled to a judgment as a matter of law.

                Respectfully submitted,


                /s/ Reuel D. Ash
                Reuel D. Ash (Bar #0055843)
                ULMER & BERNE LLP
                600 Vine Street, Suite 2800
                Cincinnati, OH 45202
                Ph. 513-698-5118
                Fax: 513-698-5119
                rash@ulmer.com


                /s/ Russell J. Pope
                Russell J. Pope (appearing pro hac vice)
                Douglas B. Riley (appearing pro hac vice)
                TREANOR POPE & HUGHES, P.A.
                500 York Road
                Towson, MD 21204
                Ph. 410-494-7777
                Fax: 410-494-1658
                rjpope@tph-law.com
                dbriley@tph-law.com

                *Attorneys for Defendants, Wells Fargo Bank, N.A.,*
                *Barclays Capital Real Estate Inc., and Mortgage*
                *Electronic Registration Systems, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of July, 2015, a copy of the Amicus Brief Correcting Misrepresentations in Plaintiff's Opposition to Summary Judgment, along with the attached Exhibits, was served upon the following counsel of record via the Court's ECF system:

| | |
|---|---|
| Paul Grobman, Esquire<br>555 Fifth Avenue<br>New York, NY 10017<br>*Attorney for Plaintiff* | Rick David DeBlasis, Esquire<br>Cynthia Margot Fischer, Esquire<br>LERNER SAMPSON & ROTHFUSS<br>120 W. Fourth St., 8th Fl.<br>Cincinnati, OH 45202-4007<br>*Attorneys for Defendant, Lerner, Sampson & Rothfuss* |
| Lori Brown, Esquire<br>GALLAGHER SHARP<br>Sixth Floor Bulkley Building<br>1501 Euclid Avenue<br>Cleveland, OH 44115<br>*Attorneys for Defendant, Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A (f.k.a. Reimer, Lorber & Arnovitz Co., LP.A.)* | Douglas B. Riley<br>TREANOR POPE & HUGHES, P.A.<br>500 York Road<br>Towson, MD 21204<br>Ph. 410-494-7777<br>Fax: 410-494-1658<br>dbriley@tph-law.com<br>*Attorneys for Mortgage Electronic Registration Systems, Inc.* |

    /s/ Russell J. Pope
    Russell J. Pope