# Exhibit C

-----Original Message-----
From: Russell J. Pope <rjpope@tph-law.com>
To: grobtown <grobtown@aol.com>
Cc: rdd <rdd@lsrlaw.com>; Cynthia.Fischer <Cynthia.Fischer@lsrlaw.com>; Brown, Lori <lbrown@gallaghersharp.com>; rash <rash@ulmer.com>; Douglas B. Riley <dbriley@tph-law.com>
Sent: Tue, Jun 23, 2015 11:05 am
Subject: documents requested during deposition

Paul:

Following up on your stated requests on the record for additional documents, to the extent they exist, I am providing the attachments subject to the following objections and conditions:

1. All further documents are being produced with the designation "confidential" as provided in the operative Confidentiality and Protective Order which Judge Rice has entered in this case.

2. Any documents originating from the custodial area of Wells Fargo are irrelevant and, further, not amenable to discovery without a subpoena inasmuch as Wells Fargo remains in this case solely in its representative capacity as Trustee. Wells Fargo in its separate representative capacity as Custodian has not been named or joined as a party defendant.

3. Wells Fargo reserves all other objections as to admissibility.

We are still searching for any vault team or release team checklists, and any logs that reflect the requests for and release of the original Kline loan documents.

Further, in response to your narrative questions, the following information is provided:

1. The HomEq Database identified by Jacki Cartmill contains limited information on 66,169 Ohio mortgage loans dating back to May 1999. As you know, however, the master hard drive you acquired in discovery in the Mazzei case contains a far more comprehensive collection of data on these loans.

2. The original Kline loan documents were not re-reviewed by Wells Fargo as Custodian prior to the pooling and securitization.

I will follow up with you on the aforementioned checklist and log requests as the responses become available to me.

Russ


Russell J. Pope
**Treanor Pope & Hughes, P.A.**
500 York Road
Towson, Maryland 21204
(410) 494-7777 | (410) 494-1658 (fax)
www.tph-law.com

*Confidentiality Notice:* This email, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential and privileged information. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use or distribution of this email is strictly prohibited, and requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this email immediately. Nothing contained in the body and/or header of this email is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this email or its attachment(s), except where such intent is expressly indicated.

Amended and Restated Custodial Agreement, dated as of March 14, 2003, by and between Merrill Lynch Mortgage Capital Inc. and Wells Fargo Bank Minnesota, National Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1



**MERRILL LYNCH MORTGAGE CAPITAL INC.**

and

**WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION**

March 14, 2003

CLOSING DOCUMENTS

Thacher Proffitt & Wood
11 West 42nd Street
New York, NY 10036

WFB0490

WFB0491

MERRILL LYNCH MORTGAGE CAPITAL INC.

and

AMENDED AND RESTATED
CUSTODIAL AGREEMENT

THIS AMENDED AND RESTATED CUSTODIAL AGREEMENT dated as of
April 1, 1999 as amended and restated to and including March 14, 2003 (this "Agreement"),
between MERRILL LYNCH MORTGAGE CAPITAL INC. ("Merrill Lynch") having an
address at World Financial Center, North Tower, New York, New York 10281 and WELLS
FARGO BANK MINNESOTA, NATIONAL ASSOCIATION (the "Custodian"), having an
address at Sixth and Marquette, Minneapolis, Minnesota 55479-0083.

PRELIMINARY STATEMENT

Merrill Lynch may, from time to time, purchase certain Mortgage Loans from
third party sellers pursuant to the terms and conditions of certain mortgage loan purchase
agreements entered into between Merrill Lynch and such third parties (each, a "Purchase
Agreement"). Merrill Lynch desires that the Custodian act as custodian with respect to the
documents for the Mortgage Loans delivered from time to time to the Custodian hereunder, and
the Custodian desires to act as custodian with respect to the documents for the Mortgage Loans.
Merrill Lynch and the Custodian entered into a custodial agreement dated April 1, 1999, as
amended on November 20, 2001 (as amended, the "Original Agreement"). Merrill Lynch and the
Custodian desire to amend and restate the Original Agreement in its entirety by entering into this
Agreement to provide certain additional rights and obligations.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein
and for other good and valuable consideration, the sufficiency and receipt of which is hereby
acknowledged, the parties hereto hereby agree as follows:

1.      Definitions.

"Additional Collateral": with respect to any Mortgage 100 Loan, the marketable
securities subject to a security interest pursuant to the related Mortgage 100 Pledge Agreement,
or with respect to any Parent Power® Mortgage Loan, the related Parent Power® Agreement.

"Additional Collateral Mortgage Loan": Each Mortgage Loan that is either a Mortgage
100 Loan or Parent Power® Mortgage Loan as to which the Additional Collateral is provided.

"Agreement": This Amended and Restated Custodial Agreement and all amendments
and attachments hereto and supplements hereof.

"Assignment": An assignment of the Mortgage, notice of transfer or equivalent
instrument in recordable form sufficient under the laws of the jurisdiction wherein the related
Mortgaged Property is located to give record notice of the sale or transfer of the Mortgage Loan.

"Appraised Value": With respect to any Mortgage Loan, the lesser of (1) the value of the
related Mortgaged Property based upon the appraisal made for the originator at the time of
origination of the Mortgage Loan by an appraiser who met the minimum requirements of Fannie
Mae and Freddie Mac, and (ii) the purchase price paid for the related Mortgaged Property by the
Mortgagor with the proceeds of the Mortgage Loan and any other funds of the Mortgagor,

WFB0492

provided however. in the case of a refinanced Mortgage Loan where the Mortgagor owned the property free and clear of any prior mortgages, such value of the Mortgaged Property is based solely upon the value determined by an appraisal made for the originator of such Mortgage Loan at the time of origination of such Mortgage Loan by an appraiser who met the minimum requirements of Fannie Mae and Freddie Mac.

"Business Day": Any day other than (i) a Saturday or Sunday, or (ii) a day on which banking or savings associations in the State of New York or the State of Minnesota are authorized or obligated by law or executive order to be closed.

"Combined Loan-to-Value Ratio": As of any date for any Second Mortgage Loan, the fraction, expressed as a percentage, the numerator of which is the sum of (a) the original principal balance of the Mortgage Loan, plus (b) the unpaid principal balance of the related first mortgage loan secured by the Mortgaged Property as of such date, and the denominator of which is the lesser of (i) the Appraised Value of the related Mortgaged Property as of the date of the appraisal used by or an behalf of a third party seller to underwrite such Mortgage Loan or (ii) the sale price of the related Mortgaged Property if such a sale occurred at origination of the Mortgage Loan.

"Co-op Corporation": With respect to any Co-op Loan, the cooperative apartment corporation that holds legal title to the related Co-op Project and grants occupancy rights to units therein to stockholders through Proprietary Leases or similar arrangements.

"Co-op Loan":  A Mortgage Loan that is secured by a first lien on and a perfected security interest in Co-op Shares and the related Proprietary Lease granting exclusive rights to occupy the related Co-op Unit in the building owned by the related Co-op Corporation.

"Co-op Project":  With respect to any Co-op Loan, all real property and improvements thereto and rights therein and thereto owned by a Co-op Corporation including without limitation the land, separate dwelling units and all common elements.

"Co-op Shares":  With respect to any Co-op Loan, the shares of stock issued by a Co-op Corporation and allocated to a Co-op Unit and represented by a stock certificate.

"Co-op Unit":  With respect to any Co-op Loan, a specific unit in a Co-op Project.

"Custodian": Wells Fargo National Bank Minnesota, National Association or its successor in interest or assigns.

"Custodian's Mortgage File": As to each Mortgage Loan, all Mortgage Loan documents held by the Custodian with respect to each Mortgage Loan.

"Custody Receipt": An Initial Custody Receipt and/or a Final Custody Receipt.

"Cut-off Date": With respect to each Mortgage Loan, the first day of the month in which the related Delivery Date occurs or such other date specified by the Registered Holder.

[TPW: NYLEGAL:100809.5] 18213-00046  03/14/2003 4:50 PM

WFB0493

"Delivery Date": The date on which Merrill Lynch delivers or causes to be delivered to the Custodian the Mortgage Loans listed on the related Mortgage Loan Schedule.

"Equity Access® Agreement": The revolving line of credit agreement entered into between the servicer and the guarantor under any Parent Power® Guaranty Agreement for Real Estate pursuant to which a line of credit may be drawn upon by the Additional Collateral servicer to fund the payment by such guarantor of a loss specified in such Parent Power® Guaranty Agreement for Real Estate.

"Exception Report": The Exception Report prepared by the Custodian as part of the Initial Custody Receipt and as updated thereafter.

"Final Custody Receipt": A final custody receipt as to each Mortgage Loan, which final custody receipt is delivered to Merrill Lynch, or its successor in interest or assigns, by the Custodian in the form annexed hereto as Exhibit Two.

"First Mortgage Loan": A Mortgage Loan that is secured by a first lien on the Mortgaged Property securing the related Mortgage Note.

"Gross Margin": With respect to each adjustable rate Mortgage Loan, the fixed number of basis points set forth in the Mortgage Loan Schedule that is added to the Index on each Interest Rate Adjustment Date in accordance with the terms of the related Mortgage Note to determine the Mortgage Interest Rate for such Mortgage Loan, subject to any applicable Periodic Rate Cap or Lifetime Rate Cap.

"Index": With respect to each adjustable rate Mortgage Loan, a rate per annum to which the Gross Margin is added on each adjustment date to determine the new Mortgage Interest Rate for such Mortgage Loan.

"Initial Custody Receipt": An initial custody receipt as to each Mortgage Loan, which initial custody receipt is delivered to Merrill Lynch, or its successor in interest or assigns, by the Custodian in the form annexed hereto as Exhibit One.

"Initial Rate Cap": With respect to each adjustable rate Mortgage Loan and the initial Interest Rate Adjustment Date as to which the related Mortgage Loan Schedule indicates the existence of an Initial Rate Cap, the provision of the related Mortgage Note that provides for a maximum amount by which the Mortgage Interest Rate may increase (or, if so indicated on such Mortgage Loan Schedule, decrease) after the origination date above (or below) the Mortgage Interest Rate in effect on the initial Interest Rate Adjustment Date.

"Interest Rate Adjustment Date": With respect to each adjustable rate Mortgage Loan, the date on which the Mortgage Interest Rate is adjusted in accordance with the terms of the related Mortgage Note.

"Lifetime Rate Cap": With respect to each adjustable rate Mortgage Loan, the maximum Mortgage Interest Rate that may be borne thereby, as set forth in the related Mortgage Note.

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0494

"Loan-to-Value Ratio": With respect to any First Mortgage Loan, as of any date of determination, the ratio on such date of the outstanding principal balance of such Mortgage Loan to the Appraised Value of the related Mortgaged Property.

"MERS": Mortgage Electronic Registration Systems, Inc., a corporation organized and existing under the laws of the State of Delaware, or any successor thereto.

"MERS Mortgage Loan": Any Mortgage Loan registered with MERS on the MERS System.

"MERS System": The system of recording transfers of Mortgages electronically maintained by MERS.

"MIN": The Mortgage Identification Number of Mortgage Loans registered with MERS on the MERS System.

"MOM Loan": A Mortgage Loan where MERS is acting as the mortgagee of record of such Mortgage Loan solely as nominee for the originator of such Mortgage Loan and its successors and assigns at the origination thereof.

"Mortgage": With respect to a Mortgage Loan that is not a Co-op Loan, the mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first or second lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note. With respect to a Co-op Loan, the security agreement creating a security interest in the Co-op Shares and the related Proprietary Lease.

"Mortgage Interest Rate": The annual rate at which interest accrues on any Mortgage Loan and with respect to any adjustable rate Mortgage Loan, as such annual rate may be adjusted on any Interest Rate Adjustment Date and subject to the limitations on such interest rate imposed by any Initial Rate Cap, any Lifetime Rate Cap or any Periodic Rate Cap.

"Mortgage Loan": An individual Mortgage Loan, including but not limited to all documents included in the Custodian's Mortgage File, monthly payments, principal prepayments, proceeds from REO dispositions and any and all rights, benefits, proceeds and obligations arising therefrom or in connection therewith, and which is the subject of this Agreement.

"Mortgage Loan Schedule": The list of Mortgage Loans purchased by Merrill Lynch from a third party seller from time to time that are subject to this Agreement which list shall set forth the following information with respect to each Mortgage Loan:

  (i)    the loan number;

  (ii)   the Mortgagor's name;

  (iii)  the street address of the Mortgaged Property, including city, state and zip code;

-4-

WFB0495

(iv)    the Mortgage Interest Rate at origination and, in the case of an adjustable rate Mortgage Loan, the Mortgage Interest Rate in effect as of the related Cut-off Date:

(v)    for each adjustable rate Mortgage Loan, the first Interest Rate Adjustment Date;

(vi)    for each adjustable rate Mortgage Loan, the Gross Margin;

(vii)    for each adjustable rate Mortgage Loan, the Lifetime Rate Cap, if applicable;

(viii)    for each adjustable rate Mortgage Loan, the Periodic Rate Cap, if applicable;

(ix)    the original term to maturity and remaining term to maturity;

(x)    the original principal balance;

(xi)    the first payment due date;

(xii)    the maturity date;

(xiii)    the monthly payment in effect as of the related Cut-off Date;

(xiv)    the principal balance as of the related Cut-off Date;

(xv)    as to any First Mortgage Loan the Loan-to-Value Ratio at origination and as to any Second Mortgage Loan, the Combined Loan-to-Value Ratio at origination:

(xvi)    a code indicating whether the Mortgaged Property is occupied by the Mortgagor;

(xvii)    a code indicating the type of Residential Dwelling;

(xviii)    a code indicating the purpose of the Mortgage Loan;

(xix)    a code indicating whether the Mortgage Loan is a limited documentation Mortgage loan;

(xx)    for each adjustable rate Mortgage Loan, a code indicating the type of Index;

(xxi)    a code indicating whether the Mortgage Loan is a First Mortgage Loan or a Second Mortgage Loan;

(xxii)    a code indicating whether the Mortgage Loan is an Additional Collateral Mortgage Loan;

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0496

(xxiii)  the original pledge or maximum amount for the Additional Collateral Mortgage Loan;

(xxiv)  a code indicating if the Mortgage Loan is a MERS Mortgage Loan and, if so, the MIN; and

(xxv)  for each adjustable rate Mortgage Loan, the Initial Rate Cap, if applicable.

"Mortgage Note": The note evidencing the indebtedness of a Mortgagor secured by a Mortgage.

"Mortgage 100 Loan": A mortgage Loan secured by Additional Collateral in the form of a security interest in the Securities Account and the financial assets held therein and having a value, as of the date of origination of such Mortgage Loan, of at least equal to the related Original Additional Collateral Requirement.

"Mortgage 100 Pledge Agreement": With respect to each Mortgage 100 Loan, the Pledge Agreement for Securities Account between the related mortgagor and the Additional Collateral servicer pursuant to which such mortgagor granted a security interest in the related securities and other financial assets held therein.

"Mortgaged Property": The underlying real property securing repayment of a Mortgage Note, consisting of a fee simple estate in a single parcel of real property improved by a Residential Dwelling.

"Mortgagor": The obligor on a Mortgage Note, the owner of the Mortgaged Property and the grantor or mortgagor named in the related Mortgage and such grantor's or mortgagor's successor in title to the Mortgaged Property.

"Original Additional Collateral Requirement": With respect to any Additional Collateral Mortgage Loan, an amount equal to the Additional Collateral required at the time of the origination of such Additional Collateral Mortgage Loan.

"Original Agreement": The custodial agreement dated as of April 1, 1999 by and between Merrill Lynch and the Custodian, as amended on November 20, 2001.

"Parent Power® Agreement": With respect to each Parent Power®Mortgage Loan, a Parent Power® Guaranty and Security Agreement for Securities Account or a Parent Power® Guaranty Agreement for Real Estate.

"Parent Power® Guaranty Agreement for Real Estate": With respect to a Parent Power® Mortgage Loan, an agreement between the Additional Collateral servicer and a guarantor on behalf of the mortgagor under such Parent Power® Mortgage Loan pursuant to which such guarantor guarantees the payment of certain losses under such Parent Power® Mortgage Loan, authorizes the Additional Collateral servicer to draw on the related Equity Access Agreement to fund such guaranty and has secured such Equity Access Agreement with an equity access mortgage secured by a lien on residential real estate of the guarantor.

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0497

"Parent Power® Guaranty and Security Agreement for Securities Account": With respect to a Parent Power® Mortgage Loan, an agreement between the Additional Collateral servicer and a guarantor on behalf of the mortgagor under such Parent Power® Mortgage Loan pursuant to which such guarantor guarantees the payment of certain losses under such Parent Power® Mortgage Loan and has granted a security interest to the Additional Collateral servicer in certain marketable securities to collateralize such guaranty. The required amount of such collateral is at least equal to the Original Additional Collateral Requirement for such Parent Power® Mortgage Loan.

"Parent Power® Mortgage Loan": A Mortgage Loan having at the time of origination a Loan-to-Value Ratio generally in excess of the originator's maximum acceptable Loan-to-Value Ratio for such Mortgage Loan as set forth in such originator's underwriting guide, which Mortgage Loan is supported by a Parent Power® Agreement.

"Periodic Rate Cap": With respect to each adjustable rate Mortgage Loan as to which the related Mortgage Loan Schedule indicates the existence of a Periodic Rate Cap, the provision of the related Mortgage Note that provides for a maximum amount by which the Mortgage Interest Rate may increase (or, if so indicated on such Mortgage Loan Schedule, decrease) on an Interest Rate Adjustment Date above (or below) the Mortgage Interest Rate in effect immediately prior to such Interest Rate Adjustment Date.

"Pledge Agreement": Any Mortgage 100 Pledge Agreement, Parent Power Guaranty and Security Agreement for Securities Account, or Parent Power Guaranty Agreement for Real Estate related to an Additional Collateral Mortgage Loan.

"Proprietary Lease": The lease on a Co-op Unit evidencing the possessory interest of the owner of the Co-op Shares in such Co-op Unit.

"Registered Holder": Merrill Lynch, its successors in interest or assigns.

"Residential Dwelling": Any one of the following: (i) a one-family dwelling, (ii) a two-to four-family dwelling, (iii) a one-family dwelling unit in a Fannie Mae-eligible condominium project, (iv) a one-family dwelling in a planned unit development or (v) a Co-op Unit.

"Second Mortgage Loan": A Mortgage Loan that is secured by a second lien on the Mortgaged Property securing the related Mortgage Note.

"Securities Account": With respect to any Additional Collateral Mortgage Loans, the account, together with the financial assets held therein, that is the subject of the related Mortgage 100 Pledge Agreement.

2.     Delivery of Mortgage Loan Schedule and Custodian's Mortgage File.

Merrill Lynch may, from time to time, deliver or cause to be delivered to the Custodian a Mortgage Loan Schedule and the following documents for each Mortgage Loan listed on such Mortgage Loan Schedule to be held by the Custodian for the benefit of the Registered Holder, as the owner thereof:

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0498

(a)     The original Mortgage Note endorsed, "Pay to the order of _____ without recourse" and signed in the name of the name of last endorsee by an authorized officer of the last endorsee. If the Mortgage Loan was acquired by the last endorsee in a merger or other type of acquisition, the endorsement must be by "[name of last endorsee], successor (by merger to or in interest to, as applicable] [name of predecessor]"; and if the Mortgage Loan was acquired or originated by the last endorsee while doing business under another name, the endorsement must be by "[name of last endorsee], successor in interest to [previous name]." The Mortgage Note shall include all intervening endorsements showing a complete chain of title from the originator to the last endorsee;

(b)     For each Mortgage Loan that is not a MERS Mortgage Loan, the original recorded Mortgage, with evidence of recording thereon, or, if the original Mortgage has not yet been returned from the recording office, a copy of the original Mortgage certified by the previous owner to be a true copy of the original of the Mortgage that has been delivered for recording in the appropriate recording office of the jurisdiction in which the Mortgaged Property is located;

(c)     For each Mortgage Loan that is not a MERS Mortgage Loan, the original Assignment of each Mortgage, executed in blank. If the Mortgage Loan was acquired by the last assignee in a merger or other type of acquisition, the assignment must be by "[name of last assignee], successor [by merger to or in interest to, as applicable] [name of predecessor]"; and in the event that the Mortgage Loan was acquired or originated by the last assignee while doing business under another name, the assignment must be by "[name of last assignee], successor in interest to [previous name]";

(d)     The original policy of title insurance (or a preliminary title report if the original title insurance policy has not been received from the title insurance company);

(e)     For each Mortgage Loan that is not a MERS Mortgage Loan, originals of any intervening assignments of the Mortgage, with evidence of recording thereon or, if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the previous owner to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(f)     With respect to a Mortgage Loan that, according to the Mortgage Loan Schedule is covered by a primary mortgage insurance policy, the original or a copy of the policy of primary mortgage insurance;

(g)     Originals of all assumption and modification agreements, if any;

(h)     With respect to each Additional Collateral Mortgage Loan:

(i) Copy of the related Mortgage 100 Pledge Agreement for Securities Account or the Parent Power Guaranty and Security Agreement for Securities Account or the Parent Power Guaranty Agreement for Real Estate, as the case may be;

[TPW: NYLEGAL:100809.5] 18213-00046  03/14/2003 4:50 PM

WFB0499

(ii)     A copy of UCC-1, as applicable;

(iii)    An original of UCC-3, as applicable; and

(iv)    For loans originated by a correspondent lender, an original assignment of security interest of the related Mortgage 100 Pledge Agreement or an original assignment of the Parent Power Agreement, (Merrill Lynch will provide a list of originating entities);

(i) (i)   In the case of each MOM Loan, the original Mortgage with evidence of recording thereon, noting the presence of the MIN of the Mortgage Loan and language indicating that the Mortgage Loan is a MOM Loan; or

(ii)    In the case of each MERS Mortgage Loan that is not a MOM Loan, the original     Mortgage, with evidence of recording thereon, and all intervening assignments of     mortgage, with evidence of recording thereon, showing a complete chain of title   from the originator to MERS; and

(j) With respect to each Co-op Loan:

(i)     an original copy of the Proprietary Lease or an original copy of the assignment of the Proprietary Lease;

(ii)    the original stock certificate representing the Co-op Shares in the name of the Mortgagor together with an undated original stock power relating to such stock certificate executed in blank;

(iii)   a fully executed original recognition agreement;

(iv)    copies of the UCC-1 financing statement;

(v)     an executed UCC-3 financing statement (Assignment), or other appropriate UCC financing statement;

(vi)    a lien search for the Co-Op Unit;

(vii)   an original pledge and security agreement and original assignment of security agreement and original intervening assignments of the security agreement (if any); and

(viii)  an original or copies of an estoppel letter.

From time to time, Merrill Lynch shall forward or cause to be forwarded to the Custodian additional original documents evidencing an assumption or modification of a Mortgage Loan which documents shall become part of the Custodian's Mortgage File.

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0500

3. <u>Obligations of the Custodian.</u>

(a)     With respect to each Custodian's Mortgage File, the Custodian is exclusively the custodian for the Registered Holder from and after the related Delivery Date. The Custodian shall hold all documents constituting the Custodian's Mortgage File received by it for the exclusive use and benefit of the Registered Holder, and shall make disposition thereof only in accordance with this Agreement and the instructions furnished by the Registered Holder. The Custodian shall segregate and maintain continuous custody of all documents constituting the Custodian's Mortgage File received by it in secure and fire-resistant facilities in accordance with customary standards for such custody. The Custodian makes no representations or warranties as to and shall not be responsible to verify (i) the validity, legality, enforceability, sufficiency, recordability, due authorization or genuineness of any of the documents contained in each Custodian's Mortgage File or any of the Mortgage Loans or (ii) the collectability, insurability, effectiveness or suitability of any such Mortgage Loan. No provision of this Agreement shall be construed to impose on the Custodian any obligation of a third party seller under this Agreement or a Purchase Agreement under any circumstances.

(b)     The Custodian shall, at its own expense, maintain at all times during the existence of this Agreement and keep in full force and effect a fidelity bond and document hazard insurance in amounts and with standard coverage as is customary for insurance typically maintained by institutions that act as custodians. The minimum coverage under any such bond and insurance policies shall be at least equal to the corresponding amounts required by the Government National Mortgage Association. Fannie Mae or Freddie Mac either of the Custodian or in their respective Seller/Servicing Guides. A certificate of an authorized officer for the Custodian shall be furnished to the Registered Holder upon request as evidence of its compliance with any such requirement.

4. <u>Custody Receipts.</u>

(a)     <u>Initial Custody Receipt</u>. The Custodian shall review the documents delivered to it on each Delivery Date and shall deliver to Merrill Lynch as initial Registered Holder within two (2) Business Days following the Delivery Date or within a mutually agreed upon time between Merrill Lynch and the Custodian, but prior to the Closing Date, an Initial Custody Receipt with respect to the Mortgage Loans, in which the Custodian shall certify that such Mortgage Loans are held for Merrill Lynch (as Registered Holder) and that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (a) all documents described in Paragraphs 2(a) through (f) and to the extent provided in the Custodian's Mortgage File Paragraph 2(g) and to the extent identified on the Mortgage Loan Schedule the documents described in Paragraphs 2(h) through (j) of this Agreement are in its possession, (b) such documents have been reviewed by it and appear regular on their face and related to such Mortgage Loan, (c) based on its examination and only as to the foregoing documents the information set forth in items (i), (ii), (iii) excluding zip code, (iv) the Mortgage Interest Rate at origination, (vi), (vii), (viii), (x), (xi), (xii) and (xxv), and in the case of an Additional Collateral Mortgage Loan, item (xxiii) of the definition of "Mortgage Loan Schedule" respecting such Mortgage Loan is correct and (d) each Mortgage Note has been endorsed and each Assignment has been executed as provided in Paragraph 2 hereof.  Notwithstanding the foregoing, unless

-10-

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0501

otherwise requested by Merrill Lynch, the Custodian shall be under no obligation to verify the MIN for any MERS Mortgage Loans. If the Custodian determines from such verification that any discrepancy or deficiency exists with respect to a Custodian's Mortgage File, the Custodian shall note such discrepancy on the schedule of exceptions attached to the Initial Custody Receipt as Schedule B thereto (the "Exception Report").

The Custodian shall also note on the Exception Report, with respect to each Mortgage Loan, whether a certified copy of the related Mortgage was delivered to the Custodian in lieu of the original of such Mortgage, whether a certified copy of an intervening assignment of the related Mortgage was delivered to the Custodian in lieu of the original of such assignment, and whether a preliminary title report with respect to such Mortgage Loan was delivered to the Custodian in lieu of the original policy of title insurance.

On the first Business Day of each calendar month following delivery of the Initial Custody Receipt until the month in which the Final Custody Receipt is to be delivered pursuant to Subsection (b) below, the Custodian shall deliver to the Registered Holder of the Initial Custody Receipt, an updated Exception Report, revised to reflect any changes with respect to the status of the exceptions noted for the related Mortgage Loans.

(b) Final Custody Receipt. Not later than one hundred fifty (150) days following the date of each delivery of an Initial Custody Receipt, the Custodian shall deliver to the Registered Holder of the Initial Custody Receipt the Final Custody Receipt, with respect to the Mortgage Loans related to such Initial Custody Receipt, in which the Custodian shall certify to the Registered Holder that, as to each Mortgage Loan listed in the related Mortgage Loan Schedule (other than any Mortgage Loan paid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (a) all documents described in Paragraphs 2(a) through (f) and to the extent provided in the Custodian's Mortgage File Paragraph 2(g) and to the extent identified on the Mortgage Loan Schedule the documents described in Paragraphs 2(h) through (j) of this Agreement are in its possession, (b) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan, (c) based on its examination and only as to the foregoing documents the information set forth in items (i), (ii), (iii) excluding zip code, (iv) the Mortgage Interest Rate at origination, (vi), (vii), (viii), (x), (xi), (xii) and (xxv), and in the case of an Additional Collateral Mortgage Loan, item (xxiii) of the definition of "Mortgage Loan Schedule" respecting such Mortgage Loan is correct, and (d) each Mortgage Note has been endorsed and each Assignment has been executed as provided in Paragraph 2 hereof. If the Custodian determines from such verification that any discrepancy or deficiency exists with respect to a Custodian's Mortgage File, the Custodian shall note such discrepancy on the Exception Report attached to the Final Custody Receipt as Schedule B thereto. The Custodian shall also note on the Exception Report, with respect to each Mortgage Loan, whether a certified copy of the related Mortgage was delivered to the Custodian in lieu of the original of such Mortgage, whether a certified copy of an intervening assignment of the related Mortgage was delivered to the Custodian in lieu of the original of such assignment, and whether a preliminary title report with respect to such Mortgage Loan was delivered to the Custodian in lieu of the original policy of title insurance. Except as specifically provided above, the Custodian shall be under no duty to review, inspect or examine such documents to determine that any of them are enforceable or appropriate for their prescribed purpose. Upon delivery of the

-11-

WFB0502

Final Custody Receipt to the Registered Holder of the Initial Custody Receipt, the Initial Custody Receipt shall be of no further force or effect.

(c) Within five (5) days of receipt of written directions, in the form attached hereto as <u>Exhibit Six</u>, from the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, and upon the prior tender by such Registered Holder of the applicable Initial and/or Final Custody Receipt(s), as applicable, the Custodian shall deliver all or any portion of the Custodian's Mortgage Files held by it to the Registered Holder, or to such other party as the Registered Holder may direct as provided in Paragraph 16, at the place indicated in any such written direction from the Registered Holder and shall deliver to the Registered Holder a new Initial or Final Custody Receipt, as applicable, with respect to the Custodian's Mortgage Files retained by the Custodian. A list of authorized signatures for such written directions has been furnished to the Custodian by the Registered Holder pursuant to Paragraph 20 hereof. Upon the Custodian's receipt of such written notification from the Registered Holder that the Registered Holder has sold any or all of the Mortgage Loans, which notification shall be accompanied by the Initial and/or Final Custody Receipt(s), as applicable that relate to such Mortgage Loans, the Custodian shall change its records to reflect that such purchaser is the owner of such Mortgage Loans and shall immediately, upon the direction of such Registered Holder, either deliver the related Custodian's Mortgage Files to such purchaser at the expense of such purchaser or issue an Initial or Final Custody Receipt in the name of such purchaser. Such purchaser, as a Registered Holder, shall be required to simultaneously furnish to the Custodian a list of authorized signatures for written directions pursuant to paragraph 20 hereof. The Custodian shall then deliver to the Registered Holder a new Initial and/or Final Custody Receipt, as applicable reflecting all Mortgage Loans with respect to which the Custodian still holds the related Custodian's Mortgage Files on behalf of the Registered Holder. The Registered Holder and the Custodian agree herein that any purchaser of any or all of the Mortgage Loans shall succeed to the rights and obligations of the Registered Holder under this Agreement with respect to such Mortgage Loans upon receipt of the related Initial and/or Final Custody Receipt, as applicable subject to the provisions of Paragraph 15 hereof.

5.    <u>Fees and Expenses of the Custodian.</u>

It is understood that the Custodian will charge such fees for its services under this Agreement as are set forth in a separate agreement between the Custodian and Merrill Lynch, the payment of which, together with the Custodian's expenses in connection herewith, shall be solely the obligation of the Registered Holder with respect to the related Mortgage Loans.

6.    <u>Removal of the Custodian.</u>

The Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, with or without cause, may, upon thirty (30) days' written notice to the Custodian, remove and discharge the Custodian or any successor Custodian thereafter appointed from the performance of its duties under this Agreement. In the event of any such removal, upon tender of the Custody Receipts and satisfaction of any outstanding fees and expenses of the Custodian, the Custodian shall promptly transfer to the Registered Holder or to a successor Custodian appointed by the Registered Holder at the expense of the Registered Holder, as

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0503

directed by the Registered Holder in writing, all Custodian's Mortgage Files related to the Mortgage Loans as to which the Custodian is being terminated.

7.     Examination of the Custodian's Mortgage File.

Upon reasonable prior written notice to the Custodian, but not less than two (2) Business Days, the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder and its agents, accountants, attorneys and auditors will be permitted, during normal business hours, to examine the Custodian's Mortgage Files, documents, records and other papers in the possession of or under the control of the Custodian relating to any or all of the Mortgage Loans for which the Custodian holds the related Custodian's Mortgage File for the Registered Holder at the expense of the inspecting party.

8.     Counterparts.

For the purpose of facilitating the execution of this Agreement as herein provided and for other purposes, this Agreement may be executed simultaneously in any number of counterparts, each of which counterparts shall be deemed to be an original and all of which together shall constitute and be one and the same instrument.

9.     Periodic Statements.

Upon the request of any Registered Holder at any other time with at least two (2) Business Days' notice to the Custodian, the Custodian shall provide to the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, a list of all of the Mortgage Loans for which the Custodian holds a Custodian's Mortgage File pursuant to this Agreement. Such list may be in the form of a copy of the Mortgage Loan Schedule with manual deletions to denote specifically any Mortgage Loans paid off, liquidated or repurchased or otherwise released by the Custodian since the date of this Agreement

10.     Governing Law.

This Agreement shall be construed in accordance with the laws of the State of New York, and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.

11.     Copies of Mortgage Documents.

Upon the request of the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, and at the cost and expense of such party, the Custodian shall provide such Registered Holder with copies or originals as provided in Paragraph 21 hereof, of the Mortgage Notes, Mortgages, Assignments and other documents to the extent that such documents are part of the Custodian's Mortgage File relating to one or more of the Mortgage Loans.

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0504

12.    No Adverse Interest of Custodian.

By execution of this Agreement, the Custodian represents, warrants and covenants that it currently does not hold, and during the existence of this Agreement shall not hold, any adverse interest, by way of security or otherwise, in any Mortgage Loan.

13.    Termination By Custodian.

The Custodian may terminate its obligations under this Agreement upon at least sixty (60) days' notice to the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder. If, in the event of such termination, the Registered Holder shall appoint a successor Custodian within such sixty (60) day period, then upon such appointment and tender of the related Custody Receipts, the Custodian shall promptly transfer to such successor Custodian, as directed by the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, all of the Custodian's Mortgage Files being administered under this Agreement and shall either complete the Assignments and endorse the Mortgage Notes as directed by the Registered Holder or allow the Registered Holder or its agents or attorneys, access to the Custodian's Mortgage Files for such purpose. Notwithstanding the foregoing, if the Registered Holder fails to appoint a Custodian within such sixty (60) day period, the Custodian shall deliver all of the Custodian's Mortgage Files to the Registered Holder at the expense of such Registered Holder upon the expiration of such sixty (60) day period.

14.    Termination of Agreement.

This Agreement shall terminate upon the earlier of (a) the final payment or other liquidation (or advance with respect thereto) of the last Mortgage Loan, (b) the disposition of all property acquired upon foreclosure or by deed in lieu of foreclosure of the last Mortgage Loan or (c) the delivery by the Custodian of the last Custodian's Mortgage File pursuant to the direction of the Registered Holder hereunder. In such event the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder shall so notify the Custodian and tender all Custody Receipts, and thereafter all documents remaining in the Custodian's Mortgage Files shall be forwarded to the Registered Holder.

15.    Assignment of Agreement.

The Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder shall have the right to assign, in whole or in part, its interests under this Agreement with respect to some or all of the Mortgage Loans, and to designate any person or exercise any rights of the Registered Holder hereunder, and such assignee or designee shall accede to the rights and obligations hereunder of the Registered Holder with respect to such Mortgage Loans. All references to the Registered Holder shall be deemed to include its assignee or designee. In connection with any such assignment, the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder may require that arrangements reasonably satisfactory to it be made for the exchange of previously executed and outstanding Custody Receipt(s) for a Custody Receipt representing such assignment. The Custodian may not assign its interests or delegate its duties under this Agreement without the prior written consent of the Registered Holder. which consent shall not be unreasonably

-14-

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0505

withheld. In the event of any such assignment or delegation, the Registered Holder shall not be responsible for any fees of the successor Custodian in excess of the fees formerly paid by the Registered Holder to the Custodian.

16. Notice.

(a) All demands, notices and communications hereunder shall be in writing and shall be sent to the other party at the address shown on the first page hereof, or such other address as may hereafter be furnished to the other party by written notice given to the other party hereto in a notice complying with the terms and provisions of this Paragraph 16 or on an Exhibit Six notice provided pursuant to Paragraph 4(c).

(b) Any such demand, notice or communication hereunder shall be deemed conclusively to have been given if personally delivered at or mailed by registered mail, postage prepaid, and return receipt requested or transmitted by telex, telegraph or facsimile transmission and by a similar writing to the other party at its address as described in Subclause (a).

17. Indemnification.

(a) Neither the Custodian nor any of its directors, officers, agents or employees, shall be liable for any action taken or omitted to be taken by it or them hereunder or in connection herewith in good faith and believed by it or them to be within the purview of this Agreement, except for its or their own gross negligence, lack of good faith or willful misconduct.

(b) The Registered Holder and the Custodian agree to indemnify and hold each other and their respective directors, officers, agents and employees harmless against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever, including reasonable attorney's fees, that may be imposed on, incurred by, or asserted against it or them in any action taken or not taken by it or them hereunder, which shall be deemed to include, but not be limited to, the claims of third parties arising from or related to this Agreement or the Mortgage Loans unless such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements were imposed on, incurred by or asserted against the party seeking indemnification because of the breach of the obligations of such party, which breach was caused by gross negligence, lack of good faith or willful misconduct on the part of such party or any of its directors, officers, agents or employees. The foregoing indemnifications shall survive any termination or assignment of this Agreement and the resignation or removal of the Custodian.

In no event shall the Custodian or the Registered Holder or either of their respective directors, officers, agents and employees be held liable for any special, indirect or consequential damages resulting from any action taken or omitted to be taken by it or them hereunder or in connection herewith even if advised of the possibility of such damages.

18. Reliance of Custodian.

In the absence of bad faith on the part of the Custodian, the Custodian may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon any request, instructions, certificate, opinion or other document furnished to the Custodian,

-15-

WFB0506

reasonably believed by Custodian to be genuine and to have been signed or presented by the proper party or parties and conforming to the requirements of this Agreement. No representations, warranties, covenants or obligations of the Custodian shall be implied with respect to this Agreement or the Custodian's services hereunder.

19. <u>Transmission of Custodian's Mortgage File.</u>

Written instructions as to the method of shipment and shipper(s) Custodian is directed to utilize in connection with transmission of mortgage files and loan documents in the performance of the Custodian's duties hereunder shall be delivered by the Registered Holder (the "Requesting Party") with respect to all or a portion of the Mortgage Loans owned by such Registered Holder to the Custodian prior to any shipment of any mortgage files and loan documents hereunder. The Registered Holder will arrange for the provision of such services at its sole cost and expense (or, at Custodian's option, reimburse Custodian for all costs and loan expenses incurred by Custodian consistent with such instructions) and will maintain such insurance against loss or damage to mortgage files and loan documents as the Requesting Party deems appropriate. Without limiting the generality of the provisions of Paragraph 17 above, it is expressly agreed that in no event shall the Custodian have any liability for any losses or damages to any person, including, without limitation, the Requesting Party, arising out of actions of the Custodian consistent with instructions of the Requesting Party. In the absence of any written instructions with respect to the transmission of the Custodian's Mortgage Files, the parties hereby agree that the Custodian may utilize any nationally recognized overnight courier service and shall be entitled to reimbursement from the Registered Holder.

20. <u>Authorized Representative.</u>

Unless the Registered Holder shall have given the Custodian written notice to the contrary, each individual designated as an authorized representative of the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, and the Custodian, respectively (an "Authorized Representative"), is authorized to give and receive notices, requests and instructions and to deliver certificates and documents in connection with this Agreement on behalf of the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, or the Custodian, as the case may be, and the specimen signature for each such Authorized Representative of Merrill Lynch as the initial Registered Holder and each such Authorized Representative of the Custodian initially authorized hereunder is set forth on <u>Exhibit Three</u> and <u>Exhibit Four</u> hereof, respectively. Any subsequent Registered Holder of the Mortgage Loans shall provide the Custodian specimen signatures for each Authorized Representative of such Registered Holder. From time to time, the Registered Holder and the Custodian may, by delivering to the other party a revised exhibit, change the information previously given pursuant to this Paragraph, but each of the parties hereto shall be entitled to rely conclusively on the then current exhibit until receipt of a superseding exhibit.

21. <u>Release of Custodian's File for Servicing.</u>

Upon written request by the Registered Holder with respect to all or a portion of the Mortgage Loans owned by such Registered Holder, pursuant to the form attached hereto as Exhibit Five, the Custodian shall use its best efforts to promptly, and in no event no later than

-16-

WFB0507

three (3) Business Days after receipt of such written request completed in accordance with this Agreement, release the related Custodian's Mortgage File to the Registered Holder or its servicer for the servicing or foreclosure of any of the Mortgage Loans. All Custodian's Mortgage Files so released to the Registered Holder's servicer shall be held by such servicer in trust for the benefit of the Registered Holder in accordance with the provisions of a servicing agreement entered into between the Registered Holder and such servicer. The Registered Holder or its servicer shall return to the Custodian the Custodian's Mortgage File that has been released to the Registered Holder or its servicer, when the Registered Holder's or its servicer's need therefor in connection with such servicing or foreclosure no longer exists, unless the Mortgage Loan shall be liquidated, in which case, upon receipt of a certification to this effect from the Registered Holder or its servicer to the Custodian in the form annexed hereto as <u>Exhibit Five,</u> and the Custodian shall thereupon reflect any such liquidation on the list of Mortgage Loans maintained by it pursuant to Paragraph 9 of this Agreement.

22. <u>Release of Custodian's Mortgage File for Payment.</u>

Upon the repurchase or substitution of any Mortgage Loan pursuant to a Purchase Agreement or the payment in full of any Mortgage Loan, which shall be evidenced by the Custodian's receipt of a request for release, receipt and certification in the form annexed hereto as <u>Exhibit Five</u> (which certification shall include a statement to the effect that all amounts received in connection with such payment or repurchase have been credited to the account of the Registered Holder), the Custodian shall use its best efforts promptly and in no event later than three (3) Business Days after receipt of the written request therefor completed in accordance with this Agreement, release the related Custodian's Mortgage File to the Registered Holder or, at the request of the Registered Holder, its servicer, such repurchase thereupon to be noted on the list maintained by the Custodian pursuant to Paragraph 9 of this Agreement.

23. <u>Reproduction of Documents.</u>

This Agreement and all documents relating thereto, including, without limitation, (a) consents, waivers and modifications that may hereafter be executed, and (b) certificates and other information previously or hereafter furnished may be reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other similar process. The parties agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

24. <u>Severability.</u>

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, the invalidity of any such covenant, agreement, provision or term of this Agreement shall in no way affect the validity or enforceability of the other provisions of this Agreement; <u>provided</u>, <u>however</u>, that if the invalidity of any covenant, agreement or provision shall deprive any party of the economic benefit intended to be conferred

[TPW: NY.LEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0508

by this Agreement, the parties shall negotiate in good faith to develop a structure the economic effect of which is as nearly as possible the same as the economic effect of this Agreement.

25.     Amendment; Exhibits.

This Agreement may be amended from time to time by the parties hereto only by a written agreement signed by the parties hereto. The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

26.     Captions.

Paragraph headings are used herein for convenience only and do not limit or expand the scope of the provisions herein.

27.     Integration.  This Agreement and the other writings referred to herein or delivered pursuant hereto which form a part hereof contain the entire understanding of the parties with respect to its subject matter.  This Agreement supersedes all prior agreements and understandings between the parties with respect to its subject matter.  There are no restrictions, agreements, promises, representations, warranties, covenants or undertakings with respect to its subject matter other than those expressly set forth or referred to herein.  This Agreement amends, restates and replaces the Original Agreement in its entirety.

[Signature page to follow]

-18-

WFB0509

MAR-18-2003  08:35       WELLS FARGO BANK MN

IN WITNESS WHEREOF, the Custodian and Merrill Lynch have caused this Agreement to be executed as of the date and year first written above.

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _Sarah J. Kerr_
Name: Sarah J. Kerr
Title:  Assistant Vice President

MERRILL LYNCH MORTGAGE CAPITAL INC.

By: _____
Name: _____
Title: _____

[TPW: NYLEGAL:100809.4100809.5] 18213-00046-0208-114/2003 12:12550 P.M

TOTAL P.02
PAGE.02

WFB0510

IN WITNESS WHEREOF, the Custodian and Merrill Lynch have caused this Agreement to be executed as of the date and year first written above.

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _____
Name: _____
Title: _____

MERRILL LYNCH MORTGAGE CAPITAL INC.

By: _____
Name: Michael M. McGovern
Title: Vice President & Secretary

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0511

EXHIBIT ONE

INITIAL CUSTODY RECEIPT
(Group Number)
[Date]

THIS CUSTODY RECEIPT MAY NOT BE TRANSFERRED EXCEPT IN ACCORDANCE
WITH THE TERMS OF THE CUSTODIAL AGREEMENT REFERRED TO BELOW

Carol Han 201-557-0509
Merrill Lynch
101 Hudson Street, 12th Floor MBS Dept.
Jersey City, NJ 07302

Ladies and Gentlemen:

Reference is made to the Amended and Restated Custodial Agreement, dated as of April
1, 1999 as amended and restated to and including March 14, 2003 (the "Custodial Agreement"),
between Merrill Lynch Mortgage Capital Inc. (the "Company") and Wells Fargo Bank
Minnesota, National Association (the "Custodian"), pursuant to which the Company has caused
to be delivered to the Custodian a Custodian's Mortgage File for the Mortgage Loans, which are
more fully described on the Mortgage Loan Schedule attached hereto as Schedule A.

Any capitalized term used but not defined herein shall have the same meaning that is
assigned to it in the Custodial Agreement.

The Custodian hereby certifies that the above named person is the Registered Holder of
this Initial Custody Receipt. In accordance with the provisions of Paragraph 4(a) of the
Custodial Agreement, the undersigned, as Custodian, hereby certifies that as to each Mortgage
Loan listed in the Mortgage Loan Schedule (a "Receipted Mortgage Loan") (except as noted on
the Schedule of Exceptions attached hereto as Schedule B), it has reviewed the Custodian's
Mortgage File and has determined that (a) all documents described in Paragraphs 2(a) through (f)
and to the extent provided in the Custodian's Mortgage File Paragraph 2(g) and to the extent
identified on the Mortgage Loan Schedule the documents described in Paragraphs 2(h) through
(j) of this Agreement are in its possession, (b) such documents have been reviewed by it and
appear regular on their face and relate to such Mortgage Loan, (c) based on its examination and
only as to the foregoing documents and the information set forth in items (i), (ii), (iii) excluding
zip code, (iv) the Mortgage Interest Rate at origination, (vi), (vii), (viii), (x), (xi), (xii) and (xxv)
and in the case of an Additional Collateral Mortgage Loans, item (xxiii) of the definition of
"Mortgage Loan Schedule" respecting such Mortgage Loan is correct, and (d) each Mortgage
Note has been endorsed and each Assignment has been executed as provided in Paragraph 2 of
the Custodial Agreement, and the Custodian further certifies that it will, subject to the provisions
of the Custodial Agreement, continue to hold the Custodian's Mortgage File for each Mortgage
Loan for the sole and exclusive use and benefit of the Registered Holder until the Registered
Holder directs the Custodian to the contrary. The Custodian makes no representations or
warranties as to and shall not be responsible to verify (i) the validity, legality, enforceability,

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0512

recordability, sufficiency, due authorization or genuineness of any of the documents contained in each Custodian's Mortgage File or any of the Receipted Mortgage Loans or (ii) the collectability, insurability, effectiveness or suitability of any such Receipted Mortgage Loan.

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _____

Name: _____

Title: _____

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0513

SCHEDULE A

MORTGAGE LOAN SCHEDULE

[TPW: NYLEGAL:100809.5] 18213-00046  03/14/2003 4:50 PM

WFB0514

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

SCHEDULE B

SCHEDULE OF EXCEPTIONS

WFB0515

EXHIBIT TWO

FINAL CUSTODY RECEIPT
(Group Number)
[Date]

THIS CUSTODY RECEIPT MAY NOT BE TRANSFERRED EXCEPT IN ACCORDANCE
WITH THE TERMS OF THE CUSTODIAL AGREEMENT REFERRED TO BELOW

Carol Han 201-557-0509
Merrill Lynch
101 Hudson Street, 12th Floor MBS Dept.
Jersey City, NJ 07302

Ladies and Gentlemen:

Reference is made to the Amended and Restated Custodial Agreement, dated as of April
1, 1999 as amended and restated to and including March 14, 2003 (the "Custodial Agreement"),
between Merrill Lynch Mortgage Capital Inc. and Wells Fargo Bank Minnesota, National
Association (the "Custodian"), pursuant to which the Company has caused to be delivered to the
Custodian a Custodian's Mortgage File for the Mortgage Loans, which are more fully described
on the Mortgage Loan Schedule attached hereto as Schedule A.

Any capitalized term used but not defined herein shall have the same meaning that is
assigned to it in the Custodial Agreement.

The Custodian hereby certifies that the above named person is the Registered Holder of
this Final Custody Receipt. In accordance with the provisions of Paragraph 4(b) of the Custodial
Agreement, the undersigned, as Custodian, hereby certifies that as to each Mortgage Loan listed
in the Mortgage Loan Schedule (a "Receipted Mortgage Loan") (except as noted on the Schedule
of Exceptions attached hereto as Schedule B), it has reviewed the Custodian's Mortgage File and
has determined that (a) all documents described in Paragraphs 2(a) through (f) and to the extent
provided in the Custodian's Mortgage File Paragraph 2(g) and to the extent identified on the
Mortgage Loan Schedule the documents described in Paragraphs 2(h) through (j) of this
Agreement are in its possession, (b) such documents have been reviewed by it and appear regular
on their face and relate to such Mortgage Loan, (c) based on its examination and only as to the
foregoing documents and the information set forth in items (i), (ii), (iii) excluding zip code, (iv)
the Mortgage Interest Rate at origination, (vi), (vii), (viii), (x), (xi), (xii) and (xv) and in the case
of an Additional Collateral Mortgage Loan, item (xxiii) of the definition of "Mortgage Loan
Schedule" respecting such Mortgage Loan is correct, and (d) each Mortgage Note has been
endorsed and each Assignment has been executed as provided in Paragraph 2 of the Custodial
Agreement, and the Custodian further certifies that it will, subject to the provisions of the
Custodial Agreement, continue to hold the Custodian's Mortgage File for each Mortgage Loan
for the sole and exclusive use and benefit of the Registered Holder until the Registered Holder
directs the Custodian to the contrary. The Custodian makes no representations or warranties as
to and shall not be responsible to verify (i) the validity, legality, enforceability, recordability,

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0516

sufficiency, due authorization or genuineness of any of the documents contained in each Custodian's Mortgage File or any of the Receipted Mortgage Loans or (ii) the collectability, insurability, effectiveness or suitability of any such Receipted Mortgage Loan.

Upon delivery of the Final Custody Receipt to the Registered Holder of the Initial Custody Receipt, the Initial Custody Receipt shall be of no further force or effect.

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION

By: _____

Name: _____

Title: _____

[TPW: NYLEGAL:100809.5] 18213-00046  03/14/2003 4:50 PM

WFB0517

SCHEDULE A

MORTGAGE LOAN SCHEDULE

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0518

# SCHEDULE B

## SCHEDULE OF EXCEPTIONS

**EXHIBIT THREE**

**AUTHORIZED REPRESENTATIVES OF MERRILL LYNCH**
**AS THE INITIAL REGISTERED HOLDER**

<u>NAME</u>

<u>SPECIMEN SIGNATURE</u>

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0520 ___

MAY-13-2003 13:12     WELLS FARGO CORP TRUST                    P.02/02

## CUSTODY OFFICER LIST

Name: Lois A. Downie
Title:  Assistant Vice President

Signature

Name: Patricia A. Hardenbrook
Title:  Vice President

Signature

Name: Rebecca M. Judge
Title:  Assistant Vice President

Signature

Name: Christina Hatfield
Title:  Assistant Vice President

Signature

Name: Bradley D. Johnson
Title:  Assistant Vice President

Signature

Name: Kathleen Marshall
Title:  Assistant Vice President

Signature

Name: Shari Gillund
Title:  Vice President

Signature

Name: Leigh Taylor
Title:  Assistant Vice President

Signature

Name: Mary Hogan
Title:  Vice President

Signature

Name: Sarah J. Kerr
Title:  Assistant Vice President

Signature

MAY 13 2003  1:56 PM

TOTAL P.02
PAGE.02

WFB0521

EXHIBIT FIVE

[REQUEST FOR RELEASE]

To: _____

Re:    Amended and Restated Custodial Agreement, dated as of April 1, 1999 as amended and restated to an including March 14, 2003, between Merrill Lynch Mortgage Capital Inc. and Wells Fargo Bank Minnesota, National Association (the "Custodian")

       In connection with the administration of the pool of Mortgage Loans held by you as Custodian for the Registered Holder of the Mortgage Loans, we request the release of the (Custodian's Mortgage File ([specify documents]) for the Mortgage Loan described below, for the reason indicated.

File/document to be sent to:
[Company]
[Address]
[Attn:]
[Telephone Number _____ ]

Mortgagor's Name, Address & Zip Code:

Mortgage Loan Number:

Reason for Requesting Documents (check one)

_____ 1.    Mortgage Loan Paid in Full ([Registered Holder] [Authorized Servicer] hereby certifies that all amounts received in connection therewith have been credited to the account of the Registered Holder.)

_____ 2.    Mortgage Loan in Foreclosure

_____ 3.    Mortgage Loan Repurchased or Substituted For ([Registered Holder] [Authorized Servicer] hereby certifies that any applicable repurchase price or substitution shortfall amount has been credited to the account of the Registered Holder.)

_____ 4.    Mortgage Loan Liquidated
             ([Registered Holder) (Authorized Servicer] hereby certifies that all proceeds of foreclosure, insurance or other liquidation have been finally received and credited to the account of the Registered Holder.)

_____ 5.    Other (explain) _____

[TPW: NYLEGAL:100809.5] 18213-00046 03/14/2003 4:50 PM

WFB0522

If box 1, 2 or 3 above is checked, and if all or part of the Custodian's Mortgage File was previously released to us, please release to us our previous receipt on file with you, as well as any additional documents in your possession relating to the above specified Mortgage Loan.

If box 4 or 5 above is checked, upon our return of all of the above documents to you as Custodian, please acknowledge your receipt by signing in the space indicated below, and returning this form.

[Registered Holder Consent:

Name of Registered Holder: _____
Name of Authorized Officer: _____
Title: _____ ]

<div align="right">

[REGISTERED HOLDER]
[SERVICER AUTHORIZED BY REGISTERED HOLDER]

By: _____
Date: _____

</div>

Documents returned to Custodian:

_____,

as Custodian

By: _____
Date: _____

WFB0523

EXHIBIT SIX

FORM OF NOTICE OF SALE

Date:

To: _____

From: Merrill Lynch Mortgage Capital Inc. (or its Successor or Assignee) (the "Registered Holder")

Re: Amended and Restated Custodial Agreement, dated as of April 1, 1999 as amended and restated to and including March 14, 2003 (the "Custodial Agreement"), between Merrill Lynch Mortgage Capital Inc. and Wells Fargo Bank Minnesota, National Association. (the "Custodian")

Ladies and Gentlemen:

You are hereby notified that as of [the date of sale to be inserted] (the "Transfer Date"), the Registered Holder shall transfer and assign to (name of subsequent Registered Holder to be inserted], having an address at _____, the right (including the power to convey title thereto), title and interest in and to the Mortgage Loans identified in the Mortgage Loan Schedule attached hereto as Schedule A (the "Schedule A Mortgage Loans"), and you are hereby instructed to *[if the Custodial Agreement shall be assigned to the subsequent registered holder, include the following:* hold the Schedule A Mortgage loans pursuant to the terms of the Custodial Agreement for the sole and exclusive benefit of [name of subsequent registered holder to be inserted] subject to the terms thereof, by which [name of subsequent registered holder to be inserted] hereby agrees to be bound as the "Registered Holder" thereunder, including the obligation to indemnify and to pay the Custodian's fees and expenses with respect to such Schedule A Mortgage Loans.] *[If the related Custodial Files shall be delivered to the subsequent registered holder, include the following:* release the Custodial Files with respect to such Schedule A Mortgage Loan to [name of subsequent registered holder to be inserted] upon the direction of the Registered Holder on the Transfer Date.]

*[If the Custodial Agreement shall be assigned iv the subsequent registered holder, include the following:* Effective as of the Transfer Date, the Registered Holder hereby assigns its interest in the Custodial Agreement to [name of subsequent registered holder to be inserted] to the extent of the Schedule A Mortgage Loans, and [name of subsequent registered holder to be inserted] agrees to be bound, as the "Registered Holder" thereunder, by all of the terms, covenants and conditions of the Custodial Agreement as they relate to the Schedule A Mortgage Loans, and from and after the date hereof, [name of subsequent registered holder to be inserted] shall assume for the benefit of the Registered Holder all of the Registered Holder's obligations as the "Registered Holder" thereunder with respect to the Schedule A Mortgage Loans.

WFB0524

This notification may be revoked by the Registered Holder by notice to the Custodian at any time prior to the transfer of ownership of the referenced Mortgage Loans to (name of subsequent purchaser].

[NAME OF REGISTERED HOLDER]
or its successor or assignee

By: _____
Name: (to be signed by an authorized representative]
Title:

[SUBSEQUENT REGISTERED HOLDER]

By: _____
Name: (to be signed by an authorized representative]
Title:

WFB0525