IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | CASE NO. 3:08cv408 |
| | ) | |
| Plaintiffs, | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| MORTGAGE ELECTRONIC SECURITY | ) | |
| SYSTEMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTIONS FOR SUMMARY JUDGMENT AND TO STRIKE CLASS ALLEGATIONS AND IN FURTHER SUPPORT OF ITS REQUEST FOR OTHER MOTIONS FILED BY DEFENDANTS**

## TABLE OF CONTENTS

Page

BACKGROUND .................................................................................. 3

    A. The June 2015 Depositions ...................................................... 4

    B. Additional Documents Produced By Defendants After The June 2015
       Depositions .............................................................................. 5

    C. Plaintiff's Discovery of Additional Documents Which Defendants Have
       Claimed Do Not Exist ................................................................ 5

    D. Plaintiff's Request To Defendants For Further Discovery ...................... 7

ARGUMENT ...................................................................................... 8

POINT I - PLAINTIFF HAS DEMONSTRATED AN AMPLE BASIS FOR THEIR
REQUEST TO EXTEND SCHEDULING DEADLINES HERE, AND THUS THE
DEFENDANTS' MOTIONS SHOULD BE DENIED ..................................... 8

    A. Defendants' Claim That the Documents Belatedly Produced By Them Were
       Not Requested In Discovery By Plaintiff Is False ...................... 10

    B. Defendants Claim That Plaintiff Never Requested Extensions of
       Scheduling Order Deadlines Is False ............................................. 13

    C. Defendants Claim That Plaintiff Delayed Taking Defendants'
       Depositions Is False ................................................................. 15

    D. Defendants' False Claim That The Parties Agreed To New Scheduling
       Order Deadlines ...................................................................... 16

    E. Plaintiff Is Entitled To Additional Discovery Regarding The
       Documents Produced Or Located After the June 2015 Depositions ........ 17

         1. Wells Fargo ...................................................................... 18

         2. Barclays .......................................................................... 19

         3. MERS Continues To Refuse To Identify Or Disclose ................... 21

CONCLUSION .................................................................................. 22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

EUGENE KLINE, et al.,                              )    CASE NO. 3:08cv408
                                                   )
                    Plaintiffs,                    )    JUDGE WALTER HERBERT RICE
                                                   )
vs.                                                )
                                                   )
                                                   )
MORTGAGE ELECTRONIC SECURITY                       )
SYSTEMS, et al.,                                   )
                                                   )
                    Defendants.                    )
                                                   )

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTIONS FOR
SUMMARY JUDGMENT AND TO STRIKE CLASS ALLEGATIONS AND IN
FURTHER SUPPORT OF ITS REQUEST FOR OTHER MOTIONS FILED BY
DEFENDANTS**

---

Plaintiff Eugene Kline, on behalf of a putative class and by his counsel Paul

Grobman, submits this Memorandum in opposition to (i) the "Request for Order Granting

Unopposed Motions for Summary Judgment" filed by defendants Wells Fargo Bank,

N.A. ("Wells Fargo"), Barclays Capital Real Estate ("Barclays/HomEq") and Mortgage

Electronic Registration Systems, Inc. ("MERS") dated July 28, 2015 (Dock. #443); and

(ii) the "Defendants' Joint Motion to Strike and Dismiss Class Action Allegations For

Failure To File Class Certification Brief" dated August 3, 2015 (Dock. #444).

Having already burdened this court with multiple motions relating to plaintiff's

purported failure to comply with deadlines in the Scheduling Order, defendants now file

two more motions which not only ignore – but seek to capitalize on -- their own failure to provide timely discovery within the Scheduling Order deadlines, resulting in the need to take additional depositions of each of the corporate defendants on June 10-12, 2015. Moreover, defendants also ignore the fact that they again produced highly-relevant documents even *after* the second round of depositions in June, though these documents should have been produced years earlier. Despite this, defendants have refused to make any witnesses available to answer questions about these new documents, or other documents which defendants claimed did not exist but which plaintiff has recently located.

Having repeatedly violated the discovery deadlines in the Scheduling Order, defendants are hardly in a position to oppose extensions of those deadlines occasioned by their actions. Since the defendants' first belated disclosure of new documents in March, plaintiff has repeatedly attempted to get defendants to agree to a set of stipulated extensions of the summary judgment, expert disclosure and class motion deadlines in order to move this matter forward. However, rather than agree to reasonable stipulated extensions occasioned by their own misconduct, defendants have repeatedly filed what amount to default motions, as if defendants did not violate the Scheduling Order by belatedly producing discovery, and plaintiff had not repeatedly requested extensions since April 2015.

Desperate to avoid the merits of this action, defendants continue to present half-truths which are completely belied by the record evidence. Indeed, the record suggests that, to this day, defendants continue to engage in a concerted effort to conceal

agreements between the defendants -- and between defendants and third-party outsourcers -- which go directly to the claims of illegality in this case.

## BACKGROUND

As plaintiff advised the Court in his extension requests dated April 10, 2015 and May 7, 2015, each of the corporate defendants produced additional documents after their Rule 30(b)(6) depositions were concluded, and after the March 1, 2015 deadline for discovery in the Scheduling Order had passed.

Among the new documents produced by Barclays were a new Escrow Activity History which disclosed transactions which had been omitted and misrepresented in the prior Escrow History produced by the defendants in this litigation. (See March 26, 2015 letter and attachments annexed to the Declaration of Paul Grobman dated August 14, 2015 ("Grob. Decl.") as Exh. A. While the prior Escrow History produced by defendants indicated that Mr. Kline had an escrow balance of zero after Payoff, the new history showed that there was in fact a $412.96 escrow balance owed to Mr. Kline at that point. (Grob. Decl. Exh. A, BC18800, at line 12/3/2007) Moreover, the new Escrow History also showed two new post-payoff transactions which had never been previously disclosed by the defendants, in which the defendants made two so-called "Fee Adjustments" (one for $158.00 and one for $324.08) to the escrow balance to bring that amount from $412.96 down to zero. (Id. at line 12/11/2007, 12/24/2007) The new documents also showed that the defendants had added legal fees paid to the Reimer firm to the amounts purportedly owed by Mr. Kline which appeared to have been deducted from the previously-concealed Escrow Balance.

3

Even the attorneys for Barclays, MERS and Wells Fargo recognized that an extension of the existing deadlines was necessary under these circumstances. Thus, in a letter accompanying their production on March 26, 2015, counsel for the three defendants wrote that they would produce a corporate designee for further deposition with regard to these documents, and further stated:

> I will consent to any reasonable extension of time you may require in order to either oppose any summary judgment motions or support your own class certification motion to the extent such an extension is necessitated by the materials being presented herewith.

(Grob. Decl. Exh. A)

### A. The June 2015 Depositions

On June 10-12, 2015, plaintiff's counsel travelled to Baltimore to take additional depositions of Barclays, MERS and Wells Fargo relating to the newly-produced documents. At the further deposition of Barclays' Rule 30(b)(6) witness on June 10, 2015, Barclays' deponent Jacklyn Cartmill admitted that the previous Escrow Activity history produced by Barclays omitted the transactions showing that there was an Escrow Balance in Mr. Kline's account after payoff, and that that balance had been reduced by deducting attorneys fees and/or legal expenses which previously had not been disclosed:

> Q. If the borrower is looking at [the prior Escrow Activity history provided to Mr. Kline], would the borrower have any way of knowing that there was an escrow balance remaining . . . after payoff?
> A. No.
> Q. And would the borrower know that there were two transactions in escrow which took that balance and turned it into zero?
> A They would not.
> Q Do you know whether the borrower was apprised, at any point before [the new Escrow Activity history] was produced on March 26th of 2015, that these transactions that

> we are talking about, which don't exist on [the prior Escrow
> Activity history], had been disclosed? . ..
> A. I -- I don't know how the borrower would know.

(See excerpts from the June 10, 2015 Deposition of Jacklin Cartmill annexed to Grob.

Decl. as Exh. B, pp. 74-75)

## B. Additional Documents Produced By Defendants After The June 2015 Depositions

Remarkably, even after these second depositions in June, the defendants

continued to produce additional highly-relevant documents which were clearly

encompassed within the initial discovery requests served on defendants in 2012 and

2013. Thus, on June 19, 2015 – eight days after plaintiff took the further deposition of

Wells Fargo -- the company produced additional documents relating to Wells Fargo's

inspection of Mr. Kline's loan documents. (See June 19, 2015 email annexed to Grob.

Decl. as Exh. C) On June 23, 2015, Wells Fargo produced Custodial Agreements

describing Wells Fargo's custodial obligations with respect to the Trust which bought

plaintiff's loans from Merrill Lynch. (See Transmittal Email annexed to Grob. Decl. as

Exh. D hereto). And on June 25, 2015, Wells Fargo produced documents relating to

Barclays' requests to release Mr. Kline's original mortgage documents in connection with

the foreclosures on plaintiff's property in 2005 and 2007. (See Transmittal Email

annexed to Grob. Decl. as Exh. E)

## C. Plaintiff's Discovery of Additional Documents Which Defendants Have Claimed Do Not Exist

During discovery in this litigation, plaintiff has repeatedly requested that the

defendants produce any agreements they had with Fidelity National Foreclosure

Solutions ("Fidelity") or Rosicki, Rosicki & Associates ("Rosicki")[1], both of which have been identified in discovery as outsourcers involved in the foreclosure actions commenced against Mr. Kline in 2005 and 2007. Despite the defendants' acknowledgement of this outsourcing relationship between defendants and Fidelity and Rosicki, none of the defendants in this action have produced a single agreement with either of these entities, and each denies knowledge of whether any such outsourcing agreements ever existed.  (See March 17, 2015 letter annexed to Grob. Decl. as Exh. F (in which Barclays states that no such agreements exist))   Nor did Barclays, MERS or Wells Fargo produce a witness familiar the terms and conditions under which Fidelity and Rosicki were retained, how they were compensated, or whether these entities received a portion of the purported "legal fees" which the defendants demanded and collected from Kline and other borrowers who had loans with the defendants.

Recently, plaintiff's counsel has located portions of an agreement between Fidelity and HomEq relating to such outsourcing services, as well as another similar agreement between HomEq and the Rosicki firm, neither of which had ever been identified or produced by the defendants in discovery.   On July 14, 2015, plaintiff provided copies of these documents to counsel for Barclays/HomEq, and requested that the company provide an explanation for the failure to produce these documents.  (See email dated July 14, 2015 annexed to Grob. Decl. as Exh. G)

On July 16, 2015, counsel for Barclays/HomEq responded, stating that it was Mr. Kline's obligation – not Barclays/HomEq's – to produce the agreements between

---

[1] See Exhibit 2 to Deft's Amicus Brief (Dock. #437), p. 5, ##6-7 (demanding all contractual agreements between HomEq and Fidelity or any other outsourcer relating to services performed by any third-party relating to the plaintiff's mortgage loans)

HomEq, Fidelity and Rosicki which were requested by plaintiff in discovery and which are highly relevant to its claims in this case. (See email dated July 16, 2015 annexed to Grob. Decl. as Exh. H)

### D. Plaintiff's Request To Defendants For Further Discovery

On July 2, 2015, plaintiff wrote Barclays/HomEq and Wells Fargo relating to the issues described above in an effort to get them to agree to provide additional discovery. (See letters annexed to Grob. Decl. as Exh. I)

By letter dated July 15, 2015, counsel for Barclays/HomEq refused to provide any additional discovery. (See letter annexed to Grob. Decl. as Exh. J) Barclays/HomEq asserted that it did not need to produce a person with knowledge of how HomEq's escrow department operated or why funds were deducted from an escrow balance in Mr. Kline's account after payoff because "all amounts collected from Mr. Kline . . . were fully authorized by the loan documents and applicable law." (Grob. Exh. J) However, the letter cites no evidence whatsoever which supports this conclusion, and indeed this assertion is contrary to the testimony of the Rule 30(b)(6) witness Barclays produced on June 10, 2015:

> Q And I'm asking you, you don't know whether
>  this was consistent with home HomeEq practice?
> A I do not know.
> Q You don't know whether it was consistent with the loan
> documents?
> MR. POPE: Objection. Go ahead.
> A. I do not know.
> Q And you don't know whether it was consistent with the
> law?
> MR. POPE: Objection. Go ahead.
>  A I don't know.

(Cartmill, Grob. Decl. Exh. B pp. 82-83)

In another letter dated July 15, 2015, Wells Fargo advised plaintiff that it would not produce a Wells Fargo witness to answer questions about the additional documents produced by it after the June 11, 2015 deposition because "those documents had not been previously requested by [plaintiff] prior to the . . . deposition" and were produced "out of professional courtesy." (Grob. Decl. Exh. K)  However, as even a brief review of the document demands served on Wells Fargo by plaintiff in October 2013 demonstrates, this assertion is completely baseless.  (See Plaintiff's First Request for Production annexed as Exhibit 4 to the Amicus Brief (Dock. #437) filed by defendants on 7/16/15, Requests #1 & #2 (demanding all documents "within Wells Fargo's possession, custody or control relating to Kline's loans");  Request #3 ("Any and all contractual agreements between Wells Fargo, on the one hand, and Merrill Lynch Investors Trust Mortgage Asset-Backed Certificates, Series 2004-WMC5, on the other, relating to (i) the type of services performed by Wells Fargo for any of the plaintiffs' mortgage loans")

## ARGUMENT

### POINT I

**PLAINTIFF HAS DEMONSTRATED AN AMPLE BASIS FOR THEIR REQUEST TO EXTEND SCHEDULING DEADLINES HERE, AND THUS THE DEFENDANTS' MOTIONS SHOULD BE DENIED**

Plaintiff respectfully submits that the record provides abundant evidence of defendants' repeated failure to produce timely and complete discovery in this action, and that such failures continue to the present day.

In attempting to blame plaintiff for their own misconduct, defendants papers simply ignore the fact that federal courts have *repeatedly* and *routinely* found that a party's failure to provide relevant discovery within the time required under a Scheduling

Order constitutes good cause for extending discovery and motions deadlines in a

Scheduling Order.[2] No showing of "excusable neglect" or "substantial justification" is

---

[2] *See, e.g.*, Gorsuch v. Wells Fargo Bank N.A., 771 F.3d 1230, 1240 (10th Cir. 2014) ("Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery"); Henderson v. U.S. Aid Funds, Inc., 2014 U.S. Dist. Lexis 131209 (S.D. Cal. 2014) ("because plaintiff's failure to comply with the [] deadline was at least partially attributable to defendant's production of the requested information after the deadline to amend the pleadings, it could not have been reasonably anticipated at the time of the Rule 16 scheduling conference"): Saloman v. Adderly Indus. Inc., 960 F. Supp.2d 502, 508 (S.D.N.Y. 2014) (plaintiff established good cause for failure to amend within scheduling deadline where defendant provided additional documents after scheduling order deadline); Mireles v. Paragon Systems, Inc, 2014 U.S. Dist. Lexis 17230, *2 (S.D. Cal. 2014) (discovery produced after the deadline to amend the pleadings "made compliance with the . . . deadline a temporal impossibility"); U.S. v. Brown, 2013 U.S. Dist. Lexis 134395, *13 (M.D. Fla. 2013) (good cause to reopen discovery where party engaged in "belated production of emails and third party documents"); Butamax Advanced Biofuels LLC v. E.I. Du Pont and Co., 2013 U.S. Dist. Lexis 19069 (D. Del. 2013) (defendants established good cause for failure to amend answer within scheduling deadline where plaintiffs produced documents after scheduling deadline); In re Delta/Airtrain Baggage Fee Litig. , 846 F.Supp.2d 1335, 1360-62 (N.D. Ga. 2012) (plaintiff demonstrated good cause for reopening discovery where defendant failed to produce relevant documents before depositions); Wisfame Intl v. FKA Distributing Co., 2011 U.S. Dist. Lexis 11431, *21-22 (E.D. Mich. 2011) (good cause to extend discovery deadlines in scheduling order where plaintiffs have "been diligent in attempting to secure information from [defendants], which has been resisted for a variety of reasons"); Mesmer v. Rezza, 2011 U.S. Dist. Lexis 130895, *12 (D. Md. 2011) ("A party's failure to respond to discovery requests or assert timely objections to those requests constitutes good cause for modifying a scheduling order"); Heil v. Belle Starr Saloon & Casino, 2011 U.S. Dist. Lexis 34931, *32-33 (D.S.D. 2011) ("The court finds the defendants' failure to respond or assert timely objections to the discovery requests . . . constitutes sufficient good cause for extending the discovery deadline and the motions deadline."); In re Rail Freight Fuel Surcharge Antitrust Lit., 281 F.R.D. 12, 14-15 (D.C.D.C. 2011) (finding that plaintiff established good cause for reopening discovery to conduct additional depositions where defendant did not produce certain documents until the last day of factual discovery); Baisdan v. CSC-Pa, Inc., 2009 U.S. Dist. Lexis 108786, *4 (S.D. W. Va. 2009) (finding good cause for delay in seeking to amend complaint where "the defendants have refused to produce relevant discovery"); Kia Motors America, Inc. v. Autoworks Dist., 2008 U.S. Dist. Lexis 124836, *14 (D. Minn. 2008) (finding good cause to modify scheduling order and reopen discovery where the defendant misrepresented that no responsive documents existed in a discovery answer and, in rejecting the claim that plaintiff was not diligent, found that "a party may reasonably rely on an opponent's representations in discovery" and that "due diligence cannot require a party to challenge such representations or investigate whether they are

necessary where – as here – such an extension is sought before expiration of a scheduling deadline, although the belated production of documents has routinely been held to satisfy any such burden. See, e.g. Jones v. City of Martinsburg, 2014 U.S. Dist. Lexis 83986, *11 (N.D. W. Va. 2014) (finding that plaintiff's failure to provide expert report within deadline was substantially justified "due to Defendant's delay in providing discovery materials to plaintiff").

### A. Defendants' Claim That the Documents Belatedly Produced By Them Were Not Requested In Discovery By Plaintiff Is False

As they have in other submissions, defendants try to excuse their belated document productions after the Scheduling Order's discovery deadline by claiming that the documents were never requested by plaintiff until the February 2015 depositions of defendants.  According to defendants, such documents were merely provided by defendants "as a professional courtesy."  (See Defendants' Request for Order Granting Unopposed Motions for Summary Judgment, p. 5, fn 6)

---

false"); Nosker v. Gill Bros., 2007 U.S. Dist. Lexis 11885, *7-8 (W.D. Mo. 2007) (finding good cause for extension of deadline to amend the complaint under Rule 16 where defendants did not produce documents until after deadline; defendants' refusal to provide timely discovery *cannot be used against the plaintiffs*"); Stewart v. Coyne Textile Services, 212 F.R.D. 494, 497 (S.D. W. Va. 2003) (finding good cause for amendment of complaint after deadline in scheduling order, court stated that "this Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses")See also St. Augustine High School v. Underwriters at Lloyds,  2010 U.S. Dist Lexis 4441, *10 (D. Md. 2010) (good cause for extending discovery where the defendants "fail[ed] to produce certain relevant documents until after the close of fact discovery"); Johnson v. Wendy's Restaurant, 05-cv-1060 (S.D. Ohio Sept. 22, 2006) (finding good cause to extend discovery deadline where "defendant has been denied a fair opportunity to make full and proper inquiry of plaintiff on deposition" because of "plaintiff's failure to cooperate in the discovery process"); Wasdin v. Cheetah Trans. LLC, 2006 U.S. Dist. Lexis 88728, *6 (M.D. Ga. 2006) (good cause established to extend Scheduling Order deadlines where the defendants "were less than forthcoming at the outset of discovery").

However, this is patently untrue. For instance, in Plaintiff's First Request for the Production of Documents served on Wells Fargo in 2013, plaintiff specifically asked for the following documents:

> 1. "*Any and all* documents in any loan file within Wells Fargo's possession, custody or control *relating to Kline's loans*, including all documents relating to the transfer or assignment of Klines' loans to different owners, holders or servicers."

> 2. "To the extent not covered by request #1, any other documents relating to any of Kline's loans...."

> 16. "Any and all written communications relating to any of the plaintiff's loans."

(See Exhibit 4 to Amicus Brief (Dock. #437), pp. 5, 7)

Wells Fargo does not even attempt to explain how the documents it belatedly produced in March and June 2015 relating to its activities in connection with Mr. Kline's loans were not encompassed within document Requests # 1 and #2 —demanding "any and all documents" in Wells Fargo's possession "relating to Kline's loans." (Exh. 4 to Amicus Br., p. 5)

In the same respect, requests #4 and #5 of Plaintiffs document requests to Wells Fargo demanded:

> 4. Any and all contractual agreements between Wells Fargo, on the one hand, and Merrill Lynch Investors Trust Mortgage Asset-Backed Certificates, Series 2004-WMC5, on the other, relating to (i) the type of services performed by Wells Fargo for any of the plaintiffs' mortgage loans; and/or (ii) the compensation Wells Fargo was entitled to receive for such services.

> 6. To the extent not covered by any previous requests, any and all other contractual agreements in Wells Fargo's possession, custody or control relating to (i) services performed by any third party in connection with the foreclosure action against

11

> Kline; or (ii) the compensation those third-parties were entitled
> to receive for such services.

(Amicus Brief (Dock. #437) Exh. 4, p. 5)   Again, it is impossible for Wells Fargo to

meaningfully dispute that the Merrill Lynch Agreements that it belatedly produced were

not encompassed within these requests.

As for Barclays/HomEq, plaintiff's discovery requests served on Barclays in June

2012 demanded, among other documents:

> 1. Any and all documents in any loan file maintained by HomEq
>    relating to any of the plaintiffs loans.
>
> 2. To the extent not covered by request #1, any other
>    documents relating to any of the plaintiffs' loans....
>
> 13. The account history for each of the remaining plaintiffs
>    showing the date and description of (i) each fee and
>    expense posted into each of the plaintiffs' accounts, (ii)
>    whether or not the fee was charged to plaintiff and (iii)
>    each payment made by plaintiffs.

(See Exhibit 2 to Amicus Brief, pp. 4, 6)  Again, it is impossible to dispute that the

Account and Transaction histories produced by Barclays on March 26, 2015 – after the

discovery deadline in the Scheduling Order and after the deposition of its Rule 30(b)(6)

witness – were not encompassed within the document requests served on it almost three

years earlier.

Moreover, defendants have provided no explanation for their failure to produce

the agreements which governed Barclays/HomEq's relationship with Fidelity and

Rosicki.  While plaintiff has located portions of these documents, he has not had any

opportunity to question defendants' witnesses regarding these HomEq Agreements.

Indeed, plaintiff has significant reason to believe that the defendants may be concealing

other agreements between Barclays/HomEq, Reimer Lorber or Lerner Sampson, on the one hand, and Fidelity and Rosicki, on the other, relating to the outsourcing and legal services provided by these entities in the foreclosures against Mr. Kline and other prospective class members.  While both Reimer Lorber and Lerner Sampson have admitted that they were hired by Rosicki in the foreclosures against Kline, both firms claim that there was no written agreement between them and Rosicki or Fidelity. However, on the morning of the Reimer firm's Rule 30(b)(6) deposition on February 20, 2015, the Reimer firm emailed plaintiff's counsel, stating that it had located "an addendum to a service agreement with Rosicki." (See email dated Feb. 20, 2015 from Timothy Brick annexed as Exh. L to Grob. Decl.)  Despite the fact that there is an "addendum to a service agreement with Rosicki" -- which Reimer Lorber refuses to disclose on the basisof a purported privilege -- the Reimer firm incredibly continues to claim that no such "service agreement with Rosicki" exists.

To determine whether defendants are in fact concealing agreements between themselves and Fidelity or Rosicki, plaintiff served subpoenas on Fidelity and Rosicki on June 24, 2015 seeking all such agreements.   However, on June 30, 2015, counsel for defendants advised Mr. Kline's counsel that they would seek to quash those subpoenas. (See June 30, 2015 letter annexed to Grob. Decl. as Exh. M)

### B. Defendants Claim That Plaintiff Never Requested Extensions of Scheduling Order Deadlines Is False

Defendants contend that plaintiff's communications to the court dated April 10th and May 7, 2015 never requested an extension of the date for summary judgment responses, and that the April 10th communication "says nothing at all about the summary judgment motions." (Dock. #443, p. 5)  Again, this is simply false, as demonstrated by

the April 10th letter:

> plaintiff believes that, at a minimum, it has a right to certain additional disclosures from defendants *before plaintiff is required to respond to defendants' summary judgment motions* or file documents in response to the Scheduling Order. These include: (i) reopening the Rule 30(b)(6) depositions of Wells Fargo, Barclays and MERS with regard to these newly-produced documents; and (ii) a privilege log from MERS pursuant to Rule 26 of the Federal Rules of Civil Procedure identifying the documents that MERS is withholding on the basis of purported privileges.

Grob. Decl. Exh. N, p. 2 (emphasis added)[3]

The defendants also argue that the plaintiff's requests for scheduling extensions are of no effect, because Rule 6 of the Federal Rules of Civil Procedure "requires the submission of a formal motion." (Defendants' Motion to Strike, Dock. #444, p. 5) Yet again, this is completely false.

Indeed, as the Supreme Court said in <u>Lujan v. National Wildlife Fed.</u>, 497 U.S. 871 (1990):

> Rule 6(b) establishes a *clear distinction between "requests" and "motions"* . . . . Rule 6(b)(1) allows a court ("for cause shown" and "in its discretion") to grant a "request" for an extension of time, *whether the request is made "with or without motion or notice," provided* the request is made before the time for filing expires."

Id. at 896, n.5 (emphasis added)  As defendants know, the plaintiff in this case made two such "requests" to the court well before the deadline for responding to their motions for summary judgment. Thus, under the plain language of Rule 6, plaintiff did not need to file a motion to seek such an extension. See <u>Malone v. Greenville Co.</u>, 2008 U.S. Dist. Lexis 33896, *4 (D.S.C. 2008) (emphasis added) ("It is worth noting that Rule 6

---

[3] The May 7, 2015 letter says the same thing. (Grob. Decl. Exh. O)

expressly requires a motion to seek an extension of an already expired deadline, and *expressly does not require a motion to extend an unexpired deadline")*; Thompson v. U.S., 2013 U.S. Dist. Lexis 120084, *3 (D. Nev. 2013) ("It is not required that a non-moving party be given notice prior to the court taking action on a timely request under Rule 6(b)(1)(A)")

### C. Defendants Claim That Plaintiff Delayed Taking Defendants' Depositions Is False

Defendants suggest that plaintiff was somehow dilatory in taking the depositions of defendants in this case. (Defendant's Request For Order (Dock. #443, p. 5, fn 6. However, parties are entitled to and routinely hold off on commencing depositions until other written discovery is completed and documents are produced. Zorzi v. City of Calumet City, 2004 U.S. Dist. Lexis 13924, *8 (N.D. Ill. 2004) ("Plaintiffs were entitled to have all the materials it requested before the depositions so that the materials may be used at the depositions."); State Farm Mutual v. Grafman, 2007 U.S. Dist. Lexis 88277, *19 (E.D.N.Y. 2007) ("As in most cases, the parties to this action seek to gather all pertinent documents before beginning to take depositions"); Nike, Inc. v. Enter Play Sports, Inc., 305 F.R.D. 642, 646 (D. Or. 2015) ("The typical course of discovery is for parties to exchange responsive documents and ESI before taking depositions"); As defendants are well aware, they did not produce the additional disclosure required by this Court's October 1, 2014 Order until January 2015. (See email dated Jan. 6, 2015 annexed to Grob. Decl.as Exh. P) In fact, Wells Fargo, MERS and Barclays/HomEq expressly conveyed their understanding that depositions would await the completion of other discovery. See Dec. 6, 2013 email from MERS, Wells Fargo and Barclays'

attorney annexed to Grob. Decl. as Exh. Q ("I assume you will not want to take depositions until all written discovery has been completed")

Defendants' suggestion that plaintiff avoided setting deposition dates for defendants until the end of discovery is also baseless. Once plaintiff received all written discovery, plaintiff promptly contacted the defendants requesting deposition dates. The claim that defendants were seeking earlier dates for their depositions is completely belied by the response by counsel for MERS, Wells Fargo and Barclays to plaintiff's counsel request for deposition dates: "I will be in India again this year from February 19 to March 8. Can we look at some dates after I return?" (Grob. Reply Decl. Exh. R)

### D. Defendants' False Claim That The Parties Agreed To New Scheduling Order Deadlines

Finally, defendants Wells Fargo, Barclays/HomEq and MERS contend that they had entered into an agreement with plaintiff under which he would submit his papers in opposition to their summary judgment motions by July 25, 2015, citing to a supposedly confirmatory email from defendants' counsel as proof. See Exhibit 2 to Defendants Request for Summary Judgment (Dock. #443), p. 3 ("I am willing to accept your proposed date of July 25 for responding to the summary judgment motions.") Wholly apart from the fact that the defendant's attempt to use its' counsel's email to prove that plaintiff communicated such a proposal constitutes rank hearsay, the email itself demonstrates that defendants *rejected* most of the extended deadlines offered by plaintiff to present to the court. (See email, Dock. #443, Exh. 2 (in which defendants' counsel, "after consultation with clients", provides their own proposed date for filing of the motion for class certification and states that "as previously stated, we are not willing to

consensually extend the now-passed deadline for formally designating experts").

Under these circumstances, there was no agreement of any type. It is black-letter law that, "[u]nless the acceptance [of an offer] is unconditional and without variance from the offer it is of no legal effect as an acceptance and operates as a rejection and a counteroffer." Peerless Casualty Co. v. Housing Authority of Hazelhurst, 228 F.2d 376, 378 (5th Cir. 1955); Learning Works v. The Learning Annex, 830 F.2d 541, 544 (4th Cir. 1987) ("If a purported acceptance varies from the terms of the offer, then it does not operate as an acceptance, but rather as a rejection of the offer and a counteroffer."); Restatement, Contracts (Second) §59 ("an acceptance must comply exactly with the requirements of the offer, omitting nothing from the promise or performance requested"); Williston on Contracts §77 (1970) ("[a] conditional acceptance is in effect a comment that the offeree is willing to enter into a bargain differing in some respect from that proposed in the original offer. The conditional acceptance is therefore itself a counteroffer and rejects the original offer so that thereafter even an unqualified acceptance of that offer will not form a contract"); Calamari & Perillo, Contracts § 32 ("the common law rule is that if the purported acceptance varies from the terms of the offer even as to trivial detail, it operates as a counter-offer and thereby a rejection of the offer"). Here, defendants repeatedly refused to stipulate to reasonable extensions, and instead resorted to the rash of motions which are now before the court.

### E. Plaintiff Is Entitled To Additional Discovery Regarding The Documents Produced Or Located After the June 2015 Depositions

The record demonstrates that the defendants have repeatedly violated their discovery obligations in this case, which are impeding plaintiff's ability to complete discovery to the present day.

### 1. <u>Wells Fargo</u>

After the June 2015 depositions – which themselves resulted from defendants

belated production of additional documents -- Wells Fargo produced yet more documents

relating to its activities in connection with Mr. Kline's loans.   Plaintiff has not had any

opportunity to question Wells Fargo or the other defendants about these new documents,

which appear to demonstrate that – contrary to the representations made by defendants in

the state foreclosure actions -- MERS was **not** the owner and holder of the first note and

mortgage at the time the 2005 foreclosure was instituted, nor was it the owner or holder

of the second mortgage as falsely represented in the 2007 foreclosure.

Each of these facts are highly relevant to Mr. Kline's claim that the defendants

had no right to recover attorney's fees and expenses from Mr. Kline because they had no

legal standing.  Plaintiffs have a right to question Wells Fargo about these belatedly-

produced documents. <u>Painter-Payne v. Vesta West Bay, LLC</u>, 2014 U.S. Dist. Lexis

55020, *19 ( S.D. Ohio 2014) (reopening discovery for 60 days to allow plaintiff to

conduct "such discovery, including depositions, as they deem appropriate in connection

with Defendant's belated production"); <u>Leach v. Baylor College of Medicine</u>, 2008 U.S.

Dist. Lexis 74368 (S.D. Tex. 2008) (reopening depositions where documents "had been

requested but neither identified nor produced prior to the deposition"); <u>Aboujaoude v.

Poinciana Development Co. II</u>, 2007 WL 3343076 at *3-4 (S.D. Fla. 2007) (granting

plaintiff's motion to reopen defendant's deposition for questioning about documents that

defendant had control over but failed to produce in response to a discovery request); <u>In re

Omnicom Group, Inc. Securities Litigation</u>, 2007 WL 2376170 at *24 (S.D.N.Y. 2007)

(granting plaintiff's motion to reopen deposition of nonparty witness for questioning

about documents that defendants had failed to produce); <u>Zorzi</u>, 2004 U.S. Dist. Lexis 13294, *8 (ordering reopening of deposition at defendant's expense based on failure to timely produce discovery materials; "Plaintiffs, on multiple occasions, sought full compliance from Defendants; and Defendants' failure to comply helped to prevent Plaintiffs from obtaining these materials before the close of discovery.")

### 2. **Barclays**

At the further deposition of Barclays' Rule 30(b)(6) witness on June 10, 2015, deponent Jacklyn Cartmill demonstrated that she was completely ill-equipped to testify about the escrow transactions in Mr. Kline's disclosed in the documents belatedly produced by Barclays after the first deposition of its corporate representative. Ms. Cartmill repeatedly testified that she did not know what the two "Fee Adjustments" deducted from the escrow balance in Mr. Kline's account after payoff were comprised of. She also testified that she never worked in Barclays Escrow Department, had never seen corporate advances reduced from an Escrow Balance after payoff, and did not know whether this action was consistent with HomEq's escrow policy. (See, e.g., Cartmill Deposition, Grob. Decl. Exh. B, pp. 53,55, 82-83; p. 76 ("why they did that with the escrow account, I don't know. I can't answer that."); p. 80-81 ("I'm not sure why this -- the escrow was used in this manner. I can't answer that.") Ms. Cartmill admitted that she had no idea whether charging Mr. Kline for these Corporate Advances through "fee adjustments" to his Escrow Balance after payoff were consistent with HomEq policy:

> Q And I'm asking you, you don't know whether
>  this was consistent with home HomEq practice?
> A I do not know.
> Q You don't know whether it was consistent with the loan
> documents?

MR. POPE: Objection. Go ahead.
B.  I do not know.
Q And you don't know whether it was consistent with the
law?
MR. POPE: Objection. Go ahead.
 A I don't know.

(Grob. Decl. Exh. B pp. 82-83)

Ms. Cartmill's inability to testify about the transactions in the newly-disclosed

documents made her a completely inadequate Rule 30(b)(6) representative. It is well-

settled that "if a deponent is unable to testify about certain relevant areas of inquiry the

business entity must designate additional parties to satisfy a Rule 30(b)(6) notice."

Smithkline Beechman Corp. et al v. Apotex Corp. et al, 2000 U.S. Dist. LEXIS 667, at

*25 (N.D. Ill. 2000). See also Beloit Liquidating Trust v. Century Indem. Co., 2003 U.S.

Dist. LEXIS 2082, at *6 (N.D. Ill. 2003) (a corporate representative must "adequately

testify not only on matters known by the deponent, but also on subjects that the entity

should reasonably know.")  Courts frequently require parties to redesignate a corporate

representative to testify where a witness initially chosen was unable or unprepared to

testify. See, e.g., Id. at *6;  Smithkline, 2000 U.S. Dist. LEXIS 667, at *25.

Moreover, plaintiff has also recently uncovered other documents which

Barclays/HomEq failed to produce during discovery, including outsourcing agreements

between HomEq and Fidelity and HomEq and Rosicki relating to services provided in

foreclosure and bankruptcy, including on Mr. Kline's loans.  The evidence suggests that

defendants may be concealing other highly-probative agreements between defendants and

other parties which would prove the claims of improper fee-splitting made by plaintiff

and the prospective class.  Plaintiffs have a right to question Barclays about these

documents, including why defendants failed to produce them. (See cases cited on pp. 18-19 *supra*)

### 3. MERS Continues To Refuse To Identify Or Disclose

On March 26, 2015, MERS produced 1,326 pages of additional documents relating to its policies and procedures for loans on the MERS System, including policies relating to foreclosure. In addition, in a four-page cover letter, MERS indicated that it was withholding other documents on the basis of the attorney-client privilege, the bank examination privilege, and privileges which purportedly exist under various sections of the Code of Federal Regulations. Despite repeated requests, MERS has refused to identify these documents or provide a Privilege Log as required by the Federal Rules. (See letter from MERS' attorney dated June 2, 2015 annexed to Grob. Decl. as Exh. S)

Rule 26 of the Federal Rules of Civil Procedure demonstrates that a party cannot assert that documents are privileged without producing a privilege log:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The requirements imposed by Rule 26(b)(5) exist irrespective of the type of privilege asserted, and have been regularly invoked in cases in which documents are purportedly protected by the bank examination privilege. See Marketing Investors Corp. v. New Millennium Bank, 2012 U.S. Dist. Lexis 52998, *23( N.D. Tex. 2012) (requiring defendant to identify all documents in its possession "that it contends may be subject to

the FDIC's bank examination privilege", and to "compile a privilege log in conformity with Rule 26(b)(5) that identifies those specific documents")  Parties who fail to provide a privilege log are routinely held to have waived the privilege, and required to produce the allegedly-privileged documents.  Brown v. Tellermate Holdings Ltd., 2013 U.S. Dist. Lexis 48278, *6 (S.D. Ohio 2013) ("the failure to provide the [privilege] log in a timely manner waives the privilege.")  Itskin v. Gibson, 2011 U.S. Dist. Lexis 128688, *12 (S.D. Ohio Nov. 7, 2011) ("as Plaintiff has failed to provide a privilege log or present specific privilege contentions relating to any particular documents, the Court finds Plaintiff has failed to carry his burden of establishing privilege as to any specific item or document.").  MERS should be required to provide a privilege log identifying the documents it claims are privileged.

## CONCLUSION

Having blatantly disregarded their disclosure obligations under the Scheduling Order, defendants now attempt to capitalize on their own misconduct by seeking what amounts to a series of dispositive judgments.  As the Seventh Circuit stated in Simplex, Inc. v. Diversified Energy Systems, 847 F.2d 1290, _ (7th Cir. 1987):

> Our rules of civil procedure are designed to facilitate the complete disclosure of all relevant information before trial in order to eliminate unfair surprise and ultimately promote accurate and just decisions. [Defendant's] conduct smacks of contempt for these goals.  Although temptations may exist, a litigant cannot expect to profit from its ill-gotten gains.

Based on all of the above, Plaintiff again respectfully requests an amended Scheduling Order:

(1) reopening discovery (a) to allow plaintiff (i) to question defendants about documents which were produced by defendants or uncovered by plaintiff after defendants Rule 30(b)(6) depositions and (ii) to determine why defendants failed to produce the Fidelity and Rosicki Agreements during discovery and whether they have failed to produce other relevant agreements within their possession, custody or control; (b) to require MERS to produce a privilege log of the documents it is withholding on the basis of privilege

(2) providing amended deadlines for opposing defendants' motions for summary judgment, moving for class certification, identifying expert witnesses and amending the complaint.

Respectfully,

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiff*

Dated: August 14, 2015