# Exhibit A

\_\_Confidential Testimony/Attorneys' Eyes Only\_\_

1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION AT DAYTON

\* \* \*

EUGENE KLINE, et al.,

    Plaintiffs,

    vs.                CASE NO. 3:08-cv-408

MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, et al.,

    Defendants.

\* \* \*

    Deposition of DENNIS REIMER, Witness herein, called by the Plaintiffs for cross-examination pursuant to the Rules of Civil Procedure, taken before me, Stacey M. Mortsolf, a Notary Public in and for the State of Ohio, at the offices of Ulmer & Berne, 600 Vine Street, Suite 2800, Cincinnati, Ohio, on Friday, February 20, 2015, at 10:16 a.m.

\* \* \*

Confidential Testimony/Attorneys' Eyes Only

68

11:30:18  1           MR. GROBMAN:  -- to the first and
11:30:20  2   second foreclosures, and it relates to the
11:30:23  3   services provided in the first and second
11:30:27  4   foreclosure.
11:30:27  5           MS. BROWN:  Right.  The Reimer --
11:30:29  6           MR. GROBMAN:  And if an outsourcer --
11:30:31  7   if an outsourcer was involved in that foreclosure,
11:30:33  8   it directly relates.  You've made --
11:30:36  9           MS. BROWN:  It's the services
11:30:37 10   performed by Reimer.
11:30:37 11           MR. GROBMAN:  -- your objection.
11:30:38 12   Yes.
11:30:39 13           MS. BROWN:  Answer to the best of
11:30:40 14   your recollection.
11:30:43 15           THE WITNESS:  Repeat the question.
11:30:47 16   BY MR. GROBMAN:
11:31:00 17       Q.  Were any outsourcers involved in
11:31:04 18   the services with regard to the services
11:31:09 19   provided by Reimer with regard to the Kline's
11:31:14 20   loans in the 2005 foreclosure?
11:31:16 21       A.  Yes.
11:31:17 22       Q.  Who were the outsourcers?
11:31:19 23       A.  Rosicki.
11:31:23 24       Q.  And how was Rosicki involved?
11:31:30 25       A.  Rosicki is the outsourcer, the one

Confidential Testimony/Attorneys' Eyes Only

69

| | | |
|---|---|---|
| 11:31:33 | 1 | that sent us the foreclosure. |
| 11:31:48 | 2 | Q. Was there an agreement with |
| 11:31:49 | 3 | Rosicki? |
| 11:31:50 | 4 | A. If there was -- I don't recall if |
| 11:31:53 | 5 | there was one or not. |
| 11:31:54 | 6 | Q. You don't recall whether you had |
| 11:31:56 | 7 | an agreement with Rosicki? |
| 11:31:57 | 8 | A. I don't recall. |
| 11:31:58 | 9 | Q. How did they send you the -- why |
| 11:32:04 | 10 | did they send this to you? |
| 11:32:06 | 11 | A. We had a relationship with them |
| 11:32:11 | 12 | where they would send us cases. |
| 11:32:15 | 13 | Q. And would they send you cases for |
| 11:32:21 | 14 | particular clients? |
| 11:32:23 | 15 | A. I think at one time they sent us |
| 11:32:26 | 16 | HomEq cases. At another time they sent us from |
| 11:32:31 | 17 | another client. |
| 11:32:31 | 18 | Q. And who was the other client? |
| 11:32:33 | 19 | MS. BROWN: Objection. |
| 11:32:33 | 20 | THE WITNESS: Would be Key Bank. |
| 11:32:35 | 21 | BY MR. GROBMAN: |
| 11:32:38 | 22 | Q. And how would you pay Rosicki? |
| 11:32:40 | 23 | Would you pay Rosicki? |
| 11:32:41 | 24 | A. Yes. |
| 11:32:42 | 25 | Q. How would you pay them? |

Confidential Testimony/Attorneys' Eyes Only

70

| | | |
|---|---|---|
| 11:32:43 | 1 | A. They would send us a bill, and we |
| 11:32:45 | 2 | would pay that bill. |
| 11:32:46 | 3 | Q. And what services did they provide |
| 11:32:52 | 4 | in connection with these -- |
| 11:32:54 | 5 | A. They would package the |
| 11:32:57 | 6 | foreclosure. They'd send it to us. They would |
| 11:33:00 | 7 | monitor the foreclosure and communicate to us |
| 11:33:03 | 8 | on behalf of the servicer. |
| 11:33:08 | 9 | Q. When you say they'd communicate on |
| 11:33:11 | 10 | behalf of the servicer, what does that mean? |
| 11:33:13 | 11 | A. Well, if we had an inquiry and |
| 11:33:17 | 12 | we'd present it to Rosicki, Rosicki would |
| 11:33:20 | 13 | present it to the servicer, who in turn |
| 11:33:23 | 14 | would -- and they'd notify us. |
| 11:33:26 | 15 | Q. So Rosicki would communicate with |
| 11:33:29 | 16 | the servicer? |
| 11:33:30 | 17 | A. Yeah. |
| 11:33:31 | 18 | Q. And is that the way it worked on |
| 11:33:42 | 19 | cases involving HomEq? |
| 11:33:44 | 20 | A. There was a time when they stopped |
| 11:33:48 | 21 | doing -- stopped bundling the cases to us, but |
| 11:33:53 | 22 | that's how it would work with HomEq at that |
| 11:33:58 | 23 | time. |
| 11:33:59 | 24 | Q. And was any outsourcer involved |
| 11:34:05 | 25 | with regard to the services you performed |

Confidential Testimony/Attorneys' Eyes Only

71

```
11:34:08   1  relating to the 2007 foreclosure?
11:34:10   2          A.    I thought we were -- yes.  I
11:34:16   3  didn't know about the 2005 foreclosure.  I
11:34:18   4  thought we were talking 2007 foreclosure.
11:34:21   5          Q.    Well, let's go back to it just to
11:34:23   6  clear it up.  Was there -- so you were just
11:34:27   7  talking about the 2007 foreclosure?
11:34:28   8          A.    Yes.
11:34:28   9          Q.    Okay.  What about the 2005
11:34:31  10  foreclosure?
11:34:31  11          A.    I don't know.  I did not review
11:34:32  12  that file.
11:34:37  13          Q.    And why didn't you review that?
11:34:39  14          A.    Because that wasn't the subject
11:34:40  15  matter of this deposition to my understanding.
11:34:42  16          Q.    What -- it says the services -- if
11:34:51  17  you look at Reimer A again, it says the
11:34:55  18  services performed by Reimer Lorber and the
11:34:57  19  other defendants in connection with Eugene
11:35:00  20  Kline's first and second mortgage loans and the
11:35:02  21  compensation received therefor.  Is there any
11:35:06  22  limitation there?
11:35:08  23          A.    The limitation as I understand
11:35:09  24  it -- and I hate to get into legal arguments
11:35:11  25  with you because I'm not handling the legal
```

Confidential Testimony/Attorneys' Eyes Only

258

| | | |
|---|---|---|
| 17:06:15 | 1 | (Thereupon, an off-the-record |
| 17:06:32 | 2 | discussion was had.) |
| 17:06:32 | 3 | BY MR. GROBMAN: |
| 17:06:33 | 4 | Q. 303, have you seen this document |
| 17:06:52 | 5 | before? |
| 17:06:52 | 6 | A. Yes. |
| 17:06:52 | 7 | Q. Can you tell me what it is? |
| 17:06:54 | 8 | A. That's the bill from Rosicki. |
| 17:06:57 | 9 | Q. And so if I understand it |
| 17:06:59 | 10 | correctly, Rosicki bills you? |
| 17:07:06 | 11 | A. Yes. |
| 17:07:06 | 12 | Q. And what are they billing you here |
| 17:07:21 | 13 | for? What's an outsource management fee? |
| 17:07:23 | 14 | A. What they do, outsource managing |
| 17:07:26 | 15 | fee is the client gives them certain |
| 17:07:28 | 16 | responsibilities with regard to our cases. We |
| 17:07:31 | 17 | have to correspond with them. Sometimes it's |
| 17:07:34 | 18 | correspondence. In this case I know for a fact |
| 17:07:36 | 19 | there were billings that we had to go through |
| 17:07:38 | 20 | them on, and that's what their management fee |
| 17:07:41 | 21 | is. |
| 17:07:41 | 22 | Q. And is this the regular outsource |
| 17:07:47 | 23 | management fee that they charge? |
| 17:07:48 | 24 | A. I'm pretty sure they charge this |
| 17:07:51 | 25 | in every case, yes. |

Confidential Testimony/Attorneys' Eyes Only

262

| | | |
|---|---|---|
| 17:11:40 | 1 | usually based on -- this is all across the |
| 17:11:42 | 2 | board here, is usually you're following the |
| 17:11:44 | 3 | Fannie Mae guidelines. |
| 17:11:45 | 4 | Q. Wouldn't it be a little unusual to |
| 17:11:48 | 5 | have a relationship of this type with the |
| 17:11:52 | 6 | Rosicki firm and not have a written agreement |
| 17:11:59 | 7 | with them? |
| 17:12:00 | 8 | MS. BROWN: Objection. |
| 17:12:03 | 9 | THE WITNESS: I don't have a |
| 17:12:04 | 10 | relationship with the Rosicki firm. The |
| 17:12:06 | 11 | relationship is with HomEq. They're the ones that |
| 17:12:09 | 12 | are going to pay my bill, not Rosicki. |
| 17:12:12 | 13 | BY MR. GROBMAN: |
| 17:12:12 | 14 | Q. So you had no agreement of any |
| 17:12:15 | 15 | type with Rosicki? |
| 17:12:16 | 16 | MS. BROWN: Objection. |
| 17:12:16 | 17 | THE WITNESS: The only thing we paid |
| 17:12:18 | 18 | Rosicki was $200 and that's what they charged us. |
| 17:12:21 | 19 | We had no fee arrangement with Rosicki whatsoever, |
| 17:12:25 | 20 | period. None. |
| 17:12:36 | 21 | BY MR. GROBMAN: |
| 17:12:37 | 22 | Q. It offends me when you |
| 17:12:38 | 23 | mispronounce that. |
| 17:12:39 | 24 | A. That would offend me, too. |
| 17:12:44 | 25 | Q. Not that I know the correct way to |