IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| EUGENE KLINE, et al., )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>)<br>MORTGAGE ELECTRONIC SECURITY )<br>SYSTEMS, et al., )<br>)<br>Defendants. )<br>) | CASE NO. 3:08cv408<br><br>JUDGE WALTER HERBERT RICE |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS BASED ON WAIVER OF PRIVILEGE**

Plaintiff Eugene Kline submits this memorandum of law in support of his motion for an order compelling defendant Reimer, Lorber & Arnovitz ("Reimer") to produce documents relating to its relationship with outsourcer Rosicki, Rosicki & Associates ("Rosicki") which have been withheld by Reimer Lorber on the basis of a purported privilege. As shown below, Reimer has waived any such privilege by making characterizations relating to such privileged documents and quoting selectively from them in documents filed with this court, including the Reply in Support of the Motion to Strike And Dismiss the Class Allegations filed on August 26, 2015.

Among the claims made in this action is that defendants violated the statutes and professional rules of all 50 states by charging plaintiff and other prospective class members for purported legal fees were secretly shared with outsourcers who were not attorneys, or were not licensed to practice law in the relevant jurisdiction. At the deposition of the Reimer firm held in February 2015, deponent Dennis Reimer admitted

1

that Rosicki was an outsourcer which referred bundles of cases to the Reimer firm for different clients like HomEq, including the 2007 foreclosure involving Mr. Kline. (Reimer Dep., pp. 68-71, annexed to the Declaration of Paul Grobman ("Grob. Decl.") dated August 27, 2015 as Exh. A) In addition, Mr. Reimer also admitted that it paid $200.00 for something called an "Outsource Management Fee" to Rosicki on every case that Rosicki referred to the Reimer firm, including the foreclosure action brought against Mr. Kline in 2007. (Grob. Decl. Exh. A, pp. 258, 262)

However, until June 2015, defendant Reimer repeatedly denied that any of the legal fees charged by the Reimer firm were passed on to Mr. Kline. (See Declaration of Dennis Reimer in support of Motion for Summary Judgment, Dock. #414, Exh. Q, ¶3 ("Nor were the Reimer firm's attorney's fees passed on to Mr. Kline") However, as shown in other recent submissions by plaintiff to the court, documents produced by Barclays after the discovery deadline revealed the existence of a previously concealed Escrow Balance in favor of Mr. Kline after he had paid off the loan, as well as two previously undisclosed post-payoff "Fee Adjustments" which reduced the Escrow Balance owed to him from $412.96 down to zero. (Id. at line 12/11/2007, 12/24/2007) The documents also showed that the defendants had added legal fees paid to the Reimer firm to the amounts purportedly owed by Mr. Kline which appeared to have been taken out of the Escrow Balance.

In Reimer's Reply in Support of Summary Judgment filed on July 15, 2015 (Dock. #435), Reimer Lorber finally acknowledged that the previously concealed records and new testimony indicated that Mr. Kline was likely charged for the legal fees paid to the Reimer firm, but now claimed that it was completely unaware of this. See Dock.

2

#435, p. 5 ("The Reimer Firm has no knowledge or control over HomEq's internal application or transfer of funds with respect to the payoff of the mortgage loan when Kline sold his home"); p. 6 (Barclays Rule 30(b)(6) witness "described how Plaintiff's escrow funds were applied to outstanding corporate advances. Her explanation makes clear that this is an internal issue and that the Reimer Firm has no control over how its clients transfer funds."); p. 6 ("Whether HomEq 'redirected' funds from the escrow account to pay its outstanding corporate advances, has no bearing on whether the Reimer Firm sought to collect or collected attorney fees").

In addition, the Reimer firm and the other defendants have also repeatedly denied that there were any written contracts between either Rosicki and Barclays/HomEq or between Rosicki and the Reimer firm relating to Rosicki's outsourcing services or its compensation.  (See Reimer Reply In Support of Joint Motion to Strike dated Aug. 26, 2015, (Dock. #447), pp. 7-8 (representing that Reimer has not located an agreement with Rosicki, "nor has it confirmed that such an agreement even exists") However, as Mr. Kline has advised the court in recent court filings, plaintiff has now uncovered agreements between Barclays/HomEq and Rosicki and between Barclays and Fidelity relating to the fees at issue which were among a mountain of data and documents produced in another federal action, but which Barclays failed to produce in this action.[1]

---

[1] In its Reply Brief in Further Support of its Motion for Summary Judgment and to Strike Class Allegations filed on August 27, 2015, (Dock. #449), Barclays argues that "the requested third-party agreements [were] not available in the Barclays archive" because "the Plaintiff's initial discovery requests were not propounded until July of 2012, two years after the HomEq divestiture by Barclays." (Dock. #449, pp. 6-7)   However, this Court rejected an identical argument in its October 1, 2014 decision on plaintiff's motion to compel:

3

Moreover, plaintiff also has substantial reason to believe that, contrary to the representations made by defendants, there are other written agreements demonstrating fee-splitting arrangements relating to the legal services for which Mr. Kline and other prospective class members were charged, including (i) agreements between Barclays, Three Arch Trustees, Fidelity and/or other outsourcers; (ii) fee-splitting agreements between the Reimer firm, Rosicki, Fidelity and/or other outsourcers.  In an effort to uncover these documents, on August 11, 2015, Mr. Kline filed a motion to intervene in Mazzei v. Money Store, 01cv5694 (S.D.N.Y. 2001), along with a motion to remove the limitations on the use of any agreements produced in the Mazzei litigation between (i) Barclays and Fidelity; (ii) Barclays and Rosicki; (iii) Reimer Lorber and Fidelity; and/or (iv) Lerner Sampson and Fidelity.  The HomEq defendants in Mazzei have opposed the motion, which is currently pending.

In this case, the Reimer firm advised plaintiff on the morning of the Reimer firm's

---

> [B]y its own admission, Barclays was in possession of this database at the commencement of this litigation because it owned HomEq at the time Plaintiffs filed this lawsuit. One and a half years after the Complaint was filed, Barclays sold HomEq, divesting itself of possession of the loan database that it needed to cooperate in discovery. The Court cannot conclude that this is an acceptable reason for objecting to a party's interrogatory on the basis that the interrogatory imposes an undue burden, because the burden was entirely of Barclays' own making. The objection is particularly unfounded because the sale of HomEq took place long after this litigation had already commenced, when Barclays was fully on notice of the claims against it, and presumably aware of what documents and information in its possession might be required to comply with discovery requests.

Kline, 2014 U.S. Dist. Lexis 141027, *40 (S.D. Ohio 2014)

Rule 30(b)(6) deposition on February 20, 2015 that it had located "an addendum to a service agreement with Rosicki." ("the Rosicki Addendum") (See email dated Feb. 20, 2015 from Timothy Brick annexed as Exh. B to Grob. Decl.)   The Reimer firm has refused to disclose the Rosicki Addendum on the basis of the attorney-client privilege, and continues to claim that it has been unable to locate the original agreement with Rosicki or even "confirm[] that such an agreement even exists."  (Reimer Reply In Support of Joint Motion to Strike dated Aug. 26, 2015, (Dock. #447), p. 8)

On August 26, 2015, Reimer filed a Reply Brief In Further Support of its Joint Motion to Strike and Dismiss the Class Allegations. (Dock. #447)  In that brief, the Reimer firm argues that there may not have been an original agreement with Rosicki which the Rosicki Addendum it is withholding amends, noting that the "Addendum is signed by a representative of the Reimer Firm, but there is no counter-signature by the Rosicki Firm." (Dock. #447, p. 6)  Moreover, despite the assertion of privilege, the Reimer firm then goes on to quote specifically from the Rosicki Addendum in support of its contention that no previous agreement may have existed:

> The Addendum specifically states, "In the event an Agreement has not been entered into between Rosicki and the Firm, this Addendum will take full force and effect." Thus, it is possible that an earlier Agreement has not been entered into.

(Reimer Lorber Mem., Dock. #447, p. 7, fn. 3)

### ARGUMENT

### THE REIMER FIRM HAS WAIVED THE ATTORNEY CLIENT PRIVILEGE WITH RESPECT TO AGREEMENTS WITH ROSICKI IN SELECTIVELY QUOTING FROM THE ROSICKI ADDENDUM

In this case, the Reimer firm has refused to disclose communications between it and Rosicki – including the Rosicki Addendum – claiming that they are subject to the attorney-client privilege.  However, in its August 26th filing with this court, Reimer not only relied on the Rosicki Addendum in support of its position that an agreement with Rosicki might not have existed, but specifically quoted from a portion of the Rosicki Addendum in an attempt to convince the court of that point.

It is well-settled that "both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties."  New Phoenix Sunrise Corp. v. Comm. Internal Rev., 2010 U.S. App. Lexis 23909, *26 (6th Cir. 2010) (unpublished) The "privilege cannot at once be sued as a shield and a sword", Ross v. City of Memphis, 423 F.3d 596, 604 (6th Cir. 2005), and waiver "protect[s] against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."  Tennenbaum v Deloitte & Touche, 77 F.3d 337, 340-41 (9th Cir. 1996); Quark, Inc. v. Harley, 1998 U.S. App. Lexis 3864, *8 (10th Cir. 1998) ("the attorney-client and work product protections are waived by selective disclosure"); Frontier Ref. Inc. v. Gorman-Rupp Co., 1998 WL 58837, at *2 (10th Cir. 1998) (unpublished) ("[A] litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.")  Reitz v. City of Mt. Juliet, 680 F.Supp.2d 888, 894 (M.D. Tenn. 2010) (defendants waived the attorney-

6

client privilege and work product protection by "making tactical use of [allegedly protected information] in litigation.")

In this case, after asserting that communications between Reimer and Rosicki were privileged, the Reimer firm has now filed a brief which selectively quotes from a portion of the one of the allegedly-privileged documents in support of its position. Because "litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case", In re Gregory Lott, 424 F.3d 446, 454 (6th Cir. 2005), Reimer has waived the privilege by selectively quoting from the Rosicki Addendum in a brief filed with the court.  Having "injected" the contents of the purportedly privileged communication "into [the] litigation [] by making the content of communications a factual basis of a claim or defense", Reimer cannot now use the privilege "as a shield to prevent either testing of the claim or, if some privileged communications have been revealed, amplification or impeachment of the material." Ross, 423 F.3d at 605, n. 5.

Moreover, the waiver extends not only to the Rosicki Addendum itself, but to all other allegedly privileged documents relating to communications between Reimer and Rosicki on the privilege log.   As the Sixth Circuit stated in rejecting the concept that a party can "selectively waive" the attorney-client privilege:

> [A]ny form of selective waiver . . . transforms the attorney-client privilege into merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage.  Once the privacy for the sake of which the privilege was created is gone by the client's own consent, the privilege does not remain in such circumstances for the mere sake of giving the client an additional weapon to use or not at his choice. . .

7

> The decision . . . to disclose otherwise confidential information . . . is a tactical one made by the client and his or her attorney. All litigation-related tactical decisions have an upside and a downside. By refusing the doctrine of selective waiver, the Court agrees with the First Circuit that the general principal that disclosure normally negates the privilege is worth maintaining.

<u>In re Columbia/HCA Healthcare Corp. Billing Practices Lit.</u>, 293 F.3d 289, 304 (6th Cir. 2002); see also <u>In re Sealed Case</u>, 676 F.2d 793 (D.C. Cir. 1982) (voluntary disclosure of privileged document to third party waives the privilege not only for document but "all the communications relating to the same subject matter").

## CONCLUSION

For each of these reasons, plaintiff respectfully submits that Reimer Lorber be ordered to produce the Rosicki Addendum as well as other documents involving Rosicki which it has withheld on the basis of privilege.

                /s/ Paul Grobman
                Paul Grobman (Pro Hac Vice)
                555 Fifth Avenue, 17th floor
                New York, New York 10017
                T. 212-983-5880
                F. 212-682-7060
                      *Counsel for Plaintiff*