IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al.,

      Plaintiffs,

      v.

MORTGAGE ELECTRONIC
SECURITY SYSTEMS, et al.,

      Defendants.

:

:

:

:

Case No. 3:08-cv-408

JUDGE WALTER H. RICE

---

OMNIBUS DECISION AND ENTRY OVERRULING PLAINTIFF'S FILINGS
(DOC. #426, #431, & #445), CONSTRUED AS MOTIONS UNDER
RULE 56(d)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE;
OVERRULING THE MOTIONS TO STRIKE (DOC. #428 & 436) FILED
BY DEFENDANT LERNER, SAMPSON & ROTHFUSS; OVERRULING
THE MOTION TO STRIKE (DOC. #429) FILED BY DEFENDANT
REIMER, ARNOVITZ, CHERNEK & JEFFREY CO., L.P.A.; OVERRULING
THE MOTION FOR [AN] ORDER GRANTING UNOPPOSED MOTIONS
FOR SUMMARY JUDGMENT (DOC. #443) AND SUSTAINING THE
MOTION TO COMPEL PLAINTIFF KLINE'S DISCOVERY RESPONSES
RELATED TO DAMAGES (DOC. #430) FILED BY DEFENDANTS
WELLS FARGO BANK, N.A. AND BARCLAYS CAPITAL REAL ESTATE
INC.; SUSTAINING DEFENDANTS' JOINT MOTION TO STRIKE AND
DISMISS CLASS ALLEGATIONS FOR FAILURE TO FILE CLASS
CERTIFICATION [MOTION] (DOC. #444); ORDERING ALL CLASS
ALLEGATIONS TO BE STRICKEN FROM THE AMENDED COMPLAINT
(DOC. #157) AND DISMISSING ALL CLASS CLAIMS THEREIN WITH
PREJUDICE.  WITHIN TWENTY-ONE (21) DAYS FROM DATE,
PLAINTIFF IS ORDERED TO FILE A RESPONSE TO DEFENDANTS'
PENDING MOTIONS FOR SUMMARY JUDGMENT (DOC. #414, 416,
417, 418, & 419) AND, IF HIS CLAIMS SURVIVE SUMMARY
JUDGMENT, TO PROVIDE THE DISCLOSURES RELATED TO
DAMAGES AS STATED HEREIN; ORDER TO THE PARTIES
REGARDING THE BRIEFING ON DEFENDANTS' MOTIONS IN LIMINE
(DOC. #456, #457, #458, #459, #460, & #461)

A number of motions are pending before the Court. For the reasons stated herein, the Court rules as follows:

The Court defers ruling on Defendants' Motions for Summary Judgment (Doc. #414, 416, 417, 418, & 419) until they are fully briefed. Plaintiff Eugene Kline ("Plaintiff" or "Kline") has twenty-one days from date to file a Response in Opposition, and Defendants have until fourteen days thereafter to file Reply Briefs.

Plaintiff's Letter Briefs of April 10, 2015, and May 7, 2015 (Doc. #426), the "Memo in Opposition to Request for Default Judgment on [the Law Firm Defendants'] Motions for Summary Judgment" (Doc. #431), and the Memorandum in Opposition directed to Motions for Summary Judgment and to Strike Class Allegations (Doc. #445), are construed as motions for additional discovery under Rule 56(d)(2) of the Federal Rules of Civil Procedure and are OVERRULED.

The Motions to Strike (Doc. #428 & #436) filed by Defendant Lerner, Sampson & Rothfuss ("LSR") and the Motion to Strike (Doc. #429) filed by Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("RACJ") (collectively, the "Law Firm Defendants), which are directed to the aforementioned filings by Plaintiff, are OVERRULED.

The Motion captioned "Request for [an] Order Granting Unopposed Motions for Summary Judgment" (Doc. #443) filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Barclays Capital Real Estate Inc. ("Barclays") is OVERRULED.

The Motion to Compel Plaintiff Kline's Discovery Responses Related to Damages (Doc. #430) filed by Wells Fargo and Barclays is SUSTAINED. Plaintiff is

2

ORDERED to comply with Rule 26(a)(1)(A)(iii) by disclosing, by affidavit with attached exhibits:  1) the categories of damages he seeks; 2) the amounts and computations he employed to arrive at the amounts he seeks; 3) the documents, or the Bates stamp numbers of the documents he has previously disclosed, on which the damages calculations are based.  These disclosures are to be filed only if Plaintiff's claims survive the pending Motions for Summary Judgment, and, then, within twenty-one (21) days following the ruling on the Summary Judgment Motions.

Defendants' Joint Motion to Strike and Dismiss Class Allegations for Failure to file a Class Certification [Motion] (Doc. #444) is SUSTAINED.  The Court orders all class allegations to be STRICKEN from the Amended Complaint (Doc. #157), and all class claims therein are DISMISSED with prejudice.

The parties are ORDERED not to file Responses or Reply Memoranda to the Motions in Limine (Doc. #456, #457, #458, #459, #460, & #461) that Defendants have filed, until the Court has ruled on Defendants' Motions for Summary Judgment.  At that time, the Court will set a briefing schedule for the Motions in Limine, as well as a new trial date, if any one or more or all of Plaintiff's claims remain viable.

## I.    RELEVANT FACTUAL BACKGROUND[1]

Plaintiff Kline entered into a $160,000 loan transaction with WMC Mortgage

Corporation ("WMC") in June of 2004.  Doc. #157 ¶ 25.  After Kline fell behind

on the payments and defaulted on the loan, RACJ commenced foreclosure

proceedings in August, 2005, on behalf of WMC and the loan servicer, HomEq

Servicing Corporation ("HomEq").  *Id*. ¶¶ 26-29.  After the loan was reinstated,

the foreclosure case was dismissed.  *Id*. ¶ 30.

By December of 2006, Kline had again fallen behind on the loan payments,

and HomEq notified him that he faced further foreclosure proceedings if he failed

to bring the loan current.  *Id*. ¶ 31.  RACJ filed another foreclosure action against

Kline on March 16, 2007, but this time represented Defendant Wells Fargo as the

plaintiff and purported "trustee" of the note.  *Id*. ¶¶ 32-33.  Because it held a

second mortgage on Kline's home, Defendant Mortgage Electronic Registration

Systems, Inc. ("MERS"), was named as a defendant in the foreclosure action and

identified as the "nominee" for WMC.  *Id.*  LSR filed an answer on behalf of MERS

on May 17, 2007, and asserted that MERS had an "interest in the property" based

on a mortgage lien that secured a note for $28,858.40.  Doc. #310-4.

Kline alleges that although the foreclosure complaint stated that Wells Fargo

was the owner and holder of the promissory note and the mortgage, the mortgage

was not assigned to Wells Fargo until March 26, 2007, ten days after the filing of

---

[1] This is only a brief summary of the allegations relevant to Kline's claims, which
are set forth in detail in pages 8-16 of the Amended Complaint (Doc. #157).

4

the foreclosure action. Doc. #157 ¶¶ 34, 37. He also alleges that both Wells Fargo and RACJ knew that the papers filed in the foreclosure action falsely represented Wells Fargo as the owner of the note and the creditor to whom Kline owed the debt. *Id*. ¶¶ 34-36. Kline also alleges that an employee of HomEq falsely represented himself as a Vice-President of MERS in order to effect the assignment to Wells Fargo. *Id*. ¶¶ 39-44. During these foreclosure proceedings, Kline sold his home and paid off the loans secured by it. *Id*. ¶ 43. He alleges that LSR and RACJ illegally charged him a number of fees and expenses, including attorneys' fees and fees to third parties, when he paid off the delinquent loans held by their clients. *Id*. ¶¶45-61, 67-68.

## II.   RELEVANT PROCEDURAL HISTORY

Kline and his original co-Plaintiffs originally filed suit on November 10, 2008, against eleven Defendants, seeking monetary damages and injunctive relief based on claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e, 1692f(1); the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d; the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Revised Code § 1345.01; and claims for unjust enrichment and breach of contract under the common law of Ohio. Doc. #1. An Amended Complaint was filed on April 14, 2010. Doc. #157.

At this time, Kline is the only remaining Plaintiff, and LSR, RACJ, Wells Fargo, MERS, and Barclays[2] are the remaining Defendants.

Prior to 2014, a number of legal issues that were dispositive of the original Plaintiffs' claims were litigated and relitigated by the parties, who engaged in minimal discovery during that time. The parties do not appear to have conducted discovery in earnest until 2014 and early 2015. Currently, the operative scheduling order is the Amended Scheduling Order entered by the Court on February 5, 2015. Doc. #395. Pertinent deadlines stated in the order include the following: March 1, 2015, was the discovery cut-off date; March 27, 2015, was the deadline for filing motions for summary judgment; and April 30, 2015, was the deadline to file a motion for class certification. The Amended Scheduling Order also set a trial date of October 13, 2015.

Defendants complied with the summary judgment deadline by filing their five Motions for Summary Judgment on March 27, 2015. Doc. #414, #416, #417, #418, & #419. On March 31, 2015, the parties filed a Joint Motion for 30-Day Stay of All Proceedings for Final Attempt at Mediation and Settlement. Doc. #420. Therein, they indicated that they wished to retain a mediator who was able to "conduct the proposed mediation session within 30 days," and accordingly moved "the Court to stay the proceedings, and to extend all intermediate deadlines

---

[2] Barclays is a Defendant in this action because it owned HomEq, the loan servicer, at the time of the state court foreclosure proceedings. Barclays sold HomEq to Ocwen Loan Servicing, LLC, after the commencement of this lawsuit. Decl. Russell Pope ¶ 3 (Doc. #350-1).

in the current Scheduling Order for a period of 30 days from Friday, March 27, 2015." The same day, the Court sustained the motion with a brief Order that addressed the briefing on the pending Motions for Summary Judgment by stating:

> Defendants filed Motions for Summary Judgment on March 27, 2015, the same date that the parties requested the stay to commence. Thus, the stay tolls the calculation period of deadlines to file Response Memoranda and Reply Briefs addressing said motions. If the parties do not resolve this litigation through the mediation, the 30-day stay will expire Sunday, April 26, 2015, and the twenty-one day period for filing Response Memoranda will commence the next day, Monday, April 27, 2015.

Doc. #421.

The mediation did not actually take place until May 6, 2015, and it proved unsuccessful. Doc. #424.

On May 7, 2015, Plaintiff's attorney filed a Letter Brief with the Court, which was docketed as a "Motion for Disclosure." Doc. #426. Therein, he requested "a status conference with regard to certain issues which have arisen as a result of additional documents produced by MERS, Barclays and Wells Fargo after taking of their Rule 30(b)(6) depositions" in February. *Id.* at 1. Plaintiff's counsel stated that he had not received promised documents from Barclays or a privilege log to justify MERS's continued withholding of certain documents. *Id.* at 1-2. Counsel asserted that Plaintiff had a "right to certain additional disclosures from defendants before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order," including a "reopening of the Rule 30(b)(6) depositions of Wells Fargo, Barclays, and MERS," and the privilege log from MERS. *Id.* at 2.

7

On May 21, 2015, counsel for the Law Firm Defendants provided the Court with proposed orders granting their Motions for Summary Judgment, based on Plaintiff's failure to timely respond to their pending motions. The proposed orders were sent by email, and Plaintiff's counsel was copied on the emails.

On May 29, 2015, Kline's counsel filed a memorandum captioned "Memo in Opposition to Request for Default Judgment on [the Law Firm Defendants'] Motions for Summary Judgment." Doc. #427. Therein, he reargued the position set forth in the Letter Brief of May 7, stating that "the recent production of almost 1,500 pages of new documents by Defendants MERS, Wells Fargo and Barclays after the taking of their Rule 30(b)(6) depositions requires that plaintiff be permitted to reexamine the defendants with regard to these new documents before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order." *Id.* at 1-2. He also protested once again that MERS was withholding allegedly privileged documents without producing a privilege log. *Id.* at 4.

On June 4, 2015, the Law Firm Defendants filed their Reply Briefs, which also presented Motions to Strike both Plaintiff's "Memo in Opposition to Request for Default Judgment" and the May 7, 2015, Letter Brief. Doc. #428 & #429. According to the Law Firm Defendants, Plaintiff's Letter Brief should be stricken because it violated a previous order not to file letters with the Court instead of motions, it violated the prohibition on sending letters to the Court in Local Civil Rule 7.2(c), and it lacked the certificate of service required by Fed. R. Civ. P.

8

5(d)(1) and Local Civ. R. 5.2(a). Doc. #428 at 3-6. They further argue that
Plaintiff's "Memo in Opposition to Request for Default Judgment on [the Law Firm
Defendants'] Motions for Summary Judgment" should be stricken because it was
filed outside the time for responding to the Motions for Summary Judgment,
Plaintiff did not move the Court for leave to file a Response out of time based on
excusable neglect under Fed. R. Civ. P. 6(b)(1)(B), and no excusable neglect exists
to justify the late filing. *Id*. at 3-5. The Law Firm Defendants also assert that the
Letter Brief fails to meet the requirements of Rule 56(d) to show specific reasons
why Plaintiff cannot respond to their Motions for Summary Judgment, it was filed
without a signature or a certificate of service, and it addresses requests for
"default judgment" that do not exist. *Id.* at 5-6.

Barclays, Wells Fargo, and MERS filed a Motion to Compel Plaintiff Kline's
Discovery Responses Related to Damages on June 23, 2015. Doc. #430.
Therein, they argued that Plaintiff has not complied with his obligation under Fed.
R. Civ. P. 26(a)(1)(A)(iii) to provide "a computation of each category of damages
claimed" and the documents and evidence that support such computation.

On June 29, 2015, counsel for Plaintiff filed a Memorandum in Opposition to
the Law Firm Defendants' Motions for Summary Judgment. Doc. #431. Therein,
he argues that the Court should not strike his filings because, under Rule 6(b)(1)(A)
of the Federal Rules of Civil Procedure, "a party seeking an extension of time
before a deadline has passed need not make a formal motion, and indeed a court
may unilaterally determine– without notice– that a deadline should be extended."

9

*Id.* at 2. As evidence of his timely request, he cites to Letter Briefs that he sent to the Court on April 10, 2015, and May 7, 2015, in which he asserted that he had a "right" to additional depositions and discovery before responding to the Motions for Summary Judgment.[3] *Id.* at 3-4. Barclays, MERS, and Wells Fargo consented to additional depositions of their representatives in June, and counsel for Plaintiff believes that the additional testimony and documents produced after the depositions demonstrate "good cause" for granting an extension for him to respond to Defendants' motions and for conducting further depositions of the Law Firm Defendants. *Id.* at 5-7. Plaintiff's counsel points to adjustments Barclays made to an escrow account that allegedly contradict an affidavit that RACJ submitted in support of its Motion for Summary Judgment as evidence that the firm did not receive attorneys' fees from Plaintiff or the payoff of his first mortgage. *Id.* at 8-12. He also contends that testimony from the June 11, 2015, deposition of a Wells Fargo representative contradicts LSR's position that MERS did not own or hold either of Plaintiff's mortgages during the foreclosures. *Id.* at 10-12.

On July 10, 2015, Plaintiff filed a Memorandum in Opposition to the Motion to Compel filed by Barclays, Wells Fargo, and MERS. Doc. #433. Therein, he argued that the Court should overrule the Motion to Compel because he had "repeatedly provided the defendants with detailed information relating to the

---

[3] Plaintiff's Counsel filed the May 7, 2015, Letter with the Clerk, and it appears at Doc. #426. There is no indication on the docket that the April 10, 2015, Letter was ever filed with the Clerk.

10

damages claimed by him and the class in this litigation." *Id.* at 1. To support this assertion, he pointed to the damages mentioned in his initial disclosure under Rule 26 of the Federal Rules of Civil Procedure, several discovery responses he provided, and the statement he prepared for the March 14, 2014 mediation. *Id.* at 2-3. Furthermore, counsel for Barclays, Wells Fargo and MERS allegedly failed to comply with the requirement of Local Civil Rule 37.1 to exhaust "all extrajudicial means for resolving" discovery disputes because they "made no effort to even ask" about information about damages. *Id.* at 10.

On July 15, 2015, RACJ filed a Reply in Support of its Motion for Summary Judgment, and made the following points. Doc. #435. First, Plaintiff failed to properly and timely request an extension of the time to respond to its Motion for Summary Judgment because the April 10 and May 7 Letter Briefs were not procedurally proper means of requesting an extension, even if that had been their purpose. *Id.* at 1-3. Second, even if the request had been timely, Plaintiff cannot establish good cause for granting an extension. *Id.* at 3-4. Third, none of the additional discovery testimony or documents sought by Plaintiff create a genuine issue of material fact that would contradict RACJ's pending Motion for Summary Judgment. *Id.* at 4-8. Fourth, Plaintiff did not respond to any of the authority or arguments presented in its motion. *Id.* at 8-11.

On July 16, 2015, LSR filed a Motion to Strike Plaintiff's "Memo in Opposition to Request for Default Judgment on [the Law Firm Defendants'] Motions for Summary Judgment." Doc. #436. According to LSR, the Court

11

should strike Plaintiff's memorandum because it was untimely filed, did not demonstrate excusable neglect for an untimely filing, and did not comply with the requirements of Rule 56(d)(2) for reopening discovery in lieu of responding to summary judgment. *Id.* at 2. Furthermore, the assertion that Plaintiff's counsel only recently learned that MERS did not own or hold the notes to Plaintiff's first or second mortgages is "completely false, disingenuous, and offered for the sole purpose of delay," as demonstrated by the record and evidence in this case. *Id.* at 3-6.

On July 16, 2015, Wells Fargo, Barclays, and MERS jointly filed a brief captioned "Amicus Brief Correcting Misrepresentations in Plaintiff's Opposition to Summary Judgment." Doc. #437. They contended that Plaintiff's counsel made "misrepresentations with respect to discovery" in his June 29, 2015, Memorandum in Opposition to the Law Firm Defendants' Motions for Summary Judgment. The documents they have recently produced were not encompassed within Plaintiff's previous discovery requests from 2012 and 2013, as he asserts, but were requested for the first time during the June, 2015, depositions of their representatives. *Id.* at 5-7, 11-12. Recent discovery documents do not demonstrate that attorneys' fees were "passed on" to Plaintiff when he paid off his first mortgage. Rather, they only show that "the loan servicer, Barclays, elected to allocate toward [RACJ]'s fees a portion of the past-due interest that was properly collected from Plaintiff," and the fact that any such funds were held for some time

in an escrow account after the payoff had concluded does not make them improper.

On July 23, 2015, Kline filed a Memorandum in Response to the Amicus Brief. Doc. #439. Therein, he argued the language of the discovery requests from 2012 and 2013 was broad enough to encompass the documents that were not produced until after June, 2015, depositions. *Id.* at 2-5. He also asserted that the deposition of a Barclays' representative who stated that she did not know if the transactions to the escrow account were legal or not contradicts the assertion the legal fees paid from the account were in accordance with the law. *Id.* at 5-6.

On July 24, 2015, Wells Fargo and Barclays filed a Reply Memorandum in Support of the Motion to Compel Discovery Responses on Damages, pointing out further deficiencies in the Plaintiff's disclosures related to damages. Doc. #442.

On July 28, 2015, Wells Fargo, Barclays, and MERS filed a motion captioned "Request for Order Granting Unopposed Motions for Summary Judgment." Doc. #443. They argued that Plaintiff has failed to respond to their Motions for Summary Judgment or request an extension of time in accordance with Rule 56(d). *Id.* at 4-6. Furthermore, in spite of the fact that they agreed to an extension requested by Plaintiff's attorney until July 25, 2015, to respond to the motions, he never informed the Court of the agreed extension or responded to the motions. *Id.* at 3. Accordingly, these Defendants consider Plaintiffs' claims against them to have been abandoned, and they request an order granting summary judgment in their favor. *Id.* at 8-9.

13

On August 3, 2015, all Defendants filed a Joint Motion to Strike and Dismiss Class Allegations for Failure to file a Class Certification [Motion], based on Plaintiff's failure to file a Motion for Class Certification before the May 30, 2015, deadline or request an extension of time to file the motion.[4]  Doc. #444. According to Defendants, Plaintiff has abandoned his class claims, and, under Rule 41, the claims should be stricken and dismissed with prejudice.  *Id.* at 3-4.

Plaintiff filed a Memorandum in Opposition on August 14, 2015, captioned "Plaintiff's Memorandum in Opposition to Motions for Summary Judgment and to Strike Class Allegations and in Further Support of [his] Request for Other Motions Filed by Defendants."  Doc. #445.  Therein, he argued that his April 10 and May 7, 2015, Letter Briefs qualified as timely requests for extensions of the deadlines in the Amended Scheduling Order, and that he is entitled to further discovery instead of having to respond to the Motions for Summary Judgment.

The Law Firm Defendants filed Reply Briefs to the Motion to Strike on August 26, 2015, arguing that Plaintiff made no timely request for an extension of the class certification deadline, and no good cause or excusable neglect exists to justify granting an extension.  Doc. #447 & #448.

Defendants Barclays, Wells Fargo and MERS filed a Reply Memorandum to Plaintiff's Memorandum in Opposition to Motions for Summary Judgment and to Strike Class Allegations on August 27, 2015.  Doc. #449.  For several reasons,

---

[4] Based on the 30-day mediation stay, Defendants calculate that the deadline for filing a Motion for Class Certification was extended until May 30, 2015.

14

they argue that Plaintiff has manufactured "non-existent or meritless" discovery disputes to evade his responsibility to comply with the Court's Scheduling Order. *Id.* at 2. First, the escrow account history cited by Plaintiff demonstrates only that Barclays used the account for "internal fee and expense adjustments" after his loans were fully paid, not that he was charged any amount of attorneys' fees. *Id.* at 4-5. Second, although Plaintiff accuses Barclays of concealing the existence of third-party agreements by asserting that they did not exist, a review of Barclays' discovery responses demonstrates that it stated only that such agreements were not available in its archives after doing a diligent search. *Id.* at 6-7. The agreements in question were covered by document requests that Barclays propounded on Plaintiff over three years ago, yet he has concealed them until now although he possessed them, demonstrating that he has "been engaging in a coy game of cat-and-mouse by holding the very agreements he was seeking behind his back." *Id.* at 8-9. Third, the Custodial Agreement between Wells Fargo and Merrill Lynch Mortgage Capital, Inc., which Plaintiff accuses Wells Fargo of not previously producing in discovery, was not encompassed by Plaintiff's express discovery requests, which requested agreements between Wells Fargo and a different entity, the Merrill Lynch Trust. *Id.* at 9-10. Finally, Plaintiff has failed to comply with the Court's instructions to comply with the deadlines in the Amended Scheduling Order, and has never filed motions to extend them. *Id.* at 12-13.

The parties' motions are fully briefed. After due consideration of the arguments therein, the Court rules as follows.

15

### III. PLAINTIFF'S LETTER BRIEFS (DOC. #426) AND RESPONSES IN OPPOSITION (DOC. #431 & #445), CONSTRUED AS MOTIONS FOR ADDITIONAL DISCOVERY UNDER RULE 56(d)(2), ARE OVERRULED

The Federal Rules of Civil Procedure are clear: any "request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). The Local Civil Rules of the United States District Court for the Southern District of Ohio are similarly unequivocal:

> Letters to the Court are not permitted unless (1) requested by the Court in a specific matter, or (2) advising the Court of the settlement of a pending matter. All other written communications must be by way of formal motion or memorandum submitted in compliance with these Rules. All letters sent to the Court shall be contemporaneously served upon opposing counsel unless otherwise ordered by the Court.

S.D. Ohio Civ. R. 7.2(c).

The Court expressly directed Plaintiff's Counsel to Rule 7(b)(1) and the inappropriateness of communicating by letter with the Court when it struck a previous Letter Brief from him, and stated the following:

> The Court notes also that Plaintiff Kline has filed a Supplemental Memorandum (Doc. #386) Supporting his Motion to Compel (Doc. #337) in the form of a letter to the Court, with no indication that same was sent to Opposing Counsel, even though the Court previously ruled on the Motion to Compel on October 1, 2014. The letter takes issue with the Interrogatory Responses provided by Wells Fargo. Motions to Compel are the appropriate form of requesting action by this Court. Fed. R. Civ. P 7(b)(1) ("A request for a court order must be made by motion"). Letters of anguish, while evoking the Court's empathy, are certainly not sufficient. Since the Court has already ruled on this issue, a Motion for Reconsideration is the appropriate procedure to follow. Accordingly, the October 24, 2014, letter of Plaintiff's counsel (Doc. #386) is stricken from the record.

Doc. #387 at 2 n.1.

16

In spite of the rules and the Court's direction, Plaintiff's Counsel communicated twice more by letter. On April 10, 2015, while Defendants' Motions for Summary Judgment were pending, he faxed a Letter Brief to the Court requesting a status conference and asserting "a right to certain additional disclosure from defendants before plaintiff is required to respond to defendants' summary judgment motions or file documents in response to the Scheduling Order." Specifically, he requested "reopening the Rule 30(b)(6) depositions of Wells Fargo, Barclays and MERS," in order to depose their representatives regarding additional documents that they had recently produced, and a privilege log from MERS explaining the privilege it had asserted with regards to unproduced documents. No certificate of service accompanied the Letter Brief, and it was not sent to the Clerk's office for filing on the docket.

The second Letter Brief, sent on May 7, 2015, was filed on the Court's docket. It was filed the day after the unsuccessful mediation had occurred, and was docketed as a "Motion for Disclosure." Doc. #426. In nearly verbatim language, the letter made the same request for a status conference and asserted the same "right" to engage in further discovery.

The cut-off date for conducting discovery was March 1, 2015. Thus, the Letter Briefs are actually requests that discovery be reopened in lieu of responding to Defendant's pending Motions for Summary. Although Plaintiff's attorney nowhere cites to it, Rule 56(d)(2) of the Federal Rules of Civil Procedure governs this situation. The rule states: "If a nonmovant shows by affidavit or declaration

17

that, for specified reasons, it cannot present facts essential to justify its opposition

[to summary judgment], the court may . . . allow time to obtain affidavits or

declarations or to take discovery," at its discretion.  A request for additional

discovery under Rule 56(d)(2) generally requires the filing of an affidavit, but

substantial compliance in the form of an affidavit or motion that adequately

informs a court of the basis for the request may suffice.  *See Cacevic v. City of*

*Hazel Park*, 226 F.3d 483, 488-89 (6th Cir. 2000) (citing *Pfeil v. Rogers*, 757 F.2d

850, 856 (7th Cir.1985)).  A party that seeks additional discovery under Rule

56(d)(2) must demonstrate "its need for discovery, what material facts it hopes to

uncover, and why it has not previously discovered the information." *Id*.

   Thus, in spite of counsel's failure to comply with the rule's requirements,

the Court will construe the Letter Briefs as motions under Rule 56(d)(2).  The Court

will also construe the other filings in which Plaintiff's counsel presents arguments

for further discovery under Rule 56(d)(2):  the June 29, 2015, filing captioned

"Memo in Opposition to Request for Default Judgment on [the Law Firm

Defendants'] Motions for Summary Judgment" (Doc. #431), and the August 14,

2015, Memorandum in Opposition directed to Motions for Summary Judgment and

to Strike Class Allegations (Doc. #445).  However, when analyzed under the

standards applicable to Rule 56(d)(2), these filings fail to make the showing of

substantial compliance required to justify allowing further discovery.  For the

following reasons, Plaintiff does not identify the "material facts [he] hopes to

uncover," nor does he specify the reasons that he cannot "present facts essential"

18

to respond to Defendants' Motions for Summary Judgment. *Cacevic*, 226 F.3d at 488; Fed. R. Civ. P. 56(d)(2).

First, Plaintiff argues that documents produced by Barclays on March 26, 2015, and the subsequent deposition testimony of its representative, Jacklin Cartmill, contradict the sworn statement of Dennis Reimer, a principal of RACJ, in the affidavit attached to the firm's Motion for Summary Judgment. Doc. #431 at 7. Mr. Reimer's affidavit states that the firm "did not seek to collect, nor did it collect" or pass on attorneys' fees from Plaintiff in connection with the payoff of the primary mortgage on his home. Doc. #414-18. Plaintiff contends that a previous Barclays' escrow account document showed a zero balance, but recent documents provided by Barclays showed that the account had a balance of $412.96 before "so-called 'Fee Adjustments'" brought its balance to zero. Doc. #431 at 8. Ms. Cartmill testified that she had never seen an escrow account reduced with such adjustments, and that the previous escrow account document would not have given a borrower notice of the account balance or the adjustments. Doc. #432-6 at 5 & 74-75.

It is not clear how these documents produced by Barclays or this testimony regarding accounting practices at HomEq relate to Plaintiff's allegation that RACJ, a separate defendant in this action, illegally attempted to recover attorneys' fees. For example, Ms. Cartmill did not testify that an attorney or representative from RACJ had the authority to make transactions to or from these escrow accounts, or that such transactions were made. However, even if this evidence proves useful

19

for responding to Defendants' Motions for Summary Judgment or is otherwise relevant to Plaintiff's claims, the desire to pursue further relevant evidence is not a sufficient basis for allowing further discovery under Rule 56(d)(2). Plaintiff has not articulated what "material facts" he hopes to uncover by deposing Mr. Reimer. *Cacevic*, 226 F.3d at 488. It is beyond speculative that a principal of RACJ would have any personal knowledge of the internal accounting policies or payment procedures to vendors of Barclays or HomEq. Furthermore, a desire to impeach Mr. Reimer is an insufficient basis for reopening discovery. *In re Adelphia Commc'ns Corp.*, 317 B.R. 612, 620 (Bankr. S.D.N.Y. 2004) (refusing to reopen discovery because "the desire to impeach the other's affiants is not, by itself, a sufficient basis to grant [] relief" under Rule 56(d)(2)); *Walker v. Kubicz*, 996 F. Supp. 336, 342 (S.D.N.Y. 1998) ("the hope of impeaching the credibility of the defendants' affiants and to rebut the affiants' statements . . . is an insufficient basis for" granting a continuance under Rule 56(d)(2) and allowing additional discovery).

Second, Plaintiff states that Wells Fargo only disclosed certain relevant documents on March 17, 2015, and a statement by its representative, Patrick Gorrien, at a June 11, 2015, deposition contradicts representations by LSR that MERS did not own or hold the notes to Plaintiff's first or second mortgages in either the 2005 or 2007 state foreclosure actions. Doc. #431 at 10-12. Plaintiff is free to use the documents from Wells Fargo and any statements made by Mr. Gorrien when responding to Defendants' Motions for Summary Judgment.

However, as has been stated, the wish to uncover additional relevant evidence or impeach Mr. Gorrien is insufficient to justify reopening discovery under Rule 56(d)(2).

Third, Plaintiff asserts that he "recently uncovered" certain "outsourcing agreements between HomEq and Fidelity and HomEq and Rosicki relating to services provided in foreclosure and bankruptcy, including on Mr. Kline's loans." Doc. #445 at 22. According to Plaintiff, this "evidence suggests that defendants may be concealing other highly-probative agreements between [them] and other parties that would prove [Plaintiff's] claims of improper fee-splitting[.]" *Id.* at 22. Plaintiff's counsel has not cited to these documents in the record, attached them as exhibits, or even quoted from them. Thus, the Court cannot not evaluate his claims as to the relevancy of these documents or what they "suggest."

Even if he had provided the documents, however, the circumstances of their disclosure preclude them from being an acceptable basis for reopening discovery under Rule 56(d)(2). The documents were not "uncovered" by a Defendant and disclosed to him during discovery. Rather, he has somehow unearthed them on his own initiative. In an email to Defendants' counsel dated July 14, 2015, he revealed that the agreements had previously been "in storage," while simultaneously accusing Barclays' attorney of having failed to disclose them.[5]

---

[5] In response to this email, counsel for Barclays detailed the steps that had been taken to search the corporate archives for the documents that Plaintiff's attorney accused it of withholding. Doc. #446-8 at 2.

Doc. #446-7. Plaintiff's own untimely disclosure of purportedly relevant documents, a discovery sin that he has repeatedly lambasted Defendants for committing, is an unacceptable basis for reopening discovery. The Court will not subject Defendants' representatives to further depositions and questioning about documents that Plaintiff never previously disclosed and, based on the timing of their disclosure, are probably inadmissible. *See* Fed. R. Civ. P. Rule 37(c)(1) (preventing a party from using previously undisclosed documents as evidence "unless the failure was substantially justified or is harmless").

Moreover, Defendants have accommodated many of Plaintiff's requests, rendering his argument that he has a "right" to engage in further discovery before having to respond to their Motions for Summary Judgment largely moot. Even after the close of discovery and the filing of their motions, Wells Fargo, Barclays and MERS supplemented their previous disclosures by providing Plaintiff with additional documents and accommodated his attorney's wish to conduct further depositions of their representatives. Nevertheless, Plaintiff's attorney argues he is still entitled to receive a privilege log from MERS, arguing that it failed to comply with the requirement of Rule 26(b)(5) to provide such a log. Doc. #445 at 23-24. Given that there has been no explanation of what "material facts" a privilege log from MERS would provide that Plaintiff would need to respond to Defendants' pending Motions for Summary Judgment, the request is overruled. *Cacevic*, 226

F.3d at 488.  With one possible exception, *infra*, at footnote 5, discovery in this case has concluded and will not be reopened.[6]

 After reviewing multiple filings in which Plaintiff's attorney has presented his arguments for reopening discovery, and construing the filings as motions brought under Rule 56)d)(2), the Court concludes that there is no basis for allowing further discovery.  Plaintiff has not "specified reasons" why he cannot "present facts essential" to respond to Defendants' Motions for Summary Judgment or explained what "material facts [he] hopes to uncover" in further discovery.  Fed. R. Civ. P. 56(d)(2); *Cacevic*, 226 F.3d at 488.  Accordingly, his requests to engage in additional discovery before having to respond to Defendants' motions are overruled.  Given that Plaintiff's attorney has had ample opportunity to present his arguments on this issue, as he has stated them in the four filings considered above, any motion requesting reconsideration of the Court's ruling would be both unwelcome at this time and stricken upon filing.

---

[6] The one possible exception would be if the Court sustains Plaintiff's pending Motion to Compel (Doc. #450), which he filed on September 1, 2015, and has not yet been fully briefed.  If the Court rules in Plaintiff's favor on this motion, he would be entitled to the production of documents concerning a third party, Rosicki, Rosicki and Associates, that RACJ is currently withholding based on an asserted privilege that Plaintiff argues has been waived.

IV.   **DEFENDANTS' MOTIONS TO STRIKE (DOC. #428, #429, #436) AND
MOTION FOR [AN] ORDER GRANTING UNOPPOSED MOTIONS FOR
SUMMARY JUDGMENT (DOC. #443) ARE OVERRULED**

In their Motions to Strike, the Law Firm Defendants request that the Court

grant summary judgment in their favor, based on the Plaintiff's failure to timely

respond to the Motions for Summary Judgment or move for an extension of time

to respond.  Doc. #428 & #429.  Technically, Defendants are correct that the

filing of the May 29, 2015, "Memo in Opposition" by Plaintiff's counsel did not

comply with the briefing timeline in the Court's Order regarding the mediation stay,

which stated that the 21-day period for responding to the pending Motions for

Summary Judgment would commence on April 27, 2015.  Doc. #421 at 2.

Furthermore, Plaintiff's memorandum did not demonstrate, or even mention,

excusable neglect for the late filing.  However, the 30-day stay was premised on

the mediation occurring during the 30-day period dating from the Court's Order.

This would have resulted in the stay expiring on April 26, and the briefing period

for Plaintiff's Response re-commencing the next day, based on the mediation dates

initially presented to the Court by the parties when they jointly requested a stay for

mediation.  Doc. #420.  In reality, the mediation was not held until May 6.  Doc.

#425.  The Court would have adjusted the post-stay briefing schedule if it had

known that May 6 would be the actual mediation date.  Thus, striking the "Memo

in Opposition" or considering it untimely filed would not be in accord with the

purpose of the post-stay briefing schedule, which was to accommodate the

parties' final attempt at mediation.

To date, the responses by Plaintiff's counsel have not meaningfully confronted the Defendants' pending Motions for Summary Judgment, instead asserting a "right" to engage in further discovery that the Court declines to recognize. *See supra* Part III.  To date, Plaintiff's filings have even failed to address Defendants' dispositive arguments that are purely legal, or so non-fact dependent that the further discovery would have had no effect on the ability to respond to them.  For example, RACJ argues that the FDCPA claim is barred by the statute of limitations.  Both Law Firm Defendants argue that the unjust enrichment claim is barred by the "voluntary payment" doctrine, and cite to the record where Plaintiff admits the payments he made to them were voluntary. Thus, there appears to have been no impediment to responding to at least some of the Defendants' summary judgment arguments.

Wells, Fargo, Barclays and MERS make the same request for summary judgment in their favor, based on Plaintiff's untimely failure to respond to their motions or to move the Court for an extension of time to respond.  Doc. #443. These Defendants have attached correspondence between their counsel and Plaintiff's attorney demonstrating their attorney's agreement to a request for an extension.  Doc. #443-2.  The Court disapproves of the fact that Plaintiff's counsel never moved the Court for an extension of time to respond to their Motions for Summary Judgment after obtaining this consent.

In short, Plaintiff's attorney has demonstrated an ongoing disregard for the Rules of Civil Procedure, the express orders of the Court, and the professional

courtesies extended to him by opposing counsel. Unfortunately, such behavior appears to be standard operating procedure for Plaintiff's attorney. In *Theobald v. Wells Fargo Bank, N.A.*, a case he litigated at the Columbus seat of the U.S. District Court for the Southern District of Ohio, he also "failed to file a motion for extension of time with the Court or otherwise provide any notice to the Court that Defendants did not oppose granting Plaintiff an extension of time" after obtaining their consent to an extension. Case No. 1:13-cv-687, Doc. #21 at 3. In *Theobald*, Judge Beckwith saw no excusable neglect that justified his failure to respond to the defendants' motions to dismiss when ruling on a motion he filed under Rule 60(b) to vacate the order dismissing the lawsuit. She rejected his contention that his busy caseload constituted excusable neglect for failing to respond to the motions or inform the Court of the defendants' agreement to an extension. *Id.* at 5. The Court is all too familiar with similar bleating by Plaintiff's attorney about his caseload and its deleterious effect on his ability to represent his clients effectively: "[a]s the plaintiff has previously advised the Court, counsel for plaintiff has been involved in representing 375,000 class members in *Mazzei v. Money Store, Inc.*, a case against Barclay's predecessor in the Southern District of New York . . . . Despite this, plaintiff has endeavored to push discovery forward to completion in this matter." Doc. #396 at 1. He has also made innumerable mentions of the burden of litigating in the Southern District of New York during telephone conference calls with the Court when attempting to push deadlines into the future. To quote Joseph N. Welch: "Enough. Have you no sense of decency,

26

sir, at long last?" *Red Scare: The Army-McCarthy Hearings, 1954*, in American History Through Court Proceedings and Hearings 150 (Robert Marcus & Anthony Marcus eds., Brandywine Press 1998).

The difference between *Theobald* and the instant case is that the Court has not yet ruled on Defendants' pending Motions for Summary Judgment.  Although the failure to properly move the Court for an extension may provide grounds for granting Defendants' motions as a matter of law, the Court does not believe that such a result would be in accordance with "the principle that cases should be decided on their merits," as opposed to technicalities.  *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003) (citing *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)).  For this reason, the Court will grant Plaintiff 21 days from date to respond to Defendants' Motions for Summary Judgment.  Defendants may file Reply Briefs within 14 days thereafter.  Accordingly, Defendants' Motions to Strike (Doc. #428, #429, #436) and the Motion for [an] Order to Grant Unopposed Motions for Summary Judgment (Doc. #443) are overruled.

## V. DEFENDANTS WELLS FARGO AND BARCLAYS' MOTION TO COMPEL PLAINTIFF KLINE'S DISCOVERY RESPONSES RELATED TO DAMAGES (DOC. #430) ARE SUSTAINED

Under Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure, a party must disclose "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each

27

computation is based, including materials bearing on the nature and extent of injuries suffered."  For the following reasons, Wells Fargo and Barclays argue that Plaintiff has failed to satisfy the duty imposed by Rule 26(a)(1)(A)(iii) to disclose the damages he claims in this lawsuit.  Doc. #430-1 at 3-8.

First, they argue that the following interrogatory responses from Plaintiff "were generalized, evasive, and lacked sufficient detail to inform Defendants about Plaintiff's damages claim:"

> **Interrogatory No. 1**: Identify all costs, charges, fees, including attorneys' fees, amounts, and/or payments which you contend Barclays improperly assessed against you, charged to your account, or were paid by you to any Defendant herein.

> **Response to Interrogatory No. 1**: Plaintiff asserts that all legal fees and expenses charged to him resulting from the foreclosure on his home were improperly assessed, because the plaintiff had no standing to pursue the foreclosure.  Among other places, those amounts are set forth in Lerner Sampson and Reimer Lorber's payoff letters to Kenneth Wegner in November 2007, and in the letters from Lerner Sampson and Reimer Lorber to Wegner and/or Mr. Kline in February 2008.

> . . .

> **Interrogatory No. 15**: Itemize all damages which you claim individually and on behalf of the members of the purported class, and describe the method you have used to calculate such damages.

> **Response to Interrogatory No. 15**: Plaintiff objects to this Interrogatory because it is burdensome and overbroad, because it seeks information in the possession, custody or control of defendants, because the answer may be determined by documents in defendants' possession, and because there has yet been no class discovery from the defendants.  Subject to and without waiving this objection, plaintiff asserts that all legal fees and expenses charged to him resulting from the foreclosure on his home were improperly assessed, because the plaintiff had no standing to pursue the foreclosure. Among other places, those amounts are set forth in Lerner Sampson

and Reimer Lorber's payoff letters to Kenneth Wegner in November 2007, and in the letters from Lerner Sampson and Reimer Lorber to Wegner and/or Mr. Kline in February 2008. Kline also asserts that he is entitled to statutory damages and legal fees and expenses.

Doc. #430-7.

> **Request No. 8**: All documents which reflect, refer or relate to any costs, charges, fees, amounts, and/or payments, which you contend Barclays improperly assessed against you or charged you, including, but not limited to, any such amount that relates to the Mortgage Loans, and including but not limited to all correspondence, notices, reports, statements, invoices and receipts.
>
> **Response to Request No. 8**: Plaintiff objects to this document request based on the General Objection above. Plaintiff further objects to this document request on the grounds that it is overbroad, vague, ambiguous and confusing. Subject to and without waiving his objections, plaintiff refers defendants to the documents with numbers P1-P100 which were produced as part of plaintiff's initial disclosure, the documents produced by Kenneth Wegner, to the documents produced by Barclays in its Rule 26(a) disclosure starting with Bate Stamp BC0001; to the Communication Histories produced by Barclays starting with Bate Stamp BC0392; to the documents in the 2005 and 2007 state court foreclosure proceedings against plaintiff available online at the website for the Clerk of Montgomery County, Ohio; to the written correspondence between defendants Lerner Sampson, Reimer Lorber and/or their clients or agents and Kline, Kenneth Wegner, or Kline's representatives or agents regarding payoff amounts and amounts owed, and in partiular correspondence from 2006, November 2007 and February 2008, and to the payment histories produced by Barclays on February 14, 2015.
>
> **Request No. 9**: All documents which substantiate or identify your claimed damages in this case.
>
> **Response to Request No. 9**: [Plaintiff's Response to Request No. 9 is identical to his Response to Request No. 8].

Doc. #430-8.

Wells Fargo and Barclays argue that these responses are inadequate because they do not describe the categories of damages Plaintiff seeks, any amount of

damages, any distinction between class and individual damages, or any evidence to substantiate the amount of damages sought. They merely "refer[] generally to *hundreds* of pages of documents *en masse* without specificity." Doc. #430-1 at 5.

Second, Wells Fargo and Barclays point to Plaintiff's failure to provide "any clarification of his damages" during his deposition when questioned, as evidenced by the following exchanges between their attorney and Plaintiff:

> Q. What result do you want to see come from this lawsuit at the end of the day when it's over? Let's assume you win this lawsuit, okay? What would you like to see happen?
>
> . . .
>
> A. I cannot answer you, okay. I cannot answer you.

Pl.'s Dep. 86 (Doc. #430-9 at 4).

> Q. You mentioned earlier that you'd like to see compensation, okay. What is the compensation that you are seeking for you personally in this lawsuit?
>
> MR. GROBMAN: I'm going to object but you can answer.
>
> THE WITNESS: I can't answer.

*Id.* at 87 (Doc. #430-9 at 5).

> Q: . . . [A]re you able to quantify for me your out-of-pocket cost, your losses out of pocket?
>
> MR. GROBMAN: Objection. Asked and answered. But if you can.
>
> THE WITNESS: I cannot answer that.

*Id.* at 90 (Doc. #430-9 at 8).

When asked if he had "a dollar figure in mind" for damages, Plaintiff responded that he would need "at least 24 hours to think about" the question. *Id.* at 88 (Doc. #430-9 at 6). The next day, Defendants followed up with Plaintiff:

> Q. Okay. Is it still your goal to be made whole in this litigation?
>
> A. Yes, sir.
>
> Q. And did you have a chance to think about what that would entail?
>
> A. Yes, sir.
>
> Q. And what do you think it would entail?
>
> A. I cannot come up with an answer. I cannot come up with an answer.

*Id.* at 241 (Doc. #430-9 at 13).

Third, Wells Fargo and Barclay argue that the eventual response they received from Plaintiff's attorney after they complained of the disclosures and calculations provided no remedy for these inadequacies. Doc. #430-1. On May 19, 2015, counsel for Wells Fargo and Barclays described the inadequacies of the interrogatory responses and deposition answers in an email to Plaintiff's attorney, and stated that a Motion to Compel would be filed in the event that an answer did not "rectify these deficiencies." Doc. #430-3 at 2. In a letter dated June 19, 2015, Plaintiff's attorney stated the following:

> I am providing you with this letter in response to your request for another letter itemizing Mr. Kline's claimed damages. I note that this letter repeats information which has previously been provided to you by plaintiff in this litigation, and that plaintiff believes that he has no obligation to supplement his discovery responses in light of the disclosures which he has already made.
>
> The elements of his individual damage claims:

31

Mr. Kline was forced to vacate his home, selling it for $246,850.00, substantially less than it was worth.

He had to pay his own attorney in the illegally brought foreclosure in 2007;

He had to pay defendants' purported attorney fees and expenses on both the first and second mortgages in the 2005 and 2007 foreclosures;

He also had to pay some $5,000 in legal fees and closing costs in the sale of his home, $17,000.00 to the broker, and over $5,000.00 in moving costs.

Mr. Kline had recently made substantial improvements to his home, investing some $33,000.00 from his pension to demolish and remodel the kitchen.

With no place to put his belongings, [he] left a household of furnishings.

He was improperly charged late fees after acceleration in both 2005 and 2007.

As I've previously advised you, all documents relating to these purported [sic] damages in plaintiff's possession, custody or control have already been produced.

Doc. #430-4 at 2.

The letter did not satisfy counsel for Wells Fargo and Barclays because it did not cite to any documents to substantiate the damages claims, did not explain how specific figures were calculated, and was vague in its description of the claimed loss on the sale of the home and the attorneys' fees Plaintiff paid. Doc. #430-1 at 7. Furthermore, the letter mentioned damages from the 2005 foreclosure, which are not at issue in this case, and was "completely silent" regarding the damages for Plaintiffs' class claims. *Id.* at 7-8.

32

Based on the foregoing, Wells Fargo and Barclays seek an order that precludes Plaintiff from presenting any evidence of damages at trial, a dismissal of the Amended Complaint, and attorneys' fees to compensate for the expense of filing the Motion to Compel. *Id.* at 9. In the alternative, they seek an order compelling Plaintiff to disclose a detailed computation of the damages he seeks, by category, and the documents on which the computations are based, as well as the attorneys' fees they incurred by filing the Motion to Compel. *Id.* at 9-10.

In his Memorandum in Response, Plaintiff's counsel cites the same interrogatory responses reproduced above, which he believes sufficiently "identified the legal fees and expenses . . . and the documents on which such legal fees could be found." Doc. #433 at 2-3. He quotes from a March 14, 2014, mediation statement that was served on Wells Fargo and Barclays containing many of the same statements made in his June 19, 2015, letter to their attorneys, as well as references to the class claims. *Id.* at 4. He argues that Barclays is "in a far better position" than Plaintiff to identify the amount of post-acceleration late fees Plaintiff was charged. *Id.* at 8. Plaintiff's counsel also cites to a letter that he sent to counsel for Wells Fargo and Barclays after the Motion to Compel was filed that identifies a number of documents by Bates stamp number that support his claims for attorneys' fees, as well as portions of deposition testimony that relate to damages for late fees and class claims. Doc. #434-3 at 2. The letter also states that Plaintiff has provided all documents in his possession relevant to costs associated with the sale of his home and home improvements, and that there are

33

no documents to support damages for loss on the sale of his home "other than whatever appraisals were prepared by Barclays in the foreclosure." *Id.* at 3. The letter admits that:

> At this time, Plaintiff does not know the fair market value of the home at the time of sale. Plaintiff does not know the precise value of the furnishings he left behind at the time of sale, but believes it amounts to approximately $18,000. Any invoices in [his] possession relating to the furniture have already been produced.

*Id.*

Finally, Plaintiff's counsel asserts that there was no reason to file the Motion to Compel. Doc. #433 at 10. The single email sent by counsel for Wells Fargo and Barclays before filing the motion does not demonstrate exhaustion of "all extrajudicial means for resolving" the dispute. *Id.* Moreover, the "good faith" attempt at resolution that a movant must certify, as required by Rule 37(a)(1) of the Federal Rules of Civil Procedure, cannot be satisfied where the movant fails to respond to a non-movant's attempt to resolve the dispute. *Id.* at 11. He asserts that counsel for Wells Fargo and Barclays did not respond to his June 19, 2015, letter before filing the Motion to Compel. *Id.*

In their Reply Brief, Wells Fargo and Barclays state the following: Plaintiff has still not disclosed the amount of attorneys' fees paid to his attorney in the state court foreclosure action, or documents that evidence the amount he paid, other than an initial retainer check of $500. Doc. #442 at 3. Plaintiff's assertions that he has already produced "whatever documentary evidence [he] has with respect to" the costs of the sale of his home or home improvements is

34

"misleading" because he "has produced absolutely *no* documentary evidence of any of" these damages. *Id*. at 4. Barclays has no evidence of any *post*-acceleration late fees that Plaintiff paid because, to its knowledge, all late fees charged to him "accrued pre-acceleration." *Id*. at 4 n.4. Plaintiff has "completely avoided responding to []discovery requests" that have asked him "to identify the specific amount of any alleged post-acceleration late fee, as well as the dates upon which it was assessed and later collected." *Id*. at 5. There is still no disclosure of any damages related to Plaintiff's class claims. *Id.* Finally, Wells Fargo and Barclays defend the decision to file the Motion to Compel by pointing to a March 7, 2014, letter in which their attorney objected to Plaintiff's "lack of discovery responses on damages;" a "fruitless email exchange" between May 19, 2015, and June 3, 2015, that culminated in the threat to file the Motion to Compel; and the "woefully inadequate" response of the June 19, 2015, letter sent by Plaintiff's counsel. *Id.* at 9.

The Court first turns to the issue of whether Defendants' attorney made the necessary effort to resolve this issue before filing the motion. Rule 37(c) of the Federal Rules of Civil Procedure allows a party to move the Court for an order compelling another party to disclose information or discovery responses. However, the party's "motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Here, the Court rejects the suggestion that the certification provided

35

by Wells Fargo and Barclays' attorney was not made in good faith, or that he failed to exhaust the extrajudicial avenues for resolving this dispute. The email chain attached as Exhibit B to their Reply Brief contradicts the assertion of Plaintiff's counsel that he only received one email from opposing counsel prior to the filing of the Motion to Compel. Doc. #442-2 at 2. The emails demonstrate numerous attempts by Defendants' counsel to procure the disclosures in question, culminating with a follow-up email dated June 3, 2015, after a period of silence: "Friday will mark the passage of two weeks since our last exchange below. If I have not received formal production from you of all discovery matters addressed, I will file our motion to compel." Doc. #442-2 at 2. Presumably, for the sake of brevity, only the first email in the chain was attached as an exhibit to Defendants' Motion to Compel to demonstrate certification. However, the entire chain demonstrates that a good-faith attempt at resolution was made. Doc. #430-3. The emails sent prior to June 3, 2015, demonstrate that the June 19, 2015, letter from Plaintiffs' counsel was not, as he suggests, his only opportunity to respond to the discovery concerns before Defendants filed the Motion to Compel. Accordingly, the Court rejects Plaintiff's assertion that the motion was not filed in accordance with the Rule 37(a)(1) or Local Civil Rule 37.

The remaining question is whether the disclosures provided by Plaintiff satisfy his duty under Rule 26(a)(1)(A)(iii) to disclose "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other

evidentiary material . . . on which each computation is based, including materials
bearing on the nature and extent of injuries suffered." A plaintiff whose initial
disclosures do not explain or document a damages claim, who supplements the
disclosure only with references to "documents previously provided" or assertions
that no supporting documentation exists, and offers witnesses who cannot testify
to the basis for the damages does not fulfill the Rule 26(a)(1)(A)(iii) duty to provide
a computation of damages. *Bessemer & Lake Erie R.R. Co. v. Seaway Marine
Transp.*, 596 F.3d 357, 367-69 (6th Cir. 2010). In *Bessemer*, a shiploader
operator sued the owner of a vessel that struck and damaged its equipment,
claiming damages for lost profits. *Id.* at 361-62. The operator's initial disclosures
included a spreadsheet that itemized its lost profits, "but provided no explanation
and no supporting documentation to back up the calculations." *Id.* at 367.
Responses to discovery requests "yielded little additional information about the
basis" of the claim, as the operator claimed that no documents existed to
demonstrate what costs it saved by not incurring its typical expenses during the
repair period, or that the defendant already had the relevant documents. *Id.*
During depositions, the plaintiff's corporate representatives confirmed that the
spreadsheet calculated the lost revenue, not the lost profits, and stated that they
could provide "no information about any costs [the plaintiff] may have saved"
during the period its equipment was not functional after the accident. *Id.* at 367-
68. Based on these failings, the Sixth Circuit upheld the district court's decision to

exclude the plaintiff's evidence under Rule 37(c) for failing to adequately disclose the evidence supporting its damages claim. *Id.* at 369.

Plaintiff's disclosures share many of the deficiencies that justified exclusion in *Bessemer*. He provides no exact figures for many of his damages claims. For example, his attorney claims that Plaintiff sold his house for "substantially less that it was worth," but cites to no evidence of its fair market value at the time of sale. Plaintiff claims damages to compensate for the fees he paid to his attorneys and "defendants' purported attorney fees" in the state court foreclosure proceedings, his household furnishings, and post-acceleration late fees, but his attorney provides no specific amount of damages for these assertions. When his attorney does provide an exact figure, such as "the $5,000 in legal fees and closing costs in the sale of his home, $17,000.00 to the broker, and over $5,000.00 in moving costs," or the $33,000 in kitchen renovation costs, he cites to no documents demonstrating that Plaintiff paid these amounts. When Plaintiff's attorney does cite documents, as in his July 2, 2015, letter to Defendants' counsel, he does not state the amount of damages that they evidence, much less how he calculated such damages. As in *Bessemer*, he routinely states that such documents "have already been produced," and his client gave enigmatic deposition testimony that failed to explain the claim for damages or how to calculate them. Doc. #430-4 at 2. Furthermore, the mediation statement that Plaintiff's attorney points to as evidence of disclosure is a privileged document that "is not admissible to prove liability for or the invalidity of a claim or its amount." S.D. Ohio Local R.

16.3(c)(1); *see also* 28 U.S.C. § 652(d) (stating that a district court's local rule "to prohibit disclosure of confidential dispute resolution communications").  There is no indication that Plaintiff's attorney obtained the consent of the all "parties, counsel, and neutrals" that participated in the mediation before disclosing this privileged statement by attaching it as an exhibit to the Memorandum in Response, as required by S.D. Ohio Local R. 16.3(c)(3).  Because the statement was privileged and its disclosure a violation of the confidentiality provision in the Court's Local Rules, it will not be considered evidence that Plaintiff complied with his duty under Rule 26(a)(1)(A)(iii).

For the foregoing reasons, the Court concludes that Plaintiff's disclosures under Rule 26(a)(1)(A)(iii) and responses to Defendants' requests to provide the calculations and evidence supporting his damages calculations have been insufficient.  The Court will not however, categorically exclude from any evidence of damages, as Defendants request.  Thus, the Court sustains the motion insofar as it seeks an order compelling Plaintiff to comply with the disclosure requirement of Rule 26(a)(1)(A)(iii).  However, it must be noted that Wells Fargo and Barclays have not argued that Plaintiff's failure to adequately disclose damages has hampered their ability to defend against his claims, or that such disclosures are necessary to a finding of liability or non-liability on those claims.  Nor have they withdrawn their pending Motions for Summary Judgment or requested leave to supplement the motions after receiving the disclosures they seek.  Thus, the Court will not require Plaintiff to provide the disclosures until it rules on the Motions for

Summary Judgment, as the ruling will determine whether Plaintiff's claims are still viable and, therefore, whether such disclosures are even necessary. Accordingly, Plaintiff must make the Rule 26(a)(1)(A)(iii) disclosures within thirty (30) days after the entry of the Court's ruling on Defendants' Motions for Summary Judgment, if his claims remain viable. Plaintiff is ORDERED to disclose, within the aforesaid thirty (30) day period, by affidavit with attached exhibits: 1) the categories of damages he seeks; 2) the amounts and computations he employed to arrive at the amounts he seeks; 3) the documents, or the Bates stamp numbers of the documents he has previously disclosed, on which the damages calculations are based. Blanket references to groups of documents are not acceptable.

Under Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, a party who prevails on a motion to compel is entitled to a grant of attorneys' fees. The Rule states:

> If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

If Plaintiff's claims survive summary judgment, Defendants may, after trial, file a Motion for Attorneys' fees under Fed. R. Civ. 37(a)(5)(A), and include their fee application. The Rule requires that Plaintiff must be given an opportunity to respond. Thus, any ruling on the issue would be premature at this time. The Court will not address the issue further until it has been briefed by all parties, after the merits of this litigation have been resolved. If this case results in a negotiated

40

settlement, the attorneys' fees that Wells Fargo and Barclays are entitled to for prevailing on the Motion to Compel should be a part of the settlement. Otherwise, the issue will be decided post-verdict, after Defendants' have filed their Rule 37(a)(5)(A) motion.

## VI. DEFENDANTS' JOINT MOTION TO STRIKE AND DISMISS CLASS ALLEGATIONS FOR FAILURE TO FILE [A] CLASS CERTIFICATION [MOTION] (DOC. #444)

Finally, the Court turns to Joint Motion to Strike and Dismiss Class Allegations for Failure to File [a] Class Certification [Motion], filed by all Defendants on August 3, 2015. Doc. #444. As Defendants point out, Plaintiff failed to timely file a Motion for Class Certification before the May 30, 2015, deadline in the Amended Scheduling Order, nor did he request an extension of time to file the motion. *Id.* at 2-3. Because Defendants consider this an abandonment of the class claims, they request that the Court strike them from the Amended Complaint and dismiss them with prejudice under Rule 41. *Id.* at 3-4.

Plaintiff filed a Memorandum in Opposition on August 14, 2015, captioned "Plaintiff's Memorandum in Opposition to Motions for Summary Judgment and to Strike Class Allegations and in Further Support of [his] Request for Other Motions Filed by Defendants." Doc. #445. As previously discussed, the Court construes this filing as a Motion to Reopen Discovery under Rule 56(d)(2) because the Plaintiff's arguments asserted a right to engage in further discovery instead of

41

responding to Defendants' Motions for Summary Judgment. *See supra* Part III. As the Court concluded, there is no basis for allowing further discovery in this matter.

With regard to the present issue, the failure to timely file a Motion for Class Certification, Plaintiff's Memorandum argues that he timely requested extensions of the deadlines set forth in the Scheduling Order because his April 10 and May 7, 2015, Letter Briefs to the Court contained the following sentence: "Plaintiff believes that, at a minimum [he] has a right to certain additional disclosures from defendants before plaintiff is required to respond to defendants summary judgment motions or file documents in response to the Scheduling Order." Doc. #445 at 16. According to Plaintiff, this statement fulfills the requirement of Rule 6(b) of the Federal Rules of Civil Procedure that a party must only make "a request" for an extension of time, obviating the need to file a formal motion.

Rule 6(b) of the Federal Rules of Civil Procedure sets forth the standards for granting an extension of time. The rule states:

**(1)** *In General*. When an act may or must be done within a specified time, the court may, for good cause, extend the time:

**(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or

**(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.

Plaintiff is correct that the language of Rule 6(b)(1)(A) refers to a timely "request" for an extension. He believes that the statement in his April 10, 2015, Letter Brief asserting "a right to certain additional disclosures from defendants before" having to "file documents in response to the Scheduling Order" evidences

42

such a timely request.  However, neither the form nor the substance of his purported request adequately complied with Rule 6(b).  The April 10, 2015, Letter Brief appears nowhere on the docket of this case, as it was never filed it with the Clerk.  No certificate of service accompanies the document, in spite of the procedural requirement to serve all parties with such a paper.  *See* Fed. R. Civ. P. 5(a)(1)(E) (stating that "each of the following papers must be served on every party," including "a written notice, appearance, demand . . . or any similar paper").[7]  The Court will not consider a Letter Brief that was never filed with the Clerk, never served on Defendants, and sent in clear violation of the Local Rules and the Court's express instruction to only file motions, as a timely filed request.

Furthermore, even if the Court ignored these shortcomings, the Letter Brief did not substantively make a request for an extension of time to file a class certification motion.  It states that it was written "to request *a status conference* with regard to certain issues which have arisen as a result of additional documents produced by MERS, Barclays and Wells Fargo," not to request a deadline of the extension for filing for class certification.  Even if such a request could be divined from Plaintiff's vague assertion of a "right" to engage in further discovery before having to "file documents in response to the Scheduling Order," the Letter Brief provided no good cause for granting such an extension.  It only presented the

---

[7] Plaintiff's attorney attached a copy of the April 10, 2015, Letter Brief as Exhibit N to the affidavit filed with the Memorandum in Opposition.  Doc. #446-13.

arguments for re-opening discovery that the Court has construed under Rule 56(d)(2) and rejected.

There are further reasons why Plaintiff's efforts were wholly inadequate to apprise the Court of its desire for an extension of the deadline to file for class certification. In addition to the February 5, 2015, Amended Scheduling Order stating that April 30, 2015, was the deadline for filing any motions for class certification, the Court emphasized this deadline several times in its Decision and Entry of March 27, 2015:

> At this stage of the litigation, Kline is the only remaining Plaintiff. His motion for class certification must be filed by April 30, 2015.

Doc. #415 at 2.

> The filing of briefs on class certification is imminent. Kline must file a Motion for Class Certification by April 30, 2015. In the absence of extraordinary circumstances, no extension of this deadline or the deadlines for Response or Reply Memoranda will be considered.

*Id.* at 13.

> The parties are again reminded that all deadlines pertaining to class certification, as set forth in the Amended Scheduling Order filed on February 5, 2015, are in force. In the absence of extraordinary circumstances, requests for extension of all deadlines therein will not be granted.

*Id.* at 16.

These statements were intended to underscore the Court's intention to enforce the deadlines in the most recent Amended Scheduling Order. Even taking into account the 30-day stay for mediation requested by the parties, as well as the Court's acknowledgment that the stay would have been extended until the actual

44

mediation date of May 6, 2015, resulting in a 40-day stay, a Motion for Class Certification should have been filed by June 9, 2015. Yet Plaintiff filed no such motion, nor a motion requesting an extension of the deadline.

This case is, by far, the oldest continually pending civil lawsuit on the Court's docket. Although it purports to be a class action, the seventh anniversary of the filing of this lawsuit will be reached on November 10, 2015, without the filing of a motion for class certification. This delay is plainly contrary to the spirit of Rule 23(c)(1)(A), which states that certification must occur "[a]t an early practicable time after a person sues or is sued as a class representative[.]" The Court does not believe it could have been clearer regarding the importance of complying with the deadline for filing for class certification or its disapproval of any further delay. There is no excusable neglect that would justify granting Plaintiff's untimely "request" for an extension of this deadline, much the less extraordinary circumstances that the Court stated it would expect to accommodate an extension request.

Based on Plaintiff's failure to timely file a class certification motion, the Court acts within its discretion by striking the class allegations and dismissing the class claims from the Amended Complaint. *See, e.g.*, *Grandson v. Univ. of Minn.*, 272 F.3d 568 (8th Cir. 2001) (upholding district court's decision to strike class allegations where plaintiffs failed file class certification motion or move for an extension of time); *Burkhalter v. Montgomery Ward & Co.*, 676 F.2d 291, 294 (8th Cir. 1982) (upholding district court's decision to strike class allegations two

45

months after deadline for filing motion for class certification passed without action by plaintiff); *Chrisman v. Countrywide Home Loans, Inc.*, No. 3:07-CV-333, 2010 WL 1257864, at *2 (E.D. Tenn. Mar. 26, 2010) (granting defendants' motion to strike class allegations where plaintiffs failed to comply with deadline for filing motion for class certification and dismissing plaintiffs' class claims under Rule 41(b)).

In this case, there is no requirement that the purported class members of Plaintiff's uncertified class be provided notice of the involuntary dismissal. Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" the "voluntary dismissal . . . of the claims . . . of a *certified* class." (emphasis added). The plain language of the rule demonstrates that notice requirement only applies to certified classes. "Thus, settlements or voluntary dismissals that occur before class certification are outside the scope of subdivision (e)." 7B Charles Alan Wright & Arthur Miller, Fed. Prac. & Proc. Civ. § 1797 (3d ed. 2015). Involuntary dismissals also fall outside the scope of Rule 23(e)'s notice requirement. Before 2003, the language of Rule 23(e) did not distinguish between voluntary and involuntary dismissals. *Compare* Fed. R. Civ. P. 23(e) (1966 amendment) (requiring "notice of the proposed dismissal" to "be given to all members of the class") *with* Fed. R. Civ. P. 23(e) (2003 amendment) (requiring notice of "voluntary dismissal"). Even before the 2003 amendment, however, courts had held that the Rule 23(e) notice requirement only applied to voluntary dismissals. *E.g.*, *Jones v. Caddo Parish Sch. Bd.*, 704 F.2d

46

206, 214 (5th Cir. 1983) (upholding a district court's dismissal of a class action, because an involuntary dismissal "could not involve collusion or benefit the representative plaintiffs at the expense of the remaining class members, the protection afforded by giving notice to the absentees is not required") (quoting 7A Wright & Miller § 1797 (1st ed. 1972)); *Laventhall v. Gen. Dynamics Corp.*, 91 F.R.D. 208, 210 (E.D. Mo. 1981) (holding that the notice requirement of Rule 23(3) was "not applicable" to an involuntary dismissal because the rule "only applies in the case of voluntary dismissals"). Here, where there has been no certified class and the dismissal of the class claim is involuntary, the notice requirement of Rule 23(e) does not apply.

Accordingly, the Defendants' Joint Motion to Strike and Dismiss Class Allegations for Failure to file a Class Certification is sustained. The Court orders all class allegations to be stricken from the Amended Complaint (Doc. #157), and all class claims therein are dismissed with prejudice.

## VII. CONCLUSION

For the reasons set forth above, Plaintiff's Letter Briefs of April 10, 2015, and May 7, 2015 (Doc. #426), the "Memo in Opposition to Request for Default Judgment on [the Law Firm Defendants'] Motions for Summary Judgment" (Doc. #431), and the Memorandum in Opposition directed to Motions for Summary Judgment and to Strike Class Allegations (Doc. #445), construed as motions for

additional discovery under Rule 56(d)(2) of the Federal Rules of Civil Procedure, are OVERRULED.

The Motions to Strike (Doc. #428 & #436) filed by LSR and the Motion to Strike (Doc. #429) filed by RACJ are OVERRULED.

The Motion captioned "Request for [an] Order Granting Unopposed Motions for Summary Judgment" (Doc. #443) filed by Wells Fargo and Barclays is OVERRULED.

The Motion to Compel Plaintiff Kline's Discovery Responses Related to Damages (Doc. #430) filed by Defendants Wells Fargo and Barclays is SUSTAINED. In the event that his claims against said Defendants survive summary judgment, Plaintiff is ORDERED to comply with Rule 26(a)(1)(A)(iii) by disclosing, by affidavit with attached exhibits: 1) the categories of damages he seeks; 2) the amounts and computations he employed to arrive at the amounts he seeks; 3) the documents, or the Bates stamp numbers of the documents he has previously disclosed, on which the damages calculations are based. Said disclosure must occur within thirty (30) days of the Court's ruling on Defendants' Motions for Summary Judgment, if his claims remain viable. Wells Fargo and Barclays may file a Motion for Attorneys' fees under Fed. R. Civ. 37(a)(5)(A) at the conclusion of this litigation, as previously described.

Defendants' Joint Motion to Strike and Dismiss Class Allegations for Failure to file a Class Certification (Doc. #444) are SUSTAINED. The Court orders all class

allegations to be STRICKEN from the Amended Complaint (Doc. #157), and all class claims therein are DISMISSED with prejudice.

Plaintiff must file a Response in Opposition to Defendants' pending Motions for Summary Judgment (Doc. #414, 416, 417, 418, & 419) within twenty-one (21) days from date to file a Response in Opposition, and Defendants have until fourteen (14) days thereafter to file Reply Memoranda.

Finally, the Court notes that Defendants have jointly filed six Motions in Limine (Doc. #456, #457, #458, #459, #460, & #461). The parties are ORDERED not to file Responses or Replies to said motions until the Court has ruled on Defendants' Motions for Summary Judgment. If Plaintiff's claims survive summary judgment, the Court will then set a briefing schedule for Responses and Reply Memoranda to the Motions in Limine, as well as a new trial date.

Date: September 25, 2015

_____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE