IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, et al., :

    Plaintiffs,

v. : Case No. 3:08cv408

MORTGAGE ELECTRONIC : JUDGE WALTER H. RICE
SECURITY SYSTEMS, et al.,

    Defendants. :

---

DECISION AND ENTRY OVERRULING PLAINTIFF EUGENE KLINE'S NOTICE OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS (DOC. #450)

---

Pending before the Court is the Notice of Motion to Compel Production of Documents (hereinafter, "Motion to Compel") filed by Plaintiff Eugene Kline ("Plaintiff" or "Kline"). Doc. #450. Kline asserts that Defendant Reimer, Arnovitz, Chernek & Jeffrey Co. L.P.A. ("Reimer") has waived the attorney-client privilege that protected a number of documents from disclosure, and seeks an order compelling Reimer to produce the documents. For the reasons set forth below, the motion is OVERRULED.

I.    **RELEVANT FACTUAL BACKGROUND**[1]

Kline obtained a $160,000 home loan from WMC Mortgage Corporation ("WMC") in June of 2004. Doc. #157 ¶ 25. After Kline fell behind on the payments and defaulted on the loan, Reimer commenced foreclosure proceedings against him in August, 2005, on behalf of WMC and the loan servicer, HomEq Servicing Corporation ("HomEq"). *Id*. ¶¶ 26-29. This initial foreclosure case was dismissed after the mortgage was reinstated. *Id*. ¶ 30.

However, by December of 2006, Kline had again fallen behind on the loan payments, and HomEq notified him that he faced further foreclosure proceedings if he failed to bring the loan current. *Id*. ¶ 31. Reimer filed another foreclosure action against Kline on March 16, 2007, with "Wells Fargo Bank, N.A., as Trustee" ("Wells Fargo"), named as the plaintiff. *Id*. ¶¶ 32-33.

Although the March 16, 2007, foreclosure complaint stated that Wells Fargo was the owner and holder of the promissory note and the mortgage, Kline alleges that the mortgage was not assigned to Wells Fargo until March 26, 2007, ten days after the action was filed. *Id*. ¶¶ 34, 37. He also alleges that both Wells Fargo and Reimer knew that the papers filed in the foreclosure action falsely identified Wells Fargo as the creditor to whom Kline owed the debt. *Id*. ¶¶ 34-36. According to Kline, a HomEq employee falsely represented himself as a Vice-President of

_____

[1] For the sake of brevity, this summary is confined to the allegations from the Amended Complaint Doc. #157) that are relevant to Kline's claims against Reimer and the resolution of his Motion to Compel.

2

Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), for the purpose of assigning the mortgage to Wells Fargo. *Id*. ¶¶ 39-44. During the second foreclosure action, Kline sold his home and paid off the loans it secured, which included a second mortgage. *Id*. ¶¶ 43, 62. Defendant, Lerner Sampson & Rothfuss ("LSR") represented MERS and HomEq in connection with the second mortgage. *Id.* ¶¶ 62-67. Kline alleges that he was improperly charged LSR's attorneys' fees for this representation. *Id.* ¶¶ 68-71.

The Amended Complaint lists a number of fees and expenses that Reimer allegedly charged Kline to pay off the delinquent mortgage loan. *Id*. ¶¶45-61. These fees included $450.00 for "Process Service," $75 for each of the parties served, $100 to serve MERS, a $50 "handling" fee, $803 for a "Preliminary Judicial Report" (of which $335 went towards an "Exam Fee"), $150 for a "Final Judicial Report" (of which $50 went towards an "Exam Fee"), and late fees charged after the acceleration of the loan. *Id* ¶¶ 45-67. The foregoing fees, along with Reimer's alleged knowledge that Wells Fargo did not own the note or mortgage when filing suit in state court, gave rise to a number of claims against Reimer, only two of which have not been dismissed: 1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f; and 2) unjust enrichment under the common law of Ohio.[2]

_____

[2] A summary of the dismissed claims against Reimer may be found on pages 2–4 of the Decision and Entry Sustaining in Part and Overruling in Part Reimer' Motion for Judgment on the Pleadings. Doc. #366.

3

## II. RELEVANT PROCEDURAL BACKGROUND

On March 3, 2014, Reimer responded to Kline's First Request for Production of Documents. Doc. #447-1. Kline had requested any contractual agreements in Reimer's possession between it and any third party that had served as an "outsourcer" or "default manager" by providing foreclosure-related services related to his mortgage. *Id.* at 2. Reimer objected to the request, but produced a privilege log describing several communications involving foreclosure referrals. Brown Aff. Ex. 1, Doc. #447-2. One entry described an email sent on March 7, 2007: "E-mail communication to Law Firm referring Kline Loan for foreclosure." Doc. #447-2 at 7. The email was prepared by Rosicki, a law firm that referred foreclosure cases to Reimer, and was identified as privileged because it was an "attorney-client communication." *Id*.

On March 26, 2014, Kline's attorney, Paul Grobman, sent a letter to Reimer's attorney, Lori Brown, complaining about the discovery responses. Ms. Brown sent a response on April 16, 2014, that attempted to address the concerns, in part stating:

> Your letter and discovery requests also appear confuse the claims/allegations that remained against the Lerner Sampson law firm and the Reimer Firm. For example, there is no claim that the Reimer Firm sought improper attorney fees, nor is there any specific allegation that there was illegal fee splitting by the Reimer firm. I ask that you please review the Reimer Firm's responses again.

Doc. #447-2.

4

On February 20, 2015, Ms. Brown sent Mr. Grobman an email with an updated privilege log identifying a recently discovered document: an "Addendum to Agreement to render Services" between Rosicki and Reimer, dated October 20, 2008 (hereinafter, "Rosicki Addendum"). Doc. #447-2 at 11, 16. In the email to Mr. Grobman, Ms. Brown stated: "Our client located an addendum to a service agreement with Rosicki. It is dated October 20, 2008. They were unable to locate the agreement it relates to and there may not be an agreement. It is only signed by [Reimer] and not Rosicki." *Id.* at 11.

Also on February 20, 2015, after receiving this disclosure, Kline's attorney deposed Reimer's representative, Dennis Reimer. Doc. #451-1; Doc. #454-1. Mr. Grobman asked Mr. Reimer if his firm had used any "outsourcers" when it provided legal services during the foreclosure case against Kline. Doc. #431-1 at 3. Mr. Reimer stated that it had, and identified Rosicki as "the one that sent us the foreclosure." *Id*. at 4. Mr. Reimer could not remember if Reimer had an agreement with Rosicki or not, but described the firms as having "a relationship" in which Rosicki "would send us cases" from HomEq. *Id.* Rosicki would "package" and "send" foreclosures to Reimer on behalf of mortgage servicers, and afterwards bill Reimer $200 dollars for each case. *Id.* at 5, 8. Mr. Reimer also stated: "I don't have a relationship with the Rosicki firm. The relationship is with HomEq. They're the ones that are going to pay my bill, not Rosicki." *Id.* at 8. When pressed on whether or not an agreement with Rosicki existed, Mr. Reimer stated: "The only

thing we paid Rosicki was $200 and that's what they charged us. We had no fee arrangement with Rosicki whatsoever, period. None." *Id.*

After the deposition, Mr. Grobman requested that Reimer make further attempts to locate an agreement with Rosicki. Doc. #447-2. On April 8, 2015 Ms. Brown emailed Mr. Grobman:

> My client has not been able to locate any such agreement and does not know whether it executed any other agreement. My client has followed up with Rosicki to find out if there was such an agreement between the two law firms and whether it has a copy. All obligations were met in my client's responses to your discovery requests at the time we responded to them, and any updates we provided.

Doc. #447-2 at 17.

The parties filed a number of motions in the spring and summer of 2015 that the Court has ruled on. Omnibus Decision and Entry, Doc. #463. Although those motions have been ruled upon, several statements made by the parties in their briefing must be referenced, as they are relevant to the motion presently before the Court.

The Defendants in this case filed a motion captioned "Joint Motion to Strike and Dismiss Class Allegations for Failure to File a Class Certification Brief" on August 3, 2015. Doc. #444. Therein, they argued that the Court should strike all class allegations from the Amended Complaint because Kline had failed to file a Motion for Class Certification before the deadline or seek an extension.

Kline filed a Memorandum in Opposition on August 14, 2015, in which he primarily argued that discovery should be reopened. Doc. #445. The Court construed the Memorandum in Opposition and a number of his other filings as

6

requests under Rule 56(d)(2) and overruled them. Omnibus Decision and Entry, Doc. #463. Although the majority of the arguments were directed at Wells Fargo, Barclays and MERS, several statements in the Memorandum in Opposition regarding Reimer's discovery responses are relevant here, as well as Reimer's subsequent Reply. Based on documents recently produced by Barclays that showed several previously undisclosed "fee adjustments" to the escrow account for Kline's foreclosure, his attorney argued that "the defendants [] added legal fees paid to the Reimer firm to the amounts purportedly owed by Mr. Kline, which appeared to have been deducted from the previously-concealed Escrow Balance." Doc. #445 at 5. Mr. Grobman further asserted that:

> Defendants have provided no explanation for their failure to produce the agreements which governed Barclays/HomEq's relationship with Fidelity and Rosicki. While plaintiff has located portions of these documents, he has not had any opportunity to question defendants' witnesses regarding these HomEq Agreements. Indeed, plaintiff has significant reason to believe that the defendants may be concealing other agreements between Barclays/HomEq, Reimer Lorber or Lerner Sampson, on the one hand, and Fidelity and Rosicki, on the other, relating to the outsourcing and legal services provided by these entities in the foreclosures against Mr. Kline and other prospective class members. While both Reimer Lorber and Lerner Sampson have admitted that they were hired by Rosicki in the foreclosures against Kline, both firms claim that there was no written agreement between them and Rosicki or Fidelity. However, on the morning of the Reimer firm's Rule 30(b)(6) deposition on February 20, 2015, the Reimer firm emailed plaintiff's counsel, stating that it had located "an addendum to a service agreement with Rosicki." ... Despite the fact that there is an "addendum to a service agreement with Rosicki" – which Reimer Lorber refuses to disclose on the basis of a purported privilege – the Reimer firm incredibly continues to claim that no such "service agreement with Rosicki exists."

Doc. #445 at 14-15.

7

Reimer filed a Reply on August 26, 2015, in which it argued that Kline had "lump[ed] all the defendants together in his opposition brief in attempt to deflect from his failure to" timely respond to its Motion for Summary Judgment or file a Motion for Class Certification. Reimer further stated:

> Plaintiff now claims that he is seeking documents between the Reimer Firm and Rosicki (another law firm that referred the foreclosure matter to the Reimer Firm), to support a claim for improper fee sharing. Plaintiff also claims that the newly discovered information from the co-Defendants supports his claim that he was charged for the Reimer Firm's legal fees. However, Plaintiff has not asserted a claim against the Reimer Firm in the Complaint or First Amended Complaint for improper fee-sharing or for improper collection of attorneys' fees. ... Plaintiff has not alleged any class claims relating to "outsourcing," Rosicki, or fee sharing. Moreover, as established in the Reimer Firm's summary judgment briefing, the Reimer Firm did not seek to or collect any attorneys' fees from Plaintiff, and the payoff quote at issue does not contain attorneys' fees.

Doc. #447 at 2-3.

Reimer then recounted the discovery timeline described above regarding the Responses to Kline's Requests for Production of Documents, including the privilege log and its subsequent supplementation with the Rosicki Addendum. Particularly relevant here is the statement in the Reply that "[t]he Reimer Firm has not located any other agreement with Rosicki," and the following footnote to that statement:

> The Addendum specifically states, "In the event an Agreement has not been entered into between Rosicki and the Firm, this Addendum will take full force and effect." Thus, it is possible that an earlier Agreement has not been entered into.

*Id.* at 7.

Believing that this quotation waived any privilege attached to the Rosicki Addendum, Kline filed the Motion to Compel on September 1, 2015. Doc. #450.

8

The arguments in support of the motion assert that the transactions to the Barclays escrow account and the referral fees paid to Rosicki are evidence that Reimer passed attorneys' fees onto Kline during the foreclosure proceedings. Doc. #452 at 2-5. Because Reimer quoted from the Rosicki Addendum to support its claim that no other agreement with Rosicki exists, Kline argues that this constitutes a waiver that entitles him to all documents in Reimer's possession that the firm has withheld on the basis of the same privilege. *Id.* at 5.

Reimer filed a Response in Opposition, captioned "Brief in Opposition to Plaintiff's Motion to Compel Production of Documents Based on Waiver of Privilege," on September 9, 2015. Doc. #454. Therein, Reimer accuses Kline of stating "blatant falsities" in support of the Motion to Compel, the filing of which it believes is an attempt to circumvent the long-passed discovery deadline. Based on the following arguments, Reimer requests that the Court overrule Kline's motion. *Id.* at 1. First, the Motion to Compel is untimely because it was filed after the discovery cut-off date of March 31, 2015. *Id.* at 5. Second, Kline's attorney did not comply with the requirement in Local Civil Rule 37.1 to exhaust all nonjudicial means of resolving discovery disputes before filing the Motion to Compel because he filed it after receiving only one email response from Reimer's attorney. *Id.* at 8-9. Third, the quotation from the Rosicki Addendum did not waive any attorney-client privilege because it did not reveal a privileged communication and it was not offered in support of a claim or defense in this action. *Id.* at 9. Fourth, the Addendum and the documents sought are not relevant to Kline's claims as he

9

actually pled them against Reimer, as they contain no factual allegations that Reimer illegally sought to recover or share attorneys' fees. *Id.* at 11-13. Finally, Kline's Motion to Compel is not directed to a specific discovery request with which Reimer has refused to comply, because it "only included" the Rosicki Addendum "in the amended privilege log as evidence of the Reimer Firm's good faith effort to disclose documents." *Id.* at 13.

In a Reply Memorandum filed on October 1, 2015, Kline counters Reimer's Response as follows. First, Reimer does not identify any precedent allowing a party to selectively quote from a privileged document and maintain the privilege. Doc. #464 at 1-2. Second, the Motion to Compel is not untimely because Reimer did not disclose the contents of the Rosicki Addendum by quoting it until August 26, 2015, months after the discovery deadline. *Id.* at 2. Third, the email received from Reimer's attorney calling the waiver claim "frivolous" demonstrates that it would have been futile to engage any more extrajudicial attempts at resolving the dispute before filing the Motion to Compel. *Id.* at 2. Finally, Reimer's argument that the Rosicki documents are irrelevant is contradicted by the fact that Reimer quoted from the Addendum in support of its contention that no other agreement between Rosicki and Reimer existed. *Id.* at 3.

With the foregoing arguments in mind, the Court turns to consideration of Kline's Motion to Compel.

III.     ANALYSIS

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" If a party fails to produce relevant discovery, Rule 37 (a)(1) allows the other party to "move for an order compelling disclosure or discovery."

Two of Reimer's more tangential arguments will first be addressed. First, the Court rejects Reimer's assertion that Kline's Motion to Compel is untimely because he filed it after the discovery cut-off date of March 31, 2015. Normally, this argument would hold weight. Generally, a motion to compel filed after the close of discovery is considered untimely. *E.g.*, *White v. Honda of Am. Mfg., Inc.*, No. 2:07-CV-216, 2008 WL 5431160, at *5 (S.D. Ohio Dec. 31, 2008). Courts typically rule that "absent special circumstances, motions to compel discovery filed after the close of discovery are untimely." *FedEx Corp. v. United States*, No. 08-2423 MA/P, 2011 WL 2023297, at *4 (W.D. Tenn. Mar. 28, 2011). This Court goes even further, and requires "a showing of extreme circumstances" before it will consider a Motion to Compel filed after the close of discovery. Gen. Order No. Day-12-01 at 10. In *White*, the court denied a motion to compel filed after a discovery deadline where the arguments in support of the motion were "fairly routine" and "capable of being raised" months before discovery ended. *Id.* Here, however, Kline could not have filed the motion before the March 31, 2015, discovery deadline. He argues that Reimer waived the attorney-client privilege by quoting from the Rosicki Addendum in its August 26, 2015, filing, which occurred

11

well after the discovery deadline. In contrast to *White*, this argument was not able to be raised before discovery ended. As Kline states in his Reply Brief, "it would be grossly unfair if a party could use the privilege as both a sword and a shield simply because it disclosed privileged communications in a court filing after the discovery deadline." Doc. #464 at 2. For this reason, the purported waiver of the attorney-client privilege qualifies as a "special" or "extreme circumstance" that excuses the post-discovery filing of the Motion to Compel. *FedEx Corp.*, 2011 WL 2023297, at *4.

Second, Reimer is incorrect when it asserts that the Motion to Compel is not directed to a specific discovery request that Reimer refused, and should therefore be overruled. Reimer provided the privilege log listing the privileged communications with Rosicki in response to Kline's Request for Production of Documents No. 5, which was brought under Rule 34. Doc. #447-1. The Rosicki Addendum falls within the scope of that request, which requested "[a]ny and all contractual agreements in Reimer Lorber's possession, custody or control relating to foreclosure … services provided on plaintiffs' mortgage loan by any third-party 'outsourcer,' 'default manager' or 'default servicer' …." *Id.* at 2. Reimer supplemented the log with the reference to the Rosicki Addendum after its client unearthed the document. Reimer's refusal to produce documents concerning its communications with Rosicki, including the Rosicki Addendum, are grounded in its objections under Rule 34(b)(2) to Kline's requests under Rule 34(b)(1). Thus, the Motion to Compel is appropriately directed to documents that a party has failed to

produce after a request for production of documents made under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv) (allowing a party to "move for an order compelling … production" if the other party fails to "fails to permit inspection" of the documents "as requested under Rule 34").

However, the Court agrees with Reimer's other arguments in support of overruling Kline's motion. First, the record does not demonstrate that Kline's attorney expended the requisite extrajudicial effort to resolve this dispute before filing the motion. A Motion to Compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). This obligation is echoed in the Court's Local Rules, which state that "motions … relating to discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences" underlying their dispute. S.D. Ohio Civ. R. 37.1. According to the certification filed by Kline's attorney, he advised Reimer's attorney of his "belief" that the firm had waived the privilege in question in emails dated August 27 and August 31, 2015. Doc. #451 at 1. After receiving a response from Reimer's attorney on September 1, 2015, he filed the Motion to Compel the same day. Mr. Grobman neglected to attach either of the emails as exhibits to the affidavit submitted to certify his efforts, hampering the Court's ability to evaluate the quality of his overtures to opposing counsel. At any rate, the limited exchange he attests to demonstrates, at best, a marginal

13

attempt at resolving the dispute before seeking the Court's involvement. "The meet and confer requirement is not merely a formalistic prerequisite to the resolution of discovery disputes and cannot be met by simply showing that the discovery in question was requested more than once." *Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010). The lackluster effort described by Plaintiff's counsel does not satisfy the "good faith" conferral requirement of Rule 37(a)(1).

More importantly, even if the certification had been adequate, Kline has not demonstrated the relevancy of the documents he seeks. Although discovery is broad in scope, it is still confined to "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Kline seeks the Rosicki documents because he believes that they demonstrate that attorneys' fees were charged or passed on to him in some way, presumably based on Rosicki's role as a law firm that referred foreclosures to Reimer on behalf of HomEq.[3] However, Kline's claims against Reimer are not based on any allegation that he was illegally charged the firm's attorneys' fees. Paragraphs 45–61 of the Amended Complaint contain his allegations of the allegedly improper or illegal fees he was charged in connection with the foreclosure that Reimer prosecuted: fees for service of process conducted during the foreclosure against "defendants who were not appropriate parties" and "fictitious persons," fees for unnecessary "judicial reports" from a title

---

[3] The relationship between Rosicki, Reimer, and HomEq is not completely clear, but the basis for Reimer's assertion of privilege appears to arise from Rosicki acting as an agent on behalf of Reimer's client, HomEq.

14

agency that was allegedly an alter ego of Reimer, and post-acceleration late fees on the loan. Am. Compl. ¶¶ 45-61, Doc. #157 at 10-13. There is no mention of attorneys' fees in the allegations concerning Reimer or its client.

As Reimer pointed out both in its briefing and in its response to Kline's attorney before he filed this motion, the only factual allegations of improperly charged attorneys' fees in this case are directed at the other law firm Defendant, Lerner Sampson & Rothfuss ("LSR"), and the Defendants that LSR represented in connection with Kline's second mortgage. Am. Compl. ¶¶ 68-71, Doc. #157 at 14-15. This observation is confirmed by reviewing paragraphs 68–71 of the Amended Complaint. *Id.* In that section, under the heading "Illegal Recovery of Attorneys' Fees," the allegations describe a letter from LSR detailing the attorneys' fees it had "incurred" defending the junior lienholder in the foreclosure action when itemizing the payoff for Kline's second mortgage. *Id.* There is no comparable factual allegation against Reimer regarding the collection of attorneys' fees. There is a single legal allegation in the First Claim for Relief asserting that "Defendants have collected amounts for attorneys' fees, service of process fees, title fees, preliminary judicial reports, final judicial reports and other costs and fees from plaintiffs which were not owed in violation of § 1692f of the FDCPA." Am. Compl. ¶ 134, Doc. #157 at 25. However, this allegation merely bundles the previously pled factual allegations into one sweeping statement. The FDCPA claims against each Law Firm Defendant are separate claims, and Kline makes factual allegations of specific types of improper fees that each firm allegedly collected. As explained,

15

the allegations against Reimer do not mention attorneys' fees. Thus, the relevancy of any document regarding attorneys' fees paid by or to Reimer is not relevant to his claims against the firm.

In his Reply Brief, Kline does not address Reimer's argument that he seeks evidence in support of an unpled claim against it, as the only allegations of improper attorneys' fees concern LSR. Instead, he asserts that "Reimer's claim that it never collected legal fees which plaintiff ultimately had to reimburse is contradicted by" evidence in the record, such as the testimony of a Barclay's representative regarding transactions to an escrow account held by HomEq. Doc. #464 at 3. This statement assumes the relevancy of evidence concerning Reimer's attorneys' fees, but fails to draw any connection to an actual claim against the firm involving attorneys' fees. Kline also argues that "documents relating to the terms of Reimer's relationship with Rosicki and their involvement in the foreclosure against Mr. Kline are plainly relevant to the claims in this proceeding" simply because Mr. Reimer testified about the referral of his foreclosure to Reimer by Rosicki. *Id.* Mr. Reimer answered questions that Kline's attorney posed to him about the referral, over the objections of Reimer's attorney. By providing responses, Mr. Reimer did not generate a claim against the Reimer firm regarding its attorneys' fees where none previously existed. For the foregoing reasons, the Court concludes that the documents Kline seeks are not relevant under Rule 26(b)(1). Accordingly, the Motion to Compel is OVERRULED.

IV.   **CONCLUSION**

In conclusion, Kline's attorney failed to make the requisite extrajudicial effort required to resolve this controversy by Rule 37(a)(1) of the Federal Rules of Civil Procedure. Furthermore, the Motion to Compel and the arguments in support of same do not demonstrate that the documents Kline seeks are "relevant to any party's claim or defense," as required for production under Rule 26(b)(1). For these reasons, it is unnecessary to consider whether Reimer waived the asserted attorney-client privilege by quoting from the Rosicki Addendum. For these reasons, the Motion to Compel (Doc. #450) is OVERRULED.

Date:  October 19, 2015              _____
                                     WALTER H. RICE
                                     UNITED STATES DISTRICT JUDGE