IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | CASE NO. 3:08cv408 |
| | ) | |
| Plaintiffs, | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| MORTGAGE ELECTRONIC SECURITY | ) | **REIMER, ARNOVITZ, CHERNEK &** |
| SYSTEMS, et al., | ) | **JEFFREY CO. L.P.A.'s (F.K.A.** |
| | ) | **REIMER, LORBER & ARNOVITZ** |
| Defendants. | ) | **CO., L.P.A.)  REPLY IN SUPPORT OF** |
| | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |

## I.    INTRODUCTION

Defendant Reimer, Arnovitz, Chernek & Jeffrey Co., L.P.A. ("the Reimer Firm") met its initial burden under the Civil Rule 56(c) standard in its initial Motion for Summary Judgment. (Doc. No. 414).  It has submitted specific evidence demonstrating the absence of a genuine issue of material fact on the material elements of Plaintiff's remaining claims for:  (1) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692f (1), and (2) and the common law of Ohio for unjust enrichment, both relating to the costs and expenses that the Reimer Firm sought to collect on behalf of its client arising out of the **2007 State Foreclosure Action**.  Specifically, Plaintiff argues in his Opposition (Doc. No. 470) that the Reimer Firm improperly sought attorney fees, post-acceleration late fees and private service of process fees as relates to the 2007 State Foreclosure Action.  He has abandoned his claim that the Reimer Firm improperly sought the costs and expenses for judicial reports or any other items on behalf of its client.

In his opposition brief, Plaintiff identifies new fees and expenses, which allegedly relate to the 2005 State Foreclosure Action.  As this Court has already held, the 2005 State Foreclosure Action is not an issue in this case.

Plaintiff has not established his claims, nor has he presented any evidence to create a material issue of fact.[1]  As such, the two remaining claims asserted against the Reimer Firm must be dismissed with prejudice.  Defendant the Reimer Firm respectfully renews its request that this Court grant summary judgment in its favor on all the remaining claims.

## II.  PLAINTIFF HAS FAILED TO MEET HIS BURDEN THAT THE REIMER FIRM VIOLATED THE FDCPA.

As set forth in the Reimer Firm's Motion for Summary Judgment, any foreclosure costs and expenses charged to Mr. Kline were authorized by the mortgage contract and promissory note.  (Doc. No. 414, pp. 11-14).  Kline, however, argues that the Reimer Firm violated 15 U.S.C. §1692f(1), by collecting the following improper fees in the 2007 State Foreclosure Action:  (1) attorneys' fees, (2) post-acceleration late fees, and (3) private service of process fees.  (Plaintiff's Opp., p. 11, Doc. No. 470).[2]  Plaintiff concedes that his unpled claims relating to the 2005 State Foreclosure Action are not actionable under the FDCPA "in light of the one year statute of limitations."  (Plaintiff's Opp., p. 12, Doc. 470).[3]  Moreover, Kline's admissions under Rule 36 that these fees were proper and reasonable bar any claims.  (Reimer MOSJ, p. 18 and Ex. 1 to Brown's Aff., Ex. P to MOSJ).[4]

15 U.S.C. § 1692f(1) allows a debt collector to collect or attempt to collect any costs and expenses authorized by the note and mortgage or permitted by law and specifically provides:

---

[1] In the interest of judicial economy, Defendant hereby incorporates the law and argument contained in its previous filings:  Doc. Nos.:  414, 429, 435, 444, 447, and co-defendant's respective Replies in Support of MOSJ.

[2] Kline does not dispute that the costs for the judicial reports were proper and therefore do not violate the FDCPA. He has abandoned this claim.

[3] They are also barred by res judicata, as they were previously dismissed in *Kline I*.

[4] Plaintiff did not address his failure to timely file responses to the Reimer Firm's RQA in his opposition brief. He has therefore, waived any argument with respect to this issue.

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

1)      The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

### A.     Plaintiff Misrepresents that the Reimer Firm Improperly Collected Attorneys' Fees in the 2007 Foreclosure.

The evidence and factual record here demonstrate that the Reimer Firm did not attempt to collect its attorneys' fees from Kline with respect to the payoff of his mortgage on the first loan.

### 1.     There are no allegations in Plaintiff's complaint that the Reimer Firm improperly sought or collected attorneys' fees.

First, as noted by this Court in its October 20, 2015 Order, "there is no mention of attorneys' fees in the allegations concerning Reimer or its client." (Doc. No. 471, p. 15). As set forth in the Reimer Firm's prior briefing, the only factual allegations of improperly charged attorneys' fees in this case are directed at Lerner Sampson & Rothfuss. This Court agreed: "this observation is confirmed by reviewing paragraph 68-71 of the Amended Complaint." The Court further stated:

> There is no comparable factual allegation against Reimer regarding the collection of attorneys' fees. There is a single legal allegation in the First Claim for Relief asserting that "Defendants have collected amounts for attorneys' fees, service of process fees, title fees, preliminary judicial reports, final judicial reports and other costs and fees from plaintiffs which were not owed in violation of §1692f of the FDCPA." Am. Compl. ¶ 134, Doc. #157 at 25. However, this allegation merely bundles the previously pled factual allegations into one sweeping statement. The FDCPA claims against each Law Firm Defendant are separate claims, and Kline makes factual allegations of specific types of improper fees that each firm allegedly collected. As explained, the allegations against Reimer do not mention attorneys' fees. Thus, the relevancy of any document regarding attorneys' fees paid by or to Reimer is not relevant to his claims against the firm.

(Doc. No.  471, pp. 15-16).

Plaintiff has never addressed Reimer's argument that Mr. Kline has not pled a claim against it for seeking to collect or collecting attorneys' fees in the 2007 State Foreclosure Action in violation of the FDCPA. In fact, the Reimer Firm addressed this issue multiple times in prior briefings, as Plaintiff repeatedly lumped all Defendants together with respect to the attorney-fee issue.[5] As such, Plaintiff cannot raise this claim in response to a summary judgment motion. See, *Tucker v. Union of Needletrades, Indust. & Textile Emples.*, 407 F.3d 784, 788 (6th Cir. 2005).

> **2.** **Plaintiff has failed to establish a claim for the improper collection of attorneys' fees. The indisputable evidence is that the Reimer Firm did not seek to collect or collect attorneys' fees.**

Even if Plaintiff had properly plead a claim for the collection of attorneys fees, as established in the Reimer Firm's prior briefing, (Doc. Nos. 414,429,435), the Reimer Firm did not seek to or collect any attorneys' fees from Plaintiff, and the payoff quote at issue does not contain attorneys' fees. In fact, the November 2007 payoff letter affirmatively states: "This does not include any attorney fees." (See, payoff quote, Ex. J to Reimer MOSJ, Doc. No. 414). Mr. Gormley, who prepared the payoff letter, testified that it did not contain attorneys' fees. (See, Gormley Aff. ¶ 9, Ex. I. to Reimer MOSJ). Plaintiff's new argument is that he was charged attorneys' fees by Reimer, based on how the Firm's client allocated or applied funds after the loan was paid off. (Plaintiff's Opp., p. 15). The Reimer Firm is entitled to be paid by its client for the legal work it performed in the 2007 State Foreclosure Action. How its client, HomEq/Barclays, was later reimbursed is irrelevant to Plaintiff's claim. Plaintiff has presented no evidence to create an issue of fact with respect to whether the Reimer Firm sought or collected attorneys' fees from him. Plaintiff is misdirecting this Court by pointing to how

---

[5] As an example, see Plaintiff's Opposition to Motion to Dismiss, Doc. No. 279, p. 4; Reimer's Reply, Doc, 281, p.10.

HomEq allocated or transferred the funds <u>after</u> the payoff of the mortgage loans when Kline sold his home.  This is a red herring.  HomEq's procedures as to its internal application of post-closing funds are irrelevant to the claims against the Reimer Firm.

Plaintiff misleadingly states that there is extensive testimony that the parties charged illegal fees, including illegal attorneys' fees, and that the "new escrow history" showed that Wells Fargo added legal fees paid to the Reimer Firm to Mr. Kline's account balance ***after*** he paid off the loan.  (Plaintiff's Opp., p. 8-9).  The "evidence" presented by Plaintiff does not establish or create an issue of fact as to whether the Reimer Firm sought to collect or collected attorneys' fees from Kline.  Plaintiff cannot support his claims or create and issue of fact with inferences.

Plaintiff further claims that testimony by Barclays' representative Ms. Cartmill regarding transactions to an escrow account held by HomEq, after the loan payoff, somehow create an issue of fact.  Rather, the testimony and documents show HomEq's internal application of funds after the closing on the property.[6]  This does not establish that the amounts contained in the payoff quote were illegitimate.  Nor does it create any issue of fact with respect to whether any of the costs and expenses were improper or whether the Reimer Firm actually sought or collected attorneys' fees.  The Reimer Firm has no knowledge or control over HomEq's internal application or transfer of funds with respect to the payoff of the mortgage loan when Kline sold his home.  Such accounting allocations made after the fact has nothing to do with the claims and defenses here.

---

[6] As argued by Barclays, the "evidence" to which Plaintiff refers to shows only that the servicer elected to allocate toward the Reimer Firm's fees, money  to which the lender was entitled.  (See, Amicus Brief, Doc. No. 437, pp. 8-10).

Further, as the Barclays' representative testified, the Escrow history is a spreadsheet developed from the payment history kept by HomEq. (Cartmill Tr. 20-22).[7] The document is a "report" pulled from a HomEq database containing data regarding certain loans owned or serviced by HomEq prior to August 31, 2010. (Cartmill Tr. 24, 26-29). This is not a database which the Reimer Firm has access to — in fact the Barclays' representative testified that only three people at Barclays have access to the database. (Cartmill Tr. 20). Plaintiff continually attempts to attribute the HomEq Escrow Activity sheets to the Reimer Firm by using the term "defendants" when describing the document and production of the documents in discovery. As the Barclays representative's testimony demonstrates, it is not the Reimer Firm's document and the Reimer Firm had no access to or control over the document. Cartmill also described how Plaintiff's escrow funds were applied to outstanding corporate advances. Her explanation makes clear that this is an internal issue and that the Reimer Firm has no control over how its clients transfer funds after closing. (Cartmill Tr. 49-50).

The indisputable evidence is that the Reimer Firm did not seek to collect or collect attorney's fees from Kline. The only items it sought to collect are the items contained in the payoff quote and each and every one of those items is permitted pursuant to the loan documents or Ohio law. A review of the payoff quote and itemization makes clear that they did not include any attorneys' fees. (See, Exs. J, I to Reimer MOSJ). Mr. Reimer testified that pursuant to the law firm's policy, it did not seek to collect nor did it collect attorneys' fees with respect to a payoff of a loan. (Reimer Tr. 103-104).[8] Further, Mr. Reimer's affidavit states, in part:

> 3. The only monies the Reimer Firm received in connection with the 2007 Foreclosure Case for fees were paid to it by HomEq for legal fees earned. The Reimer Firm did not seek to collect nor did it collect attorneys' fees from Plaintiff

---

[7] The relevant portions of the transcript of the deposition of Barclays' representative Jacklyn Cartmill, are attached as Ex.A hereto.

[8] The relevant portions of the transcript of the deposition of Dennis Reimer, are attached as Ex. B hereto.

> Kline, with respect to the payoff of the first mortgage on his property.  Nor were any of the Reimer Firm's attorney fees passed on to Mr. Kline with respect to the payoff of the first mortgage on his property.

(See, Ex. Q to Reimer MOSJ).  In an effort to withstand summary judgment, Kline now alleges that the new documents produced by Barclays and Wells Fargo and the testimony of Cartmill contradict these facts.  They do not.  The documents simply show HomEq's internal application and payment of funds after Kline paid off the mortgage loans when Kline sold his home - - they do not prove that the Reimer Firm sought to collect or collected any attorney fees or that Kine paid the Reimer Firm's attorney fees.  To hold the Reimer Firm liable under the FDCPA based on HomEq's internal reconciliation procedures after the payoff of the loan - an issue totally out of the control of the Reimer Firm - would be an absurd result.

The Reimer Firm has no control over the escrow account and how HomEq (Barclays) transfers funds.  It can only control what it presented to Plaintiff in the payoff quote, which undisputedly, did not include its attorneys' fees.  (See, Exs. J, K to Reimer MOSJ).  How the expenses were handled by the servicer after the loan was satisfied and fully released does not create a cause of action under the FDCPA against the Reimer Firm.  Plaintiff has cited to no applicable authority or case law in support of this claim, nor any evidence to create an issue of fact.  As such, Plaintiff's FDCPA claim with respect to the collection of attorneys' fees should be dismissed as a matter of law.

**B.      Plaintiff has Failed to Establish a Claim for the Improper Collection of Post-Acceleration Late Fees.  The Indisputable Evidence is that the Reimer Firm Did Not Seek to Collect or Collect Post-Acceleration Late Fees.**

In his Brief in Opposition, Kline claims that he was improperly charged at least one late fee after his loan was accelerated in 2007. This statement is not true.  This alleged late fee was never sought from or collected from Mr. Kline.  Plaintiff failed to present any evidence that the

Reimer Firm actually charged or collected any post-acceleration late fees. As such he has not created any issue of fact for trial.

As set forth extensively in the Reimer Firm's Motion for Summary Judgment, all late charges sought accrued <u>prior</u> to the loan being accelerated. Kline's Promissory Note expressly permits the note holder to charge a pre-acceleration late fee if the full amount of any monthly payment is not received on time. Kline is not disputing any of the pre-acceleration late charges, as they are clearly permitted. See, *Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir. 2003).

Kline admits that he failed to make his required monthly payments; he was therefore properly charged a late fee pursuant to the Promissory Note. The evidence establishes that pursuant to a January 16, 2007 letter from HomEq, Kline was put on notice that he was in default, that his current arrearage included late charges, and that his loan balance would be accelerated on <u>February 20, 2007</u>. (See, Ex. G to Reimer MOSJ). Here, the acceleration occurred at the earliest on or about February 20, 2007. (Perry Tr. 261-262).[9] No late fees were charged after the acceleration of the loan. Kline was assessed with a late charge of $178.90, which was the balance of the late charges as of February 16, 2007, prior to any acceleration. (See, Exs. H, J and K; Gormley Affidavit ¶¶ 4(a), 10, Ex. I to Reimer MOSJ). <u>The February 7, 2008 letter to Mr. Wegner contains an attachment which clearly shows that the balance of late charges as of February 16, 2007 was $178.90, the same amount paid by Mr. Kline.</u> (See, Feb. 7, 2008 corr., Ex. K to Reimer MOSJ, page *Id.* #6145). No additional charges were sought or paid.

In his Opposition Brief, Plaintiff misrepresents that an attachment to this February 7, 2008 letter indicates that Kline was charged at least one late fee after acceleration. (Plaintiff's Opp., p. 6). Plaintiff fails to identify which attachment he is referring to. He also fails to identify which fee he was charged and on what date. This is because it is untrue. The late fees

---

[9] The relevant portions of the transcript of Perry are attached as Ex. C hereto.

that were charged incurred after the loan was reinstated in 2006.  No late charges were sought by the Reimer Firm for the period after the expiration period contained in the January 2007 letter. This is confirmed by the evidence submitted, including the payoff letter and itemization, loan history and the deposition testimony.

In an effort to create an issue of fact, Plaintiff misrepresents the testimony of Mr. Perry by stating that he admitted that Mr. Kline had been charged at least one post-acceleration late fee in the amount of $69.12.  (Plaintiff's Opp., p.14).  Plaintiff argues that this amount was somehow charged to Plaintiff through a post-payoff expense adjustment by the servicer, HomEq/Barclays. Plaintiff presents no direct evidence, but only inference to support this new theory.  In fact, Mr. Perry, the corporate designee for Barclays, confirmed that the late fees charged accrued prior to acceleration.  (Perry Tr. 262-264).  Only the $178.90 amount was actually assessed to and collected from Plaintiff.  (*Id.*)  The irrefutable evidence is that this $69.12 amount that Plaintiff references was NOT included on the payoff quote the Reimer Firm sent Mr. Kline's attorney.[10] As such, it was never collected from Mr. Kline.  The Reimer Firm did not collect or seek late charges that accrued after February 16, 2007 from Mr. Kline.  (See, Gormley Aff., ¶¶ 4(a), 10, Ex. I to Reimer MOSJ).  Any post-payoff expense adjustments by HomEq/ Barclays are immaterial as Mr. Kline did not pay the additional $69.12 and the Reimer Firm never sought to or collected that amount.  Plaintiff's misrepresentations with respect to any "admissions" should not be countenanced here.  Plaintiff's FDCPA claim as relates to late fees should be dismissed.

### C.    Kline has Failed to Meet His Burden that the Service of Process Costs were Improper and Violated the FDCPA.

Kline argues that the Reimer Firm violated the FDCPA by charging Kline for the service of process fee for serving MERS by personal service with a copy of the foreclosure complaint

---

[10] Mr. Perry further testified that this amount was not included in the payoff and was waived internally after the loan was paid off and the mortgage released.  (Perry Tr. 266-269).

because the first and second mortgages were held in the same pool of loans for which Wells Fargo Bank, N.A. was the trustee. (Plaintiff's Opp., p. 17). He cites to no legal authority in support of this proposition. Plaintiff is simply complaining about how the servicer administered the first and second loan. This does not rise to the level of a claim. It is undisputed that separate counsel was retained with respect to the first and second lien, and that costs, expenses and fees were incurred with the foreclosure proceedings. First, MERS was listed on the preliminary judicial report as a lien holder.[11] Therefore, because MERS was a defendant in the case, service was required.[12] Under Ohio law:

> The object of the foreclosure action is to obtain a sale of premises pledged for the security of a debt, . . . and when suit is brought to foreclose on a mortgage, all persons who may be affected by the judgment or the sale, <u>especially all persons who appear of record to have a lien upon or interest in the mortgage premises, must be made parties defendant in the foreclosure proceedings</u>, to cut off and finally adjudicate all such claims and interests against the mortgage property."

*Deutsche Bank Nat'l Trust Co. v. Richardson*, 2011-Ohio-1123, 2011 Ohio App.LEXIS 953 (March 11, 2011), citing 69 Ohio Jurisprudence 3d (2004) 432, Mortgages, Section 311. (emphasis added).

The decision to serve MERS via personal service was reasonable and not in violation of any law or court rule. (Gormley Affidavit ¶¶ 4(d), 5, Ex. I to Reimer MOSJ). Mr. Reimer testified that it was proper to name as a defendant and serve MERS, as nominee, because it was the record holder of the second mortgage on Mr. Kline's property. (Reimer Tr. 142-148, 150-153). The Reimer Firm had no information and was not advised that a securitized trust or other entity was the equitable "owner" of the second mortgage loan. (Reimer Tr. 142-148, 150-153). Whether the loans were in the same trust was irrelevant to any analysis as to whether MERS,

---

[11] A title report shows anyone that has an interest in the real estate. (Reimer Tr. 120).
[12] A copy of the preliminary judicial report is attached as Exhibit N to Reimer MOSJ, Doc. 414, and verified at the Affidavit of Michael Lorber.

who was the record holder, was to be served as a defendant. Based on the public record, the Reimer Firm was required to name and serve MERS as a defendant in the 2007 State Foreclosure Action. The record holder, not the "beneficial owner," determines who has to be served. (Reimer Tr. 152-158). Both representatives of HomEQ and the Reimer Firm testified that a mortgage cannot be extinguished if the second mortgage holder is not successfully served. (Perry Tr. 227-228, Reimer Tr. 226).

Kline argues that he is unaware of any decision in which a party was allowed to recover expenses for suing itself and references a string cite of case law presumably holding that a plaintiff cannot sue itself. (Plaintiff's Opp., pp. 17-18). These cases are inapplicable here, as they do not address FDCPA violations, trust law, or what is required to extinguish a lien; and certainly do not establish that the Reimer Firm violated the FDCPA. Plaintiff has failed to cite to any applicable case law in support of his argument, including any federal court case law, and instead focuses on cases that have no application under the facts or law here.

The gist of Plaintiff's argument is that the service of process costs are unreasonable and therefore violate 1692(f)(1). (Plaintiff's Opp., pp.17-18). He cites to no authority that these costs violate the FDCPA or are even unreasonable. Section 1692(f)(1) of the FDCPA permits the collection of any costs or expenses authorized by the note and mortgage, or permitted by law. Here, the indisputable evidence is that the fees were permitted by the loan documents and by Ohio law.

As set forth in Reimer's Motion for Summary Judgment, Paragraph 7(e) of the Note, which Kline fails to address, states that the note holder has the right to be paid back for all of its costs and expenses in enforcing the note to the extent not prohibited by applicable law. The note and mortgage permitted such costs and the use of a duly appointed process server is permitted

under Ohio law and therefore is <u>not</u> a violation of the FDCPA. Ohio Rules of Civil Procedure 4.1(B) specifically authorizes the use of special process servers. (Rule 4.1 (B); Reimer Tr. 223).

In *In Re: Broad*, Case No. 10-11759, 2011 Bankr. LEXIS 734 (S.D. Ohio 2011), a case Plaintiff neglects to address, the United States Bankruptcy Court, Southern District of Ohio, considered the issue of whether the cost of a private process server, incurred during a pre-petition foreclosure action, may be included in a mortgagees' arrearage claim under 11 U.S.C. §1322(e). The court explained that a mortgagees' costs are allowed under §1322(e) if they are contemplated in the mortgage documents and not prohibited by state law. The debtors in that case argued that the recovery of the cost of a private process server is prohibited by state law because it is an unreasonable expense. The bankruptcy court found that no limitation was in the debtors' note and mortgage, which required reasonable steps to protect the mortgagees' rights and interests. The notes provided that the note holder would have the right to be paid back all of its costs and expenses in enforcing the note, not prohibited by law. The court did not view the lender's use of a private process server as an exorbitant cost arising from any improper motivation.

Plaintiff does not cite to any authority holding that the service of process fees violated any state or federal law. Nor does he cite to any federal court authority holding that such costs violate the FDCPA. Here, the use of a private process server is permitted under the note and mortgage and is not prohibited by Ohio law. As such, Plaintiff's claim that the service of process costs violated 1692(f)(1) must fail as a matter of law.

      **D.**    **The Reimer Firm Met Its Initial Burden with Respect to the Costs and Expenses Associated with the Preliminary and Final Judicial Reports. Plaintiff Failed to Address this Issue in His Opposition Brief and This Claim is Deemed Abandoned.**

Plaintiff effectively concedes that the only costs and expenses he claims violate §1692(f)(1) of the FDCPA or that support his unjust enrichment claim as relates to the 2007

State Foreclosure Action are for attorneys' fees, post-acceleration late fees and service of process costs.  He does not address the Reimer Firm's argument regarding the allegedly improper costs relating to the judicial reports or any other costs or expenses.  Therefore, it is clear that Plaintiff does not dispute that the costs and expenses related to the preliminary and final judicial reports were proper.  That is, that they did not violate § 1692 (f)(1) of the FDCPA or any other state law.

Thus, where a "plaintiff asserts a claim in a complaint but then fails to delineate it in her brief in opposition to summary judgment, that claim is deemed abandoned."  See, *EEOC v. Home Depot U.S.A., Inc.*, Case No. 4:07cv0143, 2009 U.S. Dist.LEXIS 11596 (N.D. Ohio Feb. 17, 2009); *Clark v. City of Dublin*, 178 Fed. Appx. 522, 524-25 (6th Cir. 2006, unreported).[13] Further, a court properly relies upon the facts presented by a moving party where the non-moving party fails to oppose or respond to the arguments and authority presented by the moving party in its summary judgment motion.  There is no duty imposed upon the court to "search the entire record to establish that it is bereft of a genuine issue of material fact."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (internal citations omitted).[14] If the nonmoving party remains silent, he has waived his claim. *Id.* at 405.

The Reimer Firm demonstrated in its summary judgment motion, in accordance with Fed. R. Civ. P. 56, that there are no genuine issues of material fact with respect to Kline's claims against it with respect to alleged improper costs and expenses related to the preliminary and final judicial reports,  thereby entitling it to judgment as a matter of law.  Without any opposition from Kline on this issue, Plaintiff's claim that the costs and expenses relating to the judicial reports violated § 1692(f)(1) of the FDCPA  should be dismissed as a matter of law.

---

[13] *Am. Marietta Corp. v. Essroc Cement Corp.*, 59 Fed. Appx. 668, 671 (6th Cir. 2003), unreported.
[14] Accordingly, it is proper for a court to grant a motion for summary judgment where the moving party meets its initial burden and the non-moving party fails to oppose the motion or any argument set forth in the motion. *Hicks v. Barberton Police Dept.*, Case No. 5:11cv76, 2012 U.S. Dist. LEXIS 30731, *12 (N.D. Ohio Mar. 8, 2012); *Brown v. Warden Voorhies*, Case No. 07-cv-13, 2012 U.S. Dist. LEXIS 44511, *9 (S.D. Ohio Mar. 30, 2012).

III.     KLINE FAILS TO MEET HIS BURDEN TO SUSTAIN A CLAIM FOR UNJUST
         ENRICHMENT.

   A.     The 2005 State Foreclosure Action is not the Subject of Plaintiff's Complaint.
          Therefore, to the Extent Plaintiff Premises His Unjust Enrichment Claim on
          the Fees Sought or Collected in the 2005 State Foreclosure, it is not an
          Actionable Claim.

          1.     This Court has already held that the 2005 State Foreclosure is not the
                 subject of Plaintiff's Complaint.

Kline argues that as a result of the **2005 State Foreclosure matter** he paid attorneys'
fees to the Reimer Firm in order to <u>reinstate</u> his loan.  Plaintiff is not arguing that seeking
attorneys' fees to <u>reinstate</u> a loan are improper.  (Kline argues that seeking attorneys' fees on a
<u>payoff</u> is improper).  Instead, he argues that because the Reimer Firm allegedly misrepresented
MERS as the "owner" and "holder" of the note in the 2005 State Foreclosure, the representation
was false and that MERS had no standing to file the foreclosure and therefore the Reimer Firm
could not have been entitled to recover attorneys' fees from Mr. Kline (which were allowed
pursuant to the reinstatement of the loan).  (Plaintiff's Opp., pp.21-22).  As a result, he argues
that the Reimer Firm was unjustly enriched.

First, this Court has already held that the 2005 State Foreclosure Action is not the subject
of this lawsuit, and in particular cannot be the basis for Plaintiff's unjust enrichment claim.  This
Court has made it clear that the remaining claims against the Reimer Firm are for violation of the
Fair Debt Collections Practices Act, 15 U.S.C. § 1692f(1), and the common law of Ohio for
unjust enrichment, both relating to the costs and expenses that the Reimer Firm sought to collect
on behalf of its client, arising out of the **2007 Foreclosure Action**.  While Kline concedes that a
claim regarding improper costs and expenses sought or collected in the 2005 State Foreclosure
Action cannot be brought under an FDCPA theory (Plaintiff's Opp., p. 12, fn. 1), and despite this
Court's clear pronunciation, Kline still seeks to improperly assert an unjust enrichment claim and

14

recover damages from the Reimer Firm arising out of the 2005 State Foreclosure Action. Importantly, only two sentences in the Amended Complaint reference or relate to the 2005 State Foreclosure Action. Those two sentences provided background only:

> 29.  In August 2005, Reimer commenced foreclosure proceedings against Plaintiff.

> 30.  Those foreclosure proceedings were later dismissed as a result of a reinstatement of mortgage.

(Doc. No. 157). The Amended Complaint contains no other facts or allegations with respect to the 2005 State Foreclosure Action.

This Court noted in its September 5, 2014 Decision and Entry that the 2005 Foreclosure Action is not a subject of this case:

> "Reimer correctly argues that Kline's interrogatory responses all concern the 2005 foreclosure, which is not the subject of this action. It is, therefore, irrelevant whether those responses provide further detail that might support a claim of unjust enrichment arising out of the 2005 foreclosure, and it is unclear why Kline brings them up to support a claim arising out of the 2007 foreclosure. The allegations of the amended complaint and the record before the Court demonstrate that Kline's viable unjust enrichment claim arises from the fees Reimer collected in the 2007 foreclosure case."

(Doc. No. 366, p. 15).

Further, in its September 25, 2015 Decision and Entry, this Court clearly stated: "Furthermore, the letter mentioned damages from the 2005 State Foreclosure Action, which are not at issue in this case." (Doc. No. 463, p. 32). As a result, Plaintiff cannot maintain a claim for unjust enrichment arising out of the 2005 State Foreclosure Action.

> **2.  Any unjust enrichment claim related to the 2005 State Foreclosure Action is time-barred.**

As this Court is well aware, Kline previously asserted FDCPA claims and state law claims relating to the costs and expenses that were sought in the reinstatement of his loan in the

2005 State Foreclosure Action. Plaintiff filed that lawsuit in March 2007, against the Reimer Firm and HomEq, in the U. S. District Court, Southern District of Ohio, Case No. 3:07-cv-084("*Kline I*"). The FDCPA claim arising out of the 2005 State Foreclosure Action was dismissed with prejudice in a January 28, 2008 Opinion by Judge Rose. (*Kline I*, Doc. No. 33). Kline sought reconsideration of the dismissal, which was denied in an Entry and Order dated November 25, 2008. (*Kline I*, Doc. No. 46). The Court declined to exercise supplemental jurisdiction of the state law claims. (*Id.*) Kline did not appeal the rulings, nor did he re-file any of the state law claims in state court or any other court. Kline did not seek to assert or address any of the claims or facts related to the 2005 State Foreclosure Action in the Complaint or Amended Complaint filed in this action. Thus, any state law claim, including a claim for unjust enrichment, arising out of the 2005 State Foreclosure Action would be time-barred. Pursuant to numerous authorities, the statute of limitations is not tolled for state law claims that are dismissed by a federal court, when that federal court declines to exercise supplemental jurisdiction over those state law claims. Plaintiff has never re-filed the unjust enrichment claim that was the subject of *Kline I* and it would be time-barred. See, § 1367(d) and *Parrish v. HBO & Company*, 85 F.Supp.2d 792, 745-796 (S.D. Ohio 1999).

### 3. Plaintiff has failed to present any Fed. R. Civ. P. 56(c) evidence in support of his unjust enrichment claim.

The Declaration of Mr. Grobman does not meet the criteria of Fed. R. Civ. P. 56(c)(4). Plaintiff has presented no admissible Rule 56 evidence as relates to the 2005 State Foreclosure Action. Plaintiff filed multiple exhibits relating to the 2005 State Foreclosure Action which purport to support his unjust enrichment claim. (See, Exs. 6, 7 to Plaintiff's Opp., Doc. No. 465). Mr. Grobman simply attached these documents to an affidavit. He does not state they are true and accurate copies, nor does he establish that he has any personal knowledge of the exhibits (or

that he is the author of these exhibits).  These exhibits are not properly authenticated and are therefore inadmissible under Rule 56(c)(4).  See, *Bell v. City of Topeka*, 496 F.Supp.2d 1182 (D. Kan. 2007); *Andrew Smith v. Paul's Pak, Inc.*, 754 F.Supp.2d 1120 (N.D. Ca. 2010).  In *Bell*, the court held that "the personal affidavit of plaintiff's counsel is insufficient to provide authentication when plaintiff's counsel is not the author of these documents nor does he state that he has any personal knowledge of the facts contained within those documents."  *Id.* at 1185.[15]

These documents are also immaterial as they relate to the 2005 State Foreclosure Action. As such Exhibits 6 and 7, each relating to the 2005 State Foreclosure Action should be disregarded by this Court.

**B.    Plaintiff Cannot Sustain a Claim for Unjust Enrichment With Respect to Attorneys' Fees that Were Never Collected From Him in the 2007 State Foreclosure Action.  Plaintiff has Failed to Establish that the Reimer Firm was Unjustly Enriched.**

Kline also claims that the Reimer Firm was unjustly enriched by charging him attorneys' fees with respect to the payoff of his loan in the 2007 State Foreclosure Action.[16]  Plaintiff's entire argument with respect to this claim is that "with regard to these legal fees as well, then it was improper to charge these fees, and it would be inequitable to allow Reimer to retain them." (Plaintiff's Opp. p. 23).  Plaintiff does not address Reimer's arguments with respect to his burden to establish an unjust enrichment claim.  Rather, his argument is premised on an exception to the voluntary payment doctrine, which is a defense to the unjust enrichment claim.  He first must prove his claim.  As set forth herein, the indisputable evidence is that the Reimer Firm did not collect any attorneys' fees from Mr. Kline or retain any funds from Plaintiff.  Kline has failed to meet his burden to establish that he (1) conferred a benefit upon the Reimer Firm; (2) that

---

[15] For the same reasons, Mr. Grobman's entire affidavit and exhibits thereto should not be considered by this Court as they do not meet the requirements of Fed. R. Civ. P. 54(c)(4).

[16] Kline did not address Reimer's argument with respect to the expenses for the judicial reports.  As such, he has waived any claim for unjust enrichment arising out of the judicial report expenses.

Reimer had knowledge of the benefit; and (3) that there was a benefit to Reimer under circumstances where it would be unjust to do so without payment ('unjust enrichment')." *Hambleton v. R.G. Barry Corp*., 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (1984). Plaintiff has failed to establish any direct benefit to the Reimer Firm.

Plaintiff also fails to address the Reimer Firm's argument in its motion for summary judgment that there was no indirect benefit. The fees paid to the Reimer Firm <u>by its client</u> were for the legal work performed in connection with the foreclosure lawsuit. The undisputable evidence is that the Reimer Firm was paid its attorneys' fees <u>by its client</u> and that the Reimer Firm would have received payment regardless of whether Kline paid off his loan and the costs and expenses associated with the foreclosure. (Reimer Aff., ¶¶ 3-4, Ex. Q to Reimer MOSJ). There is no dispute here that Plaintiff defaulted on his mortgage and that the Reimer Firm was retained by its client to commence foreclosure proceedings. Here, the Reimer Firm did not receive any benefit, the retention of which would be unjust. Plaintiff has failed to submit any evidence to the contrary or to create an issue of fact.

Plaintiff failed to present any evidence or even any argument to prove that (1) he conferred a benefit on the Reimer Firm; (2) he paid funds directly or indirectly to the Reimer Firm; (3) or that the payment of any of the Reimer Firm's fees was contingent upon Plaintiff's payments. As such, his claim for unjust enrichment fails as a matter of law.

### C. Plaintiff Has Failed to Meet His Burden That an Exception to the Voluntary Payment Doctrine Applies.

Even if this Court were to find that Plaintiff proved the elements of an unjust enrichment claim, the voluntary payment doctrine applies. While Plaintiff cites to case law that holds that the voluntary payment doctrine does not apply if a payment was either made under duress or to

save his property interest, he has failed to meet his burden that one of these exceptions to the voluntary payment doctrine applies.

Plaintiff failed to assert **any argumen**t that his payments were made under duress or to sell his property. Nor did he present **any evidence** that he was under duress, was without full knowledge of the facts, or there was a fraud. Instead, he simply states in a conclusory manner that an exception to the voluntary payment doctrine applies. Plaintiff paid the costs and expenses set forth in the payoff quote voluntarily and with full knowledge that he believed that the charges were improper. The payment was voluntary; Mr. Kline decided to accept a job in Texas and move. (Kline Tr. 40, 42-43)[17]. At the time Plaintiff made the payments, he was represented by two separate counsel and had already sued the Reimer Firm and HomEq in the 2007 Federal Court action, which was dismissed, wherein he argued that the costs and expenses to reinstate the loan were improper under the FDCPA and Ohio state law.

Plaintiff fails to address *Salling v. Budget Rent-A-Car Sys.*, 672 F.3d 442 (6th Cir. 2012),where the Sixth Circuit Court of Appeals affirmed summary judgment in favor of the defendant rental car company on its unjust enrichment claim and held the voluntary payment doctrine applied. Of importance, and similar to the facts here, the Sixth Circuit found that not only did the plaintiff voluntarily make the payment, but he did so "in anticipation of filing suit." *Id*. at 445. In making its decision, the court rejected plaintiff's argument that he "had no choice but to pay the fee." *Id*. Similarly, here, Kline voluntarily paid the costs and expenses, with full knowledge of the facts, **_and in anticipation of filing this lawsuit_**. He testified that legal counsel advised him to "just sell it, settle it, and take care of it after." (Kline Tr. 254). Plaintiff had already filed a lawsuit against the Reimer Firm in the *Kline I* federal action, with respect to the costs and expenses charged in the 2005 State Foreclosure Action, and he had retained an attorney

---

[17] The relevant pages of Kline's Depo. Tr. are attached as Ex. D. hereto.

in connection with the 2007 Federal Court Action. Mr. Kline was represented by two seperate counsel, one with respect to the *Kline I* federal action (Mr. Grobman) and one with respect to the foreclosure matter (Mr. Wegner) and the payment was made in anticipation of filing suit.

Plaintiff instead relies on legal authority from other jurisdictions (which has no precedential value) and which is distinguishable from this case. Further, he cites to case law at the motion to dismiss stage where the courts held that application of the voluntary payment doctrine could not be resolved on a motion to dismiss. See, e.g. *Rocky Knoll Estates MHC LLC v. CW Capital Asset Management, LLC*, Case No. 14-cv-06097, 2015 U.S. Dist. LEXIS 48311 (W.D. NY, April 13, 2015); *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 395 (D.N.J. 2009) (application of the voluntary payment rule could not be resolved on a motion to dismiss where the face of the complaint did not establish that the payment was voluntary).

Further, Plaintiff states that the voluntary payment doctrine does not apply because the parties concealed the new "evidence" or Escrow history which he believes shows that he was charged attorneys' fees, presumably arguing that the payment was not made without the full knowledge of the facts. In support of this artument, Plaintiff misrepresents the applicability of the case, *Patterson v. Dean Morris*, 2011 U. S. Dist. LEXIS 34097, *28 (E. D. La. 2011), as the unjust enrichment claim was dismissed. Plaintiff, however, has failed to present any evidence or argument that but for this alleged "misrepresentation," he would have gone forward with the foreclosure litigation, refused to pay off his loan, sell his house and move to Texas for a new job.

Plaintiff's burden is not to state a plausible claim for relief under a 12(B)(6) standard, but to establish a claim for unjust enrichment and that an exception to the voluntary payment doctrine applies. He has failed to do so. As such, his claim for unjust enrichment must fail as a matter of law.

For all these reasons, Defendant the Reimer Firm is entitled to summary judgment and dismissal of Plaintiff's remaining § 1692f (1) FDCPA and unjust enrichment claims.

Respectfully submitted,

s/*Lori E. Brown*

**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480**)
GALLAGHER SHARP LLP
Sixth Floor - Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
(216) 241-5310 (phone)
(216) 241-1608 (fax)
tbrick@gallaghersharp.com
lbrown@gallaghersharp.com
*Attorneys for Defendant*
*Reimer, Arnovitz, Chernek & Jeffrey Co.*
*L.P.A. (f.k.a. Reimer, Lorber & Arnovitz*
*Co., L.P.A.)*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2015 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

s/*Lori E. Brown*

**TIMOTHY T. BRICK (0040526)**
**LORI E. BROWN (0071480**)
*Attorneys for Defendant*
*Reimer, Arnovitz, Chernek & Jeffrey Co.*
*L.P.A. (f.k.a. Reimer, Lorber & Arnovitz*
*Co., L.P.A.)*