UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

EUGENE KLINE, et. al.                                   :        Case No. 3:08 CV 0408

                          Plaintiffs,                   :

         -- against --                                  :

MORTGAGE ELECTRONIC REGISTRATION            :
SYSTEMS, et. al. .
                                                        :
                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   :


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO AMEND COMPLAINT

## PRELIMINARY STATEMENT

Plaintiff Eugene Kline submits this memorandum of law in support of his Motion to Amend the Complaint in this action.  (A copy of the Proposed Amended Complaint is annexed to the Declaration of Paul Grobman dated December 21, 2015 (hereinafter the "New Grob. Decl.") as Exh. A)  As this court is aware, on February 1, 2015, Plaintiff made a motion to amend the complaint in this action to add a RICO and fraud cause of action based on misrepresentations made by the Defendants in the prior foreclosure actions against Mr. Kline which Plaintiff first uncovered during discovery in this action. On March 27, 2015, this Court denied the Plaintiff's motion to amend, "without prejudice to renewal [of the motion] after a future ruling on the issue of class certification."  Kline v. MERS, 2015 U.S. Dist. Lexis 39674, *22 (S.D. Ohio 2015)

Much has transpired since the filing of that motion: Plaintiff took each of the Defendants' depositions; Defendants HomEq, Wells Fargo and MERS (hereinafter sometimes referred to herein as "the Corporate Defendants") provided thousands of pages of documents both before and after the discovery deadline; and evidence has emerged that the Defendants have concealed evidence and made numerous misrepresentations during the course of this litigation.

As a result, the RICO and fraud claims in the new Proposed Amended Complaint contain significant new allegations which were not in the Proposed Amended Complaint filed in February 2015.  The new evidence uncovered by the Plaintiff demonstrates not only that the Defendants made fundamental misrepresentations in the first and second state foreclosure actions brought against Plaintiff in the Ohio state courts, but also that the Defendants have repeatedly made misrepresentations to Plaintiff and the court in this

2

action, and have also engaged in large-scale spoliation of their corporate records and databases.

As a result, Plaintiff respectfully submits that his motion to amend should be granted.

## BACKGROUND

### A. Plaintiff's Claims

In November 2008, Plaintiff brought this putative class action against the Defendants on behalf of himself and all other similarly situated individuals, alleging claims under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq. ("the FDCPA"), the Truth In Lending Act, 15 U.S.C. §1602 et seq. ("TILA"), breach of contract and unjust enrichment. Despite over a dozen motions filed by Defendants between 2008 and 2014, each of these causes of actions remain pending against some of the Defendants.

### B. Discovery on the Individual And Prospective Class Claims

In 2012, this Court allowed discovery to go forward on both the class and individual claims. Thereafter, each of the parties served discovery. Among other demands, Plaintiff served document and interrogatory requests on Barclays in June 2012, on MERS in August 2012, and on Wells Fargo on November 4, 2013. It is undisputed that none of these Defendants responded to Plaintiff's discovery requests within the time deadlines imposed by the Federal Rules. Thus,

- MERS did not serve its written responses to Plaintiff's discovery requests until March 14, 2014, more than 1 ½ years after Plaintiff served discovery;

- Barclays did not serve its written responses until June 13, 2014, two years after they were due; and

- Wells Fargo did not serve its discovery responses until June 13, 2014, seven months after they were due.

Moreover, the discovery that was belatedly provided by Defendants was incomplete and beset by numerous objections. In the spring of 2014, Plaintiff filed motions to compel against MERS, Barclays and Wells Fargo, requesting that the Court order each to respond fully to the discovery requests served on them by Plaintiff. On October 1, 2014, this Court granted Plaintiff's Motions to Compel, ordering MERS, Wells Fargo and Barclays to provide Plaintiff with additional discovery within 21 days of the Order. (Order, Dock. #377)[1]

MERS provided additional discovery on October 22, 2014, Wells Fargo provided additional discovery on October 22 and November 10, 2014, and Barclays did not produce the additional discovery required by the Order until January 6, 2015. (See Exhibit C-F annexed to the Declaration of Paul Grobman filed on February 1, 2015 (hereinafter the "Grob. Feb. 2015 Decl."), Dock. #393-94)

**C. The February 2015 Depositions**

Once Plaintiff received all written discovery in January 2015, he contacted the Defendants to schedule depositions. (See emails annexed as Exhibit K to the Reply Declaration of Paul Grobman dated March 17, 2015 (hereinafter "the Grob. March 2015 Reply Decl"), Dock. #411) Depositions were scheduled by the parties for six days in February 2015.

Days before these depositions took place, Defendants repeatedly produced

---

[1] On October 7, 2014, Barclays filed a motion for reconsideration requesting, among other things that its time to produce the additional discovery be extended until December 31, 2014. (Dock. # 380)

documents which were encompassed within Plaintiff's discovery requests to HomEq, MERS, and Wells Fargo and which should have been produced years earlier. Thus, on February 14, 2015, HomEq produced Loan Payment Histories for Mr. Kline's two loans. (See cover email attached as Exh. B to the New Grob. Decl.) On February 16, 2015, MERS produced portions of its Recommended Foreclosure Procedures and other responsive documents. (See cover letter annexed as Exh. C to New Grob. Decl.) On February 18, 2015, seven days before its witness was to be deposed, HomEq provided 263 pages of additional documents which were encompassed within Plaintiff's original document demands. (See cover Email annexed to New Grob. Decl. as Exh. D)

Depositions of the Plaintiff and Defendants' Rule 30(b)(6) witnesses took place in late-February of this year. At his deposition, HomEq's witness Matthew Perry was asked about certain fees which appeared on the documents produced by HomEq six days earlier, which appeared to show that attorneys fees and expenses were posted to Mr. Kline's account, one week after the Plaintiff's loan had been "Paid In Full." In response, Mr. Perry said that Mr. Kline would not have been required to pay those fees and expenses. (Perry Dep. annexed to New Grob. Decl. as Exh. E, pp. 274-75)

Unbeknownst to Mr. Kline, HomEq's testimony in this regard was false, a fact which would not first be uncovered until June 2015. In fact, Plaintiff was charged for legal fees and expenses billed after HomEq had represented that Mr. Kline had fully paid off his loan on December 3, 2007.

In its Rule 30(b)(6) deposition taken in February 2015, the Reimer firm's representative testified that the firm – which represented MERS in the 2005 foreclosure action against Kline -- was never told that the notes and mortgages on Mr. Kline's First

and Second Loans had apparently been transferred from MERS to Wells Fargo in 2004.

Reimer testified that the firm would not have commenced a foreclosure against Mr. Kline

on behalf of MERS if it had known of the transfer.  (Excerpts from Reimer Dep. annexed

to Grob. New Decl. as Exh. F, pp. 138, 141-42)  In fact, Reimer acknowledged that – if

the Note and mortgage were no longer in MERS' possession at the time -- MERS likely

did not have standing to bring the 2005 foreclosure action against Mr. Kline:

> Q. … [T]o the extent that there was – this was transferred to
> a Wells Fargo trustee, could a foreclosure have been filed by
> MERS in 2005?
> MS. BROWN: Objection.
> THE WITNESS:  Could it have been?  Very honest with
> you, at this point I would say no.

(Grob. New Decl. Exh. F, p. 137)

### D.  Belated Discovery Produced By Defendants After the February 2015 Depositions

On March 17, 2015 – after the discovery deadline and the completion of the

Defendants' depositions -- Wells Fargo emailed 61 pages of additional documents

relating to Plaintiff Kline's loans, as well as certain policies and procedures relating to

Wells Fargo's role as trustee and custodian of those loans.   (See cover Email annexed to

New Grob. Decl. as Exh. G)  These documents were encompassed within Plaintiff's

original document demands, and should have been produced years earlier.

On March 26, 2015, MERS emailed 1,326 pages of additional documents relating

to its policies and procedures for loans on the MERS System, including policies relating

to foreclosure.  (See cover letter annexed to Grob. New Decl. as Exh. H)  In addition, in a

four-page cover letter, MERS indicated that it was withholding documents on the basis of

the attorney-client and other purported privileges.  Despite repeated requests, MERS has

yet to identify these documents, much less provide a Privilege Log as required by the Federal Rules.

On March 26, 2015, HomEq emailed 18 pages of additional documents relating to Plaintiff's loans, each of which directly related to the legal fees and expenses charged to Mr. Kline. (See cover letter annexed to Grob. New Decl. as Exh. I) These documents were encompassed within Plaintiff's original document demands, and should have been produced years earlier. Among the documents produced by HomEq was a new Escrow History which disclosed transactions which had been concealed in the prior Escrow History produced by the Defendants in this litigation. (See new Escrow History annexed to Grob. New Decl. as Exh. J) While the prior Escrow History produced by Defendants indicated that Mr. Kline had no Escrow Balance after Payoff, the new history showed that there was in fact a $412.96 Escrow Balance owed to Mr. Kline after Payoff. (Exh. J, at line 12/3/2007) HomEq,Wells Fargo and Reimer had concealed this Escrow Balance from Mr. Kline and the courts for 7 ½ years, repeatedly putting forth the inaccurate Escrow History provided to Mr. Kline in February 2008.

Moreover, the new Escrow History also showed two new post-payoff transactions which had never been previously disclosed by the Defendants, in which the Defendants made two so-called "Fee Adjustments" (one for $158.00 and one for $324.08) to the Escrow Balance to bring that amount from $412.96 down to zero. (Id. at line 12/11/2007, 12/24/2007) HomEq, Wells Fargo and Reimer had also concealed these additional fees collected from Mr. Kline and the courts for 7 ½ years.

### E. The June 2015 Depositions

On June 10-12, 2015, Plaintiff's counsel took additional depositions of HomEq,

7

MERS and Wells Fargo relating to the newly produced documents. At the further

deposition of HomEq's Rule 30(b)(6) witness on June 10, 2015, HomEq's deponent

Jacklyn Cartmill admitted that the previous Escrow History produced by HomEq was

misleading and inaccurate, concealing the fact that there was an Escrow Balance in Mr.

Kline's account after payoff, and that the Escrow Balance had been reduced by deducting

attorneys fees and/or expenses which previously had not been disclosed:

> Q. If the borrower is looking at [the prior Escrow History
> provided to Mr. Kline], would the borrower have any way of
> knowing that there was an escrow balance remaining . . .
> after payoff?
> A. No.
> Q. And would the borrower know that there were two
> transactions in escrow which took that balance and turned it
> into zero?
> A They would not.
> Q Do you know whether the borrower was apprised, at any
> point before [the new Escrow Activity history] was
> produced on March 26th of 2015, that these transactions that
> we are talking about, which don't exist on [the prior Escrow
> History], had been disclosed? . ..
> A. I -- I don't know how the borrower would know.

(Excerpts from Cartmill Dep. annexed to New Grob. Decl. as Exh. K, pp. 74-75)[2]

Ms. Cartmill also testified about other documents produced to Plaintiff by HomEq

after the discovery deadline on March 26, 2015. Ms. Cartmill testified that, based on

those new documents, it appeared as if Mr. Kline was charged for five late fees after

acceleration in July, August, September, October and November 2005. (New Grob. Decl.

---

[2] As this Court has previously found, it is well-settled under Ohio law that a borrower
may not be charged attorney's fees incurred in a foreclosure action that has proceeded to
judgment. Kline v. MERS, 2013 U.S. Dist. Lexis 133765 (S.D. Ohio 2013) Here, the
belatedly-produced disclosures provide probative evidence that (i) Wells Fargo, HomEq
and the Reimer firm collected attorney's fees which were charged to Mr. Kline in the
second mortgage foreclosure action brought against him; and (ii) that the Defendants
concealed these illegal transactions from him until the new documents were belatedly
produced after the completion of discovery on March 26, 2015.

as Exh. K, pp. 86-88)

On June 11, 2015, Plaintiff took the further Rule 30(b)(6) deposition of Wells Fargo. During the deposition, Wells Fargo's witness stated that MERS did not own or hold either Mr. Kline's First or Second Mortgage Loan at the time of the 2005 foreclosure actions against Plaintiff:

> Q. Was -- was MERS in possession of the note in 2005?
> A. Not that I'm aware of.
> Q. Was MERS in possession of the mortgage in
> 2005?
> A. Not that I'm aware of.

(See excerpts from Deposition of Patrick Gorrien dated June 11, 2015, New Grob. Decl. Exh. L, pp. 91-94). This was directly contrary to the prior express representations made by Reimer and MERS to the state court in the 2005 Foreclosure Action.

### F. Belated Disclosure Produced By Defendants After the June Depositions

Even after these second depositions took place in June 2015, the Defendants continued to produce additional documents which were highly relevant to the Plaintiff's and the prospective class's claims against the Defendants in this litigation, and which were clearly encompassed within the initial discovery requests served on HomEq, MERS and Wells Fargo in 2012 and 2013. Thus, on June 19, 2015 – eight days after Plaintiff took the further deposition of Wells Fargo -- the company produced additional documents via email relating to Wells Fargo's inspection of Mr. Kline's loan documents. (See cover Email annexed to New Grob. Decl. as Exh. M) On June 23, 2015, Wells Fargo produced Custodial Agreements via email which set forth Wells Fargo's custodial obligations with respect to the Trust which bought Plaintiff's loans from Merrill Lynch. (See cover Email annexed to New Grob. Decl. as Exh. N)

On June 25, 2015 – four months after the March 1st discovery deadline – Wells Fargo belatedly produced communications from HomEq to Wells Fargo in 2005 and 2007 requesting the transfer of Mr. Kline's Notes and Mortgages to HomEq for the purposes of foreclosure, as well as internal Wells Fargo documents which may relate to the transfer of these loan documents. (See cover Email annexed to New Grob. Decl. as Exh. O) This was directly contrary to what Wells Fargo said in it response to Plaintiff's discovery requests served in June 2014, in which Wells Fargo swore that it had **no** written communications relating to Mr. Kline's loans or documents relating to the transfer of Kline's loan documents to different holders. As shown by the documents produced on June 25th, this representation was patently false.

As discovery is over, Mr. Kline has had no opportunity to question Wells Fargo as to these documents. Nevertheless, the documents produced on June 25, 2015 appear to conclusively demonstrate that -- contrary to the express representations made by Reimer Lorber and MERS in the foreclosure against Mr. Kline in 2005 -- MERS was **not** the owner and holder of the first note and mortgage at the time the 2005 Foreclosure was instituted.

### G. Alleged Fraudulent Representations Made By Defendants To The Court In This Action

The new Proposed Amended Complaint alleges that the Defendants have made numerous misrepresentations to Plaintiff and the court in this litigation. For instance, on March 27, 2015, Wells Fargo filed a Motion for Summary Judgment in which it represented that:

> the disputed fee was ***not*** incurred by Reimer Lorber for filing and prosecuting the foreclosure action in regard to the first Note. Rather, those fees were incurred by the Lerner

10

Sampson firm in regard to protecting the investor's interests
in the second Note.

(Dock. #417, p. 12 (emphasis added))  These representations in Wells Fargo's summary

judgment motion were false.  As Wells Fargo and HomEq knew, Reimer Lorber's

attorney's fees were also passed on to Mr. Kline.  This fact was hidden from Plaintiff by

the fraudulent Escrow History provided to Plaintiff in February 2008 and produced in this

litigation, and was only revealed by the belated March 26, 2015 production of a second

Escrow History.  In its March 2015 summary judgment motion, Wells Fargo also

attached and relied on the February 7, 2008 Payoff letter and the accompanying

documents sent by Reimer on behalf of Wells Fargo and HomEq, including the

fraudulent Escrow History.  (See Dock. #417, Exh. I) [3]

On October 30, 2015, Defendants MERS, Wells Fargo and HomEq each filed an

Affidavit executed by Jacklyn Cartmill in further support of their motions for summary

judgment in this action.  In the affidavit, Ms. Cartmill sought to respond to the fact that -

- until the new Escrow History was produced on March 26, 2015 -- Defendants Wells

Fargo, HomEq and Reimer Lorber had concealed the fact (i) that Mr. Kline had an

Escrow Balance at the time he paid off his First Mortgage in November 2007, and (ii)

that Wells Fargo and HomEq had surreptitiously used that balance to pay off certain

previously concealed legal fees and expenses.  According to Ms. Cartmill's Affidavit,

Defendants' production of a misleading Escrow History in this litigation was ultimately

irrelevant, since the legal fees and expenses charged to Mr. Kline were taken from the

---

[3] In addition, on March 27, 2015, HomEq filed a Motion for Summary Judgment which
expressly incorporated each of the arguments raised by Wells Fargo, including the
argument that Defendants did not collect any post-payoff legal fees or expenses from Mr.
Kline. ((Dock. #418, p. 13)  HomEq also attached and relied on the fraudulent Escrow
History.  (See Dock. #418, Exh. I)

"*past-due interest*" owed by Mr. Kline at the time he paid off his first loan:

> The excess $412.96 amount which was transferred into the
> escrow account was then credited to clear a portion of the
> outstanding corporate expense advances which had
> previously been made in regard to the Kline loan. This
> credit toward the corporate advances came out of the
> $412.96 in reallocated *past-due interest*: the Plaintiff was
> not charged for these corporate advances [representing
> legal fees and expenses], nor *did he actually pay them.*

(Dock. #477, ¶5 (emphasis added))

As shown in Plaintiff's Sur-Reply in Opposition to Defendants' Motion For
Summary Judgment, these representations in Ms. Cartmill's October 30th Affidavit were
false. The November 15, 2007 Payoff Quote from Reimer on behalf of Wells Fargo
states that $176,332.28 was due on the first mortgage, including *$14,821.28* in interest
through December 9, 2007, calculated at $42.22 per day. (See BC 815-816 annexed to
the Sur-Reply Declaration of Paul Grobman filed on December 16, 2015, Dock. #488, as
Exhibit A).

HomEq's internal documents indicate that Reimer received a check for this full
amount on November 27, 2007. (Dock. #488, Exh B, at BC18539 at 11/27/2007)
HomEq internal documents also show that HomEq received the check on November 28,
2007 (Dock. #488, Exh. B, at BC18537) According to a Transaction History produced
by HomEq on February 18, 2015, a total of $14,339.20 of interest was owed based on the
date Mr. Kline made his payment, leaving an interest overpayment of $482.08 which was
owed to Mr. Kline. (Dock. #488, Exh. C, at BC18639)

According to the Escrow History which was produced to Plaintiff on March 26,
2015, that amount -- $482.08 – is the same as the Escrow Balance owed to Mr. Kline
after payoff as of December 5, 2007. (Dock. #488, Exh. D, at BC18800) That amount

was eliminated by Wells Fargo and HomEq's deduction of two post-payoff charges --
$158.00 and $324.08 – for attorney's fees and expenses. (Dock. #488, Exh. D, at
BC18639, 18800-188802, 18808)

Thus, simply put, Ms. Cartwell lied in representing in her Oct. 30, 2015 affidavit
that there was $412.96 in "past-due" and "accrued interest" that was owed to Wells
Fargo, which Wells Fargo and HomEq reallocated to escrow. As HomEq, Wells Fargo
and Reimer's own records demonstrate, Mr. Kline was charged and paid at least $482.08
more in interest than he owed on the First Mortgage, which should have been returned to
him. HomEq, Wells Fargo and MERS acted fraudulently in filing and relying upon
Cartmill's October 30, 2015 which Defendants' own records indicate was patently false
in this regard.

Similarly, Ms. Cartmill lied in representing in her Oct. 30, 2015 Affidavit that
Plaintiff "was not charged for" the legal fees and expenses deducted from the $482.08
Escrow Balance, "nor did he actually pay them." As demonstrated by Wells Fargo,
HomEq and Reimer's own documents, the purported legal fees and expenses were
deducted from the $482.08 in interest overpayments made by Plaintiff, which were
fraudulently mischaracterized by Cartmill as "past-due" interest. Again, HomEq, Wells
Fargo and MERS acted fraudulently in filing and relying upon Cartmill's October 30,
2015 Affidavit in this regard.

Moreover, each of the Corporate Defendants filed other documents with this court
on October 30, 2015 which were fraudulent in this same respect. For instance, in its
Reply Memorandum in further Support of Summary Judgment, (Dock. #477), Wells
Fargo makes the same false allegations raised in the Cartmill Affidavit – that the Escrow

Balance came from "accrued interest" owed by Mr. Kline and "that Mr. Kline himself was never assessed those fees as part of the payoff quote, nor did he ever pay any of those fees. The only fees he paid were those which were itemized in the payoff quote." (Dock. #477, pp. 8-9)

In HomEq's Reply Brief in further support of Summary Judgment filed with this court on October 30, 2015 (Dock. # 475), HomEq made the identical misrepresentations that Wells Fargo did – that the Escrow Balance came from "accrued interest" owed by Mr. Kline and "that Mr. Kline himself was never assessed those fees as part of the payoff quote, nor did he ever pay any of those fees. The only fees he paid were those which were itemized in the payoff quote." (Dock. #475, pp. 7-8) MER's Reply Brief in further support of Summary Judgment filed with this court on October 30, 2015 also made the same misrepresentations. (Dock. #476, p. 8)

On November 13, 2015, HomEq, MERS and Wells Fargo filed papers in opposition to Plaintiff's motion for reconsideration of the order striking the class allegations in the complaint. (Dock. #481) In that document, the Corporate Defendants again falsely represented that Wells Fargo and HomEq deducted the post-payoff legal fees and expenses from Mr. Kline's account from past-due interest which Mr. Kline legitimately owed:

> the Plaintiff continues to harp about an alleged positive balance he contends existed in his escrow account. . . In the days that followed the payoff, a loan processor at Barclays utilized the escrow account for adjusting and clearing post-payoff expenses. . . [A]ll of this expense adjustment activity took place after the Kline loan was paid off and he was fully released from his loan obligations. The Plaintiff knows this, but persists in making arguments to this Court as though a positive escrow balance existed on the day the loan was paid off . .

> . . . Mischaracterizing the escrow balance, which was
> actually a reallocation of ***accrued interest***, as money
> which was somehow due to him is blatantly inaccurate.

(Dock. #481, pp. 9-10 (emphasis added))

On November 25, 2015, HomEq, MERS and Wells Fargo filed papers in opposition to Plaintiff's Motion to Strike New Evidence. (Dock. # 485). In those papers, HomEq, MERS and Wells Fargo again falsely represented that the legal fees and expenses charged to Mr. Kline after payoff did not come out of amounts otherwise owed to Mr. Kline, but rather by "shifting a portion of the collected *past due interest*." (Dock. #485, p. 3, fn. 2 (emphasis added))

## ARGUMENT

### PLAINTIFFS MOTION FOR LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED

Rule 15(a) of the Federal Rules of Civil Procedure, in relevant part, states that a "court should freely give leave when justice so requires." (FRCP 15(a)) In <u>Foman v. Davis</u>, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that:

> this mandate is to be heeded. If the underlying facts or
> circumstances relied upon by the Plaintiff may be a proper
> subject of relief, he ought to be afforded an opportunity to
> test his claim on the merits. In absence of any apparent or
> declared reason-such as undue delay, bad faith or dilatory
> motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of
> the amendment, etc.-the leave sought should, as the rules
> require, be "freely given."

<u>Id.</u> at 182, 83 S.Ct. at 230.

The Sixth Circuit has repeatedly recognized that courts should allow the liberal

amendment of complaints in order to adhere to "the principle that cases should be tried on their merits rather than on the technicalities of pleading.' " Janikowski v. Bendix Corporation, 823 F.2d 945, 951 (6th Cir.1987). As the Court has stated, "Rule [15] must be interpreted in light of the fundamental tenor of the Rules,' which 'is one of liberality rather than technicality." Hall v. Spencer Co., Ky., 583 F.3d 930, 934 (6th Cir. 2009) In particular, the Court has found that when a party moves "to advance a new claim as a result of [] discovery, liberal amendment of the complaint is provided for by Rule 15(a) of the Federal Rules of Civil Procedure." Tucker v. Union of Needletrades, Indust. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005). Wright Miller, Federal Practice and Procedure: Civil § 1488 (1971) ("It would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch as the need to amend may not appear until after discovery has been completed or testimony has been taken at trial.")

The relevant factors for determining whether to grant leave to amend are "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." Brooks v. Celeste, 39 F.3d 125, 129 (6th Cir. 1994) However, as the Sixth Circuit has repeatedly found:

> Delay by itself is not sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

Bridgeport Music, Inc. v. Dimensional Films, 410 F.3d 792, 805 (6th Cir. 2005); Brooks, 39 F.3d at 129 (same)

Here, any delay in amending the complaint is due principally to (i) HomEq, Wells

Fargo and MERS' repeated failure to produce documents within the time required by the Federal Rules of Civil Procedure and this Court's Scheduling Order deadlines; (ii) the Corporate Defendants misrepresentations in response to Plaintiff's discovery requests; and (iii) the Corporate repeated fraudulent representations to both Plaintiff and the court concerning the amounts charged to Mr. Kline and collected by Defendants. As a result, the Corporate Defendants cannot possibly demonstrate the type of legitimate prejudice necessary to deny leave to amend.

### A. **No Undue Delay**

Plaintiff has vigorously pursued relevant evidence through discovery in this action, serving discovery requests on each of the parties, making multiple motions to compel when the discovery produced by Defendants was inadequate, repeatedly seeking documents which Defendants failed to provide at the conclusion of discovery, and demanding additional Rule 30(b)(6) depositions. These efforts resulted in Plaintiff uncovering highly probative evidence which the Corporate Defendants had previously concealed.

Even under the requirements imposed by Rule 16 (which is not at issue here since Plaintiff initially moved to amend on February 3, 2015, one month *before* the deadline for moving to amend), courts have routinely found that a party's failure to provide relevant discovery constitutes sufficient "good cause" for a delay in amending a complaint. Lone Star Indus. v. LaFarge Corp., 1994 U.S. App. Lexis 6957, *32 (4th Cir. 1994) (unpublished) (vacating denial of motion to amend complaint, court found that a finding of "good cause" under Rule 16 is required as long as "some of the evidence needed by [Plaintiff] to prove its new … claim did not surface until after the amendment

17

deadline."); K&M Int. Inc. v. NDY Toy LLC, 2015 U.S. Dist. Lexis 131220, *24-25

(N.D. Ohio 2015) (Plaintiff had good cause for its failure to seek leave to amend prior to

scheduling deadline where Defendants produced additional evidence supporting new

claims after the amendment deadline); Woods v. FacilitySource, 2014 U.S. Dist. Lexis

61919, **6 (S.D. Ohio 2014) (Defendants showed good cause to amend answer to add

counterclaim beyond deadline where the proposed amendment was "based on

information about which they learned during the discovery process"); Permasteelisa CS

Corp. v. Airolite Co., LLC, 2007 U.S. Dist. Lexis 41974, *6 (S.D. Ohio 2007) (good

cause for delay in amending Complaint where "the facts being used by Plaintiff" to

support the claims "were not discovered until after the [amendment] deadline had

passed").[4]

---

[4] See also Nautilus Ins. Co. v. SPM Resorts, Inc., 2015 U.S. Dist. Lexis (D.S.C. 2015) (finding "good cause" where the Plaintiff "made a reasonable showing that it uncovered previously unknown facts during discovery that support an additional" claim);Finjan, Inc. v Blue Coat Sys., Inc, 2014 U.S. Dist. Lexis 163425, *5 (N.D. Cal. 2014) (finding "good cause" under Rule 16 for failure to amend Answer before deadline for amendments where defendant "could not have uncovered the facts underlying its proposed" new defense "until Plaintiff produced [document] in discovery"); Henderson v. U.S. Aid Funds, Inc., 2014 U.S. Dist. Lexis 131209, *14 (S.D. Cal. 2014) ("because Plaintiff's failure to comply with the [] deadline was at least partially attributable to defendant's production of the requested information after the deadline to amend the pleadings, it could not have been reasonably anticipated at the time of the Rule 16 scheduling conference"); Saloman v. Adderly Indus. Inc., 960 F. Supp.2d 502, 508 (S.D.N.Y. 2014) (Plaintiff established good cause for failure to amend within scheduling deadline where defendant provided additional documents after scheduling order deadline); Mireles v. Paragon Systems, Inc, 2014 U.S. Dist. Lexis 17230, *2 (S.D. Cal. 2014) (discovery produced after the deadline to amend the pleadings "made compliance with the . . . deadline a temporal impossibility"); Denis v. Home Depot, USA, 2014 U.S. Dist. Lexis 163306, *9(S.D.N.Y. 2014) (Plaintiff showed good cause for seeking leave to amend two years after deadline for amending complaint where the new claims were based on documents which defendant did not produce until well after the deadline for amendment); Butamax Advanced Biofuels LLC v. E.I. Du Pont and Co., 2013 U.S. Dist. Lexis 19069, *9 (D. Del. 2013) (Defendants established good cause for failure to amend answer within scheduling deadline where Plaintiffs produced documents after scheduling deadline);

In fact, Plaintiff initially moved to amend the complaint on February 3, 2015 despite the fact that -- because MERS, Wells Fargo and Barclays had only recently provided the supplementary responses required by the Court's October 1st Order -- no depositions had yet taken place. While completing written discovery is standard practice before depositions begin,[5] Plaintiff sought leave at that point to be within the March 1st deadline for moving to amend in the amended Scheduling Order.

## B. Defendants Knew Since March 2014 That Plaintiff Intended To Add A Rico Claim

Moreover, even if the Defendants could establish undue delay in seeking to amend, Defendants cannot possibly claim that there was a "lack of notice" of Plaintiff's intention to amend the Complaint to add a RICO claim. See Bridgeport Music, 410 F.3d at 805. Thus, in the Mediation Statement provided by Plaintiff to the Defendants and Magistrate-Judge Ovington on March 14, 2014, Plaintiff expressly advised the Defendants and the court that it intended to amend the Complaint to add a RICO claim for the fraudulent overcharges which are at issue here:

---

Baisdan v. CSC-Pa, Inc., 2009 U.S. Dist. Lexis 108786, *4 (S.D. W. Va. 2009) (finding good cause for delay in seeking to amend complaint where "the Defendants have refused to produce relevant discovery"); Stewart v. Coyne Textile Services, 212 F.R.D. 494, 497 (S.D. W. Va. 2003) (finding good cause for amendment of complaint after deadline in scheduling order, court stated that "this Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses"); W. Va. Housing Dev. Fund v. Ocwen Technology XChange, Inc., 200 F.R.D. 564, 567 (S.D. W. Va. 2001) (good cause for late amendment where information "only became available to Plaintiff after the Defendants produced the documents")

[5] As stated in the Manual for Complex Litigation (4th Ed.), "deferral of depositions until the completion of document discovery may help facilitate and expedite the depositions, reducing the burden and cost on the parties." See Permasteelisa, 2007 U.S. Dist. Lexis 41974, *6 ("Plaintiff delayed taking certain depositions until document discovery was complete, which is a reasonable way in which to proceed")

> Moreover, Plaintiff is in the process of preparing an amended complaint to add a cause of action under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1961 et seq.

(Mediation Statement dated March 14, 2014, p. 6) Because the Defendants had ample notice of the Plaintiff's intent to file an amended complaint adding a RICO claim and the specific bases therefore, they cannot establish that they would be harmed by permitting amendment of the Complaint. That is because "[a] party cannot claim unfair surprise when it has been provided with notice of the subject of the amendment to a complaint, by discovery or documents, well in advance of the actual amendment." Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., 804 F.2d 787, 795 (2nd Cir.1986). See also Turner v. Welkal, 2014 U.S. Dist. Lexis 12659, *12 (M.D. Tenn. 2014) (permitting amendment of the complaint to add a new claim where the Defendants "had prior notice of the new [] claim, based on the Plaintiff's response to their motion to dismiss and other filings"); Woods v. Indiana Purdue University, 996 F.2d 880, 887 (7th Cir. 1993) ("it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings, a position that seems sound since it is unwise to place undue emphasis on the particular way in which notice is received. ... [The court must] determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question."); 6A Wright, et al., Federal Practice & Procedure §1497 ("it is sufficient if the opposing party was made aware of the matters to be raised by the amendment from sources other than the pleadings")

In its March 27, 2015 Decision denying the Motion to Amend without prejudice to renewal, the Court suggested in *dicta* that the Mr. Kline's March 2014 notice that he was "in the process of preparing an amended complaint" to add a RICO cause of action indicates a belief that "he had a viable RICO claim by mid-March 2014", and thus that the ten-month delay before seeking leave to amend in February 2015 might have been "undue." Kline, 2015 U.S. Dist. Lexis 39674, *20-21.

However, any ultimate finding that this purported "delay" precluded Plaintiff from amending the Complaint would face several fundamental problems. As an initial matter, even in cases in which the Plaintiff has not provided defendant with notice of its intent to amend the complaint, courts have regularly permitted parties to amend notwithstanding delays of similar or longer duration. GE v. Advance Stores Co., 285 F.Supp. 2d 1046, 1059 (N.D. Ohio 2003) (granting motion for leave to amend, finding that 18 month delay in seeking amendment based on facts which were in its possession at beginning of case "is not undue given the exacerbated discovery history of this case."); Schmidt v. DaimlerChrysler Motors, 538 F.Supp.2d 1032, 1037 (N.D. Ohio 2008) (finding that delay of over nine months in filing motion to amend after learning that Defendants allegedly destroyed evidence was not unjustifiable delay)

Second, as Plaintiff commenced "the process of preparing an amended complaint" in March 2014 before discovery in this action had barely begun, the substance of the proposed RICO claim has changed dramatically from the wrongdoing alleged in the Mediation Statement. As the Sixth Circuit has held, "[i]t is a principle of basic fairness that a Plaintiff should have an opportunity to flesh out her claim through evidence

unturned in discovery. The pleading rules] do[] not require omniscience. . . " <u>Williams v.</u> <u>Duke</u>, 681 F.3d 788, 803 (6th Cir. 2012)

The events which have occurred since March 2014 – Defendants' service of discovery responses, the production of thousands of pages of documents, eight Rule 30(b)(6) depositions of Defendants' representatives, and the evidence of affirmative misrepresentations and concealment – have fleshed out the substance of the RICO claim, revealing new bases for potential liability, and foreclosing others. In <u>Lone Star</u>, the district court denied a motion to amend made after the deadline for amendments because it found "that much of the evidence to support the new claim was available prior to the amendment deadline." <u>Lone Star</u>, 1994 U.S. App. Lexis 6957, *30. On appeal, the Fourth Circuit reversed, holding that:

> It is implicit in the district court's ruling that "*some* of the evidence needed by [Plaintiff] to prove its new ... claim did not surface until after the amendment deadline. This alone justifies a finding of good cause under Rule 16(b).

<u>Id.</u> at *31 (emphasis in original).

Third, Plaintiff's ability to complete the process of Amending the Complaint was premised on repeated assurances by HomEq, Wells Fargo and MERS that complete discovery responses would soon be forthcoming. That was not the case, however, necessitating Plaintiffs' Motions to Compel in June 2014. In fact, as the Court itself pointed out in its March 27, 2015 Opinion, even as of November 2014, Defendants represented that the "present contention that there is still outstanding discovery from these Defendants is frivolous, unfounded in fact, and intended only to further delay this proceeding." <u>Kline</u> , 2015 U.S. Dist. Lexis 39674, *20-21. As the multiple belated

22

document productions by the Corporate Defendants in February, March and June of 2015 demonstrate, that representation turned out to be untrue.

Finally, as shown below, given the new evidence and the allegations of concealment and affirmative misrepresentations in this litigation, Defendants cannot possibly claim any legitimate prejudice arising from the purported delay in amending.

## C. Defendants Have Suffered No Legitimate Prejudice

It is axiomatic that "[d]elay, standing alone, is an insufficient basis for denying leave to amend, and this is true no matter how long the delay." Wallace Hardware Co. v. Abrams, 223 F.3d 383, 409 (6th Cir. 2000)  Rather, in order to "to deny a motion to amend, a court must find at least *some significant showing of prejudice* to the opponent." Ziegler v. Aukerman, 512 F.3d 777, 786 (6th Cir. 2008) (emphasis added)  "The non-moving party must do more than merely claim prejudice; it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered" had the proposed amendment been filed sooner. Heyl & Patterson Int'l, Inc. v. F. D. Rich Hous. of Virgin Islands, Inc., 663 F.2d 419, 426 (3rd Cir. 1981).

In this case, Defendants cannot possibly demonstrate the "significant showing of prejudice" necessary to reject a motion to amend.  Discovery had barely begun when Plaintiff first apprised Defendants of his intention to amend the complaint to add a RICO claim in March 2014, with formal discovery continuing until March 1, 2015.  Esquire Radio, 804 F.2d at 795 ("[a] party cannot claim unfair surprise when it has been provided with notice of the subject of the amendment to a complaint . . . well in advance of the actual amendment.")  Defendants had ample time to serve discovery requests concerning the RICO claim if they wished, but chose not to do so.

Nor had any depositions taken place when Plaintiff moved to amend the complaint on February 1, 2015. See Dingess v. Infiniti of Columbus, 2014 U.S. Dist. Lexis 114355, *7 (S.D. Ohio 2014) (finding any potential prejudice to be minimal where "Defendants were provided notice of Plaintiff's intent to amend the complaint prior to the deposition" of Plaintiff); Humantech, Inc. v. Caterpillar, Inc., 2014 U.S. Dist. Lexis 11142, *5 (E.D. Mich. 2014) (finding no prejudice from motion to amend where "depositions have not yet taken place"); In re Imagepoint, Inc., 2010 Bank. Lexis 2504, *25 (E.D. Tenn. 2010) (no prejudice where no depositions) Indeed, the parties continued to produce documents, conduct depositions, and provide additional discovery responses through June 2015. During this period, Plaintiff's counsel also repeatedly advised Defendants and the Court that "Plaintiff would be happy to consider any additional discovery which Defendants say they might need." (See April 9, 2015 letter annexed to Grob. Decl. as Exh. P; May 7, 2015 letter annexed as Exh. Q) Defendants decision not to seek such discovery on the RICO claim cannot be blamed on Plaintiff.

In any event, as Plaintiff has shown, a substantial portion of the evidence which forms the basis for the new RICO claims was concealed by HomEq, Wells Fargo and MERS in blatant violation of their discovery obligations, and was not uncovered by the Plaintiff until well into 2015. As the Sixth Circuit stated in Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis 27089 (6th Cir. 2001) (unpublished):

> [A party] cannot hide relevant, harmful evidence in
> violation of the rules of discovery and then claim unfair
> surprise when the damning evidence is uncovered late in
> the proceedings.

24

Id. at *17. See also Carmona v. Toledo, 215 F.3d 124, 136 (1st Cir. 2000) (court abused its discretion in denying Plaintiff's motion to amend the complaint where the Defendants did not comply with discovery)

As alleged in the Proposed Amended Complaint, the Defendants in this case have not only concealed highly relevant evidence from the Plaintiff during this litigation, they have also made numerous affirmative misrepresentations to this court. As previously indicated, HomEq, Wells Fargo and MERS filed documents with this court on October 30, 2015, in which they falsely claimed that Defendants never paid any legal fees or expenses from funds owed to Mr. Kline after payoff because those funds came from "past-due interest" owed by Mr. Kline. Plaintiff is not aware of any decision which has denied a motion to amend where substantial allegations of concealment and fraudulent conduct have been alleged. In Johnson v. Ventra Group, Inc., 1997 U.S. App. Lexis 21714, *7-8 (6th Cir. 1997) (unpublished), the Sixth Circuit reversed the district court's denial of a motion to amend a complaint where plaintiff alleged that he "was not able to plead with specificity the causes of action primarily based on fraud" until he had completed a certain deposition and "various documents previously withheld by the defendants." Though the Sixth Circuit found that it was "contested whether discovery provided plaintiff with new information", the court found that it was an abuse of discretion to deny the proposed amendment:

> We believe that in such a circumstance, when new information giving rise to specific allegations of fraud is allegedly obtained during discovery, the mandate of Rule 15(a) that leave to amend shall be 'freely given' must be adhered to in order to decide a case on the merits. We believe the district court abused its discretion by not weighing the cause of the delay and by then refusing to allow plaintiff to amend the complaint.

Johnson, 1997 U.S. App. 21714, *8-9. [6]

As a court in the Northern District of Ohio recently stated in another case involving a proposed amendment of the Complaint based on evidence belatedly produced by the Defendants:

> [T]o the extent additional discovery is necessary, the Court finds Defendants are not in a position to complain. Had Defendants produced [the evidence earlier] … K&M could have sought leave to amend its complaint prior to the close of discovery . . . Thus, to a certain extent, Defendants' own conduct has necessitated the possible re-opening of discovery for the limited purpose of exploring K&M's additional copyright claims.

K&M Intl., 2015 U.S. Dist. Lexis 131220, *25.  See also CitiMortgage v. Chicago Bancorp, 2013 U.S. Dist. Lexis 92414, *8 (E.D. Mo. 2013)  (granting motion to amend where defendant refused to produce discovery which resulted in new allegations until court granted plaintiff's motion to compel, the court found that "the fact that [plaintiff's] new claims were delayed by [defendant's] own late actions weighs against a finding of prejudice")

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that its motion for leave to amend the complaint under Rule 15 of the Federal Rules of Civil Procedure be granted.

---

[6] See also Tracy v. Telemetrix, 2015 U.S. Dist 153852, *8-10 (D. Neb. 2015) (granting motion to amend RICO claim to add new allegations where the majority of the new allegations came from documents that were previously unavailable to plaintiff: "while plaintiff may have had general suspicions about the proposed new defendants' role in the alleged scheme, he did not have a good faith belief that he possessed sufficient evidence to fulfill his obligations under the heightened pleading standard required for RICO claims").

Dated: December 21, 2015

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiff Eugene Kline*