**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **EUGENE KLINE, et al.,** | ) | **CASE NO. 3:08cv408** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE WALTER HERBERT RICE** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **MORTGAGE ELECTRONIC SECURITY** | ) | |
| **SYSTEMS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MOTION FOR RECONSIDERATION**
**OF DECISION GRANTING SUMMARY JUDGMENT**
**AND DENYING MOTION TO AMEND**

Plaintiff Eugene Kline, on behalf of a putative class and by his counsel Paul Grobman, submits this Memorandum in support of his motion for reconsideration under Rule 59 of the Federal Rules of Civil Procedure of two decisions rendered by this Court on December 23, 2015: (i) the decision granting summary judgment to Defendants on Plaintiffs' remaining claims (Doc. #492); and the decision (ii) denying Plaintiff's motion to amend the complaint (Dock. #494).

In its summary judgment decision, the court credits and relies on allegations raised for the first time in an affidavit from Jacklyn Cartmill filed by the Defendants HomEq, MERS and Wells Fargo on October 30, 2015, finding that: (i) attorneys fees were never charged to or collected from Plaintiff on the first mortgage; (ii) the Escrow Balance in Mr. Kline's account -- revealed for the first time by documents belatedly produced by Defendants on March 26, 2015 -- came from past-due interest owed by Plaintiff and was properly set off against attorney's fees and expenses; and (iii) the attorneys' fees charged by Lerner Sampson on the second mortgage were refunded and sent back to Mr. Kline.

In denying Plaintiff's Motion to Amend the Complaint to add claims based on RICO, fraud, and spoliation, the court found that allowing amendment to add these claims would be futile because the proposed amendment is based on "exactly the same evidence that Kline cited to when he sought leave to reopen discovery . . and when he argued against summary judgment." (Dock. # 494, p. 4) Because "the court found this evidence insufficient to justify engaging in further discovery and inadequate to overcome summary judgment", "it would be futile to allow Kline leave to file an amended complaint", since the court has already "considered and rejected the reasons Kline has offered for Defendants' liability." (Id. at 4) The court also found that "undue delay" also precludes amendment of the complaint since the allegations supporting the RICO claim "are materially identical to the allegations that prompted the filing of this action" and "have been with this case since its inception." Id. at 6.

For multiple reasons, the court's decisions in this regard are in error.

## ARGUMENT

### POINT I

### THE COURT COMMITTED ERROR
### IN GRANTING SUMMARY JUDGMENT

A judgment may be altered or amended under Rule 59(e) for any of the following three reasons: (1) to correct a clear error of law; (2) to account for newly discovered evidence or a change in controlling law; or (3) to otherwise prevent manifest injustice. Gencorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999).

2

1.   **The Court Improperly Found That Plaintiff Was Not Charged For Attorney's, and That The Interest Collected And Retained Was Properly Computed**

The court stated the following in relying on Cartmill's Affidavit to find that Defendants were entitled to summary judgment on the claim that Plaintiff was improperly charged for Reimer's attorney's fees and expenses after payoff of the first mortgage loan:

> There is no evidence in the record to indicate that Kline was not charged the proper amount for the balance due to the escrow account or the accrued interest on the Adjustable Rate Note.  Kline has not pointed to any evidence that would suggest either amount was inaccurately computed or artificially inflated to conceal the inclusion of attorneys' fees.

(Dock. #492, p. 65)   Given Plaintiff's Surreply Memorandum and Declaration, it is impossible to determine how the court could have reached this conclusion.

The following are quotes from the Surreply:

> Indeed, far from exonerating Defendants, the latest of their ever-shifting explanations for what happened in Mr. Kline's loan account have revealed yet another aspect of their illegal and fraudulent conduct -- the demand for and retention of hundreds of dollars in ***interest overpayments***.  In short, the evidence strongly indicates that Ms. Cartmill and Defendants *are lying* when they claim that the ***post-payoff deductions from the Escrow Balance came from "past-due interest", and that Mr. Kline never paid for the legal fees and expenses deducted from that balance***.
>
> \*                    \*                    \*                    \*
>
> The November 15, 2007 Payoff Quote from Reimer and Wells Fargo states that $176,332.28 is due on the first mortgage, including *$14,821.28* in interest calculated from December 1, 2006 through December 9, 2007 calculated at $42.22 per day.  (See BC 815-816 annexed to the Grob. Decl. as Exhibit B.   Plaintiff sold his house on November 19, 2007 to pay off the amount allegedly owed based on the November 15, 2007 Payoff Quote, and immediately remitted that amount to Reimer and Wells Fargo.
>  HomEq's internal documents indicate that Reimer received a check for this full amount on November 27, 2007, pursuant to the instructions in the Nov. 15, 2007 Payoff quote  (Grob. Decl. Exh C, at BC18539 at 11/27/2007)   HomEq internal documents also show

3

that HomEq received the check on November 28, 2007 (Grob. Decl. Exh. C, at BC18537)  HomEq's internal documents state that the Payoff "funds should be posted with an effective date of 11/29/07." (Grob. Decl. Exh. C, at BC18537)  Based on the Nov. 15, 2007 Payoff Quote, ***Plaintiff's interest overpayment at that point would have been at least 10 days at $42.22 per day***.

 According to a Transaction History produced by HomEq on March 26, 2015, Wells Fargo and HomEq finally posted the payoff to Mr. Kline's account on December 3, 2015.  (Grob. Decl. Exh. D, at BC18808)   According to the same Transaction History, a total of $14,339.20 of interest was owed based on the date Mr. Kline made his payment***, leaving an interest overpayment of $482.08 which was owed to Mr. Kline.*** (Deducting $14,339.20 from $14,821.28). (Grob. Decl. Exh. D, at BC18808)

According to the new Escrow Account History which was produced to plaintiff on March 26, 2015, that amount -- $482.08 – is the same as the Escrow Balance owed to Mr. Kline after payoff as of December 5, 2007.  (Grob. Decl. Exh. E, at BC18800)  *That amount was eliminated by the Wells Fargo and HomEq's deduction of two post-payoff charges from the balance owed to Mr. Kline -- $158.00 and $324.08 – for attorney's fees and expenses*. (Grob. Decl. Exh. D, at BC18800-188802, 18808)

Thus, the evidence indicates that Ms. Cartwell *lied* in representing in her October 30, 2015 affidavit that the Escrow Balance was ***comprised of $412.96 in "past-due" and "accrued interest" that Mr. Kline owed to Wells Fargo***, and which Wells Fargo and HomEq reallocated to escrow after Mr. Kline's November 2007 payoff.   As HomEq, Wells Fargo and Reimer's own records demonstrate, Mr. Kline was charged and ***paid at least $482.08 more in interest*** than he owed on his First Mortgage, which should have been returned to him.   HomEq, Wells Fargo and MERS acted fraudulently in filing and relying upon Cartmill's October 30, 2015 which defendants' own records indicate was patently false in this regard.

Similarly, Ms. Cartmill *lied in representing in her Oct. 30, 2015 Affidavit that Plaintiff "was not charged for" the legal fees and expenses deducted from the $482.08 Escrow Balance, "nor did he actually pay them."*  As indicated by Wells Fargo, HomEq and Reimer's own documents***, the concealed legal fees and expenses were deducted from the $482.08 in interest overpayments made*** by ***Plaintiff, which were fraudulently mischaracterized in Ms. Cartmill's Affidavit as "past-due" interest***.

4

(See Surreply, Dock. #487, pp. 2, 6-8)[1]

Thus, the court clearly overlooked the detailed arguments in Plaintiff's Surreply showing that improper interest and attorney's fees were collected and retained by Wells Fargo and HomEq and Reimer.   Plaintiff presented substantial documentary evidence in the Surreply Declaration which supports those conclusions, and Ms. Cartmill's October 2015 Affidavit cites no evidence – none -- to support her contrary new assertions credited by the court, assertions which were never tested in discovery.   Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962) ("Trial by affidavit is no substitute for trial by jury'")

### 2. The Court Improperly Found That The Defendants Refunded the Post-Acceleration Late Fee Charged to Mr. Kline

Several of plaintiffs' claims in this litigation – the FDCPA claim against Reimer, the breach of contract action against Wells Fargo and MERS, and the unjust enrichment action against HomEq -- arise from the allegation that the Defendants improperly charged Mr. Kline for late fees after his loan was accelerated in 2007.   In its decision granting summary judgment, the Court stated that "Kline has pointed to no evidence to support the allegation that he was ever charged post-acceleration late fees."  (Dock. #492, p. 26)  One page later, however, the Opinion acknowledges that HomEq's Rule 30(b)(6) witness Joseph Perry – when shown documents which had just been produced by HomEq days earlier -- admitted the following at his February 25, 2015 deposition:

---

[1] In its grant of summary judgment, the court states that the fraudulent overcharges to Mr. Kline somehow do not matter because they occurred after the payoff, when Plaintiff's "business with Defendants had ended."  According to the Court, Kline "has not explained why [Defendants] . . . were not free to do what [they] wished with the proceeds generated from the payoff."  (Dock. #492, p. 66)   The "explanation" is simple – a bank is no more allowed to a keep money received as a result of a fraudulent misrepresentation which results in an overpayment than would a supermarket which misrepresented prices of goods to individual customers.

5

> Mr. Perry did admit that, generally, post-acceleration late fees are not properly charged to a borrower. He also testified that Kline's account was, in fact, improperly assessed a post-acceleration late fee in the amount of $69.12 on November 16, 2007, and that the charge was an 'error.'

(Dock. #492, p. 27) However, crediting a representation made by that same witness, the Court found that this "error" was "corrected" because HomEq gave a "refund" of that amount to Mr. Kline:

> Mr. Perry also testified that the *error was corrected* on December 3, 2007, by a reversal of the $69.12 charge and a refund of the same amount to the escrow account for the purpose of disbursing the refund to Kline.

(Dock. #492, pp. 27 (emphasis added)) See also #492, p. 28 ("the undisputed evidence shows that … the servicer refunded the sole erroneous charge to Kline for such fees")

There is a fundamental problem with the court's conclusion that there was a "refund" of the improper post-acceleration late fee collected from Mr. Kline. There is no evidence – none – to back up Mr. Perry's assertion that Mr. Kline ever received the purported "refund" of this post-acceleration late fee. Defendants have pointed to no check or any other document showing that Mr. Kline was ever actually repaid. Such documents clearly were responsive to Mr. Kline's discovery demands, and counsel for Mr. Kline specifically requested that HomEq supply any proof to back up HomEq's new claim that – though a post-acceleration late fee was improperly assessed – it was subsequently refunded:

> MR. GROBMAN: I would request any documents which -- and I think we've asked this -- any documents which relate to or substantiate the contention that this post-acceleration late fee was, in fact, returned to Mr. Kline.

(Perry Dep., p. 271) In crediting Mr. Perry's assertion that the improper fee was returned to Mr. Kline, the court violated the cardinal rule that "courts may not resolve genuine disputes of fact in

6

favor of the party seeking summary judgment." Tolan v. Cotton, 134 S.Ct. 1861, 1866 (2014).

As the Supreme Court just recently reiterated in reversing a grant of summary judgment in

Tolan:

> the facts lead to the inescapable conclusion that the court below credited evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing the motion. . .
>
> The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases.  It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system.  By weighing the evidence and reaching inferences contrary to [plaintiff's] competent evidence, the court below neglected to adhere to the fundamental principal that at the summary judgment stage, reasonable inferences should be drawn in favor of the moving party.

Tolan, 134 S.Ct. at 1866.   With no check or other evidence to show that Mr. Kline was actually

paid back by Wells Fargo or HomEq, it was error for the court to credit Mr. Perry's testimony

and find that the admittedly improper post-acceleration late fee collected from Plaintiff was

refunded.   Potamkin Cadillac v. B.R.I. Coverage Corp., 38 F.3d 627, 633 (2d Cir. 1994) (court

found that accounting document was not sufficiently reliable to permit party to use it in support

of claim that it made payments where it "presented no evidence such as copies of checks or

remittance advices… to show that it had made the alleged unreimbursed payments.")

Moreover, "a consumer may recover statutory damages [under the FDCPA] if the debt

collector violates the FDCPA even if the consumer suffered no actual damages."   Federal Home

Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513 (6th Cir. 2007); Miller v. Wolpoff Abramson,

L.L.P., 321 F.3d 292, 307 (2d Cir.2003) ("[C]ourts have held that actual damages are not

required for standing under the FDCPA")

## POINT II

## THE COURT COMMITTED ERROR
## IN DENYING PLAINTIFF'S MOTION TO
## AMEND TO ADD RICO AND FRAUD ALLEGATIONS BASED ON
## NEW AND/OR PREVIOUSLY CONCEALED EVIDENCE

In his motion to amend, Plaintiff sought to amend the complaint to add new claims

alleging a violation of RICO and fraud based primarily on new evidence and information which

was only revealed by the corporate defendants in 2015. Plaintiff attached a Proposed Amended

Complaint to the motion, which detailed each specific fraudulent representation, omission or act

of concealment, the date it occurred, and how the alleged misrepresentations made by

Defendants in earlier years were concealed by Defendants' failure to produce timely, responsive

discovery in violation of the Federal Rules of Civil Procedure and the court's Scheduling

Orders.[2]  The Proposed Amended Complaint also sought to add a claim for spoliation based on

---

[2] See Proposed Amended Complaint, Dock. #491, Exh. A, ¶41 (Defendants concealed
misrepresentation that MERS was owner and holder of note and mortgage in 2005 foreclosure
action until Wells Fargo belatedly produced documents showing transfer of note and mortgage
on June 26, 2015); ¶93 ("the November 15, 2007 letter also said that the amount demanded
from Mr. Kline "does not include any attorney's fees." This representation was also false,
but Reimer, Wells Fargo and HomEq concealed this fact until March of 2015"); ¶95 (false
representation made by WF, HomEq and Reimer on Nov. 19, 2007 that no attorneys fees were
being collected from him); ¶103 ("as plaintiff was only later to learn, WF and HomEq produced
an inaccurate and misleading Escrow Breakdown to plaintiff on Feb. 7, 2008); "Defendants
Obstruction And Concealment Of Evidence In This Action": ¶¶130-178; ¶131 (defendants
concealed fact that attorneys fees were charged until March 2015);  ¶134 (HomEq counsel
falsely represented in Feb. 2015 that no agreements between HomEq and Rosicki or any other
outsourcers existed); ¶135 (HomEq falsely represented that it had no loan database in discovery,
a fact revealed when HomEq witness testified in June 2015 that it had database); ¶138  (HomEq
falsely represented in discovery that "no services are known to have been provided by any
Fidelity entity in regard to the Kline loan", a fact revealed when HomEq's Rule 30(b)(6) witness
testified at a deposition held In February 2015 that Fidelity was an outsourcer which did work on
Kline's loan.);  ); ¶139  (HomEq falsely represented in discovery that "no services are known to
have been provided by any Rosicki entity in regard to the Kline loan", a fact revealed when
HomEq's Rule 30(b)(6) witness testified at a deposition held In February 2015 that Fidelity was
an outsourcer which did work on Kline's loan.);  ¶¶139-142 (HomEq falsely represented that it
did not have access to historical loan data because it had been transferred to Ocwen, a fact

revealed in its representatives June 2015 deposition); ¶¶148-151 (Wells Fargo falsely represented in response to discovery requests that it had no documents showing transfer of Kline's loans to other entities, and no documents relating to communications between Wells Fargo and other entities, a fact revealed when Wells Fargo produced these documents in March and June 2015); ¶¶158-159 (HomEq witness falsely represented in Feb. 2015 that Kline was not charged for attorney's fees or expenses based on invoices submitted after payoff, a fact not revealed until the June 2015 deposition of another HomEq witness); ¶¶163-165 (on March 26, 2015, HomEq produced new Escrow History which revealed that prior Escrow History was in accurate and misleading); ¶167 (on June 10, 2015, HomEq witness admitted that prior Escrow History was inaccurate and misleading); ¶172 (in June 2015 deposition, Wells Fargo witness said that he believed that MERS did not own or hold Note or Mortgage on first mortgage loan at time of first foreclosure, indicating that the representations made by MERS and Reimer to the state court entertaining the 2005 foreclosure action against Kline were false); ); ¶176 (on June 26, 2015, Wells Fargo produced documents showing communications between Wells Fargo and HomEq relating to the transfer of Mr. Kline's loan documents in 2005 and 2007, contrary to its prior representations that it had no such documents); ¶177 (documents belatedly produced by Wells Fargo in June 2015 show that MERS and Reimer lied when they told state court in 2005 foreclosure action that MERS was the "owner" and "holder" of the first mortgage and thus had standing to bring action); "Defendants' Fraudulent Representations To The Court And Plaintiff in This Litigation": ); ¶180 (Reimer filed and relied on fraudulent Escrow History in March 2009 documents filed with court); ¶180 (Reimer filed and relied on fraudulent Escrow History in March 2009 documents filed with court); ¶181 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in August 2010); ¶182 (Wells Fargo falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2011); ¶183 (Wells Fargo falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in April 2011); ¶184-185 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2012); ); ¶186-187 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in May 2012); ¶189 ( (Reimer filed and relied on fraudulent Escrow History in July 2012 documents filed with court); ¶190-191 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2014); ); ¶194 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2015); ¶195-196 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); ¶197 (Reimer filed and relied on fraudulent Escrow History in March 2015 documents filed with court); ¶198-199 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); ¶200-201 (WF falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); ¶202 (WF filed and relied on fraudulent Escrow History in March 2015 documents filed with court); ¶203 (HomEq falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); ¶205 (HomEq filed and relied on fraudulent Escrow History in March 2015 documents filed with court); ¶205-207 (WF, HomEq and MERS filed affidavit in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from

9

evidence obtained during this litigation indicating that (i) HomEq failed to preserve its databases despite representations to the contrary, and (ii) HomEq, Reimer Lorber and Lerner Sampson failed to preserve other documents such as agreements between themselves and outsourcers.[3]

In a December 23, 2015 decision – two days after the motion was made -- the court denied Plaintiff's Motion to Amend the Complaint without waiting for Defendants' response. In its opinion, the court cited two bases for its unusually expedited decision. First, the court found that allowing amendment to add these claims would be "futile" because the proposed Amended Complaint is based on "exactly the same evidence that" the court has already "considered and rejected" in denying additional discovery and granting summary judgment in its September 25 and December 23, 2015 decisions, respectively. (Dock. # 494, p. 4) Second, the court also denied the motion to amend because Plaintiff engaged in "undue delay", since the allegations supporting the RICO, fraud and spoliation claims were purportedly "materially identical to the

---

past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); ¶213 (WF filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); ¶214 (HomEq filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); ¶215 (MERS filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); ¶216 (WF, HomEq and MERS filed brief on Nov. 13, 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed"); ¶217 (WF, HomEq and MERS filed brief on Nov. 27, 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed").

[3] See Proposed Amended Complaint, Dock. #491, Exh. A, ¶¶136-137, 257-258, 267-270, 340-343.

allegations that prompted the filing of this action" and "have been with this case since its inception." Id. at 5.

 With all due respect, each of these hasty conclusions reflects a court more dedicated to ending this litigation than to properly analyzing the allegations in the proposed amended complaint in light of the applicable law.

### A. The Conclusion That the New Allegations Were Futile

The court's conclusion that the proposed additional claims would be futile because it had already "considered and rejected" the evidence underlying the allegations in striking Plaintiff's class allegations and granting summary judgment is both factually and legally flawed. As Plaintiff demonstrates on pages 2-3 of this Brief, the court's conclusion that "there is no evidence in the record to indicate that Kline was not charged the proper amount for . . . the accrued interest" or that the accrued interest "was inaccurately computed or artificially inflated" completely disregards the arguments made and evidence presented in Plaintiff's Surreply, which showed that Plaintiff *was* charged excessive and illegal interest, and that the corporate Defendants committed fraud in repeatedly representing otherwise to this court. No rational analysis of the record could possibly justify the court's conclusion that there is no such evidence.

In the same respect, no rational reading of the court's prior decisions permits the conclusion that it has already "considered and rejected" the merits of the Plaintiff's claims that Defendants made misrepresentations about: (i) who owned and held plaintiff's mortgages at the time of the 2005 and 2007 foreclosure actions against him; (ii) the amounts of legal fees and expenses that plaintiff owed; (iii) whether they possessed certain documents during discovery. The court's December 23, 2015 Opinion did not even refer to the elements necessary to plead a

11

RICO, fraud or spoliation claim, much less how the allegations which formed the basis for those claims in the Proposed Amended Complaint were "futile."

Had the court bothered to engage in this required analysis, cases from the Sixth Circuit indicate that the court could not have reached the conclusion it did. For instance, in <u>Slorp v. Lerner Sampson & Rothfuss, et al.</u>, 587 Fed. Appx. 249 (6th Cir. 2014), Bank of America ("BAC") commenced a foreclosure action in Ohio state court against plaintiff based on an Assignment which purportedly showed that MERS had assigned the mortgage to BAC before the commencement of the action. After the plaintiff challenged the assignment, BAC dismissed the state foreclosure action.

The plaintiff then sued BAC and Lerner Sampson (BAC's attorneys in the state action) alleging that they violated the FDCPA and various state statutes by filing the foreclosure action and falsely claiming that BAC was the owner of the note and mortgage. After the Defendants filed a motion to dismiss the complaint, the plaintiff moved to amend the complaint to add a RICO claim. The district court granted defendants' motion and denied the motion for leave to amend, finding "that the proposed amended complaint provides no new factual allegations that would alter the Court's analysis of the merits of [plaintiff's] claims", and thus "that the RICO claim in the proposed amended complaint was not viable."

On appeal, the Sixth Circuit reversed the denial of the motion to amend, finding that -- though the lower court was correct in dismissing the existing claims in the complaint – it erred in finding that the RICO claim was futile. The Sixth Circuit stated:

> Slorp alleges that the assignment was fraudulent and that the
> defendants had no right to foreclose on his house. If the defendants
> were not authorized to initiate the foreclosure proceedings, Slorp's
> injuries were caused by their fraud rather than his own alleged
> default.

> According to the complaint, Hill was not an authorized agent of []
> MERS. . . . and she therefore lacked the authority to assign the
> mortgage to Bank of America. Assuming that to be true, as we
> must, Bank of America wrongfully initiated foreclosure
> proceedings against Slorp, and his damages were proximately
> caused by the defendants' institution of fraudulent foreclosure
> proceedings that led Slorp to incur attorney's fees. The
> allegedly fraudulent assignment allowed the defendants to
> perpetrate and conceal the fraud by precluding the state court from
> ascertaining whether the defendants were the proper parties to
> initiate the foreclosure proceedings.
>
> To be sure, Slorp's injuries will vanish if the defendants prove that
> Bank of America was the legitimate mortgagee. But this case came
> to the district court on a motion to dismiss, and in that posture the
> court was required to accept the veracity of Slorp's factual
> allegations. Slorp alleges injuries to his property that were
> proximately caused by the defendants' . . . baseless initiation of
> foreclosure proceedings and the fraudulent assignment of his
> mortgage. He is thus entitled to recover damages for those injuries
> unless he fails to satisfy his evidentiary burden, either on summary
> judgment or at trial.

Slorp, 587 Fed. Appx. at 263-64.

The facts in Slorp are substantially similar to those alleged in the Proposed Amended

Complaint. As in Slorp, the proposed amendment alleges that MERS and Reimer Lorber

engaged in fraud by falsely representing that MERS was the 'owner' and 'holder' of plaintiff's

Note and Mortgage at the time they commenced the 2005 state foreclosure action, when in fact

MERS never 'owned' the mortgage and did not 'hold' it at that point. As in Slorp, plaintiff

alleges "injuries to his property" in the form of improper attorney's fees and expenses charged

by MERS and Reimer in the 2005 foreclosure action "that were proximately caused by the

defendants' . . . baseless initiation of foreclosure proceedings." Accordingly, as in Slorp,

plaintiff is entitled to seek damages for those injuries in a RICO action based on fraud in the

2005 foreclosure action "unless he fails to satisfy his evidentiary burden, either on summary

judgment or at trial." Id. at 264.

13

Moreover, even if this court did not commit error in resolving critical issues of fact in favor of Defendants on summary judgment – e.g., by finding that (a) Wells Fargo and HomEq had corrected the collection of an improper post-acceleration attorney fee from Mr. Kline in November 2007 by subsequently refunding that amount; and (b) MERS and Lerner Sampson had corrected the illegal assessment of $350 in attorneys' fees on the second mortgage by a subsequent refund -- Slorp demonstrates that that would still not justify the court's implicit finding that a RICO or fraud claim would be futile because plaintiff "was made whole for the damages he alleges." (See Dock. #492, pp. 69-70; see also 27-28, 42-44, 51)  In the Proposed Amended Complaint, plaintiff alleges damages that include not only "the illegal amounts sought by defendant, but also "legal and other expenses" it incurred as a result of "the illegal activity, including increased expenses in this litigation." (Proposed Amended Complaint, ¶310)   In finding that Mr. Slorp could amend his complaint to add a RICO claim despite the fact that the defendants' fraud was ultimately unsuccessful, the Slorp court held that the attorney's fees and expenses incurred by the plaintiff in defending against the allegedly fraudulently-brought foreclosure action in that case were damages to "business or property" compensable under 18 U.S.C. §1964(c) of RICO.   Slorp, 587 Fed. Appx. at 261.

The viability of a fraud claim based on the alleged misrepresentations made by Defendants here is also demonstrated by the Sixth Circuit's decision in Wallace v. Washington Mutual Bank, F.A., 10-3694 (6th Cir. 2012).   In Wallace, plaintiff sued Washington after it foreclosed on plaintiff's property before receiving an assignment of the promissory note claiming, among other things, that the allegation that Washington was the holder of the mortgage violated the FDCPA.   The district court dismissed the FDCPA claim, finding that the filing of a

14

foreclosure action in which a bank falsely asserts that it owns a mortgage "is not a deceptive practice under the Act."

On appeal, the Sixth Circuit reversed the lower court's decision, finding that a false statement in a foreclosure complaint that a party "was the holder of the mortgage" may constitute a "false representation" under the FDCPA.   Though noting that the Ohio Supreme Court had not yet resolved the issue of whether a lender needs to show that it owned or held the note at the time a foreclosure complaint was filed in order to bring a foreclosure action – an issue resolved in Fed. Home Loan Mtge. Corp. v. Schwartzwald, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214 (2012) -- the Sixth Circuit found that the resolution of that issue was not relevant to whether a party violates the FDCPA by falsely claiming that a lender holds the mortgage in a state foreclosure complaint:

> [S]hould the Ohio courts decide that Washington Mutual did not have standing to bring the foreclosure action in the first place, the materiality of the false statement of ownership would be patent. However, even if Ohio holds the opposite . . . whether Washington Mutual may ultimately succeed in an Ohio court in its foreclosure action has no bearing on whether the initial false statements misled Wallace.   The issue arises in the shadow of the recent subprime mortgage crises in which financial institutions are charged with encouraging . . . rapid transfer and sale of subprime mortgages so as to profit from the mass securitization and sale of the mortgages.

Wallace, 683 F.3d 323, 327 fn. 2 (6th Cir. 2012).  As in Slorp, the Sixth Circuit's decision in Wallace makes clear that a party commits fraud when it makes false representations about "owning" or "holding" a mortgage in order to maintain a foreclosure action in an Ohio state court.

Finally, the alleged misrepresentations, concealment and perjury engaged in by Defendants in both this and the state court litigation can also form the basis for a RICO claim based on obstruction of justice.  United States v. Eisen, 974 F.2d 246, 254 (2d Cir. 1992) ("use of

15

the mail fraud offense as a RICO predicate act cannot be suspended simply because perjury is part of the means for perpetrating the fraud. We do not doubt that where a series of related state court perjuries occurs, it will often be possible to allege and prove both a scheme to defraud within the meaning of the mail fraud statute as well as the elements of a RICO violation.");
Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1024 (7th Cir. 1992) ("If Midwest can show that the defendants' lies constituted mail or wire fraud, 18 U.S.C. §§ 1341 and 1343, or an obstruction of justice, 18 U.S.C. § 1503, then those cover-up acts theoretically may serve as predicate acts.")
Kearny v. Hudson Meadows Urban Renewal Corp., 829vF.2d 1263, 1269 (3d Cir.1987) (dicta) (perjury can be a predicate act under RICO); Levit v. Brodner, 75 B.R. 281, 285 (N.D.Ill.1987) (perjury and destruction of evidence in bankruptcy action might serve as predicate act in subsequent RICO suit).

In sum, the court committed clear error of law in summarily concluding that the claims in the proposed Amended Complaint were "futile" by erroneously finding that the underlying evidence has already been "considered and rejected" by the court and without engaging in any substantive analysis.

### B. The Conclusion That Plaintiff Had Engaged In Undue Delay In Amending The Complaint

The court's summary finding that "undue delay" requires rejection of the proposed Amended Complaint similarly ignores the relevant law and the substance of the new allegations in the proposed Amended Complaint. The conclusion that the new claims "are materially identical to the allegations that prompted the filing of this action" completely disregards the allegations in the Amended Complaint such as those set forth in footnote 2 herein, which specifically identifies each of Defendants' numerous alleged misrepresentations made in (or concealed until) *2015*, seven years after this litigation was instituted.

16

The court's conclusion that certain "allegations in support of [plaintiff's] RICO scheme" have "been with this case from the inception" is completely irrelevant. Obviously, every proposed amendment to pleadings include allegations which were also contained in the initial complaint. Yet the relevant inquiry on a motion to amend the pleadings is whether the proposed amendment presents allegations based on *new* evidence or conduct. The court's decision completely ignores the *unbroken* line of cases from this and other circuits finding that a party does not engage in undue delay where the proposed amendment is based on allegations based on new or previously concealed conduct. See, e.g., K&M Int. Inc. v. NDY Toy LLC, 2015 U.S. Dist. Lexis 131220, *24-25 (N.D. Ohio 2015) (Plaintiff had good cause for its failure to seek leave to amend prior to scheduling deadline where Defendants produced additional evidence supporting new claims after the amendment deadline); Woods v. FacilitySource, 2014 U.S. Dist. Lexis 61919, **6 (S.D. Ohio 2014) (Defendants showed good cause to amend answer to add counterclaim beyond deadline where the proposed amendment was "based on information about which they learned during the discovery process"); Permasteelisa CS Corp. v. Airolite Co., LLC, 2007 U.S. Dist. Lexis 41974, *6 (S.D. Ohio 2007) (good cause for delay in amending Complaint where "the facts being used by Plaintiff" to support the claims "were not discovered until after the [amendment] deadline had passed").[4]

---

[4] See also Lone Star Indus. v. LaFarge Corp., 1994 U.S. App. Lexis 6957, *32 (4th Cir. 1994) (unpublished) (vacating denial of motion to amend complaint, court found that a finding of "good cause" under Rule 16 is required as long as "some of the evidence needed by [Plaintiff] to prove its new … claim did not surface until after the amendment deadline."); Nautilus Ins. Co. v. SPM Resorts, Inc., 2015 U.S. Dist. Lexis (D.S.C. 2015) (finding "good cause" where the Plaintiff "made a reasonable showing that it uncovered previously unknown facts during discovery that support an additional" claim);Finjan, Inc. v Blue Coat Sys., Inc, 2014 U.S. Dist. Lexis 163425, *5 (N.D. Cal. 2014) (finding "good cause" under Rule 16 for failure to amend Answer before deadline for amendments where defendant "could not have uncovered the facts underlying its proposed" new defense "until Plaintiff produced [document] in discovery"); Henderson v. U.S. Aid Funds, Inc., 2014 U.S. Dist. Lexis 131209, *14 (S.D. Cal.

Among the many cases the court's decision ignores is <u>Johnson v. Ventra Group, Inc.</u>, 1997 U.S. App. Lexis 21714, *7-8 (6th Cir. 1997) (unpublished), in which the Sixth Circuit reversed the district court's denial of a motion to amend a complaint where plaintiff alleged that he was not able to plead fraud with specificity until he had received "various documents previously withheld by the defendants."  Though the Sixth Circuit found that it was "contested whether discovery provided plaintiff with new information", the court found that it was an abuse of discretion to deny the proposed amendment:

> We believe that in such a circumstance, when new information giving rise to specific allegations of fraud is allegedly obtained during discovery, the mandate of Rule 15(a) that leave to amend shall be 'freely given' must be adhered to in order to decide a case on the merits.  We believe the district court abused its discretion by

2014) ("because Plaintiff's failure to comply with the [] deadline was at least partially attributable to defendant's production of the requested information after the deadline to amend the pleadings, it could not have been reasonably anticipated at the time of the Rule 16 scheduling conference");  <u>Saloman v. Adderly Indus. Inc.</u>, 960 F. Supp.2d 502, 508 (S.D.N.Y. 2014) (Plaintiff established good cause for failure to amend within scheduling deadline where defendant provided additional documents after scheduling order deadline); <u>Mireles v. Paragon Systems, Inc</u>, 2014 U.S. Dist. Lexis 17230, *2 (S.D. Cal. 2014) (discovery produced after the deadline to amend the pleadings "made compliance with the . . . deadline a temporal impossibility"); <u>Denis v. Home Depot, USA</u>, 2014 U.S. Dist. Lexis 163306, *9(S.D.N.Y. 2014) (Plaintiff showed good cause for seeking leave to amend two years after deadline for amending complaint where the new claims were based on documents which defendant did not produce until well after the deadline for amendment); <u>Butamax Advanced Biofuels LLC v. E.I. Du Pont and Co.</u>, 2013 U.S. Dist. Lexis 19069, *9 (D. Del. 2013) (Defendants established good cause for failure to amend answer within scheduling deadline where Plaintiffs produced documents after scheduling deadline); <u>Baisdan v. CSC-Pa, Inc.</u>, 2009 U.S. Dist. Lexis 108786, *4 (S.D. W. Va. 2009) (finding good cause for delay in seeking to amend complaint where "the Defendants have refused to produce relevant discovery"); <u>Stewart v. Coyne Textile Services</u>, 212 F.R.D. 494, 497 (S.D. W. Va. 2003) (finding good cause for amendment of complaint after deadline in scheduling order, court stated that "this Court will not allow Defendants to benefit by their discovery violations by placing the onus on Plaintiff to seek amendment of her claims before Defendants have supplied their responses"**);** <u>W. Va. Housing Dev. Fund v. Ocwen Technology XChange, Inc.</u>, 200 F.R.D. 564, 567 (S.D. W. Va. 2001) (good cause for late amendment where information "only became available to Plaintiff after the Defendants produced the documents")

18

> not weighing the cause of the delay and by then refusing to allow
> plaintiff to amend the complaint.

Johnson, 1997 U.S. App. 21714, *8-9.   The same conclusion is required here.

Moreover, even if the Opinion had articulated a rational basis for finding "undue delay", the court's hasty opinion also ignores the well-settled principal that "delay alone, regardless of its length is not enough to bar" the amendment "if the other party is not prejudiced." Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999)   It is the nonmovant's burden to establish prejudice, and the Sixth Circuit has made clear that a party "cannot hide relevant, harmful evidence in violation of the rules of discovery and then claim unfair surprise when the damning evidence is uncovered late in the proceedings."  Hayes v. Norfolk So. Corp., 2001 U.S. App. Lexis 27089, *17 (6th Cir. 2001) (unpublished)   In this respect as well, this court's expedited decision simply disregards the requirement that prejudice be demonstrated by the non-movant, and that the nonmovant *cannot* demonstrate prejudice where the proposed Amendment is based on new evidence which the defendants previously failed to produced.   As a court in the Northern District of Ohio recently stated in another case involving a proposed amendment of the Complaint based on evidence belatedly produced by the Defendants:

> [T]o the extent additional discovery is necessary, the Court finds
> Defendants are not in a position to complain.  Had Defendants
> produced [the evidence earlier] … K&M could have sought leave
> to amend its complaint prior to the close of discovery . . . Thus, to
> a certain extent, Defendants' own conduct has necessitated the
> possible re-opening of discovery for the limited purpose of
> exploring K&M's additional copyright claims.

K&M Intl., 2015 U.S. Dist. Lexis 131220, *25.

Finally, the court's decision states that the prior motion to amend in February 2015 put plaintiff "on notice that filing a Motion for Class Certification and the Court's ruling thereon were necessary preconditions to any leave to amend the claims." (Dock. #494, p. 7)  According

19

to the court, since Kline "never complied with th[is] preliminary requirement for considering amendment", he cannot move to amend. (Dock. #494, p. 7)  Like many of the court's other recent findings, this purported "preliminary requirement" to amendment imposed by the court is found nowhere in the Federal Rules of Civil Procedure or the case law.   With all due respect, this court cannot simply invent its own "necessary preconditions" to prevent a party from seeking to amend.

<b><u>CONCLUSION</u></b>

For each of the foregoing reasons, plaintiff respectfully requests that its motion to reconsider this courts decisions granting summary judgment and denying plaintiff's motion to amend be granted.


Dated: January 20, 2016


/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2016 the foregoing document was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record registered to receive electronic service to:

*/s/ Paul Grobman*