**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 3:08cv408 |
| vs. | ) | |
| | ) | JUDGE WALTER HERBERT RICE |
| | ) | |
| MORTGAGE ELECTRONIC SECURITY | ) | |
| SYSTEMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR RELIEF**
**FROM JUDGMENT UNDER RULE 60**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... i

BACKGROUND .............................................................................. 2

    A. Background ........................................................................ 2

    B.  Initiation of This Action And Discovery .......................................... 5

    C. The February 2015 Depositions ................................................... 7

    D. Belated Discovery Produced By Defendants After the February 2015
       Depositions ........................................................................ 9

    E. Representations Made By Defendants In Their Initial Papers Seeking
       Summary Judgment ................................................................ 10

    F. The June 2015 Depositions ....................................................... 12

    G. Belated Disclosure Produced By Defendants After the June Depositions ... 13

    H. Representations Made By Defendants And Their Attorneys In Their Reply
       Papers In Support Of Summary Judgment ....................................... 15

ARGUMENT .................................................................................. 17

    AS THERE IS SUBSTANTIAL EVIDENCE INDICATING THAT
    DEFENDANTS AND THEIR COUNSEL HAVE ENGAGED IN
    REPEATED INSTANCES OF FRAUD, MISREPRESENTATION AND
    MISCONDUCT IN THIS LITIGATION, PLAINTIFFS' RULE 60
    MOTION SHOULD BE GRANTED ............................................. 17

    A. Defendants' Misconduct And Misrepresentations In Discovery .............. 18

    B. Defendants' Misrepresentations To This Court ................................ 21

         i.   False Representations About Attorneys Fees And Past-Due
           Interest On The First Mortgage .......................................... 22

    C.  Evidence of Fraud On The Court By Defendants' Counsel ................... 27

         Filing Inaccurate Documents ................................................. 30

         Making False Representations ................................................ 31

CONCLUSION ……………………………………………………………… 35

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425 (6th Cir. 1996) ……………..    Passim

Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989) …………………………..    30

Ciba Specialty Chems., Corp. v. Zinkan Enter., 2003 U.S. Dist. 19929 (S.D. Ohio
2003) ………………………………………………………………………………    30, 35

Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984 (4th Cir. 1987) …….    28

Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993) ……………………………….    27, 31

Eppes v. Snowden, 656 F.Supp. 1267 (E.D. Ky. 1986) ……………………………..    30

Garcia v. Berkshire Life Ins. Co. of America, 569 F.3d 1174 (10th Cir. 2009) ……..    30

Gen. Med., P.C. v. Horizon /CMS Health Care Corp., 475 F.App'x 65 (6th Cir.
2012) ……………………………………………………………………………    31

H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115 (6th Cir. 1976)    27, 35

Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448 (6th Cir. 2008) ………..    26

Jones v. Ill. Cent. R.R. Co., 617 F.3d 843 (6th Cir. 2010) …………………………..    35

Jordan v. Paccar Inc., 1996 U.S. App. Lexis 25358 (6th Cir. 1996) …………………    19

Morris v. Ylst, 447 F.3d 735 (9th Cir. 2006) ………………………………………...    30

Okros v. Iafrate Const. Co., _____ (6th Cir. ____) …………………………….    27

Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464 (1962) ………………………….    26

U.S. v. Agurs, 427 U.S. 97 (1976) ………………………………………………..    30

Williamson v. Recovery Ltd. P'ship, 2014 U.S. Dist. Lexis 64375 (S.D. Ohio 2014)    34

i

| **Statutes** | **Page** |
|---|---|
| Rule 60 of the Federal Rules of Civil Procedure ……………………………………… | Passim |
| Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §1692 …………………… | 5 |
| Rule 30 ……………………………………………………………………………………… | 8, 12 |
| Truth In Lending Act (TILA), 15 U.S.C. §1602 …………………………………… | 5 |
| 7 Moore's Federal Practice and Procedure …………………………………………… | 28 |
| 12 Moore's Federal Practice § 60.43[1][b] (3d ed. 1999) …………………………... | 17 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| EUGENE KLINE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **CASE NO. 3:08cv408** |
| vs. | ) | |
| | ) | **JUDGE WALTER HERBERT RICE** |
| | ) | |
| MORTGAGE ELECTRONIC SECURITY | ) | |
| SYSTEMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MOTION FOR RELIEF
## FROM JUDGMENT UNDER RULE 60

Pursuant to Rule 60(b)(3), Plaintiff Eugene Kline submits this Memorandum of

Law in support of his motion for relief from judgment on the basis of fraud,

misrepresentation, and misconduct by the Defendants in this litigation.   As shown below,

the evidence uncovered by the Plaintiff in the Spring and Summer of 2015 demonstrates

not only that the Defendants made fundamental misrepresentations in the first and second

state foreclosure actions brought against Plaintiff in the Ohio state courts, but have

repeatedly made misrepresentations to Plaintiff and the court in this action.  Thus, among

other things:

  1.   Wells Fargo and HomEq falsely represented that they did not
       possess certain critical documents, only to produce them well
       after discovery had concluded in this action;

  2.   Wells Fargo and HomEq in this action by produced, filed and
       relied upon an Escrow History in this action which was
       knowingly misleading and inaccurate;

  3.   Wells Fargo, HomEq and Reimer falsely represented in
       documents filed with the court that Mr. Kline was not charged and

1

did not pay attorney's fees out of the payoff amount demanded on his First Loan;

4.   Wells Fargo, HomEq and MERS (hereinafter "the Corporate Defendants") falsely represented in documents filed with the court that there was no balance owed to Mr. Kline after payoff, because the escrow balance in his account came from the payment of past-due interest which he properly owed;

5.   Wells Fargo and HomEq's attorneys in this action -- Treanor Pope & Hughes -- engaged in fraud on the court by making these same misrepresentations in court filings with willful blindness or reckless disregard for their truth or falsity.

As shown below, there is abundant evidence supporting the allegations of misconduct by the Defendants as described above.   The evidence demonstrates that – for the last eight years -- the Corporate Defendants and their counsel have repeatedly engaged in fraud and misrepresentations with regard to the legal fees, expenses and interest collected from Mr. Kline   This court cannot simply disregard the objective evidence of systemic misconduct by defendants.  Nor can it ignore the abundant Sixth Circuit authority which requires the court to carefully examine the evidence of Defendants' alleged misconduct, apply the relevant law, and grant relief under Rule 60.

## BACKGROUND

### A. Background

In or about June 2004, Plaintiff entered into two loan transactions with WMC Mortgage Corporation under which he was loaned the sum of $160,000.00 on a First Loan, and $30,000 on a Second Loan.  MERS was the nominee on both the First and Second Loans.  Unbeknownst to Mr. Kline, sometime thereafter in 2004 his loans were sold to an entity known as the "Merrill Lynch Mortgage Investors Inc. Mortgage Loan Asset-Backed Certificate Series 2004-WM5 Trust."  Under the Pooling and Servicing

2

Agreement governing the Trust, Wells Fargo was the Trustee of the Trust, and HomEq was the servicer.

In 2005, plaintiff fell behind on his payments, and he was sued by MERS in Ohio state court. In the foreclosure complaint, MERS represented that it had standing because it was the "owner" and "holder" of the Note on the first mortgage. (See Foreclosure Complaint annexed to the Declaration of Paul Grobman ("Grob. Decl.") as Exh. A, p. 2) Thereafter, MERS obtained a judgment of foreclosure. With eviction looming, Plaintiff paid the amounts demanded by MERS to reinstate the First Loan, which included foreclosure attorneys' fees and expenses associated with the foreclosure.

In 2007, Plaintiff again fell behind on his mortgage. On March 16, 2007, a party named "Wells Fargo Bank, N.A., as Trustee" commenced a foreclosure action against Kline in Ohio state court. Wells Fargo was represented by Reimer Lorber. In the Complaint, Wells Fargo also sued "Mortgage Electronic Registration Systems, Inc. as nominee for WMC Mortgage Corporation" as the purported holder of the second mortgage on Kline's property. MERS filed an answer in the action, in which it represented that "it has an interest in the property which is subject of the Complaint", that "there is due from the defendant" Kline $28,858.40 plus interest, court costs and advances. (See Answer annexed to Grob. Decl. as Exh. B)

Thereafter, Wells Fargo obtained a judgment of foreclosure, forcing Plaintiff to sell his house to pay off the First and Second Loans. Plaintiff requested a payoff quote from Wells Fargo and MERS through their attorneys. By letter dated November 15, 2007, Wells Fargo and Reimer advised Kline's attorney of the amount necessary to pay off the first mortgage. Among the amounts owed, the letter specified the following:

3

$3,406.12 in escrow advances; $14,821.28 in interest; $178.90 in late fees; and $2,410.00 in "court costs". (See 11/15/2007 letter annexed to Grob. Decl. as Exh. C) By letter dated November 19, 2007, Wells Fargo and Reimer advised Kline that no attorneys fees would be collected from him because "attorney's fees cannot be collected in a payoff." (See 11/19/2007 letter annexed to Grob. Decl. as Exh. D)

By letter dated November 14, 2007, Lerner Sampson, MERS and HomEq provided a payoff quote to Kline's attorney on the Second Loan. Among other things, the Payoff Quote demanded $225 in "Previous Service Costs" and $350 in "Attorney Costs." (See 11/14/2007 letter annexed to Grob. Decl. as Exh. E) Plaintiff paid these amounts, and was advised that the First and Second loans were deemed satisfied.

In December 2007, Plaintiff requested that the defendants provide an itemization of the attorneys' fees and expenses collected from Kline relating to the foreclosure involving the First and Second Loans.

By letter dated February 7, 2008, Wells Fargo and Reimer responded to Kline's request for an itemization of the amounts collected from Kline by Wells Fargo and HomEq. (See 2/7/2008 letter annexed to Grob. Decl. as Exh. F) An attachment to the letter indicated that Plaintiff was charged for various expenses but not attorney's fees. Wells Fargo and Reimer also attached an Escrow History which represented: (i) that the last debt posted to the Escrow Account was a Tax Disbursement for $1,838.88; (ii) that the last transaction in the Escrow Account was (as the November 15th Payoff Quote represented) the application of $3,406.12 in pay off funds to satisfy the remaining Escrow Balance of $3,406.12: and (iii) that the escrow balance was zero. (Grob. Decl. Exh. F, p. WEG-445)

4

By letter dated February 19, 2008, Lerner, MERS and HomEq responded to

Kline's request for an itemization of the amounts collected by MERS on the Second Loan

which were listed in the November 14, 2007 payoff quote. (See 2/19/07 letter annexed to

Grob. Decl. as Exh. G) In the February 19, 2008 letter, defendant Lerner Sampson said

the following with regard to the defendants' right to recover the "attorney costs" of

$350.00 from plaintiff Kline:

> With respect to your inquiry on the attorney costs . . .
> please be advised that these costs were incurred by my
> client in the protection of its security/mortgage as provided
> in paragraph 7 of the mortgage. . . . The attorney fees in the
> amount of $350.00 were incurred by my Client to protect
> its interest when named as a defendant in the Lawsuit
> initiated by Wells Fargo Bank, N.A. My office reviewed
> all pleadings and correspondence (including the complaint,
> answers, motion for summary judgment and opposition),
> prepared and filed the answer, and attended the telephone
> pretrial.

(Grob. Decl. Exh. G)

### B. Initiation of This Action And Discovery

In November 2008, Plaintiff brought this putative class action against the

Defendants, alleging claims under the Fair Debt Collection Practices Act, 15 U.S.C.

§1692 et. seq. ("the FDCPA"), the Truth In Lending Act, 15 U.S.C. §1602 et seq.

("TILA"), breach of contract and unjust enrichment.

In 2012, after over a dozen motions to dismiss, this Court allowed discovery to go

forward on both the class and individual claims. Thereafter, each of the parties served

discovery. Among other demands, Plaintiff served document and interrogatory requests

on Barclays in June 2012, on MERS in August 2012, and on Wells Fargo in November

2013. None of these Defendants responded to Plaintiff's discovery requests within the time deadlines imposed by the Federal Rules:

- MERS did not serve its written responses to Plaintiff's discovery requests until March 14, 2014, more than 1 ½ years after Plaintiff served discovery;

- Barclays did not serve its written responses until June 13, 2014, two years after they were due; and

- Wells Fargo did not serve its discovery responses until June 13, 2014, seven months after they were due.

Among the documents requested from Wells Fargo in November 2013 were the following:

1. *Any and all* documents in any loan file within Wells Fargo's possession, custody or control *relating to Kline's loans*, including all documents relating to the transfer or assignment of Kline's loans to different owners, holders or servicers.

2. To the extent not covered by request #1, any other documents relating to any of Kline's loans….

16. Any and all written communications relating to any of the plaintiff's loans.

(Exhibit H to Grob. Decl., pp. 2, 5) In response to Requests #1 and #2, Wells Fargo stated that "All documents within Wells Fargo's possession regarding the Merrill Lynch Mortgage Investors Inc. Mortgage Loan Asset-Backed Certificate Series 2004-WM5 which held the Kline's loans, have been produced. There are no documents in Well's Fargo's possession that are responsive to the remainder of this Request." (Grob. Decl. Exh. H, p. 2) In response to the request for "written communications relating to any . . . plaintiff's loans", Wells Fargo answered "none." (Grob. Decl. Exh. H, p. 5)

As for Plaintiff's discovery requests served on Barclays in June 2012, Mr. Kline demanded, among other documents:

1. Any and all documents in any loan file maintained by HomEq relating to any of the plaintiffs loans.

2. To the extent not covered by request #1, any other documents relating to any of the plaintiffs' loans....

13. The account history for each of the remaining plaintiffs showing the date and description of (i) each fee and expense posted into each of the plaintiffs' accounts, (ii) whether or not the fee was charged to plaintiff and (iii) each payment made by plaintiffs.

(See Grob. Decl. as Exh. I, pp. 2, 4).  In response to each of these requests, HomEq represented that "documents responsive to this request have been produced." (Grob. Decl. Exh. I, pp. 2, 4)

In the court's Amended Scheduling Order dated February 5, 2015 (Dock. #395), the court set a March 1, 2015 deadline for the completion of discovery.

### C.  The February 2015 Depositions

Depositions of each of the parties were scheduled for February 2015.

Days before these depositions took place, Defendants repeatedly produced documents which were encompassed within Plaintiff's discovery requests to HomEq, MERS, and Wells Fargo and which should have been produced years earlier.  Thus, on February 14, 2015, HomEq produced Loan Payment Histories for Mr. Kline's two loans. (See cover email attached as Exh. J to the Grob. Decl.)  On February 16, 2015, MERS produced portions of its Recommended Foreclosure Procedures and other responsive documents.  (See cover letter annexed as Exh. K to  Grob. Decl.) On February 18, 2015, seven days before its witness was to be deposed, HomEq provided 263 pages of additional documents which were encompassed within Plaintiff's original document demands.  (See cover email annexed to Grob. Decl. as Exh. L)

Depositions of the Plaintiff and Defendants' Rule 30(b)(6) witnesses took place in late-February 2015. On February 25, 2015, plaintiff took the deposition of Michael Perry, HomEq's Rule 30(b)(6) witness. At the deposition, HomEq's witness was asked about the documents produced by HomEq seven days before. Asked to review those documents, HomEq's witness acknowledged that – during the 2007 Foreclosure Action against Plaintiff -- HomEq and Wells Fargo internal documents showed that Mr. Kline was charged for and paid $242.02 in late fees, contrary to the representation in the November 2007 payoff letter that Plaintiff was charged only $178.90 in late fees. (Grob. Decl. Exh. M, pp. 264-71) Mr. Perry admitted that Plaintiff had been charged for at least one late fee for $69.12 after his loan was accelerated in 2007, and that the assessment of that post-acceleration late fee was an error. (Grob. Decl. Exh M, pp. 264-71) However, Mr. Perry represented that this improper late fee had ultimately been refunded to Mr. Kline (Exh. M, p. 269 ("there's a deposit to escrow of $69. He would have received an escrow check.");

HomEq's witness was also asked about certain fees which appeared on the documents produced by HomEq on February 18, 2015 which appeared to show that attorneys fees and expenses were posted to Mr. Kline's account on December 10, 2007, one week after Plaintiff's loan had been "Paid In Full." In response, Mr. Perry said that Mr. Kline would not have been required to pay any post-payoff fees and expenses which were not in the Payoff Quote. (Grob. Decl. as Exh. M, pp. 274-75)

In its Rule 30(b)(6) deposition taken in February 2015, the Reimer firm's representative testified that the firm – which represented MERS in the 2005 foreclosure action against Kline -- was never told that the notes and mortgages on Mr. Kline's First

and Second Loans had apparently been transferred from MERS to Wells Fargo in 2004.

In fact, Reimer acknowledged that – if the Note and mortgage were no longer in MERS'

possession at the time -- MERS likely did not have standing to bring the 2005 foreclosure

action against Mr. Kline:

> Q. … [T]o the extent that there was – this was transferred to
> a Wells Fargo trustee, could a foreclosure have been filed by
> MERS in 2005?
> MS. BROWN: Objection.
> THE WITNESS: Could it have been? Very honest with
> you, at this point I would say no.

(Grob. Decl. Exh. N, p. 137)

### D. Belated Discovery Produced By Defendants After the February 2015 Depositions

On March 17, 2015 – after the discovery deadline and the completion of the

Defendants' depositions -- Wells Fargo emailed 61 pages of additional documents

relating to Plaintiff's loans, as well as certain policies and procedures relating to Wells

Fargo's role as trustee and custodian of those loans. (See email annexed to Grob. Decl.

as Exh. O) These documents were encompassed within Plaintiff's original document

demands, and should have been produced years earlier.

On March 26, 2015, MERS emailed 1,326 pages of additional documents relating

to its policies and procedures for loans on the MERS System, including policies relating

to foreclosure. (See letter annexed to Grob. Decl. as Exh. P) In addition, in a four-page

cover letter, MERS indicated that it was withholding other documents on the basis of the

attorney-client and other purported privileges. Despite repeated requests, MERS has yet

to identify these documents.

On March 26, 2015, HomEq emailed 18 pages of additional documents relating to

Plaintiff's loans, each of which directly related to the legal fees and expenses charged to Mr. Kline. (See cover letter annexed to Grob. Decl. as Exh. Q) These documents were encompassed within Plaintiff's original document demands, and should have been produced years earlier. Among the documents produced by HomEq on March 26, 2015 was a new Escrow History which disclosed transactions which had been concealed in the prior Escrow History produced by the Defendants in this litigation. (See new Escrow History annexed to Grob.Decl. as Exh. R) While the prior Escrow History produced by Defendants indicated that Mr. Kline had no Escrow Balance after Payoff, the new history showed that there was in fact a $412.96 Escrow Balance owed to Mr. Kline after Payoff. (Grob. Decl. Exh. R, at line 12/3/2007) HomEq and Wells Fargo had concealed this Escrow Balance from Mr. Kline and the courts for 7 ½ years, repeatedly putting forth the inaccurate and misleading Escrow History provided to Mr. Kline in February 2008.

Moreover, the new Escrow History also showed two post-payoff transactions which had never been previously disclosed, in which the Defendants made two so-called "Fee Adjustments" (one for $158.00 and one for $324.08) to the Escrow Balance to bring that amount down to zero. (Id. at line 12/11/2007, 12/24/2007) HomEq and Wells Fargo had concealed these additional transactions in Mr. Kline's account from Plaintiff and the courts for 7 ½ years. Neither HomEq nor Wells Fargo have provided the slightest explanation for why they produced and relied upon an inaccurate and misleading escrow history in this litigation for over 7 years.

### E. Representations Made By Defendants In Their Initial Papers Seeking Summary Judgment

On March 27, 2015, Wells Fargo filed a Motion for Summary Judgment, in which

> [I]t is Defendants other than Wells Fargo who are charged with violating Ohio law [by assessing legal fees.] Even if Wells Fargo had been named in these allegations, the disputed fee was not incurred by Reimer Lorber for filing and prosecuting the foreclosure action in regard to the first Note. Rather, those fees were incurred by the Lerner Sampson firm in regard to protecting the investor's interests in the second Note.

(Dock. #417, p. 12)

In its March 27, 2015 summary judgment motion, Wells Fargo also attached and relied on the February 7, 2008 letter and the accompanying documents sent by Reimer on behalf of Wells Fargo, including the inaccurate Escrow History. (See Dock. #417, Exh. I)

On March 27, 2015, HomEq filed a Motion for Summary Judgment expressly incorporating each of the arguments raised by Wells Fargo, including the representation that Plaintiff was not charged for any of Reimer's fees. (Dock. #418, p. 13) HomEq also attached and relied on the February 7, 2008 letter and the accompanying documents, which included the inaccurate Escrow History. (See Dock. #418, Exh. I)

On March 27, 2015, Reimer filed a Motion for Summary Judgment, in which it said the following:

> [T]here are no allegations (or any evidence) that Kline paid any funds to the Reimer Firm or that the payoff figures contained any of the Reimer Firm's attorneys' fees. (Dock. #414, pp. 1-2)

> It is undisputed that the Reimer Firm's attorney fees with respect to the payoff of his loan were neither sought nor collected from Plaintiff. (#414, p. 2)

> Here, Plaintiff cannot prove or present any evidence to create an issue of fact that (1) he conferred a benefit on the Reimer Firm; [or] (2) he paid funds

11

> directly or indirectly to the Reimer Firm or the
> Reimer Firm retained any funds he paid. . . (#414, pp.
> 22-23)

> The Reimer Firm was compensated solely by its
> client for the legal services it performed with respect
> to the Kline foreclosure. (#414, p. 23)

(Dock. #414)   In its March 27, 2015 summary judgment motion, Reimer also attached

and relied on the February 7, 2008 letter and accompanying documents including the

inaccurate Escrow History.  (See Dock. #414, Exh. I, Exh. K)

Reimer also filed an Affidavit from Dennis Reimer which stated that:

> The Reimer firm did not seek to collect nor did it
> collect attorneys fees from plaintiff Kline, with
> respect to the payoff of the first mortgage on his
> property.  Nor were any of the Reimer firms
> attorney's fees passed on to Mr. Kline with respect to
> the payoff of the first mortgage of his property.

(Dock. #414, Exh. Q, p. 1)

**F.   The June 2015 Depositions**

On June 10-12, 2015, Plaintiff's counsel took additional depositions of HomEq,

MERS and Wells Fargo relating to the documents belatedly produced by Defendants in

March.  At the further deposition of HomEq's Rule 30(b)(6) witness on June 10, 2015,

HomEq's deponent Jacklyn Cartmill admitted that the previous Escrow History produced

by HomEq was inaccurate, concealing the fact that there was an escrow balance in Mr.

Kline's account after payoff, and that the escrow balance had been eliminated by

deducting previously undisclosed attorneys fees and/or expenses:

> Q. If the borrower is looking at [the prior Escrow History
> provided to Mr. Kline], would the borrower have any way of
> knowing that there was an escrow balance remaining . . .
> after payoff?
> A. No.

Q. And would the borrower know that there were two transactions in escrow which took that balance and turned it into zero?
A They would not.
Q Do you know whether the borrower was apprised, at any point before [the new Escrow Activity history] was produced on March 26th of 2015, that these transactions that we are talking about, which don't exist on [the prior Escrow History], had been disclosed? . ..
A.  I -- I don't know how the borrower would know.

(Excerpts from Cartmill Dep. annexed to Grob. Decl. as Exh. S, pp. 74-75)

## G. Belated Disclosure Produced By Defendants After the June Depositions

Even after these second depositions took place in June 2015, the Defendants continued to produce additional documents which were highly relevant to the Plaintiff's and the prospective class's claims, and which were clearly encompassed within the initial discovery requests served on HomEq, MERS and Wells Fargo in 2012 and 2013.  Thus, on June 19, 2015 – eight days after Plaintiff took the further deposition of Wells Fargo -- the company produced additional documents via email relating to Wells Fargo's inspection of Mr. Kline's loan documents.  (See cover email annexed to Grob. Decl. as Exh. U)  On June 23, 2015, Wells Fargo produced Custodial Agreements which set forth Wells Fargo's obligations with respect to the Trust which bought Plaintiff's loans from Merrill Lynch.  (See email annexed to Grob. Decl. as Exh. V, p. 2)

On June 25, 2015 – four months after the March 1st discovery deadline – Wells Fargo belatedly produced communications from HomEq to Wells Fargo in 2005 and 2007 requesting the transfer of Mr. Kline's Notes and Mortgages to HomEq for the purposes of foreclosure, as well as internal Wells Fargo documents which may relate to the transfer of these loan documents.  (See documents annexed to Grob. Decl. as Exh. V, at WFB0533-0540)  This was directly contrary to what Wells Fargo represented in its'

response to Plaintiff's discovery requests served in June 2014, in which Wells Fargo swore that it had **no** written communications relating to Mr. Kline's loans or documents relating to the transfer of Kline's loan documents to different holders. As shown by the documents produced on June 25th, this representation was patently false.

As discovery was four months over, and the court ruled in its September 25, 2015 decision striking the Complaint's class allegations that Plaintiff was entitled to no further discovery, Mr. Kline has had no opportunity to question Wells Fargo as to these documents. Nevertheless, the documents produced on June 25, 2015 appear to conclusively demonstrate that -- contrary to the express representations made by Reimer Lorber and MERS in the foreclosure against Mr. Kline in 2005 -- MERS was **not** the owner and holder of the first note and mortgage at the time the 2005 Foreclosure was instituted. (Grob. Decl. Exh. V, at WFB0535-536)

In sum, among other things, the documents belatedly produced by Defendants in the Spring of 2015 and the June depositions indicated that:

> (1) Wells Fargo, HomEq and MERS had produced and relied upon a misleading Escrow History in repeated court filings in this litigation which concealed the fact (i) that there was an escrow balance after Plaintiff had paid off the loan in November 2007, and (ii) that legal fees and expenses were secretly deducted from the escrow balance in Plaintiff's account to reduce it to zero; and

> (2) Wells Fargo, HomEq and Reimer had falsely represented that none of Reimer's legal fees were ever charged to or collected from Mr. Kline; and

> (3) MERS and Reimer had lied in representing to the state court entertaining the 2005 foreclosure that MERS was the owner and holder of Plaintiff's Loans.

## H. Representations Made By Defendants And Their Attorneys In Their Reply Papers In Support Of Summary Judgment

In an attempt to explain some of these discrepancies, on October 30, 2015,

MERS, Wells Fargo and HomEq each filed an Affidavit executed by Jacklyn Cartmill in

further support of their motions for summary judgment.   According to Ms. Cartmill's

Affidavit, Defendants' production of a misleading Escrow History in this litigation was

ultimately irrelevant, since the legal fees and expenses charged to Mr. Kline were taken

from the "past-due interest" owed by Mr. Kline at the time he paid off his first loan.

Thus, Ms. Cartmill stated:

> The excess $412.96 amount which was transferred into the
> escrow account was then credited to clear a portion of the
> outstanding corporate expense advances which had
> previously been made in regard to the Kline loan.  This
> credit toward the corporate advances came out of the
> $412.96 in reallocated *past-due interest*: the Plaintiff was
> *not charged* for these corporate advances [i.e., the legal
> fees and expenses], *nor did he actually pay them.*

(Dock. #477, ¶5 (emphasis added))

Each of the Corporate Defendants filed other documents with this court on

October 30, 2015 which made the same representations.   For instance, in its Reply

Memorandum in further Support of Summary Judgment, (Dock. #477), Wells Fargo

stated that the escrow balance came from "accrued interest" owed by Mr. Kline and "that

Mr. Kline himself was never assessed those fees as part of the payoff quote, *nor did he*

*ever pay any of those fee*s. The only fees he paid were those which were itemized in the

payoff quote." (Dock. #477, pp. 8-9 (emphasis added))

In HomEq's Reply Brief in further support of Summary Judgment filed with this

court on October 30, 2015 (Dock. # 475), HomEq made the identical representations –

15

that the escrow balance came from "accrued interest" owed by Mr. Kline and "that Mr. Kline himself was never assessed those fees as part of the payoff quote, nor did he ever pay any of those fees. The only fees he paid were those which were itemized in the payoff quote." (Dock. #475, pp. 7-8) MER's Reply Brief in further support of Summary Judgment filed with this court on October 30, 2015 also made the same representations. (Dock. #476, p. 8)

On November 13, 2015, HomEq, MERS and Wells Fargo filed papers in opposition to Plaintiff's motion for reconsideration of the order striking the class allegations in the complaint. (Dock. #481) In that document, the Corporate Defendants again represented that Wells Fargo and HomEq deducted the post-payoff legal fees and expenses from past-due interest paid by Mr. Kline which he legitimately owed:

> the Plaintiff continues to harp about an ***alleged positive balance*** he contends existed in his escrow account. . . In the days that followed the payoff, a loan processor at Barclays utilized the escrow account for adjusting and clearing post-payoff expenses. . . [A]ll of this expense adjustment activity took place after the Kline loan was paid off and he was fully released from his loan obligations. The Plaintiff knows this, but persists in making arguments to this Court as *though **a positive escrow balance** existed* on the day the loan was paid off . . . . . Mischaracterizing the escrow balance, which was *actually a reallocation of **accrued interest***, as money which was somehow due to him is *blatantly inaccurate*.

(Dock. #481, pp. 9-10 (emphasis added))

On November 25, 2015, HomEq, MERS and Wells Fargo filed papers in opposition to Plaintiff's Motion to Strike New Evidence. (Dock. # 485). In those papers, HomEq, MERS and Wells Fargo again represented that the legal fees and expenses charged to Mr. Kline after payoff did not come out of amounts otherwise owed to Mr.

Kline, but rather by "*shifting a portion of the collected **past due interest**.*" (Dock. #485, p. 3, fn. 2 (emphasis added))

Ms. Cartmill's October 30th Affidavit also made representations regarding the legal fees collected from Mr. Kline on the Second Mortgage.   According to the Affidavit, while MERS and Lerner Sampson collected $350.00 in legal fees for services performed by Lerner Sampson, "a reimbursement check was mailed to the Plaintiff" on Dec. 21, 2007 in the amount of $422.32 which "included the $350.00 which had been assessed and collected from the Plaintiff in the payoff of the second mortgage loan." (Dock. #477-2, p. 3)

## ARGUMENT

### AS THERE IS SUBSTANTIAL EVIDENCE INDICATING THAT DEFENDANTS AND COUNSEL HAVE ENGAGED IN FRAUD, MISREPRESENTATION AND MISCONDUCT IN THIS LITIGATION, PLAINTIFFS' RULE 60 MOTION SHOULD BE GRANTED

Rule 60(b) of the Federal Rules of Civil Procedure provides in relevant part that,

> On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (3) fraud (whether hereto before denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ...

"Pursuant to [Rule 60(b)(3)], judgments have been set aside on a wide variety of alleged frauds, such as allegations that adverse parties failed to properly respond to discovery requests, thus preventing opposing parties from adequately preparing for trial, to claims that evidence presented at trial itself consisted of perjured testimony or false documents." 12 Moore's Federal Practice § 60.43[1][b] (3d ed. 1999).

In this case, there are three separate bases for imposition of Rule 60 relief.  First,

the Corporate Defendants engaged in fraud and misconduct by repeatedly failing to produce critical documents within the time required by the Court's scheduling order and the Federal Rules of Civil Procedure.  Second, Wells Fargo, HomEq, MERS, and Reimer made repeated misrepresentations to the court with regard to the amounts which were owed by and collected from Mr. Kline.  Third, Wells Fargo, HomEq and MERS' attorneys in this action – Treanor Pope and Hughes – engaged in fraud on the court in making their own independent misrepresentations and in suborning perjury.

## A. Defendants' Misconduct And Misrepresentations In Discovery

"Failure to disclose or produce material requested in discovery can constitute 'misconduct' within the purview of 60(b)(3)." Abrahamsen v. Trans-State Express, Inc., 92 F.3d 425, 428 (6th Cir. 1996).   In this case, Defendants repeatedly engaged in discovery misconduct by giving false answers in response to Mr. Kline's discovery requests, and in concealing critical documents from Plaintiff until after the discovery deadline had concluded.  For instance, as previously indicated, in discovery requests served on Barclays in June 2012, Mr. Kline demanded all documents relating to Mr. Kline's loans, including account histories showing the date and description of "each fee and expense posted into each of the plaintiffs' accounts, [and] whether or not the fee was charged to plaintiff." (Grob. Decl. Exh. I, p. 4, #13).   In response, HomEq represented in June 2014 that "documents responsive to this request have been produced" (Id.), and HomEq and the other Defendants repeatedly filed and relied upon the misleading Escrow History produced in this litigation until – in March 2015 -- they finally produced an accurate Escrow History after discovery was over.  HomEq and Wells Fargo have provided no explanation – none -- for their failure to produce these documents sooner.

Similarly, discovery requests served on Wells Fargo in November 2013 demanded all documents in their possession relating to Mr. Kline's loans, including any written communications relating to his loans and documents relating to the transfer of his loan documents to different holders.    (See Exhibit H to Grob. Decl.)   In response, Wells Fargo represented in June 2014 that there were no such documents.  (Grob. Decl. Exh. H, p. 5)   One year later -- on June 25, 2015 – Wells Fargo produced written communications between it and HomEq requesting the transfer of Mr. Kline's loan documents in 2005 and 2007.  Like HomEq, Wells Fargo has also provided no explanation for the failure to produce these documents sooner.

In Jordan v. Paccar Inc., 1996 U.S. App. Lexis 25358, at *19 (6th Cir. 1996) (unpublished), the Sixth Circuit held that a party's "reckless approach to searching one's files for discoverable material" qualifies as "misconduct" requiring a final judgment to be overturned under FRCP Rule 60.  In Jordan, the plaintiff in a products liability case moved for a new trial after a jury verdict because the defendant-manufacturer provided late discovery and failed to disclose the existence of a particular lawsuit ("the Prewitt Litigation") involving the truck-model at issue in response to an interrogatory which asked for other lawsuits involving the truck.  The district court denied the motion for a new trial, finding that, even if the defendant engaged in misconduct, plaintiff could not show that the failure to disclose the litigation interfered with the development of its case.

On appeal, the Sixth Circuit reversed, ordering the district court to hold an evidentiary hearing to determine whether defendant's conduct during discovery constituted fraud or other misconduct under Rule 60. 1996 U.S. App. Lexis 2535, at *33.

Faulting the district court for taking "many of [defendant's] assertions [regarding its failure to provide timely discovery] at face value", the Court stated:

> [T]he district court did not hold any kind of hearing to determine exactly why [Defendant] had not turned over information in relation to Interrogatories Nos. 21 & 23 earlier. [Defendants'] letter of June 12, 1992 indicates only that [Defendant's] attorney had "found several discrepancies." How? Why did these discrepancies occur? The district court did not inquire into these matters and they are of vital importance to the determination of whether "fraud" occurred or whether any "misrepresentation[s]" were made. . . Also of great importance for effective judicial review is when information about the other nine instances of litigation was turned over to the plaintiff and the reason for the delay in turning this information over in connection with [Defendant's] initial responses to Jordan's interrogatories. . .

1996 U.S. App. Lexis 2535, at *32-33. According to the Court, an evidentiary hearing was necessary because the defendants' discovery conduct could conceivably be explained as follows:

[C]onsider the following conceivable explanation of the facts in this case: [Defendant] deliberately gave false answers to Interrogatories . . . throwing the plaintiff off of a promising avenue of discovery for over two years. Then, only seven months before trial, [defendant] corrected its false answer, indicating that previous litigation involving rollover accidents did exist, but interposing a baseless objection to turning over information about that litigation. The plaintiff's lawyer then requested the relevant information . . . and, in response, [defendants] attorneys turned over information about some of the litigation, but not all of it, despite knowing that Prewitt involved a substantially similar accident... This hypothetical explanation involves both misrepresentations (the false answers to the interrogatories) and fraud (the omission of any information about the Prewitt litigation).

1996 U.S. App. Lexis 2535, at *31-32. The Court held that – on remand, all the moving party need show was that Defendant "engaged in deliberate or reckless behavior" in failing to provide timely discovery. 1996 U.S. App. Lexis 2535, *26. If that showing was made, then "prejudice should be presumed." Id. at 25-26.

The Sixth Circuit's decision in Paccar is directly on point. The facts here demonstrate that both HomEq and Wells Fargo gave false answers to discovery requests in this litigation, and Paccar indicates that such false answers – even if the result of recklessness – qualify as "misconduct" under Rule 60, requiring post-judgment relief. Defendants have not offered any explanation for their discovery failures here, nor have they even amended their discovery responses to correct their misrepresentations. As the Sixth Circuit said in Abrahamsen:

> Our system of discovery was designed to increase the likelihood that justice will be served in each case, not to promote principles of gamesmanship and deception in which the person who hides the ball most effectively wins the case.

92 F.3d at 428-29. For this reason alone, then, plaintiff's Rule 60 motion must be granted.

## B. Defendants' Misrepresentations To This Court

"False testimony in a formal proceeding is intolerable." ABF Freight v. NLRB, 510 U.S. 317, 323 (1994) A court "must neither reward nor condone such a flagrant affront' to the truth-seeking function of adversary proceedings." Id. "In any proceeding, whether judicial or administrative, deliberate falsehoods well may affect the dearest concerns of the parties before a tribunal, and may put the factfinder and parties "to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross-

examination, by extraneous investigation or other collateral means." Id. (internal citations and quotations omitted); see also Allen v. Chicago Transit Auth., 317 F.3d 696, 703 (7th Cir. 2003) ("Perjury committed in the course of legal proceedings is a fraud on the court, and it is arguable that a litigant who defrauds the court should not be permitted to continue to press his case.")

In this case, there is substantial documentary evidence to indicate that Defendants made numerous material misrepresentations to the court and plaintiff in this litigation.

### i. False Representations About Attorneys Fees And Past-Due Interest On The First Mortgage

During this litigation, Wells Fargo, HomEq and Reimer repeatedly represented in court filings that no legal fees were charged to Plaintiffs' account or paid by Mr. Kline on the first mortgage. See supra at pp. 12-13.[1] HomEq's witness Michael Perry also testified that Mr. Kline was not charged for any legal fees or expenses posted to his account after he paid off his loans in November 2007, consistent with HomEq policy. Grob. Decl. Exh. M, p. 275 (Kline "would never have paid more than he was quoted. Anything -- if there were post-[payoff] fees like that that one of the attorney firms came

---

[1] See also Dock. #207, p. 3 (Wells Fargo's August 2010 motion to dismiss represents that "No Reimer Lorber attorneys' fees were ever assessed against Kline or collected from him."); Dock. #231, pp. 5-6 (papers filed by Wells Fargo in March 2011 represent that no Reimer Lorber fees and expenses were ever assessed to or collected from Kline."); Dock. #253, p. 3 (papers filed by Wells Fargo in April 2011 represent that "the attorneys' fees incurred by the foreclosing law firm (Reimer Lorber) are not at issue in this case"); Docl. #323-1 (papers filed by Reimer in Feb. 2014 represent that there is no evidence that [Kline] was charged, nor did he pay any attorney fees or other fees to the Reimer Firm as pertains to this case. Any fees charged by Wells Fargo were subject to the Note and Mortgage and were alleged to be paid to *other* entities."); Dock. #400, pp. 4-5 ("Moreover, the record establishes that the 2007 payoff of the first mortgage loan contained no attorneys' fees from the Reimer Firm.")

to us for, we would have to eat that as a loss.")

As subsequent events revealed, these representations appear to have been less than truthful. Indeed, Defendants were only able to make these representations for so long in this litigation because they had produced an inaccurate Escrow History which concealed the fact that (i) there was a balance in Plaintiff's account after payoff which was transferred to escrow; and (ii) that balance was eliminated by charging Plaintiff for two post-payoff invoices for legal fees and expenses – the same invoices which HomEq's Matthew Perry testified were not charged to Plaintiff's account. Jacklyn Cartmill confirmed that the first Escrow History concealed critical information at her June 10, 2015 deposition:

> Q. If the borrower is looking at [the prior Escrow History],
> would the borrower have any way of knowing that there was
> an escrow balance remaining . . . after payoff?
> A. No.
> Q. And would the borrower know that there were two
> transactions in escrow which took that balance and turned it
> into zero?
> A. They would not.
> Q. Do you know whether the borrower was apprised, at any
> point before [the new Escrow Activity history] was
> produced on March 26th of 2015, that these transactions that
> we are talking about, which don't exist on [the prior Escrow
> History], had been disclosed? . ..
> A. I -- I don't know how the borrower would know.

(Grob. Decl. as Exh. S, pp. 74-75) Thus, according to testimony from HomEq's own witness, Defendants had produced and relied on misleading accounting documents for Mr. Kline's loan which concealed the fact that there was a surplus after Plaintiff had paid off his loan, and that Defendants had used that surplus to pay off attorneys fees and expenses.

Faced with these seeming misrepresentations, Wells Fargo, HomEq and MERS

23

filed an affidavit on October 30, 2015 from Ms. Cartmill which sought to contain the damage from their apparent fraud.  Thus, according to Ms. Cartmill's Affidavit, the transactions in Mr. Kline's account which had been misrepresented or concealed in the prior Escrow History were of no consequence, since the surplus in the escrow account after payoff came from "past-due interest" owed by and properly collected from Plaintiff. (Dock. #477, ¶5)  Cartmill represented that it was that "accumulated interest" owed by Plaintiff which was used to pay off the invoices for legal fees and expenses on Mr. Kline's loan, and thus that "the Plaintiff was not charged for" these legal fees and expenses, "nor did he actually pay them."  (Dock. #477, ¶5) However, all of the documentary evidence indicates that the representation that the legal fees and expenses charged to Plaintiffs' account after payoff came out of "past-due interest" owed by Mr. Kline is patently false.

The November 15, 2007 Payoff Quote from Reimer on behalf of Wells Fargo states that $176,332.28 was due on the first mortgage, including *$14,821.28* in interest through December 9, 2007, calculated at $42.22 per day.  (Grob. Decl. Exh. C). Plaintiff sold his home on November 19, 2007, and HomEq's internal documents indicate that Reimer received a check for this full amount on November 27, 2007, and overnighted it by mail to HomEq.  (See Grob. Decl. Exh. W,  at BC18539 at 11/27/2007)  HomEq internal documents indicate that HomEq received the check on November 28, 2007 (Grob. Decl. Exh. W, at BC18537)  Because Plaintiff paid off the loan at least eleven days before the December 9th date on which interest was calculated in the November 2007 Payoff Quote, Plaintiff paid more interest than what was owed.

Indeed, according to a Transaction History produced by HomEq on February 18,

24

2015, only $14,339.20 of interest was owed based on the date Mr. Kline made his payment, leaving an interest overpayment of $482.08 which was owed to Mr. Kline. (Grob. Decl. Exh. X, at BC18639, at 12/3/2007)   According to the Escrow History which was produced to Plaintiff on March 26, 2015, that amount -- $482.08 – is the same as the Escrow Balance owed to Mr. Kline after payoff as of December 5, 2007.  (Grob. Decl. Exh. R)

Thus, simply put, Defendants own records indicate that Wells Fargo, HomEq and MERS lied when they filed an affidavit from Ms. Cartmill which represented that there was $412.96 in "past-due" and "accrued interest" that was owed to Wells Fargo, which Wells Fargo and HomEq reallocated to escrow.   As HomEq, Wells Fargo and Reimer's own records demonstrate, Mr. Kline was charged and paid at least $482.08 more in interest than he owed on the First Mortgage, which should have been returned to him. HomEq, Wells Fargo and MERS acted fraudulently in filing and relying upon Cartmill's October 30, 2015 Affidavit which Defendants' own records indicate was patently false.

Similarly, Ms. Cartmill lied in representing in her Oct. 30, 2015 Affidavit that Plaintiff "was not charged for" the legal fees and expenses deducted from the $482.08 Escrow Balance, "nor did he actually pay them."  As demonstrated by Wells Fargo, HomEq and Reimer's own documents, the purported legal fees and expenses were deducted from the $482.08 in interest overpayments made by Plaintiff, which were fraudulently mischaracterized by Cartmill as "past-due" interest.  Again, HomEq, Wells Fargo and MERS acted fraudulently in filing and relying upon Cartmill's October 30, 2015 Affidavit in this regard.

To establish fraud within the meaning of Rule 60(b)(3), plaintiff need only show

that the defendants committed a "knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." Info-Hold, Inc. v. Sound Merchandising, Inc., 538 F.3d 448, 454 (6th Cir. 2008). Here, all of the documentary evidence indicates that the representations made by Ms. Cartmill in her affidavit -- that the escrow balance consisted of "past-due interest" and that Wells Fargo and HomEq never collected legal fees or expenses on the first mortgage after payoff -- were false. Ms. Cartmill cites no documents – none-- to support these new assertions in her affidavit. *Compare* Info-Hold, 538 F.3d at 456 (affirming denial of Rule 60 motion because of "in light of the parties factual dispute concerning whether [] a misrepresentation was made and the presence in the record of evidence suggesting that such a misrepresentation was not made"). Moreover, none of the critical assertions in her affidavit have ever been tested in discovery. ; See Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962) ("Trial by affidavit is no substitute for trial by jury'")

Under these circumstances, there can be little question that "a finder of fact could reasonably conclude that" the Defendants committed fraud and/or made misrepresentations within the meaning of Rule 60(b)(3) by repeatedly asserting:

> (i) that the escrow balance was comprised of past-due interest owed by Mr. Kline;
>
> (ii) that Wells Fargo, HomEq and Reimer did not collect legal fees from Plaintiff; and
>
> (iii) that Kline was not charged for legal fees or expenses on invoices which were posted to his account after payoff.

For this reason as well, then, Plaintiff's Rule 60 motion should be granted. Okros v. Iafrate Const. Co., 298 Fed. Appx. 419, 433 (6th Cir. 2008) (unpublished) (reversing denial of Rule 60 motion, the Sixth Circuit found that "a finder of fact could reasonably conclude that" the plaintiff provided false testimony at trial); Abrahamsen, 92 F.3d at 425 (affirming grant of Rule 60 motion where defendants' lawyer did nothing to correct false testimony of defendants' witness)[2]

### C.  Evidence of Fraud On The Court By Defendants' Counsel

Though unnecessary to grant relief under FRCP Rule 60[3], the evidence in the record here also indicates that counsel for Wells Fargo, Barclays and MERS in this litigation have repeatedly engaged in conduct which constitutes a fraud on this court.

Since attorneys "are officers of the court, their conduct, if dishonest, would constitute fraud on the court." H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1119 (6th Cir. 1976)  Fraud on the court generally consists of "conduct (1) On the part of an officer of the court;  (2) That is directed to the judicial machinery itself;  (3) That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;  (4) That is a positive averment or is concealment when one is under a duty to disclose; and (5) "That deceives the court." Demjanjuk v. Petrovsky, 10 F.3d 338, 348 (6th Cir. 1993)  As the Court said in Demjanjuk:

> Cases dealing with fraud on the court often turn on whether
> the improper actions are those of parties alone, or if the

---

[2] The Corporate Defendants also made other critical misrepresentations to the court during this litigation, including falsely claiming that the post-acceleration late fee which was surreptitiously and improperly charged to Plaintiff in November 2007 was refunded to him, and that the legal fees for Lerner Sampson's services which were illegally charged were refunded as well.

[3] Under Rule 60, a party must demonstrate "fraud on the court" under Rule 60(d)(3) rather than simply "fraud, misrepresentation or misconduct by an opposing party" under Rule 60(b)(3) only if the motion is made more than a year after judgment.

attorneys in the case are involved. As an officer of the court, every attorney has a duty to be completely honest in conducting litigation. Professor Moore emphasizes this element of fraud in his treatise: "[W]hile an attorney should represent his client with singular loyalty, that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates fraud upon a court.

Id. at 532, *quoting* 7 Moore's Federal Practice and Procedure, §60.33. "The "involvement of an attorney, as an officer of the court, in a scheme to suborn perjury should certainly be considered fraud on the court." Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d 984, 986 (4th Cir. 1987).

In this case, there have been dozens of alleged misrepresentations contained in documents signed and filed by counsel with the court over a span of at least six years[4], as

---

[4] See Dock. #350, pp. 3, 5 (HomEq falsely represented in brief signed by counsel in opposition to motion to compel that it did not have access to historical loan data because it had been transferred to Ocwen); Dock. #350, pp. 3, 5 (HomEq falsely represented in affidavit executed by counsel and filed in opposition to motion to compel that it did not have access to historical loan data because it had been transferred to Ocwen); Dock. #35, Exh. N (Reimer filed and relied on fraudulent Escrow History in March 2009 documents filed with court); Dock. #207, p. 3 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers signed by counsel and filed with court in August 2010); Dock. #231, pp. 5-6, 7 (Wells Fargo falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2011); Dock. #233, p. 3 (Wells Fargo falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in April 2011); Dock. #267, p. 9 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2012); ); See Dock. #281, pp. 10-11 (Reimer filed and relied on fraudulent Escrow History in July 2012 documents filed with court); Dock. #323-1, p. 12 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2014); Dock. #400, pp. 4-5, fn. 3, 8 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in February 2015); Dock. #400, pp. 1-2, 14-22-23 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); Dock. #414, Exh. I, Exh. K (Reimer filed and relied on fraudulent Escrow History in March 2015 documents filed with court); Dock. #414, Exh. Q, p. 1 (Reimer falsely represented that no attorney's fees were ever assessed to or collected from Kline in affidavit filed by Reimer partner with court in March 2015); Dock. #417, p. 12 (WF falsely represented that no attorney's fees were ever assessed to or collected

well as numerous other alleged false representations by counsel in signed discovery

responses.[5]   A brief analysis of these misrepresentations demonstrates the necessary

attorney culpability to establish fraud on the court.

---

from Kline in papers filed with court in March 2015); See Dock. #417, Exh. I (WF filed and relied on fraudulent Escrow History in March 2015 documents filed with court); Dock. #418, p. 13 (HomEq falsely represented that no attorney's fees were ever assessed to or collected from Kline in papers filed with court in March 2015); Dock. #418, Exh. I  (HomEq filed and relied on fraudulent Escrow History in March 2015 documents filed with court); Dock. #477, ¶5 (WF, HomEq and MERS filed affidavit in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); Dock. #477, pp. 8-9 (WF filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them");  Dock. #475, pp. 7-8 (HomEq filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); Dock. #476, p. 8 (MERS filed reply Brief in Oct. 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed, and that Mr. Kline was not charged for post-payoff corporate advances, "nor did he actually pay them"); Dock. #481, pp. 9-10 (WF, HomEq and MERS filed brief on Nov. 13, 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past- due interest which plaintiff owed, and stating that"[m]ischaracterizing the escrow balance, which was actually a *reallocation of accrued interest*, as money which was somehow due to him is blatantly inaccurate.");  Dock. #485, p. 3, fn 2 (WF, HomEq and MERS filed brief on Nov. 27, 2015 which falsely claimed that remaining escrow balance after plaintiff paid off loan in Nov. 2007 was transferred from past-due interest which plaintiff owed").

[5] See, e.g., Proposed Amended Complaint, Dock. #491, Exh. A, ¶135 (HomEq falsely represented in discovery responses signed by counsel and served on plaintiff in June 2014 that it no longer had a loan database in its possession); ¶138 (HomEq falsely represented in discovery responses signed by counsel and served on plaintiff in June 2014 that "no services are known to have been provided by any Fidelity entity in regard to the Kline loan"); ¶139 ((HomEq falsely represented in discovery responses signed by counsel and served on plaintiff in June 2014 that "no services are known to have been provided by any Rosicki entity in regard to the Kline loan."); ¶150 (Wells Fargo falsely represented in discovery responses signed by counsel and served on plaintiff in June 2014 that it had no documents showing transfer of Kline's loans to other entities, and no documents relating to communications between Wells Fargo and other entities); ¶151 (Wells Fargo falsely represented in Supplemental Discovery responses signed by counsel and served on plaintiff in October 2014 that it had no documents relating to communications between Wells Fargo and other entities).

**Filing Inaccurate Documents**. It cannot be meaningfully disputed that HomEq, Wells Fargo and Reimer repeatedly relied upon an Escrow History in motion papers filed in this proceeding which was inaccurate and misleading. (See Dock. #35, Exh. N, Dock. #281, pp. 10-11, Dock. #414, Exh. I, Exh. K, Dock. #417, Exh. I; Dock. #418, Exh. I; Grob. Decl. as Exh. S, pp. 74-75)

"The presentation of false evidence involves "a corruption of the truth-seeking function of the trial process."" Morris v. Ylst, 447 F.3d 735, 744 (9th Cir. 2006), *quoting* U.S. v. Agurs, 427 U.S. 97, 103 (1976). Courts have regularly found "that the affirmative submission of false evidence is . . . akin to a fraud on the court." Garcia v. Berkshire Life Ins. Co. of America, 569 F.3d 1174, 1182 (10th Cir. 2009); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118-1119 (1st Cir. 1989) (party which attached fraudulent agreement to Complaint committed fraud on the court warranting dismissal even though he subsequently attached the authentic agreement to amended complaint, as "the tactic plainly hindered defendant's ability to prepare and present its case, while simultaneously throwing a large monkey wrench into the judicial machinery."); Ciba Specialty Chems., Corp. v. Zinkan Enter., 2003 U.S. Dist. 19929, *12 (S.D. Ohio 2003) (a party which "manufactures evidence which purports to corroborate its substantive claims or hampers the presentation of its opposing party's claims" commits fraud on the court); Eppes v. Snowden, 656 F.Supp. 1267, 1279 (E.D. Ky. 1986) (defendant's answer and counterclaim stricken where defendant committed "fraud on the court" by producing backdated letters).

On November 25, 2015, HomEq, Wells Fargo and MERS filed a Declaration from their attorney Russell Pope (Dock. #485-2) which purported to explain why the

corporate defendants had not filed the Cartmill Affidavit – which represented that the escrow balance came from "past-due interest" -- until their reply papers in further support of summary judgment.   According to the Pope Affidavit, HomEq purportedly "uncovered" the accurate Escrow History "approximately three weeks after the discovery cutoff in this case", which was March 1, 2015. (Dock. # 485-2, ¶3)  Mr. Pope acknowledges that he delivered a supplemental document production including the accurate Escrow History to Plaintiff's counsel on March 26, 2015, "almost immediately" after receiving the document from HomEq.  (Dock. # 485-2, ¶3)

Nevertheless, despite the fact that Mr. Pope was aware (at the latest) by March 26, 2015 that the prior Escrow History was misleading -- and notwithstanding that he had the accurate Escrow History in his possession – Mr. Pope filed a motion for summary judgment on behalf of HomEq and Wells Fargo on March 27, 2015 which appended and relied upon the prior misleading Escrow History.  (Dock. #417, Exh. I; Dock. #418, Exh. I)  Clearly, in continuing to file and rely upon a misleading Escrow History after admittedly receiving the accurate version of the document, Mr. Pope and his law firm were -- at a minimum – either "willfully blind" to the fact that they were submitting inaccurate and misleading evidence, or "in reckless disregard of the truth", both of which are sufficient to find that an attorney committed fraud on the court. Demjanjuk, 10 F.3d at 348; Gen. Med., P.C. v. Horizon /CMS Health Care Corp., 475 Fed. App'x 65, 71 (6th Cir. 2012)

**Making False Representations**. In a brief accompanying the Pope Affidavit filed by the corporate defendants on November 25th and signed by Mr. Pope and Reuel Ash, (Dock. #485), the corporate defendants also represented that, "due to the quick

turnaround of the additional document production to the Plaintiff" on March 26, 2015,

"defense counsel did not have opportunity to meet with cognizant Barclays personnel to

fully interpret and understand the information contained in the additional records

produced." (Dock. #485, p. 2) Despite the admission that defense counsel purportedly

did not speak with HomEq "to fully interpret and understand" the belatedly produced

records before submitting the Corporate Defendants' summary judgment motions on

March 27, 2015, counsel made the following representation in the brief filed by Wells

Fargo:

> [I]t is Defendants other than Wells Fargo who are
> charged with violating Ohio law [by assessing legal
> fees to Plaintiff.] Even if Wells Fargo had been
> named in these allegations, *the disputed fee was not
> incurred by Reimer Lorber* for filing and prosecuting
> the foreclosure action in regard to the first Note.
> Rather, those fees were incurred by the Lerner
> Sampson firm in regard to protecting the investor's
> interests in the second Note.

(Dock. #417, p. 12 (emphasis added))  In their papers filed on the same day, HomEq

expressly incorporated each of the same arguments raised by Wells Fargo. ((Dock. #418,

p. 13)

However, the documents which had been previously concealed by HomEq and

Wells Fargo provide strong indication that Mr. Kline was in fact charged for some of

Reimer Lorber's (or another law firm's) legal fees.  (See pages 25-27 supra and exhibits

cited therein)  At her deposition, HomEq's Cartmill admitted that the documents

produced by HomEq on March 26, 2015 indicated that some of Reimer Lorber's legal

fees were added to the corporate advances owed by Mr. Kline after payoff :

> Q And this was an invoice from?
> A Reimer, Lorber & Arnovitz. Sorry.

Q Okay. And just tell me what this indicates to you? What
-- what -- tell me what this is.
A. Well, this information indicates it's a disbursement. The
description says "attorney fees," and for the amount of
$510.
Q. And do you know whether this amount was added to
corporate advance?
A. By way of this entry it was.
MS. PETERS: Objection. This Catey Peters.
Q. So was this an amount which was added to the amount
that the borrower owed? Is that correct?
A. That's correct.

(Cartmill Dep., Exh. S, pp. 65-67)   Ms. Cartmill also admitted that – in light of the new

documents -- she did not know whether the representation by the Reimer firm and other

Defendants that Mr. Kline was <u>not</u> charged for Reimer's legal fees was accurate:

Q. Now, in his affidavit here, Mr. Reimer says -- if you turn
to Paragraph 3. "The only monies the Reimer firm received
in connection with the 2007 foreclosure case for fees were
paid to it by HomeEq for legal fees earned. The Reimer firm
did not seek to collect, nor did it collect attorney's fees from
plaintiff Kline with respect to the payoff of the first
mortgage on his property. Nor were any of the Reimer firm's
attorney's fees passed on to Mr. Kline with respect to the
payoff of the first mortgage on his property." Now, in
particular, nor were any of the Reimer firm's attorney's fees
passed on to the -- Mr. Kline. Do you know whether that's
an accurate statement?
A. I do not.

(Cartmill Dep., Exh. S, pp. 91-92)   Thus, at a minimum, HomEq and Wells Fargo's

counsel acted in "reckless disregard of the truth" in representing that Mr. Kline was not

charged for any of Reimer Lorber's legal fees before even speaking to HomEq or Wells

Fargo about the significance of the new documents produced in March 2015.  As shown

above, not even HomEq's own witness was prepared to make that representation at her

June 2015 deposition.

Furthermore, counsel for HomEq, Wells Fargo and MERS was "willfully blind"

or acted in reckless disregard of the truth in not only filing (and likely preparing) Ms. Cartmill's October 2015 false Affidavit, but also repeatedly relying on it in briefs and other papers filed with the court. Indeed, in papers filed with the court, counsel characterized the claim that the escrow balance was comprised of money owed to Mr. Kline as "*blatantly inaccurate*." (Dock. #481, pp. 9-10 (emphasis added))   Had counsel analyzed Defendants' own papers detailing the payoff breakdown and the allocation of the money paid by Mr. Kline on the first mortgage in November 2007, they would have realized that the assertion that the escrow balance was comprised of "past-due interest" which Mr. Kline owed was not true. In claiming that the escrow balance was comprised of accrued interest owed by Plaintiff despite overwhelming documentary proof to the contrary, counsel for the corporate defendants were willfully blind to the truth. Okros, 298 Fed. Appx. At 432-433 (after analyzing the record facts, the Sixth Circuit reversed the lower court's denial of defendant's Rule 60 motion, concluding that the "finder of fact could reasonably conclude that [plaintiff's counsel] committed fraud on the court" because he had "cause to know" that his client's testimony was untrue and therefore "acted in reckless disregard of the truth, given the information available"); Abrahamsen, 92 F.3d at 428-29 (affirming grant of Rule 60 motion where defendant's counsel committed "misconduct" within the scope of Rule 60(b)(3) by "doing nothing to correct his client's [false] testimony"); Williamson v. Recovery Ltd. P'ship, 2014 U.S. Dist. Lexis 64375, *40-41 (S.D. Ohio 2014) (attorneys for defendant committed fraud on the court by "unreasonably relying" on claims by his clients that certain documents did not exist; attorney was "willfully blind to the truth, and acted in reckless disregard thereof")

   In sum, the alleged fraud and misconduct engaged in by the Corporate Defendants

here – including obstruction of the discovery process, the presentation of misleading evidence, and the presentation of false testimony by both the corporate defendants and their attorneys -- "has resulted in a full range of litigation abuses." Ciba, 2003 U.S. Dist. Lexis 19929, at *13.  At a minimum, the facts alleged more than demonstrate "the evidentiary showing of fraud" necessary to require an evidentiary hearing to determine whether the defendants engaged in "fraud", "misrepresentations" or "other misconduct" requiring relief under Rule 60. Paccar, 1996 U.S. App. Lexis 2535, at *34 (faulting district court for accepting defendant's responses to plaintiff's Rule 60 motion based on defendant's alleged misconduct in discovery "at face value", the Sixth Circuit reversed and remanded with instructions to district court to hold an evidentiary hearing); Jones v. Ill. Cent. R.R. Co., 617 F.3d 843, 853 (6th Cir. 2010) ("A district court may require the moving party to make some evidentiary showing of fraud before granting post-trial discovery or an evidentiary hearing"); H.K. Porter, 536 F.2d at 1119 (finding that court operated properly in denying further discovery after holding hearing on Rule 60 motion, because "to permit discovery after judgment . . . it was at least necessary for Goodyear to present some proof to establish" its charges of fraud, perjury, and subornation of perjury)

### CONCLUSION

For each of the foregoing reasons, Plaintiff respectfully requests that his motion for relief under Rule 60 be granted, and that this court alter its prior decisions granting summary judgment, striking Plaintiff's class allegations, and denying Plaintiff's right to amend the complaint.

Dated: January 27, 2016

/s/ Paul Grobman
Paul Grobman (Pro Hac Vice)
555 Fifth Avenue, 17th floor
New York, New York 10017
T. 212-983-5880
F. 212-682-7060
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2016 the foregoing document was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to counsel of record registered to receive electronic service to:

*/s/ Paul Grobman*