IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

EUGENE KLINE, *et al.*,          :

    Plaintiffs,

    v.                            :

                           Case No. 3:08-cv-408

MORTGAGE ELECTRONIC                 JUDGE WALTER H. RICE
REGISTRATION SYSTEMS., *et*      :
*al.*,

    Defendants.                   :

---

DECISION AND ENTRY OVERRULING PLAINTIFF EUGENE KLINE'S
MOTION FOR RECONSIDERATION, TREATED AS A MOTION TO
ALTER OR AMEND A JUDGMENT PURSUANT TO RULE 59(e) (DOC.
#495) OF THE COURT'S ENTRY OF SUMMARY JUDGMENT IN FAVOR
OF DEFENDANTS (DOC. #492) AND OVERRULING PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT
(DOC. #494); PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT
UNDER RULE 60 IS OVERRULED (DOC. #496)

---

Plaintiff Eugene Kline ("Plaintiff" or "Kline") moves that this Court alter or amend

its decision and entry sustaining the motions for summary judgment filed by Defendants

Mortgage Electronic Registration Systems ("MERS"), Wells Fargo Bank, N.A. ("Wells

Fargo"), Barclays Capital Real Estate, Inc. ("Barclays")[1], Lerner, Sampson & Rothfuss

("Lerner Firm") and Reimer, Arnovitz, Chernek & Jeffrey Co. L.P.A. (f/k/a Reimer, Lorber

& Arnovitz, Co., L.P.A.) ("Reimer Firm") (collectively "Defendants"), and its decision and

entry overruling Plaintiff's motion for leave to file a second amended complaint.  Doc.

---

[1] MERS, Wells Fargo and Barclays are collectively referred to in this entry as the "Corporate Defendants."

#495 (citing Doc. #492, 494). Plaintiff also moves for relief from the entry of judgment against him and in favor of Defendants, overruling of his motion for leave file a second amended complaint, and the Court's order striking class allegations from his amended complaint. Doc. #496 (citing Doc. #463, 493, 494). For the reasons set forth below, Plaintiff's motions are OVERRULED.

## I.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The extensive factual history regarding the origination and securitization of Plaintiff's first and second mortgages, the foreclosure actions taken with respect to the mortgages in 2005 and 2007, and Kline's 2007 lawsuit against HomEq Servicing Corporation ("HomEq")[2] and the Reimer Firm, were discussed extensively in this Court's entry sustaining Defendants' motions for summary judgment. Doc. #492.[3] The Court incorporates its previous discussion by reference, and will only discuss those background facts to the extent that they are pertinent to Plaintiff's present motions.

On February 3, 2015, Plaintiff moved for leave to file a second amended complaint, to add claims of common law fraud and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") Act. Doc. #391; 18 U.S.C. § 1964. On February 5, 2015, the Court issued an Amended Scheduling Order, which gave Plaintiff until April 30, 2015, to file a motion for class certification, Doc. #395, PAGEID #5744, a deadline that was subsequently extended until June 9, 2015. Doc. #421; Doc. #463, PAGEID #7892-93. On March 27, 2015, in accordance with the Amended

---

[2] HomEq was the loan servicer for Plaintiff's first mortgage, and at the time of the 2005 and 2007 foreclosures and 2007 lawsuit, was a subsidiary of Barclays.

[3] Unless explicitly stated otherwise, references to "mortgage" shall refer to both a mortgage and the promissory note securing that particular mortgage.

Scheduling Order, Defendants filed motions for summary judgment. Doc. #414, 416, 417, 418, 419. That same day, the Court overruled without prejudice Plaintiff's motion for leave to file a second amended complaint, subject to renewal once the Court ruled on class certification. Doc. #415. In that entry, the Court noted that Plaintiff had a "major hurdle to overcome" if he decided to renew his motion to amend: "the fact that, by his own admission, he believed that he could state a RICO claim against Defendants by mid-March, 2014, yet waited nearly a year to move the Court for permission to amend." Doc. #494, PAGEID #8940-41 (citing Doc. #415, PAGEID #6301-02).

Plaintiff failed to file any motion for certification, and on August 3, 2015, Defendants filed a Joint Motion to Strike and Dismiss Class Allegations for Failure to File Class Certification Brief. Doc. #444. In his memorandum *contra*, Plaintiff noted the Defendants' late production of several thousand pages of documents, including a modified escrow history, and Plaintiff's requests for further discovery with respect to the late production. Plaintiff argued that the above circumstances justified an extension of time in which to file a class certification motion. Doc. #445, PAGEID #7310, 7313, 7315. However, he failed to explain how or why the late production by Defendants or the additional discovery requested by Plaintiff prevented him from filing such a motion. The Reimer Firm and Lerner Firm, in their reply memoranda, asserted that "Plaintiff made no timely request for an extension of the class certification deadline, and no good cause or excusable neglect exists to justify granting an extension." Doc. #463, PAGEID #7862 (citing Doc. #447, 448).

On September 25, 2015, the Court sustained Defendants' motion, finding that there was no basis upon which to grant Plaintiff's request for additional time to conduct

3

discovery. *Id.*, PAGEID #7889-90. "Furthermore," the Court noted, Plaintiff "did not substantively make a request for an extension of time to file a class certification motion." *Id.*, PAGEID #7891. Finding that there was no excusable neglect or other extraordinary circumstance that would justify Plaintiff filing his initial certification motion almost seven years after the filing of the initial complaint, the Court struck the class allegations from the amended complaint, and dismissed the class-related claims with prejudice. *Id.*, PAGEID #7893-94.

On October 23, 2015, Plaintiff filed a motion for reconsideration of the Court's decision to strike the class allegations and claims. Doc. #472. Plaintiff noted that the deadline to file a class certification motion or memoranda in opposition to the motions for summary judgment had not expired at the time he submitted his April 10, 2015, and May 7, 2015, letters, in which he purported to explain the need to conduct additional discovery. *Id.*, PAGEID #8205 (citing Doc. #427). Therefore, Plaintiff claimed, he was not required to make a formal motion under Fed. R. Civ. P. 6. *Id.* Further, Plaintiff argued, S.D. Ohio Civ. R. 7.2, which prohibits "letters to the Court," conflicted with Fed. R. Civ. P. 6, and, thus, could not operate to bar Plaintiff's letters. *Id.*, PAGEID #8205-07.[4] On December 21, 2015, after briefing on Defendants' motions for summary judgment was complete, Plaintiff filed a motion for leave to file a second amended complaint. Doc. #489. In support, Plaintiff argued that the documents produced to him in early 2015 by the Corporate Defendants and the June, 2015, Fed. R. Civ. P. 30(b)(6) depositions of the Corporate Defendants' representatives revealed "that the Defendants

---

[4] Plaintiff raised several additional arguments as to why the Court's entry striking class allegations was erroneous, Doc. #472, PAGEID #8207-27, none of which is relevant to the present motions before the Court.

have concealed evidence and made numerous misrepresentations during the course of this litigation." Doc. #490, PAGEID #8688. In light of the new evidence, Plaintiff claimed, good cause existed to add claims under RICO and for common law fraud and spoliation, "which were not in the Proposed Amended Complaint filed in February[,] 2015." *Id.*, PAGEID #8688-89.

On December 23, 2015, the Court sustained Defendants' motions for summary judgment in their entireties and overruled as moot Plaintiff's motion for reconsideration of the Court's order striking class allegations. Doc. #492. That same day, the Court overruled Plaintiff's motion for leave to file a second amended complaint. Doc. #494. The Court's holdings and reasoning will be set forth below as necessary. On January 20 and January 28, 2016, Plaintiff filed motions to alter or amend the judgment, Doc. #495, and for relief from judgment, Doc. #496, respectively.

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration

A motion seeking reconsideration of a grant of summary judgment is treated as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). "Under Rule 59, a court may alter the judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Caviar v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). "A motion under Rule 59(e) is not an opportunity to opportunity to re-argue a case. . . . 'Thus, parties should not use them to raise arguments which could, and should, have been made before the judgment was issued.'" *Sault Ste. Marie Tribe of*

5

*Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)); *see also GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 ("[t]o constitute 'newly discovered evidence,' the evidence must have been previously unavailable.").


### B.    Motion for Relief from Judgment

"On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Plaintiff's motion for relief from judgment is based, at least in part, on alleged fraudulent representations to the Court made by Defendants, and Defendants' concealment of important documents during discovery. Doc. #498, PAGEID #9087-88. Fraud on the court consists of conduct:

1. On the part of an officer of the court;
2. That is directed to the "judicial machinery" itself;
3. That is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth;
4. Is a positive averment or is concealment when one is under a duty to disclose;
5. That deceives the court.

*Demjanjuk v. Petrovsky*, 10 F.3d 338, 348 (6th Cir. 1993).

"However, relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)). A motion for relief from judgment is not an opportunity to re-litigate the merits of the underlying case. *See GenCorp, Inc. v. Olin Corp.*, 477 F.3d 368, 373 (6th Cir. 2007) ("[a] Rule 60(b)

motion is neither a substitute for, nor a supplement to, an appeal."). Ordinarily, a movant must show that there was "misconduct [not] known to the movant before judgment entered," and "that the misconduct adversely affected the fairness of the proceedings." *Thurmond v. Wayne Cty. Sheriff Dep't*, No. 13-1389, 564 F. App'x 823, 830 (6th Cir. 2014) (emphasis added). A party seeking relief from judgment "has the burden of proving [the] existence of fraud on the court by clear and convincing evidence." *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010).

## III. MOTION FOR RECONSIDERATION

### A. Court did not Commit Clear Error in Holding that Plaintiff was not Improperly Charged for Fees or Interest

#### 1. Subject Matter of Defendants' Requests for Admissions Conclusively Established

On October 1, 2014, Corporate Defendants propounded upon Plaintiff Requests for Admission, and Plaintiff did not serve his responses until February 15, 2015. Doc. #417-13; 417-14. Because a failure to respond to a request for admission within thirty (30) days results in the subject matter being conclusively established, Fed. R. Civ. P. 36(a)(3), (b), the Court, in its entry granting summary judgment, stated that "Kline's failure to respond means that th[ese] request[s] [are] deemed admitted." Doc. #492, PAGEID #8884.

In his reply memorandum, Plaintiff notes that, in his responses, he stated that he could not admit or deny the requests because he had not "had the opportunity to take the deposition of any of the defendants," Doc. #507, PAGEID #9193 (quoting Doc. #417-14, PAGEID #6510). Plaintiff "expressly reserved the right to supplement these responses" once he had taken the depositions. Doc. #417-14, PAGEID #6510. Plaintiff

states that he did not discover the post-acceleration fee until the deposition of Joseph

Perry ("Perry"), HomEq/Barclays's Fed. R. Civ. P. 30(b)6) representative, on February

25, 2015. Thus, Plaintiff claims, he could not have been aware of "HomEq and Wells

Fargo secretly charg[ing] Plaintiff for at least one post-acceleration late fee" at the time

his responses were due. Doc. #507, PAGEID #9193. Plaintiff argues that, given: (1)

the late date on which he discovered the post-acceleration late fee; (2) the admission

(no post-acceleration fee charged) being directly contradicted by a fact in evidence (fee

charged); and (3) the interest of adjudicating claims on their merits, the admission

should be deemed withdrawn. *Id.*, PAGEID #9193-94 (citing *Kerry Steel, Inc. v.*

*Paragon Indus., Inc.*, 106 F.3d 147, 153-54 (6th Cir. 1994)).

As Corporate Defendants served their requests for admission on October 1,

2014, Plaintiff was required to respond to the requests no later than November 4, 2014,

lest the requests' subject matter be deemed admitted. Fed. R. Civ. P. 6, 36(a)(3).

However, as discussed above, Plaintiff did not respond to the Requests until February

15, 2015, Doc. #417-14; the modified scheduling order, entered into by the parties on

November 10, 2014, Doc. #388, did not extend the deadlines by which Plaintiff could

respond to the Corporate Defendants' requests for admissions.

> A matter admitted under this rule is conclusively established unless the
> court, on motion, permits the admission to be withdrawn or amended.
> Subject to Rule 16(e), the court may permit withdrawal or amendment if it
> would promote the presentation of the merits of the action and if the court
> is not persuaded that it would prejudice the requesting party in maintaining
> or defending the action on the merits.

Fed. R. Civ. P. 36(b) (emphasis added).

*Kerry Steel* and the other cases cited by Plaintiff, Doc. #507, PAGEID #9193-94,

underscore the Court's interest in resolving cases on the merits, and not allowing

neglect by a party to dictate the resolution of a claim on summary judgment. However, for several reasons, those cases are distinguishable. <u>First</u>, in *Kerry Steel*, the Sixth Circuit affirmed the district court's finding "that statements made by defense counsel at oral argument were equivalent to a motion to withdraw or amend—and on this basis the court [properly] deemed the admission withdrawn." 106 F.3d at 154. Similarly, in *Fed. Dep. Ins. Corp. v. Prusia* and *Edeh v. Equifax Info. Servs., LLC*, the parties moved to amend their admissions prior to any rulings on motions for summary judgment. *Prusia*, 18 F.3d 637, 640 (8th Cir. 1994); *Edeh*, 295 F.R.D. 219, 222 (D. Minn. 2013). In contrast, despite ample time to seek leave to modify his responses, Plaintiff never filed a motion seeking such leave. Indeed, Plaintiff's first request to the Court to amend or withdraw his responses came in his reply memorandum, which he filed on February 24, 2016—more than fifteen months after his responses were due, almost one year after he deposed Perry, and more than two months after judgment was entered against him.

Second, the other cases cited by Plaintiff, Doc. #507, PAGEID #9193-94, emphasize that withdrawal of an admission is appropriate when doing so "will subserve presentation of the merits of the action and . . . will not result in prejudice to the defendant." *Morris v. Russell, Burdsall & Ward Corp.*, 577 F. Supp. 147, 151 (N.D. Ohio 1983); *see also White Consol. Indus., Inc. v. Waterhouse*, 158 F.R.D. 429, 433 (D. Minn. 1994) ("we will not subvert the search for the truth without compellingly evident cause, merely to further rigid compliance with a procedural precept."). However, both *Morris* and *Waterhouse* are easily differentiated, and underscore why Plaintiff should not be allowed to amend or withdraw his responses at this late date. As in *Kerry Steel*, *Edeh* and *Prusia*, the movants sought to withdraw or amend their long before the courts

9

had ruled on dispositive motions. *Morris*, 577 F. Supp. at 148, 151; *Waterhouse*, 158 F.R.D. at 431. Plaintiff cites no reason why the holdings in those cases should be extended to instances when judgment on the merits has already been entered.

The *dicta* in *Waterhouse* underscores why its reasoning should not be extended to this case. That court, in granting the motion to amend, noted that "the Defendant's responses were [not] so astounding as to require last minute changes in trial strategies." 158 F.R.D. at 433. In this case, judgment has already been entered in favor of Defendants and against Plaintiff. In so doing, the Court properly deemed the subject matter of the requests admitted. If the Court were to allow withdrawal or amendment of Plaintiff's admissions post-judgment, then Defendants would suffer immense prejudice, as they would be forced to re-litigate an action already decided in their favor. The Court, at this post-judgment stage, must balance deciding the case on the merits against the interest of the parties and the Court in final resolution of litigation. *See Engler*, 146 F.3d at 374 (Fed. R. Civ. P. 59(e) motion not appropriate vehicle for parties to raise arguments that should have been made prior to entry of judgment). Plaintiff has not raised any arguments regarding withdrawal or amendment of his responses that were not available to him prior to the entry of judgment, and, thus, has not made a showing that would justify the prejudice that would be suffered by Defendants. Accordingly, the Court will not permit withdrawal or amendment of his responses.

As Plaintiff failed to answer or object to the requests for admission in a timely manner, the subject matter of the requests were properly deemed admitted. Fed. R. Civ. P. 36(a)(3), (b). The subject matter of the admissions is set forth more fully below where relevant.

10

**2.** **No Evidence that Escrow Account Balance Included Attorney Fees**

In its entry granting summary judgment on Plaintiff's FDCPA and unjust enrichment claim against the Reimer Firm, and Plaintiff's various Truth in Lending Act, 15 U.S.C. § 1666d ("TILA"), fraud and unjust enrichment claims against the Corporate Defendants, *see* Doc. #492, PAGEID #8870-71, the Court noted that Plaintiff claimed that a modified escrow history, produced by Barclays in February, 2015, revealed "a previously undisclosed balance," which "remained after the proceeds from his payoff [of the first mortgage] had been applied, and two subsequent transactions that brought the escrow account balance to zero." *Id.*, PAGEID #8921. Plaintiff alleged that "these transactions and the testimony of Jacklyn Cartmill [("Cartmill")], Barclays' [Fed. R. Civ. P. 30(b)(6)] representative, demonstrate that the positive balance in the escrow account was applied to attorneys' fees owed to the Reimer Firm." *Id.* Collection of attorney fees incurred in connection with a foreclosure action is illegal under Ohio law. *Id.*, PAGEID #8920 (quoting *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 902 N.E.2d 396, ¶ 10 (2009)). The Court rejected Plaintiff's argument, noting that "it is undisputed that the itemized payoff quote presented to Kline in connection with the [first mortgage] Note never included any amount of attorneys' fees," and thus, "no reasonable jury would view the payoff quote as an attempt to collect them." *Id.*, PAGEID #8923.

In his motion, Plaintiff argues that "[g]iven Plaintiff's Surreply Memorandum and Declaration, it is impossible to determine how the [C]ourt could have reached this conclusion." Doc. #495, PAGEID #8949. Plaintiff claims that Cartmill lied in her affidavit when she stated that a portion of the escrow balance, in the amount of

11

$412.96, resulting from an overpayment of interest) was not used to pay attorney fees. Doc. #477-2, ¶ 5, PAGEID #8484. Rather, Plaintiff argues, the modified escrow history produced by Barclays showed an interest overpayment of $482.08 by Plaintiff, but that the balance "was eliminated by the [*sic*] Wells Fargo and HomEq's deduction of two post-payoff charges from the balance owed to Mr. Kline – $158.00 and $324.08 – for attorney's fees and expenses." Doc. #495, PAGEID #8949-50 (quoting Doc. #487, PAGEID #8646-47; citing Doc. #488-4, PAGEID #8674-76) (internal quotation marks omitted). Plaintiff claim that the discrepancy between Cartmill's (alleged interest overpayment of $412.96), and escrow history ($482.08), created a genuine issue of material fact, and summary judgment was thus inappropriate. *Id*., PAGEID #8951.

While Plaintiff previously claimed that Wells Fargo had paid the Reimer Firm out of the loan payoff proceeds, Doc. #466, PAGEID #8094, he cites to no evidence that Wells Fargo (or, for that matter, MERS) had any access to the escrow account, or could have made any adjustments or deductions to the account. Thus, to the extent that Plaintiff's claims against Wells Fargo or MERS arise from payment of attorney fees with respect to the foreclosure of the first mortgage, his motion to alter or amend the judgment must be overruled. Rather, his focus in the present motion is whether the Reimer Firm's attorney fees were paid out of the post-acceleration interest paid by Plaintiff. The interest, Plaintiff argues, remained in an escrow account maintained by HomEq even after Plaintiff extinguished the mortgage. Doc. #495, PAGEID #8949-51. If so, Plaintiff claims, then the collection of post-acceleration interest by HomEq, and Plaintiff's payment of attorney fees incurred by the Reimer Firm were improper, and his claims should be allowed to proceed to trial.

12

In its memorandum in opposition, the Reimer Firm notes that the evidence cited by Plaintiff—Cartmill's testimony and affidavit, and the initial and modified escrow histories—is not new; the Court, in its entry sustaining Defendants' motions for summary judgment, considered that evidence and concluded that the Reimer Firm was not paid attorney fees out of the escrow account. Doc. #505, PAGEID #9148-49. Nor was there evidence that the Reimer Firm attempted to collect fees, or that the Reimer Firm ever had access to the escrow account records. *Id.*, PAGEID #9149. The only items proffered by Plaintiff to refute the Reimer Firm's arguments are portions of Cartmill's deposition testimony, in which she allegedly stated that: (1) the modified escrow history contained a line-item for attorney fees payable to the Reimer Firm; and (2) in light of the modified history, she could not corroborate the affidavit of Dennis Reimer, who averred that the Reimer Firm was not paid attorney fees out of Plaintiff's escrow account. Doc. #507, PAGEID #9188.

Plaintiff's citation of Cartmill's testimony provides no support for his claim against the Reimer Firm. The portion of Cartmill's testimony in which she states that a line-item for attorney fees was "added to the amount that the borrower owed," *id.* (citing Doc. #465-16, PAGEID #8040-41), does not provide any basis to alter or amend the judgment. Cartmill testified only that the line-item was added, not that Plaintiff ever paid any attorney fees. Indeed, Cartmill expressly testified that she did not know "whether this [attorney fee] amount in whole or in part was taken out of the escrow balance." Doc. #465-16, PAGEID #8041. Plaintiff has failed to put forth any affirmative evidence that calls into question Cartmill's subsequent affidavit, which detailed how proceeds were allocated in the escrow account, and which contained no reference to payments to

the Reimer Firm. Doc. #477-2, ¶¶ 5-9, PAGEID #8484-85. Rather, Plaintiff only proffers conjecture as to how Barclays, or one of the other Corporate Defendants, may have diverted money from the escrow account to the Reimer Firm. *See* Doc. #495, PAGEID #8949-51. Such conjecture, when placed against the Rule 56 evidence proffered by Defendants, provides no grounds for the Court to alter or amend the judgment with respect to the Reimer Firm.

Similarly, Cartmill did nothing more than testify that she could not, at the time of her deposition, corroborate the statement in Dennis Reimer's affidavit that none of "the Reimer [F]irm's attorney fees [were] passed on to Mr. Kline with respect to the payoff of the first mortgage." Doc. #497-19, PAGEID #9056. Cartmill did not state or imply that she believed Dennis Reimer's statement to be false, and indeed, Cartmill's subsequent affidavit did not refer to any payment to the Reimer Firm. Doc. #477-2, ¶¶ 5-9, PAGEID #8484-85. Moreover, Plaintiff admitted that no Reimer Firm "attorneys' fees were included in the payoff statement [he] received in conjunction with satisfying [his] outstanding mortgage." Doc. #417-13, PAGEID #6506. In light of undisputed evidence that the Reimer Firm did not attempt to collect attorney fees, and that there was no record the Reimer Firm was paid such fees, Cartmill's inability to corroborate Dennis Reimer's affidavit does not provide grounds sufficient to alter or amend the judgment.

Plaintiff fares no better in his claims against the Corporate Defendants with respect to the allocation of fees paid by Plaintiff. As the Court noted in its entry sustaining motions for summary judgment, the "Fee Adjustments" described in the escrow histories were "somewhat opaque in nature," but were not improper. Doc. #492, PAGEID #8924. Moreover, whether Barclays reallocated $412.96 to repay "outstanding

14

corporate expense advances," as Corporate Defendants claim, or $482.08, as Plaintiff claims, is immaterial, because, as discussed above, there is simply no evidence that Barclays paid any attorney fees out of the escrow account. As with the Reimer Firm, Plaintiff is left only with speculation that Cartmill lied in her testimony and affidavit about the allocation of proceeds. Even putting aside Cartmill's affidavit—which, Plaintiff's speculation aside, has not been contradicted by evidence of record—Corporate Defendants, in their motions for summary judgment, proffered both the initial and modified escrow histories and the initial payoff quote for the mortgage, the latter of which Wells Fargo sent to Plaintiff in November, 2007, after suing to foreclose on the first mortgage. Doc. #506, PAGEID #9172. Those documents do not permit a reasonable inference that: (a) Barclays intended to charge Plaintiff for attorney fees; or (b) that Plaintiff was actually charged for those fees. Finally, and most importantly, Plaintiff admitted that he did not pay any attorney fees in connection with his mortgage payoff. Doc. #492, PAGEID #8881. In light of this undisputed evidence, the Court's granting of summary judgment on the issue of attorney fee payment was proper, and was not the clear legal error required to alter or amend the judgment. Accordingly, Plaintiff's motion is overruled, with respect to the allegedly improper charging and payment of attorney fees.

### 3.     Plaintiff was not Charged Post-Acceleration Late Fee

In the entry granting summary judgment, the Court stated that Joseph Perry ("Perry"), HomEq's Fed. R. Civ. P. 30(b)(6) witness, admitted that "Kline's account was, in fact, improperly assessed a post-acceleration late fee in the amount of $69.12 on November 16, 2007, and that the charge was an 'error.'" Doc. #492, PAGEID #8885

(citation omitted). However, the Court found that Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, claim against the Reimer Firm, breach of contract claims against Wells Fargo and MERS, and unjust enrichment claim against Barclays could not be based on the improper assessment of a late fee. *Id.*, PAGEID #8885-86. The Court based its finding, in part, on Perry's testimony "that the error was corrected on December 3, 2007, by a reversal of the $69.12 charge and a refund of the same amount to the escrow account for the purpose of disbursing the refund to Kline," *id.*, PAGEID #8885 (citing Doc. #465-3, PAGEID #7965-66, 7969), and that "[t]he records of the servicer's Corporate Advance account and the escrow account corroborate Mr. Perry's description of these transactions." *Id.* In his motion, Plaintiff claims that "[t]here is no evidence—none—to back up Mr. Perry's assertion that Mr. Kline ever received the purported 'refund.' Defendants have pointed to no check or any other document showing that Mr. Kline was ever actually repaid." Doc. #495, PAGEID #8952. In the absence of any corroborating evidence, Plaintiff argues, "it was error for the [C]ourt to credit Mr. Perry's testimony and find that the admittedly improper post-acceleration late fee collected from Plaintiff was refunded." *Id.*, PAGEID #8953 (citing *Potamkin Cadillac v. B.R.I. Coverage Corp.*, 38 F.3d 627, 633 (2d Cir. 1994)).[5]

In its memorandum *contra*, the Reimer Firm argues that the evidence is undisputed that the $69.12 post-acceleration late fee was not included in the payoff

---

[5] In the alternative, Plaintiff argues that, as a consumer, he can recover statutory damages against the Reimer Firm for its alleged FDCPA violation, even in the absence of any damages. Doc. #495, PAGEID #8953 (citing *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 513 (6th Cir. 2007)). However, to the extent that Plaintiff is arguing that an alleged FDCPA violation is sufficient for standing, this Court is unsure as to whether that portion of the *Lamar* holding is still valid after the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, in which the Court held that a plaintiff must, at the pleading stage, plausibly allege facts supporting an inference of a concrete injury in order to have standing under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* No. 13-1339, 578 U.S. ___, 136 S.Ct. 1540 (2016).

quote, and, thus, could not form the basis of an FDCPA claim.  Doc. #505, PAGEID #9152 (citing Doc. #492, PAGEID #8884).  The Court agrees.  Plaintiff offered no evidence suggesting that the Reimer Firm was attempting to collect the post-acceleration late fee.  In the absence of any such evidence, the Court's entry of summary judgment on Plaintiff's FDCPA claim against the Reimer Firm with respect to the post-acceleration late fee was proper.

Corporate Defendants, in their memorandum *contra*, note that the post-acceleration late fee was reversed and, consequently, was not included in the November, 2007, payoff quote or in any other attempt to obtain payment on the mortgage balance.  Plaintiff was assessed only a pre-acceleration late fee of $178.90, which was neither illegal nor improper.  Doc. #506, PAGEID #9173 (citing Doc. #417-1, 418-1, 418-9).  Moreover, Plaintiff's failure to respond Corporate Defendants' request for admission that he "ha[d] no affirmative evidence to establish that the particular late charges which were assessed . . . were accrued and applied <u>after</u> your mortgage loans were accelerated and demanded, Doc. #417-13, PAGEID #6506 (emphasis in original), renders the subject matter admitted.  Fed. R. Civ. P. 36(a)(3), (b). Accordingly, there is undisputed evidence that Plaintiff was never charged a post-acceleration late fee, and the Court will not amend its judgment on that ground.

### 4.    Plaintiff was not Overcharged for Interest

In its entry granting summary judgment, the Court noted that the payoff quote contained a line-item for $14,821.28 in accrued interest, and concluded that there was "no evidence in the record to indicate that Kline was not charged the proper amount for the balance due to the escrow account or the accrued interest on the [first mortgage]

17

Note." Doc. #492, PAGEID #8923 (citing Doc. #465-10). In his motion for

reconsideration, Plaintiff references his surreply, which claimed that the modified

escrow history, Wells Fargo's transaction history with respect to his house and the first

mortgage, and Barclays internal documents demonstrated that he made $482.08 in

interest overpayments, and that Wells Fargo and Barclays improperly kept those

overpayments, rather than refunding them to Plaintiff. Doc. #495, PAGEID #8949-51

(citing Doc. #487, PAGEID #8642, 8646-48).

The Court previously concluded that Barclays's post-payoff allocation of the

funds in the escrow account, while opaque, was not improper, as Barclays had the right

to use that amount to reimburse itself for other expenses it had reasonably incurred.

Doc. #492, PAGEID #8924. Also, Plaintiff declined to ask Cartmill expressly about the

allocation of payoff proceeds, including the interest line-item, despite having been in

possession of the modified escrow history for almost three months prior to his

deposition of Cartmill. Doc. #506, PAGEID #9170 n.4. Moreover, as Barclays

emphasizes in its memorandum *contra*, the November, 2007, payoff quote noted that:

> HomEq reserves the right to adjust these amounts and decline to pay the
> amount in full if the payoff is insufficient to payoff [*sic*] the amount in
> full . . . <u>as a result of additional disbursements or adjustments made by
> HomEq</u>.

Doc. #506, PAGEID #9171 (emphasis in original) (quoting Doc. #418-9, PAGEID

#6600). Thus, even assuming *arguendo* that Plaintiff paid $482.08 more <u>in interest</u> than

he actually owed at the time of the November, 2007, payoff, there is no genuine issue of

material fact as to whether Barclays actually incurred the costs for which it reallocated

the excess amounts in Plaintiff's escrow account. Doc. #492, PAGEID #8923-24.

Consequently, the Court's finding that Plaintiff was not overcharged for interest in

connection with the first mortgage payoff was not clearly erroneous, and the judgment will not be altered or amended on that ground.

### B. Court's Denial of Leave to Amend was Proper

#### 1. Background of Decision

The Court, in denying Plaintiff's motion for leave to file a second amended complaint, held that "[a]llowing Kline leave to amend [at] this late date, over seven years after the commencement of this action, would be futile." Doc. #494, PAGEID #8943 (citing *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010); *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). In support, the Court noted that the evidence proffered by Plaintiff in support of his renewed motion, Doc. #490, was "exactly the same evidence that Kline cited to when he sought leave to reopen discovery under [Fed R. Civ. P.] 56(d)(2), and when he argued against summary judgment in his Responses in Opposition and Sur-Reply." *Id.* As the Court found the evidence cited by Plaintiff insufficient to reopen discovery or withstand the motions for summary judgment, it concluded that the proposed second amended complaint could not alter the disposition of the case, and, thus, leave to amend was futile. *Id.*

The Court also noted that Plaintiff's March, 2014, statement to Defendants regarding a potential RICO claim predated his initial motion for leave to amend by nearly a year, and predated his motions to compel production of documents by several months. That statement contradicted Plaintiff's assertion that the documents produced by Defendants after March, 2015, "fleshed out" his RICO claim. Doc. #494, PAGEID #8944. Moreover, Plaintiff had made factual allegations that were material to his RICO claim when he filed his original complaint, more than seven years prior to filing his

motion for leave to amend. *Id.*, PAGEID #8944-45 (citing Doc. #1, ¶ 46, PAGEID #10-11). As Plaintiff knew the pertinent facts long before he filed the motion for leave to file a second amended complaint, the Court also overruled his motion on the grounds of undue delay. *Id.*, PAGEID #8942-43, 8945 (citing *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994)). Finally, as discussed above, the Court noted that Plaintiff had failed to file a renewed motion for class certification, which the Court had stated was a prerequisite to renewing his motion for leave to amend. *Id.*, PAGEID #8945-46.

### 2. Court's Decision was not Clearly Erroneous

#### a. Plaintiff's Arguments and Factual Background

Plaintiff claims that the Court's conclusion that it had considered and rejected the factual basis for the second amended complaint when it struck Plaintiff's class allegations and granted summary judgment, "is both factually and legally flawed." Doc. #495, PAGEID #8957. Plaintiff claims that the Court disregarded the arguments he made in his sur-reply, which, he argues, demonstrated the existence of factual disputes regarding whether: (a) Plaintiff was charged an appropriate amount of interest; and (b) the interest line-item in the escrow history was inflated to mask the attempted collection of attorney fees. The Court has already considered and rejected Plaintiff's claims, and will not discuss them further.

Further, Plaintiff argues that "no rational reading of the [C]ourt's prior decisions" supports a conclusion that it had considered Plaintiff's arguments "that Defendants made misrepresentations about: (i) who owned and held plaintiff's mortgages at the time of the 2005 and 2007 foreclosure actions against him; (ii) the amounts of legal fees and expenses that plaintiff owed; [and] (iii) whether they possessed certain documents

20

during discovery." Doc. #495, PAGEID #8957. Plaintiff argues that, if the Court had properly considered Plaintiff's arguments, then it should have granted leave to add a RICO claim. *Id.*, PAGEID #8958 (citing *Slorp v. Lerner Sampson & Rothfuss*, No. 13-3402, 587 F. App'x 249 (6th Cir. 2014)). The district court in *Slorp* denied leave to add a RICO claim, based on new allegations that the assignment of his mortgage from defendant MERS to Bank of America, N.A. ("BoA") was fraudulent, as was BoA's representation to the plaintiff that it was the rightful holder of the mortgage at the time of foreclosure. *Id.* at 264. The Court concluded that, assuming the illegitimate assignment of the mortgage to be true, BoA "wrongfully instituted foreclosure proceedings against Slorp, and his damages were proximately caused by the defendants' institution of fraudulent foreclosure proceedings." *Id.* Further, the Court noted, "[t]he allegedly fraudulent assignment allowed the defendants to perpetrate and conceal the fraud." *Id.* The Court thus held that the allegations of fraudulent assignment and misrepresentation were sufficient to sustain a RICO claim at the <u>pleading</u> stage. *Id.*

Plaintiff claims that, like in *Slorp*, MERS and the Reimer Firm falsely represented that MERS was the owner and holder of the mortgage at the time of the 2005 foreclosure action, and that the interest and attorney fees that he paid constituted injury under RICO. Doc. #495, PAGEID #8959. Further, he argues that, even assuming *arguendo* that the Lerner Firm and Corporate Defendants refunded to Plaintiff any improper amounts that he had paid, the costs expended in defending against the 2005 and 2007 foreclosures also constitute an injury under RICO. *Id.*, PAGEID #8960 (citing 18 U.S.C. § 1964(c); *Slorp*, 587 F. App'x at 261). Finally, Plaintiff claims, "the alleged misrepresentations, concealment and perjury engaged in by Defendants in both this and

the state court litigation can also form the basis for a RICO claim based on obstruction

of justice," with perjury or misrepresentation constituting one or more predicate acts *Id*.,

PAGEID #8961-62 (citing *U.S. v. Eisen*, 974 F.2d 246, 254 (2d Cir. 1992)).

**b.    Allegations Against Reimer Firm and Lerner Firm were Futile**

In its memorandum *contra*, the Reimer Firm argues that it timely produced all

discovery documents to Plaintiff.  Further, the Reimer Firm claims, it did not engage in

spoliation or in any other conduct that would have prevented Plaintiff from discovering

the basis of a RICO claim until June, 2015, Doc. #505, PAGEID #9154, as Plaintiff

claims.  Doc. #495, PAGEID #8955 n.2 (citing Doc. #491-1, ¶177, PAGEID #8759).

Indeed, the Reimer Firm notes, Plaintiff's FDCPA claim against the Reimer Firm in its

initial complaint, was based on the Reimer Firm's allegedly false statement that MERS

was the holder of the first mortgage, and that Plaintiff also alleged that MERS had made

false statements regarding the assignability of the mortgage.  Doc. #505, PAGEID

#9156 (citing Doc. #1, ¶¶ 3, 21-22, 26, 36-44, PAGEID #2, 5-7, 9-10).

In his reply memorandum, Plaintiff attempts to distinguish the allegations in his

original complaint with those in his proposed second amended complaint.  Plaintiff

claims that the former pertained only to the 2007 foreclosure, whereas the latter

concerned both the 2005 and 2007 foreclosures.  Doc. #507, PAGEID #9198 (citing

Doc. #475, PAGEID #8358).  However, even if the facts regarding the Reimer Firm's

participation in the 2005 foreclosure action were not known to Plaintiff until June, 2015,

leave to amend to include a RICO claim would still be futile with respect to the Reimer

Firm—and, for that matter, the Lerner Firm.  To sustain a civil RICO claim at the

pleading stage, Plaintiff must plausibly allege facts regarding: (1) two or more predicate offenses; (2) the existence of an enterprise; (3) "a nexus between the pattern of racketeering activity and the enterprise"; and (4) resulting injury. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (emphasis added), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). Plaintiff must plead the above elements with specificity, *i.e.*, "who, what, when, where, and how" of the alleged enterprise and predicate offenses. *Elsheick v. Select Portfolio Servicing, Inc.*, No. 13-2100, 566 F. App'x 492, 498 (6th Cir. 2014) (quoting *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).[6] Additionally, a plaintiff must allege that "a defendant . . . not only participated in the scheme, but must have also participated in the operation or management of the enterprise itself." *VanDenBroeck*, 210 F.3d at 699 (emphasis added).

The allegations in the proposed second amended complaint relating to the creation of the enterprise refer to "Wells Fargo and others creat[ing] MERS to establish an alternative to the various local County Recording Systems," and "Wells Fargo and other MERS Members creat[ing] a private recording system which . . . had the effect of hiding the current owners of mortgage interests from courts and the public." Doc. #491-1, ¶¶ 226-27, PAGEID #8777. These allegations do not permit a reasonable inference that the Reimer Firm or Lerner Firm was a "MERS Member." Indeed, the only evidence cited by Plaintiff regarding the Reimer Firm's supposed involvement in the alleged

---

[6] Plaintiff's common law fraud claims must be pled with similar specificity. Fed. R. Civ. P. 9(b); *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Thompson*, 125 F.3d at 903).

enterprises are retainer agreements between the Reimer Firm and Wells Fargo or MERS. Doc. #505, PAGEID #9160 (citing, *e.g.*, Doc. #491-1, ¶ 284, PAGEID #8791). However, the mere existence of an attorney-client relationship is insufficient to support an allegation that the Reimer Firm or the Lerner Firm helped to operate or manage the alleged enterprises. *See Melton v. Blankenship*, No. 08-5346, 2009 WL 87472, at *2-3 (6th Cir. Jan. 13, 2009) (citing *Handeen v. Lemaire*, 112 F.3d 1339, 1344 (8th Cir. 1997) (to be liable under RICO, a law firm must go "well beyond merely offering legal advice or filing legal documents.").

Plaintiff's proposed RICO claim against the Reimer Firm and Lerner Firm suffers from additional defects. The Court has already upheld its previous ruling that Plaintiff was not charged for attorney fees in connection with the loan payoff, and that he was not improperly charged interest. Moreover, as discussed in greater detail below, Plaintiff had ample opportunity to cure any prejudice resulting from late production of documents. Thus, even if the Reimer Firm and Lerner Firm had made misrepresentations regarding attorney fees or interest owed, or in the documents they possessed during discovery, but did not produce until late in the litigation, those misrepresentations could not have injured Plaintiff.

Moreover, Plaintiff does not allege when, if ever, the Lerner Firm became aware that the actual holder of the mortgages was different than the entity or entities identified in the notices it sent to Plaintiff. Nor, as the Reimer Firm points out, has Plaintiff alleged any facts "with respect to [its] 'knowing participation in mailing false payoff quotes or other documents." Doc. #505, PAGEID #9160-61. Absent any evidence that the Reimer Firm and Lerner Firm were knowingly making false statements in connection

24

through the mail with the mortgage notices, Plaintiff's mail fraud allegations against them, Doc. # 491-1, ¶¶ 300-07, PAGEID #8795-99, are purely speculative, and fall short of the specificity required for RICO and common law fraud claims.  Finally, Plaintiff's allegations of wire fraud are premised on the conclusory allegation that "Wells Fargo, HomEq, MERS, Reimer and Lerner Simpson carried out their scheme in different states and could not have done so unless they used the interstate wires." *Id.*, ¶ 309 PAGEID #8800.  Plaintiff has failed to make plausible allegations as to how the Reimer Firm or Lerner Firm was involved in managing the alleged scheme.  Nor has he sufficiently alleged the who, what, when, where and how of the mail or wire fraud allegedly perpetrated by the Reimer Firm or Lerner Firm.  In light of such deficiencies, the Court's conclusion that leave to amend was futile was not erroneous with respect to the Reimer Firm or Lerner Firm.[7]

### c.  Allegations Against Corporate Defendants were Untimely

Wells Fargo, in its answer to Plaintiff's First Amended Complaint on February 21, 2012, stated that it "ha[d] been sued as the Trustee for the investor pool that acquired the two Kline loans."  Doc. #268, PAGEID #3895 n.1.  In doing so, Wells Fargo made

---

[7] Plaintiff's fraud claims against the Reimer Firm and Lerner Firm are similarly deficient.  In his summation of pertinent allegations in the proposed second amended complaint, Doc. #495, PAGEID #8954-56, n.2, Plaintiff does not list any allegedly false statement made by the Lerner Firm.  Absent a materially false statement, a claim for common law fraud may not be sustained under Ohio law.  *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352 (6th Cir. 2000).  Moreover, the only case cited by Plaintiff in support of his proposed fraud claim was *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323 (6th Cir. 2012), a case arising under the FDCPA.  Doc. #495, PAGEID #8960-61.  Plaintiff does not cite, and the Court is not aware of, any case applying *Wallace*'s holding and reasoning in the context of common law fraud.

Also, as will be discussed in more detail with respect to the Corporate Defendants, Plaintiff was aware of the subject matter of the Reimer Firm's alleged misrepresentations—the basis for his fraud claim against the Reimer Firm—long before he sought leave to amend.  Thus, even if the proposed fraud claim against the Reimer Firm was not futile, the Court properly denied leave to amend as untimely.

Plaintiff aware that MERS was not the owner or holder of the notes. Also, Plaintiff, in his March, 2014, mediation statement, stated that the owner of the first mortgage also owned the second mortgage. "The Court interpret[ed] this statement as an admission that Plaintiff believed he had a viable RICO claim by mid-March, 2014," Doc. #415, PAGEID #6302, almost one year prior to filing the motion for leave to amend. Thus, Wells Fargo's statement in its February, 2012, answer, and Plaintiff's assertion in his March, 2014, mediation statement showed that he was aware of the grounds for a RICO claim with respect to both the 2005 and 2007 foreclosures long before filing his motion for leave to amend. Doc. #268, PAGEID #3895 n.1; Doc. #415, PAGEID #6301-02. Accordingly, the Court's conclusion that Plaintiff had unduly delayed in seeking leave to amend, Doc. #494, PAGEID #8943-45, was not clearly erroneous, and Plaintiff's other arguments as to the viability of a RICO claim against Corporate Defendants, *see generally*, Doc. #495, PAGEID #8954-66, Doc. #507, PAGEID #9197-9200, are immaterial.[8]

### d. Spoliation Claim Barred as Matter of Law

Plaintiff does not even address the additional spoliation claim against HomEq, the Reimer Firm and the Lerner Firm, which was Count VII in the proposed second amended complaint. Doc. #491-1, ¶¶ 340-43, PAGEID #8805. Moreover, Plaintiff may

---

[8] Most of the other allegedly false statements summarized by Plaintiff in his memorandum, Doc. #495, PAGEID #8954-56 n.1, were either determined by this Court not to be fraudulent, or were known to Plaintiff long before he filed his motion for leave to amend. Moreover, to the extent that Plaintiff is basing his fraud claim on allegedly false statements made by Corporate Defendants in filings with this Court, such statements may not form the basis of a common law fraud claim: "[a] plaintiff may only bring a fraud claim where the defendant made the representations to induce the plaintiff, not a third party, to act upon them." *Hammond v. Citibank, N.A.*, No. 2:10-cv-1071, 2011 WL 4484416, at *9 (Marbley, J.) (citations omitted). Thus, to the extent that Plaintiff's common law fraud claim against Corporate Defendants is distinct from his RICO claim against them, denial of leave to amend for with respect to that claim was proper.

not bring an independent claim for spoliation under federal law. Unlike Ohio law, "[t]here is no independent cause of action for spoliation under federal law." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F. Supp. 2d 878, 887 (N.D. Ohio 2009) (citing *Lombard v. MCI Telecomm. Corp.*, 13 F. Supp. 2d 621, 628 (N.D. Ohio 1998); *accord*: *Pullen v. Howard*, No. 2:14-cv-104, 2015 WL 9176546, at *1 (S.D. Ohio Dec. 17, 2015) (Deavers, Mag. J.) (denying leave to amend as futile because "[f]ederal common law does not recognize a free-standing tort claim for spoliation."). Accordingly, Plaintiff's motion to alter or amend the judgment, with respect to the Court's decision denying leave to file a second amended complaint, is overruled in full.

### C. Conclusion

The Court's holdings in its entry granting Defendants' motions for summary judgment, Doc. #492, challenged by Plaintiff in his Fed. R. Civ. P. 59(e) motion, were not clearly erroneous. Nor does Plaintiff proffer newly discovered evidence that would compel the Court to reconsider its decisions. The Court's decision to overrule Plaintiff's motion for leave to file a second amended complaint, Doc. #494, almost eight years after the original complaint was filed, was proper. Plaintiff has not shown that altering or amending the judgment or allowing him leave to file a second amended complaint is necessary "to prevent manifest injustice.'" *Leisure Caviar*, 616 F.3d at 615. Accordingly, Plaintiff has not met his burden under Fed. R. Civ. P. 59(e) to alter or amend the judgment, and his motion is overruled.

## IV.   MOTION FOR RELIEF FROM JUDGMENT

### A.   Scope of Review

Many of Plaintiff's arguments raised in the motion for relief from judgment briefing, Doc. #498, Doc. #512, regarding Defendants' alleged misconduct in discovery and vis-a-vis the Court, are similar to those advanced by Plaintiff—and rejected by this Court—in his memoranda *contra* to Defendants' motions for summary judgment and in his briefing in support of his motion to alter or amend the judgment.  It is axiomatic that, because Plaintiff did not meet his burdens under Fed. R. Civ. P. 56 and 59, he cannot meet his much higher burden under Fed. R. Civ. P. 60(b)(3).   Accordingly, only Plaintiff's arguments relating to Defendants' alleged fraud, or the related, alleged misrepresentations of Defendants' counsel will be reviewed further by the Court.

### B.   Reimer Firm

Plaintiff claims that "[d]uring this litigation, Wells Fargo, HomEq and Reimer repeatedly presented in court filings that no legal fees were charged to Plaintiffs' [*sic*] account or paid by Mr. Kline on the first mortgage."  Doc. #498, PAGEID #9108. Plaintiff argues that "Defendants were only able to make these representations for so long in this litigation because they had produced an inaccurate Escrow History."  *Id.*, PAGEID #9109.  Further, Plaintiff alleges that the Reimer Firm, in its motion for summary judgment, lied to the Court when it stated that it did collect or seek to collect attorney fees from Plaintiff with respect to the 2007 foreclosure.  *Id.*, PAGEID #9098. Also, Plaintiff claims that the documents produced by Wells Fargo on June 25, 2015, "conclusively demonstrate" that the Reimer Firm, as counsel for MERS in the 2005

foreclosure action, falsely represented that MERS was the owner and holder of the first mortgage at the time of the 2005 foreclosure. *Id.*, PAGEID #9100.

For reasons similar to those discussed above, there is no evidence that the Reimer Firm was aware of the modified escrow history prior to Barclays producing it to Plaintiff in March, 2015. Absent knowledge that the original escrow history was inaccurate, the Reimer Firm could not have committed fraud in relying upon it. Moreover, Cartmill's testimony, in which she stated that there was a line-item of $510 for attorney fees added to the corporate advance balance, Doc. #465-16, PAGEID #8040-41, does not constitute clear and convincing evidence of fraud, as required under Fed. R. Civ. P. 60(b)(3). *Johnson*, 605 F.3d at 339. Also, because the Court concluded that allowing Plaintiff leave to file a second amended complaint would be futile, any representations made by the Reimer Firm in connection with the 2005 foreclosure cannot serve as grounds for relief from judgment.

Further, there is no evidence that the Reimer Firm made any representation to the Court that was "intentionally false, willfully blind to the truth, or in reckless disregard of the truth," or "which deceived the court." Doc. #508, PAGEID #9215-16 (quoting *Maloof v. Level Propane, Inc.*, Nos. 09-3973, 09-4033, 09-4037, 09-4040, 09-4066 429 F. App'x 462, 467 (6th Cir. 2011)). Thus, Plaintiff's allegations that the Reimer Firm committed fraud on the Court are not viable. Finally, Plaintiff's allegations of fraud, misrepresentation and misconduct by the Reimer Firm—to the extent that they differ from those raised in previous briefing—are based on facts and circumstances that were known to Plaintiff several months prior to the entry of judgment, and cannot form the basis for relief under Fed. R. Civ. P. 60(b). *Thurmond*, 564 F. App'x at 830.

Accordingly, Plaintiff's motion for relief from judgment is overruled with respect to the judgment in favor of the Reimer Firm.

### C.    Corporate Defendants

Plaintiff claims that documents produced by Corporate Defendants in February, 2015, "were encompassed within Plaintiff's discovery requests to HomEq, MERS, and Wells Fargo and should have been produced years earlier." Doc. #498, PAGEID #9093. These documents purported to reveal years-long fraud and deceit on the part of the Corporate Defendants, both to Plaintiff and to this Court.

### 1.    Wells Fargo

Plaintiff claims that Corporate Defendants "fail to even mention, much less defend, Wells Fargo's belated production of relevant documents on June 25, 2015," Doc. #512, PAGEID #9253 (emphasis in original), which, Plaintiff claims, related to the issue of the true owner or holder of the first mortgage at the time of the 2005 foreclosure. Plaintiff argues that he was unable to cure the prejudice of the belated production, as the production took place after his Fed. R. Civ. P. 30(b)(6) deposition of Wells Fargo's representative. Id., PAGEID #9254-55. However, the Court has already held that, because Plaintiff's motion for leave to file the proposed second amended complaint was untimely and futile, the subject matter of the 2005 foreclosure action was excluded from the Court's consideration. Doc. #494, PAGEID #8942-43 (citing Caruso, 605 F.3d at 294; Crawford, 53 F.3d at 753; Phelps, 30 F.3d at 662). Contrary to Plaintiff's assertion that "this [C]ourt has no authority to insulate Reimer, Wells Fargo and MERS from the consequences of their alleged fraudulent conduct," Doc. #512,

PAGEID #9256, the Court's decision to exclude the subject matter of the 2005 foreclosure was grounded in the above-cited caselaw. In his initial and reply memoranda, Plaintiff has not discussed any facts regarding Wells Fargo's belated production of documents—the supposed basis for the RICO and fraud claims—that were not available to him at the time he filed his motion for leave to file an amended complaint. In sum, Plaintiff's allegations cannot meet the stringent standards for relief from judgment under Fed. R. Civ. P. 60(b)(3), and Plaintiff's motion is overruled with respect to the entry of judgment in favor of Wells Fargo.

### 2. Barclays and MERS

Plaintiff's arguments regarding Barclays belatedly producing of the modified escrow history, and HomEq allegedly concealing the payment of attorney fees in connection with Plaintiff's mortgage payoff, Doc. #498, PAGEID #9100, have been discussed at length and rejected by this Court *supra*. The Court already determined that the Cartmill affidavit, which stated that no attorney fees were paid out of the escrow account, was acceptable Fed. R. Civ. P. 56 evidence, and certainly not fraudulent, as would be required under Fed. R. Civ. P. 60(b)(3).

Also, Plaintiff claims that the 1,405 pages produced between March 17 and 26, 2015, contradicted the representations that Wells Fargo, Barclays and the Reimer Firm made in their March 27, 2015, motions for summary judgment regarding the payment of attorney fees. Further, Plaintiff argues that the Defendants' statements in their memoranda, and Barclays's attachment of the initial, rather than modified, escrow history, constituted fraud on the Court. Doc. #498, PAGEID #9096-98. Plaintiff's arguments are unavailing, for two reasons. First, the alleged misconduct by Corporate

31

Defendants and the Reimer Firm was or should have been known to Plaintiff shortly after the Corporate Defendants' production in March, 2015, almost seven months prior to filing his memoranda in opposition to the motions for summary judgment, Doc. #466-70, and almost nine months prior to judgment being entered. Doc. #492. As Corporate Defendants correctly point out, because "Plaintiff ultimately received both escrow account documents, he cannot now claim that they were concealed from him. While the Plaintiff might complain about the timing of the production of the second escrow account record, as recognized by this Court, any resultant prejudice was thereafter eliminated." Doc. #509, PAGEID #9233. Second, after the belated production, but before his memoranda *contra* to Defendants' dispositive motions were filed, Plaintiff conducted additional discovery, including taking depositions of the Corporate Defendants' representatives. *See* Doc. #498, PAGEID #9098-99. In sum, Plaintiff had ample opportunity to cure any prejudice that he may have suffered due to the late production, and he has offered no facts that both were previously unavailable to him and could serve as grounds for relief from judgment. Accordingly, Corporate Defendants' statements in their memoranda and submission of the initial escrow history with their motions for summary judgment cannot form the basis for relief from judgment.

Moreover, Plaintiff's own filings undercut his argument that counsel for the Corporate Defendants committed fraud on the Court. Plaintiff notes that Russell Pope ("Pope"), counsel for the Corporate Defendants, averred that he did not receive the modified escrow history until shortly before he produced the document to Plaintiff, and did not "fully interpret and understand the information contained in the additional records produced," prior to filing the motions for summary judgment, which relied on the initial

escrow history. Doc. #498, PAGEID #9118 (quoting Doc. #485, PAGEID #8622).

Plaintiff points to no evidence that Pope sought to mislead the Court with his filing;

indeed, he appears to have been unaware of any discrepancies between the initial and

modified escrow histories. Nor is there evidence that Corporate Defendants' filings

were willfully blind to or in reckless disregard of the truth. Thus, even assuming that

Corporate Defendants' filing and relying on the initial escrow history was careless, such

carelessness is insufficient to warrant concluding that Pope had committed fraud on the

court—a finding reserved for instances of clear and convincing evidence that a party's

counsel knowingly fabricated or falsified submissions to the court. *See* Doc. #508,

PAGEID #9216-17 (citing *Garcia v. Beneshire Life Ins. Co. of America*, 569 F.3d 1174,

1181 (10th Cir. 2009); *Ciba Specialty Chem. v. Zinkan Enter.*, No. C2-03-0174, 2003

WL 22309275, at *3 (S.D. Ohio Jul. 29, 2003) (Sargus, J.); *Aoude v. Mobil Oil Corp.*,

892 F.2d 1115, 1118-19 (1st Cir. 1989)).[9]

In sum, Plaintiff has failed to demonstrate any fraud that by the Corporate

Defendants that: (a) was based on facts not known to Plaintiff at the time judgment was

entered; and (b) adversely affected the outcome of the proceedings. Nor has he come

close to showing that Corporate Defendants' counsel committed fraud upon this Court.

Accordingly, Plaintiff's motion for relief from judgment is overruled with respect to the

Corporate Defendants.

---

[9] Indeed, by accusing Pope of fraud, without evidence suggesting bad faith or intent to deceive, Plaintiff's counsel has violated his Fed. R. Civ. P. 11(b) obligations. *See Cleveland Demolition Co., Inc. v. Azcon Scrap Corp.*, 827 F.2d 984, 988 (4th Cir. 1987) (imposing sanctions under Fed. R. Civ. P. 11(c) for an allegation of fraud on the court that plaintiff's counsel filed despite failing to "investigate the facts, examine the law, and then decide whether the complaint is justified."). The Court declines to sanction Plaintiff's counsel under Fed. R. Civ. P. 11(c) at this point, but cautions him that any future filings containing unsubstantiated allegations of fraud will subject him to sanctions.

### D.    Lerner Firm

Unlike the express allegations of fraudulent conduct by the Reimer Firm and Corporate Defendants or their respective counsel, discussed above, Plaintiff does not appear to make any express allegations of fraud by the Lerner Firm.  The only mention of the Lerner Firm in Plaintiff's motion is in connection with his initial payment of $350 in attorney fees in connection with the foreclosure of the second mortgage.  Doc. #498, PAGEID #9097 (citing Doc. #417-1, PAGEID #6395).  As stated in this Court's entry granting summary judgment, the fact that the $350 attorney fee was refunded to Plaintiff rendered implausible any claim for relief against the Lerner Firm, Doc. #492, PAGEID #8902, 8904-05, 8908 and, similarly, renders implausible any allegation of fraud on the Court by the Lerner Firm.  Thus, Plaintiff's motion for relief from judgment is overruled with respect to the Lerner Firm.


### E.    Class Allegations were Properly Stricken from Amended Complaint

While Plaintiff, in his motion, seeks relief from the Court's September 25, 2015, Order striking class allegations, Doc. #496, PAGEID #8969, he makes no reference to the Court's Order in his memoranda.  Plaintiff may be resting on the arguments made in his Motion for Reconsideration of Decision Striking Class Allegations, Doc. #472, and reply memorandum in support of that motion.  Doc. #480.  However, the Court has already overruled that motion as moot, Doc. #492, and Plaintiff offers no new argument or evidence that would enable him to meet his burden under Fed. R. Civ. P. 60(b).  Accordingly, the present motion is overruled with respect to the order striking the class allegations.

34

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration of Decision Granting Summary Judgment and Denying Motion to Amend, Doc. #495, and Motion for Relief from Judgment Under Rule 60, Doc. #496, are OVERRULED in their entireties.[10]


The above-captioned case remains terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


Date: July 18, 2016

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[10] The Court emphasizes that, having entered final judgment against Plaintiff and twice rejected his requests to alter or vacate the judgment, Plaintiff's proper course of action, if he desires further review of the Court's decisions, is to appeal the Court's decisions to the U.S. Court of Appeals for the Sixth Circuit. Any additional filings with this Court by Plaintiff would be particularly unwelcome and potentially subject his counsel to sanctions under Fed. R. Civ. P. 11(c).